# Exhibit 2

Ⓐ Neutral
As of: April 21, 2022 4:04 PM Z

# *Huer Huang v. Shanghai City Corp.*

United States District Court for the Southern District of New York

October 19, 2020, Decided; October 19, 2020, Filed

19-cv-7702 (LJL)

**Reporter**

2020 U.S. Dist. LEXIS 193074 *

HUER HUANG, et al., Plaintiffs, -v- SHANGHAI CITY CORP, et al., Defendants.

**Prior History:** *Huang v. Shanghai City Corp., 2020 U.S. Dist. LEXIS 55169, 2020 WL 1165843 (S.D.N.Y., Mar. 11, 2020)*

## Core Terms

Restaurant, notice, named plaintiff, employees, similarly situated, opt-in, Plaintiffs', depositions, certification, collective action, overtime, kitchen, deliverymen, tolling, join, alleges, courts, equitable tolling, media, discovery, sanctions, postings, website, class certification, withdrawal, class action, hours per week, scheduled, lawsuit, reasons

**Counsel:** For Aragon Cardoso Cruz, Maximino Raymundo, Hai Hua Zhai, Hui Zhen Huang, Juan Li, Huer Huang, Lianqin Lu, Gloria Perez Mendez, Clara Flores, Reyes Perez Guerrero, on behalf of themselves, and on behalf others similarly situated in the Proposed FLSA Collective and Potential *Rule 23* **[*1]** Class, Plaintiff: Aaron B. Schweitzer, Leanghour Lim, John Troy, Troy Law PLLC, Flushing, NY.

For Shanghai City Corp, doing business as, Joe's Shanghai, Shanghai Duplicate Corp, doing business as, Joe's Shanghai, Shanghai Original Inc, doing business as, Joe's Shanghai, East Brother, Corp, doing business as, Joe's Shanghai, Kiu Sang Si, also known as, Joseph Si, also known as, Joe Si, Yiu Fai Fong, Gui Bing Shi, William Ko, Yun Cai, John Zhang, Tun Yee Lam, also known as, Peter Lam, Terry Ho, Defendants: David B. Horowitz, Fong & Wong, P.C., New York, NY.

For Mimi Si, Defendant: Xue Jing Huang, LEAD ATTORNEY, Huang, Chen & Wu PLLC, Ste 9b, Flushing, NY.

For Lillian Liou, Defendant: Lynn Ellen Judell, Shechtman Halperin Savage LLP, White Plains, NY.

**Judges:** LEWIS J. LIMAN, United States District Judge.

**Opinion by:** LEWIS J. LIMAN

## Opinion

OPINION & ORDER

LEWIS J. LIMAN, United States District Judge:

Plaintiffs are employees who worked at one of two restaurants **[*2]** sharing the name Joe's Shanghai. One restaurant is located on West 56th Street in Manhattan, New York ("Midtown Restaurant"). The other restaurant is located in Flushing, Queens, New York ("Flushing Restaurant").

Plaintiffs have brought this action against Shanghai City Corp., Shanghai Duplicate Corp., East Brother Corp., and Shanghai Original, Inc., the corporations that owned and operated the two Joe's Shanghai restaurants as well as a number of individuals who managed the restaurants, alleging that they were paid wages that violated the *Fair Labor Standards Act*, *29 U.S.C. § 215* ("FLSA"), and the New York Labor Law, *N.Y. Lab. Law § 215* ("NYLL"). Before the Court is Plaintiffs' motion for conditional class certification under the FLSA, Dkt. No. 117, and the Defendants' motion for discovery sanctions. Dkt. No. 107. For the reasons that follow, Defendants' motion for discovery sanctions is granted in part and denied in part. Plaintiffs' motion for conditional certification is granted with respect to the employees of the Flushing Restaurant and denied with respect to the employees of the Midtown Restaurant.

The tangled procedural history of this case is discussed in the Court's earlier opinion. *See* Dkt. No. 93. Presently, **[*3]** eight named plaintiffs remain in the litigation: Huer Huang, Hui Zhen Huang, Hai Hua Zhai, Lianqin Lu, Gloria Perez Mendez, Clara Flores, Reyes Perez Guerrero, Aragon Cardoso Cruz, Raymundo Maximino, and Juan Li, all of whom worked at either the Midtown Restaurant or the Flushing Restaurant at some time. Additionally, the Court has before it the affidavits of seven individuals who worked as deliverymen at the Midtown Restaurant, who are not named plaintiffs in the

current action, but who would possibly be eligible to opt-in were a conditional class to be certified. Five of the seven have signed consents to join this action.

## I. Discovery Sanctions

### A. Defendants' Motion for Discovery Sanctions

Defendants first move for sanctions, including dismissal of claims, against Huer Huang and Hui Zhen Huang. Huer Huang and Hui Zhen Huang failed to attend a scheduled deposition on March 12, 2020 and refused to attend a subsequent scheduled deposition on May 28, 2020. Dkt. No. 107 at 1. This Court has already imposed costs of $ 1,760.00 on the two plaintiffs, jointly and severally with their counsel for their failure to appear for the depositions. Dkt. No. 109. The Court now considers whether additional **[*4]** sanctions are warranted.

On February 18, 2020, Defendants served deposition notices scheduling Huer Huang and Hui Zhen Huang's depositions for March 12, 2020. Dkt. No. 111-1. On March 10, 2020, Plaintiffs' counsel reported that Plaintiffs were "not available" for the deposition and that counsel had a "scheduling conflict due to a trial scheduled in another matter." Dkt. No. 78-6. Defense counsel avers that he conferred with another lawyer from Plaintiffs' counsel's office on March 11, 2020, who could offer "no reason for his clients' unavailability." Dkt. No. 78 at 2. Plaintiffs' counsel never followed up after this conversation. *Id.* Later, on March 11, Defendants moved for an order compelling attendance. Dkt. No. 78. The Court denied that application and instead authorized Defendants to seek sanctions under *Federal Rule of Civil Procedure 37(d)(1)(A)(i)* should Plaintiffs fail to appear for their scheduled deposition. Dkt. No. 79. Defendants' counsel attended the March 12 deposition and noted the Plaintiffs' default. Dkt. No. 107 at 2.

On March 12, 2020, Plaintiffs moved to stay depositions because of the COVID-19 pandemic. Dkt. No. 81. On March 18, 2020, this Court authorized remote depositions and extended the period for discovery **[*5]** to June 22, 2020. Dkt. No. 85. The Court additionally authorized Defendants to move for sanctions against Huer Huang and Hui Zhen Huang. Dkt. No. 85. Defendants attempted to schedule remote depositions for May 28, 2020. Dkt. No. 107 at 3. The Plaintiffs raised a number of objections on May 25, 2020 and cancelled the depositions on May 27, 2020. *Id.* On June 8, 2020, Defendants made a motion to this Court asking for sanctions under *Rule 37*. Dkt. No. 107. By ordered dated June 10, 2020, this Court imposed costs in the amount of $ 1760.00

on the two plaintiffs and their counsel. Dkt. No. 109.

Plaintiffs do not directly address Huer Huang and Hui Zhen Huang's failures to appear for their March 12 depositions, but rather move to withdraw as counsel for these two Plaintiffs, citing a lack of cooperation over several months. Dkt. Nos. 110 and 111. Huer Huang and Hui Zhen Huang have on two occasions refused to schedule a date for their depositions and otherwise comply with Defendants' discovery demands, and they have twice indicated their intention no longer to proceed with this case. Dkt. No. 111 ¶ 5. Plaintiffs' counsel has provided written confirmation of Huer Huang and Hui Zhen Huang's intention **[*6]** not to continue with the case. Dkt. No. 111-1.

*Rule 37(d)(1)(A)* authorizes the court to award sanctions if "a party . . . fails, after being served with proper notice, to appear for that person's deposition." *Fed. R. Civ. P. 37(d)(1)(A)*. The "[s]anctions may include any of the orders listed in *Rule 37(b)(2)(A)(i)-(vi)*." *Fed. R. Civ. P. 37(d)(3)*. In turn, the sanctions available under *Rule 37(b)(2)(A)* range from orders directing designated facts to be taken as established to the striking of pleadings to the dismissal of an action. *Fed. R. Civ. P. 37(b)(2)(A)*. The factors a district court should use when determining whether to dismiss an action under *Rule 37* include: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009)* (quoting *Nieves v. City of New York, 208 F.R.D. 531, 535 (S.D.N.Y. 2002))*. Dismissal under *Rule 37* is appropriate "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a sanction." *Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976)*. Additionally, *Rule 37(d)* makes the payment of the expenses by the party that failed to attend the deposition mandatory: "Instead of or in addition to these sanctions, the court must require **[*7]** the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees caused by that failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Fed. R. Civ. P. 37(d)(3)*.

The Defendants ask the Court to dismiss the claims of Huer Huang and Hui Zhen Huang. *Rule 37(b)(2)(A)(v)* authorizes a district court to "dismiss[] the action or proceeding in whole or in part," for failure to comply with a discovery order. In accordance with this standard, the Court grants Defendants' motion to dismiss the claims of Huer Huang and Hui Zhen

2020 U.S. Dist. LEXIS 193074, *7

Huang. Although dismissal is an extreme sanction, it is clear from Plaintiffs' affidavit that Huer Huang and Hui Zhen Huang's non-compliance with their discovery obligations is willful and not an accident or excusable. *See* Dkt. No. 111. Having chosen to join the lawsuit, they then chose to deny Defendants the discovery necessary to defend the case. No lesser sanctions would be effective. Huer Huang and Hui Zhen Huang have expressed their intent not to prosecute their claims in this action, so an order striking pleadings, deeming certain facts to be established, or staying the action would be wholly **[*8]** ineffectual. Nor is there reason to think that an award of monetary sanctions in connection with a contempt finding would be sufficient. Indeed, dismissal is consistent with Huer Huang and Hui Zhen Huang's stated wishes to no longer proceed with the case. Dkt. No. 112 at 4.

The Court grants Plaintiffs' counsel's motion to withdraw from representation of Huer Huang and Hui Zhen Huang. Under the Local Rules of this Court, an attorney may withdraw "only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement." *Rule 1.4 of the Local Civil Rules* of the United States District Courts for the Southern and Eastern Districts of New York. In deciding whether to grant a motion for withdrawal, a court considers "the reasons for withdrawal and the impact of the withdrawal on the timing of the proceeding." *Karimian v. Time Equities, Inc., 2011 U.S. Dist. LEXIS 51916, 2011 WL 1900092, at *2 (S.D.N.Y. May 11, 2011)*. Although there is not a "clear standard for what may be considered a 'satisfactory reason' for allowing a withdrawal," *Blue Angel Films, Ltd. v. First Look Studios, Inc., 2011 U.S. Dist. LEXIS 16674, 2011 WL 672245, at *1 (S.D.N.Y. Feb. 17, 2011)*, "[i]t is well-settled that a lawyer may seek to withdraw when the client renders it unreasonably difficult for the lawyer to carry out such employment effectively." *United States v. Lawrence Aviation Indus., 2011 U.S. Dist. LEXIS 13777, 2011 WL 601415, at *1 (E.D.N.Y. Feb. 11, 2011)*.

Plaintiffs' counsel has put forth evidence sufficient to show that Huer Huang and Hui Zhen Huang have **[*9]** made it unreasonably difficult to litigate the case on their behalf. Dkt. No. 112. Counsel has presented text message communications indicating that these Plaintiffs no longer wish to proceed with the case. Dkt. No. 111-1. Further, counsel's withdrawal from representation of Huer Huang and Hui Zhen Huang will have little impact on the timing of the proceeding, as the case will simply proceed with the other named plaintiffs, whom counsel will continue to represent. Because the litigants are not cooperating with their own counsel, the Court sees no reason not to grant Plaintiffs' counsel's motion to withdraw.

**B. Defendants' Motion to Dismiss the Claims of Lu, Li, and Zhai**

Defendants next move to dismiss the claims of Lu, Li, and Zhai on grounds that Plaintiffs "unilaterally canceled [their] depositions stating 'we will not be presenting Lu, Li, and Zhai,'" all without seeking a protective order. Dkt. No 106 at 3. Defendants claim, and Plaintiffs dispute, that on May 15, 22, 26 and 27, 2020, Defendants conferred in good faith with Plaintiffs in an effort to resolve this dispute. *Id.* at 3-4.; Dkt. No. 108 at 1. Plaintiffs do not address Defendants' point regarding a protective order, but rather assert **[*10]** that Defendants cannot take depositions of Lu, Li and Zhai pursuant to *Fed. R. Civ. P. Rule 30(a)(2)(A)(ii)* ("A party must obtain leave of court . . . if the parties have not stipulated to the deposition and . . . the deponent has already been deposed in the case"), since these three plaintiffs had already been deposed in *Jin v. Shanghai Original, Inc.*, ("*Jin*") an earlier lawsuit against Joe's Shanghai brought in the Eastern District of New York. Dkt. No. 108 at 2.

Plaintiffs' argument is mistaken in two respects. First, Plaintiffs' argument that Defendants should not be permitted to take the depositions of Lu, Li, and Zhai does not excuse their failure to appear. The Federal Rules do not permit a party objecting to a deposition not to show up. Rather, the proper procedure, as the Federal Rules make clear, is to file a motion for a protective order before the scheduled deposition. Indeed, *Fed. R. Civ. P. 37(d)(2)* expressly states that "[a] failure [to appear for a deposition] is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under *Rule 26(c)*."

Even if Plaintiffs had properly raised the issue, they would not have been entitled to a protective order here. **[*11]** While the parties in this case and in *Jin* are largely the same and the parties' counsel are all the same, Defendants are correct that the fact that Lu, Li, and Zhai were deposed in the *Jin* case does not entitle the Plaintiffs to a protective order against their depositions in this case. *See* Dkt. No. 115 at 2. This case raises new issues not litigated in *Jin*, such as the extent to which Plaintiffs were required to work without compensation during their meal breaks, as well as whether Zhai purchased, maintained and repaired an electric bicycle at his own expense. *Id.* As Defendants observe: "This is a new case brought upon different pleadings in a different court naming some new Defendants." *Id.* Defendants have a right to conduct reasonable depositions in this new case.

Defendants ask the Court to dismiss the claims of Lu, Li, and Zhai and additionally to award Defendants $ 2,200.00 in attorney's fees for having to make this motion plus $ 1,100.00 for the four hours counsel spent drafting the motion opposing

Plaintiffs' motion for a protective order. The Court concludes, first, that dismissal is not warranted here. Though counsel was not justified in unilaterally cancelling Lu, Li, and **[*12]** Zhai's depositions without the permission of the Court, Defendants have not indicated that Plaintiffs themselves are unwilling to be deposed again nor is there a showing that they have interfered deliberately with the progress of the litigation. The communications presented to the Court suggest that counsel may be more at fault than the Plaintiffs themselves, making the "particularly severe sanction" of dismissal inappropriate here. *Chambers v. NASCO, Inc., 501 U.S. 32, 45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)*. However, the Court will award the Defendants the costs they request for the time they wasted when the Plaintiffs did not appear for the deposition and for briefing their motions related to these issues.

### C. Interrogatories

Finally, Defendants move to compel Plaintiffs to provide responses to a set of interrogatories served on February 13, 2020, and to dismiss Plaintiffs' complaint entirely if Plaintiffs fail to provide these responses. Dkt. No. 107 at 4. Plaintiffs respond, and Defendants do not dispute, that Plaintiffs delivered all interrogatory responses as of June 8, 2020, with the exception of those of Huer Huang, Hui Zhen Huang, and Juan Li. Dkt. No. 108 at 1. As discussed above, Huer Huang and Hui Zhen Huang are now dismissed from the case. As for **[*13]** Li, Plaintiffs claim they await only Li's signature to verify his responses, and they expect to be able to send those responses in short order. *Id.* The Court orders that Li's responses to the interrogatories be served by October 14, 2020. If Li fails to respond within that deadline, Defendants may move for discovery sanctions. The Court declines to order discovery sanctions for Li's prior refusal to respond on a timely basis, but does not excuse it and will take his failure into account if he now fails to timely respond.

### II. Plaintiff's Motion for Conditional Class Certification

Named plaintiffs Hai Hua Zhai, Lianqin Lu, Gloria Perez Mendez, Clara Flores, Reyes Perez Guerrero, Aragon Cardoso Cruz, Raymundo Maximino, and Juan Li move to certify conditionally a collective action against Defendants pursuant to *29 U.S.C. § 216(b)*. Dkt. No. 117 at 1. Their proposed conditional class would comprise "tipped and non-tipped positions at Joe's Shanghai Flushing and Joe's Shanghai Midtown." Dkt. No. 119 at 2.

Three of the named plaintiffs do not have valid FLSA claims, because their claims are stale. Lu last worked for Defendants

on February 12, 2015, Zhai last worked on February 24, 2015, and Li last worked May **[*14]** 1, 2014. Dkt. No. 119 at 4. This is earlier than the three-year FLSA lookback period provided for in *29 U.S.C. § 255(a)*, even if Plaintiffs prevail in their argument that the three-year rather than two-year lookback provision should apply. *Id.* Thus, Lu, Li, and Zhai cannot act as representatives of an FLSA collective.

Five named plaintiffs remain with viable FLSA claims. Three were employed as kitchen workers at the Midtown Restaurant (Mendes, Flores, and Guerrero). Two worked in the kitchen at the Flushing Restaurant (Cruz and Maximino). None are alleged to have worked in the dining room or as deliverymen at either location.

Defendants argue that the named plaintiffs are not similarly situated to the class they propose to represent. Defendants argue that employees who worked at the Midtown Restaurant are not similarly situated to those who worked at the Flushing Restaurant. Further, Defendants argue that the restaurants managed and compensated kitchen workers and delivery workers in different ways. Because all named plaintiffs in this case were kitchen workers, Defendants contend, they should not be considered similarly situated to deliverymen. If any class is conditionally certified, according to the **[*15]** Defendants, it should be limited to "Spanish-speaking kitchen workers in Midtown." Dkt. No. 127 at 18.

### A. The Applicable Standards

*Section 216(b)* of the FLSA permits an employee aggrieved by a violation of the statute to maintain an action against any employer "for and in behalf of himself or themselves and other employees similarly situated." *29 U.S.C. § 216(b)*. The statute further provides: "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.*

The Supreme Court has held that "*Section 216(b)*'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)*; *see also Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 75 n.1, 133 S. Ct. 1523, 185 L. Ed. 2d 636 (2013)* (characterizing *section 216(b)* as a "joinder process."). "[D]istrict courts have discretion, in appropriate cases, to implement *[Section 216(b)]* by facilitating notice to potential plaintiffs." *Id. at 169*. Construing that language, the Second Circuit has

2020 U.S. Dist. LEXIS 193074, *15

endorsed a two-step method to determine **[\*16]** whether a case should proceed as a collective action under FLSA. *Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010)*. In the first step, the court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs." *Id. at 555*. At the second step, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id.*

The first step of the *Hertz* analysis requires the plaintiffs to show there exist potential opt-in plaintiffs who are "similarly situated" to them. In order to succeed at the first step of the *Hertz* analysis, plaintiffs need only "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* (quoting *Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)*. The "similarly situated" analysis is "quite distinct" from "the much higher threshold of demonstrating that common questions of law and fact will 'predominate' for *Rule 23* purposes." *Hertz, 624 F.3d at 555-56*. Mere "unsupported assertions" are not sufficient to pass the first step, but it "should remain a low standard of proof because the purpose of the first **[\*17]** stage is to merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Id.* (quoting *Dybach v. State of Fla. Dep't of Corr., 942 F.2d 1562, 1567 (11th Cir. 1991))*.

The Second Circuit has recently elaborated the "similarly situated" standard in *Scott v. Chipotle Mexican Grill, Inc., 954 F.3d 502 (2d Cir. 2020)*. According to the court, "to be similarly situated means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation." *Id. at 516*. Plaintiffs are "similarly situated . . . to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.* "It follows that if named plaintiffs and party plaintiffs share legal or factual similarities material to the disposition of their claims, dissimilarities in other respects should not defeat collective treatment." *Id.* (quoting *Campbell v. City of Los Angeles, 903 F.3d 1090, 1114 (9th Cir. 2018))*. "If the opt-in plaintiffs are similar to the named plaintiffs in some respects material to the disposition of their claims, collective treatment may be *to that extent* appropriate, as it may *to that extent* facilitate the collective litigation of the party plaintiffs' claims." *Id.* The question for a district court to decide at step one of the *Hertz* analysis is thus whether plaintiffs and potential opt-ins "share one or more similar questions of law or fact material **[\*18]** to the disposition of the FLSA claims." *Id. at 521*.

Plaintiffs' burden at the conditional certification stage is "minimal." *Amador v. Morgan Stanley & Co. LLC, 2013 U.S. Dist. LEXIS 19103, 2013 WL 494020, at \*4 (S.D.N.Y. Feb. 7, 2013)*. "Plaintiffs can meet this burden by showing that 'there are other employees who are similarly situated with respect to their job requirements and with regard to their pay provisions.'" *Fraticelli v. MSG Holdings, L.P., 2014 U.S. Dist. LEXIS 63167, 2014 WL 1807105, at \*1 (S.D.N.Y. May 7, 2014)* (quoting *Hertz, 624 F.3d at 555*). However, "while plaintiff's burden at this stage is modest it is not non-existent." *Khan v. Airport Mgmt. Servs. LLC, 2011 U.S. Dist. LEXIS 133134, 2011 WL 5597371, at \*5 (S.D.N.Y. Nov. 16, 2011)*.

Additionally, the fact that different employees performed different jobs does not necessarily preclude them from being considered "similarly situated" where "the fundamental allegation . . . is common to all the . . . plaintiffs . . . and dominates each of their claims." *Heagney v. European Am. Bank, 122 F.R.D. 125, 127 (E.D.N.Y. 1988)*. "It is not necessary for the purposes of conditional certification that the prospective class members all performed the same duties, or worked during the same time periods, or worked at the same locations as the named plaintiffs. . . . [a]s long as they were all similarly situated with *respect to being subject to the same policy* of being denied overtime compensation, and there exists a factual nexus among the plaintiffs." *Cano v. Four M Food Corp., 2009 U.S. Dist. LEXIS 7780, 2009 WL 5710143, at \*7 (E.D.N.Y. Feb. 3, 2009)* (granting conditional certification where affidavits showed "an identifiable factual nexus linking the **[\*19]** named plaintiffs with putative collecti[ve] action members")

If the Court determines that "similarly situated" employees exist, it will conditionally certify the collective and order that appropriate notice be given to members of the FLSA collective to afford them the opportunity to opt into the action. *Cunningham, 754 F. Supp. 2d 638, 2010 WL 5076703 at \*5*; *see also Lynch, 491 F. Supp. 2d at 368* ("Once notice is accomplished, the action proceeds as a collective action throughout the discovery process").

## B. Application of the Standards

The Court first addresses whether named plaintiffs who were employed only at the Midtown Restaurant are similarly situated to employees at the Flushing Restaurant and whether named plaintiffs employed only at the Flushing Restaurant are similarly situated to those employed only at the Midtown Restaurant. After answering those questions in the negative, the Court turns to whether named plaintiffs who worked at the Flushing Restaurant have sufficiently shown the existence of others similarly situated to them at the Flushing Restaurant and whether those named plaintiffs from the Midtown Restaurant have shown the existence of others similarly

situated at Midtown. The Court concludes that Plaintiffs have made this minimal showing with respect **[\*20]** to one of the restaurants but not with respect to both.

1. Representation across Locations

The first question is whether the employees of the Midtown Restaurant are similarly situated to the employees of the Flushing Restaurant. "In this Circuit, courts have regularly found Plaintiffs to be similarly situated to employees at locations where they did not work, provided that the plaintiffs demonstrate that they were all subject to the same allegedly unlawful policy or practice." *Hamadou v. Hess Corp., 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013)*. With respect to certification across multiple locations, "courts consider whether the plaintiffs have made an adequate factual showing to support an inference that . . . a uniform policy or practice exists, and whether the locations share common ownership or management." *Id. at 662-63*; *see also Capsolas v. Pasta Res., Inc., 2011 U.S. Dist. LEXIS 49926, 2011 WL 1770827 (S.D.N.Y. May 9, 2011)* (holding that employees at separate locations were similarly situated where the "facts support[ed] a reasonable inference that there was a uniform policy across the eight restaurants, all of which share a common ownership, are supervised by the same individuals, and are administered by the same company").

The record reflects that the Flushing Restaurant and the Midtown Restaurant operated under separate management and separate ownership. **[\*21]** Although they share a common name and a common history, they are distinct operations run by distinct legal entities and different individuals. Defendants have submitted the declarations of Tun Yee Lam, the sole shareholder of the owner and operator of the Flushing Restaurant, and William Ko, the manager of the Midtown Restaurant. Dkt Nos. 124 & 125. Lam declares that the Flushing and Midtown Restaurants are separately and independently owned, managed, and operated and there is no centralized control over employment relations in the two restaurants. Dkt. No. 125 ¶¶ 12-14. Ko also declares that the Midtown Restaurant is owned and managed separately from the Flushing Restaurant. Dkt. No. 124 ¶ 25. Those declarations are uncontradicted.

Moreover, the nature of the violations and the parties bringing claims in each of the two restaurants are different. Midtown Restaurant employees say nothing in their affidavits about the Flushing Restaurant; nor do Flushing Restaurant employees say anything about the Midtown Restaurant. Nowhere is it alleged that the same managers subjected the employees to illegal treatment across locations. No facts are alleged that would support the existence of a common **[\*22]** policy across restaurants. The court came to the same conclusion in *Jin*,

finding that "the record developed in discovery shows that there was no common unlawful employment policy or practice shared by the Midtown and Flushing locations." *Jin, 2018 U.S. Dist. LEXIS 55829, 2018 WL 1597389, at \*1 (E.D.N.Y. Apr. 2, 2018)*. *Cf. Smith v. Bayer Corp., 564 U.S. 299, 317, 131 S. Ct. 2368, 180 L. Ed. 2d 341 (2011)* ("we would expect federal courts to apply principles of comity to each other's class certification decisions when addressing a common dispute").

For these reasons, the Flushing employees and the Midtown employees are not similarly situated. The question remains whether two conditional classes may be certified: one representing employees of the Flushing Restaurant and another representing employees of the Midtown Restaurant.

2. Flushing Restaurant Employees

Two named plaintiffs, Cruz and Maximino, were employed at the Flushing Restaurant, both as kitchen workers. Cruz alleges that he worked as a dishwasher at the Flushing Restaurant from March 19, 2018 to March 17, 2020 when the restaurant closed due to the COVID-19 lockdown. Dkt. 118-10 ¶ 3. Cruz avers that from March 19, 2018 to October 2019, he typically worked 57 hours per week. *Id.* ¶ 5. He additionally alleges that from October 2019 to the restaurant's closing, he worked 51 hours per week. **[\*23]** *Id.* ¶ 6. He claims that for the duration of his employment, he was paid $ 600.00 in cash per week, and was never given a proper wage statement. *Id.* ¶¶ 8-9.

Cruz identifies eight employees who, he claims, "suffered the same practice and policy of Defendants." *Id.* ¶¶ 17-18. However, Cruz identifies only one employee, Leonardo, whom he knows was paid a flat weekly rate by the restaurant. *Id.* ¶ 18. According to his affidavit, Leonardo "told [Cruz] that he receive[d] the same wage as [Cruz's], around $ 600.00 per week." *Id.* ¶ 34. As for the other employees, Cruz puts forth only their names and the number of hours they worked.

Maximino alleges that he worked as a soup dumpling chef and assistant chef at the Flushing Restaurant from 2002 until the COVID-19 lockdown closed the restaurant. Dkt. 118- 11 ¶ 4. He had worked at the Chinatown location of Joe's Shanghai from 1997 until 2002, when he transferred locations. *Id.* ¶ 3. He alleges that until October 12, 2019, he typically worked 72 hours per week. *Id.* ¶ 6. From October 13, 2019 through the closure of the restaurant, he alleges that he worked 38.5 hours per week. *Id.* ¶ 7. He speculates that his hours were reduced when he joined this lawsuit. **[\*24]** *Id.* He further alleges that the managers required him to punch out for 1 1/2 hour each full day he worked, even though he was working during that time. *Id.* ¶ 8. Maximino claims that he started at a rate of $ 425 per half month, which gradually increased to a rate of $

2020 U.S. Dist. LEXIS 193074, *24

650.00 per week by the end of his employment. *Id.* ¶¶ 10-17.

Maximino puts forth the names of nineteen employees whom he claims suffered the same policy or practice. *Id.* ¶¶ 25-26. He claims to know that one of these employees, Salvador, was paid a flat compensation of $ 600 per week and that he worked 60 hours per week. *Id.* ¶¶ 31-33. He avers that he has this information because he overheard Salvador talking about it with other employees. *Id.* ¶ 34.

As for the other eighteen employees, Maximino provides information on the work schedules for all of them and information on pay for some of them. In his initial affidavit, however, Maximino does not identify any employee apart from Salvador who he claims to know was paid a fixed weekly salary. In a subsequent affidavit, Maximino avers that: "Although I do not know the wages of all my coworkers, I know they all received a flat salary." Dkt. No. 135-7 ¶ 37.

For certification of an **[\*25]** FLSA conditional class to be appropriate, Plaintiffs must have alleged cognizable FLSA claims themselves. Defendants claim that neither Maximino nor Cruz can represent a conditional class, because neither one of them has a valid FLSA claim. Dkt. 127 at 9-10. Defendants put forth Cruz's signed payroll records which indicate that he was paid at an hourly rate of $ 15 per hour and $ 22.50 for overtime hours worked. Dkt. No. 126-1. Defendants also put forth Maximino's payroll records, which indicate lawful amounts of pay for time and overtime. Dkt. No. 126-2.

The FLSA requires that overtime be paid at "a rate not less than one and one-half times the regular rate at which [the employee] is employed." *29 U.S.C. § 207(a)(1)*. "Under the FLSA, the standard method of calculating overtime pay for salaried employees is to determine the regular hourly rate of pay by dividing the salary by the number of hours which the salary is intended to compensate; the employee then receives one and one-half times that regular rate of pay for all hours worked in excess of forty per week." *Martinez v. Hilton Hotels Corp., 930 F. Supp. 2d 508, 528 (S.D.N.Y. 2013)* (quoting *Davis v. Abercrombie & Fitch Co., 2008 U.S. Dist. LEXIS 86577, 2008 WL 4702840, at \*7 (S.D.N.Y. Oct. 23, 2008))*. Thus, if Plaintiffs were indeed paid flat rates regardless of the hours beyond forty they worked per week, they can allege a FLSA claim. **[\*26]** At this stage in the litigation, a material issue of fact exists whether Plaintiffs were paid proper overtime or not. Maximino and Cruz allege that they were paid flat rates in cash, that the payroll forms are inaccurate, and that they signed the forms without reading them. Thus, on the pleadings, Maximino and Cruz are proper plaintiffs under the FLSA.

Although the question is close, the Court also concludes that

Maximino and Cruz have made the factual showing necessary for the Court to grant conditional certification and for notice to be sent to potentially similarly situated plaintiffs who worked at the Flushing Restaurant. Maximino and Cruz have each provided direct evidence of at least one co-worker who suffered similar pay practices during the time they were employed at Flushing and suffered a FLSA violation. For the remaining co-workers, Maximino and Cruz put forth allegations of work schedules and weekly pay, but they do not claim to know for certain that these potential opt-in plaintiffs were paid a flat weekly rate or provide direct evidence of a FLSA violation.

The fact that named plaintiffs do not know for a fact whether each of the remaining coworkers was paid a flat fee **[\*27]** is not necessarily fatal to their application for conditional certification. The Second Circuit has held that the showing necessary to satisfy step-one is "modest." *Hertz, 624 F.3d at 555*. The case law does not explicitly require the named plaintiffs to put forward direct evidence that those to whom they claim to be "similarly situated," in fact, have a complete FLSA claim arising out of the same facts as the plaintiffs do. To the contrary, the Second Circuit has held that the first step merely "involves the court making an initial determination to send notice to potential opt-in plaintiffs who *may* be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id. at 555* (emphasis added). The court has described the "modest factual showing" to require only that the named plaintiffs and the potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." *Id.* Plaintiffs need only show that there are "other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions." *Id.* (internal citations and quotations omitted). The court did not require the named plaintiffs to show that each **[\*28]** person they identify as a potential opt-in plaintiff has a complete FLSA claim as a result of that common policy or plan.[1]

The "modest showing" is consistent with the Supreme Court's instruction that FLSA is to be liberally construed to achieve its remedial goals. *See Hoffmann-La Roche, , 493 U.S. at 173* ("The broad remedial goal of the [FLSA] should be enforced to the full extent of its terms."); *Braunstein v. Eastern Photographic Laboratories, Inc., 600 F.2d 335, 336 (2d Cir. 1978)* (appropriateness of notice "comports with the broad remedial purpose of the [FLSA], which should be given a

---

[1] The court has also stated that "the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Hertz, 624 F.3d at 555* (quoting *Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997))*.

2020 U.S. Dist. LEXIS 193074, *28

liberal construction, as well as with the interest of the courts in avoiding multiplicity of suits"). It is also consistent with the two-step inquiry. At step two, defendants will have an opportunity to test plaintiffs' assertions and show that "the named plaintiffs and the opt-in plaintiffs do not share one or more issues of law or fact that are material to the disposition of their FLSA claims." *Chipotle, 954 F.3d at 516*.[2] It is consistent with the observable fact that the modern workplace is often organized in a systematic fashion. Thus, absent unusual or idiosyncratic factors, the Court may draw an inference from the evidence that, when potential opt-in plaintiffs share a job title or job responsibilities with the named plaintiffs and **[\*29]** share the same pay with the named plaintiffs, potential opt-in plaintiffs may also have suffered from the same practices made unlawful under FLSA. Finally, it recognizes—as Judge Kaplan of this Court has recognized—that "workers who are poorly educated and non-English speaking" are "[a]mong the people who require the protection of the FLSA" and that they "may have an understandable aversion to courthouses and lawyers." *Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 179 (S.D.N.Y. 2015)*. Such people may be loath to share all of the details of their pay at the step-one stage sufficient for the named plaintiff to plead a complete FLSA violation on their behalf. They may have to do so at the step-two stage and, in any event, defendants will then have the opportunity to challenge the assertions of all who try to opt in.

In the end, however, the Court need not definitely determine whether the named plaintiffs must identify a potential opt-in plaintiff with a complete FLSA claim. The named plaintiffs here have identified two persons with complete FLSA claims who share job requirements with the named plaintiffs. That is sufficient to satisfy step one. *Cuzco v. Orion Builders, Inc., 477 F. Supp. 2d 628, 632 (S.D.N.Y. 2007)* ("[U]nlike class certification under *Fed. R. Civ. P. 23*, 'no showing of numerosity, typicality, commonality and representativeness **[\*30]** need be made' for certification of a representative action.") (quoting *Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005))*.

This case is thus meaningfully different from those in which courts in this District have declined to conditionally certify a FLSA collective. Courts have declined to do so where named

plaintiffs present only conclusory allegations that similarly situated employees exist. In *Morales v. Plantworks, Inc., 2006 U.S. Dist. LEXIS 4267, 2006 WL 278154 (S.D.N.Y. Feb. 2,*

*2006),* for example, the court concluded that a plaintiff's affidavit stating simply that "[t]here are over 20 current and former employees that are similarly situated to Plaintiffs and have been denied minimum wage and overtime compensation" without more was insufficient to make the modest factual showing required. *2006 U.S. Dist. LEXIS 4267, [WL] at \*2*. The court noted that the affidavit and exhibits contained no reference to any Plantwork employee other than plaintiffs and made no allegation of a common policy or plan to deny overtime to plaintiffs. And in *Reyes v. Nidaja, LLC, 2015 U.S. Dist. LEXIS 101728, 2015 WL 4622587*, the court concluded that a plaintiff's mere statement that he had "observed that the other employees who did work at [his workplace] also worked more than forty . . . hours per week, and they too were not paid overtime wages at the rate of time and a half" was too conclusory and unspecific to meet the requirements for conditional **[\*31]** certification. *2015 U.S. Dist. LEXIS 101728, [WL] \*2*. *See also Khan v. Airport Mgmt. Servs., 2011 U.S. Dist. LEXIS 133134, 2011 WL 5597371, at \*3 (S.D.N.Y. Nov. 16, 2011)* (denying conditional certification where plaintiff claimed to have personal knowledge that defendants hired at least 40 similarly situated employees but did not identify the 40 workers by name or specify the source for the claim and where declarations submitted by three former coworkers supplied only vague and conclusory statements). Such conclusory allegations are impossible for a court to test or for defendants to attempt to refute. Easy to make, the conclusory assertions create a moving target to examine. By contrast, here, Maximino and Cruz have not relied on conclusory allegations. They have put forward specific names of other individuals along with work schedules during the time named plaintiffs worked at Joe's Shanghai and, for some individuals, pay rates. The inference that those individuals are similarly situated may not stand up to proof at the end of the day but the pleadings are sufficient both to permit the Court to authorize the sending of notice inviting those who believe they are similarly situated to join in and sufficient for Defendants to defend themselves at step two.

For these reasons, the Court will conditionally certify a class consisting **[\*32]** of kitchen workers at the Flushing Restaurant.

3. Midtown Restaurant Employees

The Court reaches a different conclusion with respect to employees of the Midtown Restaurant. Three individuals, Gloria Perez Mendez, Clara Flores, and Reyes Perez Guerrero, have come forward as named plaintiffs to assert claims on behalf of themselves and those similarly situated. All three were employed in the kitchen during the time period up until the spring of 2017. All three claim not to have been paid overtime and allege that the defendants who owned and

---

[2] Even then, the Second Circuit has emphasized that FLSA sets a lower bar than both *Rule 23* and *Rules 20* and *42 of the Federal Rules of Civil Procedure*. *Id. at 520*.

operated the Midtown Restaurant had a policy and practice of not paying employees the statutory minimum wage or overtime.

Mendes worked in the kitchen of the Midtown Restaurant from March 1, 2016 to March 31, 2017. Dkt. No. 118-7 ¶ 3. She was initially paid $ 9 per hour until January 1, 2017 when her pay was increased to $ 11 per hour. *Id.* ¶¶ 9-10. Mendes claims that she was paid twice per month, partly by cash and partly by check. *Id.* ¶ 12. She alleges that the amounts she received by check and by cash would vary. *Id.* She further claims that she received a paystub with each check that reflected only the amount paid by check, and not the amount paid **[*33]** in cash. *Id.* ¶ 13. Mendes claims that she never received overtime pay for the hours she worked in excess of 40. *Id.* ¶ 14. Instead, she would be paid the basic hourly rate for any overtime hours she worked. *Id.* She claims that she had to sign a timesheet to receive her pay, but that the timesheet did not reflect the actual pay she received. *Id.* ¶ 17.

Mendes identifies one other employee, Clara Flores, who she claims also endured FLSA violations while working at the Midtown Restaurant. *Id.* ¶ 22. Flores is also a named plaintiff in this case.

Flores does not state the dates she worked at the Midtown Restaurant but claims that she never received overtime pay despite working more than forty hours a week and that she was not paid for all of the hours she worked. Dkt. 135-3 ¶¶ 31-33. She never received more than 15 minutes during the work day to eat. *Id.* ¶ 11. She further alleges that the manager, William Ko, would clock her out while she was working, so that her hours would not exceed 40 hours per week. *Id.* ¶ 14. According to her affidavit, Ko required her to sign her paysheets before they were filled out in order to be paid. *Id.* ¶¶ 25-31. Flores does not identify any similarly situated employees **[*34]** in her affidavit.

Reyes Perez Guerrero worked at the Midtown Restaurant from February 2008 until January 15, 2017. Dkt. No. 135-4 ¶¶ 22-23. He states that he received a "Notice and Acknowledgment of Pay Rate and Payday" document, which fixed his rate of pay at $ 9 per hour. *Id.* ¶ 21. However, he claims he was paid a flat $ 600 every half month from February 2008 through July 2011, rather than an hourly wage. *Id.* ¶ 22. He additionally alleges that he was paid a flat rate of $ 675 from July 2011 until the end of his employment on January 15, 2017. *Id.* ¶ 23. He claims that the restaurant required him to sign his paysheets without reading them in order to get paid. *Id.* ¶ 28. He does not state the number of hours he worked per week, but claims that he "did not receive an overtime premium for hours worked in excess of 40 each week." *Id.* ¶ 25. Guerrero does not identify any similarly

situated employees in his affidavit.

Plaintiffs have submitted affidavits from six tipped deliverymen who worked at the Midtown Restaurant spanning the time period from September 1, 2008 to June 29, 2019. Dkt. Nos. 118-12 ¶ 3, 118-13 ¶ 3. Five of the deliverymen have signed consents to join the actions. One, Shun **[*35]** Hai Zhang, has not. Plaintiffs have submitted one additional affidavit from Daniel Cortez Jiminez, a Midtown Restaurant employee who has not filed a consent to the join the action. Dkt. No. 118-19. Jiminez does not state what his job was at the restaurant, but his work schedule is consistent with those of the other deliverymen.

According to the affidavit of Ko, the Midtown Restaurant's manager, the structure of the hours and pay for deliverymen differ from those of kitchen workers. Dkt. No. 127 at 15.; Dkt. No. 124 ¶ 6, ¶ 7 (stating "[t]he working conditions and wages of deliverymen vastly differ from the working conditions and wages of kitchen workers"). Deliverymen were tipped, while those who worked in the kitchen were not. The difference is significant; tips can make a difference in a FLSA case. In addition, deliverymen never work more than 40 hours per week because overtime payments would make food delivery unprofitable. Dkt. 124 ¶ 6.

The deliverymen do not dispute that they worked no more than 40 hours per week delivering food. Their allegation is different. Except for Jiminez, all deliverymen allege that in addition to the forty hours they worked as deliverymen, they were forced **[*36]** to work an additional two hours per day in the restaurant, for which they were not compensated at all. Yan, for instance, avers that during his breaks he "had to do side work such as prepare sauce, help as waiter, load goods to the restaurant, wash the dishes, and check the inventory of the restaurant." Dkt. No. 118-12 ¶ 7; *see also* Dkt. No. 118-13 ¶ 7; Dkt. No. 118-14 ¶ 8. Some allege that they were paid less than the minimum hourly wage at different points during their employment. Dkt. No. 118-13 ¶ 12; Dkt. No. 118-14 ¶ 13; Dkt. No. 118-15 ¶ 12. All allege that they worked more than forty hours per week once the unpaid work in the kitchen during their breaks is included and that they were not compensated at time and a half for this overtime work. *See, e.g.*, Dkt. No. 118-17 ¶ 15.

The plaintiffs have failed to make the modest showing necessary to support conditional certification with respect to the Midtown Restaurant. First, the named plaintiffs do not identify anyone who is similarly situated to them "with respect to their job requirements and with regard to their pay provisions," *Hertz, 624 F.3d at 555*. Nor do Plaintiffs identify anyone, regardless of job requirements, who "were victims of a common policy **[*37]** or plan that violated the law." *Id.*

2020 U.S. Dist. LEXIS 193074, *37

None of the named plaintiffs are alleged to have continued working past March 2017, more than three years ago. Thus, and as further discussed below, *see infra* pp. 28-32, absent exceptional circumstances, any kitchen worker or other employee who would now seek to join the collective could not assert FLSA claims for policies and practices that occurred during the time period of the named plaintiffs' employment. Those claims would be time-barred. *29 U.S.C. § 255(a)*.[3]

The termination of the named plaintiffs' employment prior to the earliest date for which an opt-in might be able to timely allege a FLSA violation would not necessarily be fatal to conditional certification if there was evidence or a basis to believe that the unlawful policy or plan continued into the period for which claims would be ripe. *cf. In re Oxford Health Plans, Inc. Sec. Litig., 199 F.R.D. 119, 123 (S.D.N.Y. 2001)* ("Typicality . . . does not require that the situations of the named representatives and the class members are identical."); *In re Elan Corp. Sec. Litig., 2002 U.S. Dist. LEXIS 23162, 2002 WL 31720410, at *5 (S.D.N.Y. Dec. 3, 2002)* (holding that typicality was satisfied where "all of the putative class members' claims arise out of their acquisition of . . . securities—through purchase or otherwise—during the class period"); *City of Livonia Emps'. Ret. Sys. v. Wyeth, 284 F.R.D. 173, 178 (S.D.N.Y. 2012)* ("[T]he post-disclosure purchase of . . . additional shares **[*38]** . . . will not necessarily present individual issues of reliance that render the investor atypical or inadequate to represent the class members who did not purchase such additional shares.") (quoting *In re Monster Worldwide, Inc. Sec. Litig., 251 F.R.D. 132, 135 (S.D.N.Y. 2008)*.[4]

Here, however, the affidavits of the named plaintiffs provide no evidence of a continuation of an unlawful practice. Indeed, at the tail end of the named plaintiffs' employment, in October 2016, and then again months after that employment ended, in February 2018, the Midtown Restaurant was the target of FLSA lawsuits challenging the pay policies and pay structure in the restaurant's kitchen. The plaintiffs in those lawsuits

alleged, as Plaintiffs do here, that Defendants paid flat weekly and monthly rates and did not compensate their employees for overtime hours worked. *See* Compl. [Dkt. 1], *Jin v. Shanghai Original, Inc.*, No. 16-cv-5633 (E.D.N.Y. Oct. 7, 2016) ¶¶ 37-38, 53, 60; Compl. [Dkt. 1], *Lin v. Shanghai Original, Inc.*, No. 18-cv-0886 (E.D.N.Y. Feb. 9, 2018) ¶¶ 83, 87, 111-12, 163-66. Accordingly, to find that there are employees similarly situated to the named plaintiffs who have ripe FLSA claims as the result of a common policy or practice, the Court would have to **[*39]** indulge the assumption that—notwithstanding and in the face of a lawsuit challenging their pay practices—the Midtown defendants persisted in their illegal conduct. The Court would be prepared to indulge that notion in a case where there was evidence to support it. But here the named plaintiffs offer none.

Second, although the claims of some of the deliverymen (those who filed consents) extend into the time period covered by named plaintiffs' allegations, anyone who now joined the collective also necessarily would be asserting claims post-dating the end of the named plaintiffs' employment. More importantly, the job requirements and the pay provisions with respect to the deliverymen were fundamentally different from those of the named plaintiffs who worked in the kitchen. The deliverymen worked outside of the restaurant and were tipped. Dkt. No. 124 ¶ 6. It is undisputed that they were never forced to work more than forty hours delivering food. They do not claim—as the named plaintiffs do—that they were paid a flat fee with no provision for overtime hours. Rather, they claim that they were forced to work in the restaurant during their breaks as a matter of practice without being paid **[*40]** at all. No delivery person is identified as a named plaintiff. Thus, although the allegations of the deliverymen would be sufficient to support a FLSA collective in a case where a delivery person stepped forward to be named plaintiff, they are not sufficient to support a collective where the only named plaintiffs are those who worked in the kitchen until 2017.

For these reasons, the Court will not conditionally certify a class consisting of kitchen workers and deliverymen who worked at the Midtown Restaurant.

## C. Equitable Tolling of the Statute of Limitations

Plaintiffs ask the Court to enter an order equitably tolling the statute of limitations for the period of time during which the motion for conditional class certification was pending. Dkt. No. 136 at 7-8.

*Section 255* of Title 29 states that an action for a FLSA violation "may be commenced within two years after the cause of action accrued." *29 U.S.C. § 255(a)*. It further

---

[3] That would be so even if the employee had filed a consent on the date named plaintiffs moved for conditional certification or the Court tolled the time period from the date of the motion for conditional certification. The motion was filed on June 15, 2020. Dkt. No. 117.

[4] It follows, *a fortiori*, that if the adequacy and typicality requirements of *Rule 23* do not preclude a named plaintiff from representing putative class members whose claims arise after the date of their claims, the more relaxed FLSA "similarly situated" standard does not impose such a restriction. *See Chipotle, 954 F.3d at 517* (holding that FLSA does not import the *Rule 23* standards for adequacy and typicality).

provides that "every such action [i.e., for a FLSA violation] shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." **[*41]** *Id.* Section 256, in turn, provides that: "In determining when an action is commenced for the purposes of section 255 of this title . . . in the case of a collective or class action instituted under the Fair Labor Standards Act of 1938, as amended, . . . it shall be considered to be commenced in the case of any individual claimant (a) on the date when the complaint is filed, if he is specially named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or (b) if such written consent was not so filed or if his named did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced." 29 U.S.C. § 256.

The doctrine of equitable tolling allows a court to extend a statute of limitations "on a case-by-case basis to prevent inequity." *Warren v. Garvin, 219 F.3d 111, 113 (2d Cir. 2000)*. The Supreme Court has held that equitable tolling should generally be available only when a litigant can show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005)*; *see also A.Q.C. ex rel. Castillo v. United States, 656 F.3d 135, 144 (2d Cir. 2011)* ("[E]quitable tolling is considered a drastic remedy applicable only in rare and exceptional circumstances."). **[*42]**

There is a division of authority among the courts in this District as to whether and when a court should toll the FLSA statute of limitations. Some courts have held that when no evidence has been presented that there are opt-in plaintiffs who are eligible for equitable tolling, such a determination must await case-by-case treatment after the plaintiffs opt in. *See, e.g., Knox v. John Varvatos Enterprises, Inc., 282 F. Supp. 3d 644, 659 (S.D.N.Y. 2017)* (holding that the court had no basis for making a ruling on equitable tolling when "there has been no showing that [current or future opt-in plaintiffs] have met the 'diligence' prong of the equitable tolling doctrine."); *Zhongle Chen v. Kicho Corporation, 2020 U.S. Dist. LEXIS 67935, 2020 WL 1900582, at *13 (S.D.N.Y. Apr. 17, 2020)* (denying plaintiff's request for equitable tolling without prejudice until the issue was actually raised by an opt-in plaintiff). Others have held that the time required for a court to rule on an FLSA conditional class certification motion can, in and of itself, qualify as an "'extraordinary circumstance' justifying application of the equitable tolling doctrine." *McGlone v. Contract Callers, Inc., 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012)* (quoting *Yahraes v. Restaurant*

*Assocs. Events Corp., 2011 U.S. Dist. LEXIS 23115, 2011 WL 844963, at *1 (E.D.N.Y. Mar. 8, 2011))*.

Superficially, it might appear that the broader rule is justified and equitable tolling should be permitted by analogy to the tolling permitted under the rule of *American Pipe* once a class action has been filed under Rule 23. *See American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974)*. Under **[*43]** *American Pipe*, the timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the complaint. *See, e.g., China Agritech Inc. v. Resh, 138 S. Ct. 1800, 1803-4, 201 L. Ed. 2d 123, (2018)* ("[T]he timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint."); *Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 353, 103 S. Ct. 2392, 76 L. Ed. 2d 628 (1983)* (clarifying that the *American Pipe* rule applies to putative class members who, after denial of class certification, "prefer to bring an individual suit rather than intervene."). By analogy, the making of a motion for conditional certification would toll the statute of limitations for all sought to be made part of the FLSA collective.

The resemblance between the two, however, is only superficial. *American Pipe* permitted tolling of the statute of limitations during the consideration of a class certification motion because that "result was consistent 'both with the procedures of Rule 23 and with the proper function of the limitations statute' at issue." *California Pub. Emps.' Ret. Sys. v. ANZ Secs., Inc., 137 S.Ct. 2042, 2051, 198 L. Ed. 2d 584 (2017)* (quoting *American Pipe, 414 U.S. at 555*). The limitations provisions of the Clayton Act at issue in *American Pipe* were not intended to "grant complete peace to defendants." *Id. at 2052*. They admitted of the possibility of equitable tolling. *See id. at 2050* ("[W]hether a tolling rule applies to a given statutory **[*44]** time bar is one of statutory intent.") (internal citations and quotation marks omitted). Moreover, the contrary rule under which the time clock would keep running during the pendency of a class certification motion and that tolling would not be available "would deprive Rule 23 class actions of the efficiency and economy of litigation which is the principal purpose of the procedure." *American Pipe, 414 U.S. at 553*. This is because "without tolling, '[p]otential class members would be induced to file protective motions to intervene or to join in the event that a class was later found unsuitable.'" *China Agritech, 138 S.Ct. at 1806* (quoting *American Pipe, 414 U.S. at 553*). Further, plaintiffs who await a decision on a class certification motion before filing their own lawsuit cannot be said to have "slept on their rights." *Id. at 1808* (quoting *American Pipe, 414 U.S. at 555*). During the pendency of the class action, class members may reasonably rely on the class representative "to protect their interests in their individual claims." *Id.*

2020 U.S. Dist. LEXIS 193074, *44

The rationales that underlie the Supreme Court's authorization of equitable tolling in *Rule 23* cases differ sharply from those in *Section 216(b)* cases. Congress did not prohibit tolling in passing *Section 13* of the *Securities Act* and *Section 4* of the *Clayton Act*, the statutes at issue in *ANZ Securities* and *American Pipe*. However, **[\*45]** on its face, the second clause of *Section 255* of FLSA, providing that a FLSA cause of action "shall be forever barred unless commenced within two years after the cause of action accrued," except for the limited circumstance of a willful violation, appears to be inconsistent with at least the broad implication of any notion of equitable tolling. Any other interpretation would appear to render the language of the second clause regarding the two-year limitation surplusage. *29 U.S.C. §§ 255(a)*, *256*. Moreover, unlike with respect to a *Rule 23* class action, there is no reason for any putative member of the collective to withhold a consent to join during the pendency of a motion for condition certification and thus no efficiency or economy to be served by permitting tolling during that period. Congress required any would-be collective action member to take affirmative action and to file a consent with the court to be the beneficiary of an action filed purportedly on his or her behalf, regardless whether a motion for conditional certification was granted. And a putative member of the collective has the same right, and therefore presumptively the corollary obligation, to file a consent both before and after the granting of a motion **[\*46]** to be able to timely pursue a claim.

Finally, the argument that a defendant in an opt-out class action lawsuit is not prejudiced by a rule equitably tolling the statute of limitations during the certification motion simply does not apply to a FLSA collective action. Defendants suffer no prejudice by application of equitable tolling because once a putative class action is filed they should reasonably expect exposure to all members of the putative class; the only way a defendant can avoid such exposure assuming a class is certified is if a putative class member affirmatively opts out. *American Pipe, 414 U.S. at 555* ("Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation, whether the actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with additional intervenors."). Indeed, until the class certification motion is denied, defendants have no reliance expectation in a class not being certified. The same cannot be said of a FLSA collective. Regardless of whether a collective is "certified" and notice is authorized, a FLSA claimant must engage in **[\*47]** the affirmative act of opting in. Thus, regardless of whether an action is certified and notice is sent, the defendant has a protectible expectation created by statute that it will face suit only from those who timely consent to opt in. The notice has no independent legal significance. *See Contrera v. Langer, 278 F. Supp. 3d 702,*

*726 (S.D.N.Y. 2017)* ("[O]ne of the purposes of the FLSA is to protect employers from suits that accrue more than three years before that date.").

In the end, the Court need not now decide whether the second clause of *Section 216(b)* establishes a statute of repose precluding *any* equitable tolling or whether it is merely a statute of limitations permitting tolling. *See ANZ Securities, 137 S.Ct at 2052* ("[A] statute of repose . . . supersedes the application of a tolling rule based in equity."). The Court will wait to make a determination until it is confronted with individualized facts showing that a plaintiff whose claims accrued prior to the statute of limitations has been diligent in pursuing those claims. However, it is clear that the language of FLSA and the Supreme Court's holdings do not allow for a rule of equitable tolling similar to *American Pipe* whereby the statute stops running merely upon the filing of a FLSA claim or a motion for conditional certification. **[\*48]** Plaintiffs' application for that relief is denied.

### III. Request for Disclosure of Contact Information

Plaintiffs ask that Defendants be ordered to produce a Microsoft Excel data file containing contact information including, but not limited to, last known mailing addresses, last known telephone numbers, last known email addresses, last known WhatsApp, WeChat and/or Facebook usernames, work location, dates of employment, and position of potential opt-in plaintiffs. Dkt. No. 119 at 18. Defendants object that "the Excel data file/spreadsheet requested by Plaintiffs does not exist and cannot be generated because Defendants do not prepare or maintain Excel or other electronic data files/spreadsheets for all of their employees." Dkt. No. 217 at 18.

The Supreme Court has held that district courts have authority "to permit discovery of the names and addresses" of potential members of the collective action. *Hoffmann-La Roche, 110 S. Ct. at 486*. Thus, in furtherance of the general purposes of FLSA, "[c]ourts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with the conditional certification of a FLSA collective action." **[\*49]** *Benavides v. Serenity Spa NY Inc., 166 F. Supp. 3d 474, 488 (S.D.N.Y. 2016)*; *see also John Varvatos, 282 F. Supp.3d at 663 (S.D.N.Y. 2017)* (same).

Ordinarily, the Federal Rules give the party responding to a discovery request the right to produce documents as they are kept in the usual course of business and do not give the requesting party the right to dictate how discovery material is organized. *See Fed. R. Civ. P. 34(b)(2)(E)(i)* ("A party must

produce documents as they are kept in the usual course of business."). Plaintiffs have not provided any reason, and the Court has identified none, why the Court should depart from that general rule. *See Hoffmann-La Roche, 493 U.S. at 170* (noting that authority of court to manage the process of joining multiple parties must not be contrary to the provisions of the Federal Rules of Civil Procedure). The fact that Defendants do not maintain the information in an electronic database or spreadsheet form, however, does not relieve them of the obligation to produce such information as they have. *See Zhongle Chen, 2020 U.S. Dist. LEXIS 67935, 2020 WL 1900582, at *9* (ordering production of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective action members" as well as "social media handles" and "other contact information"). Thus, the Defendants with respect to the Flushing Restaurant are ordered to produce the contact information of potential members of **[*50]** the opt-in class in the form they have it.

## IV. The Proposed Notice

Plaintiffs propose a Notice of Pendency and Consent Form that advises all potential opt-in plaintiffs of their right to join the action. Dkt. No. 119 at 20. Plaintiffs plan to disseminate this notice "in any relevant language, via mail, email, text message, or social media group and individual chat and posts, to all potential members of the collective." *Id.* Plaintiffs propose posting the notice on their website, contacting potential opt-in Plaintiffs using contact information provided by Defendants, and posting the notice in Defendants' restaurants and including it in current employees' pay envelopes. *Id.* at 21-22. Plaintiffs argue that a 90-day opt-in period is necessary for potential opt-in Plaintiffs to join the action. *Id.* at 23.

Defendants raise four objections to Plaintiffs' proposed notice. Dkt. No. 127 at 18. First, Defendants ask that the Court require Plaintiffs to mail the notice, rather than posting it on Plaintiffs' website or otherwise disseminating it through the internet. *Id.* Second, Defendants request that the notice include a statement that Defendants deny the claims and are represented by Fong & Wong P.C., their counsel. **[*51]** *Id.* Third, Defendants ask for a 60-day opt-in period rather than the 90 days that Plaintiffs request. *Id.* Fourth, Defendants request that the notice indicate that Plaintiffs' lawyers' fees will be fixed by the Court in its discretion. *Id.* Finally, the Court—on its own motion—addresses what the notice should say about who is eligible for participation in the collective action.

## A. Dissemination of Notice

Plaintiffs ask for the Court's leave to post notice of the conditional class on their website and on social media platforms. Defendants argue that notice should be by paper only. Plaintiffs point out that courts in this District have authorized notice to be posted on websites and on social media. *See, e.g., Quiang Lu v. Purple Sushi Inc., 447 F. Supp. 3d 89, 97 (S.D.N.Y. 2020)* (permitting notice to be posted on plaintiffs' counsel's website); *Varghese v. JP Morgan Chase & Co., 2016 U.S. Dist. LEXIS 122428, 2016 WL 4718413, at *9 (S.D.N.Y. Sept. 9, 2016)* (authorizing the dissemination of notice via website); *see also Mark v. Gawker Media LLC, 2014 U.S. Dist. LEXIS 155424, 2014 WL 5557489, at *3 (S.D.N.Y. Nov. 3, 2014)* (authorizing the use of social media messaging to provide notice, but declining to allow Plaintiffs to post notice on their website). *But see Zhongle Chen, 2020 U.S. Dist. LEXIS 67935, 2020 WL 1900582, at *10 (S.D.N.Y. Apr. 17, 2020)* (holding that plaintiffs could not post notice on counsel's website where the court was unconvinced that "posting the full opt-in notice . . . would increase the likelihood that the notice [would] reach potential **[*52]** opt-in plaintiffs").

There is no clear guidance in the Circuit on the factors the Court is to consider in determining what notice is appropriate and, in particular, in ruling on objections by Defendants to giving more notice to putative collective action members. Several factors appear to be relevant. First, although the collective action will not resolve the claims of those who do not join and thus does not present the same due process issues as a opt-out class action, notice still should be reasonably designed to reach as many members of the collective action as possible. *Quiang Lu, 447 F. Supp. 3d at 97* ("[A court] must consider putative class members' interest in possibly joining the litigation, the possibility that some members may not have phone numbers or stable addresses, and efficient administration of this case."). Second, the Court should be sensitive to the fact that the notice is different in nature than a common advertisement. Coming as it does with judicial review and inviting participation in a judicial proceeding, it shares some (but not all) of the qualities of a judicial document and should be handled with the corresponding respect and dignity. Third, the Court should be sensitive to the privacy **[*53]** and reputational interests of the defendants confronted with allegations that, although they may not be true, are virtually sure to be harmful.

Balancing these considerations, the Court grants Plaintiffs' application — with one important caveat discussed below. The Court will permit posting notice on counsel's website and on social media and disagrees that in this day and age posting on social media would be "too informal" a method of giving notice. Dkt. No. 147 at 19:13. Social media is now used to convey all kinds of important messages to the populace and

has become an important means of receiving information. The Court sees no reason that potential opt-in plaintiffs should be deprived of that means of notice and communication. In addition, and importantly, defendants do not argue in this case that posting by social media or on counsel's website would compromise their reputational or privacy interests.

On the other hand, with respect to both social media accounts and counsel's website, Defendants are correct that the Court should control the content of the message. Plaintiffs and Defendants should discuss the contents of any social media or website postings and submit a letter to the **[*54]** Court describing the postings and any disputes about the postings. Courts in this District have come to the same conclusion when evaluating notice by social media. *See, e.g., Gawker, 2014 U.S. Dist. LEXIS 155424, 2014 WL 5557489, at *5* ("Before disseminating any notice by social media, the [p]laintiffs shall confer with [d]efendants over the form and substance of any proposed social media postings, and submit to the court a joint letter describing the postings and any disputes about their contents that the parties cannot resolve themselves.").

**B. Identification of Defense Counsel**

Plaintiffs ask that the notice not include information about Defendants' counsel. Dkt. No. 119 at 21. Defendants ask that it be included. Dkt. No. 127 at 18.

District courts maintain discretion to determine the content of notices sent pursuant to *Section 216(b)*. "The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate." *John Varvatos, 282 F. Supp. 3d at 664* (quoting *Whitehorn, 767 F. Supp. 2d at 450*). The Court should reject proposed notices that are "unduly argumentative, meant to discourage participation in the lawsuit, or are unnecessary **[*55]** or misleading." *Id.*

The Court will allow the statement that Defendants deny the claims and that Defendants are represented in this action by Fong & Wang, P.C. "[C]ourts in this Circuit . . . have generally concluded that the contact information of Defendants' counsel is appropriate for inclusion in a notice of collective action." *Zhongle Chen., 2020 U.S. Dist. LEXIS 67935, 2020 WL 1900582, at *10* (quoting *Bittencourt v. Ferrara Bakery & Café Inc., 310 F.R.D. 106, 118 (S.D.N.Y. 2015))*. Plaintiffs have presented no compelling reasons why informing potential opt-ins of Defendants' representation would be prejudicial. Accordingly, notice will include the language: "Defendants are represented by Fong & Wang, P.C.

If you choose to join this case, you should not contact the Defendants' lawyers directly yourself."

**C. Opt-In Period**

Plaintiffs ask for a 90-day period for potential members of the class to opt in. Defendants counter that a 60-day period is enough and more in keeping with the practices of courts in this District.

A court setting a deadline for putative collective action members to opt into the action must balance competing considerations. The time period must be sufficiently long so that notice can reach similarly situated employees and former employees and so that they can make a considered decision whether to join the collective **[*56]** action and take the necessary steps to do so. On the other hand, each party and the Court have an interest—recognized by the Federal Rules of Civil Procedure—in the "speedy" determination of the action. *Fed. R. Civ. P. 1*; *16(a)* (recognizing responsibility of the court to enter orders for the purpose of "expediting disposition of the action" and ensuring "that the case will not be protected because of lack of management").

Courts in this District "routinely grant opt-in periods of 60-days after conditional certification in FLSA cases." *Zhongle Chen., 2020 U.S. Dist. LEXIS 67935, 2020 WL 1900582, at *11*; *Gawker, 2014 U.S. Dist. LEXIS 155424, 2014 WL 5557489, at *3* ("[C]ourts in this district have coalesced around a standard 60-day notice period."). "While some courts have granted up to 90 day opt-in periods, they generally do so where the period is agreed upon between the parties or special circumstances require an extended opt-in period." *Whitehorn, 767 F. Supp. 2d at 452*. However, courts sometimes authorize longer periods when Plaintiffs make a showing that such an extended period of time is necessary, as, for example, "where the pool of prospective plaintiffs consists of transient laborers." *Fang v. Zhuang, 2010 U.S. Dist. LEXIS 133618, 2010 WL 5261197, at *4 (E.D.N.Y. Dec. 1, 2010)*.

Plaintiffs have not made a showing that a 90-day opt-in period is necessary here. Plaintiffs offer as reasons only that they have "identified several foreign-born workers **[*57]** who are apt to travel abroad for long periods of time" and "the COVID-19 pandemic." Dkt. No. 139 at 10. In the absence of a more fulsome showing that a special dispensation for a 90-day opt-in is required, the Court denies Plaintiffs' request.

**D. Lawyer's Fees**

Defendants ask that the section of the notice concerning how

2020 U.S. Dist. LEXIS 193074, *57

Plaintiffs' lawyers will be paid should reflect that the Court will fix the fees in its discretion. Dkt. No. 127 at 18. Plaintiffs have not objected to this in their briefing. The Court orders Plaintiffs to include this information in the notice.

### E. The Proposed Notice and Who Should Receive It

The Court must also address who should receive the notice and what the notice should say about who is eligible for participation in the collective. The Court treads in part on familiar ground. "Because equitable tolling issues often arise as to individual opt-in plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date." *Gaspar v. Personal Touch Moving, Inc., 2014 U.S. Dist. LEXIS 129856, 2014 WL 4593944, at *7 (S.D.N.Y. Sept. 15, 2014)*. Thus, the Court accepts the Plaintiffs' proposal that notice be sent and **[*58]** addressed to current and former employees who worked at the Flushing Restaurant at any time within three years prior to the filing of the complaint. Dkt. No. 188-4 at 1.

At the same time, the notice must be accurate. *John Varvatos, 282 F. Supp. 3d at 664*. It should inform current and former employees that named plaintiffs allege both willful and non-willful violations of FLSA and that the language of FLSA permits a plaintiff to assert FLSA claims for non-willful violations only for the two years from when a consent is filed and for willful violations only for three years from when a consent is filed. It also should inform potential collective members in plain English that Plaintiffs argue that the running of the two and three year period can be suspended for certain equitable reasons and that claims can be brought for violations that precede the two and three years from the filing of the consent and that Defendants disagree and contend that the time limits are not subject to any exceptions. Finally, the notice should inform potential collective members that while the Court may ultimately agree that for certain plaintiffs the time limitations are suspended, there can be no assurance that the Court will reach that result **[*59]** and that accordingly it will be in the interest of those who wish to participate in the collective to file their consents expeditiously.

### CONCLUSION

The Court dismisses the claims of Huer Huang and Hui Zhen Huang. Additionally, the Court imposes $ 3,300.00 in costs on Plaintiffs for their failure to produce Lu, Li, and Zhai for their depositions. Plaintiffs are further ordered to produce the responses to Li's interrogatories by October 14, 2020.

The Court declines to certify a collective action for employees of the Midtown Restaurant.

The Court conditionally certifies a collective action represented by named plaintiffs Aragon Cardoso Cruz and Maximino Raymundo concerning Defendants' alleged "common policy of (i) not paying Plaintiffs for all the hours they worked, (ii) failure to pay Plaintiffs at least the minimum wage for each hour worked, and (iii) failure to pay at least the one and one half (1.5x) rate the equivalent hourly rate or the minimum wage, whichever is higher, for each hour worked in excess of forty (40) hours in a work week." Dkt. No. 119 at 14. The conditional class includes "the named [p]laintiff[s] and all nonexempt current and former employees of Defendants . . . who **[*60]** performed work as non-exempt, non-managerial [kitchen workers] from August 16, 2016 to present" at the Flushing Restaurant. Dkt. No. 135 at 2.

Plaintiffs shall submit a revised form of notice to the Court for its approval within two weeks of the date of this Order.

SO ORDERED.

Dated: October 19, 2020

New York, New York

/s/ Lewis J. Liman

LEWIS J. LIMAN

United States District Judge

---

Denise Schulman