**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X
**NINO MARTINENKO, on behalf of herself and others**          Civil Action No.: 22 CV 518
**similarly situated,**

**Plaintiff,**

**-against-**

**212 STEAKHOUSE, INC., and NIKOLAY VOLPER**

**Defendants.**
-------------------------------------------------------------------------X


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION FOR CLASS CERTIFICATION**


D. Maimon Kirschenbaum
Denise A. Schulman
Michael DiGiulio
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 981-9587 (fax)


*Attorneys for Plaintiff, Opt-In Plaintiffs, and proposed Class*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ i

I.      PRELIMINARY STATEMENT ........................................................................... 1

II.     BACKGROUND ................................................................................................. 2

    A.    Procedural History .................................................................................... 2

    B.    Plaintiff Seeks Sanctions For Defendants' Violations Of The Court's Discovery
Orders.......................................................................................................... 3

    C.    Defendants Were Not Entitled To Pay Putative Class Members Pursuant To The Tip
Credit ......................................................................................................... 5

    D.    Defendants Failed To Pay Tipped Employees The Overtime And Spread Of Hours
Premiums .................................................................................................... 7

    E.    Defendants Failed To Give Tipped Employees The Wage Notices And Statements
Required Under The WTPA ........................................................................ 9

III.    ARGUMENT ...................................................................................................... 10

    A.    Plaintiffs Satisfy The Requirements For Class Certification Under Fed. Civ. P. 23 10

    B.    Plaintiffs Satisfy the Requirements of Rule 23(a) ...................................... 11

      i.    Numerosity – Rule 23(a)(1) ............................................................... 11

      ii.    Commonality – Rule 23(a)(2) ........................................................... 13

      iii.    Typicality – Rule 23(a)(3)................................................................. 16

      iv.    Adequacy – Rule 23(a)(4) ................................................................. 17

      v.    Rule 23(A)'s implied ascertainability requirement .............................. 18

    C.    Class Certification Under Rule 23(b)(3) Is Appropriate................................. 18

      i.    Common questions of law and fact predominate ..................................... 19

      ii.    A class action is superior to other methods of adjudication...................... 19

    D.    Plaintiffs' Counsel Should be Appointed as Class Counsel .......................... 21

E.      The Proposed Notices Satisfies The Requirements Of Rule 23(C)(2)(B) ..................... 22

F.      If The Class Is Not Certified, Opt-In Plaintiff Dagmara Huk Should Be Added As A Named Plaintiff............................................................................................................ 22

IV.   CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. May 24, 2001). 14

*Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, No. 14 Civ. 5269,
    2016 U.S. Dist. LEXIS 127425 (E.D.N.Y. Sept. 16, 2016)................................ 10

*Balverde v. Lunella Ristorante, Inc.*, No. 15 Civ. 5518,
    2017 U.S. Dist. LEXIS 59778 (S.D.N.Y. Apr. 19, 2017).................................. 11,12

*Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010).................................................................. 18

*Cano v. DPNY, Inc.*, 287 F.R.D. 251 (S.D.N.Y. 2012) .................................................. 24

*Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283 (2d Cir. 1999) ........................ 17

*Chang v. Louis Amsterdam, Inc.*, No. 19 CV 3056,
    2022 U.S. Dist. LEXIS 177606 (E.D.N.Y. Sept. 29, 2022).............................. 7

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008)............................... 16

*DeJesus v. HF Mgmt. Servs.*, 726 F.3d 85 (2d Cir. 2013) ............................................ 8

*D'Arpa v. Runway Towing Corp.*, No. 12 CV 1120,
    2013 U.S. Dist. LEXIS 85697 (E.D.N.Y. June 18, 2013) ................................ 12

*Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125 (S.D.N.Y. 2003)............................ 18

*Flores v. Anjost Corp.*, 284 F.R.D. 112 (S.D.N.Y. 2012) ............................................ 11

*Foman v. Davis*, 371 U.S. 178 (1962) ........................................................................... 24

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005)................................. 11,14

*Freeland v. AT&T Corp.*, 238 F.R.D. 130 (S.D.N.Y. 2006) ......................................... 13

*Galvez v. 800 Ginza Sushi, Inc.*, No. 19 CV 8549,
    2022 U.S. Dist. LEXIS 43523 (S.D.N.Y. Mar. 11, 2022) ................................ 7

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 281 F.R.D. 100 (E.D.N.Y. 2011).. 17

*Garcia v. Saigon Mkt. LLC*, No. 15 CV 9433,
    2019 U.S. Dist. LEXIS 163259 (S.D.N.Y. Sept. 4, 2019)................................ 9

*Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385 (N.D.N.Y. 2011).............. 18

*Hernandez v. JRPAC Inc.*, No. 14 Civ. 4176,
    2016 U.S. Dist. LEXIS 75430 (S.D.N.Y. June 9, 2016)................................... 7

*Iglesias-Mendoza v. La Bella Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007) ............... 14

*In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285 (2d Cir. 1992) ..................... 16

*In re US Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013)........................ 19

*In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) ............. 19

*Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152 (S.D.N.Y. 2014) .................................... 13

*Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128 (2d Cir. 2015) .................................. 10

*Kassner v. 2nd Ave. Deli., Inc.*, 496 F.3d 229 (2d Cir. 2007) ........................................ 22,23

*Lee v. ABC Carpet & Home*, 236 F.R.D. 193 (S.D.N.Y. 2006) .................................... 17

*Lincoln v. Potter*, 418 F. Supp. 2d 443 (S.D.N.Y. 2006)............................................... 22

*Lomeli v. Falkirk Mgmt. Corp.*, Index. No. EF001580-2016
    (N.Y. Sup. Ct. Orange County Oct. 13, 2012)................................................... 21

*Lopez v. MNAF Pizzeria, Inc.*, No. 18 CV 6033,
    2021 U.S. Dist. LEXIS 57260 (S.D.N.Y. Mar. 25, 2021) ................................ 7

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) .................................................... 16

*Megason v. Starjem Rest. Corp.*, No. 12 Civ. 1299,
    2014 U.S. Dist. LEXIS 3910 (S.D.N.Y. Jan. 10, 2014)................................... 15,19,21

*Mendez v. Pizza on Stone, LLC*, No. 11 Civ. 6316,
    2012 U.S. Dist. LEXIS 108605 (S.D.N.Y. Aug. 1, 2012) ................................ 15

*Mogollan v. La Abundancia Bakery & Rest., Inc.*, No. 18 CV 3202,
    2020 U.S. Dist. LEXIS 183436 (S.D.N.Y. Sept. 30, 2020)............................... 23

*Murphy v. Lajaunie*, No. 13 CV 6503,
    2015 U.S. Dist. LEXIS 97531 (S.D.N.Y. July 24, 2015) ................................. 15,21

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010)....................................................... 11,20

*Niemiec v. Ann Bendick Realty*, No. 04 Civ. 897,
    2007 U.S. Dist. LEXIS 97531 (E.D.N.Y. Apr. 23, 2007) ................................. 21

*Niemiec v. Ann Bendick Realty*, No. 04 Civ. 897,
    2007 U.S. Dist. LEXIS 98840 (E.D.N.Y. Mar. 30, 2007) ................................ 21

*Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330 (S.D.N.Y. 2004) ................................ 21

*Omar v. 1 Front St. Grimaldi, Inc.*, No. 16 CV 5824,
    2019 U.S. Dist. LEXIS 4242 (E.D.N.Y. Jan. 8, 2019) ..................................... 12,13

*Parker v. Columbia Pictures Indus.*, 204 F.3d 326 (2d Cir. 2000) ............................... 22

*Poplawski v. Metroplex on the Atl., LLC*, No. 11 CV 3765,
    2012 U.S. Dist. LEXIS 46408 (E.D.N.Y. Apr. 2, 2012) ................................. 13

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ........................................................ 11,12,16

*Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442 (S.D.N.Y. 2015) ........................ 7

*Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540 (S.D.N.Y. 2017) .............. 6

*Sanchez v. N.Y. Kimchi Catering, Corp.*, 320 F.r.D. 366 (S.D.N.Y. 2017) ................... 15

*Schear v. Food Scope Amer., Inc.*, 297 F.R.D. 114 (S.D.N.Y. 2014) ........................... *passim*

*Shahriar v. Smith & Wollensky Rest. Group*, 659 F.3d 234 (2d Cir. 2011) .................. *passim*

*Shepard v. Rhea*, No. 12 CV 7220,
    2014 U.S. Dist. LEXIS 158189 (S.D.N.Y. Nov. 7, 2014) ................................ 14

*Spencer v. No Parking Today, Inc.*, No. 12 Civ. 6323,
    2013 U.S. Dist. LEXIS 80587 (S.D.N.Y. June 7, 2013) ................................... 13

*Spencer v. No Parking Today, Inc.*, No. 12 Civ. 6323,
    2013 U.S. Dist. LEXIS 36357 (S.D.N.Y. Mar. 15, 2013) ................................ 13

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y. 2010) ................................. *passim*

*Teamsters Local 445 Freight Div. Pension Fund v. Bombadier Inc.*,
    546 F.3d 196 (2d Cir. 2008) .......................................................................... 10,11

*Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18 CV 7342,
    2022 U.S. Dist. LEXIS 34090 (S.D.N.Y. Feb. 25, 2022) ................................ 6,7

*Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316,
   2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 29, 2006)................................ 20

*Trinidad v. Breakaway Courier Sys.*, No. 05 Civ. 4116,
   2007 U.S. Dist. LEXIS 2914 (S.D.N.Y. Jan. 12, 2007).................................... 20

*Vargas v. Howard*, 324 F.R.D. 319 (S.D.N.Y. 2018)..................................... *passim*

*Velez v. 111 Atlas Rest. Corp.*, No. 14 CV 6956,
   2016 U.S. Dist. LEXIS 107230 (E.D.N.Y. Aug. 11, 2016)............................ 17,19

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ................................ 13

*Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193 (S.D.N.Y. 2011) ............. 16

*Williams v. Epic Sec. Corp.*, 358 F. Supp. 3d 284 (S.D.N.Y. 2019) ............................ 24

*Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61 (S.D.N.Y. 2018) ................................ *passim*

**Statutes, Rules, and Regulations**

29 U.S.C. § 216............................................................................................ 2

Fed R. Civ. P. 15......................................................................................... 22

Fed. R. Civ. P. 16........................................................................................ 22

Fed. R. Civ. P. 20........................................................................................ 22

Fed. R. Civ. P. 21........................................................................................ 22

Fed. R. Civ. P. 23........................................................................................ *passim*

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.3 ........................................ 5,6

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4 ........................................ 8

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6 ........................................ 8

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.2 ........................................ 5,6

N.Y. Lab. L. § 195 ....................................................................................... *passim*

N.Y. Lab. L. § 198 ....................................................................................... 9

N.Y. Lab. L. § 652 ....................................................................................... 5

Named Plaintiff Nino Martinenko and Opt-In Plaintiff Dagmara Huk (collectively, "Plaintiffs") submit this memorandum in support of their motion for class certification of their New York state wage and hour claims pursuant to Fed. R. Civ. P. 23.[1]

## I. PRELIMINARY STATEMENT

This action asserts New York Labor Law claims on behalf of all tipped employees – servers, runners, bussers, and bartenders – who worked at Defendants' restaurant, 212 Steakhouse ("212 Steakhouse"), at any time on or after January 20, 2016.[2] By this motion, Plaintiffs seek to certify the aforementioned class with respect to their claims that Defendants violated New York law by (1) paying Class Members pursuant to a tip credit without providing the requisite notice; (2) failing to pay Class Members any overtime or spread of hours premium; and (3) failing to provide the wage notices and wage statements required under N.Y. Lab. L. § 195.

Fed. R. Civ. P. 23(a) ("Rule 23") prerequisites are handily met because (1) the number of Class Members satisfies numerosity, (2) the claims involve policies to which all Class Members were subject, (3) Plaintiffs' claims and circumstances are the same as the absent Class Members they seek to represent in that all have been injured by the same violations, and all will benefit from the relief sought; and (4) Plaintiffs and their counsel will vigorously prosecute this action and adequately represent the Class.

Rule 23(b)(3) is appropriately applied because the common factual and legal issues predominate. Further, a class action is superior to requiring that putative Class Members pursue individual actions. Moreover, the Second Circuit has expressly ratified the certification of Rule 23

---

[1] With this memorandum of law, Plaintiffs submit the December 8, 2022 declaration of Michael DiGiulio ("DiGiulio Decl.") and exhibits thereto ("DiGiulio Ex. __"); the December 9, 2022 declaration of Nino Martinenko ("Martinenko Decl.") and exhibits thereto ("Martinenko Ex. __"); the December 9, 2022 declaration of Dagmara Huk ("Huk Decl.") and exhibits thereto ("Huk Ex. __").

[2] The Complaint in this action defines the class as including all non-exempt employees, *i.e.*, both tipped and non-tipped employees. (Compl. ¶¶ 9, 12.) On this motion, Plaintiffs seek to certify a class limited to non-exempt tipped employees only.

classes in cases where courts previously granted conditional collective certification of Fair Labor Standards Act ("FLSA") claims pursuant to 29 U.S.C. § 216(b). *Shahriar v. Smith & Wollensky Rest. Group*, 659 F.3d 234 (2d Cir. 2011).

For the reasons set forth below, Plaintiffs respectfully request that the Court:

(1)  Certify a Class defined as all tipped employees – servers, runners, bussers, and bartenders – who worked for Defendants at any time on or after January 20, 2016 at 212 Steakhouse;

(2)  Appoint Nino Martineko and Dagmara Huk as Class Representatives;

(3)  Appoint Plaintiffs' counsel as Class Counsel;

(4)  Order Defendants to produce to Plaintiffs a Microsoft Excel list, in electronic format, of all Class Members' names, last known address, all known telephone numbers, dates of employment, and job titles; and

(5)  Authorize the mailing of the proposed Notice to all Class Members.

In the event that the Court does not certify the Rule 23 class, Plaintiffs respectfully request that the Court permit Plaintiffs to amend the complaint to join Opt-In Plaintiff Dagmara Huk as a named Plaintiff.

## II.  BACKGROUND

### A.  Procedural History

On January 20, 2022, Named Plaintiff Nino Martinenko, a former server at Defendants' 212 Steakhouse restaurant, commenced this putative class and collective action against Defendants 212 Steakhouse, Inc. and its owner, Nikolay Volper. Her complaint alleged that Defendants violated the New York Labor Law by (1) paying tipped employees pursuant to a tip credit without providing the notice required under New York law; (2) failing to pay tipped employees the overtime or spread of hours premiums; and (3) failing to provide the wage notices and wage statements required under N.Y. Lab. L. § 195. (DiGiulio Decl. ¶ 4.)

On April 4, 2022, the Named Plaintiff moved for conditional collective certification on her FLSA claim. (Dkt. No. 19.)  The Court granted that motion on April 26, 2022, authorizing the Named Plaintiff to send notice of the FLSA claim to all tipped employees employed by Defendants on or after January 20, 2019. (Dkt. No. 26.)  On May 3, 2022, Defendants produced a collective list of 24 tipped employees, and Plaintiff duly disseminated the Court-approved notice. (DiGiulio Decl. ¶ 5.)  One person, Dagmara Huk, a former bartender at 212 Steakhouse, joined this action as an Opt-In Plaintiff.  (*Id*. at ¶ 6; Huk Decl. ¶¶ 1, 3.) On October 6, 2022, pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiffs took the deposition of Nikolay Volper as the corporate representative of 212 Steakhouse, Inc.  (DiGiulio Decl. ¶ 7.)  Defendants are scheduled to depose both Plaintiffs on December 20, 2022. (DiGiulio Decl. ¶ 8.)

**B. Plaintiff Seeks Sanctions For Defendants' Violations Of The Court's Discovery Orders**

Throughout the discovery process Defendants repeatedly failed to comply with their discovery obligations and with multiple Court orders, culminating in the Named Plaintiff filing a Rule 37 sanctions motion on November 1, 2022 ("Sanctions Motion"). (Dkt. No. 62.) This motion is currently pending before Magistrate Judge Lehrberger. As is most relevant here, and as detailed fully in the Sanctions Motion, Defendants willfully violated Court orders by, *inter alia*, failing to produce (1) a complete class list; and (2) putative class members' time and pay records.  Sanctions Motion at 7-9, 14-18.  Notably, even after Plaintiff filed her sanctions motion, Defendants did not make any effort to produce the outstanding documents and information identified in that motion. (DiGiulio Decl. ¶¶ 11-12.)

On July 22, 2022, the Court ordered Defendants to identify all putative class members, defined as all of the Restaurant's non-exempt employees who worked on or after January 20, 2016. (DiGiulio Decl. ¶¶ 9-10; DiGiulio Ex. 4, 13:20-14:22.)  The required response under this order

3

was much broader than the collective list Defendants produced on May 3, 2022, as it included two categories of people not included in the collective list: (1) tipped employees who worked for Defendants between January 20, 2016 and January 20, 2019 and (2) back of house employees who worked at any time during the liability period.  (DiGiulio Decl. ¶ 13.)

The purported "class list" that Defendants produced on August 19, 2022 was woefully incomplete and did not comply with the Court's order.  Most significantly for purposes of this motion, the class list did not include *any* tipped employees who were not on the collective list.[3] (DiGiulio Decl. ¶¶ 13-15; DiGiulio Exs. 2, 5.)  Thus, if the tipped employee portion of the class list were accurate, that would mean that 212 Steakhouse did not employ any tipped employees from January 20, 2016 to January 19, 2019 that it did not also employ after January 19, 2019.  Not only is it obvious as a matter of common sense that this was not the case, but Plaintiff Martinenko herself identified 11 tipped employees by name whom she worked with during her first period of employment, which ended in 2018, who are not identified on the collective list.[4]  (Martinenko Decl. ¶¶ 10-11.)  Plaintiff Martinenko also identified by name three tipped employees with whom she worked in 2021 who are not included in the collective or class lists. (Martinenko Decl. ¶ 12.) Many of the 14 tipped employees Plaintiff Martinenko has identified are included in the limited number of daily and weekly tip sheets that have been produced in this case. (Martinenko Decl. ¶¶ 10-12, Martinenko Ex. 1, p. 2; Martinenko Ex. 2, p. 1-4.)  Volper himself confirmed the existence of a number of tipped employees who were not included in the collective or class list.  (DiGiulio Ex. 3, 171:18-175:19.)   Volper also testified that the restaurant had high turnover, further

---

[3] Although the names are redacted on the class list, a comparison of the positions and dates of employment clearly shows that the same service employees are included in the collective list and class list. (*Compare* DiGiulio Ex. 2 *to* DiGiulio Ex. 5.)

[4] Martinenko believes she worked with additional tipped employees during that time whose names she does not recall. (Martinenko Decl. ¶ 11.)

suggesting that class list is deficient for not including any front of house employees who were not included in the collective list. (DiGiulio Ex. 3, 175:2-22.) In total, Plaintiffs have identified by name at least 38 people who were employed as tipped employees during the class period. Because of Defendants' failure to produce an accurate class list, in the pending Sanctions Motion Plaintiff has asked for a factual finding that numerosity is satisfied. (DiGiulio Decl. ¶ 16.)

On July 22, 2022, the Court also ordered Defendants to produce all putative Class Members' time records and pay records, as well as all tip records. (DiGiulio Ex. 4, 6:20-7:20, 13:7-19.) With the exception of the time records of two employees who previously sued Defendants, Defendants have not produced any putative Class Members' time or pay records. (DiGiulio Decl. ¶¶ 17-18.) Accordingly, in the Sanctions Motion Plaintiff seeks factual findings that (1) for tipped employees who clocked in and out in the restaurant's point of sale system, Defendants paid them the tip credit minimum wage for their clocked in hours; (2) Defendants paid putative class members their regular rate for overtime hours; and (3) Defendants did not pay putative class member a spread of hours premium when their workdays lasted longer than 10 hours. (DiGiulio Decl. ¶ 19; Sanctions Motion at 13-18.)

### C. Defendants Were Not Entitled To Pay Putative Class Members Pursuant To The Tip Credit

The NYLL requires employers to pay non-exempt employees at least the minimum wage. N.Y. Lab. Law § 652. If certain conditions are satisfied, New York law permits employers to use a portion of tipped food service workers' tips as a credit (the "tip credit") against the minimum wage. N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-1.3, 146-2.2. Defendants have admitted that they paid all putative Class Members pursuant to a tip credit. (DiGiulio Ex. 3, 38:5-17.) Even if they had not, there is no evidence on the record to the contrary, and one of the sanctions Plaintiff seeks for Defendants' failure to produce putative Class Members' payroll records is a factual

finding to that effect. (DiGiulio Ex. 3, 38:3-17; DiGiulio Decl. ¶ 19; Sanctions Motion at 16-18.) Defendants' use of the tip credit was unlawful, as 212 Steakhouse did not provide putative Class Members with the tip credit notice required under New York law.

Under the New York State Department of Labor's regulatory scheme, "[a]n employer may take a credit towards the basic minimum hourly rate if a service employee or food service worker receives enough tips and if the employee has been notified of the tip credit as required in section 146-2.2" of the Hospitality Industry Wage Order.  N.Y. Comp. Codes R. & Regs, tit. 12, § 146-1.3.  Section 146-2.2 of the Hospitality Industry Wage Order is titled "Written notice of pay rate, tip credit and pay day."  N.Y. Comp. Codes R. & Regs, tit. 12, § 146-2.2.  It states that

> an employer shall give each employee written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday.  The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate.

*Id.* § 146-2.2(a).  Such written notice is required "prior to the start of employment" and "prior to any change in the employee's hourly rates of pay."  *Id.* § 146-2.2(a), (b).  The employer bears the burden of proving compliance with this notice requirement.  *Id*. § 146-2.2(d).  "An employer who fails to provide the required notice is liable for the difference between the full minimum wage rate and what the employee was actually paid."  *Salustio v. 106 Columbia Deli Corp*., 264 F. Supp. 3d 540, 554 (S.D.N.Y. 2017) (citations omitted). The law requires the employer to "obtain from the employee a signed and dated written acknowledgment… of receipt of this notice, which the employer *shall preserve and maintain for six years*." N.Y. Comp. Code R. & Regs. tit. 12, § 146-2.2(c) (emphasis added); *see Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18 CV 7342, 2022 U.S. Dist. LEXIS 34090, at *24 (S.D.N.Y. Feb. 25, 2022).

If an employer fails to provide the written notice as described in § 146-2.2, it may not pay tipped employees pursuant to a tip credit. *E.g.*, *Tecocoatzi-Ortiz*, 2022 U.S. Dist. LEXIS 34090, at *23-27; *Lopez v. MNAF Pizzeria, Inc.*, No. 18 CV 6033, 2021 U.S. Dist. LEXIS 57260, at *21-24 (S.D.N.Y. Mar. 25, 2021); *Hernandez v. JRPAC Inc.*, No. 14 Civ. 4176 (PAE), 2016 U.S. Dist. LEXIS 75430, at *81 (S.D.N.Y. June 9, 2016) ("Notice of the tip credit under the NYLL . . . must be written."); *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 466 (S.D.N.Y. 2015) ("Under the current regulations, an employer may not take a tip credit unless the employer has given the employee written notice […]").

Defendants never provided putative Class Members with written notice of the tip credit. (Martinenko Decl. ¶ 13; Huk Decl. ¶ 4; DiGiulio Ex. 3, 116:13-18.)  To be sure, in their responses to Plaintiff's discovery requests, Defendants admitted that they do not have a single wage notice that they contend was provided to any of the putative Class Members.  (DiGiulio Decl. ¶ 25; DiGiulio Ex. 8.) *See Galvez v. 800 Ginza Sushi, Inc.*, No. 19 CV 8549, 2022 U.S. Dist. LEXIS 43523, at *30-31 (S.D.N.Y. Mar. 11, 2022).  Volper's vague and self-serving assertions at deposition that he provided a wage notice to some employees, possibly not until 2022, are utterly insufficient to establish that proper notice was provided. (DiGiulio Ex. 3, 115:15-119:25.) *Chang v. Louis Amsterdam, Inc.*, No. 19 CV 3056, 2022 U.S. Dist. LEXIS 177606, at *21-28 (E.D.N.Y. Sept. 29, 2022) (where defendants produced no written notices, defendants' assertion that notice was provided is insufficient to establish entitlement to tip credit). Accordingly, Defendants' use of the tip credit was unlawful.

### D.  Defendants Failed To Pay Tipped Employees The Overtime And Spread Of Hours Premiums

Defendants were required to pay putative Class Members at a rate not less than one and one-half their regular rate for every hour over 40 hours worked during the course of a week. *See*

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4; *DeJesus v. HF Mgmt. Servs.*, 726 F.3d 85, 88 (2d Cir. 2013).  Defendants were also required to pay putative Class Members an additional hour of pay at the full New York minimum wage rate for any workday that spanned more than 10 hours. N.Y. Comp. Code R. & Regs. tit. 12, § 146-1.6.  As noted above, the Sanctions Motions seeks findings of fact that Defendants did not pay tipped employees overtime or spread of hours premiums.  (Sanctions Motion at 16-18.)  These findings are amply and independently supported by the documentary record as well.

Plaintiffs' paystubs show that every time they worked more than 40 hours per week, Defendants paid them their regular rate for all hours worked instead of time and a half for overtime hours.  (*See* DiGiulio Ex. 6 at D887, 890, 895, 905-907, 913, 919, 948-49, 951-57, 974-75, 977, 983, 1001, 1002, 1004-1010.)  Although Defendants failed to produce putative Class Members' pay records, Plaintiffs are in possession of some paystubs for other putative Class Members. Every single paystub Plaintiffs have for a week where a putative Class Member worked more than 40 hours shows that Defendants did not pay the overtime premium. (Martinenko Decl. ¶ 8; Martinenko Ex. 3; Huk Decl. ¶ 5; Huk Ex. 1.)  Further, Defendant Volper testified that he does not know whether the employees were paid the overtime premium.  (DiGiulio Ex. 3, 110:9-111:3.)

Plaintiffs' time and pay records also show that Defendants never paid them a spread of hours premium on days that spanned more than 10 hours. (DiGiulio ¶ 22.) Moreover, none of the paystubs for other employees that are in Plaintiffs' possession reflect a spread of hours premium. (Martinenko Decl. ¶ 8; Martinenko Ex. 3; Huk Decl. ¶ 5; Huk Ex. 1.)  In fact, Volper testified that he did not even know what spread of hours compensation is.  (DiGiulio Ex. 3, 114:18-20.)

Thus, it is evident that Defendants paid tipped employees their regular rate for overtime hours and did not pay any spread of hours premium.

**E. Defendants Failed To Give Tipped Employees The Wage Notices And Statements Required Under The WTPA**

Under N.Y. Lab. Law § 195(1) and (3), employers are required to furnish their employees with wage notices and wage statements containing information specified by statute.  Defendants were required to give putative Class Members "at the time of hiring" a notice stating:

> the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; [and] the telephone number of the employer[.]

N.Y. Lab. L. § 195(1)(a).

As detailed above, *supra at* 5-7, Defendants did not provide putative Class Members with *any* written wage notices.  As a result, Class Members are entitled to recover the statutory damages authorized under N.Y. Lab. Law § 198(1-b).  *See Garcia v. Saigon Mkt. LLC*, No. 15 CV 9433, 2019 U.S. Dist. LEXIS 163259, at *12-16 (S.D.N.Y. Sept. 4, 2019).

Defendants were also required to provide Class Members with written statements accompanying every payment of wages listing:

> the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

N.Y. Lab. L. § 195(3).

Defendants paid all tipped employees via hand-written checks. (DiGiulio Ex. 3 at 46:4-8, 108:5-9.)  Defendants did not provide tipped employees with *any* wage statements until 2019 or later.  (Martinenko Decl. ¶ 14; DiGiulio Ex. 3, 84:23-85:23, 101:3-5; DiGiulio Ex. 6.) This is straightforward violation of N.Y. Lab. L. § 195(3). But even once Defendants began issuing wage statements, they still did not comply with N.Y. Lab. L. § 195(3) because the statements did not state the amount of the tip credit claimed or list the employer's phone number. N.Y. Lab. L. § 195(3). (DiGiulio Ex. 6; DiGiulio Ex. 3 at 103:16-20; Martinenko Decl. ¶ 8; Martinenko Ex. 3; Huk Decl. ¶ 5; Huk Ex. 1.)

Because Defendants did not comply with N.Y. Lab. L. § 195(3), putative Class Members are entitled to recover the statutory damages authorized under N.Y. Lab. Law § 198(1-d).  *See*, *e.g., Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc*., No. 14 Civ. 5269 (ARR)(JO), 2016 U.S. Dist. LEXIS 127425, at *88 (E.D.N.Y. Sept. 16, 2016) (bench trial decision awarding plaintiffs penalties under § 198(1-d) for defendants' failure to provide compliant wage statements).

## III.    ARGUMENT

### A.   Plaintiffs Satisfy The Requirements For Class Certification Under Fed. R. Civ. P. 23

Rule 23 provides that certification is appropriate where, as here, plaintiffs satisfy the four requirements of Rule 23(a) and one of the three prerequisites of Rule 23(b). *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc*., 546 F.3d 196, 201-02 (2d Cir. 2008).  While the Court must resolve factual disputes relevant to satisfying each Rule 23 requirement, "[t]he certifying court should not make any factual findings or merits determinations that are not necessary to the Rule 23 analysis, and any factual determinations made at the certification stage are not binding on a subsequent fact-finder, even the certifying court." *Vargas v. Howard*, 324 F.R.D. 319, 324 (S.D.N.Y. 2018) (quoting *Johnson v. Nextel Commc'ns Inc*., 780 F.3d 128, 137

(2d Cir. 2015)).  "In sum, the Court's task at the Rule 23 stage is not to resolve the liability question, but to decide 'whether the constituent issues that bear on [Defendants'] ultimate liability are *provable in common*.'" *Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012) (*quoting Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010)) (emphasis in original).

The party seeking class certification bears the burden of satisfying the requirements of Rule 23 by a preponderance of the evidence.  *Teamsters Local 445*, 546 F.3d at 202.  Nevertheless, "[t]he Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction."  *Vargas*, 324 F.R.D. at 324 (citations omitted).  Consequently, "it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification."  *Id.* (citations omitted).

### B.  Plaintiffs Satisfy the Requirements of Rule 23(a)

In order to meet their burden under Rule 23(a), Plaintiffs must show that:

(1) The class is so numerous that joinder of all members is impracticable;
(2) There are questions of law or fact common to the class;
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).

### i.   Numerosity – Rule 23(a)(1)

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. Pr. 23(a)(1).  Numerosity is presumed satisfied if the class has at least 40 members. *See Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). In addition, courts in this Circuit routinely find the numerosity requirement satisfied when there are 21 to 39 class members. *See e.g.*, *Balverde v. Lunella Ristorante, Inc.*, No. 15 Civ. 5518, 2017 U.S. Dist. LEXIS 59778, at *13-15 (S.D.N.Y. Apr. 19, 2017); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 180-81

(W.D.N.Y. 2005). When there are fewer than 40 class members, courts consider "'judicial economy arising from the avoidance of a multiplicity of actions, . . . financial resources of class members, [and] the ability of claimants to institute individual suits.'" *Balverde*, 2017 U.S. Dist. LEXIS 59778, at \*13 (quoting *Robidoux*, 987 F.2d at 936).

> Plaintiffs need not present the court with a precise calculation of the number of class members; rather, they must show some evidence that, in effect, provides the Court with a reasonable estimate. The court may also draw reasonable inferences from that evidence and rely on those inferences when making its determination.

*D'Arpa v. Runway Towing Corp.*, No. 12 CV 1120, 2013 U.S. Dist. LEXIS 85697, at \*69 (E.D.N.Y. June 18, 2013) (cleaned up); *see also Omar v. 1 Front St. Grimaldi, Inc.*, No. 16 CV 5824, 2019 U.S. Dist. LEXIS 4242, at \*23 (E.D.N.Y. Jan. 8, 2019). As noted above, the Sanctions Motion seeks a finding that numerosity is satisfied.  Regardless of the outcome of that motion, numerosity is satisfied because the record supports a finding that there are more than 40 Class Members, and even if there are less than 40 Class Members, the relevant factors establish that numerosity is satisfied.

The precise number of putative Class Members is currently unknown because, as discussed *supra* at 3-5, Defendants have failed to comply with Court orders requiring them to identify all putative Class Members and produce all putative Class Members' time and pay records. However, Plaintiffs have identified by name 38 putative Class Members. *See supra* at 5. Given that (1) Plaintiff Martinenko believes she worked with additional tipped employees whose names she does not recall (Martinenko Decl. ¶¶ 11-12); (2) Plaintiffs did not work during the entire class period and thus may not have worked with all putative Class Members; and (3) Defendants admit that the restaurant had high turnover, it is reasonable to infer that there are more than 40 putative Class Members. *E.g.*, *Balverde*, 2017 U.S. Dist. LEXIS 59778, at \*13-14 (numerosity satisfied where defendants identified 38 or 39 class members, defendants' class list was incomplete on its face,

and plaintiff identified one or two possible additional class members). Thus, numerosity should be presumed satisfied.

Even if there were only 38 putative Class Members, numerosity would still be satisfied. *Id*. at *15. Putative Class Members are hourly employees who likely lack substantial financial resources and are unlikely to commence individual lawsuits. Judicial economy is also promoted by the consolidation of 38 individuals' identical claims in a single action. *Id*.; *Omar*, 2019 U.S. Dist. LEXIS 4242, at *25. "Moreover, for those current employees who might be included to complain about their wages, the fear of retaliation may be a further impediment to their brining individual actions." *Omar*, 2019 U.S. Dist. LEXIS 4242, at *25. For all of these reasons, numerosity is satisfied.

### ii. Commonality – Rule 23(a)(2)

Rule 23(a)(2) requires that a common question of fact or law is capable of "generat[ing] common *answers* apt to drive the resolution of the litigation." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162 (S.D.N.Y. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). Put another way, commonality requires a "common contention" that will "resolve an issue central to the validity of each one of the claims in one stroke." *Jackson*, 298 F.R.D. at 162. (internal citations omitted). "Even a single common legal or factual question will suffice." *Id*. (quoting *Freeland v. AT&T Corp.*, 238 F.R.D. 130, 140 (S.D.N.Y. 2006)).

"In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *Spencer v. No Parking Today, Inc.*, No. 12 Civ. 6323, 2013 U.S. Dist. LEXIS 36357, at *62 (S.D.N.Y. Mar. 15, 2013), *adopted by* 2013 U.S. Dist. LEXIS 80587, (S.D.N.Y. June 7, 2013) (quoting *Poplawski v. Metroplex on the Atl., LLC*, No. 11 CV 3765, 2012 U.S. Dist. LEXIS 46408 (E.D.N.Y. Apr. 2,

13

2012)). "[F]actual differences among the claims of the class members do not preclude a finding of commonality." *Shepard v. Rhea*, No. 12 CV 7220, 2014 U.S. Dist. LEXIS 158189, at *13 (S.D.N.Y. Nov. 7, 2014); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 371 (S.D.N.Y. 2007) ("Once a common question is identified, differences among the questions raised by individual members [of the class] will not defeat commonality."); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. May 24, 2001) (ruling that differences in the amount of hours worked by collective members and the amount of pay the employees received do not defeat certification because "[i]t is well-established that individual questions with respect to damages will not defeat certification") (internal quotation omitted); *Frank*, 228 F.R.D. at 181 ("The claim by each individual need not be identical, however, but there must exist common questions of fact or law.").

Here, the following questions of fact or law are common to the Class Members:

(1)  Whether Defendants' use of the tip credit was unlawful;

(2)  Whether Defendants paid Class Members the lawful overtime rate for hours worked over 40 in a week;

(3)  Whether Defendants paid Class Members the spread of hours premium on workdays that spanned more than 10 hours;

(4)  Whether Defendants provided Class Members with wage notices that complied with N.Y. Lab. L. § 195(1); and

(5)  Whether Defendants provided Class Members with wage statements that complied with N.Y. Lab. L. § 195(3).

These questions generate common answers that would drive the resolution of the litigation because, at a single stroke, they can establish that Defendants caused the same injury to Class

Members by unlawfully (1) paying Class Members pursuant to a tip credit without providing the required notice; (2) failing to pay Class Members one and a half times their regular rate of pay for overtime hours; (3) failing to pay Class Members the spread hour hours premium; (4) failing to provide the notices required under N.Y. Lab. L. § 195(1); and (5) failing to provide the wage statements required under N.Y. Lab. L. § 195(3).

As discussed *supra* at 3-8, whether established via findings of fact as requested in the Sanctions Motion or based on the full record in this case, Defendants implemented a common policy and practice under which they unlawfully (1) paid all putative Class Members pursuant to the tip credit without providing the required notice; (2) did not pay putative Class Members an overtime premium; (3) did not pay putative Class Members spread of hours compensation; (4) did not provide putative Class Members with wage notices as required under N.Y. Lab. L. § 195(1); and (5) did not provide putative Class Members with wage statements that complied with N.Y. Lab. L. § 195(3).

Courts have routinely found commonality satisfied where restaurant committed these same violations against a group of employees. *See, e.g.*, *Shahriar*, 659 F.3d at 252; *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 66, 69-70 (S.D.N.Y. 2018); *Vargas*, 324 F.R.D. at 325; *Sanchez v. N.Y. Kimchi Catering, Corp.*, 320 F.R.D. 366, 376 (S.D.N.Y. 2017); *Murphy v. Lajaunie*, No. 13 CV 6503, 2015 U.S. Dist. LEXIS 97531, at *12-13 (S.D.N.Y. July 24, 2015) (Sullivan, J.); *Megason v. Starjem Rest. Corp.*, No. 12 Civ. 1299, 2014 U.S. Dist. LEXIS 3910, at *21-23 (S.D.N.Y. Jan. 10, 2014); *Schear v. Food Scope Amer., Inc.*, 297 F.R.D. 114, 124 (S.D.N.Y. 2014); *Mendez v. Pizza on Stone, LLC*, No. 11 Civ. 6316 (DLC), 2012 U.S. Dist. LEXIS 108605 (S.D.N.Y. Aug. 1, 2012).

If liability is established, Class Members' individual damages may be calculated mechanically by reviewing payroll records and time records, and, in any event "[t]he fact that the amount of damages class members can recover – if any – may differ does not bear weight in the commonality inquiry." *Zivkovic*, 329 F.R.D. at 70.  Accordingly, Plaintiffs have established that commonality is satisfied.

### iii.    Typicality – Rule 23(a)(3)

Typicality "is satisfied when each class member's claim arises from the same course of events, meaning each class member makes similar legal arguments to prove the defendant's liability." *Vargas*, 324 F.R.D. at 326 (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) and citing to *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "A plaintiff's claims are typical of the class members' claims where the plaintiff's and the class members' 'injuries derive from a unitary course of conduct by a single system." *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y. 2010) (*quoting Marisol A.*, 126 F.3d at 377).  However, "minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class.  *Robidoux*, 987 F.2d at 936-37; *see also Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 199 (S.D.N.Y. 2011) ("[D]ifferences among the Plaintiffs as to the number of hours worked, the precise work they did, and the amount of pay they received concern the amount of damages to which any individual Plaintiff might be entitled, but do not defeat typicality for Rule 23 purposes.") (citations and internal quotation marks omitted).

Rather, the claims of the class representatives and the class "only need to share the same essential characteristics and need not be identical." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (citation omitted); *see also Zivkovic*, 329 F.R.D. at 70 ("Plaintiff's claim

and the class claims must be so interrelated that the interests of the class members will be fairly and adequately protected in their absence, though they need not be identical for typicality to be satisfied.") (internal quotation marks omitted); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 281 F.R.D. 100, 106 (E.D.N.Y. 2011) (stating that "[e]ven if some class members' facts are somewhat different than [the named plaintiffs] the claims are similar enough to meet the typicality element," because all class members "were subject to the same general employment scheme" and "their claims are all based on the same course of events and legal theory") (citations omitted); *Spicer*, 269 F.R.D. at 337 ("[T]ypicality does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.") (*quoting Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999).

Because, as discussed with respect to commonality, all Class Members were subject to the same employment policies, typicality is easily satisfied.  *E.g.*, *Zivkovic*, 329 F.R.D. at 71; *Velez v. 111 Atlas Rest. Corp.*, No. 14 CV 6956, 2016 U.S. Dist. LEXIS 107230, at *69 (E.D.N.Y. Aug. 11, 2016); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 204 (S.D.N.Y. 2006).

### iv.    Adequacy – Rule 23(a)(4)

The final requirement of Rule 23(a) is that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Where the "class representatives are prepared to prosecute fully the action and have no known conflicts with any class member," the adequacy requirements are met. *Shahriar*, 659 F.3d at 253. Here, Plaintiffs Martinenko and Huk are prepared to act as class representatives, have no conflict with any Class Members, and will fairly and adequately protect the interests of the Class.  (Martinenko Decl. ¶¶

17

15-18; Huk Decl. ¶¶ 7-10.)  Additionally, since the Plaintiffs were subject to the same common policies and practices as all other members of the Class, the same legal arguments and strategies are applicable to vindicate their claims. *See Spicer*, 269 F.R.D. at 337 ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class.") (citation omitted).

### v.   Rule 23(a)'s implied ascertainability requirement

Although it is "not explicitly spelled out in Rule 23, courts have added an 'implied requirement of ascertainability' with respect to the class definition." *Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385, 393 (N.D.N.Y. 2011).  Specifically, courts have required that "a class be identifiable before it may be properly certified." *Id*. at 396 (*citing Dunnigan v. Metro. Life Ins. Co*., 214 F.R.D. 125, 135 (S.D.N.Y. 2003)).  "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Schear*, 297 F.R.D. at 125 (quotation omitted). Here, the proposed Class Members are easily identifiable from Defendants' records: it is comprised of all tipped employees – servers, bartenders, runners, and bussers – who worked at 212 Steakhouse during the Class Period.

### C.  Class Certification Under Rule 23(b)(3) Is Appropriate

"In addition to satisfying the Rule 23(a) prerequisites, a class proponent must qualify the proposed class under one of the three subsection 23(b) categories." *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010).  "Rule 23(b)(3), the provision that Plaintiffs move under here, is appropriate in cases in which common legal or factual issues predominate over individual issues and where a class action is superior to other methods of adjudication." *Schear*, 297 F.R.D. at 125 (quoting Fed. R. Civ. P. 23(b)(3)).

**i.   Common questions of law and fact predominate**

Predominance is satisfied under Rule 23(b)(3) "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."   *In re US Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (internal quotation marks omitted).

Courts routinely find that common questions predominate in wage and hour actions brought on behalf of a class of employees of the same employer challenging allegedly illegal policies and practices.   *See*, *e.g.*, *Zivkovic*, 329 F.R.D. at 75 ("Where plaintiffs' claims arise from a common policy and rely on a common legal theory, the predominance requirement is satisfied because the need for individualized determinations of the putative class members' damages does not, without more, preclude class certifications.") (internal quotation marks omitted); *Velez*, 2016 U.S. Dist. LEXIS 107230, at *71-72; *Megason*, 2014 U.S. Dist. LEXIS 3910, at *21, 25; *Schear*, 297 F.R.D. at 125-26; *Spicer*, 269 F.R.D. at 338.   Here, the common questions identified *supra* will determine Defendants' liability with respect to the entire class.   Accordingly, common questions predominate.

**ii.   A class action is superior to other methods of adjudication**

Class certification will permit the resolution of dozens of individual claims in a single forum, at one time, thereby avoiding a multiplicity of repetitive lawsuits.   When plaintiffs are "aggrieved by a single policy of the defendant," a class action is ideal as many nearly identical legal and factual issues can be adjudicated in unison.   *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 146 (2d Cir. 2001).

19

Courts routinely find superiority satisfied where, as here, it is unlikely that class members would bring individual actions on their own behalf because the costs of individual litigation would likely outweigh their recovery.  *See*, *e.g.*, *Zivkovic*, 329 F.R.D. at 76 (superiority satisfied where "[i]t is unlikely that the class members would engage in individual action because the amount of potential recovery is low and likely to be outweighed by the individual cost of litigation"); *Schear*, 297 F.R.D. at 125 ("Courts routinely hold that a class action is superior where, as here, potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by the defendants."); *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039, at *53 (S.D.N.Y. Sept. 29, 2006) (class action is superior to other methods where the amount of recovery was small in relation to litigation costs).  Without certification, a host of individuals will lose any practical means for obtaining damages stemming from Defendants' illegal conduct.

In addition, opt-out classes are commonly granted where, as here, some class members currently work for the defendant and "the concern for possible employer reprisal action exists and renders the alternative of individual joinder less than practicable." *Trinidad v. Breakaway Courier Sys.*, No. 05 Civ. 4116, 2007 U.S. Dist. LEXIS 2914, at *26 (S.D.N.Y. Jan. 12, 2007) (internal quotation omitted); *see also*, *e.g.*, *Schear*, 297 F.R.D at 126; *Torres*, 2006 U.S. Dist. LEXIS 74039, at *53-54.  Since the proposed class action will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results," a class action is the superior method of resolving the claims of the Class.  *Myers*, 624 F.3d at 547.

### D.  Plaintiffs' Counsel Should be Appointed as Class Counsel

Prior to appointing class counsel, Rule 23(g) directs the Court to consider:

> (i)     the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii)   counsel's knowledge of the applicable law; and
>
> (iv)    the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g).  *See also Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 346 (S.D.N.Y. 2004); *Niemiec v. Ann Bendick Realty*, No. 04 Civ. 897, 2007 U.S. Dist. LEXIS 98840, at *38-39 (E.D.N.Y. Mar. 30, 2007), *adopted by*, 2007 U.S. Dist. LEXIS 97531 (E.D.N.Y. Apr. 23, 2007).

Plaintiffs have retained an experienced employment law firm – Joseph and Kirschenbaum LLP ("JK").  Counsel has extensive experience, and JK has repeatedly managed large class-action litigations to successful resolution.  *See*, *e.g.*, *Shahriar*, 659 F.3d 234 (affirming district court's certification of Rule 23 class of restaurant servers with JK as class counsel); *Lomeli v. Falkirk Mgmt. Corp.*, Index No. EF001580-2016, at 1 (N.Y. Sup. Ct. Orange County Oct. 13, 2021) (attached as DiGiulio Ex. 9) (appointing JK class counsel); *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 74 (S.D.N.Y. 2018) ("[T]he attorneys of Joseph & Kirschenbaum have substantial experience as lead or co-lead class counsel in wage and hour actions in this District."); *Murphy*, 2015 U.S. Dist. LEXIS 97531, at *22-23 (appointing JK class counsel); *Megason*, 2014 U.S. Dist. LEXIS 3910 (same). (*See also* DiGiulio Decl. ¶¶ 27-39.) Further, Plaintiffs' counsel have zealously prosecuted this action and identified the potential claims and have sufficient financial resources to represent the class.  (DiGiulio Decl. ¶ 39.)  The Rule 23(g) requirements are therefore satisfied by the appointment of Plaintiffs' counsel as class counsel.

### E.  The Proposed Notices Satisfies The Requirements Of Rule 23(C)(2)(B)

Attached as Exhibit 1 to the DiGiulio Declaration is Plaintiffs' proposed class notice, which satisfies all the requirements of Rule 23(c)(2)(B).[5]

### F.  If The Class Is Not Certified, Opt-In Plaintiff Dagmara Huk Should Be Added As A Named Plaintiff

Class certification is appropriate for the reasons discussed *supra*. However, if class certification is not granted, Opt-In Plaintiff Huk should be added to this action as a named plaintiff pursuant to Fed. R. Civ. P. 15, 20, and/or 21.  Fed. R. Civ. P. 15(a) provides that a party should be freely given leave to amend its pleadings when justice so requires.  Similarly, Fed. R. Civ. P. 21 provides that a "court may at any time, on just terms, add or drop a party."  Where, as here, a party seeks to amend a pleading after the deadline to do so set in a scheduling order, a court conducts a two-stage analysis.  The court first determines, pursuant to Fed. R. Civ. P. 16(b), whether there is "good cause" to modify the scheduling order and permit an amended pleading or additional party.[6] *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).  If there is good cause, a court then decides whether to permit the amended pleading or additional party under Fed. R. Civ. P. 15, 20, and/or 21.  *Lincoln v. Potter*, 418 F. Supp. 2d 443, 453-54 (S.D.N.Y. 2006).

"Under Rule 16(b), a party may obtain a modification of the scheduling order only 'upon a showing of good cause.'"  *Kassner v. 2nd Ave. Deli., Inc.*, 496 F.3d 229, 243 (2d Cir. 2007).

---

[5] Rule 23(c)(2)(B) requires that notice to a Rule 23(b)(3) class state, "in plain, easily understood language:

    (i)      the nature of the action;
    (ii)    the definition of the class certified;
    (iii)   the class claims, issues, or defenses;
    (iv)   that a class member may enter an appearance through an attorney if the member so desires;
    (v)    that the court will exclude from the class any member who requests exclusion;
    (vi)   the time and manner for requesting exclusion; and
    (vii)  the binding effect of a class judgment on members under Rule 23(c)(3)."

[6] Fed. R. Civ. P. 16(b)(4) provides, "A schedule may be modified only for good cause and with the judge's consent."

Factors relevant to good cause include "whether the moving party can demonstrate diligence" and "whether allowing the amendment of the pleading at this stage of the litigation will prejudice" the non-moving party. *Id.* at 244. Good cause exists here.

As a starting point, the order granting conditional collective certification expressly contemplated that if class certification is not granted, any opt-in plaintiffs may seek to assert the NYLL claims in this case via Rule 20 joinder. (Dkt. No. 30 at 18.) As notice was not sent to potential opt-in plaintiffs until after the scheduling order's May 6, 2022 deadline to amend the pleadings or add parties (DiGiulio Decl. ¶ 5), presumably that May 6, 2022 deadline was not intended to apply to opt-in plaintiffs. *Cf. Mogollan v. La Abundancia Bakery & Rest., Inc.*, No. 18 CV 3202, 2020 U.S. Dist. LEXIS 183436, at *35 (S.D.N.Y. Sept. 30, 2020) (in decision issued nearly two years after the deadline to amend pleadings or join parties, noting that if FLSA collective were decertified, plaintiffs would be permitted to amend the complaint to add the opt-in plaintiffs as named plaintiffs). (DiGiulio Ex. 10 (*Mogollan* scheduling order).)

In addition, Plaintiffs have acted diligently. The conditional collective certification order clearly linked the need to join an opt-in plaintiff under Rule 20 to the denial (or failure to make) a class certification motion. (Dkt. No. 30 at 17-18.) As this motion to add Opt-In Plaintiff Huk as a named plaintiff is made contemporaneously with the class certification motion, it is being made at the earliest possible opportunity. The only delay in making this class certification motion has been caused by Defendants' lack of cooperation in discovery and violations of the Court's orders, which have delayed or prevented Plaintiffs from obtaining the information needed to so move. (DiGiulio Decl. ¶ 26.)

Adding Opt-In Plaintiff Huk as a named plaintiff asserting NYLL claims will not prejudice Defendants. Defendants have already produced full discovery relating to Opt-In Plaintiff Huk's

FLSA and NYLL claims. Defendants also had the opportunity to take discovery from Opt-In Plaintiff Huk about the FLSA and NYLL claims, and they will take her deposition on December 20, 2022. (DiGiulio Decl. ¶ 8.) Accordingly, good cause exists to permit amendment of the complaint and/or joinder.

Fed. R. Civ. P. 15(a) permits a party to amend a pleading at any time with leave of the court and provides that "[t]he court should freely give leave when justice so requires."  Leave should be given unless there has been "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed," undue prejudice to the non-movant, or if the amendment is futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "[T]he 'showing necessary under Rule 21 is the same as that required under Rule 15(a).'" *Cano v. DPNY, Inc.*, 287 F.R.D. 251, 256 (S.D.N.Y. 2012). For the same reasons that there is good cause to permit amendment/joinder under Fed. R. Civ. P. 16(b), there has been no undue delay, bad faith, or undue prejudice. Nor have Plaintiffs failed to cure deficiencies by previous amendments (this is the first proposed amendment to the complaint), and the amendment is not futile. On the contrary, as discussed above, the NYLL claims in this case are meritorious. Moreover, adjudicating all Plaintiffs' NYLL claims together with the FLSA claims will promote judicial efficiency.  Thus, if the Court does not grant class certification, it should permit the Plaintiffs to amend the complaint to join the Opt-In Plaintiff as a named Plaintiff asserting the NYLL claims already included in the complaint. *See Williams v. Epic Sec. Corp.*, 358 F. Supp. 3d 284, 294 (S.D.N.Y. 2019) (after trial, granting plaintiffs' motion to amend the complaint to add opt-in plaintiffs as named plaintiffs asserting NYLL claims).

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court certify the

NYLL claims in this case as a class action under Rule 23 or, in the alternative, permit Plaintiffs to

amend the complaint to join Opt-In Plaintiff Huk as a named Plaintiff.


Dated:  New York, NY

          December 9, 2022

                                          By: */s/ Michael DiGiulio*
                                          D. Maimon Kirschenbaum
                                          Denise A. Schulman
                                          Michael DiGiulio
                                          **JOSEPH & KIRSCHENBAUM LLP**
                                          32 Broadway, Suite 601
                                          New York, NY 10004
                                          (212) 688-5640 Phone
                                          (212) 981-9587 Fax

                                          *Attorneys for Plaintiff, Opt-In Plaintiff, and proposed Class*