# Exhibit 4

M7MQmarC

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    NINO MARTINENKO, et al.

 4                  Plaintiffs

 5          v.                                  22 Civ. 518 (LJL)

 6                                              Remote Teleconference

 7    212 STEAKHOUSE INC., et al.,

 8                  Defendants

 9    ------------------------------x
                                                New York, N.Y.
10                                              July 22, 2022
                                                10:05 a.m.
11
      Before:
12
                              HON. LEWIS J. LIMAN
13
                                                District Judge
14
                              APPEARANCES
15
      JOSEPH & KIRSCHENBAUM LLP
16         Attorneys for Plaintiffs
      DENISE A. SCHULMAN
17    MICHAEL DIGIULIO

18


19    MITCHELL S. SEGAL
           Attorney for Defendants
20


21


22          (The Court and all parties appearing via

23    teleconference)

24          THE COURT:  Good morning.  This is Judge Liman.  Who

25    do I have -- Matt, are we ready to get started?
```

M7MQmarC

1          DEPUTY CLERK:  Yes, you're all set for Martinenko v.

2     Steakhouse matter.

3          THE COURT:  Who do I have on for the plaintiff?

4          MS. SCHULMAN:  Denise Schulman and Michael Digiulio.

5          THE COURT:  Good morning.

6          And for defendant?

7          MR. SEGAL:  Mitchell Segal.  Good morning, your Honor.

8          THE COURT:  Good morning, Mr. Segal.

9          So we are here on a discovery conference with respect

10    to plaintiff's request for documents and for interrogatory

11    responses.  What I'm prepared to do is start with the

12    plaintiff's letter of July 18 and go through category by

13    category where things stand and whether the item has been

14    resolved.

15          I also do have Mr. Segal's letter of July 18 in which

16    he responds to the various categories.  we'll go through that

17    as well.

18          Why don't we start with the plaintiff.  And we'll

19    start with the plaintiff's reference on page 1 of the letter to

20    the currently outstanding documents.

21          Is plaintiff prepared to proceed in that manner?

22          MS. SCHULMAN:  Yes.

23          THE COURT:  So, with respect to number 1, regarding

24    plaintiff's personnel file and the like, I do have a response

25    from defendant on that stating that the documents were to have

M7MQmarC

1   been produced yesterday.  Where do things stand?

2          MS. SCHULMAN:  Defendants have indicated there is no

3   personnel file with respect to the pay records.  We have not

4   received any additional pay records for 2016 to 2018, and we

5   received a W2 this morning for 2021 but nothing for the earlier

6   years.

7          THE COURT:  Mr. Segal, your letter says shall be

8   supplied by Thursday.

9          MR. SEGAL:  Yes, your Honor, good morning.

10         They were requested.  I was told they were going to be

11  supplied, and this is what I received at this point in time.

12  To be honest with you, it sounds like, or seems like, after we

13  go through this, I'm going to have to meet again with my client

14  and go through item by item as to what's outstanding.

15         I did have several phone calls with him as well as he

16  was relying on a third-party accountant that had some of this

17  information I was told, but, you know, I'm not -- I'm not

18  disagreeing with Ms. Schulman's analysis, so to speak, that

19  there are items outstanding.

20         THE COURT:  With respect to item number 1, I'm

21  prepared to impose sanctions.  And I'll hear from Ms. Schulman

22  what those sanctions could be, but they could include a minimum

23  preclusion of the defendant from being able to rely upon the

24  documents and also could include me finding facts in favor of

25  the plaintiff, but we'll set a briefing schedule with respect

M7MQmarC

1    to the motion and sanctions on that.

2            Ms. Schulman, I don't think I need to enter any order

3    because I've got an order in place that defendant is in

4    violation of.  Am I right about that?

5            MS. SCHULMAN:  That is correct, though -- that is

6    correct, yes.

7            THE COURT:  Let's go to number 2, opt-in plaintiff

8    Huk's personnel file.

9            MS. SCHULMAN:  Again, defendants stated that they

10   don't maintain personnel files.  We did receive about 20

11   minutes before this phone call time records and pay records for

12   the opt-in plaintiff.  I haven't yet been able to determine if

13   they actually cover her entire period of employment, but we

14   have received a number of those items.

15           THE COURT:  Okay.  And, Mr. Segal, what's the status

16   on that from your perspective?

17           MR. SEGAL:  Let me just say this, first off, and I

18   spoke to Ms. Schulman about this yesterday.  So I came down

19   with Covid yesterday, so I wasn't in, you know, the best health

20   state, so to speak, to chase him down and make sure we have

21   that.  I'm in day two, but, you know, I'm dealing with it, so

22   to speak.

23           But Ms. Schulman is right, there is no personnel file.

24   He has forwarded me time records and pay records.  I've asked

25   him for the wage statements from this third-party accountant,

M7MQmarC

1    and as of today I don't believe I've received those.

2                MS. SCHULMAN:  I actually believe today's production

3    had wage statements.

4                MR. SEGAL:  Did it?

5                MS. SCHULMAN:  There are photocopies of checks and

6    what appear to be wage statements.

7                MR. SEGAL:  Okay, good.

8                THE COURT:  So, Ms. Schulman, from the record in front

9    of me now, it appears that this request has been satisfied, and

10   you have everything that's in the defendant's custody --

11   possession, custody and control; but if it turns out to be

12   deficient, you'll make a separate motion with respect to that.

13               MS. SCHULMAN:  Okay.

14               THE COURT:  Number 3, the putative class members time

15   records and pay records including wage statements.  Defendant

16   indicates that you're not entitled to those.  You've indicated

17   that that objection has been waived.  Let me hear from you.

18   Apart from the waiver why are these documents relevant?  Why

19   should I produce -- order the defendants to produce documents

20   with respect to persons who are not at the moment party to the

21   case.

22               MS. SCHULMAN:  Sure.  Because this information is

23   necessary in order to determine whether the requirements of

24   Rule 23 are, in fact, satisfied.

25               THE COURT:  Let me ask you a further question.  Do you

M7MQmarC

1   need in this production the actual names of the individuals?

2   I've not yet certified a class, and there are privacy interests

3   of individuals who are not yet members of a class.  They may

4   not even be the subject of a class certification motion.  Do

5   you need that information?

6          MS. SCHULMAN:  I think, you know, if defendants wanted

7   to replace names with numeric identifiers, that would be fine.

8   We just would need to know the job title of the positions, but

9   the individual names, no, I don't think that's necessary.

10         THE COURT:  Same obviously with respect to social

11  securities.

12         Let me hear from you, Mr. Segal.

13         MR. SEGAL:  Yeah, I just think that it's premature,

14  your Honor.  The class motion hasn't been filed nor certified

15  by the Court, and right now, you know, we're in the opt-in

16  stage.  The notice period has closed.  There's only one other

17  defendant -- one other plaintiff, excuse me, that has joined

18  the action, and I just think the request is premature at this

19  point in time.

20         THE COURT:  Okay.  I'm going to overrule that

21  objection.  It both is waived and is not well-founded.  This is

22  permissible class discovery.  But I am going to permit you to

23  redact the name and social security number and any telephone

24  numbers or addresses of the putative class members.

25         Remind me, Ms. Schulman, is there a discovery cutoff

M7MQmarC

1    in this case?  Have we run past that?

2            MS. SCHULMAN:  It's not until January.

3            THE COURT:  Okay.  How soon are you going to be

4    prepared to make your motion for class certification after you

5    receive the documents?  How much time are you going to need

6    after you receive the documents?

7            MS. SCHULMAN:  I think we'll need to take a 30(b)(6)

8    deposition first, which I assume the individual defendant will

9    be that witness.  So probably 30 days after that deposition.

10           THE COURT:  It is now July.  And I am going to give

11   the defendant time on that.  I'm not going to impose sanctions

12   with respect to this request.  Let me look at the calendar.

13           Mr. Schulman, if I told you August 19, can you do

14   that?

15           MS. SCHULMAN:  You mean Mr. Segal?

16           THE COURT:  I'm sorry, Mr. Segal.

17           MR. SEGAL:  Sure, your Honor.

18           THE COURT:  All right.  So the documents responsive to

19   number 3 with the redactions that I've permitted will be

20   provided to the plaintiff on August 19.

21           Number 4.  Documents to show individual defendants

22   ownership interest.

23           Ms. Schulman, Mr. Segal says you've got what they

24   have.  What's your response?

25           MS. SCHULMAN:  Well, I don't think that's accurate

M7MQmarC

1   because presumably they have tax returns from the other years.

2   But that being said, I did make a proposal to Mr. Segal earlier

3   this week with respect to this and number 5, actually; that is,

4   the individual defendant would sign a declaration simply

5   stating that he was the sole owner for all the relevant years,

6   and that the restaurant's revenue in each year was at least

7   500,000; that the additional documents would not be needed.

8          THE COURT:  Mr. Segal, where do you stand with respect

9   to that because, you know, I don't want to have a trial on

10  something that everybody concedes is not a real issue of fact.

11         MR. SEGAL:  I don't think it's a real issue, your

12  Honor.  I have spoken to my client on that.  There was a little

13  push back.  I'm not really sure why, but I'd like to have

14  another conversation, you know, in relation to this.

15         THE COURT:  Okay.  So with respect to both 4 and 5,

16  what I'm going to do is I'm going to give you two weeks from

17  today to respond to 4 and 5 so that --

18         Let me start again.  With respect to 4 and 5, the

19  defendant will have until August 5 to satisfy 4 and 5 with

20  documents including in response to 4 the tax returns showing

21  the individual defendant's ownership interest in the restaurant

22  through the liability period.

23         4 and 5 will be satisfied if prior to August 5 the

24  defendant provides a stipulation to the plaintiff indicating

25  that the individual defendant had sole ownership of the

1    restaurants, and further indicating that the corporate

2    defendant's gross annual sales exceeded that which would be

3    sufficient for the corporate defendant to be considered an

4    employer under FLSA and the New York Labor Law.

5          Does that take care of 4 and 5 from plaintiff's

6    perspective?

7          MS. SCHULMAN:  Yes.

8          THE COURT:  Let's turn to number 6, the bank

9    statements.

10          Mr. Segal, where do we stand with respect to the bank

11    statements?

12          MR. SEGAL:  I've requested those statements from my

13    client.  He told me he doesn't have those statements, and he's

14    requested them from the banks.  I told them that, you know, the

15    banks supply those statements, and we need those statements,

16    and I'm waiting for him to supply those statements.

17          THE COURT:  What is the plaintiff's position with

18    respect to the bank statements?

19          MS. SCHULMAN:  The request for the bank statements was

20    initially aimed at that $500,000 in sales issue.  So in that

21    sense, they may not be needed.

22          However, if the pay statements for the named plaintiff

23    from that earlier time period are not produced, the bank

24    statements may be needed to the extent that they reflect those

25    payments.  And, similarly, if there aren't records other than

M7MQmarC

1    the bank statements of class members, the bank statements could

2    be relevant for that reason as well.

3         THE COURT:  So the bank statements are relevant, and

4    they will have to be produced.

5         When does the plaintiff need those by?

6         MS. SCHULMAN:  We won't be conducting depositions

7    until we get everything.  So if defendants wanted to produce

8    them at the same time as the class member information, I think

9    that would be fine.

10        THE COURT:  Okay, that is fine from my perspective.

11   So the deadline for the bank statements is -- I said August 19

12   is the deadline for the class members?

13        MS. SCHULMAN:  Yes.

14        THE COURT:  Very good.  It's August 19 for bank

15   statements as well.  That's request number 25.

16        Now, Ms. Schulman, your next paragraph refers to

17   documents that have not been produced.  As I read Mr. Segal's

18   letter, he seems to indicate that at least as to some of these,

19   there are no such documents notwithstanding what was said in

20   the document responses.

21        MS. SCHULMAN:  Right.  So I believe he says that there

22   is no New York Department of Labor settlement, so that would

23   take care of 49.

24        I was not clear about requests of 57, 58 and 60,

25   whether responsive documents exist.

1     THE COURT:  Let's hear Mr. Segal with respect to 57,

2     58 and 60.

3     MR. SEGAL:  With respect to those documents -- well,

4     just generally.  So I was told originally that there was a

5     department of labor case, which it turned out that there

6     wasn't, okay?

7     In addition to that, this defendant has been sued

8     twice under the FLSA and New York Labor Laws.  Those are public

9     documents.  If Ms. Schulman wants me to print those out and

10    provide those, I guess I can, but she can probably access those

11    on the ECF.

12    THE COURT:  And are there any other wage and hour

13    investigations or audits, wage and hour rulings, decisions or

14    opinions, or documents that the defendants relied upon in

15    determining the legality of their compensation practices?

16    MR. SEGAL:  Not that I believe, your Honor.

17    THE COURT:  And I assume that that's after reasonable

18    investigation.  So I think you've got your answer,

19    Ms. Schulman, with respect to documents other than the two

20    complaints.

21    Do you want copies of the two complaints that were

22    filed against the defendant?

23    MS. SCHULMAN:  No.  The complaints, obviously I've

24    seen them.  I have access to those.

25    I think what we would be interested in is with respect

M7MQmarC

```
 1    to 61, the non-privileged documents, if any discovery was
 2    exchanged in those cases, if documents were produced, I don't
 3    believe that would be privileged, and so we would want that.
 4              THE COURT:  Where do things stand with respect to
 5    that, Mr. Segal?
 6              MR. SEGAL:  I don't believe there's much, if any, but
 7    I will be happy to do some more digging on that, and we'll get
 8    back to Ms. Schulman and the Court.
 9              THE COURT:  Your deadline on that is August 5 to
10    produce the documents that are responsive to 61.  And there
11    will be sanctions if you don't, okay?
12              MR. SEGAL:  Yes.
13              THE COURT:  The next paragraph, it says other
14    responses state that responsive documents will be produced in
15    the future.
16              Ms. Schulman?
17              MS. SCHULMAN:  Yes.  So there was request number 23
18    concerning when timekeeping systems were used.  I mean, it's
19    not clear to me if they had the same timekeeping system the
20    entire time, then I don't think we need anything else, but I
21    don't know if that was the case.
22              THE COURT:  Mr. Segal?
23              MR. SEGAL:  I would have to do some due diligence and
24    inquire into this, your Honor.  I don't have a response to
25    that.
```

M7MQmarC

1          THE COURT:  Okay.  August 5 for a response, which can

2    be satisfied by a stipulation that the same timekeeping system

3    was in operation throughout the liability period.

4          I take it, Ms. Schulman, that would satisfy you?

5          MS. SCHULMAN:  Yes.

6          THE COURT:  Okay.

7          MS. SCHULMAN:  And then 29, the tip documents.

8    Defendants have produced some tip documents from, I believe,

9    the 2021, maybe 2020.  So we don't have the tip documents from

10   the rest of the time periods.

11         THE COURT:  Mr. Segal?

12         MR. SEGAL:  I believe -- well, they've been requested.

13   That is what has been provided.  I will revisit that with my

14   clients and make sure that everything as far as the tip

15   documents in their possession or in anyone's possession that

16   they maintain can be provided.

17         THE COURT:  August 5 for the tip documents responsive

18   to number 29.  Again, on pain of sanctions if they're not

19   produced by August 5.

20         Interrogatories.  Ms. Schulman, let me hear from you.

21         MS. SCHULMAN:  Yes.  So for the class list, based on

22   your Honor's concerns about privacy for absent class members,

23   we would be satisfied with just numeric identifiers, position,

24   dates of employment.  That should be sufficient to determine

25   whether numerosity will be satisfied.

M7MQmarC

1          THE COURT:  Why do you need those if you're going to

2     get the documents?

3          MS. SCHULMAN:  Well, maybe we don't.  I guess we need

4     to see if the document production will be complete.  But you're

5     right, if it is, we could presumably make that determination

6     ourselves from the documents.

7          THE COURT:  Here is what I'm going to do with respect

8     to -- which interrogatory is that, Ms. Schulman?

9          MS. SCHULMAN:  Number 1.

10         THE COURT:  Number 1 is -- Mr. Segal, on the deadline

11    for the class discovery, which is August 18 -- I'm sorry,

12    August 19.

13         MR. SEGAL:  19.

14         THE COURT:  For August 19, you're going to respond to

15    rog number 1.  I will permit you to and encourage you to have a

16    meet and confer with the plaintiff's counsel, Ms. Schulman,

17    about whether you need to respond to that if your document

18    discovery is complete.

19         But given the issues with respect to document

20    discovery, I'm not going to relieve you of your obligation with

21    respect to rog number 1 in the absence of an agreement from

22    Ms. Schulman.

23         What's next?

24         MS. SCHULMAN:  And then number 2 is to identify the

25    class members who defendants claim have release wage and hour

M7MQmarC

1    claims, which I presume will be the two individuals who

2    previously sued the restaurant.

3                    THE COURT:  August 19 for that as well for rog number

4    2.

5                    And then rog number 3 I think you've got your answer

6    that the defendant has no restaurant managers.

7                    MS. SCHULMAN:  Right.

8                    THE COURT:  So does that take care of things from your

9    perspective, Ms. Schulman?

10                   MS. SCHULMAN:  Yes.

11                   THE COURT:  Okay.

12                   Mr. Segal, any other matters to address from your

13   perspective?

14                   MR. SEGAL:  Not at this point, your Honor.

15                   THE COURT:  Ms. Schulman, if you do file a motion for

16   sanctions or indicating what the sanctions should be, you

17   should do it only after August 5, after I have seen and you've

18   seen what the responses will be from the defendant.

19                   MS. SCHULMAN:  Okay.  And it seems like it would make

20   sense to hold off on the attorney's fee application that your

21   Honor permitted us to make in the last order until that time as

22   well?

23                   THE COURT:  That's correct.

24                   MS. SCHULMAN:  Okay.

25                   THE COURT:  Mr. Segal, I wish you a speedy recovery.

M7MQmarC

1          MR. SEGAL:  Thank you very much, your Honor.

2     Appreciate it.

3          THE COURT:  Take care of that.

4          All of you and the court reporter have a good weekend.

5     Stay safe and stay healthy.  We will issue a minute order

6     indicating that the motions to compel discovery have been

7     resolved, and that the Court is holding in abeyance the issue

8     of sanctions, and that they've been resolved based upon the

9     conference today.

10         So, Ms. Schulman, if you need to enforce it, I would

11    encourage you to get a copy of the transcript and to stay on

12    the phone with the court reporter to order a copy of the

13    transcript for whatever time periods however quickly you feel

14    like you need it.

15         MS. SCHULMAN:  Yes, your Honor.

16         THE COURT:  That concludes things.  Thank you all.

17    Have a good weekend everybody.

18         MS. SCHULMAN:  Thank you, your Honor.

19         MR. SEGAL:  Thank you.  You too, your Honor.

20         (Adjourned)

21

22

23

24

25