USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___4/12/2023___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————————
                              :

NINO MARTINENKO, on behalf of herself   :
and others similarly situated,             :
                              :

                   Plaintiff,    :

                              :

        - against -                :

                              :

212 STEAKHOUSE, INC., and        :
NIKOLAY VOLPER,               :
                              :

                 Defendants.   :
————————————————————————————

**22-CV-518 (JLR) (RWL)**

**REPORT AND RECOMMENDATION
TO HON. JENNIFER L. ROCHON:
<u>CLASS CERTIFICATION</u>**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

       This is an action for unpaid wages and other violations of the Federal Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). The Court previously granted conditional certification of a collective action under the FLSA. Plaintiff Nino Martinenko, and opt-in Plaintiff Dagmara Huk (together, "Plaintiffs"), now move for class certification pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") with respect to the NYLL claims. Plaintiffs also seek appointment of Martinenko and Huk as class representatives, appointment of Plaintiffs' attorneys as class counsel, an order requiring Defendants 212 Steakhouse, Inc. ("212") and Nikolay Volper (together, "Defendants") to produce a class list, and authorization to mail a proposed class notice. For the reasons set forth below, I recommend that the Court GRANT Plaintiffs' motion.[1]

---

[1] In the event the Court were to deny the motion for class certification, Plaintiffs request leave to amend the Complaint to add Huk as a named Plaintiff. Because the Court recommends certifying the proposed class, the request for alternative relief is moot.

<h1 style="text-align:center">Factual Background[2]</h1>

**A.     The Parties**

212 operates a restaurant in midtown New York called 212 Steakhouse.  (First Martinenko Decl. ¶ 2.)   Volper is the owner of 212.   (DiGiulio Decl. Ex. 3 at 16.) Martinenko worked at 212 as a server from 2016 through 2018, and then again from early 2021 through December 2021.  (Second Martinenko Decl. ¶ 3.)  Huk worked at 212 as a bartender from 2020 through 2021.  (Huk Decl. ¶ 3.)  Both Martinenko and Huk are familiar with the payroll practices at 212 Steakhouse, and each had, for a time, responsibility for writing employees' paychecks at the direction of another 212 employee.  (First Martinenko Decl. ¶ 7; Second Martinenko Decl. ¶¶ 7, 15; Huk Decl. ¶¶ 5, 7.)

Martinenko and Huk allege that they were subject to one or more of four improper pay practices applicable to all front-of-house employees: Defendants' deduction of a tip credit without having provided Plaintiffs the requisite notice; failure to pay one-and-a-half times regular rate of pay for overtime hours worked in excess of 40 per week; failure to pay the requisite premium for working more than 10 hours in one day; and failure to provide requisite wage notices and statements.

---

[2] The facts are derived from the Declaration of Michael DiGiulio, filed December 9, 2022 at Dkt. 72 ("DiGiulio Decl."); the Declaration of Nino Martinenko filed April 4, 2022 at Dkt. 22 ("First Martinenko Decl."), the Declaration of Nino Martinenko, filed December 9, 2022 at Dkt. 73 ("Second Martinenko Decl."); the Declaration of Dagmara Huk, filed December 9, 2022 at Dkt. 74 ("Huk Decl."); the Declaration of Nikolay Volper, filed December 23, 2022 at Dkt. 75-1 (Volper Decl."); and all accompanying exhibits to those declarations. The Volper Declaration largely consists of purely conclusory statements or factual assertions that do not bear on class certification.

## B.    Tip Credit Violations

Employers in New York are required to pay non-exempt employees at least the minimum wage.  NYLL § 652.  If certain conditions are satisfied, employers may use a portion of tips received by tipped food service workers as a credit – the "tip credit" – against the minimum wage.  N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12 §§ 146-1.3, 146-2.2.  One requirement is that the employer provide written notice to the employee of the employee's regular hourly pay rate, overtime rate, the amount of tip credit, and the caveat that extra pay is required if tips are insufficient to bring the employee up to the minimum hourly rate.  NYCRR tit. 12 § 146-2.2(a).  "An employer who fails to provide the required notice is liable for the difference between the full minimum wage rate and what the employee was actually paid."  *Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp.3d 540, 554 (S.D.N.Y. 2017); *see also Salinas v. Starjem Restaurant Corp.*, 123 F. Supp.3d 442, 466 (S.D.N.Y. 2015) ("Under the current regulations, an employer may not take a tip credit unless the employer has given the employee written notice").

Evidence submitted by the Plaintiffs indicates that Defendants took advantage of the tip credit for all front-of-house employees but did not provide the notice required by the NYLL.  (*See*, *e.g.*, DiGiulio Decl. Ex. 3 at 40-41 (Volper testimony that all front-of-house employees were paid tip-credit minimum wage); Second Martinenko Decl. ¶ 13 (Martinenko was never provided with written wage notice); Huk Decl. ¶ 4 (same for Huk).)  Defendants have not produced any such notices during discovery, and Volper testified that he was not sure if before 2022 he provided any employee with wage notices.[3]  (*See* DiGiulio Decl. Ex. 3 at 118-19.)

_____

[3] Plaintiffs argue that many of the salient facts proving Defendants' liability are beyond

**C.    Overtime and Spread-of-Hour Violations**

In New York, employers are required to pay non-exempt restaurant service workers at least one-and-a-half times their regular rate of pay for any hours worked in excess of 40 hours per week.  NYCRR tit. 12 § 146-1.4; *DeJesus v. HF Management Services*, 726 F.3 85, 88 (2d Cir. 2013).   Additionally, employers must pay employees for one extra hour's work at full minimum wage for any workday that spanned more than 10 hours – the so-called spread-of-hours premium.  NYCRR tit. 12 § 146-1.6; *Tambriz v. Taste & Sabor LLC*, 577 F. Supp.3d 314, 327 (S.D.N.Y. 2021).

Evidence before the Court indicates that Defendants paid neither the requisite overtime rate nor the spread-of-hours premium and did so with respect to all tipped employees.  Plaintiffs' paystubs show that every time they worked more than 40 hours per week, they received their regular rate of pay for all hours worked instead of time-and-a-half for overtime hours.  (*See*, *e.g.*, DiGiulio Decl. Ex. 6 at D887, 890, 895, 905-07, 913, 919, 948-49, 951-57, 974-75, 977.)  Martinenko and Huk have submitted some paystubs for at least some putative members.  Those paystubs show that for every week a putative class member worked more than 40 hours, they did not receive the overtime premium. (*See* Second Martinenko Decl. ¶ 8 and Ex. 3; Huk Decl. ¶ 5 and Ex. 1.)  At deposition,

---

dispute and should be the subject of findings made as sanctions for discovery violations. Those requested sanctions are the subject of a separate motion filed by Plaintiffs prior to moving for class certification and which is being decided contemporaneously with the instant report and recommendation.  For purposes of class certification, however, the Court need not and does not make any finding of actual liability.  *See Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012) ("the Court's task at the Rule 23 stage is not to resolve the liability question, but to decide 'whether the constituent issues that bear on [Defendants'] ultimate liability are provable in common'") (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2 Cir. 2010)) (emphasis omitted).  As set forth above, the requirements for class certification are met irrespective of any such finding on the merits.

Volper did not testify to the contrary, instead saying that he does not know whether employees received the overtime premium. (DiGiulio Decl. Ex. 3 at 110-11.)

Similarly, the available time and pay records indicate that Defendants did not pay a spread-of-hours premium to front-of-house employees on days that spanned more than 10 hours (DiGiulio Decl. ¶ 22; Second Martinenko Decl. Ex. 3; Huk Decl. Ex. 1), and Volper testified that he did not even know what spread-of-hours compensation is. (DiGiulio Decl. Ex. 3 at 114.)

**D.    Wage Notice And Statement Violations**

Pursuant to New York law, employers are required to furnish their employees with wage notices and wage statements containing specific information. The requisite wage notice must be provided "at the time of hiring" and must include, inter alia, the rate of pay, the frequency of payment, allowances such as tip allowances, and assorted other information. NYLL § 195(1)(a). As set forth above, evidence suggests that Defendants did not provide Plaintiffs or putative class members with any written wage notices. Employers must also provide a wage statement with every payment that includes similar information as the wage notice and also the period of pay covered by the particular statement. NYLL § 195(3). Until 2019 or so, evidence indicates, Defendants paid all tipped employees by hand-written checks (DiGiulio Ex. 3 at 46) without any accompanying wage statements. (*See* Second Martinenko Decl. ¶ 14, DiGiulio Decl. Ex. 3 at 84-85, 101; *cf.* DiGiulio Decl. Ex. 6 (paystubs for Plaintiffs issued during 2020 and later).) And even when Defendants began issuing wage statements, they apparently did not state the amount of tip credit claimed or list the employer's phone number as required under NYLL § 195(3). (*See* DiGiulio Ex. 6.)

## Procedural History

Martinenko filed her Complaint on January 20, 2022. (Dkt. 1.) In addition to alleging FLSA violations, the Complaint alleges that Defendants violated the NYLL by (1) taking advantage of a tip credit without providing the requisite notice to employees, (2) failing to properly pay the required rate for overtime, (3) failing to pay employees the spread-of-hours premium for working more than 10 hours in a single day, and (4) failing to provide wage notices and statements.

On April 4, 2022, Martinenko moved for conditional certification of a collective action on her FLSA claim. (Dkt. 19.) The Court granted that motion on April 26, 2022, authorizing Martinenko to send notice of the collective action to all tipped employees employed by Defendants on or after January 20, 2019. *Martinenko v. 212 Steakhouse Inc.*, No. 22-CV-518, 2022 WL 1227140 (S.D.N.Y. April 26, 2022). On May 3, 2022, Defendants produced a collective list of 24 tipped employees, following which Martinenko disseminated the Court-approved notice. (DiGiulio Decl. ¶ 5.) One former employee, Huk, joined the action as an opt-in Plaintiff. (*Id.* ¶ 6; Huk Decl. ¶¶ 1, 3.) Plaintiffs deposed Volper as a corporate representative of 212 on October 6, 2012. (DiGiulio Decl. ¶ 7.)

On December 9, 2022, Martinenko, along with Huk, filed the instant motion for class certification of the NYLL claims. Defendants filed their opposition on December 23, 2022, and Plaintiffs replied on January 4, 2023.[4]

---

[4] The parties' briefs consist of Plaintiffs' Memorandum of Law in Support of Their Motion for Class Certification, filed December 9, 2022 at Dkt. 71 ("Pl. Mem."); Defendants' Memorandum of Law in Opposition of Plaintiff's Motion for Class Certification, filed December 23, 2022 at Dkt. 75 ("Def. Mem."); and Plaintiffs' Reply Memorandum of Law in Support of Their Motion for Class Certification, filed January 4, 2023 at Dkt. 79 ("Pl. Reply").

## The Proposed Class

Martinenko requests certification of the following class: "all tipped employees – servers, runners, bussers, and bartenders – who worked for Defendants at any time on or after January 20, 2016 at 212 Steakhouse."  (Dkt. 70.)

## Class Action Requirements

To obtain class certification, a movant must establish several requirements by a preponderance of the evidence.  *In re U.S. Foodservice Inc. Pricing Litigation*, 729 F.3d 108, 117 (2d Cir. 2013).  In passing upon certification, Courts are to undertake "a rigorous analysis" and resolve any factual disputes relevant to certification.  *In re American International Group Securities Litigation*, 689 F.3d 229, 238 (2d Cir.2012).  "The Rule 23 inquiry may overlap with that of the merits, although courts are not permitted to engage in 'free-ranging merits inquiries at the certification stage.'"  *Enea v. Bloomberg, L.P.*, No. 12-CV-4656, 2014 WL 1044027, at *2 (S.D.N.Y. March 17, 2014) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351, 131 S. Ct. 2541, 2551 (2011) and quoting *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455, 466, 133 S. Ct. 1184, 1194-95 (2013)); *see also Merryman v. Citigroup, Inc.*, No. 15-CV-9185, 2018 WL 1621495, at *13 (S.D.N.Y. Mar. 22, 2018) ("The certifying court should not make any factual findings or merits determinations that are not necessary to the Rule 23 analysis, and any factual determinations made at the certification stage are not binding on a subsequent fact-finder, even the certifying court") (citing *In re Initial Public Offerings Securities Litigation*, 471 F.3d 24, 41-42 (2d Cir. 2006).).

A class will be certified "only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3)

the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These four elements are known in brief as numerosity, commonality, typicality, and adequacy of representation. *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007). Additionally, there is an implied requirement of "ascertainability," which, in the Second Circuit, "requires only that a class be defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Securities*, 862 F.3d 250, 264 (2d Cir. 2017), *cert. denied*, __ U.S. __,140 S. Ct. 338 (2019).

If the requirements of Rule 23(a) are met, "[t]he district court must also find that the action can be maintained under Rule 23(b)(1), (2), or (3)." *In re Literary Works in Electronic Databases Copyright Litigation*, 654 F.3d 242, 249 (2d Cir. 2011). A plaintiff need establish only one basis for certification under Rule 23(b). *See Waggoner v. Barclays PLC*, 875 F.3d 79, 93 (2d Cir. 2017). Here, Plaintiffs seek certification of the class pursuant to Rule 23(b)(3), which applies when the court finds "'that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809, 131 S. Ct. 2179, 2184 (2011) (quoting Rule 23(b)(3)).

"'The Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction' and has demonstrated a 'general preference ... for granting rather than denying class certification.'" *Enea*, 2014 WL 1044027, at *2 (quoting *Gortat*

*v. Capala Bros., Inc.*, 257 F.R.D. 353, 361 (E.D.N.Y. 2009)).  District courts customarily retain "broad discretion" in determining class certification issues.  *Parker v. Time Warner Entertainment Co.*, 331 F.3d 13, 28 (2d Cir.2003) (Newman, J., concurring) (collecting cases).

## Discussion

Martinenko has met her burden of establishing the basis for certification of the proposed class pursuant to Rule 23.

## A.     The Requirements Of Rule 23(a) Are Satisfied

The first four class certification requirements are numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a)(1)-(4).  Those elements are satisfied here.

### 1.     Numerosity

To obtain certification, the proposed class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Impracticable does not mean impossible," and "[c]ourts have not required evidence of exact class size or identity of class members."  *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993); *see also In re Independent Energy Holdings PLC Securities Litigation*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002) ("Impracticability does not mean impossibility of joinder, but refers to the difficulty or inconvenience of joinder").

Courts in the Second Circuit presume numerosity when the proposed class is at least 40 members.  *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Enea*, 2014 WL 1044027, at *3.  "Classes that encompass 'fewer than 20 members will likely not be certified absent other indications of impracticability of joinder,'

while prospective classes of twenty to forty members fall in a 'gray area.'" *Jianmin Jin v. Shanghai Original, Inc.*, No. 16-CV-5633, 2018 WL 1597389, at *11 (E.D.N.Y. April 2, 2018) (quoting 1 Newberg On Class Actions § 3:12 (5th ed. 2011)). "[P]articularly in cases falling into the gray area between 21 and 40 class members, courts must consider factors other than class size." *Ansari v. New York University*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998).

Relevant considerations as to the practicability of joinder include: "(1) the judicial economy that will arise from avoiding multiple actions; (2) the geographic dispersion of members of the proposed class; (3) the financial resources of those members; (4) the ability of the members to file individual suits; and (5) requests for prospective relief that may have an effect on future class members." *Id.* at 114-15 (citing *Robidoux*, 987 F.2d at 936); *accord Balverde v. Lunella Ristorante, Inc.*, No. 15-CV-5518, 2017 WL 1954934, at *5 (S.D.N.Y. May 10, 2017) (relevant factors include "'judicial economy arising from the avoidance of a multiplicity of actions, ... financial resources of class members, [and] the ability of claimants to institute individual suits'") (quoting *Robidoux*, 987 F.2d at 936).

Here, the class size is not precisely determined because Defendants have not provided a complete list of putative members. That, however, is no obstacle to certification. *See D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120, 2013 WL 3010810, at *19 (E.D.N.Y. June 18, 2013) ("Plaintiffs need not present the court with a precise calculation of the number of class members; rather, they must show some evidence that, in effect, provides the Court with a reasonable estimate. The court may also draw reasonable inference from that evidence and rely on those inferences when making its determination") (internal quotation marks and citations omitted).

Defendants produced a purported class list that includes 24 tipped employees; that list, however, does not include any tipped employees other than those already included on the list Defendants provided in connection with Martinenko's motion for certification of a collective action addressing the FLSA claims. (*Compare* DiGiulio Decl. Ex. 2 (collective list) with DiGiulio Decl. Ex. 5 (Rule 23 class list).) All of the tipped employees on both lists worked at least until March 2020. If the tipped portion of the class list were accurate, that would mean that 212 did not employ any tipped employees from January 20, 2016 to January 19, 2019 that it did not also employ after January 19, 2019.[5] That scenario defies common sense, particularly given the restaurant's high turnover rate. (DiGiulio Ex. 3 at 175.) It also is belied by the recollection of Martinenko of at least 14 additional front-of-house employees who worked at 212 during the relevant period as well as tip sheets provided by Martinenko for some of those other employees. (*See* Second Martinenko Decl. ¶¶ 10-12.) Martinenko further believes that she worked with additional front-of-house employees whose name she does not recall. (*Id*.) At deposition, even Volper confirmed the existence of a number of tipped employees who were not included on either the collective or class list. (DiGiulio Ex. 3 at 171-75.)

Based on the foregoing, the Court infers that there are more than 40 members of the putative class. There are at least four facts supporting that inference. First, 38 such individuals already have been identified. Second, Martinenko reasonably believes there are additional front-of-house employees whose names she does not remember. Third,

---

[5] The statute of limitations for FLSA claims is two years (or three years if willfulness is proven), 29 U.S.C. § 255(a), while the statute of limitations for NYLL claims is six years, NYLL § 663(3). *See Garcia v. Saigon Grill, Inc.*, No. 15-CV-9433, 2022 WL 1218482, at *2 (S.D.N.Y. April 25, 2022) (comparing statutes of limitations under FLSA and NYLL).

neither Martinenko nor Huk worked at 212 during the entire class period and thus likely would not have encountered, even collectively, all front-of-house employees. Fourth, as noted, the restaurant had a high rate of turnover. With the likelihood of there being over 40 members in the class, the Court can presume that the numerosity requirement is met. *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d at 483.

But even if the class consisted of no more than 38 front-of-house employees, the Court would still conclude that the numerosity requirement is satisfied. The putative class members are hourly employees who likely lack financial resources; most are unlikely to commence individual suits. "[F]or those current employees who might be inclined to complain about their wages, the fear of retaliation may be a further impediment to their bringing individual actions." *Omar v. 1 Front Street Grimaldi, Inc.*, 16-CV-5824, 2019 WL 1322614, at *9 (E.D.N.Y. Jan. 8, 2019). Judicial economy is served by consolidating individual claims in a class, particularly given the common fact and legal issues. The existing collective action does not serve that same purpose as it concerns only the FLSA claims for which the shorter two- or three-year statute of limitations applies as compared to the six-year statute of limitations for the NYLL claims. Although Plaintiffs do not seek prospective injunctive relief, and there is no information before the Court about the extent to which the putative class members are geographically dispersed, the other factors discussed above strongly weigh in favor of class certification. *See id.*, 2019 WL 1322614, at *10 (finding numerosity satisfied where only 32 class members had been identified); *Balverde*, 2017 WL 1954934, at *6 (finding numerosity satisfied where only 38 front-of-house employees had been identified); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174,181 (W.D.N.Y. 2005) (certifying class of 28 employees and citing cases variously finding

classes of 14, 18, 25, and 30 individuals to be sufficiently numerous).

## 2. Commonality

For the second requirement under Rule 23(a), a plaintiff must demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality generally is considered a "low hurdle." *In re JPMorgan Chase & Co. Securities Litigation*, No. 12-CV-3852, 2015 WL 10433433, at *3 (S.D.N.Y. Sept. 29, 2015) (internal quotation marks and citations omitted). "[C]ommonality has never been understood to require that all issues must be identical as to each member, but rather require[s] that plaintiffs identify some unifying thread among the members' claims that warrant[s] class treatment." *Meyer v. United States Tennis Association*, 297 F.R.D. 75, 83 (S.D.N.Y. 2013) (internal quotation marks omitted) (alterations in original). "What matters to class certification" is whether a class action has "the capacity … to generate common answers apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350, 131 S. Ct. at 2551 (internal quotation marks omitted).

"In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *Spencer v. No Parking Today, Inc.*, No. 12-CV-6323, 2013 WL 1040052, at *15 (S.D.N.Y. March 15, 2013) (quotation marks and citations omitted), *R. & R. adopted*, 2013 WL 2473039 (S.D.N.Y. June 7, 2013). That is very much the case here. As set forth above, Plaintiffs have alleged and put forth evidence of common unlawful labor practices applied by 212 to all of its tipped employees.[6] (*See also* Def. Mem. at 5 (though

_____

[6] Defendants attempt to impugn the Declarations of Martinenko and Huk for failing to set forth the facts of any conversations with other employees. (Def. Mem. at 4.) Defendants do not cite any authority for why that is necessary to establish class certification and

13

contending to be compliant with wage and hour laws, acknowledging that Defendants maintained a "tip policy, time recording policy and overtime policy").)

Several questions of fact or law are common to the putative class. These include, for example, whether Defendants' use of the tip credit was unlawful; whether Defendants paid the lawful overtime rate; whether Defendants paid a premium for a workday spanning more than ten hours; and whether Defendants provided class members with compliant wage notices and statements. That there may be factual differences, such as the number of days or hours worked and each individual's regular rate of pay, does not defeat commonality given that there is at least one issue common to the class. *See Shepard v. Rhea*, No. 12-CV-7220, 2014 WL 5801415, at *4 (S.D.N.Y. Nov. 7, 2014) ("factual differences among the claims of the class members do not preclude a finding of commonality"); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 371 (S.D.N.Y. 2007) ("Once a common question is identified, differences among the questions raised by individual members [of the class] will not defeat commonality") (internal quotation marks omitted).

### 3. Typicality

The typicality analysis required to satisfy Rule 23(a)(3) is related to the commonality analysis. *See Wal-Mart*, 564 U.S. at 349 n.5, 131 S. Ct. at 2551 n.5 (the two analyses "tend to merge"). Typicality thus "requires that the disputed issues of law

---

overlooks Martinenko and Huk's authentication of pay record evidence for multiple employees, as well as Volper's own admissions at deposition. *Cf. Martinenko v. 212 Steakhouse Inc.*, 2022 WL 1227140, at *4 ("Plaintiff's application – in which she authenticates documents with respect to other employees that would be admissible into evidence – is, if anything, stronger than those which courts have held in other cases sufficient to permit conditional certification").

or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016) (internal quotation marks, brackets, and citation omitted). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936-37. The purpose of typicality is to "ensure that named plaintiffs' interests are aligned with those of the putative class members whom they seek to represent." *Enea*, 2014 WL 1044027, at *4; *see also Davis v. City of New York*, No. 10-CV-0699, 296 F.R.D. 158, 164 (S.D.N.Y. 2013) (typicality requirement is meant to ensure that "representatives have the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions") (internal quotation marks and citation omitted).

The sole named Plaintiff is Martinenko. Martinenko, like all members of the proposed class, was a front-of-house employee who was subject to Defendants' allegedly unlawful employment practices concerning the tip credit taken without providing the requisite notice, failure to pay overtime and spread-of-hours premiums, and failure to provide wage notices and statements. Martinenko's claims thus are typical of the claims of the putative class of tipped employees who worked for 212 during the relevant time period. *See generally Martinenko v. 212 Steakhouse Inc.*, 2022 WL 1227140, at *5 ("The Court need not blind itself as a judge to what is obvious to it as a person and generally known: servers, runners, bussers, and bartenders who work in the front of a restaurant and interact with the customers generally perform similar jobs and are subject to similar

compensation systems").

Opt-in Plaintiff Huk also asserts that she is prepared to be a class representative. (Huk Decl. ¶ 8.) Huk's claims are typical of at least some of the class claims at issue. Huk's Declaration states that she did not receive a written wage notice. (Huk Decl. ¶ 4.) That deficiency implicates both the tip credit claim and the statutory wage notice claim. Huk's Declaration does not suggest that Huk worked more than 40 hours per week and did not receive overtime or spread-of-hours pay that was otherwise due. Huk thus is typical of a subset of tipped employees who did not work more than 40 hours per week or more than 10 hours in a day but nevertheless were injured by Defendants' tip credit practices and did not receive the requisite wage notices and statements.

## 4.     Adequacy Of Representation

Rule 23(a)(4) requires that the named plaintiff "fairly and adequately protect the class." In assessing this requirement, courts make two principal inquiries: "whether (1) plaintiff's interests are antagonistic to the interest of other members of the class[;] and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Flag Telecom Holdings, Ltd. Securities Litigation*, 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation marks omitted); *see also In re JPMorgan Chase & Co. Securities Litigation*, 2015 WL 10433433, at *3 ("the class representatives must not have interests conflicting with the class, and the lead plaintiffs' counsel must be qualified, experienced, and generally able to conduct the proposed litigation") (internal quotation marks and citation omitted). Both requirements are fulfilled here.

### a.     Plaintiff's Interests Are Not Antagonistic To Other Members

"A finding that a proposed class representative satisfies the typicality inquiry

constitutes 'strong evidence that its interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiff's claims will vindicate those of the class.'" *Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co.*, 277 F.R.D. 97, 109 (S.D.N.Y. 2011) (alterations omitted) (quoting *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008)); *see also Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981) ("The typicality prerequisite overlaps with the common question requirement of Rule 23(a)(2) and the adequate representation requirement of Rule 23(a)(4)").  "To defeat class certification on adequacy grounds, any conflicts must be fundamental."  *Enea*, 2014 WL 1044027, at *5.  A conflict is fundamental only when it "threaten[s] to become the focus of the litigation" and there is a "danger that absent class members will suffer if their representative is preoccupied with defenses unique to her."  *Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*, 222 F.3d 52, 59-60 (2d Cir. 2000) (internal quotation marks and citation omitted).

Martinenko and Huk so far have fairly and adequately protected the interests of the class, and there is no reason to believe they will not continue to do so.  Through their attorneys, Martinenko (and later Huk) have filed a complaint, obtained preliminary certification of a collective for their FLSA claims, pursued discovery diligently, successfully petitioned for discovery sanctions, and filed fulsome class certification papers.  Neither Martinenko nor Huk have any apparent conflict with the class, let alone a fundamental conflict.  They both are familiar with the Defendants' pay practices, and both are prepared to act as class representative and to do so vigorously.  (Second Martinenko Decl. ¶¶ 15-18; Huk Decl. ¶¶ 7-10.)  Martinenko and Huk are suited to adequately representing the class.

**b.    Plaintiffs' Attorneys Are Qualified, Experienced, And Able**

Plaintiffs are represented by an experienced employment law firm, Joseph & Kirschenbaum LLP.  The firm has considerable experience with wage and hour cases and class actions.  *See*, *e.g.*, *Shahriar v. Smith & Wollensky Restaurant Group*, 659 F.3d 234, 238-39 (2d Cir. 2011) (affirming district court's certification of Rule 23 class action of restaurant servers spearheaded by Joseph & Kirschenbaum LLP as class counsel); *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 74 (S.D.N.Y. 2018) ("the attorneys of Joseph & Kirschenbaum have substantial experience as lead or co-lead class counsel in wage and hour actions in this District").  Similarly, the individual attorneys working on the case, managing partner D. Maimon Kirschenbaum, Denise Schulman, and Michael DiGiulio, each have experience prosecuting wage and hour cases in this District and are sufficiently qualified and able to represent the class.  (*See* DiGiulio Decl. ¶¶ 27-39 (describing the firm and attorneys' qualifications and considerable experience and success in wage and hour cases).)

In light of the foregoing, Plaintiffs have met all requirements for class certification under Rule 23(a).  The next inquiry is whether the class is ascertainable.

**B.    The Putative Class Is Ascertainable**

The Second Circuit has explained the metes and bounds of the ascertainability requirement as follows:

> The ascertainability requirement, as defined in this Circuit, asks district courts to consider whether a proposed class is defined using objective criteria that establish a membership with definite boundaries.  This modest threshold requirement will only preclude certification if a proposed class definition is indeterminate in some fundamental way.  If there is no focused target for litigation, the class itself cannot coalesce, rendering the class action an inappropriate mechanism for adjudicating any potential underlying claims.  In other words, a class should not be maintained without a clear sense of who is suing about what.

*In re Petrobras Securities*, 862 F.3d at 269. "The standard for ascertainability is not demanding. It is designed only to prevent the certification of a class whose membership is truly indeterminable." *Stinson v. City of New York*, 282 F.R.D. 360, 373-74 (S.D.N.Y. 2012) (citations and internal quotation marks omitted). Here, the class is readily ascertainable: all tipped employees who worked at 212 from January 20, 2016 to the present. There is no indefiniteness to preclude certification.

## C. The Action Is Properly Brought Under Fed. R. Civ. P. 23(b)(3)

The final inquiry is whether the action qualifies for certification as one of the types of classes recognized by Rule 23(b). In this instance, Plaintiffs seek certification pursuant to Rule 23(b)(3). A class qualifies for certification under Rule 23(b)(3) if it meets the prerequisites of Rule 23(a), and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, common questions predominate, and a class action is the superior means of proceeding.

### 1. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 2249 (1997). "Predominance is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quoting *In re U.S.*

*Foodservice Inc. Pricing Litigation*, 729 F.3d at 118).  "While the predominance inquiry is more demanding than the commonality determination required by Rule 23(a), predominance does not require a plaintiff to show that there are **no** individual issues." *Merrill Lynch*, 277 F.R.D. at 111 (emphasis in original) (citing *In re NYSE Specialists Securities Litigation*, 260 F.R.D. 55, 75 (S.D.N.Y. 2009)).  And, even though the extent of damages typically may vary from person to person, "the Second Circuit has routinely found that individualized calculations of damages do not defeat the predominance requirement."  *Enea*, 2014 WL 1044027, at *7.

Here, common issues predominate over individualized ones because most all elements of Plaintiffs' and each proposed class member's claims present questions that are susceptible to class-wide resolution.  As discussed in the context of commonality above, these questions include: whether Defendants did or did not provide written notice of the tip credit and whether use of the tip credit was unlawful; whether Defendants failed to pay time-and-a-half for overtime; whether Defendants paid a premium for a workday spanning more than ten hours; and whether Defendants provided class members with compliant wage notices and wage statements.  Individualized issues include, among others, the number of hours worked, the number of weeks worked, the regular rate of pay, and other related issues for each employee.  All of those individualized issues, however, go to determining damages and therefore do not defeat predominance.

## 2.    Superiority

Rule 23(b)(3) requires consideration of several factors to make the superiority determination; namely, "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation

concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). Here, the factors weigh in favor of certifying the putative class.

There is nothing before the Court to indicate that absent class members have expressed interest in controlling the prosecution of their individual claims. To the contrary, "[r]equiring each putative class member to proceed individually would be costly and inefficient." *Yi Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510, 526 (S.D.N.Y. 2018). And, as previously noted, lack of resources and the prospect of retaliation against current employees make individual litigation less likely.

Additionally, there are efficiencies to be gained by concentrating in one forum the litigation of many employees against the same employer and employer policies, and the Courts in this District routinely manage class actions involving wage and hour claims. *See Almonte v. Marina Ice Cream Corp.*, No. 16-CV-660, 2016 WL 7217258, at *3 (S.D.N.Y. Dec. 8, 2016) ("the class action device is superior to other methods available for a fair and efficient adjudication of the controversy because the class device will achieve economies of scale, conserve judicial resources, preserve public confidence in the integrity of the judicial system by avoiding the waste and delay of repetitive proceedings, and prevent inconsistent adjudications of similar claims") (internal quotation marks omitted)). In short, this is one many routine wage and hour class actions where proceeding as a class is superior. *See*, *e.g.*, *Zivkovic*, 329 F.R.D. at 76 (finding class action superior in wage and hour case challenging payment practices); *Schear v. Food Scope America, Inc.*, 297 F.R.D. 114, 126-27 (S.D.N.Y. 2014) (same); *Torres v.*

*Gristede's Operating Corp.*, No. 04-CV-3316, 2006 WL 2819730, at *16-17 (S.D.N.Y. Sept. 29, 2006) (same).

In sum, the proposed class action satisfies the requirements of both Rules 23(a) and 23(b)(3). Class certification therefore is warranted.

**D.    Approval Of Class Counsel**

In determining whether class counsel should be approved, Rule 23(g)(1)(A) directs courts to consider four factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."   Fed. R. Civ. P. 23(g)(1)(A).   The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).   As discussed in the context of determining adequacy of representation under Rule 23(a)(4) above, all four of these factors support appointment of Joseph & Kirschenbaum as class counsel.

**E.    Class Notice**

Finally, Plaintiffs request approval of their proposed class notice.   (*See* DiGiulio Decl. Ex. 1.)   Rule 23(c)(2) governs class notice.   Specifically, Rule 23(c)(2)(B) requires courts to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."   The notice must "clearly and concisely" include "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so

desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

The Court has reviewed Plaintiffs' proposed notice and finds that it fulfills the requirements of Rule 23(c)(2). Moreover, Defendants have not raised any issue with the content of the notice. Accordingly, the Court recommends approval of the notice proposed by Plaintiffs at Exhibit 1 of the DiGiulio Declaration.

### Conclusion

For the foregoing reasons, I recommend that Plaintiff's motion for class certification be GRANTED and that:

(1) a class be certified and defined as follows: "all tipped employees – servers, runners, bussers, and bartenders – who worked for Defendants at any time on or after January 20, 2016 at 212 Steakhouse";

(2) Plaintiffs Nino Martinenko and Dagmara Huk be appointed class representatives;

(3) Joseph & Kirschenbaum LLP be appointed Class Counsel;

(4) Defendants be required to produce a complete class list to the extent they are in possession, custody, or control of information to compile that list; and

(5) The class notice presented as Exhibit 1 to the DiGiulio Declaration be approved and authorized to issue.

To the extent not addressed above, the Court has considered Defendants' arguments and finds them to be without merit.

### Deadline For Objections

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court,

with extra copies delivered to the Chambers of the Honorable Jennifer L. Rochon, U.S.D.J., United States Courthouse, 500 Pearl Street, New York, NY 10007, and to the Chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007. **Failure to file timely objections will preclude the right to object and to seek appellate review.**

Respectfully submitted,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:       April 12, 2023
             New York, New York