**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

NINO MARTINENKO, on behalf of herself
and others similarly situated,

                                 Plaintiff,

              -against-

212 STEAKHOUSE, INC., and
NIKOLAY VOLPER,

                            Defendants.

Case No.:  22-CV-518 (JLR) (RWL)

---

## MEMORANDUM IN SUPPORT OF MOTION TO DECERTIFY RULE 23 CLASS AND MOTION FOR JUDGMENT AS TO COUNT 5 OF THE COMPLAINT

Defendants 212 Steakhouse ("212") and Nikolay Volper hereby submit this Memorandum In Support of their Motion to Decertify the previously certified class under Fed. R Civ. P.23. Defendants also move for a Motion for Judgment on the New York Wage Statement and Notices Claim set forth in Count 5 of the Complaint.

### 1.  **The Rule 23 Class Should Be Decertified.**[1]

Even after a class certification order is entered, the District Court Judge remains free to modify the certification order in light of subsequent developments in the litigation. *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 160, 102 S.Ct. 2364 (1982). Thus, a district court that has certified a class under Rule 23 "can always alter, or indeed revoke a class certification at anytime

---

[1] The Court conditionally certified the FLSA claim as a collective action and authorized notice of the action to be sent to all tipped employees employed by Defendants on or after January 20, 2019. Out of a FLSA collective action list of 24 tipped employees to be sent notice, only one former employee, Huk, joined the FLSA collective action by filing an opt-in notice.

before final judgment is entered should a change in circumstances" render a class action no longer appropriate. *Cordes & Co. Financial Services, Inc. v. A.G. Edwards 4 Sons, Inc.,* 502 F.3d 91, 104 n.9 (2nd Cir. 2007). A federal district court judge has an affirmative obligation to ensure that class certification remains appropriate throughout the litigation. *Mendez v. Radee Corp.,* 260 F.R.D. 28 (W.D.N.Y. 2009); *Boucher v. Syracuse Univ.,* 164 F.3d 113, 118 (2nd Cir. 1999). The U.S. Supreme Court has described the flexibility to change certification orders as enhancing the usefulness of the class action device. *Gen'l Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 160 (1982).

Like the initial decision whether to certify a class, the question of whether to decertify a class is committed to the discretion of the district court. In considering a motion to decertify, the standard is the same as a motion for class certification; whether the Rule 23 requirements are met. A court must "make a definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues, must resolve material factual disputes relative to each Rule 23 requirement, and must find that each requirement is established by at least a preponderance of the evidence. "*In re U.S. Food Service Inc. Pricing Litig.,* 729 F.3d 108, 117 (2nd Cir. 2013). The ultimate burden of demonstrating that Rule 23 is satisfied lies with the plaintiffs, even in the decertification context. *Id.*"

Given the current state of this litigation and, upon reexamination the Rule 23 requirements this action should be decertified. *Mendez,* 260 F.R.D. at 43. Reasons for reexamination of a class certification also include a change in controlling law, availability of new evidence, or the need to correct or prevent manifest injustice. *Gorat v. Capula Bros.,* 2012 U.S. Dist. Lexis 47066 (E.D.NY. April 3, 2012). The District Court's primary role with respect to a decertification motion is to ensure that the class at every stage of the litigation has satisfied Fed. R.Civ. P.23. *Jianmon Jim v. Shanghai Original Inc.,* 990 F.3d 251 (2nd Cir. 2021).

The first four class certification requirements are numerosity, commonality, typicality and adequacy of representation. Fed. R. Civ. P. 23(a)-(i)-(4). Given the current state of the litigation numerosity is not met. Likewise, commonality is not met here either as there is no Article III standing to bring Plaintiffs New York claims in federal court, and such claim cannot be considered for a class action. Also, given the current posture of the case Marinenko and Huk are not adequate class representatives. Moreover, the elements under Fed. R. Civ. P. 23(b)(3) cannot be satisfied.

### A. <u>Numerosity Is Not Met</u>

To be continued as a class action, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23 (a)(1). In general, courts presume the numerosity requirement is satisfied when a class includes at least 40 members. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.ed 473, 483 (2nd Cir. 1995); *Francisco v. NY Tex Care, Inc,* 2022 U.S. Dist. LEXIS 55633 (E.D.N.Y March 28, 2022). Certification has been routinely denied where the class size is in the 16 to 37 range. *Gen. Tel. Co.* 446 U.S. at 330. "Classes that encompasses fewer than 20 members will likely not be certified absent other indications of impracticability of joinder; while prospective classes of twenty to forty members fall in a 'gray area'" *Jianmin Jin v. Shanghai Original, Inc.*, 20108 WL 1597389 (E.D.N.Y. April 12, 2018). In *Benavides v. Serenity Spa, Inc.,* 2018 U.S. Dist. LEXIS 883312 (S.D.N.Y. May 29, 2018), there were 52 names of potential class members disclosed by defendants and only 34 addresses could be obtained. The court decertified the class action on numerosity grounds stating, "notice of the Rule 23 certification could be reliably sent at the present time to, at best, 34 potential class members, which falls below the numerosity threshold in Rule 23 class actions. *See also Siegel v. Bloomberg L.P. 2013 U.S. Dist. LEXIS 116503 (S.D.N.Y. Aug. 16, 2013)* (denying class certification of class consisting of 33 members).

In the class certification order in this case dated April 12, 2023 (Dk. No. 87 the Court inferred that there were more than 40 members in the prospective class. The Court based this inference on four factors: first, 38 individuals had already been identified; second, the named plaintiff *believed* there were additional front of the house employees whose names she did not remember;[2] third, the named plaintiff and the one opt-in collective class member did not work at 212 during the entire class period; and fourth, 212 had a high turnover. After the Court certified the class Defendants provided Plaintiff with a class list consisting of 42 names, not including named Plaintiff Martinenko and opt-in Huk, which would make 44 names. Declaration of Jonathan W. Greenbaum and Exhibit 1 thereto. Defendants, subsequently notified Plaintiff that it had no information for one of the individuals on the list, Laluz Barbara. Another individual on the class list was a back of the house employee, Adrian Pizarro, and thus did not meet the criteria to be class member.[3] Another individual on the list, Assel Ivanskaya, was a host, which is also non-tipped position and thus outside of the class. Twelve (12) employees submitted opt-out notices stating that they elected to be excluded from the lawsuit. Greenbaum Declaration and Exh. 2. According to Plaintiff there were also six (6) notices returned as undeliverable. Greenbaum Declaration. We also identified two (2) deceased employees we did not put on the class list. See Volper Decl. Plaintiff's counsel on their own advised us that they had sent out notices to these 2 deceased employees to their last known addresses. One came back as undeliverable (Lychezar Lazarov).[4]

---

[2] The employees Martinenko believed to be in the class were hosts and other back of the house employees who do not meet the class definition, as such employees did not even earn tips. In addition, several individuals Martinenko believed to be in the class did not work in the restaurant during the Rule 23 class period, including German Givarneros and Luis Bernabe. The employees Martinenko used in her motion for certification to argue that other employees were similar in that they had overtime hours have opted-out of this lawsuit. How Plaintiff even came into possession with such information is suspect. As stated in the Volper Declaration, Plaintiff accessed the 212 Steakhouse POS system five (5) times *after* her employment ended. Exh. 5 to Volper declaration.

[3] Pizarro worked at 212 for only 2 weeks. He was not a tipped employee. In addition, individuals who do not fall within the class definition cannot be included, for numerosity purposes.

[4] Lazarov is not listed in the revised annotated class list. The other deceased employee is Danny Birlandeanu. Both of these individuals passed away prior to the filing of this lawsuit.

Since Plaintiffs had no mechanism for mail confirmation, we do not know who else actually received the notices. The numerosity requirement to sustain a Rule 23 class action must be judged by the size of the class to whom notices were sent, reduced only by the number of class members who affirmatively elected not to participate or whose notices were returned undelivered. *Zimmerman v. Portfolio Recovery Assocs., LLC,* 2013 U.S. Dist. LEXIS 43744 (S.D.N.Y March 27, 2013 U.S. Dist. LEXIS 43744 (S.D.N.Y. March 27, 2013) quoting *Rule v. Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers,* 568 F.2d at 558, 563-64 (8th Cir 1977); *see also Benavides,* 2018 U.S. Dist. LEXIS 88331 (S.D.N.Y May 25, 2018 at *5 (Plaintiff conducted a skip trace and sent notices to 37 individuals, but 3 were returned as undeliverable, leaving only 34 individuals identified for numerosity purposes). The Court in *Benavides* decertified the class on numerosity grounds. The same must be true here. The class list in this case must be reduced by the number of affirmative opt-outs (12), the notices retuned as undeliverable (6) and the three employees on the list who do not meet the class criteria, i.e., they are not tipped employees, and for the employee 212 has no information. Applying this criteria, the Rule 23 class would consist of, at most, twenty-four (24) members. This does not meet the numerosity standard to maintain a Rule 23 class.

In addressing the numerosity requirements in the certification decision (Dk. No. 87 at p. 12) the Court also considered the judicial economy of consolidating individual claims in a class. Given the current posture of the litigation, however, judicial economy favors decertification. Each current 212 front of the house employees have, affirmatively, opted-out of the class.[5] In addition, while the 212 front of the house employees are hourly workers, it is not a fair assumption that they do not have the financial resources to file an individual suit in state court. As we state later in this

[5]It is also significant that no current 212 front of the house employees filed an opt-in to the FLSA collective action. Indeed, only former employee Huk filed an opt-in notice, signifying that Martinenko's interests may not be aligned with her former co-workers.

Memorandum, in 2021 Martinenko had an average hourly wage of $52.00 per hour, which comprised of her tip credit hourly credit wage and credit card and cash tips. Given the Article III standing issue with respect to the Plaintiffs New York State Wage notice and statement claims, the Plaintiffs are actually harmed by maintaining such claims in this Court - - as they may theoretically be entitled to relief in state court but have no Article III standing to bring such claims in this Court.[6] As such judicial economy dictates that this case cannot be maintained as a class action as individual issues predominate, and class treatment would work to the detriment of the class members. As a threshold matter, numerosity is lacking to sustain a Rule 23 class.

## B. There Is No Commonality To Sustain A Rule 23 Class

Rule 23(a)(2) requires a finding that "there are questions of law or fact common to the class. *Wal-Mart, Inc. v. Dukes,* 564 U.S. 338, 350 (2011). This requirement is satisfied if the question of law or fact is "capable of class wide resolution-which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. As such "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation is the key to the analysis." *Id.* Importantly, commonality does not "mean merely that [plaintiffs] have all suffered a violation of the same provision of law," but rather requires plaintiffs to "demonstrate that the class members have suffered the *same* injury." *Id.* (Emphasis Added). Plaintiffs Fifth claim for relief, New York Notice Requirements cannot be maintained as a Rule 23 class action. Even if the New York Wage Notice and Statement violations applied to all class members, Plaintiff could not demonstrate that "the class members have suffered

---

[6] Such claims in state court would have to be individual claims as New York does not recognize class actions for claims seeking statutory penalties. Section 901(b) of the New York Civil Practice Law prohibit class wide claims seeking statutory penalties. It would be legally impracticable for Plaintiff to sustain a Rule 23 class action in this Court for penalties rooted solely in New York law where New York law prohibits such class claims in state court.

the same injury, let alone any injury." *Id.*; see also *Francisco. v. NY Tex..Care, Inc.* 2022 U.S. Dist. LEXIS 55633 (E.D.N.Y. March 28, 2022). (Plaintiff cannot certify a class based on New York Wage Statement and notice claims); *Ahn v. MB Rye Metro Nail, Inc.,* 2023 U.S. Dist. LEXIS 157033) (S.D.N.Y. September 20, 2023) (If a Plaintiff wants to bring federal claims based on notice and wage statements, *that* Plaintiff must assert more than a technical statutory violation); *Neds v. Acacia Network, Inc.* 2023 U.S. Dist. LEXIS 20754 (S.D.N.Y. February 7, 2023) (Plaintiff has not established standing to assert wage statement and notice claims as a class action).

In Count 5, Plaintiff asserts on behalf of herself and members of the class that "Defendants did not provide Plaintiff and the members of the Class with the notices/statements required by N.Y. Lab. Law Section 195. Plaintiff alleges that Defendants did not give the class notices regarding their pay rates, and the paystubs for Plaintiff and members of the Class did not reflect all the required information." Complt. ¶51 (Dk. No. 1). Plaintiff then alleges that "as a result of Defendants unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages." Complt. ¶52 (Dk. No. 1). Plaintiff has not set forth any injury for herself, nor has it been alleged that any particular Class member sustained any concrete and particularized injury each sustained as a result of Defendants technical violations.[7] Here, there can be no commonality because the Article III standing to maintain a class action for such claims in this court can only be determined on an individualized basis, i.e. there would be no way to determine whether each class member sustained the same injury with representative evidence. Each class member would have to show an injury particular to that class member.

---

[7] We anticipate Plaintiff will provide a self serving-affidavit purporting to demonstrate she was somehow injured. The relevant facts, however, show otherwise as we demonstrate herein. Moreover, whatever he may say about her injury would be individual to her.

While Plaintiff has alleged technical violations of the New York Labor Law, there is no evidence or even allegation of how those technical violations led to any tangible injury or something akin to a traditional cause of action. A statutory violation alone, without a tangible injury does not constitute an injury that can be recognized by federal courts. *Transunion LLC v. Ramirez,* 141 S.Ct. 2190, 2205 (2021); *Maddox v. Bank of New York Mellon Tr. Co., N.A.,* 19 F.4th 58, 62-63 (2nd Cir. 2021). Not only does named Plaintiff lack standing to bring her wage statement and notice claims in this Court, this claim cannot be brought as a class action. *Francisco, supra,* 2022 U.S. Dist. LEXIS 55633 (Plaintiff does not have standing to bring her NYLL claims and cannot certify a class based on them).[8]

Aside from simply stating that Defendants did not provide Plaintiff with a written wage notice or statement, Plaintiff did not - - and cannot - - link any injury-in-fact that she *personally* experienced to Defendants' failure to provide statutory notices under the NYLL. *See Guthrie v. Rainbow Fencing Inc.,* 2023 U.S. Dist. LEXIS 31177 (E.D.N.Y. February 24, 2023);[9] *Sevilla v. House of Salads One LLC,* 2022 U.S. Dist. LEXIS 58496 (E.D.N.Y. March 30, 2022) (holding that

---

[8] In addition to, and apart from, the statutory notice penalty claims, Plaintiff's New York State minimum wage claim related to the tip credit minimum wage (Count 2) must also be considered a technical violation in which she was not harmed since her combined tips and tip credit minimum wage far exceeded the New York State regular minimum wage for the hourly wages for each pay period named Plaintiff worked. Named Plaintiff Martinenko has testified in her deposition that she earned between $900-$1,200 each in credit card tips and an unreported additional amount in cash tips of approximately $150. Martinenko Dep. at 42-3. For 2021 this equals an average hourly rate of $51.92 an hour, which included an $10.00 per hour tip credit. Martinenko Dep. at 42-43; Huk Dep. at 16 ($10.00 per hour). This is far above the New York minimum hourly wage. See *Oliverira v. Scores Holding, Co.,* 2022 U.S. Dist. LEXIS 206479 (S.D.N.Y. March 24, 2022). Huk testified in her deposition she also earned an additional $400 per week in unreported cash tips on top of $800 to $900 per week in credit card tips. Huk Depo. at 17. Certainly, use of the tip credit applied to Plaintiff but for the technical wage notice and statement violation. Based on Plaintiffs weekly earnings she has not sustained injury in fact. The same would be true for the class of employees. The FLSA and NYLL permit an employer to pay a tipped workers a lower cash wage than the minimum hourly wage, provided he cash wage and the employee's tips together are at least equivalent to the minimum pay wage. That standard was met here.
[9] Even the separate New York minimum wage claim fails as not one class member's weekly earnings went below the hourly minimum wage, even without the additional unreported cash tip income. See Martinenko Dep. at 42-3, 51. (cash tips not reported); Huk ($400 per week unreported cash tips). Huk Dep at 16-17. There are simply no minimum wage damages. See *Oliverira, supra,* (at fn 11), and fn. 3 to the *Oliverira* decision or reconsideration, 2022 U.S. Dist. LEXIS 206479 (S.D.N.Y. Nov. 14, 2022).

"it is not clear that [such] policies led to an 'injury' that can be recognized by a federal court." For class action purposes, there is no way to ascertain whether the class members suffered the same injury, let alone any injury, to maintain a class. *Dukes* 564 U.S. at 350.

### C.  The Rule 23 Class Action Does Not Meet The Criteria Of Rule 23 (b).

A class action qualifies for certification under Rule 23 (b)(3) if it meets the prerequisite of Rule 23 (a) and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and the class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Even if the elements of 23(a) are met at this juncture of the proceeding, which they are not as set forth above, the Class cannot be maintained under Rule 23(b).  Because of the individualized questions regarding whether each class member suffered an injury in fact under Plaintiff's New York Labor Law claims set forth in Count 5 of the Complaint and the New York State tip credit allegations, individual as opposed to common questions predominate.  In addition, because the federal court does not recognize the New York wage notice and statement claims as a matter of law, let alone to maintain a Rule 23 class action over such claims, a Rule 23 class action is not the superior means of proceeding.  That a large percentage of the purported class have affirmatively opted out of the Rule 23 class and only one opt-in notice was filed as to the FLSA collective action, is indicia that a class action is not the superior means of proceeding.

Here, individual issues predominate over common issues.  The Rule 23(b)(3) predominance inquiry tests whether the class is sufficiently cohesive to warrant adjudication by representation. *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623 (1997). "Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular

issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Carron Corp.,* 778 F.3d 401, 405 (2ⁿᵈ Cir. 2015) (quoting *In re U.S. Foodservice Inc. Pricing Litigation,* 729 F.3d at 118). The individual issues presented here are not merely a calculation of damages, but the controversy of whether each class member suffered a particular injury in fact and thus have standing to maintain the claim in this Court. This inquiry cannot be achieved through generalized proof. See *Guthrie v. Rainbow Fencing, Inc.,* 2023 U.S. Dist. LEXIS 31177 (E.D.N.Y February 24, 2023) where the court stated, in relevant part:

> Aside from simply stating that Defendants did not provide Plaintiff with a written wage notice or wage statement, Plaintiff did not link any injury-in-fact that he *personally* experienced to Defendants' failure to provide statutory notices under the NYLL.

*Id.* at *12 (emphasis added). There, as we suspect Plaintiff will attempt to do here, plaintiff argued that it is a generalized harm rather than an individualized one required for standing. The court immediately *rejected* that argument stating, "Plaintiff's counsel still fails to link general harms an employee *might* experience to any harms that Mr. Guthrie *did*, in fact, experience." *Id.* (emphasis in original). *See also Ahn,* supra, 2023 U.S. Dist. LEXIS (S.D.N.Y. September 30, 2023, at *14; *Neur,* supra, 2023 U.S. Dist. LEXIS 20754 (S.D.N.Y., February 7, 2023 at *14 (citing to *Francisco,* supra, 2022 U.S. Dist. LEXIS 55633 (E.D.N.Y. March 28, 2022 at *7 (denying Rule 23 certification on Plaintiffs NYLL wage notice and statement claims). The issue of whether or not Defendants "did or did not provide written notice of the tip credit," and "whether Defendants provided class members with compliant wage notices and wage statements" is not relevant for a predominance determination.[10] The issue is one of standing and whether each particular class member sustained an injury-in-fact. This is fundamentally an individualized issue that

---

[10] See Certification Order at 20 (Dk. No. 87, April 12, 2023).

10

predominates over the case. It cannot be answered with generalized evidence. Further, based on the facts adduced, other than named plaintiff and opt-in Plaintiff, 14 of the remaining current class members had no overtime hours. The remaining class members had very limited additional hours over 40 which again, would be attributed to meal break non-compensatory time. Liability could only be determined on an individualized basis. Plaintiff's case is just about her, individually, and the FLSA opt-in Plaintiff.[11] The individualized issues predominate over the common questions.

### D. Class Action Is No Longer The Superior Method To Fairly and Effectively Adjudicate This Controversy.

Under Rule 23(b)(3) several factors are considered to make the superiority determination. Among the factors are the class members' interests in individually controlling the prosecution or defense of separate actions; extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular form; and the likely difficulties in managing the class action. Fed R. Civ. P. 23 (b)(3).

Here, superiority cannot be established as the question of injury-in-fact as to Plaintiffs tip credit and New York Labor Law wage notice and statement claims must be made on an individualized basis. Representational evidence would not suffice to establish whether a particular employee was harmed and has standing. Plaintiff's NYLL claims must be brought on an individualized basis in state court.

The aggregation of statutory penalties, especially where there is no injury-in-fact, also raises due process issues and manageability issues which are to be considered in a superiority determination. *See, London v, Wal-Mart Stores, Inc.*, 340 F.3d 1246, n.5 (11th Cir. 2003)

---

[11] Plaintiff does not have standing individually to bring Count 5 in this Court.

(expressing doubt whether class certification could meet the Rule 23 (b)(3) superiority requirement where Plaintiffs suffered no economic harm); *Kline v. Coldwell, Baker & Co.,* 508 F.2d 226, 234k-35 (9th Cir. 1974); *Wilcox v. Commerce Bank of Kansas City,* 474 F.2d 336, 341—47 (10th Cir. 1973); *Ratner v. Chemical Bank of New York Trust Co.,* 54 F.R.D. 412, 416 (S.D.N.Y 197) (finding class action lacked superiority where a violation was technical and aggregation of statutory damages would be financially devasting for defendant). Here, the aggregation of damages for the technical violations of both the wage notice and wage statement New York statutory claims amount up to a $10,000 penalty for each class member as there are two wage notices and statements involved for each employee with statutory penalties of up to $5,000 each. This would have a devastating financial impact on Defendants, who are already in debt, and raises not only superiority hurdles but due process concerns. Volper Declaration at ¶20. The damage award would be disproportionately large compared to any harm actually suffered by the individual class members. "[A] class action is not the superior manner of proceeding where the liability defendant stands to incur is grossly disproportionate to any harm sustained by an aggrieved individual." *Parker v. Times Warner Entm't Co.,* L.P., 331 F.3d 13, 22 (2nd Cir. 2003). A decertification ruling would also align with New York Law which holds that unless a statute imposing a penalty specifically authorizes the recovery thereof in a class action, recovery of such penalty may not be maintained as a class action. N.Y. Civil Practice Law and Rule 901(b). New York Labor Law Section 195 does not specifically authorize class actions. As such, the class action could not be maintained in state court and it surely should not be maintained in this federal court, which is a court of limited jurisdiction and one which requires Article III standing. The aggregation of damages would be disproportionate to any harm and would thus violate Defendants due process rights.

### 1. <u>Count 5 Should Be Dismissed Under Fed. R. Civ. P. 12(c)</u>

In Count 5, Plaintiff on behalf of herself and others similarly situated alleges that Defendant did not provide the members of the Class with the statutory notices/statements required by N.Y. Labor Law Section 195. She alleges that "as a result of Defendants unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages." Compt. ¶52. (Dk. No. 1). The damages are statutory damages of up to $5,000 for each employee for the two statutory wage notices and statements at issue, thus $10,000 in statutory damages to each employee. Plaintiff herself is claiming $10,000 in statutory penalties. Plaintiff's only allegation for alleged harm caused by Defendants failure to provide New York statutory notices is the technical violation of failing to provide the notices.

As we have stated in the preceding sections, a statutory violation without tangible injury does not confer Article III standing to pursue such action in federal court. *TransUnion LLC,* supra 141 S.Ct. at 2205. This has been applied to New York Statutory Wage Claims under New York Labor Law Section 195. *See Neds,* supra, 2023 U.S. Dist. LEXIS 207541; *Ahn,* supra 2023 U.S. Dist. LEXIS 157033; *Sevilla v. House of Salads One, LLC,* 2020 U.S. Dist. LEXIS 58496 (E.D.N.Y. March 30, 2022) (holding that "it is not clear that [such] policies led to an 'injury' that can be recognized by a federal court"); *Perez v. Postgraduate Ctr. For Mental Health,* 2021 U.S. Dist. LEXIS 156116 (E.D.N.Y August 18, 2021) (Plaintiff lacked Article III standing because wage inaccuracies did not cause or prevent any material threat of harm); *Guthrie,* supra, 2023 U.S. Dist. LEXS 31177 (failure to show concrete harm that Defendants technical violations of the New York State Labor Law notice and statement requirements cause either a tangible injury or something which to a traditional case of action to confer federal court standing as required by the Supreme Court).[12]

---

[12] *See Transunion LLC*, supra, where the Supreme Court rejected the proposition that a Plaintiff automatically satisfies the injury in fact requirement whenever a statute grants a person a statutory right and purports to authorize that person

The standard of review for granting a Rule 12(c) motion for judgment on the pleadings is identical to those granting both a 12(b)(6) motion for failure to state a claim and a Rule 12(b)(1) motion for lack of subject matter jurisdiction. *Lively v. WAFRA Inv. Advisory Group, Inc,* 6 F.4th 293, 301 (2nd Cir. 2021). On a Rule 12(c) motion, like a Rule 12(b)(6) motion, courts may consider extrinsic material that the complaint incorporates by reference that is integral to the complaint, or of which courts can take judicial notice. *Id.* at 305. The allegations in Count 5 of the complaint fail to state a claim upon which relief can be granted.

Standing asks whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. Article III standing is a limitation on the authority of a federal court to exercise jurisdiction. *See All for Env't Renewal, Inc. v. Pyramid Crossgates Co.,* 436 F3d 82, 88 n.6 (2nd Cir. 2006). Under Article III, a plaintiff must demonstrate standing for each claim and form of relief sought. *Duran v. Henkel of Am., Inc.,* 450 F. Sup 3d 377 (S.D.N.Y. 2020). In *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.* 19 F. 4th 58 (2nd Cir. 2021) the Second Circuit noted that plaintiffs who allege only informational harm lack standing. Other than the limited and de minimus overtime claim Plaintiff has brought, Plaintiff has sustained no actual harm as a result of Defendant's failure to provide her with wage statement notices, including the tip credit notice.

Article III standing requires that a plaintiff show (1) an injury in fact, (2) a causal connection between the injury and the conduct at issue and, (3) a likelihood that an injury would be redressed by a favorable decision. *Maddex v. Bank of N.Y. Mellon Co., N.A.,* 19 F. 4th 58, 62 (2nd Cir. 2021); *Pastrona v. Mr. Taco, LLC,* 2022 U.S. Distr. LEXIS 172937 (S.D.N.Y. Sept. 23, 2022). To demonstrate an injury in fact, a plaintiff must show the invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or

---

to sue and vindicate that right. Article III grants federal courts power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions.

hypothetical. Plaintiff must also show "downstream consequences" from failing to receive that information, meaning that Plaintiff most show an interest in using the information "beyond bringing [this] lawsuit". *Harty v. W. Point Realty, Inc.*, 28 F. 4th 435, 444 (2nd Cir. 2022). Here, Plaintiff cannot demonstrate how her lack of notice resulted in injury *greater* than Plaintiff's alleged minimum wage and overtime violations.[13] Plaintiff also cannot identify any informational injury with consequences beyond this lawsuit. Therefore, Plaintiff cannot recover on her wage notice and statement claims. *Putrana, supra* at *19.

Here, Plaintiff was intimately involved with the payroll process and the administration of the tip credit among the front of the house employees. She knew that her pay comprised of a tip credit hourly wage and tips. She knew that she was a tip credit employee. In fact, she was one of the main individuals involved in payroll and preparing payroll checks for the front of the house employees. Martinenko Dep. at 35, 33-4 (my hourly rate was $10 an hour in 2020-21, $7.50 in 2017). [14]The payroll paperwork for each front of the house employee was sent to Martinenko and she would then prepare the payroll checks based on the paperwork. Martinenko Dep. at 54. Martinenko knew that she was paid tips on top of an hourly wage. Martinenko Dep. at 35. Martinenko also administered the tip pool process with her co-workers to calculate their tips. She also had access to the restaurant's office, including the checkbook and all payroll information for all restaurant employees, including her own. Martinenko Dep. at 55. Significantly, Marintenko held the highest security level of any restaurant employee, level 3. See Exh. 4 to Volper Declaration. With this level, Martinenko had the ability to edit, modify, alter and copy all

---

[13] Plaintiff's overtime claim, which is individual to her, will ultimately fail as her limited overtime is attributed to her failure to clock out for meal breaks and other breaks longer than 30 minutes.
[14] FLSA opt-in Plaintiff Huk testified that she earned $10.00 an hour and earned between $800 and $900 per week in credit card tips and around $400 per week in cash tips. Huk Dep. at 16-17. Huk testified that she also assisted with payroll. Huk Dep. at 22. She too had knowledge of the tip credit and the tip pool. Huk was also an experienced restaurant employee, who held tipped positions throughout her career. See Huk Dep. at 10-12 (Huk worked at restaurants Bistango and Jue Lan prior to working at 212 Steakhouse).

payroll information for each employee. Id. She could also download such information. Id. Because of this Martinenko had the requisite information and knowledge and she held an element of control over the process more so than her coworkers. Id. The end result is that Martinenko knew she was a tipped employee who regularly received tips from customers. She also knew that her regular hourly rate was high enough that she did not have a minimum wage issue. *See* 12 NYCRR § 146-34. She knew that the majority of her pay came from tips, and it was in excess of the regular minimum was for all hours worked. She also received the cash portion of her tips, which she did not disclose to 212 Steakhouse, but which also counts as income. Both the FLSA and the NYLL permit an employer to pay a tipped worker a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage. *Gamero v. Koodo Sushi Corp.,* 272 F. Supp. 3d 481, 500 (S.D.N.Y 2017), aff'd 752 F. App'x 33 (2nd Cir. 2018); *De-Oliveira v. Scores Holding Co.,* 2022 U.S. Dist. LEXIS 206479 (S.D.N.Y. March 24, 2022), reconsideration denied, 2022 U.S. Dist. LEXIS 206479 (S.D.N.Y. Nov. 14, 2022).

Other than the technical notice violation, it cannot be disputed that Plaintiff was paid appropriately. Here, Plaintiff asserts, and the records show, that she earned between $900 and $1200 a week in credit card tips, which she reported to Defendant. Martinenko Dep. at 42. She states that she earned about $150 per week in cash tips, which she did not report. Martinenko Dep. at 43. Thus, even according to Plaintiff she earned between $1,050 and $1,350 per week. Id. As an example, during the 2021 period Plaintiff earned on average $51.92 per hour, which included the $10.00 per hour tip credit minimum hourly wage, the credit card tips and the cash tips. The regular minimum wage for this period was $15 per hour. Plaintiff cannot dispute that she was paid well over the regular minimum wage. *See De Oliveira,* supra ("Plaintiff does not dispute that she

was actually paid at least equivalent to the minimum wage, nor could she given the fact that after tips she made roughly $57.82/hr."). See Volper Decl. at _____, and Exhibit _____ attached to Declaration.

The restaurant also had posted prominently for employees see FLSA and New York Labor law posters. Volper Decl. at ¶ _____. The posters set forth the tip credit rules, as well as other wage-hour rules and regulations. See Volper Declaration. It would be disingenuous for Martinenko to assert any injury in fact for the technical violation of failing to provide her with wage-hour notices and statements. She had in her possession all the requisite information.[15]

## CONCLUSION

Defendants request that the Rule 23 class action be decertified based on lack of numerosity and lack of commonality as there is no Article III Standing to bring the New York statutory wage statement and notice claims in federal court. To sustain this class action would require individualized findings from each class member and the individualized findings necessary to sustain the actions make the individualized questions predominate over the common questions. Further, Plaintiffs overtime claim would also require individual determinations as the majority of the class members worked no overtime hours and the limited number of the class that did are de minimus overtime hours that could be attributed to their failure to clock out for meal breaks, which

---

[15] Martinenko has testified that she left the restaurant in 2018. Martinenko Dep. at 34, 78-79. She testified that in 2018-2019 she became employed at Nusr-et Steakhouse. Significantly, Nusr-et Steakhouse was named in a class action proceeding and settlement by "hourly, front of the house, tipped employees" during the time period from October 1, 2017, to October 31, 2019. *Nustafa Fteja v. Nurset New York, LLC,* Case No. 19-cv-429 (S.D.N.Y.). In that case, plaintiff Nustafa Fteja made the same allegations as the allegations in this case, including the failure to provide wage statements and notices. Notice of the class action was approved by the Court on July 17, 2020. Greenbaum Decl. at Exh 4. Thereafter notice was sent to the class. Martinenko has testified that she worked at Nusr-et during part of the class period of that case. As such, she must have received the notice of class action settlement. The notice set forth or summary of the class and where to find more information. Thus, Martinenko had knowledge prior to her return to 212 Steakhouse in 2020 of these issues. Based on the underlying facts in here, however, she was well aware of these issues prior to being employed at Nusr-et Steakhouse, but this further buttresses her knowledge and information.

is non compensable time.  Because Plaintiff did not clock out during her meal breaks this too requires an individualized inquiry, not appropriate for class treatment.  A class action is no longer the superior method to fairly and adjudicate this case.

Count 5 of Plaintiff's complaint should be dismissed under Fed. R. Civ. P. 12(c) as a matter of law as well as the underlying facts.

Respectfully submitted,

_____

Jonathan W. Greenbaum
Natalie Nehls
COBURN & GREENBAUM, PLLC
Second Floor
1710 Rhode Island Avenue, NW
Washington, DC. 20036
Telephone:  202.744.5003
Facsimile:  86.561.9712
Email:  jg@coburngreenbaum.com
          natalie@coburngreenbaum.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of *Memorandum In Support Of Motion To Decertify Rule 23 Class And Motion For Judgment As To Count 5 Of The Complaint* was served this 16ᵗʰ day of November via ECF.

Jonathan W. Greenbaum

cc:     All Counsel via ECF