**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

NINO MARTINENKO, on behalf of herself
and others similarly situated,

                                    Plaintiff,

                  -against-

212 STEAKHOUSE, INC., and
NIKOLAY VOLPER,

                                  Defendants.

Case No.: 22-CV-518 (JLR) (RWL)

**DECLARATION OF**
**NIKOLAY VOLPER**

---

**NIKOLAY VOLPER,** being duly sworn, deposes and declares under penalty of perjury and states as follows:

1.      I am an individual defendant in this action.

2.      I am submitting this declaration on behalf of myself and as the corporate representative of 212 Steakhouse. I have personal and first hand knowledge and information of the facts and statements herein and I can personally attest to the authenticity of the exhibits attached to this Declaration.

3.      As part of this proceeding I compiled a class list of what I initially believed was front of the house tipped employees for the class period. That list was sent to the Plaintiff's attorneys. Exh 1 (attached hereto). After we sent the list to Plaintiff's, I realized that a few of the names did not belong on the list.

4.      One of the names on the list was Laluz Barbara. On further review we could not locate any information or records on this individual. Another individual on the list, Adrian Pizarro was a "back of the house employee," i.e. a non-tipped position, as such he is not eligible to be a

class member. Another individual on the list, Assel Ivanskaya was a host in the restaurant and that is a non-tipped position, also not eligible to be a class member.

5.    It is our understanding that Plaintiffs attorneys sent a notice to the two deceased employees and the notice from one of those deceased employees, Lychezer Lazarov, came back as undeliverable in any event. We do not believe that the deceased employees should be included in the class in any event.

6.    We were also notified by Plaintiffs that six notices were returned as undeliverable. Those were: Gabriel Charles, Haley Melendez, Keya Rocaverte, Lychezer Lazarov, Noel Lora, and Tristian Collazo.

7.    We were notified by Plaintiffs that twelve (12) individuals from the class list submitted opt-out notices expressing their decision to be excluded from the class. The 12 opt-out's who provided opt-out notices to Plaintiffs were: Nadia Paputnikava, Alexander Rynkovsky, Eduardo Perez, Samuel Garcia, Javier Clemente, Bonaficio Ramos, Jose Paul Roque, Oscar Bravo Morales, Luis Fernandez, Alexander Arague Porras, Mariken Tran and Alexander Ardveni.

8.    Plaintiffs sent us copies of these opt-out notices.

9.    There are 24 individuals remaining in the class once the individuals who did not meet the class definition, the opt-outs and individuals who did not receive notice are excluded. Exhibit 2 (Revised class list with annotations regarding opt-out, undelivered and not class eligible).

10.    Martinenko and Huk's claimed overtime are mostly, or all, attributed to their failure to take into account the meal break of 30 minutes, or any breaks they took over 30 minutes. They did not clock out for these non-compensable breaks.

11.    Also based on our records, none of the 24 individuals, including Plaintiff, earned less than the regular minimum wage for all hours worked. For example, a review of named plaintiff

2

Martinenko's 212 Steakhouse pay shows that she earned an average $51.92 per hour for her 2021 pay. This included her hourly tip credit minimum wage of $10.00 per hour. Exh 3.

12.     I do not spend a lot of time in the Restaurant on a day to day basis. I do not schedule the employees hours. The front of the house employees set their own schedules which is based, of course, on the hours of operation of the restaurant. If a server, busser, or bartender needs time off on one of their work days or is out, the employees arrange for coverage.

13.     Our front of the house employees and in particular the servers (like Martinenko) and bartenders (like Huk) are experienced in the restaurant industry. They have had prior service jobs where tips were customary and comprised most of their pay. My understanding is that they are fully familiar with the tip credit and how it applies to payroll.

14.     The front of the house employees know they are being paid a hourly minimum wage tip credit and tips. The employees administer their own tip pool, with a point system derived by them.

15.     Prior to our current practice of using a payroll service, certain servers prepared the paychecks for the staff. Martinenko, in particular, prepared the payroll checks. She did this by reviewing the payroll information. Opt-in plaintiff Huk also prepared payroll at times.

16.     Martinenko had access to the payroll information. The Point Of Sale ("POS") system tracked employees hours and check in and check out times, i.e. hours of work. Martinenko had access to the Restaurant computers which contained the payroll information and the POS system. Martinenko had the highest level of security on our computer system, Level 3, which is the same level I have. This is a higher level security than other employees. Exh 4. The level of security Martinenko had allowed her to access the system remotely, make edits to the information and downloads.   Martinenko's employment ended December 28, 2021. However, as evidenced

3

by Exh. 5 attached hereto, Marktinenko accessed this system multiple times after her employment ended.

17.    Federal and New York labor law posters, and in particular wage-hour posters, are displayed in the workplace so employees can see them. These posters contain the wage-hour rules under both federal law and state law. The posters include provisions regarding tips and the tip credit. The tip credit poster contains a provision that if an employee's tip combined with the employee's cash wage do not equal the applicable state minimum wages the restaurant must make up the difference. However, as I stated employees have always earned more than the regular minimum wage for all hours worked. Exh 6.

18.    The front of the house employees, which includes servers, bartenders and bussers, operate with little supervision and all know their roles and how they are paid. They administer their own tip pool and several of them, Martinenko in particular, are involved with administering payroll.

19.    Plaintiff Martinenko started working at the restaurant in 2015 and then left in December 2018. She again worked at the restaurant starting on March 25, 2021. Her employment ended on December 28, 2021. Based on her testimony at her deposition in this case she worked at the restaurant Nusr-Et Steakhouse in the period after leaving 212 Steakhouse the first time, December 2018 and prior to her return in March, 2021.

20.    As part of this case I understand that Plaintiff Martinenko seeks penalties with respect to her claim that the Restaurant did not provide her with wage statements and pay notices, and/or such notices were deficient. She seeks for herself and a class of other front of the house employees statutory penalties for this claim. The statutes at issue have penalties of up to $5,000 per violation. Since there are 2 notices at issue, Martinenko seeks $10,000, the maximum amount

4

for her, and similar amounts (if not the same) for a class. The Restaurant is in debt and has not recovered from the pandemic. We are behind in rent and have past due taxes and other obligations which would mean if I had to pay these amounts, I would have to close. I simply could not pay such amounts. Further, since our tipped employees earn well over even the regular minimum wage, I fail to see how they have been harmed by any technical violation.

I declare under penalty of perjury that the foregoing is true and/correct.

Executed on: November 14 , 2023

_____
Nikolay Volper

5