**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

NINO MARTINENKO, on behalf of herself
and others similarly situated,

                                        Plaintiff,

            -against-

212 STEAKHOUSE, INC., and
NIKOLAY VOLPER,

                                        Defendants.

---

Case No.: 22-CV-518 (JLR) (RWL)

## OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendants 212 Steakhouse, Inc. ("212" or "Restaurant") and Nikolay Volper ("Volper")

hereby respond to and oppose Plaintiffs' Motion for Summary Judgment.

**1.    Preliminary Statement With Regard To The Number of Class Members Claimed In Plaintiff's Motion for Summary Judgment**

Plaintiffs seek summary judgment as to individual claims and the class claims. Contrary

to Plaintiffs' assertion, the class only consists of twenty-four (24) members, which falls short of

the numerosity requirement to maintain a class action. Defendants have filed a motion to decertify

the class on several grounds, including numerosity. (Dk. No. 111). Plaintiffs contend that the class

consists of thirty-three (33) tipped employees. Even if that were true, which it is not, thirty-three

(33) is well below the number Plaintiffs initially purported the class size would be. In her motion

for class certification, Plaintiff contended the purported class was over forty (40) employees.

Plaintiffs' number of class members includes non-tipped employees as well as class members who did not receive notice, and, as such, cannot be included in the class. *See Zimmerman v. Portfolio Recovery Assocs., LLC,* 2013 U.S. Dist. LEXIS 437-44 (S.D.N.Y. March 27, 2013) (quoting *Rule v. Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers,* 568 F.2d 558, 563-64 (8th Cir. 1977)).[1] Plaintiffs informed Defendant that the class notices to Charles Gabriel, Haley Melendez, Keya Recaverte, Lytchez Lazarov, Noel Lara and Tristian Collazo were returned as undeliverable. Lychez Lazarov deceased prior to the filing of this case as did Danny Birlandeau, who also remains on Plaintiffs' damages list (Pl. Exh. 1-Damages Summary). It is not plausible Birlandeau even received notice. Adrian Pizarro who is listed on Plaintiffs' damages list was a non-tipped "back of the house" employee. Volper Decl. at ¶ 4. Time sheets showing Pizzaro's clock in and out times are consistent with the hours for back of the house kitchen employees. Volper Decl. at ¶ 4. To the extent Plaintiff seeks summary judgment as to the number of class members, such judgment should be denied as it is not supported by the facts and the law. To the extent the Court believes further discovery would assist the fact finder on this or any other issue, Defendants would welcome it.[2]

---

[1] In footnote 1 to the Motion For Summary Judgment, Plaintiff identifies Barbara Lulaz and correctly points out that Defendants have no records for her working at 212. Defendants asked Plaintiffs' counsel what position she held and the dates. Defendants also offered to depose her. Both these inquiries were not responded to. Defendants have no objection to Plaintiffs' suggestion in footnote 1 that the Court deem Ms. Lulaz not a class member or that Ms. Lulaz would not be bound by any judgment. The class certification order need not be amended since Defendant believes the Class should be decertified.

[2] Martinenko has also presented a misleading Declaration in which she declares that "during my entire employment, at any given time, Defendants employed at least 11 individuals to work at the Restaurant." Dk. No. 117 (Declaration ¶4). This allegation is misleading because the number of employees employed at the Restaurant for purposes of this case is limited to tipped employees, not the number of employees employed at the Restaurant. That number was consistently four employees. Volper Decl. at ¶ 5. Martinenko's Declaration is not admissible for summary judgment purposes and should be ignored.

2.      **Counter Statement Of Facts And Background**

212 Steakhouse is a small restaurant in New York City.  On any given shift, other than weekends, only 3-4 tipped employees (servers, bussers, and bartenders) worked.  Volper Decl. ¶ 4 at Exhibit 2.  On weekends, that number could go up to 7 tipped employees - - depending on the time of year.  The restaurant is open mostly for dinner, with limited lunch service.  On January 20, 2022, former 212 server Nino Martinenko commenced this class and collective action on behalf of herself and "similarly situated" tipped employees of the Restaurant alleging various violations of federal and New York wage-hour laws.  Plaintiff first sought conditional certification under the Fair Labor Standards Act.  On April 26, 2022, the Court conditionally certified this action as a FLSA collective action and, as such, ordered that notice be sent to "similarly situated" employees to opt-in to the FLSA collective action.  Dk. No. 26.  At the conclusion of the opt-in period only one former employee, Dagmara Huk, chose to opt-in.  (Dk. No. 32).

On December 9, 2023, Plaintiff then filed a motion for class certification under Fed. R. Civ. P. 23 for a class of tipped employees (servers, runners, bussers, and bartenders) who worked at 212 at any time on or after January 20, 2016.[3]  Plaintiff sought class treatment of the following claims asserted in her complaint: 1) paying tipped employees a tip credit without providing a written notice required under New York law; 2) failing to pay tipped employees an overtime premium for work over 40 hours in a workweek; 3) failing to pay tipped employees a spread of hours premium, and 4) seeking statutory penalties under New York Law for failing to provide tipped employees with the wage notices and wage statements required under New York law.

---

[3] The Rule 23 class is for the New York State Labor Law claims which carry a six (6) year statute of limitations, as opposed to a two or three year limitations period under the FLSA.

Plaintiff claimed that she was subject to these unlawful practices, which she claims were applicable to all tipped employees. In her motion for class certification, Plaintiff claimed that there were an excess of 40 class members. Dk. No. 71. The court certified the class on April 12, 2023 (Dk. No. 92). The class was certified as to each of the four claims set forth above. Plaintiffs then distributed notice to the class. Eleven (11) employees submitted "opt-out" notices stating that they did not wish to participate in the class action. According to Plaintiffs, six (6) of the notices were returned as undeliverable,[4] and several of the purported class members were not tipped employees and, thus not eligible to participate. *See* Def. Motion for Decertification. Based on Defendant's review, the class consists of 24 employees. Defendant has excluded from the class the opt-outs, those who do not meet the class criteria, and those who did not receive notice, in accordance with precedence in the Southern District.

Defendants produced time records for the 212 tipped employees.[5] 212 provided a meal each shift and a meal break of at least 30 minutes for its employees. However, the employees did not clock out for the meal break (or clock back in). As such, the time records did not show the actual hours "worked", but reflected time spent at the Restaurant, which included a meal break of at least 30 minutes and other non-compensable time, like counting cash tips at the end of a shift.[6] The employees operated without supervision. Volper Decl. at § 16-10. A kitchen employee, usually the Chef, opened the Restaurant each day and a server closed the Restaurant. Volper Decl.

---

[4] That the remaining Class Members received notice has not been verified. For example, Danny Birlandeau is not on the undeliverable list despite the fact that he passed away prior to the initiation of this lawsuit.

[5] As previously stated, Defendants also included inadvertently some time records for non-tipped employees such as Adrian Pizarro, who is not part of the class. Plaintiff included Mr. Pizarro in its damage calculation.

[6] Employees were allowed to leave the premises during breaks. The time records do not show clock outs for such breaks..

at ¶ 7. Most of the staff had keys to the Restaurant. Volper Decl. at ¶ 7. Martinenko had keys to the Restaurant. Huk testified that there was a "family style staff meal" each shift. Huk Dep. at 20 (Exh 1 Greenbaum Declaration). She stated that "if there was something - - I had to answer the phone, I had to get up and answer the phone call, meaning work, not have a break." *Id.* Martinenko testified that she clocked out, at times, only when she worked a lunch shift, and no one told her to do that "it was common sense." Martinenko Dep. at 86 (Exh 2 Greenbaum Declaration). Martinenko did not know whether other employees clocked out, stating "I didn't look at what they were doing." *Id.* Martinenko further testified that "two or three" times a week the family meal was served closer to 5:00 p.m. than 4:00 p.m. Martinenko Dep. at 63. Huk testified that it was usually at 4:00 p.m. Huk Dep. at 20. Martinenko stated that she did not clock out for the time she was "eating a meal shift." Martinenko Dep. at 85. Martinenko also stated that after the restaurant closed, she, at times stayed at the bar. Martinenko Dep. at 31. Plaintiffs have offered no summary judgment evidence whether other tipped employees worked through their meal break, let alone what duties, if any, they were performing and whether such duties were substantial enough for them to be deemed work time. Martinenko remained at the Restaurant after her shift ended to wait for her cash tips and an accounting of her portion of tip pool to ensure she received her full allotment. This was not compensable time and she did not clock out.[7] Volper Decl. ¶ 9, 15.

212 had no on-site manager. Volper Decl. at ¶'s 6-7. The tipped employees set their own schedules and directed their own work. They set and policed their own break times. Martinenko assisted with the payroll, as did Huk. Martinenko Dep. at 54, 57, 33-35; Huk Dep at 22.

Martinenko was also involved with compiling the numbers for the weekly tip sheets for the front of the house employees. Martinenko Dep. at 57. The tipped employees administered their

---

[7] This non compensable time also relates to any minimum wage/tip credit damages as this was not compensable timer, and as such, no damages could be sought for this timer. Volper Dec. at ¶ 15.

own tip pool. Martinenko stayed after her shift ended to count her tips. This was not compensable time, but she did not clock out until she left the Restaurant at night. Volper Dep. at ¶ 9, 15. The employees also managed their own time and breaks. There was no on-site manager for front of the house employees to direct the day-to-day activities of the servers, bussers, and bartenders. Volper Decl. at ¶ 7. Defendants did not have actual or constructive notice whether Plaintiffs were interrupted for substantial work activity during their meal break. Volper Decl. at ¶ 12, 23. The employees were expected to take a meal break, as the Restaurant prepared the meal for each employee each shift. Volper Decl. at ¶ 11, 23. Volper Dep. at 73-75. The employees were charged a meal credit. No employee complained of this charge, nor complained, or notified Volper, that they were precluded from taking a meal break.

Volper does not handle the payroll. Volper Dep. at 114. Volper did not review payroll records, but he passed the information to the accountant. Id. Volper did not review the employee time records. According to Martinenko, she would send the time records to "someone else" to create the payroll. Martinenko Dep. at 58. That "someone else" is the accountant for 212.

It is undisputed that a large portion of the Class had no overtime hours. Even under Plaintiffs' damages calculation, 15 class members had no overtime hours and 8 class members had under $100.00 of claimed overtime damages. 7 of the 8 had under $50.00 of overtime. Martinenko is claiming the largest amount of overtime of the class members. That number, however, is inflated by the fact that she did not clock out when she was not working for periods of 30 minutes or more and that she stayed at the Restaurant after her shift ended, but remained checked in. Volper Decl. 9, 15. While Huk is only claiming $245.00 in overtime damages, that number should be attributed

to meal breaks, which is not compensable time and time after her shift.[8]  The majority of the Class

Members who claim overtime is attributable to the fact that they did not clock out for the meal

breaks and other breaks in excess of 30 minutes.[9]

Whether employees took the meal break and for how long is a disputed fact.  It is also a

disputed fact whether any interruptions were "substantial" to make it compensable.

## 3.    **Summary Of Argument**

Summary Judgment must be denied on Plaintiffs' New York Labor Law Wage Notice and

Wage Statement claims[10] (Count 5 of the Complaint), both individually and for the Class as a

matter of law.  Plaintiffs seek statutory penalties up to $10,000 for each class member ($5,000 per

the wage notice and $5,000 per the wage statement claims).  Neither the Complaint nor any of the

summary judgment evidence put forth by Plaintiff comes close, or even attempts, to demonstrate

how Martinenko and Huk sustained particularized, actual damages, as a result of Defendants'

technical violation of failing to provide such statutory notices, or accurate statements, as alleged.

Because Plaintiffs allege only a technical violation, they lack Article III standing to assert these

claims.  These claims cannot be decided on a class-wide basis because individualized harm must

be shown for each class member, which cannot be accomplished through representational

evidence.  Plaintiffs have not provided any evidence of actual injury to any Class Member beside

the mere technical violation.

---

[8] In her deposition, Huk admits she took her meal breaks, although she claims "it was not consistent." She claimed that, at times, she would get interrupted to answer the phone. Huk Dep. at 20-21.

[9] Since such break time is non compensable, Plaintiffs' claimed tip credit/minimum wage damages would have to be adjusted.  This could not be accomplished through representational evidence, since it is an individualized examination.

[10] NYLL 195 (1), (2).

Summary Judgment must also be denied on Plaintiffs' overtime and spread of hour claims, both individually and for the Class. Material factual disputes exist as to whether a majority of the Class Members worked any overtime given that most Class Members have no claim to overtime hours, as admitted by Plaintiffs. As such, such Class Members are not similarly situated in that they have not been subject to this alleged unlawful overtime policy. That Plaintiffs claim some amount of overtime, most of those claims are de minims and attributed to non-compensatory break times of 30 or more minutes. Even the named Plaintiff has testified that the meal *wasn't always* served on time, and she *sometimes* took the break. As such, material issues of fact exist as to whether there was overtime worked, and whether the claimed overtime was compensable work time.

Summary Judgment should also be denied as to Plaintiffs' claim for damages since Plaintiffs and Class Members did not clock out for non-working time, such as the meal break, and thus such time should be subtracted to the extent it pushes an employee into overtime or spread of hours pay. It also affects Plaintiffs' and Class Members minimum wage/tip credit damages claims as any damages would have to be adjusted for non-compensable time. Material factual disputes exist as to these issues of damages, as well as whether Defendants had actual or constructive knowledge of Plaintiffs' or any Class Members working through a break time of 30 minutes or more, and whether any work was substantial to make it compensatory time. There is also a material factual dispute as to Plaintiffs minimum wage/tip credit damages as the clock in/clock out times did not reflect the actual hours worked. That the employees did not clock out when their shift ended means that their tip credit minimum wage claim would have to be calculated taking into account the time actually worked, as well as the meal break non compensable time.

Lastly, summary judgment should be denied as to liquidated damages as Defendants relied on its accountant for compliance with the wage and hour laws.

**4.  The Court Must Deny Plaintiffs' Motion For Summary Judgment As To Count 5 Of The Complaint Seeking Penalties For Alleged Violations of NYLL § 195 (1) And § 195 (3), And Should Grant Defendants' Motion For Judgment As To Count 5**

Plaintiffs' sole argument with respect to Count 5 (Section D of Plaintiffs' Motion For Summary Judgment) is that (i) Defendants did not provide any written notices to Plaintiff and any of the Class Members in violation of NYLL § 195(1), and (ii) prior to 2019 Defendants did not provide to Plaintiff and any Class Member wage statements which is in violation of NYLL 195(3) and that once Defendants did provide wage statements, such statements did not fully comply with NYLL § 195(3).  Plaintiffs assert that because Defendants violated Sections 195 (1) and 3, they are entitled to recover statutory damages.  Such damages are up to $5,000 per notice and up to $5,000 per wage statement.[11]  Plaintiffs have offered no evidence, nor can they, that named Plaintiffs, or any Class Member, suffered an actual injury as a result of these technical violations. As such, Plaintiffs' motion for summary judgment on Count 5 must be denied, and Defendants' pending Motion for Judgment must be granted as to this claim.  To be sure, this federal court cannot hold Defendants liable for these statutory wage penalties since Plaintiffs' lack standing to bring these claims in this Court.

Plaintiffs' Motion for Summary Judgment only repeats the same allegations set forth in Count 5 of the Complaint.  Count 5 alleges that "Defendants did not provide Plaintiff and the members of the class with the notices/statements required by N.Y. Labor Law Section 195 … as a result of Defendants unlawful conduct, Plaintiffs and members of the Class are entitled to an award

---

[11] Martinenko actually seeks $15,000 in statutory penalties claiming that she failed to receive a second wage notice when she returned to 212 in 2021.

of [statutory] damages." Complt. ¶ 52 (Dk. No. 1). Plaintiffs' have failed to adduce any evidence in support of their motion for summary judgment that Plaintiffs or any particular Class Member sustained any concrete and particularized injury as a result of Defendants' technical violation. *See Neor Acaia Network*, 2033 U.S Dist. LEXIS 20754 (S.D.N.Y. February 7, 2023) (Plaintiffs lack standing to bring NYLL § 195 claims for penalties because they fail to demonstrate how the lack of accurate wage notices and statements led to either a tangible injury or something akin to a traditional injury or something akin to a tangible cause of action); *Wang v. XBB, Inc.,*2022 U.S. Dist. LEXIS 574891 (E.D.NY. March 29, 2022) (Plaintiff lacks standing to recover under NYLL § 195 claim because Plaintiff has not linked any injury-in-fact to the defendants' failure to provide statutory notices under the NYLL); *Franciso v. NY Tex, Care, Inc.,* 2022 U.S. Dist. LEXIS 55633 (E.D.N.Y. March 28, 2022) ("While those may be technical violations of the NYLL, neither the [p]lainitff nor the record demonstrate how those technical violations led to either a tangible injury or something akin to a traditional cause of action."); *Perez v. Postgraduate Ctr. For Mental Health,* 2021 U.S. Dist. LEXIS 156116 (E.D.N.Y. Aug. 18, 2021) (finding that the plaintiff lacked Article III standing for a claim alleging the content of his wage notices violated the NYLL because of an inaccuracy because "not all inaccuracies cause harm or present any material risk of harm.")

Here, named Plaintiffs and the Class must have evidence that the technical violations of NYLL Section 195 by Defendants resulted in "particularized" and "concrete" injuries. For an injury to be "particularized" it must affect the plaintiff in a "*personal* and *individual* way" *Lugan v. Defenders of the Wildlife,* 504 U.S. 555 (1992). (Emphasis added). An injury must also be "concrete." A "concrete" injury must be "de facto", that is it must actually exist. *Spokeo, Inc. v.*

*Thomas Robins,* 578 U.S. 330 (2016).[12]  Named Plaintiffs have failed to even allege, let alone present any evidence, that each has sustained a particularized and concrete injury.  It goes without saying that Plaintiffs have failed to present any evidence as to any particularized and concrete injury to any Class Members as a result of Defendants' technical violations of NYLL Section 195.  They cannot do this because the injury must be "particularized" which means it must be personal to the Class Member.  *Lugon,* supra.  This cannot be accomplished through generalized evidence.

Plaintiffs have likewise failed to show individualized actual injury as a result of Defendants' technical violations of NYLL Section 195.  It would be disingenuous for Martinenko and Huk to even claim each has sustained an actual injury by the lack of wage notice and accurate wage statements as they each possessed, more than any other employees, all of the information the Restaurant had as to payroll, wages, and hours.  *See* Martinenko Dep. at 54-55; Huk Dep. at 22.  These facts not only set this case apart, it even sets the two named Plaintiffs apart.  Not only did Martinenko and Huk both prepare payroll checks, each had access to the Restaurant office,[13] the Point of Sale System, and all of the information to inform them of the payroll practices.  Each Plaintiff was an experienced server who knew that servers are paid on a tip credit basis.  They also knew that their tips were significant and put their hourly pay well in advance of the regular minimum wage.  Indeed, the employees established their own "tip" pool and administered it.  The two Plaintiffs even decided on their own, not to report cash tips.  Martinenko even held the highest security level of any employee, and the same level as Volper, for computer access, which was

---

[12] In *Transunion LLC v. Ramirez,* 141 S. Ct. 2190 (2021) the Supreme Court held that a Plaintiff does not satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue and vindicate that right.  Article III grants federal courts power to redress harms that defendants cause plaintiffs, not freewheeling power to hold defendants accountable for legal infractions. *Id.*

[13] All employees had access to the restaurant office.

unlimited to her. She had the ability to access the payroll and time records for each employee. It is of no coincidence that Plaintiffs have not even attempted to show an individualized actual inquiry as to their wage notice and statement claims.

In addition to the fact that Count 5 of the Complaint fails as a matter of law, this Court could not award damages under Count 5, as any statutory penalty awarded to each Plaintiff and Class Member would be disproportionate to any harm actually suffered by the individual. A review of Plaintiffs' Damage Summary (Exhibit 1, Dk. 116-1) attached to Plaintiffs' Summary Judgment motion bears this out. For example, Plaintiff claims Jose Pena had $213.00 in compensatory tip credit/minimum wage damages, but his statutory penalty damages would be $1,050 and $5,000, for a total statutory penalty of ($6,050). Pena has no overtime or spread of hours damages. Raul Romero is claimed to have $1,546.70 in tip credit/minimum wage damages and no overtime or spread of hours damages. Plaintiffs are claiming statutory damages of $2,300 and $5,000, for a total of $7,300 in statutory penalties. Michelle Marquez who is on Plaintiffs' damages list worked for only two weeks with no overtime, no spread of hours, and claims $185 in compensatory tip credit damages. Plaintiffs are claiming $850 and $4,250, for a total of $5,100 in statutory penalties. Plaintiffs are claiming Vivian Peny has $11.00 in compensatory spread of hours damages, no overtime damages, $1,195.00 in minimum wage/tip credit damages, but are claiming $2,450.00 in § 195 (l) penalties and $5,000 in § 195(3) penalties for total statutory penalties of $7,450.00. If the entire damages summary prepared by Plaintiffs is reviewed, each and every entry contains disproportionate statutory penalties that cannot be recognized by this Court and are wholly in inappropriate as a class action. Not one of the statutory penalties sought for any of the individuals on the Damages Summary is proportional to any claimed harm, of which there is no evidence of, but would be a windfall to any of the listed individuals. This includes Martinenko who is seeking

$15,000 in statutory damages.[14] *See Parker v. Time Warner Entm't Co., L.P.* 331 F.3d 13, 22 (2nd

Cir, 2003).

5.     **Summary Judgment Should Be Denied As To Plaintiffs' And The Class Claims For Damages**

Disputed material facts exist as to Defendants' knowledge of claimed overtime hours and

whether such hours were compensable work entitling Plaintiffs' to an overtime premium and

spread of hours.  The majority of the existing Class either did not work any overtime, or are

claiming de minimus overtime, which is attributable to their failure to clock out for the meal

break.[15] As to named Plaintiffs Martinenko and Huk, Martinenko only clocked out (4) times during

her tenure and Huk never clocked out for breaks, including meal breaks. Martinenko's clock-outs

were not for the meal break.  Martinenko Dep. at 85-86.  None of the Class Members clocked out

for their meal breaks.  Exh. 4 to Volper Decl.  The Restaurant provided a meal prepared by the

Restaurant's kitchen for all front of the house employees during their shift.  The meal break is not

considered compensated time.  However, the employees did not clock out during this time period

as reflected in the time records.  They were not paid for this time, but the additional time reflected

on the timecards should not count towards overtime (or an overtime premium) as it was not "hours

worked."  For an employee working a 5 day schedule this amounts to 2.5 hours a week, which

would eliminate the claimed overtime for a large percentage of the Class.  While Huk and

Martinenko claim that they were not free from work during certain meal breaks, their deposition

---

[14] Martinenko alleges that she was due two wage notices since she had 2 hire dates at 212. However, her first hire date was in 2015.  This is prior to the limitations period of her New York Labor Law claim and, as such, cannot be sought in this case. Volper Decl. at ¶ 20.

[15] Plaintiffs' Class claims of overtime and spread of hours violations should be decertified.  The number of Class Members who are claiming overtime is less than 20 and the majority of the Class have not been subject to a common policy violation of the FLSA and NYL with respect to this claim.

testimony was that "sometimes" they did not have an uninterrupted meal break, or it was not taken. *See* Huk Dep. at 20, Martinenko Dep. at 85-6. To the extent Plaintiffs did not have an interrupted meal break, or it was not taken, since there was no on-site manager, Defendants had no knowledge or even constructive knowledge these breaks were not being taken. Indeed, the employees managed their own time and meal breaks. No one complained or alerted Volper that their meal break was being interrupted for work. There is no evidence that any Class Member missed their meal break, let alone any evidence that there was a Restaurant practice whereby substantial interruptions of the meal break or other 30 minute breaks applied to all similarly situated employees.

"Work" under the FLSA means "physical or mental exertion controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Reich v. S. New Eng. Telecomms. Corp.,* 121 F.3d 59 (2nd Cir. 1997)( quoting, *Tennessee Coal, Iron & R. Co. v. Muscoda,* Local No. 123, 321 U.S. 590, 598, 64 S.Ct. 698 (1944)). The determination of what constitutes work is necessarily fact-bound. *Id.*; *see also Armover & Co. v. Wantock,* 323 U.S. 126, 133 (1944) ("whether time is spent predominately for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case"). Meal periods are not compensable unless work activities "could be characterized as substantial." *Hill v. United States,* 751 F.2d 810,814 (6th Cir. 1984). Infrequent interruptions of short duration, such as answering a work-related question does not nullify a meal break from non compensable hours of work. DOL Opinion Letter July 29, 1985, *quoted in Reich*, supra, 121 F.3d at 64. As such, when Huk testified at deposition that she was "sometimes" interrupted to take a phone call during her meal break (Huk Dep. at 20), such testimony only creates a material factual dispute as to whether such work was

compensable. There would be no reason for Huk to have taken a phone call, other than a personal one, during her meal break. Volper Decl. at ¶ 16.

There is also a material factual dispute as to whether Defendants had actual or constructive knowledge of whether the employees were substantially working during the meal break. There was no on-site manager directing employees or interrupting their meal breaks to have them perform substantial services. Martinenko testified with respect to breaks, "I didn't look at what the other employees were doing." Martinenko Dep. at 86. Huk testified the family meal break was usually around 4:00 pm but was not consistent. Huk Dep. at 20. Huk further testified that at times she had to answer the phone during the meal break. Huk Dep. at 21.[16] Again, this testimony creates a factual issue of whether such interruption was "substantial" to make it compensatory time. *Reich*, supra, 121 F.3d at 64.

Employees are compensated for the time an employer "suffer[s] or permit [s] them to work." 29 U.S.C. § 203(g); New York Labor Law §190. Time spent working, however, is not compensable work time where the employer has no actual or constructive knowledge of it. *Gordon v. Kaleida Health,* 299 F.R.D. 380, 392 (W.D.N.Y. 2014) (denying summary judgment on Plaintiffs' FLSA and NYLL claims where "reasonable minds could differ as to whether [defendant] had actual or constructive knowledge of unreported, uncompensated time"); 29 C.F.R §785.11 ("work not requested but suffered or permitted is work time as long as the employer knows or has reason to believe that [the employee] is continuing to work and the time is working time."). While Plaintiffs' testimony is that the breaks were inconsistent, this only creates a factual question as to how inconsistent and whether they were "substantially working" during the break. It does not

---

[16] According to Volper there would be no need for Huk to answer the phone during her meal break. She never informed him or complained about being interrupted during her breaks. Volper Decl. at ¶ 16.

address the employer's knowledge of such work since there was no on-site manager to observe them or direct their work.  Neither Martinenko nor Huk offered any evidence of what other Class Members were doing (or not doing) during their meal breaks or other breaks over 30 minutes in duration.  Indeed, Martinenko testified that "she didn't know what *they* were doing".  (Emphasis added).  Neither Martinenko nor Huk informed Volper that they were working through lunch.  No Class Member or any employee told Volper they were working through lunch.  Vopler Decl. at ¶ 23.  Defendants charged a meal credit for the meals that were provide each shift.  Indeed, Martinenko and Huk's wage statements show the meal charge and neither of them complained that they did not receive the meal (or could not take it).  (See Dk. 115-6).

Plaintiffs contend that the "time" records produced by Defendants are the only time records maintained by Defendants.  They claim that such records reflect the amount of time that Class Members "worked" for Defendants.  They claim that the time records reflect the "undisputed compensable work time for the Class." Pl. Mem. at 14.  Such time records, however, reflect the punch in punch out time. They do not reflect hours worked. The Class Members did not clock out for their breaks over 30 minutes in duration, primarily the meal break. *See* Exh. 4 to Volper Decl. While such records reflect the amount of time Defendants paid the Class Members, such time records do not show actual time worked as the employees did not clock out for their breaks.  In this regard, overtime and any amount paid in excess of time worked cannot be the basis of any overtime or other payment obligation Plaintiffs can seek damages on.

Plaintiffs' Statement of Material Facts does not address the hours "worked" component aside from conclusory non admissible evidence.[17]

---

[17] Plaintiffs Statement of Facts at ¶ 15-17 only addresses clocked in time. There is no discussion of work time. Statement of Fact ¶ 17 states only "[[t]o the extend that Class Members took breaks,

Defendants could have had an automatic meal period deduction, which would have been a lawful policy. *See Kaleida, supra; Wolman v, Catholic Health Sys. Of Long Island, Inc.,* 853 F. Supp 2d 290, 300-301 (E.D.N.Y 2012), *aff'd in part and rev'd in part on other grounds, sub com, Lundy v. Catholic Health Sys. of Long Island, Inc.* 711 F.3d 106 (2nd Cir. 2013). It has also been held that it is not per se unlawful for an employer to "shift the burden to their employees" to report that they worked during an unpaid meal break. *Id.* The same is true here. While the Defendants paid the employees their hourly wage for their clocked in and out times, this does not trigger an overtime obligation or damages unless they were working during that time. It also does not trigger the minimum/tip credit damages for non-work time. Since there was no on-site manager directing the employees, and no employee complained about working through lunch or any break over 30 minutes, such time does not automatically become "work time." *See* 29 C.F.R. § 785.11 (where an "employer knows or has reason to believe that [an employee] is continuing to work the time is working time."). Thus, Defendants should not be liable for damages for <u>any</u> time Plaintiffs and Class Members were not working.[18] To be sure, Plaintiffs have not presented any factual evidence on the issue of "working time" and there is no evidence as to the issue of actual work time as to the other Class Members. Since there is no evidence of a policy or practice of having employees work through their meal breaks, the issue cannot be decided with representational evidence.

6.    <u>**Disputed Material Facts Preclude Summary Judgment On Plaintiffs' Claim For Liquidated Damages Under The FLSA And NYLL**</u>

---

Defendants did not require Class Members to clock out for breaks." This does not address compensable time, i.e. "working" time.

[18] This also applies to Plaintiffs' minimum wage tip credit claim. That period of time, in increments of 30 minutes or more, must be deducted from any damages on the claim. For this reason alone, summary judgment is not warranted on the minimum wage/tip credit claim.

Plaintiffs seek liquidated damages under the FLSA and NYLL for their overtime, spread of hours, and Minimum Wage claims. Under the FLSA and NYLL, an employer will be liable for liquidated damages equal to an amount of unpaid wages unless it had a good faith belief that it was complying with the law. 29 U.S.C. § 216 (b); N.Y. Labor L. §§ 198 (1-a), 633 (a). *Cardenas v. Edita's Bar & Rest., Inc.* 2020 U.S. LEXIS 258547 (E.D.N.Y. Sep't. 30, 2021). Plaintiffs assert that Defendants did not make any effort to comply with the wage and hour laws in good faith. They also complain that Defendants failed to consult with a lawyer or other professional before deciding on the Restaurants payroll practices. In their Statement of Undisputed Facts, Plaintiffs assert that i) Defendants took no affirmative steps to determine the requirements of the wage and hour laws and ii) Defendants did not consult with anyone to determine whether the payroll practices at 212 Steakhouse complied with the law. Plaintiffs' Statement at ¶¶ 38-39. However, Volper testified in his deposition that he relied on his accountants to provide him with the information to comply with the FLSA and New York Labor Law. Volper Dep. at 208. Based on this, he believed he was following the labor laws when the accountants' reported wages and salaries for the Restaurant. *Id.* 212 was Volper's first restaurant experience and he relied on the accountants to provide him with the necessary information regarding pay practices. Volper Dep. at 191, 209. Putting aside the alleged technical violation of not providing the wage notices, Defendants did provide the appropriate tip credit minimum wages and there is no evidence that Plaintiffs' or any Class Members' pay went below minimum wage with tips taken into consideration.

Plaintiffs also point to two (2) prior lawsuits against Defendants as evidence of lack of good faith. *See* Pl. Statement of Undisputed Material Facts at ¶ 40-43. Those two lawsuits were resolved, however, early in the litigation. Volper Decl. at ¶ 24. The second lawsuit did not involve

a "tipped" employee and did not involve the issues presented here.  However, that lawsuit was also settled prior to any decision and the Restaurant did not admit to any wrongdoing.  Volper testified that he did change his payroll practices after the 2018 lawsuit, and he relied on his accountant in making the change.  Volper Dep. at 196.  The Restaurant did not believe the second lawsuit's claim for overtime had merit but made a decision to settle the matter to avoid litigation.  That case did not involve a tipped employee.  *Julio De La Flores v. 212 Steakhouse, Inc.,* Index No. 654134l/2020 (New York Supreme Court).  Lastly, the Department of Labor audit referred to in Volper's deposition had nothing to do with wages and hours, but was a routine unemployment insurance audit. Volper Decl. at ¶ 24.

Here, since Volper consulted with and relied on his accountant for compliance issues, there is a triable issue as to Defendants' good faith. *Cardenas*, supra, 2020 U.S. Dist. LEXIS 258547 *39; *Campbell v. City of New York*, 2021 U.S. Dist. LEXIS 40923 (S.D.N.Y. March 4, 2021).  This case also presents the unusual circumstances where the Plaintiffs are essentially running their own operation -- from making their own schedules, paying their own paychecks, administering their own tip pool, closing the Restaurant, and directing their own work.  By being entrusted with these responsibilities, it is incumbent on them to alert management with any work related issues, including issues related to their wages and hours.  It is fair to say Plaintiffs had far more Restaurant experience than Volper.  Volper Decl. at ¶ 70.  Plaintiffs literally had keys to the office, the Restaurant and the checkbook.  As such, a question of whether Defendants acted in good faith in complying with the wage-hour laws exist to preclude summary judgment.

Wherefore, for the foregoing reasons Summary Judgment should be denied.

Dated: December 20, 2023

Respectfully,

19

Coburn & Greenbaum, PLLC
By: /s/ Jonathan Greenbaum
Jonathan W. Greenbaum, Esq.
Natalie Nehls, Esq.
1710 Rhode Island Ave, NW, 2nd Floor
Washington, D.C. 20036
Telephone: (202) 657-5006
Facisimile: (866) 561-9712
jg@coburngreenbaum.com
natalie@coburngreenbaumn.com
*Attorneys for 212 Steakhouse Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Opposition To Plaintiffs' Motion For Summary Judgment was filed this 21st day of December 2023 via ECF.

_____
Jonathan W. Greenbaum

cc:     All Parties of Record