UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NINO MARTINENKO, on behalf of herself and others similarly situated,

         Plaintiff,

-against-

212 STEAKHOUSE, INC., and NIKOLAY VOLPER,

         Defendants.

Case No.: 22-CV-518 (JLR) (RWL)

---

### DEFENDANTS COUNTER-STATEMENT OF DISPUTED FACTS PURSUANT TO LOCAL CIVIL RULE 56.1

Defendants, 212 Steakhouse, Inc. ("212" or "Restaurant") and Nikolay Volper hereby file this counter-statement of disputed facts. Defendants counter-statement herein corresponds to Plaintiffs numbered paragraphs 1-43 in Rule 56.1 Statement. Defendants also incorporate herein the references to evidence set forth in its Opposition to Summary Judgment fixed contemporaneously.

  1.  Admitted. Defendant 212 owns a Steakhouse Restaurant located at 216 East 53rd Street, New York, NY.

  2.  Admitted. Defendant admit its gross revenue for 2016 to 2022 exceeded $500,000.

  3.  Admitted. Martinenko worked as a server from 2016 through December 2018 and then again from the end of March 2021 until December 28, 2021. Martinenko initially started working at 212 in 2015 and stopped work, as indicated in December 2018.

4. Admitted. Huk's employment at 212 was from August 2020 through September 2021.

5. Denied. This case involves tipped employees only. At no time did 212 have 11 tipped employees working on a given shift. Volper Decl. at ¶ 5.

6. Admitted. Volper is the founder of 212.

7. Volper did possesses authority to hire employees for 212.

8. Volper did terminate Martinenko's employment for violating 212 policy by coming to work with COVID and causing the closure of 212 for several days.

9. Volper admits he had the authority to promote employees.

10. Volper had the authority to discipline employees, but he was rarely in the Restaurant and the employees managed their own work loads without supervision. The employees set their own schedules in accordance, of course, within the Restaurant hours. The employees had access to the office, Restaurant, checkbook, keys to the Restaurant, and clocked in and out on their own without supervision. Volper Declaration.

11. Volper is the ultimate decision maker at 212.

12. Denied. Volper did not control the conditions of employment. In fact, he was rarely present during restaurant hours and the terms and conditions of employment were in effect, controlled and exercised by the employees, including Martinenko. Volper Decl. ¶'s 6-10.

13. Denied. The employees created their own work schedules. If an employee could not work a particular shift, the employees would arrange for a substitute and/or a swap of schedules. Volper was not involved in this process. Volper Decl. at ¶'s 6-10.

14. While Volper was ultimately responsible, his accountant set the rates of pay for employees, Volper relied on his accountant to ensure compliance. Volper Decl. at ¶20; Volper Dep. at 209.

15. 212 Employees were supposed to clock in and out of the POS system. Volper did not police this. Volper Dep. at 41-42. In fact, employees did not clock out for their 30 minute or more meal break. Volper Decl. ¶9; Time records. (Exh 4 to Volper Decl.). In addition, Martinenko and the servers regularly remained in the Restaurant after their shifts ended (i.e. when their last check closed and they were free from the duties and could leave the Restaurant, they remained in the Restaurant without clocking out so they would receive their cash tips and ensure that they received their full allotment of the tip pool. This was not work time. Volper Decl. ¶9, 15.

16. Admitted, but not all of this time was compensable time on which overtime or spread of hours would be counted. Employees would be paid for their hours clocked in and out, but because they did not clock out and back in for meal breaks or other breaks lasting over 30 minutes, that time should be deducted for purposes of overtime and spread of hours in a week. (i.e. over 40 hours in a workweek). In addition, any minims wage/tip credit damages sought by Plaintiffs must accurately reflect only work time. Plaintiffs Martinenko and Huk did not clock out for meal breaks and Martinenko, in particular, stayed at work after her duties were completed without checking out, this time was not work time and does not even count as straight time.

17. Denied. Employees were supposed to clock in and out. Volper did not police it and "could not remember" if there was a policy. Volper Dep. at 74. Even if employees did not clock out for breaks, it does not make such time "work time".

18. Denied. Plaintiffs refer to "all class members." Most class members did not have any overtime and the majority of those that did have de minims overtime that is attributed to the

3

meal break or one of de minims value that it had no legal significance. Such time was not compensable time for purposes of an overtime calculation.

19. Denied. Most class members never worked in excess of 10 hours on any workday, especially if the break of 30 minutes are deducted as well as other compensable time, such as counting their tips after their work ended, but they did not clock out. Volper Decl. at ¶ 21.

20. Admitted, but some of the POS system time records were also for non-tipped employees which were inadvertently produced as the job title was not reported on the POS time system.

21. Defendants deny there are 33 class members. (See Motion to Decertify and Exhibits). Defendants admit the POS time records show clock in and out times only but is not a indicia of compensable work time. Volper Decl. at ¶ 3.

22. Denied. The time records show clock in ad out but not hours "worked" as employees did not clock out for all breaks and at the end of the shift when work was complete, servers stayed at the restaurant additional time not working and relieved of all duties without clocking out. Volper Decl. ¶ 9; Exh. 4 (Time Records). The servers were free to leave the Restaurant after their last check closed.

23. Admit. Defendants were served with document requests.

24. Admit. That Defendants responded to the document requests.

25. Denied. 212 produced Martinenko and Huk's wage statements which contained their wage rates, tip credit wage and other pay information including lawful deductions. (See Martinenko's wage statements which are attached to Plaintiff's Motion at Dk. No. 115-6).

26. Defendants have posted the wage federal DOL and NYLL wage posters in the workplace. Defendants admit that written wage notices were not provided, but Defendants did

4

post federal and state wage hour notices. Volper Decl. The pay statements did show the rates of pay for employees. Volper Decl. ¶ 14.

27. Defendants did provide wage statements to employees prior to 2019 but not the type of statements characterized by Plaintiff. After 2019 Defendants did provide wage statements to Plaintiffs.

28. Denied. Martinenko, Huk and other employees prepared the pay checks. Volper Decl. at ¶ 13.

29. In 2019 the Restaurant started using a payroll service to issue wage statements. Volper Decl. at ¶ 14.

30. Admit. Plaintiff requested such wage statements, but prior to the class certification.

31. Defendants provided the wage statements for the Plaintiffs.

32. The Restaurant started using a payroll service in 2019. Volper Decl. ¶ 14.

33. Denied. The paystubs had the New York Labor Law complaint information, including hours worked and tip credit wage and lawful deductions. Defendants do not believe overtime was worked.

34. The payroll service created the wage statements. Volper Decl. ¶ 14.

35. Any paycheck reflected what the wage statement reflected.

36. Denied. Defendants did provide a statement showing check in/out totals and reported tips for the week. Defendants admit it did not have all the information contained in Plaintiffs paragraph 36, but Plaintiff has not defined "statement". Volper Decl. ¶ 14.

37. Neither admit nor deny. This does not appear to be a material factual statement.

38. 212 relied on its accountant for compliance with the FLSA and New York Labor Laws. Volper Dep. at 209-212; Volper Decl. at ¶ 20.

39.  Denied. Defendants consulted with its accountant with respect to payroll practices. Volper Dep. 209 (Q. "Did you rely on those accountants to provide you information related to the FLSA and New York Labor Laws? A. Yes. Q. Did you believe that they were following those labor laws when they reported wages and salary the way they did to you? A. I believe").

40.  Defendant admits it was sued for a wage-hour violation, but they were not the same allegations, and the case was settled to avoid further litigation. Volper did not believe any money was owed and relied on his attorney to settle the case. Volper Decl. ¶ 24.

41.  Denied. 212 did change its payroll practices. Volper Dep. at 196-97.

42.  Denied. The 2020 lawsuit was from a kitchen employee who was non-tipped. It was settled early to avoid the cost of litigation and without any admission.

43.  Defendants did start issuing wage statements around the time of the resolution of the 2018 lawsuit. Volper Dep, at 196-7.

Respectfully submitted,

Jonathan W. Greenbaum
Natalie Nehls
COBURN & GREENBAUM, PLLC
Second Floor
1710 Rhode Island Avenue, NW
Washington, DC. 20036
Telephone: 202.744.5003
Facsimile: 866.561.9712
Email: jg@coburngreenbaum.com
          natalie@coburngreenbaum.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct cop of Defendants Counter-Statement Of Disputed Facts Pursuant To Local Civil Rule 56.1 was filed this 21 day of December 2023.

_____
Jonathan W. Greenbaum