**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------------X
**NINO MARTINENKO, on behalf of herself and others**      **Civil Action No.: 22 CV 518**
**similarly situated,**

                    **Plaintiff,**

        **-against-**

**212 STEAKHOUSE, INC., and NIKOLAY VOLPER**

               **Defendants.**
--------------------------------------------------------------------------X


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DECERTIFY RULE 23 CLASS AND MOTION FOR JUDGMENT AS TO**
**COUNT 5 OF THE COMPLAINT**


Denise A. Schulman
Michael DiGiulio
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 981-9587 (fax)


*Attorneys for Plaintiff, Opt-In Plaintiffs, and Class*

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY ....................... 1

III.  LEGAL STANDARD ........................................................................................... 5

   A.   Rule 23 Decertification ................................................................................ 5

   B.   Rule 12(b)(1) ............................................................................................... 6

IV.   ARGUMENT ...................................................................................................... 6

   A.   The Rule 23 Requirements Are Satisfied ...................................................... 6

     i.    Numerosity is satisfied ............................................................................ 7

     ii.   Commonality is satisfied ........................................................................ 12

     iii.  Predominance is satisfied ....................................................................... 14

     iv.   Class Action is the Superior Method of Adjudication ............................... 16

   B.   Plaintiffs Have Standing to Assert NYLL § 195 Claims ................................ 17

     i.    The NYLL § 195 Claims ......................................................................... 18

     ii.   Plaintiffs Have Standing to Assert NYLL § 195 Claims ........................... 19

       a.   Plaintiffs suffered monetary harm ....................................................... 20

       b.   Plaintiffs suffered informational injuries .............................................. 22

V.    CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Almon v. Conduent Bus. Servs., LLC*, No. 19 CV 1075,
2022 U.S. Dist. LEXIS 55025 (W.D. Tex. Mar. 25, 2022) ......................................23

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140 (2d Cir. 2011) ..............................6

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) ...................................14

*Balverde v. Lunella Ristorante, Inc.*, No. 15 Civ. 5518,
2017 U.S. Dist. LEXIS 59778 (S.D.N.Y. Apr. 19, 2017).........................................7

*Benavides v. Serenity Spa NY, Inc.*, No. 15 CV 9189,
2018 U.S. Dist. LEXIS 88331 (S.D.N.Y. May 25, 2018).........................................9

*Boucher v. Syracuse Univ.*, 164 F.3d 113 (2d Cir. 1999) ......................................5

*Bueno v. Buzinover*, No. 22 Civ. 2216,
2023 U.S. Dist. LEXIS 38154 (S.D.N.Y. Mar. 7, 2023) .........................................19, 22

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merk-Medco Managed Car, L.L.C.*,
504 F.3d 229 (2d Cir. 2007)........................................................................6

*Chapman v. City Winery NY*, No. 23 Civ. 2778,
2023 U.S. Dist. LEXIS 213391 (S.D.N.Y. Nov. 30, 2023) .....................................*passim*

*Chichinadze v. BG Bar, Inc.*, No. 18 Civ. 8069,
2021 U.S. Dist. LEXIS 23594 (S.D.N.Y. Feb. 8, 2021)..........................................19

*Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411 (2d Cir. 2015)..............6

*Cuchimaque v. A. Ochoa Concrete Corp.*, No. 22 CV 6136,
2023 U.S. Dist. LEXIS 124589 (E.D.N.Y. July 18, 2023) ......................................19

*Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*,
375 F.2d 648 (4th Cir. 1967) .....................................................................11

*Elliot v. Leatherstocking Corp.*, No. 10 CV 0934,
2012 U.S. Dist. LEXIS 171443 (N.D.N.Y. Dec. 4, 2012)........................................10

*Enea v. Bloomberg, L.P.*, No. 12 Civ. 4656,
2014 U.S. Dist. LEXIS 35613 (S.D.N.Y. Mar. 17, 2014) ........................................15

*Francisco v. NY Tex. Care Inc.*, No. 19 CV 1649,
    2022 U.S. Dist. LEXIS 55633 (E.D.N.Y. Mar. 28, 2022) ..........................................14

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ......................................7, 11

*Gomex v. Lace Entm't, Inc.*, No. 15 Civ. 3326,
    2017 U.S. Dist. LEXIS 5770 (S.D.N.Y. Jan. 6, 2017)..............................................12

*Grant v. Sullivan*, 131 F.R.D. 436 (M.D. Pa. 1990) ...............................................................11

*Hall v. Best Buy Co.*, 274 F.R.D. 154 (E.D. Pa. 2011) ..........................................................

*Hicks v. T.L. Cannon Corp.*, 35 F. Supp. 3d 329 (W.D.N.Y. 2014).....................................21

*Hyland v. Navient Corp.*, 48 F.4th 110 (2d Cir. 2022) ...........................................*passim*

*Hyunhuy Nam v. Permanent Mission of the Korea to the UN*, no. 21 CV 6165,
    2023 U.S. Dist. LEXIS 28600 (S.D.N.Y. Feb. 21, 2023)..........................................14

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007).......................12

*In re AXA Equitable Life Ins. Co. COI Litig.*, No. 16 CV 740,
    2023 U.S. Dist. LEXIS 110070 (S.D.N.Y. June 22, 2023).....................................10, 13

*In re US Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013)................................13

*In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) .....................16

*Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152 (S.D.N.Y. 2014) ............................................11

*Jones v. C&D Techs., Inc.*, 8 F. Sup. 3d 1054 (S.D. Ind. 2014) ...........................................15

*Johnson v. Nextel Communs. Inc.*, 780 F.3d 128 (2d Cir. 2015) ..........................................11

*Lanzetta v. Florio's Enters.*, 763 F. Supp. 2d 615 (S.D.N.Y. Jan. 25, 2011) .......................21

*Leonard v. John Hancock Life Ins. Co. of N.Y.*, No. 18 CV 4994,
    2022 U.S. Dist. LEXIS 31689 (S.D.N.Y. Jan. 10, 2022)..........................................10

*Lipstein v. 20X Hosp. LLC*, No. 22 CV 04812,
    2023 U.S. Dist. LEXIS 167615 (S.D.N.Y. Sept. 19, 2023)....................................*passim*

*Liu v. Matsuya Quality Japanese Inc.*, No. 16 CV 3624,
    2018 U.S. Dist. LEXIS 109328 (E.D.N.Y. June 29, 2018) .......................................15

*Lopez v. MNAF Pizzeria, Inc.*, No. 18 CV 6033,
    2021 U.S. Dist. LEXIS 57260 (S.D.N.Y. Mar. 25, 2021) .........................................20

*Low v. Tian Yu Inc.*, No. 12 Civ. 7237,
    2015 U.S. Dist. LEXIS 28823 (S.D.N.Y. Mar. 9, 2015) .........................................2, 10

*Lowell v. Lyft, Inc.*, No. 17 CV 6251,
    2023 U.S. Dist. LEXIS 50722 (S.D.N.Y. Mar. 24, 2023) .........................................6

*Maddox v. Bank of N.Y. Mellon Trust Co., N.A.*, 19 F.4th 58 (2d Cir. 2021).......................18

*Mateer v. Peloton Interactive, Inc.*, No. 22 Civ. 740,
    2022 U.S. Dist. LEXIS 125017 (S.D.N.Y. July 14, 2022) ......................................21, 22

*Mazzei v. Money Store*, 829 F.3d 260 (2d Cir. 2016) ..........................................................6

*Moukengeshcaie v. Eltman*, No. 14 CV 7539,
    2019 U.S. Dist. LEXIS 782337 (E.D.N.Y. Oct. 15, 2019) ......................................8

*Neff v. Flowers Foods, Inc.*, No. 15 CV 254,
    2019 U.S. Dist. LEXIS 238105 (D. Vt. May 16, 2019).............................................7, 11

*Nnebe v. Daus*, No. 06 CV 4991,
    2022 U.S. Dist. LEXIS 73974 (S.D.N.Y. Apr. 22, 2022)...........................................13

*Omar v. 1 Front St. Grimaldi, Inc.*, No. 16 CV 5824,
    2019 U.S. Dist. LEXIS 4242 (E.D.N.Y. Jan. 8, 2019) ............................................7, 10

*Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13 (2d Cir. 2003) ................................16, 17

*Pest v. Bridal Works of N.Y., Inc.*, 268 F. Supp. 3d 413 (E.D.N.Y. 2017) ...........................14

*Petrisch v. HSBC Bank USA, Inc.*, No. 07 CV 3303,
    2013 U.S. Dist. LEXIS 45346 (E.D.N.Y. Mar. 28, 2013) .........................................15

*Philadelphia Elec. Co. v. Anaconda Am. Brass Co.*, 43 F.R.D. 452 (E.D. Pa. 1968) ..........11

*Pino v. Harris Water Main & Sewer Contrs. Inc.*, No. 17 CV 5910,
    2021 U.S. Dist. LEXIS 157072 (E.D.N.Y. Aug. 19, 2021).....................................12

*Provencher v. Bimbo Bakeries U.S.*, No. 22 CV 198,
    2023 U.S. Dist. LEXIS 167382 (D. Vt. Aug. 7, 2023)...........................................7, 11

*Rannis v. Recchia*, 380 F. App'x 646 (9th Cir. 2010) ..........................................................8, 10

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993)................................................................7, 10

*Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442 (S.D.N.Y. Aug. 12, 2015) .................14

*Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540 (S.D.N.Y. 2017) ......................20

*Shady Grove Orthopedics, P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ...........................16

*Shepard v. Rhea*, No. 12 CV 7220,
    2014 U.S. Dist. LEXIS 158189 (S.D.N.Y. Nov. 7, 2014) ........................................12

*Spencer v. No. Parking Today, Inc.*, No. 12 Civ 6323,
    2013 U.S. Dist. LEXIS 80587 (S.D.N.Y. June 7, 2013)...........................................12

*Spencer v. No. Parking Today, Inc.*, No. 12 Civ. 6323,
    2013 U.S. Dist. LEXIS 36357 (S.D.N.Y. Mar. 15, 2013) ........................................12

*Stinson v. City of New York*, No. 10 Civ. 4228,
    2014 U.S. Dist. LEXIS 133741 (S.D.N.Y. Sept. 22, 2014).......................................5

*Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092 (9th Cir. 2022)...................................23

*Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18 CV 7342,
    2022 U.S. Dist. LEXIS 34090 (S.D.N.Y. Feb. 25, 2022)........................................20

*Thompson v. Elev8 Ctr. N.Y., LLC*, no. 20 CV 9581,
    2023 U.S. Dist. LEXIS 122504 (S.D.N.Y. July 17, 2023) ......................................22

*TransUnion v. Ramirez*, 141 S. Ct. 2190 (2021) ..................................................19, 21

*Villanueva v. 179 Third Ave. Rest. Inc.*, 500 F. Supp. 3d 219 (S.D.N.Y. Sept. 3, 2020) ......20

*Widjaja v. Kang Yue USA Corp.*, No. 09 Civ. 2089,
    2015 U.S. Dist. LEXIS 166430 (E.D.N.Y. Dec. 11, 2015) .....................................21

*Zimmerman v. Portfolio Recovery Assocs., LLC*, No. 09 Civ. 4602,
    2013 U.S. Dist. LEXIS 43744 (S.D.N.Y. Mar. 27, 2013) .......................................8, 9

**Statutes, Rules, and Regulations**

12 NYCRR § 146-1.3 .......................................................................20

12 NYCRR § 146-2.1 .........................................................................2

12 NYCRR § 146-2.2 .......................................................................20

29 C.F.R. § 778.320..........................................................................15

29 C.F.R. § 785.19 ..................................................................................................15

Fed. R. Civ. P. 12 ....................................................................................................6

Fed. R. Civ. P. 23 ............................................................................................*Passim*

Fed. R. Civ. P. 37 ....................................................................................................4

NY CPLR § 901 ......................................................................................................17

N.Y. Lab. L. § 195 ..........................................................................................*Passim*

U.S. Const., Art. III ................................................................................................19

## I.  PRELIMINARY STATEMENT

Defendants' motion to decertify the Class and dismiss Plaintiffs' NYLL § 195 claims for wage notice and wage statement violations should be denied.[1] The Class should remain certified because the requirements of Rule 23 are satisfied. Numerosity is satisfied because, after the opt-out period, there are 33 remaining in the Class Members in the Class, and maintaining the class would serve judicial economy and the rights of the Class Members. There is also evidence that Defendants improperly contacted Class Members and encouraged them to opt-out, and the Court should not reward such behavior by decertifying the Class on numerosity grounds. With regard to the other Rule 23 factors, Defendants rely solely on irrelevant arguments about individual Class Members' standing. This is contrary to binding Second Circuit precedent, which holds that as long as a plaintiff has Article III standing, no analysis of individual class members' standing is necessary or appropriate in deciding whether a class should be certified.

Finally, Plaintiffs do have individual standing to bring their New York Labor Law § 195 claims because they have suffered cognizable monetary and informational harms as a result of Defendants' violations. For the foregoing reasons, Defendants' motion should be denied.

## II.  STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY

This is a class and collective wage and hour action brought by Plaintiff Nino Martinenko, who worked as a server at Defendants' 212 Steakhouse restaurant from 2016 to 2018 and then in 2021. Martinenko Decl. ¶ 3. Plaintiff alleges that Defendants violated the Fair Labor Standards Act ("FLSA") and/or New York law by (1) paying tipped employees pursuant to a tip credit without providing the notice required under New York law; (2) failing to pay tipped employees an

---

[1] With this brief Plaintiffs submit the December 21, 2023 Declaration of Michael DiGiulio ("DiGiulio Decl.") and exhibits annexed thereto ("DiGiulio Ex. __"); the December 21, 2023 Declaration of Nino Martinenko ("Martinenko Decl.") and the December 9, 2022 Declaration of Dagmara Huk ("Huk Decl."). References to "MOL," "Greenbaum Ex. __," and "Volper Ex. __" refer to Defendants' moving papers.

overtime premium; (3) failing to pay tipped employees a spread of hours premium; and (4) failing to provide tipped employees with the wage notices and wage statements required under New York law. Dkt. No. 1 at ¶¶ 33-52. One individual, Dagmara Huk (together with Martinenko, "Plaintiffs"), a former bartender at 212 Steakhouse, joined this action as an Opt-In Plaintiff. Dkt. No. 32.

On April 27, 2023, the Court certified a Rule 23 class consisting of "all tipped employees – servers, runner, bussers, and bartenders – who worked for Defendants at any time on or after January 20, 2016 at 212 Steakhouse" and appointed Plaintiffs as class representatives. Dkt. No. 92. On April 28, 2023, the Court ordered Defendants to produce, *inter alia*, all Class Members' time records. Dkt. No. 93 at 3. Having previously produced Plaintiffs' time records, in May 2023 Defendants produced time records for an additional 43 Class Members. DiGiulio Decl. ¶ 14.

On June 5, 2023, Defendants provided a class list that contained 42 names.[2] Volper Ex. 1. The class list did not include the Plaintiffs, who are also Class Members. Dkt. No. 92. Defendants subsequently confirmed that they did not include two deceased Class Members – Danny Birladeanu and Lytchez Lazarov – on the class list, although they produced those two individuals' time records. DiGiulio Decl. ¶ 15. Because NYLL claims survive an employee's death, *Low v. Tian Yu Inc.*, No. 12 Civ. 7237, 2015 U.S. Dist. LEXIS 28823, at *5-6 (S.D.N.Y. Mar. 9, 2015), Plaintiffs included Birladeanu and Lazarov in the notice distribution.[3] DiGiulio Decl. ¶ 16. Defendants further confirmed that Michelle Marquez, whose time records they produced but whom they omitted from the class list because they did not have any contact information for her, is a

---

[2] Although Defendants are required by law to maintain records of employees' addresses, 12 NYCRR § 146-2.1, they did not provide addresses for all Class Members. *See* Volper Ex. 1.

[3] Defendants provided Lazarov's last known address following conditional certification of the FLSA collective. Plaintiffs' counsel identified Birladeanu's surviving spouse via public records search and a GoFundMe established after his death and mailed the notice to her last known address as obtained from a public records search. DiGiulio Decl. ¶ 17.

Class Member. DiGiulio Decl. ¶ 18. Between the class list, Plaintiffs, and the three Class Members left off of the class list, there were 47 Class Members. Defendants subsequently stated that three individuals who were included on the class list were either not employed in covered positions (Assel Ivanskaya and Adrian Pizarro) or not employed by them at all (Barbara Laluz).[4] DiGiulio Decl. ¶ 20. However, they produced time records for Pizarro and have never provided any evidence – other than their own contradictory statements – that he was not employed in a position included in the Class. DiGiulio Decl. ¶ 21. Accordingly, prior to the submission of Class Member opt-outs there were 45 Class Members (42 people on class list + 2 Plaintiffs + 3 people omitted from the class list - 2 people removed from the class list). Plaintiffs distributed the class notice, and 12 individuals opted-out of the class, leaving 33 Class members.[5] DiGiulio Decl. ¶¶ 22-23.

The record strongly suggests that Defendants improperly influenced Class Members to opt out of the Class. Every Class Member who is a current employee (eight individuals) opted out of the Class, and they did so using a virtually identical form dated June 30, 2023, even though the opt-outs were mailed on July 1, 10, 11, 12, 17, and 18. DiGiulio Decl. ¶ 2, Ex. 3. Seven current employees sent their opt outs in the same type of non-standard envelope by the same method – certified mail, return receipt requested – and five of those were sent from 212 Steakhouse's zip code of 10022, which was not these individuals' home zip code. DiGiulio Ex. 4. Three of the four former employees who opted out previously provided affidavits in support of Defendants' motion to sanction Plaintiff's counsel, indicating that Defendants are in current contact with them. *See* Dkt. Nos. 84-2; 112-2.

---

[4] Plaintiffs do not object to the exclusion of Ivanskaya and Laluz from the Class. However, given that Defendants twice represented that Pizarro was a Class Member – by producing his time records and including him on the class list – and have offered no support for their belated assertion that he was not a tipped employee, Plaintiffs consider Pizarro to be a Class Member. It also bears noting that while Volper now asserts that he "could not locate and information or records" regarding Laluz, Defendants actually provided her address on the class list. Volper Decl., ¶ Ex. 1.
[5] This count includes Pizarro.

On April 28, 2023, as a Rule 37 sanction, the Court deemed established the following relevant facts: "all front-of-house employees who clocked in and out on the restaurant's point-of-sale system were paid the applicable New York tip credit minimum wage for hours for which they were clocked in"; "Defendants paid …class members their regular rate for overtime hours (rather than time-and-a-half)"; and "Defendants did not pay… class members a spread-of-hours premium." Dkt. No 93 at 3. The time records Defendants have produced in this action show the clock in and out dates and times of all the Class Members. DiGiulio Decl. ¶ 24. These time records establish the number of hours that each Class Member worked, including regular hours, overtime hours, and spread of hours shifts. DiGiulio Decl. ¶ 25. Defendants did not require employees to clock out for breaks, and Plaintiffs testified that they did not get formal meal breaks but instead ate their meals in a few minutes, often in between performing work duties. Greenbaum Ex. 3, 61:8-62:10, 85:9-12; Greenbaum Ex. 5, 21:14-22; DiGiulio Ex. 1, 74:9-13. Defendants' only witness – Defendant Volper – testified at his deposition that he had no knowledge of employee breaks prior to the time around his deposition, which was held in October 2022. After that point, he was only aware of breaks that employees took when they worked double shifts. DiGiulio Ex. 1, 73:14-74:8. At most Class Members worked three double shifts in all of 2022. Dkt. No. 116-5 at 15 (Haley Melendez, August 26, August 31, and September 9, 2022).

Defendants have not produced a wage notice for any Class Member, and they admitted in their discovery responses that they have no wage notices that they contend were provided to any Class Member. DiGiulio Decl. ¶ 11; Ex. 1, 115:20-116:18, 118:18-11; Ex. 2, RFP 6, 7. Plaintiffs testified that they did not receive any written wage notices from Defendants, let alone a notice that contained a notification of the tip credit. Martinenko Decl. ¶ 8; Huk Decl. ¶ 4. Defendants did not

furnish any of the Class Members a single wage statement until 2019 or 2020.[6] DiGiulio ¶¶ 8, 10; Ex. 5. Once Defendants began providing wage statements, they did not identify the amount of the tip credit that Defendants were claiming, the number of overtime hours worked, the legally required overtime rate, or the amount of the tip credit that Defendants were claiming. DiGiulio Ex. 5. Instead of identifying overtime hours and the overtime rate, the wage statements listed the same rate – the tip credit minimum wage – as the pay rate for all hours worked whether regular or overtime and calculated gross wages using that illegally low rate. DiGiulio Ex. 5. Once Defendants began issuing wage statements, Defendants paid Class Members by providing all wage statements to an employee, including at times Plaintiffs, and instructing them to issue handwritten checks for the net amounts in the already completed wage statements. Martinenko Decl. ¶¶ 6-7.

On November 16, 2023, Plaintiffs moved for summary judgment as to liability and damages on behalf of all Class Members. Dkt. Nos. 113-118. As detailed in Plaintiffs' moving papers, there are no disputes of material fact that Defendants violated the FLSA and NYLL, and an exact calculation of damages can be determined based on Defendants' own payroll records. Dkt. Nos. 113-118. In short, this case is ideal for class adjudication.

## III. LEGAL STANDARD

### A. Rule 23 Decertification

Under Fed. R. Civ. P. 23, orders granting or denying class certification "may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(c); *see also Boucher v. Syracuse Univ.*,

---

[6] It is unclear exactly when Defendants began issuing wage statements. Defendants did not start providing Class Members with paystubs until they began using an accounting company called Crow, which occurred before the Covid-19 pandemic in March 2020 but no earlier than 2019. DiGiulio Ex. 1, 99:12-101:5; Greenberg Ex. 3, 52:15-24; Martinenko ¶ 4. In discovery, Plaintiffs sought the production of all wage statements that Defendants provided to Class Members since January 20, 2016. DiGiulio Ex. 2, RFP 7, 15. Defendants produced wages statements/paystubs for Plaintiffs only. DiGiulio Decl. ¶ 10. The earliest paystub that Defendants produced was an August 24, 2020 paystub for Huk. Defendants did not provide paystubs to Martinenko until her second period of employment in 2021. DiGiulio ¶¶ 8, 10; Ex. 5; Martinenko Decl. ¶ 7.

164 F.3d 113, 118 (2d Cir. 1999). "A party seeking decertification bears the burden of demonstrating 'some significant intervening event, or…compelling reasons to reexamine the question,' such as new evidence or a significant change in the underlying facts." *Stinson v. City of New York*, No. 10 Civ. 4228, 2014 U.S. Dist. LEXIS 133741, at *2-3 (S.D.N.Y. Sept. 22, 2014). Nevertheless, Plaintiffs "retain[] the burden to demonstrate that [the Rule 23] requirements [are] satisfied." *Mazzei v. Money Store*, 829 F.3d 260, 270 (2d Cir. 2016). The standing of individual class members is not a consideration when determining whether the Rule 23 requirements are satisfied. *Hyland v. Navient Corp.*, 48 F. 4th 110, 118 (2d Cir. 2022); *Lowell v. Lyft, Inc.*, No. 17 CV 6251, 2023 U.S. Dist. LEXIS 50722, at *21 (S.D.N.Y. Mar. 24, 2023).

### B. Rule 12(b)(1)

While Defendants move to dismiss Plaintiff's wage notice and wage statement claims under NYLL § 195 for lack of standing under Rule 12(c), such motions are properly brought under Rule 12(b)(1) for lack of subject matter jurisdiction. *See Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 416-417 (2d Cir. 2015) (addressing motion to dismiss for lack of standing under FRCP 12(b)(1)). The plaintiff bears the burden of "alleg[ing] facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). "In deciding a Rule 12(b)(1) motion, the court may also rely on evidence outside the complaint." *Cortlandt St. Recovery Corp.*, 790 F.3d at 417.

## IV. ARGUMENT

### A. The Rule 23 Requirements Are Satisfied

The Court previously and correctly found that the requirements of Rule 23 were met and certified the Class. Dkt. No. 92. To this day, the elements of Rule 23 – numerosity, commonality, typicality, adequacy of representation, predominance, and superiority – remain satisfied, and class certification is appropriate. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merk-*

*Medco Managed Care, L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007). The only Rule 23 factors that Defendants challenge on this motion are numerosity, commonality, predominance, and superiority.[7] There are in fact enough Class Members to satisfy numerosity. Defendants' arguments concerning the other factors primarily relate to the N.Y. Lab. L. § 195 claims only and are standing arguments, not class certification arguments. In fact, as detailed below, because the Plaintiffs have standing for all of their claims, no analysis of Class Members' individual standing is needed or relevant to class certification.

### i.    Numerosity is satisfied

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. Pr. 23(a)(1). While numerosity is presumed satisfied if the class has at least 40 members, *see Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993), courts in this Circuit routinely find numerosity when there are 21 to 39 class members. *See e.g.*, *Provencher v. Bimbo Bakeries U.S.*, No. 22 CV 198, 2023 U.S. Dist. LEXIS 167382, at *6-7 (D. Vt. Aug. 7, 2023) (28 class members); *Neff v. Flowers Foods, Inc.,* No. 15 CV 254, 2019 U.S. Dist. LEXIS 238105, at *33-35 (D. Vt. May 16, 2019) (33 class members); *Omar v. 1 Front St. Grimaldi, Inc.*, No. 16 CV 5824, 2019 U.S. Dist. LEXIS 4242, at *19-26 (E.D.N.Y. Jan. 8, 2019) (32 class members); *Balverde v. Lunella Ristorante, Inc.*, No. 15 Civ. 5518, 2017 U.S. Dist. LEXIS 59778, at *13-15 (S.D.N.Y. Apr. 19, 2017) (38 class members); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 180-81 (W.D.N.Y. 2005) (28 class members). When there are less than 40 class members, courts consider "'judicial economy arising from the avoidance of a multiplicity of actions, . . . financial resources of class members, [and] the ability of claimants to institute individual suits.'" *Balverde*, 2017 U.S. Dist. LEXIS 59778, at *13.

---

[7] As Defendants do not contest typicality and adequacy, Plaintiffs do not address these elements below.

Numerosity is satisfied. Excluding the opt outs from the Class, there are still 33 Class Members. DiGiulio Decl. ¶ 21. As this Court previously stated it would conclude that numerosity was satisfied in this case if there were 38 Class Members, Dkt. No. 87 at 12, the minor reduction to 33 Class Members should likewise satisfy numerosity.

Class Members whose notices were returned as undeliverable are still Class Members. Rule 23 does not require that actual notice be provided to every class member.  Rather, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *see also Moukengeshcaie v. Eltman*, No. 14 CV 7539, 2019 U.S. Dist. LEXIS 182337, at *25 (E.D.N.Y. Oct. 15, 2019) ("Notice need not be perfect, but must be the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential Class Members."). Here, the notice requirement of Rule 23 was satisfied by mailing the notice to Class Members' last known addresses as provided by Defendants or located by Class Counsel. DiGiulio Decl. ¶ 20. Accordingly, the fact that some Class Members did not receive actual notice of class certification cannot justify excluding them from the class.[8]

The Ninth Circuit addressed this precise issue in *Rannis v. Recchia*, 380 F. App'x 646 (2010).  In that case, 20 class members remained after the opt out period, including seven whose notices were returned as undeliverable.  *Id*. at 650-52.  The Court held that the class members whose notices were undeliverable were properly included in the class because they received the best notice practicable.  *Id*. at 650.  Notably, Defendants have not identified a single case holding

---

[8] In the event that the Court determines that another form of notice would be the best notice practicable, the solution is to provide that notice, not to decertify the class. *See Hall v. Best Buy Co.*, 274 F.R.D. 154, 168 (E.D.Pa. 2011) (ordering second notice by publication).

that class members who do not receive actual notice of class certification are excluded from the class for numerosity purposes. Inventing such a rule would encourage unscrupulous defendants to omit or hide class members' contact information in order to ultimately decertify a class.

The case Defendants cite in their effort to exclude these class members are inapposite. *Zimmerman v. Portfolio Recovery Assocs., LLC*, No. 09 Civ. 4602, 2013 U.S. Dist. LEXIS 43744 (S.D.N.Y. Mar. 27, 2013), merely notes that there was no evidence that any class notices were returned as undeliverable but does not hold that class members whose notices are undeliverable are not class members. *Id*. at *12-13 n.10. Defendants' reliance on *Benavides v. Serenity Spa NY, Inc.*, No. 15-CV-9189, 2018 U.S. Dist. LEXIS 88331, at *5-8 (S.D.N.Y. May 25, 2018) is also misplaced. In *Benavides*, both parties requested that the Class be decertified because they wished to resolve the case on an individual basis. *Id.* at *1-5. While the Court, looking for a reason to the grant the joint motion and allow the parties to settle between themselves, had discretion to decertify the Class, *Benavides* did not hold that Class Members who do not receive actual notice cannot be counted for numerosity purposes. *Id.* at 5-7. Importantly, the *Benavides* Court explained that the case was in its initial stages and that because class notice had not been sent, decertification would not prejudice class members. *Id.* at 6-7. That is emphatically not the case here, where notice has been sent, the notice period is closed, and Plaintiffs have moved for summary judgment for the Class. Class Members who believe that they are included in the Class would be prejudiced by decertification at this late stage of the litigation.

Moreover, as in *Rannis*, here there is good reason to believe that Defendants improperly influenced the opt out process. As explained previously, every Class Member who is a current employee opted out of the Class, using a virtually identical form dated the same day (even though they were mailed on six different dates), seven current employees used the same non-standard

envelope via certified mail, return receipt requested to return the opt-out forms, and five of those were sent from 212 Steakhouse's zip code, in which none of them reside. *Supra* at 2-3. It is highly unlikely that all of these people would independently type the same form with the same date and idiosyncrasies (such as overly indenting the greeting, a grammatically improper comma after the word "Please," capitalizing "Class," and writing 212Steakhouse as one word) and decide to use the same, uncommon method of mailing. DiGiulio Exs. 3-4. Defendants are in current contact with three of the four former employees who opted out, as they had previously submitted affidavits in support of Defendants' motion to sanction Plaintiff's counsel. *See* Dkt. No. 84-2. This is all significant evidence showing that Defendants have engaged in improper communications or other tactics, and they should not be rewarded for this by decertifying the Class. This weighs strongly against decertification. *See Rannis*, 380 F. App'x at 651-52.

The two deceased Class Members are also properly included in the class because New York Labor Law claims survive death and can be pursued by the next of kin. *See*, *e.g.*, *Low*, 2015 U.S. Dist. LEXIS 28823, at *5-6. In fact, deceased individuals are regularly included in Rule 23 classes. *E.g.*, *In re AXA Equitable Life Ins. Co. COI Litig.*, No. 16-cv-740, 2023 U.S. Dist. LEXIS 110070, at *7-8 (S.D.N.Y. June 22, 2023); *Leonard v. John Hancock Life Ins. Co. of N.Y.*, No. 18-cv-4994, 2022 U.S. Dist. LEXIS 31689, at *8-9 (S.D.N.Y. Jan. 10, 2022); *Elliot v. Leatherstocking Corp.*, No. 10-CV-0934, 2012 U.S. Dist. LEXIS 171443, at *4-6 (N.D.N.Y. Dec. 4, 2012).

Even Defendants' (incorrect) count of 24 Class Members, which excludes deceased individuals, individuals whose notices were returned as undelivered, and the three Class Members whom Defendants now claim they mistakenly identified, satisfies numerosity. *See* MOL at 5. This is so because, "numerosity… must take into account the context of the case" and the relevant factors support a finding that joining all members would be impracticable. *Robidoux*, 987 F.2d at

936. Defendants have produced no evidence to contradict the Court's previous findings that Class Members are hourly employees who likely lack financial resources and are unlikely to commence individual suits and may be fearful of retaliation for bringing their own individual suit. *See Omar*, 2019 U.S. Dist. LEXIS 4242, at *25. Their assertion that Martinenko made $51.92 per hour in 2021, MOL at 8, n.8, is irrelevant, inaccurate, and exceedingly misleading. Per the W-2 issued by Defendants, Martinenko made $44,504 in 2021. DiGiulio Decl. Ex. 6. According to the U.S. Census Bureau, this put Plaintiff's 2021 income below both the median household income ($76,607) and per capita income ($48,066) in New York City.[9] This conforms with the Court's prior holding that hourly service workers lack financial resources to bring their own actions, which weighs favor of finding numerosity satisfied. Dkt. No. 87 at 12.

Judicial economy is also served by resolving all of the Class's claims in one action, as "the purpose of the numerosity requirement is to ensure that the benefit of avoiding the burden on the court and the parties of hearing the cases individually justifies the time and difficulty inherent in the class action process." *Neff v*, 2019 U.S. Dist. LEXIS 238105, at *34. Here, adjudicating 24 individual cases would be a significant burden compared to resolving the case on a class-wide basis. *Id.* ("A class of two or three would save no time or effort. Thirty-three cases would represent a considerable burden to the court and to the parties to prepare and try as individual lawsuits."). Thus, even by Defendants' count numerosity is satisfied. *E.g.*, *Provencher*, 2023 U.S. Dist. LEXIS 167382, at *6-7 (28 class members); *Frank*, 228 F.R.D. at 180-81 (28 class members); *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648 (4th Cir. 1967) (18 class members); *Grant v. Sullivan*, 131 F.R.D. 436, 446 (M.D. Pa. 1990) (14 class members);

---

[9] *See* https://www.census.gov/quickfacts/fact/table/newyorkcitynewyork,US/INC910222.

*Philadelphia Elec. Co. v. Anaconda Am. Brass Co.*, 43 F.R.D. 452 (E.D. Pa. 1968) (25 class members).

### ii.     Commonality is satisfied

Rule 23(a)(2) commonality is satisfied if a common "question [of law or fact] is capable of classwide resolution – which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Johnson v. Nextel Communs. Inc.*, 780 F.3d 128, 137 (2d Cir. 2015). "[A] single common legal or factual question will suffice." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162 (S.D.N.Y. 2014). The only claims for which Defendants argue commonality is not satisfied are the N.Y. Lab. L. § 195 claims.[10] Thus, it is undisputed that commonality is satisfied for the minimum wage, overtime, and spread of hours claims.

"In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *Spencer v. No Parking Today, Inc.*, No. 12 Civ. 6323, 2013 U.S. Dist. LEXIS 36357, at *62 (S.D.N.Y. Mar. 15, 2013), *adopted by* 2013 U.S. Dist. LEXIS 80587, (S.D.N.Y. June 7, 2013). "[F]actual differences among the claims of the class members do not preclude a finding of commonality." *Shepard v. Rhea*, No. 12 CV 7220, 2014 U.S. Dist. LEXIS 158189, at *13 (S.D.N.Y. Nov. 7, 2014); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 371 (S.D.N.Y. 2007).

It is clear that, for purpose of commonality, the question of whether Defendants provided accurate wage notices and statements to the Class generates a common answer (which is that they did not). DiGiulio Decl. ¶ 11; Ex. 2 RFP 6, 7; Ex. 5; Martinenko ¶¶ 4, 8; Huk ¶ 4. This is sufficient. *See Pino v. Harris Water Main & Sewer Contrs. Inc.*, No. 17-cv-5910, 2021 U.S. Dist. LEXIS

---

[10] In a footnote, Defendants incorrectly argue that Plaintiffs do not have standing to assert minimum wage claims. MOL at 8 n.8. However, this is manifestly not a commonality argument, and Defendants do not identify any way in which commonality is not satisfied for the minimum wage claims when all Class Members were paid the same tip credit hourly rate and did not receive notice of the tip credit.

157072, at *14-18 (E.D.N.Y. Aug. 19, 2021). Contrary to Defendants' position, NYLL § 195 claims are regularly adjudicated on a class-wide basis in Federal Court. *Pino*, 2021 U.S. Dist. LEXIS 157072, at *14; *Gomex v. Lace Entm't, Inc.*, No. 15 Civ. 3326, 2017 U.S. Dist. LEXIS 5770, at *7 (S.D.N.Y. Jan. 6, 2017).

Defendants' sole commonality arguments are that Plaintiffs do not have standing to pursue NYLL § 195 claims and standing must be evaluated individually for each Class Member. MOL at 7-8. Both of these arguments are wrong. As discussed below, the Plaintiffs do have standing for these claims. In a class action, Article III standing "is satisfied so long as at least one named plaintiff can demonstrate the requisite injury." *Hyland*, 48 F.4th at 117. When a named plaintiff has standing, "[t]hat is enough to confer standing on the entire class." *Id.* at 118. As Judge Furman recently explained,

> Most if not all of [defendant's] arguments in favor of decertification proceed from a single premise: that, following *TransUnion v. Ramirez*, 141 S. Ct. 2190 (2021), the class cannot remain certified because at least some of the entitlement holders lack Article III standing. That premise in wrong. . . . *TransUnion* did not alter the well-established law in this Circuit – reaffirmed by the Court of Appeals only a few months ago – that standing in a class action is satisfied so long as at least one named plaintiff can demonstrate the requisite injury, and that each member of a class need not submit evidence of personal standing to certify that a class meets Rule 23's requirements.

*In re AXA Equitable Life Ins. Co. COI Litig.*, 2023 U.S. Dist. LEXIS 8229, at *4-5 (cleaned up); *see also Nnebe v. Daus*, No. 06 CV 4991, 2022 U.S. Dist. LEXIS 73974, at *5 (S.D.N.Y. Apr. 22, 2022) (denying request to redefine the class based on alleged standing issue "because the Article III standing inquiry at the class certification stage focuses on the named plaintiffs, not the absent class members") (Sullivan, J.). As standing has nothing to do with the commonality analysis or any part of the Rule 23 analysis, commonality remains satisfied with respect to the NYLL § 195

13

claims for the reasons set forth in Plaintiffs' class certification motion papers and the class certification Order.

### iii.    Predominance is satisfied

Predominance is satisfied under Rule 23(b)(3) "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re US Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (internal quotation marks omitted). Defendants challenge predominance only with respect to the NYLL § 195 claims and, perhaps, the overtime claims. They do not dispute that predominance is satisfied as to the minimum wage and spread of hours claims.

As with commonality, Defendants wrongly argue that predominance is not satisfied for the NYLL § 195 claims because an individualized analysis of Class Members' standing will be necessary. For the same reasons discussed *supra* at 13, individual Class Members' standing is irrelevant in deciding a Rule 23 motion.[11] Notably, Defendants do not identify a single case in which a court in the Second Circuit denied class certification based on the alleged absence of individual class members' standing.[12] Presumably this is because such a decision would be contrary to Second Circuit precedent.

Defendants appear to argue that predominance is not satisfied for the overtime claim[13] because their own time records do not accurately reflect Class Members' hours worked, and therefore there are individualized damages questions. However, as set forth in Plaintiffs' summary

---

[11] In any event, the NYLL § 195 caused all Class Members suffered the same monetary and/or informational injuries as did the Plaintiffs. Those injuries are discussed *infra* at 17-25.
[12] *Francisco v. NY Tex. Care Inc.*, No. 19 CV 1649, 2022 U.S. Dist. LEXIS 55633, at *17-18 (E.D.N.Y. Mar. 28, 2022), cited by Defendants, did not certify the class because found that the named plaintiff did not have standing.
[13] As set forth in Plaintiffs' summary judgment motion, 18 Class Members have overtime damages. Dkt. No. 116-1.

judgment motion, to the extent Defendants contest the accuracy of their own records they will be unable to carry their burden of proving that Class Members were paid for noncompensable time. Dkt No. 114 at 15-16 (internal pagination) (citing, *inter alia*, *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946); *Pest v. Bridal Works of N.Y., Inc.*, 268 F. Supp. 3d 413 (E.D.N.Y. 2017); *Hyunhuy Nam v. Permanent Mission of the Korea to the UN*, No. 21 CV 6165, 2023 U.S. Dist. LEXIS 28600 (S.D.N.Y. Feb. 21, 2023)). Far from being an individualized issue, Class Members' hours worked can be determined on summary judgment. To be sure, there is no evidence that Class Members were clocked in for any *bona fide* breaks that would potentially be noncompensable. *See supra* at 4-5. *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 472 (S.D.N.Y. Aug. 12, 2015) ("To qualify as a bona fide meal period, '[t]he employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period.'" (citing 29 C.F.R. § 785.19(a)).

Attempting to manufacture a dispute, Volper has now submitted a declaration that baldly asserts that Plaintiffs, whose employment ended in December 2021, took 30-minute meal breaks. This contradicts his deposition testimony that he had no knowledge of employee breaks before around October 2022. DiGiulio Ex. 1, 73:14-74:13 (when discussing employee breaks stating that "well I cannot really say that because I was not there…In the past, I'm not really sure."). As such, the Court should entirely disregard this self-serving statement. *Petrisch v. HSBC Bank USA, Inc.*, No. 07 CV 3303, 2013 U.S. Dist. LEXIS 45346, at *26-27 (E.D.N.Y. Mar. 28, 2013). Even if there were a legitimate dispute about break time, by not requiring Class Members to clock out for breaks and paying Class Members for all clocked in hours, Defendants treated breaks as compensable and made them compensable hours worked as a matter of law. 29 C.F.R. 778.320(b) (noncompensable time will be counted as hours worked if an "agreement or established practice indicates that the

parties have treated the time as hours worked"); *Jones v. C&D Techs., Inc.*, 8 F. Supp. 3d 1054 (S.D. Ind. 2014) (finding that bona fide meal breaks were compensable hours worked); *see also Liu v. Matsuya Quality Japanese Inc.*, No. 16 CV 3624, 2018 U.S. Dist. LEXIS 109328, at *17-18 (E.D.N.Y. June 29, 2018).

Finally, even if there were some individualized damages issues with respect to overtime, those issues would not predominate over the numerous common issues in this case. "Indeed, the Second Circuit has routinely found that individualized calculations of damages do not defeat the predominance requirement." *Enea v. Bloomberg, L.P.*, No. 12 Civ. 4656, 2014 U.S. Dist. LEXIS 35613, at *21 (S.D.N.Y. Mar. 17, 2014). In calculating class damages, all that is required is that Plaintiffs' "proposed measure of damages [be] directly linked with their theory of liability." *Id.* Here, as is common in most wage and hour class actions, the measure of damages is based on Defendants' time records and, if needed, representative testimony concerning breaks. *Id.* (noting that this exact type of "proof is directly linked to Plaintiffs' theory of liability – that they were supposed to be paid overtime for working more than 40 hours a week and were not."). As such, even if there are ultimately some individualized damages questions, they will not predominate over the common questions in this action.

### iv.    Class Action is the Superior Method of Adjudication

When plaintiffs are "aggrieved by a single policy of the defendant," superiority is satisfied because many nearly identical legal and factual issues can be adjudicated in unison. *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 146 (2d Cir. 2001). Defendants do not dispute that superiority is satisfied for the overtime and spread of hours claims. Their superiority arguments relate solely to the minimum wage and NYLL § 195 claims. Yet again, Defendants argue that individualized standing issues preclude a finding of superiority for the minimum wage

16

and NYLL § 195 claims. And yet again, for the reasons set forth *supra* at 13, this argument has nothing to do with the propriety of class certification and has no impact on the superiority analysis.

Defendants' contention superiority is not satisfied for the NYLL § 195 claims because those claims should be brought on an individualized basis in state court is nonsense. MOL at 12. Defendants' argument that NY CPLR § 901(b) requires such an outcome is directly contrary to the U.S. Supreme Court decision in *Shady Grove Orthopedics, P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), which held that CPLR § 901(b) does not apply in federal court. *Id*. at 415-416.

Finally, Defendants' due process concerns over NYLL § 195's statutory penalties are completely overblown and are not supported by the case they rely upon. MOL at 12. In *Parker v. Time Warner Entm't Co., L.P.*, the Second Circuit *overturned* a denial of certification, finding that the district court's holding that certifying a class could lead to financial ruin for the defendant was not substantiated by the record. 331 F.3d 13, 22 (2d Cir. 2003). Regardless, in *Parker*, the potential class was 22 million individuals (subscribers to Defendants' cable network), which may have conceivably resulted in an unfathomably large judgment against the defendant. *Id.* This case is easily distinguishable. Here, there are just 33 Class Members, who seek total NYLL § 195 damages of $255,900, which averages to just of $7,754.54 per Class Member. *See* Dkt. Nos. 114 at 18; 116 at 1. This is not an unreasonable sum of money. Further, Defendants do not cite to, and Plaintiffs are unaware of, a single case from any federal court holding that the modest statutory penalties required under NYLL § 195 violates due process. *See* MOL at 12. There is simply no due process concern here, and it is clear that a class action is superior to litigating individual claims in this case. For all of these reasons, the class should not be decertified.

### B.  Plaintiffs Have Standing to Assert NYLL § 195 Claims

Defendants challenge standing only with respect to the N.Y. Lab. L. § 195 claims for failure to provide the required wage notices and wage statements.  Plaintiffs – and therefore the Class – have standing to pursue these claims.

### i.    The NYLL § 195 Claims

Under N.Y. Lab. Law § 195(1) and (3), employers are required to furnish their employees with wage notices and wage statements containing information specified by statute.  Defendants were required to give Plaintiffs and the Class Members "at the time of hiring" a notice stating:

> the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; [and] the telephone number of the employer[.]

N.Y. Lab. L. § 195(1)(a). As detailed above, Defendants did not provide Plaintiffs or Class Members with *any* written wage notices, in violation of NYLL § 195(1). *Supra* at 4-5.

Defendants were also required to provide Plaintiffs and the Class Members with written statements accompanying every payment of wages listing:

> the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

N.Y. Lab. L. § 195(3).

It is undisputed that Defendants did not provide any Class Members with *any* wage statements until 2019 or later. DiGiulio Ex. 1, 84:23-85:23, 101:3-5; Martinenko Decl. ¶ 4. Once

Defendants began issuing wage statements to Plaintiffs and Class Members, they still did not comply with N.Y. Lab. L. § 195(3) because the statements did not state the amount of the tip credit claimed, identify overtime hours separately from non-overtime hours, or state the correct overtime rate. N.Y. Lab. L. § 195(3). DiGiulio Ex. 1 at 103:16-20; Ex. 5.

        **ii.**        **Plaintiffs Have Standing to Assert NYLL § 195 Claims**

The elements of Article III standing are "(1) an injury in fact, (2) a causal connection between that injury and the conduct at issue, and (3) a likelihood that the injury will be redressed by a favorable decision." *Maddox v. Bank of N.Y. Mellon Trust Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021) (internal quotation marks omitted). An injury in fact exists where there is "the invasion of a [1] legally protected interest that is [2] concrete and [3] particularized and [4] actual or imminent, not conjectural or hypothetical." *Id.* at *9 (insertion in original; internal quotation marks omitted). Defendants argue solely that Plaintiffs lack standing because they do not have an injury-in-fact. *See* MOL at 12-17. As noted *supra*, as long as at least one Plaintiff has standing, they can pursue NYLL § 195 claims on a class basis. *Hyland*, 48 F.4th at 118. For that reason, Plaintiffs address herein their own standing, and not the standing of individual Class Members.

Plaintiffs have standing to pursue their N.Y. Lab. L. § 195 claims. Several courts in this Circuit have held that allegations of "downstream injuries" resulting from N.Y. Lab. L. § 195(1), (3) violations are not necessary to establish standing. *E.g.*, *Cuchimaque v. A. Ochoa Concrete Corp.*, No. 22 CV 6136, 2023 U.S. Dist. LEXIS 124589, at *14, 16-17 (E.D.N.Y. July 18, 2023); *Bueno v. Buzinover*, No. 22 Civ. 2216, 2023 U.S. Dist. LEXIS 38154, at *5 (S.D.N.Y. Mar. 7, 2023). Instead, the failure to provide the statutorily required notices and wage statements is "a concrete and particularized injury sufficient to confer standing[.]" *Bueno*, 2023 U.S. Dist. LEXIS 38154, at *5. As such, the Court can find standing on this basis alone.

Nevertheless, Defendants' violations of N.Y. Lab. L. § 195 did cause Plaintiffs two types of "downstream injuries." First, Defendants' violations caused Plaintiffs to be underpaid. Second Defendants' violations deprived Plaintiffs of information to which they were statutorily entitled, and which hurt their ability to assess whether they were being properly paid. *See TransUnion*, 141 S. Ct. at 2204; *Lipstein v. 20X Hosp. LLC*, No. 22-cv-04812, 2023 U.S. Dist. LEXIS 167615, at *25 (S.D.N.Y. Sept. 19, 2023) (*J.* Rochon); *Chapman v. City Winery NY*, No. 23 Civ. 2778, 2023 U.S. Dist. LEXIS 213391, at *5-8 (S.D.N.Y. Nov. 30, 2023).

### a. Plaintiffs suffered monetary harm

It is undisputed that Defendants violated NYLL § 195(1) by failing to provide any wage notices to any Class Member. DiGiulio Ex. 1, 115:20-116:18, 118:18-11; Ex. 2, RFP 6, 7. Under New York law, an employer may not use a tip credit unless it has provided written notice of the tip credit to an employee. 12 NYCRR §§ 146-1.3, 146-2.2; *e.g., Chichinadze v. BG Bar, Inc.*, No. 18 Civ. 8069, 2021 U.S. Dist. LEXIS 23594, at *26 (S.D.N.Y. Feb. 8, 2021). One of the requirements of NYLL § 195(1) is that the wage notice state the amount of any tip credit the employer intends to take against the minimum wage. Because Defendants did not provide *any* written wage notices, they also did not provide written notice to Class Members of the tip credit that they in fact took. DiGiulio Ex. 5. This directly caused all Class Members, including Plaintiffs, to be underpaid.

"An employer may take a credit towards the basic minimum hourly rate if a service employee or food service worker receives enough tips *and if the employee has been notified of the tip credit as required in section 146-2.2*" of the Hospitality Industry Wage Order (the "Hospitality Wage Order"). 12 NYCRR § 146-1.3 (emphasis added). Section 146-2.2 requires that an employer, "prior to the start of employment" and "prior to any change in the employee's hourly rates of pay," "give each employee written notice of the employee's regular hourly pay rate, overtime hourly pay

rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate." *Id.* § 146-2.2(a), (b). The employer bears the burden of proving compliance with this notice requirement. *Id*. § 146-2.2(d). An employer who fails to provide the required written notice is liable for the difference between the full minimum wage rate and what the employee was actually paid." *Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 554 (S.D.N.Y. 2017) (citations omitted). If an employer fails to provide the written notice as described in § 146-2.2, its use of the tip credit is unlawful, and it owes the employees it paid pursuant to the tip credit the amount of the tip credit taken. *E.g.*, *Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18 CV 7343, 2022 U.S. Dist. LEXIS 34090, at *23-27 (S.D.N.Y. Feb. 25, 2022); *Lopez v. MNAF Pizzeria, Inc.*, No. 18 CV 6033, 2021 U.S. Dist. LEXIS 57260, at *21-24 (S.D.N.Y. Mar. 25, 2021); *Villanueva v. 179 Third Ave. Rest. Inc.*, 500 F. Supp. 3d 219, 234-35 (S.D.N.Y. Sept. 3, 2020) (Lehrburger, J.)

Had Defendants provided Plaintiffs with a valid NYLL § 195(1) notice, it would have included notice of the tip credit. Because Defendants did not provide wage notices, their payment to Plaintiffs of the tip credit minimum wage rate was an underpayment. That is, because Defendants failed to provide written notice of the tip credit (*i.e.*, failed to comply with NYLL § 195(1)), Plaintiffs were paid less than what they were legally entitled to receive. This is a traditional "monetary harm" that gives rise to standing. *See e.g., TransUnion LLC*, 141 S. Ct. at 2204; *see also Mateer v. Peloton Interactive, Inc.*, No. 22 Civ. 740, 2022 U.S. Dist. LEXIS 125017, at *4-5 (S.D.N.Y. July 14, 2022) (finding standing where plaintiff alleged that defendant's NYLL § 195 violations "'resulted in the underpayment of wages'").

Defendants' contention that Martinenko was not underpaid because her hourly wage plus tips exceeded the minimum fundamentally misunderstands the law. *See* MOL at 16. In the absence of written notice of the tip credit, Defendants were obligated to pay Plaintiffs – and all Class

21

Members – the full New York minimum wage. Because Defendants did not provide written notice of the tip credit and paid Plaintiffs less than the full New York minimum wage, they underpaid Plaintiffs. *See Hicks v. T.L. Cannon Corp.*, 35 F. Supp. 3d 329, 349 (W.D.N.Y. 2014) (rejecting argument that there are no minimum wage damages where an employer unlawfully uses a tip credit but the employee's tips exceed the minimum wage); *Widjaja v. Kang Yue USA Corp.*, No. 09 Civ. 2089, 2015 U.S. Dist. LEXIS 166430, at *5 (E.D.N.Y. Dec. 11, 2015) (same); *Lanzetta v. Florio's Enters.*, 763 F. Supp. 2d 615, 623 (S.D.N.Y. Jan. 25, 2011) (same);

Once Defendants began to issue Plaintiffs wage statements, the failure of the wage statements to comply with the requirements of NYLL § 195(3) also caused Plaintiffs to be underpaid. The wage statements that Defendants provided to Plaintiffs in 2020 and 2021 did not separately identify the specific overtime hours (*i.e.*, hours over 40 in a week) that Plaintiffs worked or the overtime rate (time and a half) that applied to those hours, in violation of N.Y. Lab. L. § 195(3). DiGiulio Ex. 1, 106:16-20; Ex. 5. Instead, they reflected payment for all hours at the tip credit minimum wage. DiGiulio Ex. 5. Employees handwrote paychecks to employees, including Plaintiffs, *based on* the net amounts listed on each wage statement. Martinenko Decl. ¶¶ 6-7. That is, as a factual matter here, Plaintiffs received less pay than they were legally entitled to receive because the wage statements did not accurately reflect their overtime hours worked and corresponding overtime rate of pay. DiGiulio Ex. 5; Martinenko Decl. ¶¶ 6-7. Thus, because the wage statements did not comply with NYLL § 195(3), Class Members were underpaid. This is a monetary harm caused by Defendants NYLL § 195(3) violation that gives rise to Article III standing. *Mateer*, 2022 U.S. Dist. LEXIS 125017, at *4-5.

### b. Plaintiffs suffered informational injuries

Defendants' failure to provide Plaintiffs with the legally required information in wage

notices and in wage statements deprived them of information to which they were legally entitled, which impaired their ability to determine whether and how their employer was underpaying them. Courts routinely find that this type of informational injury, arising from NYLL § 195 violations, is sufficient to confer standing. *See Lipstein*, 2023 U.S. Dist. LEXIS 167615, at *26; *Chapman*, 2023 U.S. Dist. LEXIS 213391, at *5-6; *Thompson v. Elev8 Ctr. N.Y., LLC*, No. 20-CV-9581, 2023 U.S. Dist. LEXIS 122504, at *21-22 (S.D.N.Y. July 17, 2023); *Bueno*, 2023 U.S. Dist. LEXIS 38154, at *5 (finding an injury-in-fact on NYLL § 195 claims because "denying an employee such notices… can impinge on an employee's interests not only in being paid what is owed, but also in being able to advocate for the receipt of proper pay").

Here, prior to 2021, Defendants did not provide Martinenko[14] with any wage statements. *See* DiGiulio Ex. 1, 84:15-85:2, 99:2-17, 101:3-5. By failing to provide wage statements, Defendants prevented Martinenko from knowing the number of hours for which she was being paid and her rate of pay. To be sure, Martinenko testified that during her first period of employment she did not know the basis for her pay – the hours worked, the rate or the pay, or the amount of tips she received in her paycheck – because Defendants did not give her wage statements or a wage notice. Greenbaum Ex. 3, 34:13-35:11, 36:12-14.[15] This lack of information prevented Martinenko from determining whether and to what extent she was being underpaid. *See* Greenbaum Ex. 3, 52:15-21, 53:16-23. The FLSA poster that Defendants did not produce in discovery but now claim

---

[14] Plaintiff Huk began working in 2020 after Defendants began issuing wage statements.

[15] Contrary to Defendants' assertions, Martinenko testified that she was not sure what her rate of pay was in 2017, and she did not access her time records. *See* Greenbaum Ex. 3, 34:13-35:11, 53:16-54:6. Moreover, Plaintiff only received access to Defendants' time keeping system in October 2021 and at Defendant Volper's insistence. Martinenko Decl. ¶ 10. She accessed the timekeeping system twice, at Volper's direction, and never after she worked for Defendants. Martinenko Decl. ¶ 11. Regardless, even if Martinenko had known her rate of pay and the number of hours she worked, this would not help her determine whether she was being underpaid because the final payment amount included hourly wages, tips, and any withholdings or deductions taken. Without a wage statement identifying the number of hours for which she was actually paid, it was impossible for her to determine whether she was being paid properly for all hours worked. *See Chapman*, 2023 U.S. Dist. LEXIS 213391, at *5-6.

is posted in the restaurant has no impact on this analysis. Not only is there no evidence that the posted was displayed during Martinenko's employment, *see* Volper Decl. ¶ 17 (using the present tense), but the poster displays the FLSA tip credit minimum wage of $2.13 cents per hour, which is less than the New York tip credit minimum wage that she was actually paid. DiGiulio Ex. 5. Accordingly, even if this poster were displayed during Martinenko's employment, it would not have informed her of her actual rate of pay. In addition, the poster self-evidently could not inform Martinenko of the number of hours for which she was paid each week.

As Defendants *were in fact underpaying* Martinenko –Defendants did not pay overtime, spread-of-hours, or the full minimum wage – Defendants' failure to provide any wage statements to Martinenko prior to 2021 "hindered [her] ability to contest the wage and hour deficiencies to which [she was] subjected by [her] employer." *Lipstein*, 2023 U.S. Dist. LEXIS 167615, at *26. This is precisely the type of informational injury is sufficient to establish standing. *E.g.*, *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1100 (9th Cir. 2022); *Almon v. Conduent Bus. Servs., LLC*, No. 19 CV 1075, 2022 U.S. Dist. LEXIS 55025, at *49-53 (W.D. Tex. Mar. 25, 2022).

Similarly, Martinenko testified that she did not know if she was supposed to be receiving overtime compensation. Greenbaum Ex. 3, 37:1-38:2; Martinenko Decl. ¶ 9. Had Defendants provided her with a legally sufficient wage notice, it would have stated that she was entitled to overtime and would have allowed her to advocate for herself when she was underpaid.[16] *Lipstein*, 2023 U.S. Dist. LEXIS 167615, at *26 (discussing NYLL § 195(1)). Had Plaintiff received this notice, *from her employer*, she would have raised the issue of her lack of overtime compensation with her employer sooner. Martinenko Decl. ¶ 9. As such, Defendants' NYLL § 195(1) violations

---

[16] Once again, the FLSA poster does not cure this informational injury. While Defendants' poster has a section about overtime pay, it also states that "[c]ertain occupations and establishments are exempt from the . . . overtime pay provisions." Dkt. No. 112-13. It thus fails to advise whether any individual employee is entitled to overtime.

caused Plaintiffs cognizable informational injuries sufficient for standing.  Furthermore, contrary to Defendants' assertion the injury-in-fact need not be "greater than Defendants' minimum wage, overtime, and spread of hours wage violations." *Lipstein*, 2023 U.S. Dist. LEXIS 167615, at *27. "The delay in compensation that results when someone lacks the full information needed to advocate for appropriate wages deals in injury that is distinct from any underpayment itself." *Id.*

Finally, it is completely irrelevant to standing that Martinenko worked at another restaurant where another employee brought a class action for similar wage and hour violations. *See* MOL at 17, n. 15. Even if Martinenko had received and read the class notice in that action (as we know from this case, not all mailed notices reach their addressees), that notice would not have told her the pay rate at which *Defendants* paid her or the number of hours for which Defendants paid her each week. Accordingly, the class notice in that action in no way cures the informational injury that Defendants caused by their violations of NYLL § 195.

For the reasons above, Plaintiffs have standing to assert NYLL § 195 claims against Defendants, as they have suffered both monetary and informational injuries.

## V.  CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion in full.

Dated:  New York, New York
       December 21, 2023

                                         **JOSEPH & KIRSCHENBAUM LLP**

                                         /s/ *Michael DiGiulio*
                                         Denise Schulman
                                         Michael DiGiulio
                                         32 Broadway, Suite 601
                                         New York, NY 10004
                                         (212) 688-5640
                                         (212) 688-2548 (fax)

                                         *Attorneys for Plaintiffs and the Class*