**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NINO MARTINENKO, on behalf of herself
and others similarly situated,

                              Plaintiff,

                -against-

212 STEAKHOUSE, INC., and
NIKOLAY VOLPER,

                          Defendants.

Case No.: 22-CV-518 (JLR) (RWL)

## DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DECERTIFY RULE 23 CLASS AND IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT AS TO COUNT 5 OF THE COMPLAINT

Defendants 212 Steakhouse ("212") and Nikolay Volper hereby submit this Reply to Plaintiff's Opposition to Decertify the previously certified class under Fed. R. Civ. P. 23, and Motion for Judgment as to Count 5 of the Complaint. [1]

1.     **Preliminary Statement**

Plaintiffs try to paint Defendants in a bad light by insinuating that Defendants "improperly influenced Class Member to opt-out of the Class." Plaintiffs do not support this assertion with any evidence of undue influence, coercion, or misleading information. There is no evidence of improper communication with Class Members. [2] Plaintiffs assert that many of the opt outs used

---

[1] As used herein, the depositions of Huk, Martinenko, and Volper have been filed in Defendants opposition to Plaintiffs' Motion for Summary Judgment at Dk. Nos. 119-10 to 119-12. The Declarations of Volper are filed in Plaintiffs Motion for Decertification Dk. No 112-7 and Opposition to Motion for Summary Judgment at Dk. No 119-2.

[2] *See, e.g., Romano v. SLS Residential Inc.,* 253 F.R.D. 292, 297 (S.D.N.Y. 2008) (corrected notice necessary because defendants developed and executed a plan through which they sought to coerce putative class members to opt out by providing false and misleading information); *Ralph Oldsmobile, Inc. v. GMC,* 2001 U.S. Dist. LEXIS. 13893 (S.D.N.Y. Sept. 7, 2001) (record evidence of coercion); *Magtoles v. United Staffing Registry, Inc.,* 2022 U.S. Dist. LEXIS 160601 (defendants sent emails to class members containing incomplete and misleading information encouraging them to opt out). In each of these cases, there was evidence of intimidation, coercion, and misleading communications.

the same forms and that the forms were mailed from the postal zip code of the Restaurant. However, there are no allegations or evidence of any involvement, let alone improper coercion or miscommunication, on the part of Volper. Indeed, as set forth in both declarations submitted by Volper in this case, he spends very little time in the Restaurant and the employees essentially run the Restaurant on their own. The Restaurant employees have full access to the Restaurant's office and office equipment. It is entirely possible the employees engaged in concerted activity to refrain from the class action. As evidence, only one former employee opted-in to the FLSA collective action. *See* 29 U.S.C. § 157 (employees have a right to *refrain* from such collective activity) (emphasis added).[3] The Court should not weigh Plaintiff's assertions of improper influence with respect to numerosity since there is no actual evidence to support it and a Class Member's decision to opt out must be respected.[4]

**2.      Numerosity Is Not Met**

**a.      Class Members Whose Notices Were Returned As Undeliverable Should Not Be Included**

Plaintiffs have not refuted that to sustain a Rule 23 class action the numerosity requirement must be judged by the size of the Class to whom notices were sent, reduced by the number of Class Members who affirmatively elected not to participate or *whose notices were returned undelivered. Zimmerman Portfolio Recovery Assocs., LLC,* Dist. LEXIS 43744 (S.D.N.Y. March 27, 2013) (quoting *Rule v. Int'l Ass'n of Bridge Structural & Ornamental Ironworkers,* 568 F.2d 558, 563-64 (8th Cir. 1977)) (Emphasis added). The one case cited by Plaintiffs on this issue, *Rannis v.*

---

[3] Plaintiff's only citation on this issue is *Ramis v. Recchia,* 380 Fed. Appx. 646 (9th Cir. 2010) which is an unpublished Ninth Circuit Opinion in which the defendant, an attorney, "aggressively" urged a class member to opt out on numerous occasions, and had an employee reach out to the class member informing him he would be receiving a class notice and specifying the wording he should use on the opt out form. Even in that case the court denied plaintiff's motion to investigate the 31 class members who received notice and opted out.

[4] It is also possible the opt-out members did not want to be part of a case represented by Martinenko since she came to work with COVID, thus closing the restaurant for several days and causing them to lose income.

*Recchia,* 380 F. App'x 646 (9th Cir. 2010), a Ninth Circuit Case, explicitly states in the second footnote that "the disposition is not appropriate for publication and is not precedent."

Nor has Plaintiff distinguished *Benavides v. Serenity Spa NY, Inc.,* 2018 U.S. Dist. LEXIS 88331 (S.D.N.Y. May 25, 2019) where for numerosity grounds the court excluded Class Members whose addresses could not be obtained. In that case, the number after deducting those whose addresses could not be obtained was 34 Class Members, which resulted in the Class not being certified on numerosity grounds. *Id.* In *Hall v. Best Buy Co.,* 274 F.R.D. 154, 168 (E.D. Pa.), cited by Plaintiff, at least 13% of the Class, which consisted in excess of 20,000 members, did not receive actual notice of the class action settlement. The Court found that number unacceptable and ordered the publication of notice.

Plaintiffs also cite *Moukengeshcaie v. Eltman,* No. 14 CV 7539, 2019 U.S. Dist. LEXIS 182337, at *25 (E.D.N.Y. Oct. 15, 2019) for the proposition that notice need not be perfect, and each and every class member need not receive actual notice. *Eltman* was a settlement class consisting of 8,000 class members and 432 potential subclass members, where the Court found the numbers were "more than sufficient for numerosity". *Id.* at *8. The purpose of the court's statement was class certification for settlement purposes and was prior to the mailing of any notice. *Id.*

     **b.**     **The Two Deceased Former Employees And Pizzaro Should Be Excluded From The Class**

Plaintiffs assert that Adrian Pizzaro should be included in the Class, yet they do not object to Ivanshaya and Laluz from being excluded. The reason Plaintiffs give is that twice Pizarro was represented to be in the Class by way of inclusion in a list. However, as set forth in the Volper declaration provided in opposition to Plaintiffs Motion for Summary Judgement, Pizzaro was a non-tipped employee, and his time records show he was a non-tipped employee. See Volper Decl. at ¶ 4 Dk. No. 112-7.

Plaintiffs cite to *Low v. Tian Yu, Inc.*, 2015 U.S. Dist. LEXIS 28823 at *5-6 (S.D.N.Y. March 9, 2015) for the proposition that New York Labor Law claims survive an employee's death and that "deceased individuals are regularly included.in Rule 23 classes." Pl. Memorandum at 10. In *Low v. Tian Yu, Inc*, the plaintiff Low died during the pendency of his action and the remaining two plaintiffs sought to substitute the representative of his estate in his wage-hour case, pursuant to Fed. R. Civ. P. 25. 2015 U.S. Dist. LEXIS 28823 at *5-6  Thus, unlike this action, Low's action was commenced prior to his death. *See also, Asklar v. Honeywell, Inc.* 95 F.R.D. 419 (D. Ct. September 30, 1982).  The issue in *Low* was substitution not survivorship. As Rule 25 is procedural, "it does not dictate whether or not a claim survives the death of a party." *Id.*; *English v. Murphy-Lattanzi*, No. 12-CV-4179, 2015 U.S. Dist. LEXIS 18114, at *5 (E.D.N.Y. Feb. 12, 2015). Section 11-3.2 of New York Estates Powers and Trusts law, which governs the survival of legal causes of action following a litigant's death states that "[n]o cause of action for injury to person or property is lost because of the death of the person in whose favor the cause of action existed." However, N.Y. CPLR §210(a) states that "[w]here a person entitled to commence an action dies before the expiration of the time within which the action must be commenced and the cause of action survives, an action may be commenced by his representatives within one year after his death." Both of the deceased former employees in the present case passed away in 2019, which is more than one year prior to the commencement of this action. The Second Circuit looks to state law whether a claim survives. *Barrett v. United States*, 684 F.2d 324,331 (2nd Cir. 1982).[5]

c.    **Judicial Economy Favors Decertification**

---

[5] Moreover, in each of the life insurance settlement cases cited by Plaintiffs at page 10 of their opposition, the preliminary orders approving the class action settlements directed notice to the "Estate of the deceased Class Member." *See Axa Equitable Life Ins. Co., COI Litig.*, 2023 U.S. Dist. LEXIS 110070 *7-8 (S.D.N.Y June 22, 2023). Here, neither the notice nor the class definition included the estate of any deceased Class Members or their legal representatives.

Judicial economy favors decertification of this case at this stage of the litigation. It is pure speculation that the Class Members lack financial resources to maintain their own actions if they desired to do so. Plaintiffs point to Martinenko's 2021 W-2 issued by Defendants which shows income reported from 212 was $44,504. However, Martinenko did not commence work at 212 Steakhouse, after her departure in 2018, until March 25, 2021. According to Martinenko's own records, she worked only 138 days in 2021 for Defendants. Moreover, as set forth in Martinenko's deposition she failed to report her cash tips to Defendants. As such, her W-2 reported income from Defendants is not a true indicator of Plaintiff Martinenko's total earnings for 2021. In fact, the figure provided of $51.92 per hour is based on evidence, including Martinenko's unreported tips per her deposition testimony. That figure annualized is over $100,000 per year.

Plaintiffs assert that "having to adjudicate 24 individual cases would be a significant burden compared to resolving the case on a class wide basis." Pl. Mem. at 11. Under *TransUnion LLC v. Ramierz*, 141 S.Ct. 2190, 2208 (2021) each Class Member must have Article III standing to recover individual damages. *See also Nnebe v. Davis*, 2022 U.S. Dist. LEXIS 73974 (S.D.N.Y. April 22, 2022). As such, the Section 195 claims would be subject to individual trials to ascertain whether each Class Member is entitled to a remedy. Additionally, the overtime claims, spread of hours claims, and the minimum wage claims would also be subject to individual trials to ascertain damages. This is because the number of hours worked would have to be ascertained for each employee as they did not clock out for breaks. With respect to Martinenko, she also did not clock out when her shift ended. This would affect Plaintiff's and Class Members' entitlement to overtime/spread of hours and the amount of their minimum wage claims. Such issues cannot be subject to generalized proof. It is also significant that a majority of the Class Members had zero or de minimus overtime and spread of hours claims. Not only do the number of Class Members

5

affected by the alleged unlawful policies regarding overtime and spread of hours fall well below numerosity to sustain the class, adjudication of these claims as a class action would save no time or effort since they will require individual adjudications regardless of class status. [6]

### d.    Individual Issues Predominate Over Common Issues

Individual issues surrounding the overtime claims and spread of hours claims predominate. Plaintiff misstates the law and the record on meal breaks. There is nothing in the record to show that Defendants treated the meal breaks as compensable work even if they were paid for the meal break. Under 29 C.F.R 778.320, "unless it appears from all the pertinent facts that the parties have treated such activities as hours worked, payments for such time will be regarded as qualifying for exclusion from the regular rate." "In other words, just because an employer provides an employee with a paid lunch hour does not necessarily mean that hour is added to the employee's total weekly working hours for purposes of the FLSA's overtime requirements." *Lu v. Matsuya Quality Japanese, Inc.,* 2018 U.S. Dist. LEXIS 109328 (E.D.N.Y. June 29, 2018) at *17.

Here, the issue is whether the employee took their uninterrupted meal break, which is an individualized issue and inquiry under the current record. Martinenko testified that she did not know what other employees were doing during their breaks. Plaintiffs assert that representative testimony concerning breaks could be taken. However, neither Martinenko nor Huk could provide such representational evidence. Martinenko has testified with respect to meal breaks, "I didn't look at what the other employees were doing." Martiennko Dep. at 86. Huk testified that the family meal break was usually around 4:00 pm but was not consistent. Huk Dep. 20.

---

[6] Class Members would not be prejudiced if the class is decertified as the filing of the class action in January 2022 tolled the statute of limitations on the putative Class Members' individual claims. While decertification of the class starts the clock again, notice could be sent to those that received notice of the decertification. *See Jianmin Jin v. Shanghai Original, Inc.,* 2019 U.S. Dist. LEXIS 114930 (E.D.N.Y. July 10, 2019). In addition, There is only one opt-in to the FLSA collective action.

The overtime and spread of hours claims do not appear to affect the class as a whole since more than half the class was not subject to unlawful overtime or spread of hours policy. Even taking Plaintiff's damages calculation, most of the Class Members either had no overtime hours or had de-minimus overtime, which would be repeated by the meal break time. Martinenko claims, by far, the largest amount of overtime, suggesting that her claim is individual to her and that her testimony would not be representational – given her issue of not clocking out once her shift ended.[7] Volper Decl. at ¶ 15 (Dk. No. 119-2); Martinenko Dep. at 31 ("after I served my customers I could have stayed at the bar").

### e.    Class Action Is Not The Superior Method To Adjudicate This Controversy

Defendants dispute that superiority is satisfied for the overtime and spread of hour claims, given that individual trials would be necessary. With respect to Plaintiff's Section 195 claims, each Class Member would ultimately have to establish Article III standing to recover individual damages. Such standing is based on actual and particularized damages. "Particularized" means individual to the Class Member. *Lygan v. Defenders of Wildlife,* 504 U.S. 555 (1992).

Plaintiffs' cavalier assertion that the claimed Section 195 damages of $225,900 is a "modest" sum and not unreasonable completely ignores any due process considerations. Aggregating statutory penalties for technical violations of which Plaintiffs are also seeking damages and liquidated penalties for their other related claims is not only duplicative but also a violation of due process. A damage award based on the duplicative damages sought by Plaintiffs in this Class Acton would be disproportionate to any harm actually suffered by the individual class members. "[A] class action is not the superior manner of proceeding where the liability defendant

---

[7] Lytchev, the deceased employee who passed away more than one year prior to the filing of this case (and who did not receive actual notice of the class action) had the second highest claim for overtime and spread of hours. Their total combined equates to over half the total alleged overtime and spread of hours claim for the entire class using Plaintiffs numbers and class members (which Defendants assert is incorrect).

stands to incur is grossly disproportionate to any harm sustained by an aggrieved individual." *Parker v. Times Warner Entm't Co., L.P.* 331 F.3d 13, 22 (2nd Cir. 2003).

**3.    Plaintiffs Section 195 Claims Should Be Dismissed As They Do Not Have Standing**

The constitutional minimum for standing comprises three elements:  1) that the Plaintiff suffered personal injury or threat of injury; 2) that the injury fairly can be traced to the action challenged (causation); and 3) that the injury is likely to be redressed by the requested relief. *Daimler Chrysler Corp. v. Cono,* 547 U.S. 332, 335 (2006).  Here, Plaintiffs cannot establish these elements and in particular, causation.   Plaintiffs' claimed injury is not an injury sustained as a result of the lack of required notices and statements, but the alleged failure to pay minimum wage, overtime, and spread of hours.   *Quieju v. La Jugueria, Inc.,* 2023 U.S. Dist. LEXIS 72050 (E.D.N.Y. April 25, 2023) at *6.[8]

Neither Martinenko nor Huk have set forth a concrete and particularized injury as a result of Defendants' technical violations of NYLL Section 195.  Plaintiffs' Complaint, their depositions, and declarations fail to present any factual allegations or evidence related to actual injuries suffered as a result of any wage notice and wage statement violations. Plaintiffs raise nothing more than speculation and allege nothing more than the other claims brought in this case.

The deposition testimony of Martinenko shows that any claimed injury was caused by the claims encompassed in Plaintiffs' minimum wage, overtime, and spread of hours claims, not by failure to provide statutory notices. The Section 195 claims are entirely duplicative. *Quieju,* supra, *6 ("[t]he injury that Plaintiff suffered (i.e. Defendants' failure to properly pay him) is not an injury

---

[8] In *Quieju,* the Court stated that "the New York legislature enacted so many actual damage statutes in the Labor Law (e.g., minimum wage, overtime, spread of hours, time of payment, liquidated damages), but limited the recovery in § 195(1) and (3) to statutory damages with a cap, suggests that the statute was not even designed to address *actual* damages." *Id.* at *6 (Emphasis added).

he sustained because of a lack of required documents; it is an injury sustained because his employer violated its obligation to pay minimum wage, overtime, and spread of hours pay under other, express requirements of federal and state law."); *See also Postrama v. Mr. Taco LLC,* 2022 U.S. Dist. LEXIS 172937 (S.D.N.Y. Sept. 23, 2022) adopted by 2022 U.S. Dist. LEXIS 205382 (S.D.N.Y. Nov. 10, 2022) ("[P]laintiffs have not demonstrated how their lack of notice resulted in injury greater than Defendants' minimum wage, overtime and spread of hours wage violations"); *Munoz v. Grp. US Mgmt, LLC,* 2023 U.S. Dist. LEXIS 149448 (S.D.N.Y. August 22, 2023) (same).[9]

### a. Plaintiff's Claim Of Monetary Harm For Failure To Receive Wage Notices And Statements Is Duplicative Of Her Other Claims

Plaintiffs assert that an employer who fails to provide the required written notice is liable for the difference between the full minimum wage rate and what the employee was actually paid. Pl. Mem. at 21. This is not a harm caused by the failure to provide such statutory notices, however. The harm referred to by Plaintiffs is the harm sought to be remedied in Plaintiffs' minimum wage overtime and spread of hours claims. The tip notice is encompassed in the NYLL minimum wage law as well as the FLSA. Plaintiffs have done nothing more than assert a NYLL minimum wage claim. *See Valle v. Gordon Chen's Kitchen, LLC,* 254 F.Supp. 3d 365 (S.D.N.Y. 2017) (under NYLL employer who fails to provide tip notice is liable for the difference between full minimum wage and what was actually paid).[10] The same applies to Plaintiffs' overtime and spread of hours claims.

---

[9] The cases cited by Plaintiffs are inapplicable. For example, in *Lipstein v. 20X Hosp. LLC*, No. 22-cv-04812 (JLR) (JW), 2023 U.S. Dist. LEXIS 167615, at *37 (S.D.N.Y. Sep. 19, 2023), and cases cited therein, Plaintiffs were found to plausibly state a claim to have standing as to the allegations of late payments of wages i..e. frequency of pay (under Section 191). In *Lipstein*, the Plaintiff alleged that due to the late payment of wages he was unable to pay rent which plausibly alleged harm beyond the 191 claim. *Id.* at *36-37.

[10] In an often-cited case, the First Circuit noted the harsh result of the tip credit minimum wage law stating, "it may at first seem odd to award back pay against an employer, doubled by liquidated damages, where the employee has actually received and retained base wages and tips that together amply satisfy the minimum wage requirements. Yet Congress has in section 3(m) [FLSA] expressly required notice as a condition of the tip credit and the courts have

Plaintiffs' assertion that because Defendants did not provide notice of the tip credit, their payment to Plaintiffs of the tip credit minimum wage rate was an underpayment. Pl. Mem. at 21. That asserts a minimum wage claim only. There is no dispute that aside from the technical violation, Defendant paid the appropriate tip credit minimum wage. As such, even if Defendant provided the wage notice, it would not have changed Plaintiff's minimum wage payment. Plaintiffs have failed to show "how or why the amount of their wage underpayments, including alleged overtime and spread of hours, is greater than it would have been if they have been given proper wage and notice statements." *Shi v. JLGC, Inc.,* 2022 U.S. Dist. LEXIS 121980 (S.D.N.Y. July 11, 2022) at *23.

Martinenko's declaration alleges only speculation that had she known she was not receiving overtime pay she would have complained to Volper. Yet, as described below, her deposition testimony states that she knew she was not getting overtime. In her deposition Martinenko stated that she knew her hourly wage and tips throughout her employment. Martinenko Dep. At 35-37. Martinenko and each tipped employee knew exactly what their tips were as they administered their own tip pool. For her initial period of employment (2015-2018), contrary to her declaration, Martininko knew exactly how she was being paid, the amount and the number of hours she had recorded through the POS system. Volper Dep at 92-95.[11]

### b.   **Plaintiffs Have Not Established An Informational Injury**

Plaintiffs claim that they suffered informational injuries speculating that the wage statements deprived them of information to which they were legally entitled. However, Plaintiff

---

enforced that requirement." *Martin v. Tango's Restaurant, Inc.,* 969 F.2d 1319, 1323 (1st Cir. 1992). The first Circuit called this result a "penalty."

[11] Plaintiff Martinenko's Amended Initial Disclosures in this case state that she has knowledge regarding the terms and conditions of her employment, including and not limited to "the compensation Plaintiff received, her hours worked... [and] her coworkers .... compensation."

must show an interest in using the information "beyond bringing this lawsuit." *Harty v. W. Point Realty, Inc.,* 28 F. 4th 435, 444 (2d Cir. 2022).

Martinenko attempts to establish informational injury and downstream consequences from the technical violation through speculation, which is contradicted by her deposition testimony, and is not included in the Complaint.[12]  Huk does not even attempt to address the issue and relies only on the Complainant. In her deposition Martinenko testified that she asked her co-worker, "why are we not getting paid overtime."  Martinenko Dep. at 37.  She admits she never had a discussion with Volper about this or any issue related to her wages. Martinenko Dep. at 36.  In her declaration submitted in opposition to the instant motion, however, Martinenko states had she known she was not receiving overtime she "would have discussed this [with] Volper and requested paid overtime." Putting to the side the issue that Martinenko cannot use an affidavit to contradict her deposition testimony, it is clear Martinenko never raised this or any other wage issue with Volper. Rather, Martinenko discussed it with a coworker and the action she took was filing the instant lawsuit. Throughout her employment Martinenko and the other employees had access to their pay records and time records through the POS system. Volper Decl. at ¶ 13 (Dk. No. 119-2). Martinenko also asserts that during her initial period of employment from 2016-2018 she did not have pay stubs or wage statements.  Martinenko Decl.   ¶ 4.  However, Martinenko began her employment for Defendants in 2015 (Volper Decl. at ¶ 20, Dk. No. 119-2), prior to the limitations period of this lawsuit.  Martinenko also testified in her deposition that her employment with Defendant commenced in 2015 and knew her hourly minimum wage for each year and that she was entitled to tips. Martinenko Dep. at 34-37.  Again, throughout this period, she not only had access to her

---

[12] Martinenko failed to provide any affidavit in support of her summary judgment motion on this issue (Dk. No. 117) and relied solely on the technical violation, which does not confer standing. The self-serving declaration here is pure speculation and should not be considered. Huk has provided nothing on this issue.

time records through the POS system, but "prior to 2019 [the Restaurant] did provide statements to the employees containing their reported tips, time in and out, and the meal credit, as well as the acknowledgment that they were paid." Volper Decl. at 14 (Dk. No. 119-2); Volper Dep. at 92-95.

Martinenko has not identified an informational injury with consequences beyond this lawsuit. *See Shi,* supra. In *Shi,* this court determined that the same alleged informational injury raised by Martinenko to be inadequate to confer standing and in so doing stated, "being able to challenge his underpayment sooner would have resulted in Plaintiff bringing the same lawsuit, just earlier ... and would not have changed the damages due him for Defendants violations of Section 195(l) and 195(3)." *Id.*

To be sure, Plaintiffs have not demonstrated how or why the amount of the wage underpayment is greater than it would have been if they had been given the wage statement and notices. *Id.*; *see also Quieju* *4-6 (Plaintiff's argument that he would have made a demand for his wages if he had the information is entirely speculative); *Jackson v. ProAmpac, LLC,* 2023 U.S. Dist. LEXIS 172080 (S.D.N.Y. Sep't 25, 2023) (harms alleged, delayed information in wage notices, fail to show an interest in using the information beyond bringing the lawsuit); *Freeland v. Findlay's Tall Timbers Distribution Ctr., LLC,* 2023 U.S. Dist. LEXIS 118989 (W.D.N.Y. July 11, 2023) (real barrier to standing for wage statement and notice claims is causation – that is whether a Plaintiff's alleged underpayment is fairly traceable to the allegedly inaccurate wage statements).

Plaintiffs in this case failed to make any such allegation of concrete injury and have not established concrete and particularized injury.

**CONCLUSION**

Based on the foregoing, Defendants request that the Rule 23 class action be decertified and that Count 5 of Plaintiff's Complaint be dismissed.

Respectfully submitted,

Jonathan W. Greenbaum
Natalie Nehls
COBURN & GREENBAUM, PLLC
Second Floor
1710 Rhode Island Avenue, NW
Washington, DC. 20036
Telephone:  202.744.5003
Facsimile:  86.561.9712
Email:  jg@coburngreenbaum.com
        natalie@coburngreenbaum.com
        *Attorneys    for    Defendants    212
        Steakhouse Inc., and Nikolay Volper*

13

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing will be served upon all counsel of records via ECF this 12th day of January 2024.

Jonathan W. Greenbaum