UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                              :       22-CV-518 (JLR) (RWL)
NINO MARTINEKO, on behalf of herself                          :
and others similarly situated,                                :
                                                              :
                                                              :
                                  Plaintiffs,                 :   **REPORT AND RECOMMENDATION**
                                                              :    **TO HON. JENNIFER L. ROCHON:**
              - against -                                     :        **CLASS DECERTIFICATION**
                                                              :        **AND SUMMARY JUDGMENT**
                                                              :
212 STEAKHOUSE, INC., and                                     :
NIKOLAY VOLPER,                                               :
                                  Defendants.                 :
------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

        Class representatives Nino Martinenko and Dagmara Huk, individually and on

behalf of others similarly situated, brought this wage-and-hour action against Defendants

212 Steakhouse, Inc. and its owner Nikolay Volper.  Plaintiffs, who are former front-of-

house employees of 212 Steakhouse, allege violations of the Fair Labor Standards Act

("FLSA") and the New York Labor Law ("NYLL").  Plaintiffs allege that Defendants violated

the FLSA and NYLL by (1) paying employees pursuant to a tip credit without providing

the notice required under New York law; (2) failing to pay overtime premiums; (3) failing

to pay spread of hours premiums; and (4) failing to provide employees with wage notices

and wage statements as required by NYLL § 195.  The Court already has certified both a

collective action under the FLSA and class action under the NYLL.  Defendants now move

to decertify the Rule 23 class.  Defendants also seek dismissal of Plaintiffs' NYLL § 195

claims due to lack of standing.  Plaintiffs cross-move for summary judgment as to liability

and damages on all claims.  For the reasons that follow, the Court recommends that

Defendants' motion to decertify the class be DENIED and that Plaintiffs' motion for summary judgment be GRANTED in part and DENIED in part. Specifically, summary judgment should be granted in Plaintiffs' favor on Martinenko's and Huk's FLSA overtime claims; summary judgment should be granted in Plaintiffs' favor on all class members' NYLL minimum wage, overtime, and spread-of-hours claims; summary judgment should be granted against Huk on her NYLL wage notice and wage statement claims; and summary judgment should be denied as to Martinenko's and the rest of the class members' NYLL wage notice and wage statement claims.

## FACTUAL BACKGROUND[1]

### A.    The Parties

Defendant 212 Steakhouse, Inc. ("212 Steakhouse") owns and operates a restaurant of the same name located at 316 East 53rd Street, New York, NY 10022 (the "Restaurant"). (Def. 56.1 ¶ 1.) Defendant Nikolay Volper is the founder of 212

---

[1] The factual background is based on the Court's April 27, 2023 Memorandum Opinion And Order at Dkt. 92 ("Class Certification Order"); the Court's April 28, 2023 Memorandum Opinion And Order at Dkt. 93 ("Sanctions Order"); Plaintiffs' Statement Of Undisputed Facts Pursuant To Local Civil Rule 56.1 filed Nov. 16, 2023 at Dkt. 118 ("Pl. 56.1"); Defendants' Counter-Statement Of Disputed Facts Pursuant To Local Civil Rule 56.1 filed Dec. 21, 2023 at Dkt. 119-1 ("Def. 56.1"); Declaration of Jonathan Greenbaum filed Nov. 16, 2023 (Dkt. 112-1) ("11/16/2023 Greenbaum Decl."); Declaration of Nikolay Volper filed on Nov. 16, 2023 at Dkt. 112-7 ("11/16/2023 Volper Decl."); Declaration of Nikolay Volper filed on Dec. 21, 2023 at Dkt. 119-2 ("12/23/2023 Supp. Volper Decl."); Declaration of Nino Martinenko filed Nov. 16, 2023 at Dkt. 117 ("11/16/2023 Martinenko Decl"); Declaration of Nino Martinenko filed on Dec. 21, 2023, at Dkt. 122 ("12/21/2023 Martinenko Decl."); Declaration of Dagmara Huk filed on Dec. 21, 2023, at Dkt. 123 ("12/21/2023 Huk Decl."); Declaration of Michael DiGiulio filed Nov. 16, 2023, at Dkt. 115 ("11/16/2023 DiGiulio Decl."); Declaration of Denise A. Schulman filed Nov. 16, 2023, at Dkt. 116 ("Schulman Decl."); Declaration of Michael DiGiulio filed December 21, 2023 at Dkt. 121 (12/21/2023 DiGiulio Decl.); Deposition of Dagmara Huk filed Dec. 21, 2023, at Dkt. 119-10 ("Huk Dep."); Deposition of Nino Martinenko, filed Dec. 21, 2023, at Dkt. 119-11 ("Martinenko Dep."); Deposition of Nikolay Volper, filed Dec. 21, 2023, at Dkt. 119-12 ("Volper Dep."). The facts are undisputed except where noted.

Steakhouse and has been its sole owner since 2016. (*Id.* ¶ 6.) 212 Steakhouse's gross revenue exceeded $500,000 for 2016 through 2022. (*Id.* ¶ 2.) Volper is the ultimate decision-maker at 212 Steakhouse. (*Id.* ¶ 11.)

Plaintiff Nino Martinenko ("Martinenko") worked as a server at the Restaurant from 2016 through December 2018, and then again from March 2021 until December 2021. (*Id.* ¶ 3.) Plaintiff Dagmara Huk ("Huk") worked at the Restaurant as a bartender from August 2020 through September 2021. (*Id.* ¶ 4.) Martinenko and Huk represent a class of front-of-house tipped employees – including servers, runners, bussers, and bartenders – who worked at the Restaurant at any time on or after January 20, 2016. (Class Certification Order at 3.)

**B.    The Timekeeping System**

Defendants required all employees to clock in and out on 212 Steakhouse's point of sale ("POS") system when starting and finishing their work, but Defendants "did not police this." (Def. 56.1 ¶ 15.) The POS records are the only time records that Defendants maintained for the class members, and Defendants paid the class members based on these records. (*Id.* ¶ 15.) The parties dispute whether Defendants required class members to clock out on the POS system for breaks. (*Id.* ¶ 17.) Plaintiffs maintain that Defendants did not require employees to clock out for breaks, while Defendants assert that employees were supposed to clock out when they were not working. (Pl. 56.1 ¶ 17; Def. 56.1 ¶ 17.) Volper testified, however, that he did not believe he instructed front-of-house employees to clock out when taking breaks and "could not remember" if there was a policy requiring employees to clock out for breaks. (Volper Dep. 74:9-17; Def. 56.1 ¶ 17.) Plaintiffs assert that they worked during all hours they were clocked in (Pl. 56.1 ¶

22), while Defendants assert the time records do not reflect the precise hours Plaintiffs worked because employees did not clock out for breaks and did not always immediately clock out when their shifts were over (Def. 56.1 ¶ 22).

## C.    Payroll Practices

Prior to 2019, Defendants paid class members by handwritten checks. (*Id.* ¶ 28.) They also provided class members statements showing "check in/check out totals and reported tips for the week." (*Id.* ¶ 36.) Defendants began providing class members with paystubs in 2019, when Defendants hired an accounting company to assist with payroll. (Pl. 56.1 ¶ 29; Def. 56.1 ¶ 29.) The paystubs included hours worked, the hourly wage, and tax deductions, but they did not state the tip credit taken or overtime hours worked. (Pl. 56.1 ¶ 33; Def. 56.1 ¶ 33.)

Defendants paid employees the applicable New York tip credit minimum wage for all of the hours during which they were clocked in. (Def. 56.1 ¶ 16; Sanctions Order at 3.) Defendants did not pay an overtime rate, instead paying the regular hourly rate regardless of the number of hours Plaintiffs were clocked in per week. (Pl. 56.1 ¶ 18; Sanctions Order at 3.) Defendants did not pay a spread-of-hours premium when Plaintiffs' workdays lasted longer than 10 hours. (Sanctions Order at 3; Pl. 56.1 ¶ 19.) Defendants did not provide any class members with written wage notices informing them of their hourly pay rate, overtime hour pay rate, and the amount of tip credit that was being deducted from their wages. (Def. 56.1 ¶ 27.)

## D.    Prior Litigation

This is not the first time Defendants have been subject to wage-and-hour litigation. In 2018, 212 Steakhouse and Volper were defendants in a wage-and-hour action brought

in this same District, in which former tipped employees alleged Defendants violated FLSA and NYLL provisions governing overtime, minimum wage, and spread of hours. (Quizhpi Complaint, attached as Ex.11 to DiGiulio Decl. at Dkt. 115-11.) In 2020, 212 Steakhouse and Volper were Defendants in another wage-and-hour action brought in New York Supreme Court, in which a former non-tipped employee alleged Defendants violated NYLL's overtime provisions and wage notice and wage statement provisions. (Flores Summons, attached as Ex. 12 to DiGiulio Decl. at Dkt. 115-12.) Both the federal and state actions settled. (Def. 56.1 ¶¶ 40, 43.)

## PROCEDURAL BACKGROUND

Martinenko commenced this action on January 20, 2022, on behalf of herself and others similarly situated, alleging Defendants violated federal and state labor laws regarding overtime pay requirements, minimum wage requirements, spread of hours requirements, and wage notice requirements. (Dkt. 1.) On April 4, 2022, Martinenko moved for conditional certification of a collective action on her FLSA claim pursuant to 29 U.S.C. § 216(b). (Dkt. 19.) The Court granted that motion on April 26, 2022, and authorized Martinenko to send notice of the collective action to all front-of-house employees employed by Defendants on or after January 20, 2019. (Dkt. 30.) Defendants produced a collective list of 24 front-of-house employees, following which Martinenko disseminated the Court-approved notice. One former employee, Huk, joined the collective action as an opt-in Plaintiff. (Dkt. 32.)

On November 11, 2022, Plaintiffs moved for sanctions pursuant to Federal Rule of Civil Procedure 37, asserting that Defendants and their counsel breached their discovery obligations by failing to respond to Martinenko's discovery requests. (Dkt. 61.) The Court

granted in part and denied in part Plaintiffs' motion for sanctions, ordering Defendants to comply with the Court's order requiring production of all tip sheets and time records for the putative class, imposing coercive sanctions, and deeming the following facts established:

> "(i) 212's gross annual revenue in 2021 and 2022 exceeded $500,000; (ii) Defendant Volper was the sole owner of 212 in 2021 and 2022; (iii) all front-of-house employees who clocked in and out on the restaurant's point-of-sale system were paid the applicable New York tip credit minimum wage for the hours for which they were clocked in; (iv) Defendants paid putative class members their regular rate for overtime hours (rather than time-and-a-half); and (v) Defendants did not pay putative class members a spread-of-hours premium."

(Sanctions Order 3 at 3.)

On December 9, 2022, Martinenko moved for class certification of the NYLL claims pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"). (Dkt. 70.) Although Defendants had initially produced a list of only 24 front-of-house employees, more than 40 such employees eventually were identified. On April 27, 2023, the Court certified a class with respect to the NYLL claims, defined as "all tipped employees – servers, runners, bussers, and bartenders – who worked for Defendants at any time on or after January 20, 2016 at 212 Steakhouse." (Class Certification Order at 3.) The Court also authorized notice to be sent by Plaintiff. (*Id.*) Plaintiff sent notice by first class mail.[2] (11/16/2023 Greenbaum Decl. ¶ 4.)

On November 16, 2023, the parties filed competing motions. Defendants moved for decertification of the class primarily on the basis that class size no longer supported

---

[2] The record does not reflect when notice was sent.

certification.  (Dkt. 111; *see generally* Def. Decert. Mem.[3])  Arguing lack of standing, Defendants also moved for judgment on the pleadings on Plaintiffs' NYLL § 195 claims for failure to provide wage notices and wage statements.[4]  (Dkt. 111.)  For their part, Plaintiffs filed a motion for summary judgment as to both liability and damages.  (Dkt. 113.)  The motions are fully briefed and have been referred to me for report and recommendation.  (Dkt. 99.)

**LEGAL STANDARDS**

**A.    Class Action Decertification**

An "order that grants or denies class certification may be altered or amended before final judgment."  Fed. R. Civ. P. 23(c)(1)(C).  Indeed, "courts are required to reassess their ruling as the case develops."  *Boucher v. Syracuse University*, 164 F.3d 113, 118 (2d Cir.1999) (internal quotation marks omitted*); see also Mazzei v. Money Store*, 829 F.3d 260, 266 (2d Cir. 2016) ("the district court has the affirmative duty of monitoring its class decisions in light of the evidentiary development of the case" (internal quotation marks omitted)).

---

[3] "Def. Decert. Mem." refers to Defendants' Memorandum In Support Of Motion To Decertify Rule 23 Class And Motion For Judgment As To Count 5 Of The Complaint, filed November 16, 2023 at Dkt. 112.

[4] Although Defendants initially moved against Plaintiffs' NYLL § 195 claims based on the pleadings, Defendants have cited the factual record, including depositions and declarations in support of their motion.  (*E.g.*, Def. Decert. Mem. at 4, 8, 12, 15.)  Both parties have effectively treated Plaintiffs' motion as one for summary judgment, and the Court does the same.  Accordingly, Defendants motion for judgment on Plaintiffs' NYLL § 195 claims must be treated as one for summary judgment.  Fed. R. Civ. P. 56(d).  All parties have been given a reasonable opportunity to present all the material that is pertinent to the motion.

Courts may decertify classes "if it appears that the requirements of Rule 23 are not in fact met." *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 572 (2d Cir.1982) *cert. denied*, 459 U.S. 838 (1982). Reconsideration of class certification is appropriate where there is a "significant intervening event" or "compelling reasons" that the Rule 23 requirements are no longer satisfied. *Doe v. Karadzic*, 192 F.R.D. 133, 136-37 (S.D.N.Y. 2000) (internal citations omitted). Thus, not only is this Court able to reevaluate its earlier determinations regarding class certification, it has an obligation to do so. *Boucher*, 164 F.3d at 118. In opposing decertification, the plaintiff retains "the burden to demonstrate that [the Rule 23] requirements [a]re satisfied." *Mazzei*, 829 F.3d at 270 (citing *Rossini v. Ogilvy and Mather, Inc.*, 798 F.2d 590, 596-600 (2d Cir. 1986)).

## B. Summary Judgment

To obtain summary judgment under Rule 56 of the Federal Rules of Civil Procedure, the movant must show that there is no genuine dispute of material fact. Fed. R. Civ. P. 56(a). A fact is material "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of identifying "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party must then come forward with evidence demonstrating the existence of a genuine dispute of material fact. *Anderson*, 477 U.S. at 248; *Geyer v. Choinski*, 262 F. App'x 318, 318 (2d Cir. 2008). Where the nonmoving party fails to make "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted. *Celotex*, 477 U.S. at 322; *accord El-Nahal v. Yassky*, 835 F.3d 248, 252 (2d Cir. 2016).

The moving party may demonstrate the absence of a genuine issue of material fact "'in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim.'" *Nick's Garage, Inc. v. Progressive Casualty Insurance Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (quoting *Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988)). A party asserting that a fact cannot be, or is, genuinely disputed "must support the assertion by" either "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B); *see also Powell v. National Board of Medical Examiners*, 364 F.3d 79, 84 (2d Cir. 2004) (if movant demonstrates absence of genuine issue of material fact, nonmovant bears burden of demonstrating "specific facts showing that there is a genuine issue for trial") (citation omitted).

In assessing the record to determine whether there is a genuine issue of material fact, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Anderson*, 477 U.S. at 255; *Smith v. Barnesandnoble.com, LLC*, 839 F.3d 163, 166 (2d Cir. 2016); *Sutera v. Schering Corp.*, 73 F.3d 13, 16 (2d Cir. 1995) ("The district court must draw all reasonable inferences and resolve all ambiguities in favor of the nonmoving party and grant summary judgment only if no reasonable trier of fact could find in favor of the nonmoving party"). The court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. Summary judgment may be granted, however, where

the nonmovant's evidence is conclusory, speculative, or not significantly probative. *Id.* at 249-50. If there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

### I.  Decertification

Defendants argue that the class previously certified under Rule 23 must be decertified because the Rule 23(a) elements of numerosity and commonality as well as the Rule 23(b) elements of predominance and superiority are no longer met. (Def. Decert. Mem. at 3.) Defendants do not challenge continued certification on the basis of typicality or adequacy. Because the Rule 23 requirements remain satisfied, Defendants' motion to decertify the class should be denied.

### A.    Numerosity

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is presumed satisfied if the class has at least 40 members, *see Robidoux v. Celani,* 987 F.2d 931, 936 (2d. Cir. 1993), while prospective classes of twenty to forty members fall in a "gray area." 1 Newberg on Class Actions § 3:12 (5th ed. 2011).) Plaintiffs have the burden of showing numerosity, but they need not prove the "exact class size or identity of class members to satisfy the numerosity requirement." *Robidoux,* 987 F.2d at 935. When there are less than 40 class members, "[r]elevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for

prospective injunctive relief which would involve future class members." *Id.* at 936. Taking these factors into consideration, the Court concludes that numerosity is satisfied.

In its certification order, the Court counted 38 previously identified class members and inferred that there were more than 40 members in the prospective class. *Martinenko v. 212 Steakhouse, Inc.*, No. 22-CV-518, 2023 WL 2919766, at *5 (S.D.N.Y. Apr. 12, 2023), *R. & R. adopted*, 2023 WL 3160118 (S.D.N.Y. Apr. 27, 2023). After certification, Defendants produced a list of 44 initial class members, to whom Plaintiffs then sent notices via first-class mail. (11/16/2023 Greenbaum Decl. ¶ 4; Dkt. 112-2.) Plaintiffs also independently identified two deceased individuals who met the definition of the class and sent notices to their last known addresses. (11/16/2023 Volper Decl. ¶ 5.)

The parties dispute the number of class members remaining at this stage of the litigation. Defendants assert that there are at most 24 remaining class members, while Plaintiffs assert there are 33 remaining class members. (Def. Decert. Mem. at 4; Pl. Decert. Mem. at 8.[5]) Defendants' count of 24 remaining class members excludes employees who submitted opt-out notices, deceased individuals, individuals whose notices were returned as undelivered, and class members whom Defendants assert they mistakenly initially identified as class members but have now determined that they were either not employed in tipped positions or not employed by 212 Steakhouse at all. (Def. Decert. Mem. at 4 (citing Greenbaum Decl. and Exs. 1-2.) Plaintiffs' count of 33 excludes only the employees who submitted opt-out notices and one employee on Defendants' initial class list whom Defendants now assert never worked at 212 Steakhouse.

---

[5] "Pl. Decert. Mem." refers to Plaintiffs' Memorandum Of Law In Opposition To Defendants' Motion To Decertify Rule 23 Class And Motion For Judgment As To Count 5 of The Complaint, filed Dec. 21, 2023 at Dkt. 120.

(11/16/2023 DiGiulio Decl. ¶ 17-21.)  Plaintiffs' number is more accurate.  But even if it were not, numerosity remains satisfied in the circumstances of this case.

      **1.**      **Determining The Number Of Class Members**

           **a.  Notices Returned As Undeliverable**

Defendants first contend that the class size must be reduced by the number of notices returned as undelivered.  (Def. Decert. Reply[6] at 2-3 (citing *Zimmerman v. Portfolio Recovery Associates*, LLC, No. 09-CV-4602, 2013 WL 1245552, at *3 (S.D.N.Y. March 27, 2013) and *Benavides v. Serenity Spa NY Inc.,* No. 15-CV-9189, 2018 WL 2383144, at *2 n.2 (S.D.N.Y. May 25, 2018)).  Plaintiffs counter that undelivered notices must still be counted because Rule 23 does not require actual notice, but instead provides that "the court must direct to class members the best notice that is practicable under the circumstances."  (Pl. Decert. Mem. at 8 (citing Fed. R. Civ. P. 23(c)(2)(B).)  Plaintiffs are correct.  It is well established that for due process to be met, it is not necessary that every class member receive actual notice, so long as class counsel acted reasonably in selecting means likely to inform persons affected.  *Weigner v. The City of New York*, 852 F.2d 646, 649 (2d Cir.1988); *accord Moukengeshcaie v. Eltman, Eltman & Cooper, P.C.,* No. 14-CV-7539, 2019 WL 5204809, at *10 (E.D.N.Y. Oct. 15, 2019) ("Notice need not be perfect, but must be the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential Class Members").  That

---

[6] "Def. Decert. Reply" refers to Defendants' Reply To Plaintiffs' Opposition To Decertify Rule 23 Class And In Further Support of Defendants' Motion For Summary Judgment As To Count 5 Of The Complaint, filed January 12, 2024 at Dkt. 128.

precept, however, does not directly answer the question of whether notices returned as undelivered should be included in the class count for purposes of assessing numerosity.

The Court is aware of two federal appellate court cases that have touched upon the interplay of numerosity and notices returned as undeliverable. The more recent of the two is *Rannis v. Recchia*, 380 F. App'x 646 (9th Cir. 2010), cited by Plaintiffs. Though *Rannis* is non-precedential, it remains instructive. There, the Ninth Circuit affirmed the district court's decision denying the defendant's motion to decertify the class and including in the Rule 23 class count seven putative class members whose class notices were returned as undeliverable. *Id.* at 649-50. The court held that the class members whose notices were returned as undeliverable were properly included in the class.

The other Court of Appeals case is *Rule v. International Association of Bridge, Structural & Ornamentals Ironworkers,* 568 F.2d 558, 563–64 (8th Cir.1977). In that case, the Eighth Circuit addressed whether for purposes of numerosity the court should consider only individuals who sent in responses to the opt-out notice. (*Id*.) The Court held that proceeding on that basis would have been improper for the very reason that the notices sent required individuals to respond only if they desired to opt out, the procedural foundation for Rule 23 class actions. (*Id*.) In that context, the number of responses received was irrelevant to numerosity. The court then stated: "Since the notice clearly did not require a response, the numerosity requirement must be judged by the size of the class to whom the notices were sent, reduced only by the number of class members who affirmatively elected not to participate or whose notices were returned undelivered." (*Id*.) While the court's statement does support exclusion of undelivered notices, the court,

unlike the court in *Rannis*, did not analyze and was not even presented with that specific issue. Accordingly, the Court finds *Rule* to be less persuasive.

Turning to cases in this District, the court in *Pefanis v. Westway Diner, Inc*. used similar reasoning as *Rannis* when denying a motion to exclude from a class two putative class members whose corrective class notices were returned as undeliverable after the employees initially opted out of the class. No.08-CV-002, 2010 WL 3564426 (S.D.N.Y. Sept. 7, 2010). After a hearing, the court invalidated certain employees' initial opt out requests based on the employees' testimony that they opted out to curry favor with their employer. As a remedy, the Court ordered corrective notice. Although two of the notices were returned as undeliverable, the court counted them as class members. The court reasoned that the corrective notice satisfied the requirements of Rule 23(c)(2)(B) and due process where it had been both mailed and posted at the employees' place of work. *Id.*, at *6. *Pefanis* is distinguishable to some extent as the court concluded that the employees had actual notice of the action by virtue of having received the first notice and participated in the hearing. Nonetheless, the corrective notices were returned as undeliverable, and the court nonetheless included them in the class.

The two cases Defendants cite for the proposition that undeliverable notices must be excluded from the class count are distinguishable. In *Zimmerman,* the Court quoted *Rule*, including its language about excluding undelivered notices. But rather than holding that class members whose notices are undeliverable cannot be counted as class members, the court found no evidence that any class notices were in fact returned as undeliverable. *Zimmerman*, 2013 WL 1245552, at *4 n.10. The court thus did not further discuss or analyze the quoted language from *Rule*.

In *Benavides*, the other case cited by Defendants, the court excluded putative class members whose FLSA collective action notices were previously returned as undeliverable in its count of Rule 23 class members. The facts of that case, however, depart significantly from those here. Unlike the parties here, the *Benavides* parties jointly sought to decertify the class in order to resolve the matter on an individual basis; the parties were only in the early stages of litigation and had not even mailed out Rule 23 notices to class members; and the Court reasoned that class members were unlikely to be prejudiced by decertification because none of the class claims had been decided on the merits. *Benavides v. Serenity Spa NY Inc*., No. 15-CV-9189, 2018 WL 2383144, at *3 (S.D.N.Y. May 25, 2018). Here, in contrast, the parties are not in agreement on decertification; notice has already been sent; the notice period has closed; Plaintiffs have moved for summary judgment on all claims; and the Court has already deemed established material facts applicable classwide. (Sanctions Order at 3.)

Even in the class action settlement context, many courts include for numerosity purposes individuals whose notices were returned as undeliverable. They do so because "actual receipt of class notice is not necessary in order to bind an absent class member to a final judgment. Indeed, many of the cases standing for this proposition also indicate that notice by mail sent to the last known address of the absent class member meets the due process requirement of notice through 'reasonable effort' even where numerous class members have since changed addresses and do not receive notice." *In re Prudential Securities. Inc. Ltd. Partnerships Litigation*, 164 F.R.D. 362, 369 (S.D.N.Y. 1996), *aff'd*, 107 F.3d 3 (2d Cir. 1996); *see also, e.g.*, *Emeterio v. A&P Restaurant Corp.,* No. 20-CV-970, 2022 WL 274007, at *3 (S.D.N.Y. Jan. 26, 2022) (finding numerosity satisfied and

15

including individuals from whom notice was returned as undeliverable in the class member count when certifying a settlement class); *Romero v. La Revise Associates, L.L.C.*, 58 F. Supp.3d 411, 419 (S.D.N.Y. 2014) (same)*.*

At the same time, there are cases to the contrary. *See In re 3D Systems Securities Litiga*tion, No. 21-CV1-920, 2024 WL 50909, at *5 (E.D.N.Y. Jan. 4, 2024) (finding that numerosity was satisfied and excluding from the count of class members the notices that were returned as undeliverable); *Garland v. Cohen & Krassner*, No. 08-CV-4626, 2011 WL 6010211, at *14 (E.D.N.Y. Nov. 29, 2011) (finding that numerosity was satisfied and subtracting notices that were returned as undeliverable from the total number of class members when certifying a settlement class). But of course, subtracting undelivered notices may make sense in the settlement context, where no further notices are to be sent and the defendants contribute to a common fund to be distributed among class members. The instant context is quite different. Further notice to the class is contemplated, at which point it may be appropriate to require skip tracing to attempt to locate class members. (*See* Class Notice, Dkt. 72-1 at 2 (informing class members that "if you remain in this lawsuit and the Class Representatives succeed in proving the claims against 212 Steakhouse, you will be notified about how to receive your share of the money").) In short, it is premature to determine that the class members at issue should not be counted.

Accordingly, class members whose notices were returned as undeliverable should be included for purposes of determining numerosity.

### b.  Deceased Class Members

Defendants next argue that the two deceased class members (one of whom is also one of the individuals whose notice was returned as undeliverable) should be excluded from the class because both passed away in 2019, which was more than one year prior to the commencement of this action.[7]  (Def. Decert. Reply at 4.)  Defendants are incorrect.

The Second Circuit has held that a claim survives the injured party's death "if applicable state law creates a right of survival."  *Barrett v. United States*, 689 F.2d 324, 331 (2d Cir.1982) (holding that a cause of action under 42 U.S.C. § 1983 survived injured party's death).  New York law provides a right of survival.  Specifically, "no cause of action for injury to person or property is lost because of the death of the person in whose favor the cause of action existed."  N.Y. Estates, Powers and Trusts Law § 11–3.2(b).  But, "[w]here a person entitled to commence an action dies before the expiration of the time within which the action must be commenced and the cause of action survives, an action may be commenced by his representative within one year after his death."  N.Y. C.P.L.R. 210(a).  Here, the two deceased employees passed away in 2019, prior to expiration of the six-year statute of limitation for NYLL claims.  Defendants argue that because the action was filed in 2022, well more than a year after their death, their state law claim thus are untimely pursuant to § 210(a).

---

[7] Defendants do not cite record evidence to support the statement that both employees passed away in 2019, although the record contains an inadmissible item suggesting that one of the individuals did pass away in 2019.  (*See* 12/21/2024 DiGiulio Decl. ¶¶ 15-17 (citing a GoFundMe page indicating that the employee passed away in November 2019).)  In any event, Plaintiffs have not contested the assertion that both employees passed away in 2019.

Plaintiffs argue that § 210(a) is inapplicable here.  They point to New York state courts holding that § 210(a) cannot be used to shorten statutes of limitation and can only be applied in situations where the claimant died with less than one year remaining on the relevant statute of limitations.  *See* Dkt. 129 (citing *Gordon v. Gordon*, 10 A.D.2d 623, 625, 487 N.Y.S.2d 574, 577 (2d Dep't 1985) (CPLR § 210(a) is "designed to extend periods of limitations that would otherwise expire shortly after a plaintiff's death"); *Barnes v. County of Onodaga*, 103 A.D.2d 624, 630, 481 N.Y.S.2d 539, 545 (4th Dep't 1984), *aff'd sub nom.* 65 N.Y.2d 664, 481 N.E.2d (1985) (because more than one year remained on the statute of limitation at the time of the decedent's death, CPLR § 210 was not applicable); *Gelpi v. New York City Health & Hospitals Corp.,* 90 A.D.2d 503, 504, 454 N.Y.S.2d 891, 892-93 (2d Dep't 1982) (same).)

Defendants counter that the cases holding that § 210(a) cannot be used to shorten the statute of limitations only involve causes of action brought by the executor of a decedent's estate – not a class representative in a class action.[8]  (*See* Dkt. 130 at 2.)  In addition, Defendants point out that while there are cases in which NYLL claims survived an employee's death, those cases addressed survivorship in the context of motions to substitute deceased plaintiffs' representatives where the action was commenced by the deceased plaintiff while they were living.  *See, e.g., Jipeng Du v. Wan Sang Chow*, No. 18-CV-1692, 2019 WL 3767536, at *7 (E.D.N.Y. Aug. 9, 2019) (acknowledging that deceased plaintiffs' NYLL claims survived but denying motion to substitute because the

---

[8] Plaintiffs requested permission to file a sur-reply to respond to Defendants' arguments in their reply brief regarding the deceased class members.  *See* Dkt. 129.  The Court denied Plaintiffs' request to file a sur-reply but has considered both parties' positions on the issue, which the parties addressed in letters to the Court at Dkts. 129 and 130.

proposed substituted party was not a lawful representative of the deceased plaintiff); *Lai Yoong Low v. Tian Yu Inc.,* No. 12-CV-7237, 2015 WL 1011699, at *2 (S.D.N.Y. March 9, 2015) (holding that deceased plaintiff's NYLL claims survived and granting plaintiffs' motion to substitute the deceased plaintiff with the representative of his estate).

Neither deceased putative class member commenced the instant action while living, and the class definition does not include legal representatives of any deceased employees, as other class definitions sometimes do. *See, e.g., In re AXA Equitable Life Insurance Co. COI Litigation,* No. 16-CV-740, 2023 WL 4118054 (S.D.N.Y. June 22, 2023); *Elliot v. Leatherstocking Corp.,* No. 3:10-CV-0934, 2012 WL 6024572, at *2 (N.D.N.Y. Dec. 4, 2012). However, the class definition includes "all tipped employees, servers, runners, bussers and bartenders who worked for Defendants at any time on or after January 20, 2016 at 212 Steakhouse." (Class Certification Order at 3.) The deceased employees meet the definition, and the Court sees no logical reason that the principle that §210(a) cannot be used to shorten the statute of limitations should not apply equally to individual actions as to class actions. In as much as the statute of limitations under the NYLL continues to run, it is still possible for a representative of the deceased employees to stake a claim as a representative of the employee's estate. Accordingly, the two deceased class members should not be excluded from the class.

### c.    Misdesignated Class Member

The parties agree that two employees were mistakenly included in the class list. (Pl. Decert. Mem. at 3 n.4.) But they dispute whether there is one class member – Adrian Pizarro – who should never have been included in the class because he was an untipped "back-of-house" employee. (Def. Decert. Mem. at 4.) Defendants produced Pizarro's

time records and included him on the front-of-house class list.  Later, however, they said that was a mistake because his time records show him clocking in at 2:00 p.m., which was typical of back-of-house employees.  (12/21/2023 Volper Decl. ¶ 4; 12/21/23 Digiulio Decl. ¶ 18-21.)  Indeed, the class members' time records show that Pizarro is the only employee on the class list who consistently clocked in at 2:00 p.m., whereas all front-of-house employees consistently clocked in around 4:00 p.m.  (*See* Dkt. 116-5.)  Plaintiffs have provided no contrary evidence to contradict Defendants' explanation that Pizarro was mistakenly included on the class list.  Accordingly, Pizarro should not be included as a class member.

### 2.    Numerosity Remains Satisfied

By the Court's count, the class now stands at 32 members:  Defendants provided a list of 44 initial class members and then added two more; twelve class members opted out; and three employees initially included in the class list were indisputably mistakenly included.  Whereas at the outset of the case the class size met the typical 40-member threshold, it has dropped below that mark.  Nonetheless, the class still satisfies numerosity in light of the relevant factors, including judicial economy, financial resources of class members, and the ability of members to file individual suits, and the Court would reach the same conclusion even if the class size were reduced to 24 as Defendants contend.  *See Robidoux*, 987 F.2d at 936 ("Determination of practicability depends on all the circumstances surrounding a case, not on mere numbers"); *see also Provencher v. Bimbo Bakeries USA, Inc.*, No. 22-CV-198, 2023 WL 6050398, at *2 (D. Vt. Aug. 7, 2023) (28 class members satisfied numerosity where "(i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their availability to sue

separately, and (v) requests for injunctive relief that would involve future class members" weighed in favor of plaintiffs); *Omar v. 1 Front St. Grimaldi, Inc.,* No. 16-CV-5824, 2019 WL 1322614, at *10 (E.D.N.Y. Jan. 8, 2019) (32 class members satisfied numerosity where "the Court has considered the factors such as the inconvenience of trying individual actions, as well as the financial resources of potential class members, and finds that these factors weigh heavily in favor of a class action in this case"); *Balverde v. Lunella Ristorante, Inc.,* No. 15-CV-5518, 2017 WL 1954934, at *6 (S.D.N.Y. May 10, 2017) (38 class members satisfied numerosity where "the more efficient use of judicial resources counsels in favor of class certification in this matter"); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005) (28 class members satisfied numerosity in light of *Robidoux* factors).

Other than the reduced number of class members, Defendants point to no material changes in the facts or law that would alter the conclusion that numerosity remains satisfied. *See Gortat v. Capala Bros.*, 949 F. Supp.2d 374, 383–84 (E.D.N.Y. 2013) (denying decertification where class was reduced from 28 initial class members to 24 class members because application of the *Robidoux* factors remained unchanged), *aff'd,* 568 F. App'x 78 (2d Cir. 2014) (summary order).

First, judicial economy continues to weigh against decertification because adjudicating all putative class members' cases in one action would eliminate the significant burden on the Court and the parties that would arise if each of the individual cases were to be litigated separately. *See, e.g., Mangahas v. Eight Oranges Inc.,* No. 22-CV-4150, 2024 WL 2801922, at *5 (S.D.N.Y. May 31, 2024) ("[t]he interest of judicial economy is served by proceeding through a class action, which will ensure that the claims

of all the putative class members are addressed and avoid a multiplicity of litigation based on largely the same facts and circumstances"); *Neff v. Flowers Foods, Inc.*, No. 5:15-CV-254, 2019 WL 10750005, at *12 (D. Vt. May 16, 2019) (denying motion to decertify FLSA collective of 33 and granting motion to certify Rule 23 class of 33 and observing that "a class of two or three would save no time or effort. Thirty-three cases would represent a considerable burden to the court and to the parties to prepare and try as individual lawsuits").

Second, the financial resources of class members continue to weigh against decertification because the class members are minimum wage restaurant workers alleging labor law violations regarding their compensation. *Mangahas v. Eight Oranges Inc.*, No. 22-CV-4150, 2024 WL 2801922, at *5 (S.D.N.Y. May 31, 2024) ("[t]he putative class members are restaurant workers who allege labor law violations, including failure to pay minimum wage and overtime, and misappropriation of tips. There is every reason to believe they lack the financial resources to independently participate in the litigation through joinder"); *Carollo v. United Capital Corp.*, 528 F. Supp.3d 37, 53 (N.D.N.Y. 2021) ("[t]he very nature of this case – an employer allegedly taking advantage of minimum-wage workers – also suggests that the proposed class may lack the financial capabilities to bring lawsuits individually") *deMunecas v. Bold Food, LLC*, No. 09-CV-00440, 2010 WL 3322580, at *3 (S.D.N.Y. Aug. 23, 2010) (finding numerosity in part because the plaintiffs, restaurant employees, "have limited financial resources").  Defendants argue that "while the 212 front of house employees are hourly workers, it is not a fair assumption that they do not have the financial resources to file an individual suit in state court."  (Def. Decert. Mem. at 5.)  In support of this assertion, they argue that Martinenko's hourly

average wage including tips reached as much as $52.00 per hour, suggesting she and the other plaintiffs have the financial resources to pursue their own lawsuits. (*Id.* at 5-6.) The W-2 issued by Defendants to Martinenko in 2021 showing that she made a total of $44,504 suggests otherwise. (Dkt. 121-6.) That amount falls well below the median household income in New York City.[9] The Court is not persuaded that that class members have the resources to pursue their litigation individually.

Another factor weighing against decertification is that fear of retaliation may discourage current employees from bringing individual actions. *See Omar,* 2019 WL 1322614, at *9 (finding class of 33 hourly workers sufficiently numerous and observing that "for those current employees who might be inclined to complain about their wages, the fear of retaliation may be a further impediment to their bringing individual actions"). Indeed, there is evidence to suggest Defendants may have improperly influenced the opt out process. In particular, every current employee of the Restaurant opted out of the class using virtually identical forms. (12/21/2023 DiGiulio Decl. ¶ 22; Dkt. 121-3.) Of the eight current employees who sent opt-out notices, seven sent their opt-out notice in the same non-standard envelope by the same method, and five of those were sent from the Restaurant's zip code. (*Id.*) They also included the same idiosyncrasies, including

---

[9] *See* https://www.census.gov/quickfacts/fact/table/newyorkcitynewyork,US/INC910222. The Court takes judicial notice of the publicly disseminated government census information. *See United States v. Style,* 771 F. App'x 43, 44 (2d Cir. 2019) (taking judicial notice of United States Census Bureau facts published at www.census.gov/quickfacts); *Victoria Cruises, Inc. v. Changjiang Cruise Overseas Travel Co.*, 630 F. Supp.2d 255, 263 n.3 (E.D.N.Y. 2008) ("[t]he Court can take judicial notice of government statistics"); *Barkley v. Olympia Mortgage Co.*, No. 04-CV-875, 2010 WL 3709278, at *15 (E.D.N.Y. Sept. 13, 2010), *aff'd*, 557 F. App'x 22 (2d Cir. 2014), as amended (Jan. 30, 2014) (taking judicial notice of census tract maps compiled by the United States Census Bureau).

exaggerated indentations, capitalization of "Class" and writing 212Steakhouse as one word.  (Dkts. 121-3, 121-4.)

Although these facts are hardly conclusive, they suggest that Defendants may have pressured current employees to opt out.  *See, e.g., Romano v. SLS Residential Inc.*, 253 F.R.D. 292, 294 (S.D.N.Y. 2008) (determining that all opt-outs from the class were void where Defendants engaged in deliberate and improper conduct by communicating misleading information to putative class members in an attempt to coerce them into opting out); *Magtoles v. United Staffing Registry, Inc.,* No. 21-CV-1850, 2022 WL 4096180, at *3 (E.D.N.Y. Sept. 6, 2022) (authorizing curative notice to class members who opted out and finding that Defendants' unauthorized email to current employees encouraging them to opt out, providing sample responses, and offering to reimburse them for the costs of mailing the opt out form "was misleading, coercive, and otherwise interfered with the proper administration of this class action").  To be sure, unlike in *Romano* or *Magtoles*, there is no direct evidence here of Defendants improperly communicating with or using abusive practices to coerce current employees into opting out of the class action. However, the fact that every current employee opted out, and that most of them opted out using nearly identical forms, sent from the same zip code, using the same type of envelope, and including the same typographical idiosyncrasies, at least suggests the possibility that Defendants improperly urged current employees to opt-out.  The Court, in its discretion, concludes that this factor also counsels in favor of keeping the class certified.

The two remaining *Robidoux* factors – the geographical dispersion of Plaintiffs and the requests for prospective relief – do not weigh in favor of class certification.  Most of

the class members appear to be in the New York metropolitan area (*see* Dkt. 112-8), and there is no request for prospective relief.  As the other three factors discussed above weigh strongly in favor of maintaining certification, numerosity remains satisfied.

**B.    Commonality**

Rule 23(a) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality generally is considered a "low hurdle."  *In re JPMorgan Chase & Co. Securities Litigation*, No. 12-CV-3852, 2015 WL 10433433, at *3 (S.D.N.Y. Sept. 29, 2015) (internal quotation marks and citations omitted). "[C]ommonality has never been understood to require that all issues must be identical as to each member, but rather require[s] that plaintiffs identify some unifying thread among the members' claims that warrant[s] class treatment."  *Meyer v. United States Tennis Association*, 297 F.R.D. 75, 83 (S.D.N.Y. 2013) (internal quotation marks omitted) (alterations in original).  "What matters to class certification" is whether a class action has "the capacity … to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotation marks omitted).  "In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *Spencer v. No Parking Today, Inc.*, No. 12-CV-6323, 2013 WL 1040052, at *15 (S.D.N.Y. March 15, 2013), *R. & R. adopted*, 2013 WL 2473039 (S.D.N.Y. June 7, 2013); s*ee also Flores v. Anjost Corp.,* 284 F.R.D. 112, 125 (S.D.N.Y.2012) ("[c]ourts in this district have ... focused on whether the employer had company-wide wage policies that injured the proposed class. And claims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been

held to meet the commonality prerequisite for class certification") (citations and internal quotation marks omitted).  Here, the commonality requirement remains satisfied because Plaintiffs allege several unlawful labor practices that apply to all members of the class.

Defendants do not appear to dispute that the commonality requirement is satisfied for the overtime, tip credit, and spread of hours claims.  (*See* Def. Decert. Reply Mem. at 6-7; Def. Decert. Mem. at 6-8.)  Defendants instead reserve that argument for Plaintiffs' wage notice and wage statement claims under NYLL ¶ 195, arguing that the claims cannot be maintained as a class action because they present individualized issues as to each Plaintiff's injuries, if any, and each Plaintiff's Article III standing must be evaluated individually.  (Def. Decert. Mem. at 6-8 (citing *Wal-Mart,* 564 at 350).)

Defendants' argument fails for three reasons.  First, for purposes of the commonality inquiry, it is sufficient that the question of whether Defendants provided accurate wage notices and statements generates a common answer:  they did not.  *Pino v. Harris Water Main & Sewer Contractors Inc.*, No. 17-CV-5910, 2021 WL 3675148, at *8 (E.D.N.Y. Aug. 19, 2021) (commonality satisfied with respect to Plaintiffs' § 195 wage notice and wage statement claims where Defendants showed through testimony that Defendants had a common policy of failing to provide compliant wage notices in violation of New York law); *Espinoza v. 953 Associates LLC,* 280 F.R.D. 113, 124 (S.D.N.Y. 2011) ("[c]ommonality may be met even though class members' individual circumstances differ, so long as their injuries derive from a unitary course of conduct").

Second, even if the § 195 claims required an individualized injury inquiry, the other claims at issue – improper tip credit; failure to pay overtime; failure to pay spread of hours – readily present common issues that are more than sufficient to sustain the class.  *See*

*Shahriar v. Smith & Wollensky Restaurant Group, Inc.,* 659 F.3d 234, 252 (2d Cir. 2011) (commonality satisfied where evidence showed that all Class Members were subject to the same tipping policies a "common policy and practice of not paying the spread of hours premium"); *Gomez v. Lace Entertainment, Inc.,* No. 15-CV-3326, 2017 WL 129130, at *7 (S.D.N.Y. Jan. 6, 2017) ("[c]ourts in this Circuit have routinely found that commonality and typicality is satisfied where, as here, Defendants have a uniform policy, practice, and/or procedure of … failing to ensure that employees receive the minimum wage for all hours").

Here, it already has been deemed established that Defendants engaged in unlawful practices applicable to all front-of-house employees.  Defendants paid all front-of-house employees the tip credit minimum wage for the hours they were clocked in; Defendants paid class members the regular rate for overtime (rather than time-and-a-half); and Defendants did not pay class members a spread-of-hours premium.  (Sanctions Order at 3.)  And, Defendants have admitted that they did not provide statements containing all the information required by NYLL § 195.  (*See* Def. 56.1 ¶ 36.)  The questions of whether Defendants lawfully used the tip credit, whether Defendants paid the lawful overtime rate; whether Defendants paid the spread-of-hours premium for workdays spanning more than ten hours; and whether Defendants provided employees wage notices and statements all generate a common answer:  no.  (*See* Sanctions Order at 3.)  Because these policies and procedures apply to all members of the class, commonality is satisfied.

Third, Defendants' argument that a lack of standing for § 195 claims defeats commonality also fails.  Standing for the NYLL § 195 claims is discussed in detail in Part II below, where the Court concludes there are individualized issues.  That conclusion,

27

however, does not change the commonality analysis given Plaintiffs' undisputed standing for all their other claims (i.e., minimum wage, overtime, spread of hours) and the many common issues that exist as to Plaintiffs' claims collectively. Accordingly, commonality remains satisfied. *See Marisol A. by Forbes v. Giuliani,* 929 F. Supp. 662, 690 (S.D.N.Y. 1996), *aff'd sub nom.*, 126 F.3d 372 (2d Cir. 1997) (commonality "will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class .... Indeed, a single common question may be sufficient to satisfy this rule") (internal quotation marks and citations omitted); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 371 (S.D.N.Y. 2007) ("[o]nce a common question is identified, 'differences among the questions raised by individual members [of the class] will not defeat commonality'") (quoting *German v. Federal Home Loan Mortgage Corp.*, 885 F. Supp. 537, 553 (S.D.N.Y.1995)).

Because Defendants do not challenge certification on the basis of the other Rule 23(a) elements of adequacy and typicality, the Court now turns to whether the requirements of Rule 23(b) remain satisfied.

## C.    Predominance

Having found that the elements of Rule 23(a) remain satisfied, the next inquiry is whether the action remains qualified for certification as one of the types of classes recognized by Rule 23(b). Plaintiffs sought and obtained certification pursuant to Rule 23(b)(3). A class qualifies for certification under Rule 23(b)(3) if it meets the prerequisites of Rule 23(a), and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating

the controversy." Fed. R. Civ. P. 23(b)(3). Here, common questions predominate, and a class action is the superior means of proceeding.

Predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these issues are more substantial than the issues subject only to individualized proof." *In re U.S. Foodservice Inc. Pricing Litigation*, 729 F.3d 108, 118 (2d Cir. 2013). At the same time, the predominance inquiry does not require a plaintiff to show that there are no individual issues. *In re NYSE Specialists Securities Litigation*, 260 F.R.D. 55, 75 (S.D.N.Y. 2009). Additionally, "the Second Circuit has routinely found that individualized calculations of damages do not defeat the predominance requirement." *Enea v. Bloomberg, L.P.*, No. 12-CV-4656, 2014 WL 1044027, at *7 (S.D.N.Y. March 17, 2014).

This Court previously found that predominance was satisfied because even though there were individualized issues related to damages, including number of hours worked and regular rate of pay for each employee, those issues did not predominate over the questions of (1) whether Defendants did or did not provide written notice of the tip credit and whether use of the tip credit was unlawful; (2) whether Defendants failed to pay time-and-a-half for overtime; (3) whether Defendants paid a premium for a workday spanning more than ten hours; and (4) whether Defendants provided class members with compliant wage notices and wage statements. *Martinenko v. 212 Steakhouse, Inc.*, No. 22-CV-518, 2023 WL 2919766, at *20 (S.D.N.Y. Apr. 12, 2023), R. & R. adopted, 2023 WL 3160118 (S.D.N.Y. Apr. 27, 2023) . Defendants have presented no factual changes, no significant

intervening event, nor any compelling reasons to disturb the Court's original conclusion. Accordingly, predominance remains satisfied.

Defendants primarily repeat the arguments raised above with respect to commonality, i.e., that predominance is not satisfied because there are individualized questions as to the injury each class member suffered. (*See* Def. Decert. Mem. at 9-10 ("[t]he individual issues presented here are not merely a calculation of damages, but the controversy of whether each class member suffered a particular injury in fact and thus [has] standing to maintain the claim in this Court").) However, this argument fails for the same reasons set forth above. The common policy issues predominate over the individualized damages issues.

Defendants also seem to argue that individual damages issues surrounding overtime claims and spread of hours claims predominate because there is no way to know whether each employee consistently took an uninterrupted meal break and whether Defendants' clock-in/clock-out records accurately reflect the time plaintiffs were working. (*See* Def. Decert Reply at 6-7.) But as discussed further below, Defendants cannot contest the accuracy of their own records and are unable to show a genuine dispute of fact as to whether class members were paid for non-compensable time. Regardless, the Second Circuit has repeatedly found that "common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 139 (2d Cir. 2001), *abrogated on other grounds by In re Initial Public Offerings Securities Litigation*, 471 F.3d 24 (2d Cir. 2006); *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 237

(same); *Sykes v. Mel S. Harris and Associates LLC*, 780 F.3d 70, 81 (2d Cir. 2015) (same); *Shahriar*, 659 F.3d at 253 (citing *In re Visa Check* and holding that common issues predominated in NYLL action where Defendants did not deny that all servers were subject to uniform practices, and plaintiffs were likely to prevail on liability, even though there were individualized damages issues).

Unsurprisingly then, District courts in this Circuit regularly have found predominance satisfied with respect to overtime, minimum wage, and spread of hours, even when other individualized issues such as damages inquiries remained. *See, e.g., Bayne v. NAPW, Inc.,* No. 18-CV-3591, 2021 WL 4822426, at *8 (E.D.N.Y. Aug. 10, 2021), *R. & R. adopted*, 2021 WL 4820603 (E.D.N.Y. Oct. 15, 2021) ("[w]here Plaintiffs allege that all [c]lass [m]embers were systematically underpaid due to the same policy and practice, and they have provided testimony and time records corroborating these claims, differences as to the number of hours worked by or wages paid to each class member do not preclude class certification") (internal quotation marks omitted); *Manley v. Midan Rest*aurant Inc., No. 14-CV-1693, 2016 WL 1274577, at *6 (S.D.N.Y. March 30, 2016) (predominance satisfied where "all class members allege that they were subject to Defendants' violations of the NYLL … including failure to provide minimum wages; failure to pay overtime pay; [failure to pay] spread of hours pay; misappropriation of gratuities; and unlawful deductions from wages"); *Lizondro-Garcia v. Kefi LLC,* 300 F.R.D. 169, 177 (S.D.N.Y. 2014) ("[t]he central issues in this litigation are whether defendants had policies that denied their employees overtime, spread-of-hours pay and tips. Because defendants' practices applied to members of the putative NYLL class uniformly, questions regarding the legality of those policies are about the most perfect questions for class treatment")

(internal quotation marks omitted); *Shabazz v. Morgan Funding Corp.*, 269 F.R.D. 245, 250-51 (S.D.N.Y. 2010) ("[a]ny class action based on unpaid wages will necessarily involve calculations for determining individual class member damages, and the need for such calculations [does] not preclude class certification").

Here, numerous common questions of liability predominate over individualized issues – which include damages and standing for NYLL § 195 claims – because all class members were subject to uniform policies and procedures with respect to Defendants' failure to notify employees of the tip credit minimum wage; failure to pay overtime; failure to pay spread of hours premiums, and failure to provide wage notices and statements. Predominance remains satisfied.

## D.    Superiority

Under Rule 23(b)(3), a court must consider several factors to determine whether a class action is superior to individual actions:  "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3).  These factors continue to weigh in favor of keeping the instant class certified.  The arguments that Defendants raise to the contrary do not stand up to scrutiny.

Defendants first repeat their arguments about standing and individualized injury inquiries.  They argue that "superiority cannot be established as the question of injury-in-fact as to Plaintiffs [sic] tip credit and New York Labor wage notice and statement claims must be made on an individualized basis."  (Def. Decert. Mem. at 11.)  Again, however,

the presence of individualized damages issues does not eliminate superiority of proceeding as a class.[10]  *See Shabazz*, 269 F.R.D. at 250–51 (finding superiority satisfied with respect to class bringing NYLL claims where "the Court is not convinced that any unique manageability problems exist in this proceeding that distinguish the proposed class from any other class action for unpaid wages, or from the collective action conditionally certified in this case" and observing that "[a]ny class action based on unpaid wages will necessarily involve calculations for determining individual class member damages, and the need for such calculations do not preclude class certification"); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 200 (S.D.N.Y. 2011) (superiority satisfied for class of restaurant workers alleging NYLL overtime and spread of hours violations despite Defendant's argument that "the job duties and thus the projected shift hours differ among the different types of tipped employees across the three [restaurant] locations"); *Alonso v. Uncle Jack's Steakhouse, Inc.,* No. 08-CV-7813, 2011 WL 4389636, at *5 (S.D.N.Y. Sept. 21, 2011) (holding that "class action is superior to other means of adjudicating the action" and reasoning that "although individual inquiries may be necessary as to the amount of hours worked for purposes of the overtime claim, all other aspects of this case are subject to generalized proof and applicable to the class as a whole")*. See generally Morris* v. *Alle Processing Corp.*, No. 08-CV-4874, 2013 WL 1880919, at *14 (E.D.N.Y. May 6, 2013) ("a class action is superior to other available

---

[10] On reply, Defendants also include a single sentence asserting that superiority is not satisfied for the overtime and spread of hours claims "given that individual trials would be necessary."  (Def. Decert. Reply at 7.)  That "given" is mistaken.  Individual trials would not be necessary on the overtime and spread of hours claims because damages can be calculated using Defendants' time records alone, as discussed in Part II below.

methods, given that the [NYLL] claims are nearly identical to the FLSA claims, which will be tried collectively in this Court").

Defendants next argue that class treatment is not the superior method of resolution because the aggregation of statutory penalties, especially where there is no injury-in-fact, raises due process and manageability issues. (Def. Decert. Mem. at 11-12.) Defendants assert that the damages for Plaintiffs' § 195 claims would amount to $10,000 for each class member, which would have a devastating financial impact on Defendants, who are already in debt. (*Id.* (citing *Parker v. Time Warner Entertainment Co., L.P.,* 331 F.3d 13, 22 (2d Cir. 2003). Defendants argue that because the damages award would be disproportionately large compared to the actual harm suffered by the individual class members, continuing in a class action is not the superior manner of proceeding.

In *Parker*, the potential class could have included up to 12 million individuals who might each be entitled to a recovery of $1,000 thus potentially exposing Defendants to a $12,000,000,000 judgment. The district court denied certification on the basis that certifying a class would lead to the Defendant's "financial demise." The Second Circuit reversed and determined that the district court's conclusion was unsupported by the record. *Parker*, 331 F.3d at 22. The Court acknowledged the district court's "legitimate concern that the potential for a devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues." *Id.* And the court went on to say that "in a sufficiently serious case the due process clause might be invoked, not to prevent certification, but to nullify that effect and reduce the aggregate damage award." *Id.* Although *Time Warner* and Defendants are obviously of quite disparate means, it is hard to imagine that the instant case is

"sufficiently serious" to implicate due process: the class is small, and Plaintiffs seek a total of $255,900 in damages on their § 195 claims. (Pl. Decert. Mem. at 17.). In any event, even if the case was "sufficiently serious," class certification would be unaffected. *Parker,* 331 F.3d at 22.

Finally, Defendants argue that superiority is not satisfied for Plaintiffs' § 195 claims because those claims should be brought on an individualized basis in state court. (Def. Decert. Mem. at 12.) Defendants cite NY CPLR § 901(b), which provides that unless a statute imposing a penalty specifically authorizes recovery in a class action, recovery of a penalty cannot be maintained as a class action. NY CPLR § 901(b). Because § 195 does not expressly authorize class actions, Defendants argue, Plaintiffs' § 195 claims must be brought individually in state court. Not so. The Supreme Court held in *Shady Grove Orthopedics, P.A. v. Allstate Insurance Co.* that § 901 conflicted with and was pre-empted by Rule 23. 559 U.S. 393, 393 (2010).

"[C]lass actions can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery." *In re U.S. Foodservice Inc. Pricing Litigation*, 729 F.3d at 130 (citing *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 617 (1997)). "District courts in this Circuit routinely hold that a class action is superior where, as here, potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation and many potential class members are currently employed by Defendant." *Morris,* 2013 WL 1880919, at *14 (holding superiority was satisfied with respect to a class bringing NYLL § 195 claims) (internal quotation marks omitted). In short, superiority is satisfied here, as "substituting a single class action for numerous trials

in a matter involving substantial common legal issues and factual issues susceptible to generalized proof will achieve significant economies of time, effort and expense, and promote uniformity of decision." *In re U.S. Foodservice Inc. Pricing Litigation*, 729 F.3d at 130-31 (citing Fed. R. Civ. P. 23 advisory committee's notes) (internal quotation marks omitted).

Finally, "[t]here are a number of management tools available to a district court to address any individualized damages issues*." In re Nassau County Strip Search Cases*, 461 F.3d 219, 231 (2d Cir. 2006) (quoting *In re Visa Check*, 280 F.3d at 141).  These include (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class.  *Id.*; *see also* Fed. R. Civ. P. 23(c)(4) ("[w]hen appropriate, (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class").  Individualized damages issues in this case do not defeat superiority.

The requirements of Rule 23(a) and Rule 23(b) remain satisfied.  The class should not be decertified, at least not without first resolving the instant summary judgment motion.

## II. Summary Judgment

Plaintiffs have moved for summary judgment as to liability and damages on all claims for all class members.  Specifically, Plaintiffs move for summary judgment on all claims for (1) NYLL minimum wage violations based on Defendants' unlawful use of the

tip credit; (2) overtime violations under the FLSA and NYLL; (3) failure to pay the spread of hours premium under NYLL; and (4) failure to provide wage notices and wage statements as required under NYLL § 195.

Defendants do not genuinely dispute that they failed to provide notice of the tip credit, that they did not pay an overtime premium, that they did not pay a spread of hours premium, and that they did not provide wage notices and wage statements required under NYLL § 195. However, Defendants argue that summary judgment should be denied as to Plaintiffs' tip credit, overtime, and spread of hours claims because material fact disputes exist as to whether employees' clock-in/clock-out times reflect actual hours worked, whether any overtime was actually worked, and whether the claimed overtime was "compensable" work time. (Def. SJ Mem. at 8.[11]) In addition, Defendants argue that the Court must deny summary judgment as to liability on Plaintiffs' NYLL § 195 wage notice and wage statement claims because the Plaintiffs do not have Article III standing to bring those claims in federal court. (*Id.* at 7.)

The Court finds no genuine dispute of material fact that Defendants did not comply with the relevant provisions of the NYLL and FLSA. The Court also finds that Defendants' time records reflect the compensable hours employees worked. Accordingly, summary judgment should be granted as to liability and damages on Plaintiffs' tip credit, overtime, and spread of hours claims. However, while there is no dispute that Defendants violated the wage notice and wage statement provisions under NYLL § 195, there are unresolved

---

[11] "Def. SJ Mem." refers to Opposition To Plaintiffs' Motion For Summary Judgment filed Dec. 21, 2023 at Dkt. 119.

questions about standing that, except for Huk, merit denial of summary judgment as to Martinenko and class members' NYLL § 195 wage and notice claims.

## FAILURE TO PAY REQUISITE WAGES

Plaintiffs contend (1) they were not paid the minimum wage as required by law due to Defendants' failure to notify Plaintiffs they were taking a "tip credit," (2) they did not receive time-and-a-half pay for overtime in excess of 40 hours per, and (3) they were not paid a "spread-of-hours" premium for days on which their workday spanned more than ten hours.  The Court agrees on all counts.

### A.    Minimum Wage Violations Based on Unlawful Use of Tip Credit

Summary judgment should be granted on Plaintiffs' minimum wage claim based on Defendants' unlawful use of a tip credit because there is no genuine dispute that Defendants paid class members pursuant to a tip credit without providing the required written notice.  Employers in New York are required to pay non-exempt employees at least the minimum wage.  NYLL § 652.  However, employers may deviate from the statutory minimum wage for tipped employees by taking a "tip credit" against employees' wages if certain requirements are met.  N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") 12 §§ 146-1.3, 146-2.2.  In other words, an employer may "pay a tipped worker a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage."  *Gamero v. Koodo Sushi Corp*., 272 F. Supp.3d 481, 500 (S.D.N.Y. 2017), *aff'd*, 752 F. App'x 33 (2d Cir. 2018).

Employers seeking to take a tip credit must satisfy strict requirements.  Notice of the tip credit must be in writing and provided both in English and the employee's primary

language.  12 N.Y.C.R.R. § 146-2.2(a).  Once an employer has provided written notice of the tip credit, the employer must obtain a signed acknowledgement of the tip credit notice, which must be kept on file for six years.  *Id.* § 146-2.2(c).  "The employer has the burden of proving compliance with the notification provisions."  *Id.* § 146-2.2.  If an employer does not provide the written notice as described in § 146-2.2, the employer may not take a tip credit.  *See, e.g., Villanueva v. 179 Third Ave. Restaurant Inc.,* 500 F. Supp.3d 219, 235 (S.D.N.Y. 2020), *R. & R. adopted,* 2021 WL 2139441 (S.D.N.Y. May 26, 2021).

Here, it is undisputed that Defendants took a tip credit from class members' wages without providing the notice to employees that New York law requires.  There is no genuine dispute that Defendants paid all class members who clocked in and out the applicable New York tip credit minimum wage – not the regular minimum wage – for the hours for which they were clocked in.  (Sanctions Order at 3; Def. 56.1 ¶ 16 (admitting that "Defendants paid all front-of-house employees who clocked in and out on 212 Steakhouse's POS system the applicable New York tip credit wage for the hours for which they were clocked in").)  There is also no genuine dispute that Defendants failed to provide notice of their taking the tip credit as required under 12 N.Y.C.R.R. § 146-2.2.  (Def. 56.1 ¶ 26 ("Defendants admit that written wage notices were not provided, but Defendants did post federal and state wage hour notices."), ¶ 27 (stating that "Defendants did provide wage statements to employees prior to 2019 but not the type of statements characterized by Plaintiff," which included notices that "informed them of their hourly pay rate, overtime hourly pay rate, and the amount of tip credit that was being taken from their wages.")[12]

---

[12] Defendants' Counterstatement of Facts contains denials and assertions that are not supported by citation to relevant admissible evidence, or, in some instances, any citation to the record at all.  *See, e.g.,* Def. 56.1 ¶¶ 16, 18, 20, 27, 31, 33, 35, 42.  Local Civil Rule

Although Volper asserted in deposition that he provided NYLL compliant wage notices to some employees, possibly before 2022, he could not provide details about when and to whom those notices were provided, nor could he produce a single compliant notice. (Volper Dep. 115:20-116:18; 118:8-119:10; Def. 56.1 ¶¶ 26-27.) That vague testimony is insufficient to create a dispute of fact that legally adequate notice was provided. *See Chang v. Loui Amsterdam, Inc.*, No. 19-CV-3056, 2022 WL 4586100, at *8 (E.D.N.Y. Sept. 29, 2022) ("[c]ourts in this Circuit have found witness testimony regarding the notice provided to employees insufficient to create a triable issue of fact with respect to tip credit eligibility where that testimony does not establish that the plaintiff was provided all the information enumerated by the tip credit notice regulation or that plaintiff understood the manner in which a tip credit would be taken") (collecting cases).

And, although Defendants produced pay stubs from 2021 for Martinenko and Huk that listed their hourly wage rate, cash tips, tax information, and meal contribution deduction, the pay stubs did not explain that Defendants took a tip credit against employees' hourly rate; nor were they signed by the employees. (*See* Dkt. 115-6.) Defendants produced no "wage statements" of any kind for the rest of the class. (Pl. 56.1 ¶¶ 25-27, 30-31; Def. 56.1 ¶¶ 25-27, 30-31.) Even if Defendants had provided paystubs

---

56.1 requires a party to specifically dispute material facts set forth in an opposing party's statement with citations to evidence that would be admissible at trial. Local Civil Rule 56.1 (b)-(d). Accordingly, the Court disregards Defendants' unsupported assertions, and Plaintiffs' facts are deemed admitted where they are supported by record evidence. *See, e.g., Loucar v. Boston Market Corp.,* 294 F. Supp.2d 472, 478 (S.D.N.Y. 2003) (deeming admitted defendant's Rule 56.1 statement where "plaintiff offers nothing but unsupported, conclusory statements and denials to refute defendant's properly-supported statements of material fact"); *see generally Giannullo v. City of New York,* 322 F.3d 139, 142 (2d Cir.2003) (unsupported facts in moving party's Local Rule 56.1 statement disregarded).

like those for Martinenko and Huk for other employees, they would not be sufficient to satisfy the tip-credit notice requirements.  *See Galvez v. 800 Ginza Sushi Inc.,* No. 19-CV-8549, 2022 WL 748286, at *10 (S.D.N.Y. March 11, 2022) (finding individual defendants' testimony insufficient where defendant "did not ... testify that he also described how tipping interacted with [p]laintiffs' wages," noting that "[e]mployers must state the intent to take a tip credit specifically, and not just, for example, inform employees that they will receive wages augmented by tips."); *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp.2d 253, 289–90 (S.D.N.Y. 2011) ("Given the 'strictly construed' nature of the notice requirement," defendants' evidence of a government poster informing employees that minimum wage obligations exist "is insufficient to create a triable issue of fact as to whether the notice requirement has been satisfied, as it compels only the conclusion that the tipped employees knew they were tipped and that minimum wage obligations exist") (internal quotation marks omitted).

Accordingly, there is no triable issue as to whether Defendants satisfied the tip-credit notice requirement – they did not.  As a result, Defendants were required to pay class members the full minimum wage without taking a tip credit against employees' hourly rates.  *See Lopez v. MNAF Pizzeria, Inc.*, No. 18-CV-06033, 2021 WL 1164336, at *10 (S.D.N.Y. March 25, 2021) (finding Defendants could not claim a tip credit and granting summary judgment as to liability on Plaintiff's minimum wage claims where there was no issue of material fact whether Defendants failed to comply with the NYLL); *Hernandez v. Jrpac Inc.*, No. 14-CV-4176, 2016 WL 3248493, at *25 (S.D.N.Y. June 9, 2016) ("[a]n employer that fails to comply with the notice requirements under the NYLL may not utilize the tip credit to satisfy its minimum wage and overtime obligations"); *Inclan*

*v. New York Hospitality Group, Inc.*, 95 F. Supp.3d 490, 498 (S.D.N.Y. 2015) (finding restaurant liable under the NYLL for plaintiffs' unpaid minimum wages without a tip credit allowance where Defendants acknowledged not providing proper tip-credit notification under the NYLL). Summary judgment should be granted in favor of Plaintiffs and the class on their NYLL claims that Defendants failed to pay the minimum wage.

## B.    Overtime and Spread of Hours Violations

Summary judgment should be granted on Plaintiffs' overtime and spread of hours claims because there is no genuine dispute that Defendants did not pay Plaintiffs the required rate of one and one-half times their regular hourly wage for hours worked in excess of forty hours per week and failed to pay a spread of hours premium for any day in which Plaintiffs' spread of hours exceeded ten hours. Both the FLSA and New York law require an employer to pay an overtime wage of one and one-half times the regular rate for each hour worked in excess of forty hours per work week. 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 146–1.4. In addition, under New York law, an employee is entitled to an additional hour of pay at the minimum hourly rate on each day on which his spread of hours exceeds ten. 12 N.Y.C.R.R. § 146–1.6(a). "Spread of hours" is defined as "the length of the interval between the beginning and end of an employee's workday." *Id.* Here, it has been established that class members were paid their regular hourly rate for all hours during which they were clocked in, even when those hours exceeded forty hours per week. (Sanctions Order at 3; Def. 56.1 ¶ 18.) It is also has been established that Plaintiffs did not receive a spread of hours premium for days on which their workday, as reflected by Defendants' time records, lasted longer than ten hours. (Sanctions Order at 3; Pl. 56.1 ¶ 19; Def. 56.1 ¶ 19.)

Defendants seek to avoid the consequence of those facts by disputing the accuracy of their own records.  (Def. SJ Mem. at 8, 13-17.)  Specifically, while Defendants do not dispute that they failed to pay Plaintiffs overtime and spread of hours premiums for the hours Plaintiffs were clocked in, Defendants nonetheless argue that summary judgment should be denied because genuine disputes exist as to whether employees were actually working during all of the hours they were clocked in and whether their claimed overtime was in fact compensable time.[13]  (Def. SJ Mem. at 8.)  Plaintiffs argue that Defendants' records reflect the compensable hours Plaintiffs worked inasmuch as Defendants paid Plaintiffs for all the hours they were clocked in, and there is nothing in the Defendants own records that suggests class members did not work during the hours they were clocked in.  (Pl. SJ Mem. at 15.)  Plaintiffs are correct.

---

[13] Defendants also assert that summary judgment must be denied as to the overtime and spread of hours claims because most class members have no claim to overtime or, even if they do, their overtime hours are de minimis.  (Def. SJ Mem. at 8.)  Second Circuit law says otherwise; if an employer "failed to compensate [employees] properly for even one hour of overtime, liability is established.  Anything else relates only to damages." *Estrella v. P.R. Painting Corp.*, 356 F. App'x 495, 497 (2d Cir. 2009).  Similarly, Defendants' assertion, in a footnote (Def. SJ Mem. at 13 n.15), that the class should be decertified as to the overtime and spread of hours claims because less than 20 class members are claiming overtime also fails.  Although some members of the class did not work overtime, the other issues common to the class, including tip credit, wage notice, and wage statements claims predominate. *See In re Air Cargo Shipping Servs. Antitrust Litigation*, No. 06-MD-1175, 2014 WL 7882100, at *44 (E.D.N.Y. Oct. 15, 2014), R. & R. adopted, 2015 WL 5093503 (E.D.N.Y. July 10, 2015) ("Nothing in our class certification jurisprudence requires that every single class member suffer an impact or damages, regardless of the size of the class. To the contrary, courts have routinely recognized what an unrealistic burden this would put on plaintiffs.") (collecting cases).

1.    **Accuracy Of Defendants' Time Records**

"Where an employer's payroll records are inaccurate or incomplete, courts apply a burden-shifting scheme to determine whether an employee has established that he was underpaid, and what damages he suffered." *Gamero,* 272 F. Supp.3d at 497.  The burdens are similar under both the FLSA and NYLL.  *Id.*  Under the FLSA, "[w]hen an employer fails to maintain accurate and complete records of the hours employees work and the amounts they are paid, the plaintiff-employee need only ... submit 'sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred.'" *Gonzalez v. Masters Health Food Serv. In*c., No. 14-CV-7603, 2017 WL 3835960, at *16 (S.D.N.Y. July 27, 2017) (quoting *Reich v. Southern New England Telecomms. Corp*., 121 F.3d 58, 66 (2d Cir. 1997).)  An employee discharges his burden at this first step if he can prove that he "in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 687 (1946).  The employee's burden is "not high" and may even be met "through estimates based on his own recollection." *Kuebel v. Black & Decker Inc*., 643 F.3d 352, 362 (2d Cir. 2011).

Once an employee makes this showing, the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to "negative the reasonableness of the inference to be drawn from the employee's evidence."  *Anderson*, 328 U.S. at 687-88.  Under the NYLL, the employer's burden is even heavier, as an employer can only satisfy its burden by coming forward with evidence

of the precise amount of work performed (and not just by undermining the reasonableness of the employee's evidence.)  *See Galvez*, 2022 WL 748286, at *8.

Here, Plaintiffs have met their burden of producing evidence they were underpaid by using Defendants' own time records to show "the amount and extent of work as a matter of just and reasonable inference."  *See Nam v. Permanent Mission of Republic of Korea to United Nations*, 657 F. Supp. 3d 382, 410 (S.D.N.Y. 2023) (Plaintiff satisfied his burden to show the amount and extent of his work where he submitted time records showing when he started and stopped working, and testified that he regularly worked from 9:00 a.m. to 6:00 p.m. and defendant did "not dispute that Plaintiff recorded his hours for his employer's review"); *Mascol v. E & L Transportation, Inc.*, 387 F. Supp. 2d 87, 95 (E.D.N.Y. 2005) (employees in FLSA actions satisfied their burden to show the amount worked with evidence consisting of "numerous weekly pay stubs explicitly setting forth the hourly rates at which they were paid and in many cases the hours worked at these hourly rates"). The burden thus shifts to Defendants to rebut Plaintiffs' evidence.

Defendants advance two arguments in an attempt to rebut the accuracy of their own records. They argue that: (1) Plaintiffs did not clock out for meal breaks, which were not considered compensated time that should count toward overtime calculations (even though the Court already deemed established that plaintiffs were paid the tip credit minimum wage for the hours for which they were clocked in) (*see* Sanctions Order at 3), and (2) Martinenko stayed at the Restaurant after her shift ended, but remained clocked in.  (Def. SJ Mem. at 4, 6.)  The Court concludes that Defendants' evidence is insufficient to satisfy their burden to "negative the reasonableness of the inference to be drawn from the employees' evidence" under the FLSA, and thus also insufficient to satisfy the NYLL's

more demanding burden of coming forward with evidence of the precise amount worked. Galvez, 2022 WL 748286, at *7.  The Court first discusses the issue related to breaks and then the issue related to compensable hours.

### 2.    Breaks

Defendants argue that employees did not clock out for meal breaks, which were not compensable time.  (Def. SJ Mem. at 7, 13, 16.)  They argue that "for an employee working a 5-day schedule, this amounts to 2.5 hours per week, which would eliminate the claimed overtime for a large percentage of the class."  (*Id.* at 13.)  Plaintiffs counter that Defendants treated meal breaks as compensable time because they paid class members for all time clocked in.  (Pl. SJ Reply at 4.)  Under such circumstances, courts regularly reject the argument that Defendants try to make here.

"Under the FLSA, and by extension the NYLL, all of the time worked during a continuous workday is compensable, save for bona fide meal breaks."  *Hart v. Rick's Cabaret International, Inc.*, 60 F. Supp. 3d 447, 476 n.15 (S.D.N.Y. 2014).  "[M]eal periods are compensable under the FLSA[,]" however, "when employees during a meal break perform duties predominantly for the benefit of the employer."  *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58, 65 (2d Cir. 1997).  Meal breaks also are compensable where Defendants had an established agreement or practice of treating break time as hours worked.  *See, e.g., Alonso v. 144 Ninth Gotham Pizza, Inc.,* No. 12-CV-3133, 2016 WL 4257526 (S.D.N.Y. Aug. 10, 2016) ("Allowing an employer to treat meal breaks as compensable time but then claim an ex post facto credit invites fraud and undermines the goals of the federal and New York labor laws."); *Scott v. City of New York*, 592 F. Supp.2d 386, 408 (S.D.N.Y. 2008) (rejecting defendant's argument "that its own

FLSA records must be recalculated in order to exclude plaintiffs' meal periods from their hours worked where longstanding NYPD practices evinced an agreement to treat meal periods as working hours, including payment for such hours and – more importantly – inclusion of such hours in the NYPD's own FLSA calculations").

Plaintiffs have presented substantial evidence that Defendants had an established practice of treating meal breaks as compensable. The evidence includes not only Defendants' own records, but also testimony from Huk and Martinenko that they worked during their meals, that they were never told that the meals were not compensable, and that they were never told to clock out for meals. For example, Huk testified that employees did not have a "formal break" and that employees were usually served a meal at the beginning of the shift but "we didn't really have time to do it because there were things we had to take care of. So it wasn't consistent." (Huk Dep. 20:16-25; 21:14-22.) Huk also testified that she would start eating but would get up if there was work to do, such as answering a phone. (Huk Dep. 21:19-22.) Martinenko similarly testified that there was "not really" a meal break, and that Defendants "would provide food, but there was no break specifically." (Martinenko Dep. 61:8-10.) Martinenko also testified that sometimes she would sit to eat the meal but that most of the time when the meal was ready, the restaurant was already opening up. (*See* Martinenko Dep. 62:3-14 ("a lot of times I had to eat my meal inside the kitchen because there were already clients -- customers inside the restaurant. So, like, why would I clock out and clock in if I'm biting a meal and then I'm going and serving a customer.") Both employees also testified that no one told them to clock out while they were eating a meal during their shifts. (Martinenko Dep. 85:9-12; Huk Dep. 21:13-17.)

Defendants argue that Huk and Martinenko's testimony shows that their meal breaks were inconsistent and creates a factual question as to how inconsistent the breaks were and whether employees were substantially working during their breaks. (Def. SJ Mem. at 15.)  Additionally, Defendants argue that Plaintiffs have not provided evidence as to how the rest of the class spent their breaks.  (*Id.* at 16.)  But Defendants do not provide sufficient admissible evidence to "negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S. at 687-88.  Regardless of whether Plaintiffs consistently worked through each meal break, Defendants' only evidence that meal breaks were to be treated as non-compensable is Volper's declaration, which is not based on personal knowledge and contradicts his earlier testimony.

Volper initially testified at deposition that he did not police whether employees clocked in or out, and that he did not believe he required employees taking breaks to clock in and out.  (Volper Dep. 74:9-74.)  In his declaration, however, Volper testified that he "expect[s] the front of house employees to take a full 30 to 40 minute meal break." (12/21/23 Volper Decl. ¶ 11.)  Whether that was his expectation is irrelevant because there is no evidence that he communicated that expectation to employees.  Volper's conclusory statements that he "did not believe the front of the house employees worked overtime" and that "the overtime and spread of hours sought in this case is attributable to non-compensable time in which an employee remained clocked in" are insufficient to create a material issue of fact.  (12/21/23 Volper Decl. ¶ 21.)  [A] party cannot create a triable issue of fact merely by stating in an affidavit the very proposition they are trying to prove," as "[c]onclusory allegations cannot by themselves create a genuine issue of

material fact where none would otherwise exist." *Galvez*, 2022 WL 748286, at *8 (quoting *Hicks v. Baines*, 593 F.3d 159, 167 (2d Cir. 2010).)  If anything, the evidence Defendants put forth highlights why they are unable to meet their burden of negating the inference that their time records reflect compensable hours worked.  Volper admits that he was not present most of the time in the Restaurant, that the employees policed themselves, and that there was no on-site manager watching employees during their shifts.  (12/21/23 Volper Decl. ¶ 7, 10,12.)  Accordingly, there is no evidence Defendants could present that would show "the precise amount of work performed" or "negative the reasonableness of the inference to be drawn from the employees' evidence," *Anderson*, 328 U.S. at 687-88, which, again, includes Defendants own time records.

### 3.    Failure to Clock Out After Shifts

Defendants' argument that Plaintiffs failed to clock out after their shifts ended is similarly insufficient to raise a genuine dispute as to the accuracy of Defendants' time records.  Defendants argue that their records do not accurately reflect time worked because class members – particularly Martinenko – stopped working before they clocked out.  (Def. SJ Mem. at 5.)  But those assertions are speculative and unsupported by admissible evidence. Defendants first cite Martinenko's testimony that "after the restaurant was closed, I could have stayed at the bar."  (Martinenko Dep. 31:22-25.)  That statement is a far cry from saying that she remained clocked in after finishing her shifts, and there is nothing else in her testimony to suggest that she did.  Defendants also state that Martinenko stayed at the restaurant without clocking out after her shift ended to wait for her cash tips and the accounting of her portion of the tip pool.  (Def. SJ Mem. at 5.) Again, the only evidence they cite is Volper's declaration, which, as discussed above, is

not based on personal knowledge because Volper was not at the restaurant to observe what Martinenko did.  (*See* 12/21/23 Volper Decl. ¶ 15.)

Volper avers that "Martinenko regularly stayed in the restaurant after her shift ended" and that "a review of her time in and time out records shows that she did not clock out when her shift ended."  (*Id.*)  In support of this assertion, Volper attached to his declaration a demonstrative chart that Volper describes as reflecting the time between Martinenko's last check closing and the time Martinenko actually clocked out for a one-month period.  (*See* Dkt. 119-5.)  He states that the time amounts to over 20 hours for the month of December 2021 and that "if this analysis is extended throughout her employment, the overtime and spread of hours would be completely wiped out."  (*Id.*)  Volper's demonstrative is based in part on records that Defendants failed to produce during discovery, including a heavily redacted document purporting to show the times at which customer transactions closed during the month of December 2021 (the "closed check document").  (*See* Dkt. 119-7.)    None of that evidence, however, is admissible, both because it was not produced in discovery or identified in initial disclosures, and it is hearsay.

As the Federal Rules of Civil Procedure direct, "if a party fails to provide information … as required by Rule 26 … the party is not allowed to use that information … to supply evidence on a motion, … unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Untimely disclosures are "substantially justified" when a reasonable person could be satisfied that the "parties could differ as to whether the party was required to comply with the disclosure request, or if there exists a genuine dispute concerning compliance." *IBM Corp. v. Micro Focus (US) Inc.*, No. 22-CV-9910,

2024 WL 2240281, at *2 (S.D.N.Y. May 17, 2024) (citing *AIG Global Asset Management Holdings v. Branch et al.*, No. 04-CV-8803, 2005 WL 425494, at *1 (S.D.N.Y. Feb. 18, 2005). Here, Defendants' failure to produce the document is neither substantially justified nor harmless. The closed check document, if it is what Volper asserts it to be, is relevant and responsive to Plaintiffs' Requests for Production served over two years ago. (*See* Plaintiffs' First Request for the Production of Documents, attached as Ex. 4 to 11/16/23 DiGiulio Decl., Dkt. 115-4).

Defendants offer no argument as to why they did not produce it. The Court previously sanctioned Defendants for failing to comply with their discovery obligations, including production of documents. (Sanctions Order.) Defendants thus are no stranger so to the consequences of failing to produce documents and, having been sanctioned, had every incentive to produce documents if they planned to rely on them. Their failure to produce the closed check document in response to Plaintiffs' document requests or at any juncture prior to summary judgment thus cannot be substantially justified and Defendants do not even make an effort to do so. And, far from being harmless, Defendants' use of the document for the first time on summary judgment is highly prejudicial because they seek to use it to create a material dispute of fact where there otherwise would not be one. *See Ritchie Risk-Linked Strategies Trading v. Coventry First LLC*, 280 F.R.D. 147, 156, 159 (S.D.N.Y. 2012) ("Harmlessness means an absence of prejudice to the [opposing party]").

Moreover, the closed check document is also inadmissible hearsay. As Plaintiffs suggest, the only conceivable hearsay exception that could apply is the business records exception. *See* Fed. R. Evid. 803(6). Yet none of the requirements of the exception are

satisfied because Volper's declaration, nor any other evidentiary source, explains what the document is, how it was created, whether it is a record kept in the course of regularly conducted activity, and whether the making of that type of record was a regular practice. *See id.* The document is also heavily redacted, and Defendants have not explained why the redactions were made. Moreover, Volper does not assert that the document reflects all checks from the relevant time period, and there is no basis to conclude it does. Accordingly, the assertions in Volper's declaration based on the document at Dkt. 119-7 are not admissible and are insufficient to create a genuine dispute as to whether Defendants' records reflect hours worked.

In sum, Defendants have not created a genuine dispute of fact as to whether their time records accurately reflect the hours Plaintiffs, that Plaintiffs worked in excess of 40 hours a week as reflected in those records, and that Plaintiffs performed work for which they were not paid required overtime. *See Nam*, 657 F. Supp. 3d at 414 (granting summary judgment on liability regarding overtime where Plaintiff met his burden of showing that he was not appropriately compensated for his overtime and "Defendant has not provided proof of the precise hours that Plaintiff worked or undermined the reasonableness of Plaintiff's estimates"). The Court has already deemed established that Defendants paid the regular rate for overtime hours instead of time-and-a-half, and that Defendants did not pay spread of hours premiums. (Sanctions Order at 3.) Because the Court now concludes that the time records reflect the compensable hours worked, summary judgment should be granted in Plaintiffs favor on their overtime and spread of hours claims.

**C.    Damages For Unpaid Wages**

Having granted summary judgment as to liability on Plaintiffs' minimum wage, overtime, and spread-of-hours violations, the Court turns to Plaintiffs' damages. Summary judgment should be granted on Plaintiffs' claims for damages for unpaid wages. As discussed above, damages can be calculated using Defendants' time records because Defendants cannot rebut Plaintiffs' evidence that their records represent the compensable time Plaintiffs worked. *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (when the employer fails to produce evidence rebutting plaintiff's evidence of the amount and extent of the work performed, "the court may then award damages to the employee, even though the result be only approximate") (quoting *Anderson*, 328 U.S. at 687-88).

**1.    Applicable Damages Period and Statute**

The statute of limitations is six years for claims under the NYLL, three years for claims under the FLSA if a defendant's acts are willful, and two years if they are not. 29 U.S.C. § 255(a); NYLL § 663(3). Plaintiffs seek damages for the six-year period from January 20, 2016 through 2022, when Plaintiffs commenced this action.

Although plaintiffs may not recover under both the FLSA and the NYLL for the same injury, courts allow plaintiffs to recover under the statute that provides for the greatest relief. *Ni v. Bat-Yam Food Services. Inc.*, No. 13-CV-7274, 2016 WL 369681, at *1 (S.D.N.Y. Jan. 27, 2016); *Maldonado v. La Nueva Rampa*, Inc., No. 10-CV-8195, 2012 WL 1669341, at *5 (S.D.N.Y. May 14, 2012*); Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08-CV-3725, 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010). Here, the NYLL permits recovery greater than or equal to the FLSA at all relevant times during Plaintiffs'

employment.  Moreover, the FLSA only applies to Huk's and Martinenko's claims as distinct from the class, as they are the only members of the FLSA collective action. Accordingly, the Court applies the NYLL for all damages calculations.

### 2.    Calculation of Unpaid Wages

To ascertain the total amount of unpaid wages, the Court uses the summary of Defendants' time records submitted with Plaintiffs' briefing papers. (See 11/16/2023 Schulman Decl., Dkt. 116, Exs. 1, 8.)  The Court also uses the following wage rates, taken from the New York Hospitality Wage Order, promulgated by the Commissioner of Labor:

| Year | NY Minimum Wage | NY Tip Credit Rate | Hourly Tip Credit Taken | Overtime Premium (Half of Minimum Wage) |
|------|-----------------|--------------------|-----------------------|------------------------------------------|
| 2016 | $9 | $7.50 | $1.50 | $4.50 |
| 2017 | $11 | $7.50 | $3.50 | $5.50 |
| 2018 | $13 | $8.65 | $4.35 | $6.50 |
| 2019 | $15 | $10 | $5 | $7.50 |
| 2020 | $15 | $10 | $5 | $7.50 |
| 2021 | $15 | $10 | $5 | $7.50 |
| 2022 | $15 | $10 | $5 | $7.50 |

(See 12 N.Y.C.R.R. §§ 146-1.2, 146-1.3; 11/16/2023 DiGiulio Decl. Ex. 8, Dkt. 115-8.[14]) Summaries of the damages totals for each of Plaintiffs' claims are described below.

### a.  Minimum Wage Underpayments

As an initial matter, Defendants argue, in a footnote, that because Martinenko and Huk's tips combined with the wages Defendants paid them exceeded the regular New York state minimum wage, Plaintiffs are not entitled to damages for this claim, as Defendants' taking of a tip credit must be considered "a technical violation."  (Def. Decert.

---

[14] In their brief, Plaintiffs appear to have mistakenly used the incorrect tip credit for the year 2016 (prior to December 31, 2016).  (Pl. SJ Mem. at 16.)  The Court uses the correct amount in the chart above, and the Plaintiffs have used the correct amount in their damages calculations.

Mem. at 8 n.8.)  In the same footnote, they assert that Plaintiffs do not have standing for their minimum wage claims because they did not suffer an injury-in-fact.  (*Id.*)  Defendants misunderstand New York law's minimum wage provisions.  "An employer may take a credit towards the basic minimum hourly rate … if the employee has been notified of the tip credit as required in section 146-2.2." 12 N.Y.C.R.R. § 146-1.3.  Where an employer does not notify employees that the employer is taking a tip credit, the employer must pay the full minimum wage.  *Galvez*, 2022 WL 748286, at *11 (holding that "based on the undisputed evidence, Defendants are not entitled to tip credit under either the FLSA or the NYLL when calculating whether the wages they paid the delivery worker Plaintiffs satisfied the minimum wage" because "Defendants have presented no evidence to suggest that they provided written notices of the tip credit").  As Defendants failed to provide the requisite tip credit notice to their employees, they cannot take advantage of the tip credit.  Plaintiffs therefore are entitled to receive the full minimum wage from Defendants.  Whether they received tips that would bring their total earnings above the tip credit minimum wage is irrelevant. And because Plaintiffs did not receive the full minimum wage as required, they suffered a concrete monetary harm.[15]

Unpaid tip credit/minimum wage damages are calculated by multiplying each class member's clocked in hours by the applicable hourly tip credit taken.  The total minimum wage damages for all class members are $96,608.35.

---

[15] With respect to their minimum wage claims, Plaintiffs are not alleging they were harmed by the lack of notice of the tip credit.  They are alleging they were harmed by Defendants' failure to pay them the full minimum wage they were owed under the law. That is different from the harm alleged from Defendants' failure to provide wage statements and wage notices under NYLL § 195, as discussed below.

### b.  Unpaid Overtime

Unpaid overtime hours are calculated by multiplying each class member's clocked in overtime hours by the applicable overtime premium.  Here, because the employees did not receive the minimum wage as required, the premium for all employees is 50 percent of the applicable minimum wage.  *See, e.g., Pinzon v. 168 8th Ave. Food Corp.*, No. 20-CV-06156, 2021 WL 4894678, at *6 (S.D.N.Y. July 14, 2021), R. & R. adopted, 2021 WL 4894614 (S.D.N.Y. Sept. 1, 2021) ("throughout his employment, [plaintiff] was paid an hourly rate with no overtime premium for his hours worked. Accordingly, [plaintiff] is entitled to a 50 percent premium for all hours worked after 40."); *Peralta v. M & O Iron Works, Inc.*, No. 12-CV-3179, 2014 WL 988835 at *9 (E.D.N.Y. March 12, 2014) ("The amount due to plaintiff in unpaid overtime premiums for this time period is calculated by determining half of his [regular hourly rate], which was above minimum wage. This number ... is then multiplied by ... the amount of weekly overtime worked by plaintiff ... and then multiplied by ... the number of weeks in this particular time period.") *Galicia v. 63-68 Diner Corp.*, No. 13-CV-03689, 2015 WL 1469279, at *5 (E.D.N.Y. March 30, 2015) ("because the Court has already compensated Plaintiff for his excess 21.5 hours per week at a rate of 100% in the section above regarding minimum wage, Plaintiff is now entitled to additional compensation at a rate of 50% of the minimum wage in this overtime premium section.")  The total unpaid overtime damages for all class members are $2,530.75.

### c.  Spread-Of-Hours

Unpaid spread-of-hours damages are calculated by applying one hour of the applicable New York minimum wage to each workday that spanned more than 10 hours

based on the time records.  The total unpaid spread of hours damages for all class members are $2,388.

**D.    Liquidated Damages**

Plaintiffs are entitled to liquidated damages on their overtime, spread of hours, and minimum wage claims.  Both the FLSA and NYLL provide for liquidated damages.  Under the FLSA, an employer will be liable for liquidated damages equal to the amount of unpaid wages unless the employer had a good faith belief that it was complying with the law. 29 U.S.C. § 216(b).  The rules under NYLL are similar. *See Rana v. Islam*, 887 F.3d 118, 122-23 (2d Cir. 2018) ("While the wording of the FLSA and NYLL liquidated damages provisions are not identical, there are no meaningful differences, and both are designed to deter wage-and-hour violations in a manner calculated to compensate the party harmed.") (internal quotation marks and citations omitted).  While an employee may recover liquidated damages for unpaid wages under either the FLSA or the NYLL, they are not entitled to "double recovery" for the same course of conduct. *Rana,* 887 F.3d at 123.  The employer bears the burden to establish that liquidated damages should not be awarded. *Reich*, 121 F.3d 71.  "'Good faith'" in this context requires more than ignorance of the prevailing law or uncertainty about its development. It requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them." *Id.*

Here, Defendants fail to create a genuine dispute of fact as to whether liquidated damages should be awarded.  Defendants argue that there is at least a triable issue whether Defendants acted in good faith because Volper was an inexperienced restauranteur and "relied on his accountants to provide him with the information to comply

with the law." (Def. SJ Mem. at 18.)  But reliance on an accountant or payroll provider does not qualify as an "active step" to ascertain the dictates of the law and then act to comply with them.  *See Chichinadze v. BG Bar Inc.,* 517 F. Supp. 3d 240, 258 (S.D.N.Y. 2021) (granting summary judgment awarding liquidated damages under the NYLL where the employer "relied upon the ADP payroll company  for compliance*"); Dudley v. Hanzon Homecare Services*, Inc., No. 15-CV-8821, 2018 WL 481884, at *5 (S.D.N.Y. Jan. 17, 2018) (granting summary judgment awarding liquidated damages where the employer "claim[ed] that she acted in good faith because she used a "payroll service provider" and "believed that [the provider] would have notified Hanzon" if it were not in compliance with the FLSA or the NYLL.")

Defendants cite *Cardenas v. Edita's Bar & Restaurant Inc*., No. 17-CV-5150, 2021 WL 4480570 (E.D.N.Y. Sept. 30, 2021) for the proposition that reliance on an accountant for compliance may create a triable issue as to Defendants' good faith.  In that case, there was evidence the employer took active steps to ascertain the law because Defendant "testified that she looked on the internet for information about how much to pay her employees and consulted with her accountant." *Id.*  Here, in contrast, Volper did not take affirmative steps to determine the requirements of the wage-and-hour laws and instead passively relied on his accountant.  (*See* Pl. 56.1 ¶ 38; Def. 56.1 ¶ 38.)  *Cardenas* thus does not help Volper.

Moreover, even after Defendants were sued for wage-and-hour violations in 2018, and again in 2020, they did not bring their practices into compliance with the law.  The unlawful payment practices continued into 2022.  Having been on notice from previous litigation that their pay practices were non-compliant, Defendants have no good faith

excuse for failing to ensure their subsequent compliance. *See Galvez*, 2022 WL 748286, at *19 (granting summary judgment on liquidated damages for minimum wage, overtime, and spread-of-hours claims and finding that after being sued twice for wage-and-hour claims "while [Defendant] may have improved his labor practices, Defendants have provided no evidence that they attempted to comply with the specific obligations imposed by the minimum wage, overtime, and spread-of-hours laws"). Accordingly, Plaintiffs are entitled to liquidated damages in the same amount as their unpaid wages for minimum wage, overtime, and spread-of-hours.

## WAGE NOTICES AND WAGE STATEMENTS

There is no genuine dispute that Defendants failed to provide Plaintiffs with the wage statements and wage notices required under NYLL §§ 195(1) and 195(3). Defendants, however, seek dismissal of both NYLL claims with respect to the entire class for lack of standing. The Court agrees that Defendants are entitled to dismissal of Huk's claims as she has not set forth any facts showing that she incurred any cognizable injury from not receiving wage statements and wage notices. In contrast, there are genuine issues of material fact as to whether Martinenko suffered any such injury. Her claim thus should not be dismissed. As for the non-named class members, there are individualized issues pertaining to standing. Their claims should not be dismissed at this juncture but will warrant further class management.

### A.    Wage Statement and Wage Notice Violations

NYLL § 195(1) provides that employers must provide a wage statement "at the time of hiring" that is written in English and in each employee's primary language stating:

> the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;

> allowances, if any, claimed as part of the minimum wage,
> including tip, meal, or lodging allowances; the regular pay day
> designated by the employer in accordance with section one
> hundred ninety-one of this article; the name of the employer;
> any "doing business as" names used by the employer; the
> physical address of the employer's main office or principal
> place of business, and a mailing address if different; [and] the
> telephone number of the employer[.]

NYLL § 195(1)(a).  It is undisputed that Defendants never provided any written notices containing the required information to any class members.  (Def. 56.1 ¶¶ 25-27.) Accordingly, Defendants violated NYLL § 195(1).

Similarly, NYLL § 195 (3) requires that employers furnish employees with written statements accompanying every payment of wages stating:

> the dates of work covered by that payment of wages; name
> of employee; name of employer; address and phone number
> of employer; rate or rates of pay and basis thereof, whether
> paid by the hour, shift, day, week, salary, piece, commission,
> or other; gross wages; deductions; allowances, if any, claimed
> as part of the minimum wage; and net wages. [. . .]

NYLL § 195 (3).  It is undisputed that prior to 2019, Defendants did not give class members wage statements that met the above criteria (Pl. 56.1 ¶¶ 29-33, 36; Def. 56.1 ¶¶ 29-33, 36.)  Even after Defendants began issuing pay stubs to Plaintiffs after 2019, they still did not comply with § 195(3) because they did not state the amount of tip credit claimed, identify overtime hours separately, or state the correct overtime rate.  (*See* Volper Dep. 103:7-20; Dkt. 121-5.)  Volper testified that Defendants had employees sign a document showing their hours, tips, and meal deductions when they received their pay (Volper Dep. 90:11-91:7), but Defendants produced no signed notices to corroborate that testimony.  And even if they had, it is undisputed that the document Volper claims to have had signed did not contain all the information required under the law, including, among

others, the employees' pay rate, overtime hours worked, the amount of tip credit Defendants took, gross wages, and net wages.   (Pl. 56.1 ¶ 36; Def. 56.1 ¶ 36.) Accordingly, it is undisputed that Defendants violated NYLL § 195(3) as well as 195(1). Whether Plaintiffs are entitled to damages on their § 195 claims is another matter discussed next.

**B.    Standing For § 195 Claims**

Defendants argue that even though they technically failed to comply with the law, Plaintiffs cannot establish they suffered an actual injury that is traceable to Defendants' failure to provide wage notices and statements.   Defendants argue that not a single one of the members of the class, including Martinenko and Huk, suffered an injury as a result of Defendants' violations.   They assert that Plaintiffs lack standing to bring their NYLL § 195 claims in federal court, and therefore those claims must be dismissed.   (Def. SJ Mem. at 9; Def. Decert Mem. at 8.)   The Court concludes that for the purposes of seeking damages, Plaintiffs have not produced evidence to show they suffered an injury.

To establish Article III standing, a plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).   As Defendants correctly assert, plaintiffs alleging violations of the wage notice and statement provisions of the NYLL must show more than technical violations of the law, as a statutory violation alone, without a more concrete harm, does not constitute an injury that can be recognized by a federal court. *See Chen v. Lilis 200 West 57th Corp.,* 19-CV-7654, 2023 WL 2388728, at *8 (S.D.N.Y.

March 7, 2023) ("In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation."); *Neor v. Acacia Network, Inc*., No. 22-CV-4814, 2023 WL 1797267, at *4 (S.D.N.Y. Feb. 7, 2023) (dismissing wage notice and statement claim due to failure to plead facts demonstrating employees' standing); *Beh*, 2022 WL 5039391, at *7-8 (finding that "[w]hile the deficiencies in defendants' provisions of hiring notices may amount to violations of the labor law, neither plaintiffs nor the record demonstrates how those technical violations led to either a tangible injury or something akin to a traditional cause of action, as required by the Supreme Court"); *Sevilla v. House of Salads One LLC*, 20-CV-6072, 2022 WL 954740, at *7 (E.D.N.Y. March 30, 2022) (finding that "[w]hile Defendants did not provide proper wage notice and statements to Plaintiffs, Plaintiffs lack standing to maintain these claims").

At the class certification stage, only one named plaintiff must demonstrate standing to maintain certification of the Rule 23 class. *In re AXA Equitable Life Ins. Co. COI Litigation*., No. 16-CV-740, 2023 WL 199284, at *1 (S.D.N.Y. Jan. 17, 2023) ("each member of a class need not submit evidence of personal standing to certify a class that meets Rule 23's requirements.") (internal quotation marks omitted) (collecting cases). Beyond the class certification stage, however, the Supreme Court has unequivocally stated that "[e]very class member must have Article III standing in order to recover individual damages" as "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *TransUnion*, 594 U.S. 431 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016).) Therefore, for the purposes of

damages, the Court must evaluate standing for the named Plaintiffs individually as well as for the other class members.

As the party invoking federal jurisdiction, Plaintiffs bear the burden of demonstrating that they have standing for their NYLL § 195 claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Plaintiffs argue that the entire class suffered two types of "downstream injuries" stemming from the lack of wage notices and wage statements: monetary harm and informational harm. (Pl. Decert. Mem. at 20.) The Court discusses each type of harm in turn.

### 1. Monetary Harm

First, Plaintiffs argue that the harm they each suffered was a "traditional monetary harm" because Defendants' failure to provide compliant wage notices and wage statements caused them to be underpaid. (Pl. Decert. Mem. at 21.) Pointing to the NYLL's minimum wage provisions, Plaintiffs assert that an employer who fails to provide the required written notice of their taking a tip credit must pay the employee the full minimum wage without taking the tip credit. (*Id*. (citing N.Y.C.R.R. § 146-2.2.)) Plaintiffs argue that because Defendants failed to provide written notice of the tip credit, Defendants were legally required to pay Plaintiffs the full minimum wage without taking a tip credit, which they did not do. Thus, the payment Plaintiffs received was "underpayment." (*Id*.) Similarly, Plaintiffs also argue that even once Defendants began to issue pay stubs (which Defendants call "wage statements") after 2019, those statements failed to comply with the requirements of § 195(3), which caused Plaintiffs the harm of "underpayment" because checks were made out to employees based on the net amounts listed on Defendants' deficient pay stubs. (*Id*. at 22.) Accordingly, Plaintiffs

argue that because Defendants did not comply with 195(3), Plaintiffs were therefore "underpaid." (*Id.*) Plaintiffs assert that this underpayment is precisely the type of traditional monetary harm that gives rise to standing. (*Id.* (citing *Mateer v. Peloton Interactive, Inc.*, No. 22-CV-74, 2022 WL 2751871 (S.D.N.Y. July 14, 2022) (finding that a complaint alleged sufficient facts for purposes of standing because the complaint alleged that Defendant's violations "resulted in the underpayment of wages.").)

Plaintiffs' argument is not persuasive. The cause of Plaintiffs' underpayment was Defendants' failure to pay legally required wages. In other words, the underpayment Plaintiffs claim as harm is not distinct from the harm resulting from Defendants' violations of the other labor law provisions. Consistent with other courts in this Circuit to consider the question post-*TransUnion*, the Court concludes that while the "underpayment" injury Plaintiffs describe is indeed concrete, it is not fairly traceable to Defendants' alleged violation of the NYLL § 195 wage notice and wage statement requirements. *See, e.g.*, *Freeland*, 22-CV-6415, 2024 WL 2702201 (W.D.N.Y. May 24, 2024), at *4 (finding alleged monetary injury does not confer standing to bring NYLL 195(3) claim where Plaintiff's "monetary harm" was better traced as an injury flowing from Defendant's alleged violations of state and federal overtime requirements, not Defendant's inaccurate wage statements); *Jackson v. ProAmpac LLC*, No. 22-CV-03120, 2023 WL 6215324, at *4 (S.D.N.Y. Sept. 25, 2023) (dismissing plaintiffs' § 195 claim for lack of standing where plaintiffs alleged a lack of wage statements obscured Defendants' policy of underpayment by rounding up employee start times and rounding down employee end times because "Plaintiff's monetary harm is better traced as an injury flowing from [Defendant's] rounding policy, not [Defendant's] inaccurate wage notices"); *Quieju v. La Jugueria Inc.,* No. 23-

CV-264, 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25, 2023) (dismissing plaintiff's NYLL § 195(1) and (3) claims for lack of standing because "the injury that plaintiff suffered (i.e., defendants' failure to properly pay him) is not an injury he sustained because of a lack of the required documents; it is an injury sustained because his employer violated its obligation to pay minimum wage, overtime, and spread-of-hours pay under other, express requirements of federal and state law").

In short, Plaintiffs have not established an independent monetary harm sufficient to confer Article III standing for their NYLL § 195 claims.

### 2. Informational Harm

Plaintiffs also argue that they have suffered "informational injury." (Pl. Mem. at 22-24.) *See Transunion* 594 U.S. at 426 (holding that "informational injury" sufficient to establish standing requires concrete "downstream consequences" from failing to receive information). As Plaintiffs posit, "Defendants' failure to provide Plaintiffs with the legally required information in wage notices and in wage statements deprived them of information to which they were legally entitled, which impaired their ability to determine whether and how their employer was underpaying them." (Pl. SJ Mem. at 22-23.) Defendants maintain that there is no basis for finding that either Plaintiff or any class member suffered any type of harm, informational or otherwise.

Although the Second Circuit has not yet addressed this issue, district courts in the Circuit have – post-*TransUnion* – found Article III standing at the motion to dismiss stage where employees alleged they did not know they were being underpaid because they did not receive proper wage notices and/or wage statements. *See, e.g., Lipstein v. 20X Hospitality LLC*, No. 22-CV-04812, 2023 WL 6124048, at *9 (S.D.N.Y. Sept. 19, 2023)

(plaintiff had standing to bring § 195(1) and 195(3) wage notice and statement claims where he plausibly alleged that not receiving information about his rate of pay and accurate wage statements "hurt his ability to assess whether he was being properly paid and therefore promptly raise issues of underpayment with his employer"); *Metcalf v. TransPerfect Translations International, Inc.*, No. 19-CV-10104, 2023 WL 2674743, at *4 (S.D.N.Y. March 29, 2023) (plaintiffs sufficiently alleged standing to bring § 195(3) claim where they alleged that the defendant denied them "the information needed to determine: (1) whether they were being underpaid, (2) by what amount, and (3) whether the retroactive payments adequately covered the overtime hours they worked"); *Bueno v. Buzinover,* No. 22-CV-2216, 2023 WL 2387113, at *3 (S.D.N.Y. March 7, 2023) (standing satisfied for 195(1) and 195(3) claims where "denying an employee such notices – as alleged here – can impinge on an employee's interests not only in being paid what is owed, but also in being able to advocate for the receipt of proper pay"); *cf. Neor v. Acacia Network, Inc.*, No. 22-CV-4814, 2023 WL 1797267, at *4 (S.D.N.Y. Feb. 7, 2023) (dismissing wage notice and statement claim due to lack of standing where "Plaintiffs admit that [the defendant] furnished wage statements that would show a lower number of hours recorded than plaintiffs actually worked" and "the inaccuracies in the wage statements would immediately alert the Plaintiffs to the fact that they were not being properly compensated").

### a. Huk

Plaintiffs do not identify any record evidence that Huk incurred a concrete informational harm, and she does not mention any in her declaration or deposition. (*See*

12/21/2023 Huk Decl., Dkt. 123; Huk Dep., Dkt. 119-10.)  Having neither monetary nor informational harm, Huk's NYLL § 195 claims should be dismissed for lack of standing.

### b.  Martinenko

At her deposition, Martinenko asserted that because Defendants did not provide her with any wage statements prior to 2021, and because she never received a legally sufficient wage notice, she was unable to know the number of hours she was being paid, her rate of pay, and whether she was entitled to overtime compensation.  (*See* Martinenko Dep. 34:23-35:11; 36:2-14; 37:1-38:2.)  Martinenko did not complain to anyone about her wages because she did not know they were incorrect.   (Martinenko Dep. 36:5-13; 12/21/2023 Martinenko Decl. ¶ 5, 8-9.)  Had she been informed that she was entitled to overtime pay, she would have discussed it with Defendants and requested overtime pay. (12/21/2023 Martinenko Decl. ¶ 9.)

Defendants argue that Martinenko was sufficiently informed even without wage notices and wage statements that she had potential tip-credit, overtime, and other claims. Defendants cite several facts in support of that argument, including that (1) Martinenko knew that her pay included a tip credit hourly wage; (2) Martinenko was an experienced server, (3) Defendants put up posters in the restaurant advising employees of the labor laws, (4) Martinenko often helped with payroll and had access to all the employees' POS records; and (5) Martinenko had previously worked at another restaurant where employees brought the same wage-and hour claims that Plaintiffs allege here.   (*See* Def. Decert Mem. at 15 and n.14; 17 n.15.)  Receiving proper wage notices and statements, Defendants assert, would have made no difference to Martinenko because she was already aware of information she could have used to raise concerns about her

compensation.    Defendants cite Martinenko's testimony that in 2021 she asked a coworker "why we were not getting paid overtime" as evidence that she was aware of any problems with her compensation (Def. Decert. Reply at 11), and they submit the notice of a class action settlement in a separate wage-hour case involving plaintiffs who were employed at a restaurant at which Martinenko previously worked. (Def. Mem. at 17 n.15.)

Plaintiffs challenge Defendants' evidence and the inferences or conclusions to be drawn from it. For instance, Plaintiffs point out that there is no evidence that the labor law posters were displayed in the workplace while Plaintiffs worked there, and the tip credit minimum wage printed on the poster attached to Volper's declaration is lower than the New York tip credit minimum wage. (See Dkt. 112-13.) In addition, while Martinenko worked at a restaurant where other employees challenged their employers' pay practices, there is no indication that Martinenko received the class settlement notice, and even if she had, it would not necessarily have placed her on notice of 212's obligations to its employees. Further, Martinenko asserts she only accessed the POS system twice to check another employee's clock-in and clock-out time at Volper's direction. (12/21/2023 Martinenko Decl ¶¶ 10-11.) She denies that she checked her own records and asserts that her work with payroll only involved handwriting checks for employees based on final amounts that Defendants calculated and provided to her. (*See* Martinenko Dep. 54:7-55:5.)

There is competing evidence as to whether Martinenko suffered informational harm. Dismissal or summary judgment against Martinenko based on standing thus is not warranted. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (explaining that, while on a motion to dismiss, the plaintiff's allegations are assumed to be true for purposes of

assessing standing, at the summary judgment stage, specific facts advanced by plaintiff as supporting standing will be taken to be true);  *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) ("Summary judgment is inappropriate when the admissible materials in the record '"make it arguable"' that the claim has merit"); *Access 4 All, Inc. v. Trump International Hotel & Tower Condominiums,* 458 F. Supp.2d 160, 176 (S.D.N.Y. 2006) (denying motion for summary judgment on the basis of standing where plaintiffs presented evidence of injury from statutory violations and noting that "[w]hether discovery and trial will expose Plaintiffs' case as something less than genuine remains to be seen").

### c.  Unnamed Class Members

Whether the non-named members can establish standing is, at this juncture, indeterminate.  They are not individually before the Court and have had no opportunity to submit evidence that they have standing on the § 195 claims.  As noted above in the context of decertification, the presence of this individualized issue does not undermine either commonality or predominance of the claims taken as a whole.  Just how that remining issue should be resolved for the unnamed class members is a matter of management of the class, for which the Court has considerable flexibility and options. *See generally In re Visa Check*, 280 F.3d at 141 (recognizing "a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including" bifurcation, appointment of a magistrate judge or special master to preside over individualized damages proceedings, decertification after trial, creating subclasses, and altering or amending the class.  To determine next steps with respect to the unnamed class member § 195 claims, I recommend that the Court direct the parties to meet and confer on the issue and report to the Court. *See, e.g., In re AXA*

*Equitable Life Ins. Co. COI Litig.,* No. 16-CV-740, 2023 WL 199284 (S.D.N.Y. Jan. 17, 2023) (modifying the class and directing the parties to meet and confer about the trial plan and whether trial of the class claims should be bifurcated into liability and remedies phases); *Chen-Oster v. Goldman, Sachs & Co.,* No. 10-CV-6950, 2022 WL 3586460 (S.D.N.Y. Aug. 22, 2022 (reconsidering class decertification in the wake of *TransUnion* and redefining the class such that all members had standing).

### Individual Liability

Defendant Volper is individually liable as an employer for Plaintiffs' FLSA and NYLL claims.  Under the FLSA, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  Under the NYLL, an employer is "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service." NYLL § 190(3).  Courts generally interpret the definition of employer under both statutes coextensively. *Gao v. Savour Sichuan Inc.*, No. 19-CV-2515, 2024 WL 664718, at *16 (S.D.N.Y. Feb. 16, 2024); *see also Weng v. New Shanghai Delux Corp.*, 19-CV-9596, 2022 WL 5434997, at *4 (S.D.N.Y. Oct. 7, 2022) ("courts in this district have applied the same tests to determine whether an individual constitutes an employer under the FLSA and the NYLL").

To determine whether an employment relationship exists, courts use an "economic reality" test, which is a "flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances."  *Barfield v. New York City Health & Hospitals Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008).  "Courts have identified different sets of relevant factors based on the factual challenges posed by particular cases."  *Id.*  Relevant

here are the factors identified in *Carter v. Dutchess Community College*, including whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." 735 F.2d 8, 12 (2d Cir. 1984). The Second Circuit has held that the *Carter* factors "can be sufficient to establish employer status," although they are not necessary. *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 69 (2d Cir. 2003).

Consideration of the *Carter* factors shows that Defendant Volper was Plaintiffs' employer. It is undisputed that Volper had operational control and authority to (1) hire and fire employees, (2) control schedules and conditions of employment, and (3) determine the rates of payment for the employees, and (4) maintained employment records (though they did not comply with the FLSA, as discussed above). (Def. 56.1 ¶¶ 6-11, 14.) Accordingly, Volper is indisputably an employer subject to individual liability. *See, e.g., Guerra v. Trece Corp.,* No. 18-CV-625, 2020 WL 7028955, at *11 (S.D.N.Y. Nov. 30, 2020) (finding Defendant individually liable for FLSA and NYLL claims where "three of the four *Carte*r factors weigh significantly in favor of holding [defendant] liable"); *Fermin v. Las Delicias Peruanas Restaurant Inc.*, 93 F. Supp. 3d 19, 36 (E.D.N.Y. 2015) ("As Plaintiffs have demonstrated that the Individual Defendants satisfy three of the four Carter factors, the Individual Defendants are Plaintiffs' employers and should be held individually liable for the FLSA violations."); *Inclan*, 95 F. Supp.3d at 511 (considering the *Carter* factors and holding that Defendant was an employer because "the evidence inescapably leads to the conclusion that [Defendant] dominated, financially controlled, and exercised significant functional control over not only the general business affairs of

the Restaurant, but indeed over plaintiffs' wages. As a practical matter [Defendant] was the Restaurant's "top man").

## Prejudgment Interest

The NYLL provides for prejudgment interest on a plaintiff's compensatory damages.  NYLL §198(1-a).  Plaintiffs are eligible to recover prejudgment interest at the statutory rate of 9% per annum.  NY CPLR §§ 5001, 5004; *see, e.g.*, *Gurung v. Malhotra*, 851 F. Supp.2d 583, 594 (S.D.N.Y. 2012) (applying pre-judgment interest rate to NYLL claims).  [T]o determine when prejudgment interest begins to accrue, courts applying the NYLL in wage-and-hour cases often choose the midpoint of the plaintiff's employment within the limitations period."  *Gamero*, 272 F. Supp. 3d at 515 (citing *Hengjin Sun v. China 1221*, *Inc.*, No. 12-CV-7135, 2016 WL 1587242 (S.D.N.Y. Apr. 19, 2016)) (internal quotation marks and alterations omitted).  Here, the midpoint of the class members' damages is June 18, 2019.  (Pl. 56.1 ¶ 37.)  Total compensatory damages for overtime, spread of hours, and minimum wage claims amounts to $101,527.10   Accordingly, Plaintiffs should be awarded pre-judgment interest on $101,527.10, at a rate of 9%, starting from June 18, 2019.

## CONCLUSION

To the extent not discussed herein, the Court has considered all of the parties' arguments and determined them to be moot or without merit.  For the foregoing reasons, I recommend that Defendants motion to decertify the Rule 23 class be DENIED and Plaintiffs' motion for summary judgment be GRANTED in part and DENIED in part. Specifically, I recommend that:

1. The class be awarded unpaid minimum wages under the NYLL without a tip credit allowance in the total amount of $96,608.35;

2. The class be awarded unpaid overtime wages under the NYLL without a tip credit allowance in the total amount of $2,530.75;

3. The class be awarded unpaid spread-of-hours premiums under the NYLL where applicable in the total amount of $2,388;

4. The class be awarded liquidated damages under the NYLL in the total amount of $101,527.10;

5. Defendant Volper be held individually liable for damages under the FLSA and NYLL;

6. Plaintiff Huk's NYLL § 195 wage notice and statement claims be dismissed for lack of standing;

7. Summary judgment be denied on the rest of the class members' NYLL § 195 wage notice and wage statement claims; and

8. The parties be ordered to meet and confer regarding next steps for addressing individualized injury with respect to the unnamed class member § 195 claims.

9. Prejudgment interest be awarded from June 18, 2019 at a rate of 9% on the total unpaid wages of $101,527.10.

**Deadline For Filing Objections And Preserving Appeal**

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation.  Any party shall have fourteen (14) days to file a written response to the other party's objections.  Any such objections and responses shall

be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Jennifer L. Rochon, United States Courthouse, 500 Pearl Street, New York, New York 10007, and to the Chambers of the undersigned, at United States Courthouse, 500 Pearl Street, New York, New York 10007.  Any request for an extension of time for filing objections must be addressed to Judge Rochon.  **Failure to file timely objections will result in a waiver of the right to object and will preclude appellate review.**


Respectfully submitted,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE


Dated: August 13, 2024
      New York, New York

Copies transmitted to all counsel of record.