UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NINO MARTINENKO, on behalf of herself
and others similarly situated,

                              Plaintiffs,

                  -against-

212 STEAKHOUSE, INC., and NIKOLAY
VOLPER,

                          Defendants.

Case No. 1:22-cv-00518 (JLR)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

      Plaintiff Nino Martinenko ("Martinenko" or "Plaintiff") brings this action against

Defendants 212 Steakhouse, Inc., and Nikolay Volper (together, "Defendants") for violations of

the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), including: (1)

paying employees pursuant to a tip credit without providing the notice required under New York

law; (2) failing to pay overtime premiums; (3) failing to pay spread of hours premiums; and (4)

failing to provide employees with wage notices and wage statements as required by NYLL §

195.  The Court referred this matter to Magistrate Judge Robert W. Lehrburger, who issued a

Report and Recommendation on Defendants' motion to decertify and Plaintiffs' and Defendants'

cross-motions for summary judgment on August 13, 2024.  ECF No. 132 ("R&R").

      The Court incorporates the portion of the R&R that sets forth the factual background and

procedural history of this case and refers to the R&R for a more comprehensive background.  *See*

R&R at 1-3.  Essentially, Martinenko was a former server at the restaurant 212 Steakhouse, a

small restaurant in midtown Manhattan, from 2016 to December 2018, and then again from

March 2021 to December 2021.  *Id*. at 2-3.  Plaintiff Huk worked as a bartender at 212

Steakhouse from August 2020 to September 2021.  R&R at 3.  Plaintiffs Huk and Martinenko

comprise the collective FLSA class.  R&R at 5.  This Court also certified a Rule 23(b)(3) class consisting of "all tipped employees — servers, runners, bussers, and bartenders — who worked for Defendants at any time on or after January 20, 2016 at 212 Steakhouse."  R&R at 3, 6.  Plaintiffs seek damages for the class for unpaid minimum wages, overtime compensation, spread of hours pay, and other violations of the NYLL.

On November 16, 2024, the parties filed competing motions.  R&R at 6.  Defendants moved to decertify the Rule 23 class, citing a reduction in class size, and for summary judgment as to Plaintiff's NYLL Section 195 claims based on a lack of standing.  R&R at 6-7.  Plaintiffs cross-filed for summary judgment as to liability and damages on each of their asserted claims.  R&R at 7.

Magistrate Judge Lehrburger recommends denial of Defendant's motion to decertify the Rule 23 class.  R&R at 2.  As for Plaintiffs' motion for summary judgment, Magistrate Judge Lehrburger recommends that the motion be granted in part and denied in part.  R&R at 2.  Specifically, the R&R recommends granting summary judgment in Plaintiffs' favor on Martinenko's and Huk's FLSA overtime claims and on all class members' NYLL minimum wage, overtime, and spread of hours claims.  R&R at 2.  However, with respect to Plaintiffs' NYLL wage notice and wage statement claims, Magistrate Judge Lehrburger recommends granting summary judgment against Huk, R&R at 2, and denying summary judgment as to Martinenko's and the unnamed class members' claims to allow for further fact-finding.  R&R at 2.

Both Plaintiffs and Defendants filed timely objections to the R&R.  *See* ECF Nos. 134 ("Pl. Obj.") and 135 ("D. Obj.").  For the reasons set below, the Court adopts the comprehensive and thorough R&R in its entirety.

## STANDARD OF REVIEW

With respect to dispositive motions, a district court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C); *see* Fed. R. Civ. P. 72(b)(3).  A district court must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  In *de novo r*eview, district courts must consider "the report, the record, applicable legal authorities, along with [p]laintiff's and [d]efendant's objections and replies."  *Diaz v. Girdich*, No. 04-cv-05061 (RJH), 2007 WL 187677, at *1 (S.D.N.Y. Jan. 23, 2007).

"To the extent, however, that the party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error."  *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 174 (S.D.N.Y. 2018).  "In addition, new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all."  *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020) (citation and quotation marks omitted); *see United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (rejecting argument raised for the first time as objection to report and recommendation).  Finally, to the extent there are portions of the report and recommendation to which no party objects, the Court reviews those for clear error.  *See, e.g*., *Goodman v. Goodman*, No. 21-cv-10902 (GHW), 2023 WL 1967577, at *1 (S.D.N.Y. Feb. 12, 2023).

## DISCUSSION

### I.    Defendants' Objections to the R&R

Defendants raise three objections to the R&R: (1) first, the motion to decertify should be granted in light of the class's reduced size; (2) second, summary judgment as to damages on

class members' underpayment claims should be denied because material factual disputes remain as to the number of hours that employees worked; and (3) third, there is a genuine issue of material fact, not addressed by the R&R, as to whether Defendants had actual or constructive knowledge of employees' time worked.  The Court will address each objection in turn under a *de novo* review standard.

### 1.  The Motion to Decertify the Rule 23 Class Is Denied

Defendants seek to decertify the Rule 23 class on the basis that numerosity, commonality, predominance, and superiority are no longer met.  "[A] defendant seeking to decertify a class bears a heavy burden to prove the necessity of the drastic step of decertification." *Zimmerman v. Portfolio Recovery Assocs., LLC*, No. 09-cv-04602(PGG), 2013 WL 1245552, at *2 (S.D.N.Y. Mar. 27, 2013) (citations, quotation marks, and ellipses omitted).  "[T]he Court may not disturb its prior certification findings absent some significant intervening event or a showing of compelling reasons to reexamine the question." *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 169 (S.D.N.Y. 2011) (citation and quotation marks omitted).  Moreover, "courts faced with a motion to decertify must also take account of the progression of the litigation." *Id.*

Magistrate Judge Lehrburger recommends denial of Defendants' motion for decertification.  For the reasons set forth below, this Court agrees.

### 1.  Numerosity

Defendants' argument for decertification hinges largely on the class's reduced size — in Defendant's view, the class has at most only 24 remaining class members and therefore does not satisfy numerosity.  D. Obj. at 5.  Defendant's calculation, however, erroneously excludes members whose notices were returned as undeliverable and deceased class members.  The Court

agrees with Magistrate Judge Lehrburger that both groups are properly counted toward a Rule 23 class.

Turning first to those members whose notices were returned as undeliverable, Rule 23 is clear: due process does not require actual notice, but only the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see also In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 132-33 (S.D.N.Y. 2008) ("Notice need not be perfect, but need only be the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as counsel acted reasonably."). Judge Lehrburger relies on *Rannis v. Recchia*, which is squarely on point. R&R at 13 (citing *Rannis v. Recchia*, 380 F. App'x 646 (9th Cir. 2010)). In *Rannis*, the Ninth Circuit found that seven class members whose notices were returned as undeliverable were properly included in the class because those members "received the best notice that is practicable under the circumstances." *Id.* at 650. The Court underscored that "due process requires reasonable effort to inform affected class members through individual notice, *not receipt of individual notice*." *Id.* (emphasis added). Defendants seek to cabin *Rannis*'s holding to the peculiarities of that case, pointing to the Ninth Circuit's characterization of the *Rannis* class as a "jurisprudential rarity" because it consisted of only twenty members. D. Obj. at 5-6 (citing *Rannis*, 380 F. App'x at 651). That fact, however, had no bearing on the Ninth Circuit's analysis of undeliverable notices, which instead relied upon the express language of Rule 23 and due process considerations.[1]

---

[1] Defendants' assertion that the R&R "essentially disregards the caselaw that supports [Defendant's] Motion" is unfounded. D. Obj. at 8. The R&R addresses each of the authorities Defendants cite and concludes that they are inapposite. *Rule v. Int'l Ass'n of Bridge, Structural and Ornamental Ironworkers* "did not analyze and was not even presented with [the] specific issue" of whether undelivered notices should be excluded. R&R at *13-14 (distinguishing *Rule*, 568 F.2d 558, 563-64 (8th Cir. 1977)). *Zimmerman v. Portfolio Recovery Assocs., LLC*, makes no finding on the issue of whether undeliverable notice should be counted toward the class. *See*

The Court likewise agrees that deceased class members are properly counted toward the class. For one, there is no requirement that the class definition expressly include legal representatives and/or estates of any deceased class members. The Court agrees with the R&R that it is sufficient that the class definition encompasses all "tipped employees" who worked for Defendants "at any time on or after January 2016," and that the deceased class members clearly fall within that definition. Defendants rely heavily on N.Y. C.P.L.R. § 210(a) to argue that deceased members should nevertheless be excluded. Pursuant to C.P.L.R. Section 210(a), when a "person entitled to commence an action dies before the expiration of the time within which the action must be commenced and the cause of action survives, an action may be commenced by his representative within one year after his death." Defendants argue that the deceased class members' claims are foreclosed because they were brought more than a year after their deaths. This misreads the objective of C.P.L.R. Section 210(a), which is "designed to extend periods of limitation that would otherwise expire shortly after a plaintiff's death" but "does not operate to reduce statutory periods that would otherwise have more than one year to run." *Gordon v. Gordon*, 110 A.D.2d 623, 624 (2d Dep't 1985). The Court agrees with Magistrate Judge Lehrburger that there is no basis for limiting this well-established principle to "cases involving causes of actions brought by an executor of a decedent's estate" but "not [cases brought by] a class representative in a class action," as Defendants argue. D. Obj. at 9. The deceased class

---

R&R at 14 (distinguishing *Zimmerman*, No. 09-cv-04602 (PGG), 2013 WL 1245552, at *3 (S.D.N.Y. Mar. 27, 2013)). And in *Benavides v. Serenity Spa N.Y. Inc.*, the court's decision to exclude three individuals for whom notices were returned as undeliverable was rendered under vastly different circumstances: the parties had jointly moved for decertification, were in an early phase of litigating their Rule 23 claims, and had not yet even mailed out notice to potential class members. R&R at 15 (distinguishing *Benavides v. Serenity Spa N.Y. Inc.*, No. 15-cv-09189, 2018 WL 2383144, at *2-3 (S.D.N.Y. May 25, 2018)).

members' claims are brought well within the six-year statute of limitations and are therefore timely.

Accounting for deceased members and members whose notices were returned as undeliverable brings the class size to 32 members. However, while Defendants fixate on the class size, the numerosity requirement does not turn on class numbers alone. Where, as here, there are fewer than 40 class members, courts should consider "all the circumstances surrounding a case," including "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, [and the] financial resources of class members." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). The Court agrees with Magistrate Judge Lehrburger that these additional factors weigh in favor of certification, *even if* Defendants' more conservative estimate of only 24 class members is used.

Consolidating employees' complaints in a single class action pertaining to the same illegal labor practices serves judicial economy by preventing a multiplicity of individual suits. *See, e.g.*, *Neff v. Flowers Foods, Inc.*, No. 5:15-cv-00254, 2019 WL 10750005, at *12 (D. Vt. May 16, 2019) (finding that "[t]hirty-three cases would represent a considerable burden to the court and to the parties to prepare and try as individual lawsuits"); *Balverde v. Lunella Ristorante, Inc.*, No. 15-cv-05518 (ER), 2017 WL 1954934, at *6 (S.D.N.Y. May 10, 2017) (finding that thirty-eight class members satisfies numerosity); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005) (certifying class consisting of twenty-eight individuals). Moreover, this is a wage and hour suit brought by minimum wage workers, and therefore involves a group of individuals who likely have limited resources for pursuing legal action. Defendants' efforts to suggest otherwise are unpersuasive.

Finally, the Court finds that the R&R properly considered plausible retaliation by Defendants in rendering its numerosity determination.  Contrary to Defendants' assertion that any such claim of retaliation is "unfounded," D. Obj. at 11-12, every current employee opted out of the class action, and did so using nearly identical forms, sent from the same zip code, using the same envelopes.  That is sufficient to at least raise the specter of retaliation.  In any event, Defendants were not unfairly prejudiced by Magistrate Judge Lehrburger's suggestion of retaliation — Defendants' plausible retaliation is not outcome determinative, but merely another thumb on the scale in favor of certification.

### 2.  Commonality

Rule 23(a) requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *Mangahas v. Eight Oranges Inc*., No. 22-cv-04150, 2024 WL 2801922, at *6 (S.D.N.Y. 2024) (citation and quotation marks omitted).  "[C]laims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification."  *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 127 (S.D.N.Y. 2011).

Commonality is readily satisfied here, where Defendants engaged in unlawful wage and hour violations applicable to all class members.  It is undisputed that Defendants paid all tipped employees the tip credit minimum wage, that Defendants paid class members the regular rate for overtime, and that Defendants did not pay class members a spread-of-hours premium.  *See* ECF No. 93 at 3 ("Sanctions Order"); se*e also Iglesias-Mendoza v. La Belle Farm, Inc*., 239 F.R.D. 363, 371 (S.D.N.Y. Jan. 29, 2007) (commonality satisfied where it was "clear that all of the

proposed class members would rely on the same allegedly wrongful conduct of the defendants and muster the same legal arguments in support of their New York Labor Law claims"); *Campos v. Goode*, No. 10-cv-00224 (DF), 2010 WL 5508100, at *2 (S.D.N.Y. Nov. 29, 2010) ("[A]lleged wage and hour violations – involving common operative facts stemming from corporate policies that affected the class members in the same way – are sufficient to meet Rule 23(a)'s commonality factor.").

Defendants now assert that commonality is not satisfied with respect to the overtime and spread of hour claims because those claims "do not appear to affect the class as a whole since more than half the class was not subject to unlawful overtime or spread of hours policies."  D. Obj. at 13.  However, courts certify classes "based on a theory of a common policy of unlawful practice even if there is evidence that some of the putative class members were either not affected or were affected to a lesser degree."  *Pichardo v. Carmine's Broadway Feast Inc*., No. 15-cv-03312 (RA)(SN), 2016 WL 4379421, at *6 (S.D.N.Y. June 13, 2016); *see also Pichardo v. Carmine's Broadway Feast Inc*., 2016 WL 5338551, at *4 (S.D.N.Y. Sept. 23, 2016) ("If . . . some workers were ultimately paid the proper amount because . . . they worked under forty hours, such differences in the class members may be addressed by individualized damages, and do not militate against class certification").

In any event, all parties agree that there is at least a "single common question" among all putative class members, namely, whether Defendants' payment of the tip credit minimum wage violated the NYLL.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("[F]or purposes of Rule 23(a)(2), even a single common question will do") (citation and quotation marks omitted); *Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 690 (S.D.N.Y. 1996), *aff'd sub nom*, 126 F.3d 32 (2d Cir. 1997) ("[Commonality] will be satisfied if the named plaintiffs

share at least one question of fact or law with the grievances of the prospective class.").  All class members received the tip credit minimum wage, and none received notice as to Defendants' use of a tip allowance.

### 3.   Predominance

Pursuant to Federal Rule of Civil Procedure 23(b)(3), a class action may be maintained if "the court finds that questions of law or fact common to class members predominate over any questions affecting only individual class members."  "The predominance requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *In re U.S. Foodservice Inc. Pricing Litig.,* 729 F.3d 108, 118 (2d Cir. 2013).

According to Defendants, individual damages on the overtime and spread of hours claims predominate over the liability issues in this case.  Not so.  "[T]he Second Circuit has found that individualized calculations of damages do not defeat the predominance requirement."  *Schear v. Food Scope America, Inc*., 297 F.R.D. 114, 126 (S.D.N.Y. Jan 10, 2014) (citing *In re U.S. Foodservice Inc.*, 729 F.3d at 123 n.8); *see also Johnson v. Brennan*, 2011 WL 4357376, at *6 (S.D.N.Y. Sept. 16, 2011) ("[I]t is well-settled that individualized damages calculations do not defeat predominance.").  To the extent there are individualized damages issues in this case, they involve "straightforward, mechanical calculations" as to employees' hours worked and rate of pay.  *Schear*, 297 F.R.D. at 126 (finding predominance requirement was satisfied were individualized damages issues involved "straightforward, mechanical" calculations).  That is clear from Magistrate Judge Lehrburger's ability to readily calculate class members' damages on their underpayment claims using Defendants' timesheets.

Presumably recognizing the weakness of their damages argument, Defendants separately attempt to refashion what are straightforward damages issues — the number of hours worked by employees and employees' respective pay rates — as jurisdictional standing issues. Defendants argue that individual issues regarding the overtime and spread of hours claims implicate "not merely a calculation of damages," but "whether each class member suffered a particular injury-in-fact and thus ha[s] standing to maintain the claim in this Court." Obj. at 13. Defendants miss the mark. For the purposes of class certification, "[s]tanding is satisfied so long as at least one named plaintiff can demonstrate the requisite injury." *Hyland v. Navient Corp.*, 48 F.4th 110, 117-18 (2d Cir. 2022); *accord In re AXA Equitable Life Ins. Co. COI Litig.*, No. 16-cv-00740 (JMF), 2023 WL 199284, at *1 (S.D.N.Y. Jan. 17, 2023). Class members' individual standing is relevant only for recovering individual damages, and as discussed previously, the existence of individualized damages claims does not foreclose class certification. Here, the "class definition used . . . makes clear that all the class members were subject to the policies at issue," which is "standing sufficient to maintain the certification of the class." *Chen-Oster v. Goldman, Sachs & Co.*, No. 10-cv-06950 (AT) (RWL), 2022 WL 814074, at *20 (S.D.N.Y. Mar. 17, 2022); *see also In re AXA Equitable Life Ins. Co. COI Litig.*, 2023 WL 199284, at *2 ("[T]he possibility that a well-defined class will nonetheless encompass some class members who have suffered no injury . . . is generally unproblematic as the non-injured parties can just be sorted out at the remedies phase of the suit.").

### 4. Superiority

Finally, because Plaintiffs bring their class action pursuant to Rule 23(b)(3), Plaintiffs must show that a "class action is superior to other available methods for fairly and effectively adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Magistrate Judge Lehrburger concluded

that the superiority standard is readily satisfied here given the common liability questions among class members.  Defendants disagree, largely regurgitating their arguments that individualized standing and damages issues bar certification.

Defendants' objections fail.  For the same reasons that the presence of individualized damages would not defeat the commonality or predominance requirements for class certification, they do not defeat the superiority requirement.  *See, e.g.*, *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 317 F.R.D. 374, 385 (S.D.N.Y. 2016) ("Individualized damages determinations alone cannot preclude certification under Rule 23(b)(3)."); *Bernstein v. Cengage Learning, Inc.*, No. 19-cv-07541 (ALC) (SLC), 2023 WL 6211771, at *5 (S.D.N.Y. Sept. 25, 2023) ("Predominance does not require the absence of individual damages.").

Defendants' argument that superiority cannot be established because there are individualized standing inquiries with respect to class members' tip credit and NYLL Section 195 claims is likewise unpersuasive.  There are no individualized questions of injury-in-fact with respect to class members' tip credit claims: it is undisputed that Defendants did not notify *any* of the class members of the tip credit allowance, and that all class members were paid the tip credit minimum wage.  As for individualized standing inquiries for class members' NYLL Section 195 claims, "standing in a class action is satisfied so long as at least one named plaintiff can demonstrate the requisite injury."  *In re AXA Equitable Life Ins. Co. COI Litig.*, 2023 WL 199284, at *1.  "[E]ach member of a class need not submit evidence of personal standing to certify a class that meets Rule 23's requirements."  *Id.* (citation and quotation marks omitted); *see also Chen-Oster*, 2022 WL 814074, at *19 ("[T]he test for standing . . . asks whether the class is defined in such a way as to ensure that the class members were subject to the policy [at issue].").  For the reasons explained below, the Court finds that Named Plaintiff Martinenko has

made a sufficient showing of standing with respect to her NYLL Section 195 claims to defeat summary judgment. *See infra* at II.1. Martinenko therefore satisfies the Article III standing requirement for class certification at this juncture.

Moreover, as Defendants themselves concede, there are various management tools to address individualized damages issues, to the extent such issues arise at the remedies phase. *See, e.g.*, *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001), *abrogated on other grounds by In re Initial Public Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) (identifying a number of management tools available to a district court to address individualized damages, including: (1) bifurcating liability and damage trials; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial; (4) creating subclasses; or (5) altering or amending the class).

### 2. There is No Genuine Factual Dispute as to the Number of Compensable Hours Worked by Class Members

Defendants do not dispute that they are liable for the class's minimum wage, overtime, and spread of hours claims. They maintain, however, that the R&R erred in granting summary judgment on damages because a genuine factual dispute remains with respect to the number of hours employees worked, and in particular, whether some of the clocked-in hours on class members' time records were non-compensable meal breaks.

Defendants dispute the accuracy of their own time records, which Defendants relied upon to pay class members and which reflect the hours employees clocked in and clocked out. Those records do not show any meal breaks. By Defendants' own admission, then, they failed to meet their record-keeping obligations, and "[t]he Court must construe the gaps in Defendant[s]' employment records against Defendant[s]." *Marcelino v. 374 Food, Inc.*, No. 16-cv-06827 (KPF), 2018 WL 1517205, at *19 (S.D.N.Y. Mar. 27, 2018). Where, as here, Defendants have

failed to maintain accurate documentation of hours worked and wages paid, courts apply a burden-shifting framework to evaluate class members' claims of unpaid wages. *Gamero v. Koodo Shushi Corp.*, 272 F. Supp. 3d 481, 497 (S.D.N.Y. Sept. 28, 2017). An employee need only "submit sufficient evidence from which violations of the FLSA and the amount of an award may be reasonably inferred." *Gonzalez v. Masters Health Food Serv. Inc.*, No. 14-cv-07603 (VEC), 2017 WL 3835960, at *16 (S.D.N.Y. July 27, 2017) (citing *Reich v. Southern New England Telecommc'ns. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997)) (quotation marks omitted). The employee's burden is "not high" and can be met "through estimates based on his own recollection." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011). The burden then shifts to the employer to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946). Under the NYLL, an employer who fails to keep accurate records shoulders the more demanding burden of coming forward with evidence of precise wages and hours. *Galvez v. 800 Ginza Sushi Inc.*, No. 19-cv-08549 (JPC), 2022 WL 748286, at *7 ("[Under NYLL], [a]n employer must demonstrate that it in fact paid its employee[']s wages, benefits, and supplements") (citation and quotation marks omitted).

The R&R properly applied this burden-shifting framework and determined that Plaintiffs met their burden of establishing, by a "reasonable inference," that Defendants treated all clocked-in time as compensable time. Defendants insist that Magistrate Judge Lehrburger erroneously conflated time paid with compensable time. D. Obj. at 18-19. To be sure, time paid does not always translate into compensable time. However, here, Plaintiffs' testimony, Defendants' own time records, and Defendants' documented practice of paying class members

14

for all clocked-in time at least gives rise to an inference that such time was compensable for the purposes of the FLSA and NYLL.  See *Hart v. Rick's Cabaret Intern, Inc*., 60 F. Supp. 3d 447, 475 (S.D.N.Y. Nov. 14, 2014) ("[Class members] are entitled to be compensated for all hours worked between the time they logged in until the time they logged out."); *Scott v. City of New York*, 592 F. Supp. 2d 386, 408 (S.D.N.Y. Aug. 28, 2008) ("[L]ongstanding NYPD practice evinces an agreement to treat meal periods as working hours, *including payment for such hours*") (emphasis added).

Defendants, however, have offered next to no evidence in rebuttal and therefore have failed to discharge their burden.  Defendants' evidence that employees took bona fide breaks is scant and speculative.  Defendants cite only to (1) the restaurant's provision of a lunch meal for all employees; and (2) the fact that house employees clocked in with "ample time" to take a break prior to the restaurant's formal opening.  D. Obj. at 19-20.  This does not create a genuine dispute of material fact.  Defendants must either "negative the reasonableness" of Plaintiffs' evidence or "come forward with evidence of the precise amount of work performed."  *Anderson*, 328 U.S. 687-88.  They have done neither.  *See also Tambriz v. Taste and Sabor LLC*, 577 F. Supp. 3d 314, 325 (S.D.N.Y.2021) (finding that plaintiffs' workday time was compensable where plaintiffs asserted that they did not receive any meal breaks and the court "ha[d] no information before it to contradict their assertions.").

The authority cited by Defendants does not move the needle in their favor.  29 C.F.R. § 778.320 provides that "unless it appears from all the pertinent facts that the parties have treated [activities that would not be regarded as working time under the FLSA] as hours worked, payment for such time will be regarded as qualifying for exclusion from the regular rate."  Here, the "pertinent facts" show that the parties in fact treated meal breaks as hours worked.

Defendants also cite to *Liu v. Matsuya Quality Japanese Inc.*, No. 16-cv-03624 (ERK) (VMS),

2018 WL 3213275, (E.D.N.Y. June 29, 2018).  In *Liu*, the court acknowledged that "just because

an employer provides an employee with a paid lunch hour does not *necessarily* mean that hour is

added to the employee's total weekly working hours for the purposes of FLSA's overtime

requirements."  *Id*. at *5 (emphasis in original).  But the court proceeded to state that the relevant

inquiry is "whether or not it appears from all the pertinent facts that the parties have agreed to

treat such time as hours worked."  *Id.* (citation omitted).  Again, the totality of the evidence

offered by Plaintiffs gives rise to a reasonable inference that the parties agreed to treat meal

breaks as time worked.

### 3.    There is No Genuine Factual Dispute as to Whether Defendants Had Actual or Constructive Knowledge of Employees' Time Worked

Defendants separately argue that the R&R's grant of summary judgment as to Plaintiffs'

underpayment claims was erroneous because the R&R does not address whether Defendants had

"actual or constructive" knowledge of employees' hours.

The Court agrees with Plaintiffs that Defendants' claim that they had no actual or

constructive knowledge of employees' time worked is dubious.  Defendants were the custodians

of class members' timesheets.  Those timesheets did not report meal breaks and are themselves

sufficient to establish Defendants' actual and constructive knowledge of class members' hours.

*See Rodriguez v. Avondale Care Group, LLC*, No. 16-cv-03084 (SN), 2018 WL 1582433, at *7

(S.D.N.Y. Mar. 27, 2018) ("[Defendant] has constructive knowledge that [Plaintiff] was unable

to take her required breaks because she did not report that she took them.").  *Gordon v. Kaleida*

*Health*, 299 F.R.D. 380, 392 (W.D.N.Y. 2014), cited by Defendants, is inapposite.  *Kaleida*

involved an employer's knowledge of "unreported" and "uncompensated" time and is therefore

readily distinguishable from the circumstances here, where employees reported their total hours

(inclusive of meal breaks) to Defendants and were compensated accordingly.  *Cf. id.* at 392

("[S]ummary judgment is denied because reasonable minds could differ as to whether

[Defendant] had actual or constructive knowledge of *unreported, uncompensated time*.")

(emphasis added).

## II.    Plaintiffs' Objections to the R&R

Plaintiffs' sole exception to the R&R is directed to its analysis of standing for class

members' NYLL Section 195 claims.  Section 195(1) of the NYLL requires that employers

provide employees with notice at the time of hiring of "the rate or rates of pay, and basis thereof,

whether paid by the hour, shift, day, week, salary, piece, commission, or other; [and] allowances,

if any claimed as part of the minimum wage, including tip, meal, or lodging allowances."

N.Y.L.L. § 195(1)(a).  Section 195(3) provides that employers must give employees certain wage

statements "with every payment of wages."  *Id.* § 195(3).  While Magistrate Judge Lehrburger

determined that it was beyond dispute that Defendants violated NYLL Section 195, he concluded

that, "for the purposes of seeking damages, Plaintiffs have not produced evidence to show that

they suffered an injury."  R&R at 61.  Plaintiffs disagree.  The Court will again review this

objection *de novo*.

To establish Article III standing, a "plaintiff must show (i) that he suffered an injury in

fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused

by the defendant, and (iii) that the injury would likely be redressed by judicial relief."

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  "Every class member must have Article

III standing in order to *recover* individual damages," as "Article III does not give federal courts

the power to order relief to any uninjured plaintiff, class action or not."  *Id.* at 431 (emphasis

added) (citation and quotation marks omitted).  Moreover, plaintiffs "must demonstrate standing

for each claim that they press and for each form of relief that they seek." *Id.* "As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *Id.* at 430-31.

The Second Circuit recently opined on the issue of Article III standing for the purposes of NYLL Section 195 and 198 claims. *See, e.g.*, *Guthrie v. Rainbow Fencing Inc*., No. 23-350, 2024 WL 3997427 (2d Cir. Aug. 30, 2024). Applying the Supreme Court's decision in *TransUnion*, the Second Circuit held that "a plaintiff cannot rely on technical violations of the Labor Law but must allege actual injuries suffered as a result of the alleged wage notice and wage statement violations." *Id.* at *305 (ellipses, quotation marks, and citations omitted). The court approved theories of "informational injury" based on the unlawful withholding of requested information but underscored that plaintiffs asserting "informational harm" need to show "some causal connection between the lack of accurate notices and [a] downstream harm." *Id.* at *308. Plaintiffs "cannot . . . rely on speculation and conjecture" to draw that causal connection. *Id*. at 309 (citation and quotation marks omitted). It is not sufficient, for example, for the plaintiff to "identif[y] potential harms that *could* result from an employer's failure to provide wage notices and wage statements." *Id.* at *310 (emphasis in original). Instead, the plaintiff must "show that he or she would have undertaken . . . advocacy and plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided." *Id*. at *308-09. *Guthrie* clarifies and bolsters, but does not disturb, the R&R's standing analysis, which was premised on caselaw that is consistent with *Guthrie's* holding. *See, e.g*., R&R at 61 (observing that "plaintiffs alleging violations of the wage notice and statement provisions of the NYLL must show more than technical violations of the law").

Plaintiffs proffer two independent theories of standing for Class Members' NYLL wage notice and wage statement claims: (1) the wage notice violations directly caused class members' monetary harm in the form of underpayment; and (2) deficient wage statements hindered class members' ability to identify Defendants' underpayment and therefore prevented them from taking remedial action in a timely fashion. For the reasons set forth below, the Court agrees with Magistrate Judge Lehrburger that Plaintiffs, including unnamed class members, have not at this juncture sufficiently established standing for their NYLL Section 195 claims.

### 1. Plaintiffs Have Not Shown Informational Injury

Plaintiffs argue that Defendants' NYLL Section 195 violations "hindered Class Members' ability to identify and remedy Defendants' wage and hour violations." Pl. Obj. at 10. Magistrate Judge Lehrburger concluded that whether unnamed class members had suffered informational harm was "indeterminate" because absent class members have not yet submitted evidence of standing. R&R at 69. Moreover, Magistrate Judge Lehrburger found "competing evidence" as to whether Martinenko had suffered informational harm. R&R at 68-69. Finally, Judge Lehrburger determined that there was no record evidence that Opt-In Plaintiff Huk had incurred a concrete informational harm, and, finding no basis for a direct monetary harm either, recommended dismissing Huk's Section 195 claims for lack of standing. R&R at 66-67. The Court agrees with the R&R's findings, and therefore denies summary judgment against Martinenko and unnamed class members' Section 195 claims and dismisses Huk's Section 195 claims.

*Guthrie* supports this result. *Guthrie* clarified that an informational harm can establish Article III standing for the purposes of a NYLL Section 195 claim so long as there are downstream consequences and plaintiffs "link the general harms an employee *might* experience

to any harms that [plaintiffs] *did*, in fact, experience." 2024 WL 3997427, at *7 (emphasis in original); *see also Kaur v. Natasha Accessories Ltd.*, No. 23-cv-06948 (JPO), 2024 WL 3429129, at *4 (S.D.N.Y. July 16, 2024) (finding that plaintiff "plausibly alleges" that "her wage statements showed fewer hours than what she actually worked, which prevented her from determining and seeking payment for the precise amount of her unpaid wages," thereby resulting in "tangible" financial harm) (quotation marks and brackets omitted). Plaintiffs have not established that class members "would have undertaken . . . advocacy" on their behalf or that they "plausibly would have avoided some harm or obtained some actual benefit if accurate notices had been provided." *Guthrie*, 2024 WL 3997427, at *5.

Turning first to Opt-in Plaintiff Huk — the Court agrees with the Magistrate Judge that Plaintiffs have not identified any record evidence of Huk incurring a concrete informational harm. In the absence of any such allegation, Huk does not have standing based on an informational harm. *See id.* at *7 ("Without plausible allegations that [plaintiff] suffered a concrete injury because of [defendant's] failure to provide the required notices and statements, Guthrie lacks standing to sue for that statutory violation.").

As for Named Plaintiff Martinenko, the Court agrees with the R&R's finding that, at this juncture, there are issues of fact as to whether Martinenko suffered informational harm. Martinenko has asserted that she never received a legally sufficient wage notice; that she never complained to anyone about her wages because she did not know that they were incorrect; and that if she had been informed that she was entitled to overtime pay, she would have escalated the issue to Defendants. R&R at 67-69. The parties offer competing evidence as to whether Martinenko in fact "would have undertaken such advocacy . . . if accurate notices had been provided." *Guthrie*, 2024 WL 3997427, at *5. In particular, the parties dispute the extent of

Martinenko's pre-existing knowledge as to Defendants' wage violations.  *See* R&R at 67-69.

Given the fact disputes, the Court agrees with the R&R that "[d]ismissal or summary judgment

against Martinenko based on standing . . . is not warranted."  R&R at 68.

The same conclusion necessarily follows for the unnamed class members, whom the

R&R rightfully observes have had "no opportunity to submit evidence that they have standing on

the [Section] 195 claims."  R&R at 69.  *Cf. Castillo v. Hollis Delicatessen Corp.*, No. 22-cv-

05476 (AMD) (PK), 2024 WL 4107258, at *1, n.1 (E.D.N.Y. Sept. 6, 2024) (plaintiff established

Article III standing where plaintiff specifically alleged that "defendants were able to hide their

violations of wage and hour laws and take advantage of Plaintiff's relative lack of sophistication

by failing to provide her with wage information") (quotation marks and citations omitted); *Rosas

v. M and M LA Solucion Flat Fixed Inc.*, No. 23-cv-01212 (DG)(MMH), 2024 WL 4131905, at

*12 (E.D.N.Y. Sept. 10, 2024) (plaintiffs sufficiently established Article III standing where they

"aver[ed] that Defendants' alleged failure to provide wage notices and statements caused [them]

to endure uncertainty regarding [their] wages and prevented [them] from taking action to correct

Defendants' wage and hour violations*"*) (citation and quotation marks omitted)*; Reyes et al. v.

Crystal Window & Door Sys., Ltd.*, No. 23-cv-02578 (RPK) (JRC), 2024 WL 4028308, at *4

(E.D.N.Y. Sept. 3, 2024) (plaintiffs adequately pleaded concrete injuries where they "allege[d]

that defendant's failure to provide the notices resulted in Plaintiffs working for years without

knowledge of their correct pay frequency and overtime rate").

Plaintiffs' citation to this Court's prior decisions, including *Lipstein v. 20X Hospitality

LLC*, does not change the result.  *Lipstein* involved a different procedural posture — a motion to

dismiss — wherein the Court was obliged to draw all reasonable inferences in favor of the

plaintiff-employee.  *Lipstein v. 20X Hospitality LLC*, No. 22-cv-04812, 2023 WL 6124048, at

*9, 11 (S.D.N.Y. Sept. 19, 2023) (Rochon, J.).  Unlike at the motion to dismiss stage, where a plaintiff need only "alleg[e] facts that affirmatively and plausibly suggest they have standing," *Metcalf v. TransPerfect Translations Int'l, Inc.*, No. 19-cv-10104 (ER) (KHP), 2023 WL 2674743, at *4 (S.D.N.Y. Mar. 29, 2023) (citation and quotation marks omitted), Plaintiffs must proffer "specific facts" in support of standing to prevail on their motion for summary judgment. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Indeed, this Court expressly acknowledged in *Lipstein* that its standing analysis might change with the benefit of additional discovery and fact-finding: "Discovery may ultimately bear out that the allegedly insufficient wage statements and notices did not actually hinder Plaintiff and others from raising issues regarding underpayment."  *Lipstein*, 2023 WL 6124048, at 11; *see also Lubinski v. Johnson Controls, Inc.*, 2024 U.S. Dist. LEXIS 119705, at *3-4 (S.D.N.Y. July 9, 2024) (Rochon, J.) (plaintiffs sufficiently pleaded an injury-in-fact where, at the motion to dismiss stage, they alleged that defendant's failure to provide required wage statements and notices harmed them by denying them information necessary to determine whether they were being paid lawful wages).

### 2.  Plaintiffs Have Not Shown Monetary Harm

Presumably recognizing the difficulties of establishing informational injury on behalf of unnamed class members at this juncture, Plaintiffs separately endeavor to articulate a direct monetary harm.  According to Plaintiffs, Defendants' failure to provide legally sufficient wage notices and wage statements "directly caused" class members to be underpaid.  Pl. Obj. at 6. With respect to the NYLL Section 195(1) violations, Plaintiffs contend that "[d]efendants' failure to provide wage notices plainly caused all Class Members to be underpaid because it was this lack of notice that made Defendants' use of the tip credit an unlawful underpayment."  *Id.* But for Defendants' deficient wage notices, Plaintiffs argue, Defendants' payment of the tip

credit minimum wage would not have been unlawful and class members therefore would not have been paid less than their due.  *Id.*  As for the NYLL Section 198 violations, Plaintiffs argue that Defendants' deficient wage statements "resulted in the actual underpayment of overtime to Class Members" because employees' checks were issued based on those wage statements.  *Id.*

Magistrate Judge Lehrburger properly concluded that Plaintiffs' theory of monetary harm fails not for a lack of concrete injury, but because Plaintiffs cannot directly trace Class Members' underpayment to Defendants' deficient wage notices and wage statements.  R&R at 64.  That is, Plaintiffs cannot show that they or other class members were underpaid *because* Defendants issued deficient documentation.  The underpayment of employees' wages is more appropriately attributed to Defendants' illegal pay practices, including Defendants' failure to pay overtime and Defendants' failure to notify employees of the tip credit.  *See, e.g.*, *Freeland v. Findlay's Tall Timbers Distrib. Center, LLC*, No. 22-cv-6415 (FPG), 2024 WL 2702201, at *4 (W.D.N.Y. May 24, 2024), *abrogated on other grounds by Guthrie*, 113 F.4th 300 ("Although the allegedly inaccurate wage statements may have made it more difficult for plaintiff to calculate his proper overtime rate, it is not apparent — short of legal action — how an accurate statement would have dissuaded Defendant from underpaying Plaintiff and thus prevented his monetary harm.") (quotation marks, citation, and parentheticals omitted); *Quieju v. La Jugueria Inc.*, 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25, 2023) ("The injury that plaintiff suffered (*i.e.*, defendants' failure to pay him) is not an injury he sustained because of a lack of the required documents; it is an injury he sustained because his employer violated its obligation to pay the minimum wage, overtime, and spread-of-hours pay under other, express requirements of federal and state law.").

Plaintiffs are also wrong to assert that "if Defendants provided Plaintiffs and the Class Members with NYLL [Section] 195(1)-compliant wage notices, their use of the tip credit would

have been lawful." Pl. Obj. at 9. NYLL imposes stringent requirements for the tip credit, including that employers obtain employees' signed acknowledgment of the tip credit, 12 N.Y.C.R.R. § 146-2.2(a), and explain that tips are being credited against their minimum wages. *See, e.g.*, *Gamero*, 272 F. Supp. 3d at 501; *Galvez* 2022 WL 748286, at *10 ("Employers must state the intent to take a tip credit *specifically*, and not just, for example, inform employees that they will receive wages augmented by tips.") (emphasis added); *Hristova v. 3321 Astoria Inc.*, No. 17-cv-01633 (RER), 2018 WL 4006880, at *4 (E.D.N.Y. June 27, 2018) ("Defendants have not produced evidence to support their claim that the tip-credit notice was proper" where manager "testified that he had [plaintiff] sign the WTPA wage notice, but there is no evidence that he ever explained the tip credit statute to the [p]laintiff."). Therefore, even if Defendants had issued legally sufficient wage notices, that would not have been sufficient to satisfy their obligation to inform employees of the tip credit or to pay wages based on the tip credit.

*Guthrie* in no way abrogates the traceability requirement for Article III standing. To the extent *Guthrie* distinguishes cases cited in the R&R, including *Freeland v. Findlay's Tall Timbers Dist. Center*, 2024 WL 2702201 (W.D.N.Y.), and *Jackson v. ProAmpac LLC*, 694 F. Supp. 3d 352, 363 (S.D.N.Y. 2023*), abrogated on other grounds by Guthrie*, 113 F.4th 300, it does so out of a concern that those cases misapply Second Circuit precedent to foreclose standing based on theories of *informational* harm. Specifically, the Second Circuit determined that *Freeland* and *Jackson* have misapplied its holding in *Harty,* a case involving a plaintiff-tester who failed to receive statutorily required disclosures. *Guthrie*, 113 F.4th at 309-10 (citing *Harty v. West Point Realty, Inc.*, 28 F.4th 435 (2d Cir. 2022)). *Guthrie* observes that these and other courts have subverted *Harty*'s reasoning to require plaintiffs asserting NYLL Section 195 violations to "show an interest in using the [withheld] information *beyond bringing [their]*

24

*lawsuit*." *Id.* (emphasis added). *Guthrie* emphasizes that "an employee who has actually lost wages is not analogous to a plaintiff-tester" who "seeks to promote compliance with statutory disclosure requirements through lawsuits" and who therefore "must show some concrete interest in each lawsuit to have standing." *Id.*

*Guthrie* does not disturb, however, the well-established principle that, where a plaintiff alleges *monetary* harm, that harm must still be "fairly traceable to Defendant's alleged violation of the NYLL wage statement requirement." *Freeland*, 2024 WL 2702201, at *4. The traceability requirement for Article III standing is separate and distinct from the concreteness requirement that *Guthrie* analyzes. Here, as in *Jackson* and *Freeland*, Plaintiffs' "monetary harm is . . . better traced as injury flowing from Defendant's alleged violations of state and federal overtime requirements, not Defendant's inaccurate wage statements." *Id*. at 4 (citation and quotation marks omitted); *see also Jackson*, 694 F. Supp. 3d at 363 ("Plaintiff's monetary harm is better traced as an injury flowing from [defendant-employer's] rounding policy, not [defendant-employer's] inaccurate wage notices.").

The Court is unpersuaded by the cases cited by Plaintiffs, which are once more in different procedural postures. *See, e.g.*, *Isayeva v. Diamond Braces*, No. 22-cv-04575 (KPF), 2024 WL 1053349, at *17 (S.D.N.Y. Mar. 11, 2024) (at motion to dismiss stage, plaintiff-employees "plausibly establish[ed]" that defendants' deficient wage statements "not only hindered Plaintiffs from realizing their rights at the time of payment, but also injured Plaintiffs by enabling the actual underpayment of their wages"); *Mateer v. Peloton Interactive, Inc*., No. 22-cv-00740 (LGS), 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022) (at motion to dismiss stage, construing "all reasonable inferences in [plaintiff's] favor" to find Article III standing). In response to a summary judgment motion, however, the plaintiff "can no longer rest on . . .

allegations," but "must set forth by affidavit or other evidence specific facts" in support of standing. *Lujan*, 504 U.S. at 561 (citations and quotation marks omitted). Plaintiffs have not met this burden.

### III.   Uncontested R&R Findings

The parties do not contest the R&R's recommendations with respect to the calculation of damages for Plaintiffs' unpaid wages, Defendant Volper's individual liability, or Plaintiffs' entitlement to pre-judgment interest. The Court has reviewed those portions of the R&R for clear error and finds that they are comprehensive and well-reasoned, and therefore adopts them in their entirety. *See, e.g.*, *Gomez v. Brown*, 655 F. Supp. 2d 332, 341 (S.D.N.Y. 2009) ("[W]ith respect to the uncontested portions of a report and recommendation, a district court need only satisfy itself that there is no clear error on the face of the record.") (citations and quotation marks omitted).

### CONCLUSION

For the foregoing reasons, the Court adopts the R&R in its entirety. Defendants' motion to decertify the Rule 23 class is DENIED. Plaintiffs' motion for summary judgment is GRANTED in part and DENIED in part. Defendants' cross-motion for summary judgment is GRANTED in part and DENIED in part. Specifically, the Court orders that:

1. The class be awarded unpaid minimum wages under the NYLL without a tip credit allowance in the total amount of $96,608.35;

2. The class be awarded unpaid overtime wages under the NYLL without a tip credit allowance in the total amount of $2,530.75;

3. The class be awarded unpaid spread-of-hours premiums under the NYLL where applicable in the total amount of $2,388;

4.   The class be awarded liquidated damages under the NYLL in the total amount of $101,527.10;

5.   Defendant Volper be held individually liable for damages under the FLSA and NYLL;

6.   Plaintiff Huk's NYLL Section 195 wage notice and statement claims be dismissed for lack of standing;

7.   Summary judgment be denied on the rest of the class members' NYLL Section 195 wage notice and wage statement claims;

8.   The parties be ordered to meet and confer regarding next steps for addressing individualized injury with respect to the unnamed class member Section 195 claims; and

9.   Prejudgment interest be awarded from June 18, 2019, at a rate of 9% on the total unpaid wages of $101,527.10.

Dated: September 24, 2024
      New York, New York

                        SO ORDERED.

                      *Jennifer Rochon*

                      JENNIFER L. ROCHON
                      United States District Judge