# EXHIBIT A

# Table of Contents

---

**A-I. Factual and Procedural Background**     **2**

**A-II. Fraud and Misconduct by Class Representatives**     **3**

**A-III. Fraud and Misconduct by Class Counsel**     **26**

**A-IV. Coordinated actions and collision between officers of the court to hide fraud on the court (Defense Counsel and plaintiff's counsel)**     **50**

**A-V. Judicial Errors That Compound Prejudice and The Court's Summary Judgment Rulings Rest on Ignored Facts and False Pleadings**     **82**

**A-VI. ARTICLE III STANDING VIOLATIONS IN FINAL JUDGMENT**     **107**

**A-VII. The Court Lacked Supplemental Jurisdiction Under 28 U.S.C. § 1367 After the FLSA Claim Collapsed**     **112**

**A-VIII. Conclusion & Relief Requested**     **114**

# A-I. Factual and Procedural Background

The case began on January 20, 2022, when Martinenko filed a Complaint (Dkt. 1) alleging wage violations under the FLSA and NYLL. Three months later, on April 26, 2022, Judge Liman granted FLSA conditional certification (Dkt. 30). But by December 2022, the factual basis had collapsed. In her deposition (Dkt. 119-11), Martinenko admitted she never read the Complaint before filing, did not understand key legal terms, had no knowledge of coworkers' hours, never submitted cash tip reports, and never complained about wages. These admissions confirmed the Complaint and declarations were unverified, materially false, and filed in violation of Rule 11.

Despite these flaws, Plaintiffs moved for Rule 23 certification on December 9, 2022 (Dkt. 70), supported by additional false declarations from Martinenko (Dkt. 73), opt-in Plaintiff Dagmara Huk (Dkt. 74), and attorney Michael DiGiulio (Dkt. 72). Defendants opposed (Dkt. 75), citing credibility and adequacy concerns. On April 27, 2023, Judge Rochon adopted Magistrate Judge Lehrburger's recommendation (Dkt. 87), certifying a Rule 23 class and appointing Martinenko and Huk as representatives (Dkt. 92).

Defendants moved to disqualify Plaintiffs' counsel for improper solicitation and coercive communications (Dkt. 84). Plaintiffs opposed (Dkt. 85). On April 4, 2023, the motion was denied (Dkt. 86), with Magistrate Judge Lehrburger incorrectly stating that communications were authorized "by text and other means." In fact, the order (Dkt. 30) only allowed mail, email, and text. At the hearing, Plaintiffs' counsel admitted having reviewed sworn opt-out affidavits (Dkt. 94, p. 24), confirming multiple employees chose not to participate in the lawsuit.

On November 16, 2023, Plaintiffs moved for summary judgment (Dkt. 113), supported by declarations, a damages summary, and time records (Dkts. 116, 116-1, 116-9, 116-10). Their motion once again relied on false testimony, including a December 21, 2023 affidavit from Plaintiff Martinenko (Dkt. 122) denying post-termination access to payroll systems. Audit logs (Dkts. 112-11, 112-12) later proved she had accessed the system six times after termination. Defendants opposed and moved to decertify (Dkts. 119, 128), but on August 13, 2024, Magistrate Judge Lehrburger issued a Report and Recommendation

recommending that Defendants' motion to decertify be **denied** and Plaintiffs' motion for summary judgment be **granted in part and denied in part** (Dkt. 132),  Judge Rochon adopted that recommendation on September 24, 2024 (Dkt. 141).

Following partial summary judgment, Plaintiffs moved to dismiss the remaining NYLL § 195 claims (Dkt. 145). Defense counsel Greenbaum coordinated with Plaintiffs' counsel to stipulate dismissal without prejudice and present it as a Plaintiff-led strategy. The court issued an opinion and order for Plaintiffs' motion to voluntarily dismiss the remaining NYLL Section 195 claims without prejudice is GRANTED, and Defendants' motion to decertify the class is DENIED on November 13, 2024 (Dkt. 153). The final judgement was entered on November 14, 2024. (Dkt. 154). Fees of $223,458.28 were awarded December 23, 2024 (Dkt. 166).

At the January 29, 2025 post-judgment hearing (Dkt. 181), Schulman dismissed Defendant's fraud allegations as "baseless and irrelevant." The Court concluded Defendants sought to "relitigate" issues that "could have been raised earlier" (id. at 9)—but emails, texts, and billing records prove Defendant did raise them, and his attorney deliberately concealed them from the tribunal.

# A-II. Fraud and Misconduct by Class Representatives

Rule 23 requires that class representatives be both "typical" of the class and "adequate" to fairly and vigorously protect the interests of absent members. Fed. R. Civ. P. 23(a)(3)–(4). These safeguards are constitutional in nature, ensuring that absent members are not bound by conflicted or unfit representatives. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997).

In its Report and Recommendation, the Court stated: "Defendants do not challenge continued certification on the basis of typicality or adequacy. Because the Rule 23 requirements remain satisfied, Defendants' motion to decertify the class should be denied." — Dkt. 132 at 10.

This finding was fatally flawed. Adequacy and typicality were never raised—not because the record lacked grounds—but because Defendants' counsel failed to present the evidence of fraud, misconduct, and misrepresentation that was already available. Once Defendant personally reviewed the underlying records, it became clear why this issue had been suppressed: the evidence demonstrated that Plaintiff's misconduct, credibility issues, and conflicts of interest made them unfit under Rule 23(a)(3)–(4) and rule 60.

## A. False and Misleading Statements in Complaint and Declarations

## i. False Allegations of Centralized Payroll Control

1. The Complaint falsely claimed that "Defendant Volper is in charge of employee discipline, payroll issues and scheduling at 212 Steakhouse." (Dkt. 1, ¶7). However, Plaintiff Martinenko testified under oath that she personally handled payroll: "I would also be in charge to write paychecks... I did payroll." — Martinenko Dep., Dkt. 119-11, pp. 18, 37, 57 "One of my responsibilities at 212 Steakhouse was to write employees' paychecks." — Martinenko Decl., Dkt. 22, ¶7.

Volper's deposition further confirmed that "Most of the staff determine to do their own... I was not engaged in that at all." — Volper Dep., Dkt. 119-12, p. 40. "She [Martinenko] writes her own checks, and determines her own hours." — Id., p. 42. "During this period most of the staff including Plaintiff was in charge... I was absent." — Id., p. 25

Opt-in Plaintiff Dagmara Huk corroborated this "There was no primary person. Sometimes me, sometimes Nino, sometimes Sasha." — Huk Dep., Dkt. 119-10, pp. 24–25

This evidence conclusively disproves the Complaint's payroll-control allegation. As the Second Circuit has held, ownership or general oversight is insufficient to impose liability without proof of actual operational control. *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013). Similarly, in *Tracy v. NVR, Inc.*, 667 F. Supp. 2d 244, 247 (W.D.N.Y. 2009), the court emphasized that payroll authority, not mere status as an owner, determines liability. Volper's testimony further shows that he relied on employees to manage their own records: "I didn't have really doubt somebody cheat on the hours, or tips, or anything like that." When asked who extracted time records from the POS system to calculate pay, he responded: "Depends who is there, you know. I don't know exactly. Depends who is there." (Dkt. 119-12, p. 42). This record undermines any suggestion that Defendants "knew or showed reckless disregard" for wage law compliance—the standard for willfulness under *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

## ii. Fabricated Overtime Claims

The Complaint also falsely asserted that Plaintiff regularly worked overtime and had consistently long workdays, allegations that formed the supposed basis for both collective and class certification. Specifically, it alleged that "Plaintiff regularly worked more than 40 hours per week" (Dkt. 1, ¶23), that she "regularly worked five dinner shifts and two to three lunch shifts" (id. ¶24), and that "Plaintiff and all the Class members regularly had workdays that lasted more than ten (10) hours" (id. ¶48). In her declaration, Martinenko swore under oath that "I frequently worked more than 40 hours per week at 212 Steakhouse" (Dkt. 22 ¶3).

Contrary to the claims that Plaintiff Nino Martinenko "regularly worked over 40 hours per week," the time record data disclosed in Dkt. 116-9 shows In 2016: 252 days worked / total hours 1,626 → average 32.25 hours per week, In 2017: 226 days worked / total 1,473 hours → average 32.6 hours per week, In 2018: 220 days worked / total 1,682 hours → average 38.25 hours per week and in 2021: 138 days worked / total 1,071 hours → average 38.8 hours per week. This four-year average confirms Plaintiff was not "regularly" working in excess of 40 hours as acquitted in claim ¶¶3,5. Additionally, Plaintiff's total overtime damages were de minimis: just $829 over four years—or approximately $207.25 per year—according to Dkt. 116-1. These figures underscore the marginal and individualized nature of any overtime exposure and further negate any "regular" or common practice. In Zivali v. AT&T Mobility, LLC, the court rejected certification where plaintiffs could not show a "consistent overtime practice, not occasional instances." 784 F. Supp. 2d 456, 470 (S.D.N.Y. 2011).

When deposed, Plaintiff was repeatedly asked to produce a single timecard showing she exceeded 40 hours in a week. She could not. Her responses were evasive, inconsistent, and unsupported: "Show me where you worked in excess of 40 hours, which you stated in your complaint…" — Dkt. 119-11, p. 70. The only example she attempted to cite—a September week with longer shifts—was cherry-picked, isolated, and unrepresentative. When confronted, her attorney responded with derision rather than evidence: MR. DiGIULIO: "Sure. Forgery. Go for it." — Dkt. 119-11, p. 71.

Rather than correcting the record, counsel doubled down, claiming the Complaint only said "regularly worked," not "every week." Her counsel interjected with the evasive retort, "Sure. Forgery. Go for it." (Dkt. 119-11, pp. 70–71). This exchange illustrates a litigation strategy grounded in assertion rather than evidence. — Dkt. 119-11, p. 71. But in FLSA jurisprudence,

"regularly" requires a consistent and recurring pattern, not a few scattered instances over six years. See *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 470 (S.D.N.Y. 2011) (must show reliable evidence of recurring overtime). *Hinterberger v. Catholic Health Sys., Inc.*, 299 F.R.D. 22, 41 (W.D.N.Y. 2014) (sporadic overtime insufficient for certification).

The Complaint's allegation that Plaintiff and class members "regularly had workdays that lasted more than ten hours" is likewise disproven. Time records confirm that Martinenko's average daily hours fell well short of ten hours a work day. When questioned on the subject, she admitted she did not even know what the term "spread-of-hours" meant: "Do you know what spread-of-hours means?" — "I don't know." (Dkt. 119-11, p. 69). Her ignorance of the basic elements of her own claim demonstrates that these allegations were not based on her personal knowledge, but were instead boilerplate assertions supplied by counsel without factual foundation.

The actual damages for any spread-of-hours claim were also negligible: Martinenko's total spread-of-hours exposure amounted to just $888 over four years, or $222 annually (Dkt. 116-1). The class-wide audit further reveals that out of 30 absent class members fifteen of thirty class members had zero overtime damages, nine had less than $100 in overtime damages, eleven had no spread-of-hours damages, and eighteen had less than $100 in spread-of-hours damages (id.) over their 6 years of employment history. These figures confirm that even occasional long shifts did not translate into meaningful harm for most employees, undermining any assertion of commonality or typicality under Rule 23.

### iii. Misrepresentations of Willfulness and Underpayment

The Complaint alleged that "Defendants committed the following alleged acts knowingly, intentionally and willfully." (Dkt. 1, ¶21). "At all relevant times, Defendants willfully, regularly and repeatedly failed to pay Plaintiff and the FLSA Collective Plaintiffs at the required overtime rates for hours worked in excess of forty (40) hours per workweek." (Dkt. 1, ¶36). NYLL Overtime Violation for Class Members "Throughout the Class Period, Defendants willfully, regularly and repeatedly failed to pay Plaintiff and the Class members at the required overtime rate for hours worked in excess of forty (40) hours per workweek." (Dkt. 1, ¶45). All Employees Are Similarly Situated "At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated... They were subject to Defendants' decision, policy, plan and common policies, programs, practices... willfully failing and refusing to pay them proper overtime pay." (Dkt. 1, ¶10).

Yet, As detailed above under ¶ii (Fabricated overtime claims and spread of hours), Plaintiff's own hours fell below the 40-hour threshold across all relevant years. (See Dkt. 116-9.) The total overtime damages across four years were only $829, or $207.25 per year. This fact alone negates the claim of "regular and repeated" violations. Further, a class-wide payroll audit confirms the absence of a uniform violation or meaningful harm: 15 of 30 collective/class members had zero overtime damages. 11 of 30 had no spread-of-hours damages. (*See Dkt. 116-1*).

The structural context makes this even more clear. Both plaintiffs personally participated in payroll: Martinenko admitted that she did payroll, she wrote paychecks (Dkt. 22 ¶7; Dkt. 119-11, pp. 18, 37, 57). Huk likewise acknowledged preparing paychecks during her employment (Dkt. 119-10, pp. 14–15).. Defendant Volper had no operational role in payroll or scheduling (Dkt. 119-12, pp. 14, 25, 40–47), and staff largely self-managed shift assignments (id.; Dkt. 119-10, pp. 15, 24–25). No centralized policy existed; rather, hours, payroll, and scheduling were

individualized and often controlled by Plaintiff herself. Her silence, despite direct access to payroll, is fatal to any claim of willfulness, repeated and regular conduct.

As courts have emphasized, "Willfulness cannot be presumed and must be supported by actual facts showing intentional misconduct." *Zinman v. Prudential Ins. Co. of Am.*, 199 F.R.D. 244, 250 (E.D. Pa. 2001). Where an employee has control, knowledge, and opportunity to challenge payroll but fails to act, courts reject willful violation claims.

The Complaint alleged that "Defendants committed the following alleged acts knowingly, intentionally and willfully." (Dkt. 1, ¶21). Yet Plaintiff Martinenko admitted under oath that she never raised any wage complaint during her employment: In her deposition, Plaintiff testified unambiguously that she did not complain about minimum wage to any supervisor, manager, or owner during her employment at 212 steakhouse: Q. "Did you ever complain about the $7.25 to any owner or manager?" A. "No." Q. "Did you feel that that was the correct amount of minimum wage or tip minimum wage that you should get?" A. "I never thought –" — *Martinenko Dep., Dkt. 119-11, p. 39.*

This confirms that she never raised the issue with anyone in authority, nor did she believe, at the time, that a violation was occurring. Plaintiff did not even raise the issue among colleagues until a single question posed nine months before filing the lawsuit: Q. "Did you ever speak to any other employee about getting paid $7.25 per hour?" A. "I didn't. At the time, I didn't.".... A. "I had a conversation about not getting paid overtime in 2021 with other coworkers… I just had a question, why were we not getting paid overtime. "It was probably May — May or maybe April. It was not really a conversation. I just asked the question." — *Id. at 39–41.*

Moreover, as a lead server with managerial login credentials and payroll access to write employees pay checks and distribute pay stubs to them where clearly show the employees work hours, "she had both the knowledge and opportunity to identify and report any alleged violations. The claim that Defendants acted "willfully, regularly, and repeatedly" collapses under the undisputed record. Willfulness requires proof that an employer either knew of a violation or acted in reckless disregard of the law. Yet here, there is **no evidence** that Defendant Volper—or any member of management—was ever informed of overtime concerns. Moreover, Time records confirm that from April 2021 until her termination on December 28, 2021, overtime occurred a few times—yet she still failed to raise any issue with Defendants. "If the defendant knew about her overtime wage concern he would definitely fix that immediately and compensate any overtime she had in the past." This silence, despite direct access to payroll, is legally fatal. "Willfulness cannot be presumed and must be supported by actual facts showing intentional misconduct." — Zinman v. Prudential Ins. Co. of Am., 199 F.R.D. 244, 250 (E.D. Pa. 2001). Where an employee had control, knowledge, and opportunity to challenge payroll—and failed to act—courts reject claims of willful violation. The inclusion of this claim in the Complaint was not only unsupported; it was knowingly misleading.

Moreover, Martinenko admitted that her lawsuit was not about wage violations at all but about her termination. When asked what prompted her to sue, she testified: "I wasn't planning on suing anybody." (Dkt. 119-11, p. 25). She explained further: "Because it was very unfair how I got fired." (id.). When pressed if "it's about the firing," she agreed: "It's about the firing, about me not getting paid, whatever the labor law is about." (id.). This testimony proves that her willfulness allegations were not rooted in actual wage violations but in personal dissatisfaction

with her termination, making her unfit to serve as a class representative under Rule 23(a)(3) and (a)(4).

The Complaint's repeated references to "willful, regular, repeated" violations were knowingly false. Plaintiffs controlled payroll themselves, and now have been shown to have misrepresented the existence of wage notices. Their claims of systematic willfulness collapse under the record. Because willfulness and systematic policy were misrepresented, class certification, summary judgment, and attorneys' fees orders were based on fraud and must be vacated under Rule 60(b)(2), (3), (6), and 60(d)(3).

**The Court Was Misled into Granting Certification**

Conditional certification was granted on April 26, 2022 (Dkt. 30), pursuant to the "modest factual showing" standard articulated in *Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010). At that stage, the Court appropriately relied on the factual assertions presented in the Complaint (Dkt. 1), as well as sworn declarations submitted by Plaintiff Nino Martinenko (Dkt. 22) and her attorney Denise A. Schulman (Dkt. 29). Martinenko falsely swore: "I frequently worked more than 40 hours per week at 212 Steakhouse." — (Dkt. 22, ¶3). This statement was proven to be false and misleading under the clearly addressed evidence in this document above.

Attorney Denise A. Schulman, under penalty of perjury, declared: "I am familiar with the facts and circumstances set forth herein."—Dkts. 21 & 29 ¶1. Schulman's failure to verify the factual basis of her declaration violates Rule 11(b), which requires attorneys to certify that "the factual contentions have evidentiary support." By submitting Dkt. 29 under penalty of perjury without independent verification, and by asserting she was "familiar with the facts" when those facts have been proven materially false, Schulman misled the Court and violated her ethical

11

obligations under Federal Rule of Civil Procedure 11(b)(3) and Rules 3.3(a)(1), 4.1, 5.1, and 8.4(c)–(d) of the New York Rules of Professional Conduct.

Subsequent discovery, however, has produced newly obtained evidence that directly contradicts the representations on which certification was based. Specifically, Plaintiff Martinenko testified under oath that *she did not read the Complaint before it was filed. (Dkt. 119-11, p. 29).* This admission confirms that the Complaint's factual allegations were not verified by the named Plaintiff—constituting a violation of Rule 11(b) and establishing a critical deficiency in the evidentiary foundation relied upon at the certification stage.

See *Adam v. Bloomberg*, where conditional certification was denied due to conclusory and unsupported assertions. There, the Court emphasized: "Certification is not automatic and must be supported by evidence… The modest factual showing cannot be satisfied by unsupported assertions." — *Adam v. Bloomberg*, at 6 (citing *Myers*, 624 F.3d at 555). In Jin v. Shanghai Original, Inc., No. 16-cv-5633, 2020 WL 4783399 (E.D.N.Y. Aug. 17, 2020), certification was vacated where plaintiffs submitted affidavits that were later contradicted by depositions and payroll data.

While the Court correctly applied Myers, it was deprived of truthful, accurate facts upon which to assess the modest factual showing. It is not the Court's conduct that must be corrected—it is the misleading and unethical submissions of Plaintiff and her counsel. The Court's reliance on these statements was explicitly acknowledged in Dkt. 30: "The following facts are drawn from Plaintiff's complaint, Dkt. No. 1 ('Compl.'), are assumed to be true for purposes of this motion." — (Dkt. 30, p. 1). But the Complaint, Dkt. 1, and the Declaration, Dkt. 22, were both false in substance, unsupported by payroll, time records, damages summary and contradicted by

Plaintiff's own later sworn testimony. The Court assumed Dkt. 1 to be true solely for purposes of conditional certification, but that foundation is now discredited.

Under Judge Memorandum and Order Dkt. 30, p. 2, the Judge Liman considered these statements to certify FLSA. "Plaintiff alleges that she regularly worked more than forty hours per week", id. 23, and that, during each week she was employed there, she regularly worked five dinner shifts, lasting at least eight hours each (from 4:00 p.m. until closing time, which was normally after 12:00 a.m.), and two to three lunch shifts, lasting at least four hours each (from 11:00 a.m. until at least 3:00 p.m.), id. 24."

### iv. Declarations Sworn Without Verification

In her December 9, 2022 Rule 23 declaration, Plaintiff Martinenko swore: "I am the Named Plaintiff in this action. I am familiar with the facts and circumstances set forth herein" (Dkt. 73 ¶1), and "I am familiar with the payroll practices at 212 Steakhouse as well as the claims in this lawsuit" (id, ¶15).

Both statements were false and made without personal knowledge. Martinenko admitted in deposition that she read the Complaint only once, nearly a year after it was filed — Dkt. 119-11, p. 29. She could not define "spread-of-hours" (id., p. 69), a central claim in the case, and gave vague, minimal answers about her preparation ("We met a couple of times in general" — id., p. 7). She further admitted she did not know whether other employees engaged in the alleged practices ("I don't know. I didn't look at what they were doing" — id., p. 88).

These admissions show she had no substantive familiarity with the claims she made under complaint, no knowledge of other class members' circumstances. Her declarations violated Rule 11(b)(3), which requires that factual contentions have evidentiary support. Martinenko's

declaration was an attorney-drafted document signed by a figurehead plaintiff who lacked personal knowledge of her own claims—rendering her per se inadequate under Rule 23(a)(4) and stripping her of typicality under Rule 23(a)(3).

As the Second Circuit reaffirmed in Cheng v. HSBC Bank USA, subjective misconceptions do not excuse a representative's obligations to act—but fraud cannot be ignored. 2024 WL 4835268, at *2 (2d Cir. Nov. 20, 2024). Courts decertify when the representative is uninformed: "A class representative cannot rely entirely on counsel to direct the lawsuit and remain ignorant of the facts" — Byrnes v. IDS Realty Trust, 70 F.R.D. 608, 615 (N.D. Ill. 1976).

On the same day, Opt-In Plaintiff Dagmara Huk submitted a declaration stating: "I joined this action as an Opt-In Plaintiff. I am familiar with the facts and circumstances set forth herein." — Dkt. 74 ¶1. This boilerplate claim had no factual basis. Huk demonstrated no understanding of the claims, procedural posture, or evidence. Her participation was entirely scripted by counsel.

After filing her short declaration, Huk did not participate in discovery, filed no supplemental declarations, contributed nothing to summary judgment briefing, did not oppose the motion to decertify, did not review or object when her declaration was reused without amendment.

Plaintiffs' counsel recycled her year-old declaration—without re-verification—twice: in support of summary judgment (Nov. 16, 2023, Dkt. 115-10) and in opposition to decertification (Dec. 21, 2023, Dkt. 123). Huk never confirmed she had reviewed the current record, understood pending motions, or reaffirmed her statements. This violates Fed. R. Civ. P. 56(c)(4), which requires that declarations be based on personal knowledge and contain admissible facts. Whether Huk was unaware of the re-use—proving disengagement—or knowingly allowed it without correction—proving complicity—either outcome renders her inadequate under Rule 23(a)(4).

Courts reject class representatives who are uninformed, inactive, or controlled entirely by counsel. Huk's role was that of a passive figurehead designed to create the appearance of broader representation. Neither she nor Martinenko possessed the knowledge, credibility, or independence required to "fairly and adequately protect the interests of the class" under Rule 23(a)(4). Both must be disqualified, and certification vacated.

**a. False Statements About Front of House Class List Defeat Rule 23(a)(3) Typicality and Rule 23(a)(4) Adequacy**

Plaintiff Martinenko submitted at least two sworn declarations (Dkts. 64, 73) falsely claiming that certain coworkers were missing from Defendants' list of front of house employees—despite having personally reviewed the list and attaching it as an exhibit.

In her December 9, 2022 declaration, she stated: "I have reviewed the list of front of house employees that is attached as Exhibit 2 to the December 8, 2022 declaration of Michael DiGiulio" (Dkt. 73 ¶10), and claimed that servers "Mariken, Alina, Kelsey Foley, and Stefana," bussers "Tristan Collazo and Luis Quizphi," runners "Noel and Miguel," and bartenders "Cinzia Bonfirraro, Nadia, and Danny" were not on the list (Dkt. 73 ¶11). She made nearly identical assertions in an earlier declaration (Dkt. 64 ¶21).

These statements were knowingly false. The cited list (Dkt. 72-2, Ex. 19) clearly includes multiple individuals she claimed were missing—such as Merikan Ten and Nadia Paputnikova—individuals she worked with for extended periods, as confirmed by time records. If she had reviewed the list as claimed, she could not have truthfully made these assertions. It demonstrates she signed blindly to the attorney made statements without reviewing.

This conduct violates the Fed. R. Civ. P. 11(b)(3), which requires that factual assertions "have evidentiary support" after reasonable investigation. By submitting repeated, demonstrably false statements about the class list, Martinenko showed a lack of diligence, candor, and care—qualities essential for both typicality and adequacy.

Federal courts have consistently held that credibility problems and false statements disqualify a proposed representative. *Fitzgerald v. Field*, 1999 WL 1021568, at *4 (S.D.N.Y. Nov. 9, 1999) ("A proposed class representative who is dishonest or demonstrates a lack of credibility cannot adequately protect the interests of the class."). Here, the false list statements also undermine typicality, as they misrepresented her similarity to other class members and the scope of the alleged wage violations. Accordingly, these credibility defects independently require decertification under Rule 23(a)(3) and (a)(4).

### b. Martinenko's Repeated Misstatement of Employment Dates Proves She Signed Declarations Without Reviewing the Facts

Plaintiff Martinenko repeatedly misstated her employment dates under penalty of perjury in sworn declarations supporting Rule 23 certification. In her December 9, 2022 declaration, she claimed: "I worked at 212 Steakhouse as a server from 2016 through 2018, and then again from early 2021 through December 2021" (Dkt. 73 ¶3, ¶7, ¶14).

Just eleven days later, in her December 20, 2022 deposition, she admitted she began employment at 212 steakhouse in "the end of June or beginning of July of 2015" — Dkt. 119-11, p. 14. Despite knowing the correct start date, Martinenko reaffirmed the false "2016–2018" range twice more: November 16, 2023 (Dkt. 117 ¶3) in support of summary judgment. December 21, 2023 (Dkt. 122 ¶3–4) in opposition to decertification. This was not an isolated oversight. It

demonstrates a clear pattern of signing declarations without factual review, because it would have been obvious to anyone reading the statement that the dates were wrong. The ease of spotting this error underscores that no meaningful review occurred before signing. This is entirely consistent with her deposition admission that she *never read the Complaint before it was filed* (Dkt. 119-11, p. 29). Such conduct violates Fed. R. Civ. P. 11(b)(3), which requires factual contentions to have evidentiary support, and demonstrates a "blind signature" approach incompatible with the duties of a class representative.

Neither Martinenko nor Huk possessed the knowledge, credibility, or independence required to fairly and adequately represent absent class members. Their declarations were drafted and recycled by counsel, signed without review, and riddled with falsehoods. Courts have consistently rejected representatives who are uninformed, inactive, or who misrepresent facts. Both Martinenko and Huk must therefore be disqualified, and certification vacated under Rule 23(a)(3) and (a)(4).

**Plaintiff Huk's False Testimony about work History**

Like Martinenko, opt-in Plaintiff Dagmara Huk is disqualified as a class representative. Huk gave materially false testimony about her work history: During her deposition when asked Q: After you left 212 Steakhouse, did you work part-time for them sometimes? She responded; A: If I left, why would I work for them? Q: I don't know.  A: Can you please rephrase the question? Q: Well, you just answered it. So the answer's no, I guess? A: I guess. — *Huk Dep., Dkt. 119-10, p. 28.*

This testimony is completely false and misleading. Payroll records confirm that Huk returned to work part-time after her initial resignation. In a message exchange attached as (Exhibit M) with

Defendant Volper dated December 21, 2021, Huk discussed her upcoming shifts and confirmed her continued employment. Pay records (Exhibit C - Huk Payslips) corroborate that she worked additional shifts in December 2021.

False testimony about employment dates and continued work directly undermines credibility and adequacy. Courts consistently disqualify class representatives whose sworn testimony is contradicted by business records. See *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 154 (S.D.N.Y. 2010) (credibility concerns and conflicts of interest defeat adequacy); *Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983).

## B. Disqualifying Conflicts of Interest

### i. PLAINTIFF MARTINENKO'S FALSE "NO CONFLICTS" DECLARATION AND COVID-19 MISCONDUCT RENDER HER INADEQUATE UNDER RULE 23(a)(4)

In her sworn declaration, Plaintiff Nino Martinenko stated: *"I do not have any conflicts of interest with any of the other employees who work or worked at 212 Steakhouse."* — Martinenko Decl., Dkt. 73 ¶18. Also she stated ""As a class representative, I am prepared to vigorously pursue the claims of my coworkers." — Dkt. 73 ¶17. These were knowingly false. The record—including her deposition, third-party affidavits, time logs, and business records—establishes she was in direct conflict with coworkers, engaged in serious workplace misconduct, and is disqualified under Rule 23(a)(4).

Martinenko's deposition admissions contradict her declaration: "When I learned I had COVID, I didn't go to the restaurant. Before I worked there, yes." — Martinenko Dep., Dkt. 112-4, p. 75.

Also she admitted transmission likely occurred among staff: "To my knowledge, it was a hostess girl and me." — Id., p. 85.

Time records (Dkt. 116-9) and Defendant's sworn testimony confirmed she worked while symptomatic and COVID-positive on December 15–17, 2021. On both December 16 and 17, Defendant Volper observed her symptoms and instructed her to get tested; she refused, insisting, *"I am 100% sure I don't have COVID."* This account is corroborated by the notarized affidavit of Dimitar Dimitrov (Aug. 5, 2023), who confirmed he witnessed Martinenko showing symptoms on both days, refusing testing, and working without a mask.

Her conduct caused multiple employees to fall ill and started showing symptoms. To protect staff and guests, Defendant voluntarily closed 212 Steakhouse over the Christmas holiday—including Christmas Eve and Day—causing losses exceeding $105,000 in sales and $27,000 in wages. Martinenko confirmed this closure: *"In December, closer to Christmas. I don't exactly remember the date."* — Dkt. 119-11, p. 74.

New York City Executive Order 225 (Aug. 16, 2021) required restaurants to ensure all employees were vaccinated. Defendant required all employees to be fully vaccinated pursuant to New York City Executive Order 225 (Aug. 16, 2021). Plaintiff Martinenko was specifically tasked with collecting and maintaining employee vaccination records. In person communication, Defendant asked her if all records were collected, she assured him that every card had been gathered and stored in the office.

Upon reviewing the records 8–9 months later, every card was present except hers. After becoming infected with COVID-19, Martinenko admitted in a phone call with Defendant that she herself was unvaccinated contradicting her earlier assurance and violating a binding state

mandate. This deception directly endangered coworkers and customers and destroyed trust among the very employees she claims to represent.

Despite later alleging retaliation, her testimony shows she was fired for cause due to COVID misconduct: Q: Do you have a good relationship with Nikolay? A: I did. Q: What happened? A: Just because I got sick, he was really mad at me, and then it went south. Q: When you say you got sick, what do you mean? A: I was infected with COVID. — Dkt. 119-11, p. 74. Martinenko endangered the very coworkers she seeks to represent. Her concealment of COVID infection and vaccination status directly harmed absent class members, invalidating her "no conflict" declaration..

Courts hold that credibility and honesty are essential for class representatives. *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 154 (S.D.N.Y. 2010) (representative inadequate where credibility and interests are adverse); *Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983) ("The honesty and integrity of a class representative are of paramount importance. Misrepresentations or concealments warrant denial of class certification.").

A representative who lied about vaccination, worked while COVID-positive, and caused classwide health and financial harm cannot satisfy Rule 23(a)(4). Martinenko's declaration was materially false, and her misconduct destroys adequacy and fairness. Moreover," the notion that Defendant Volper—who voluntarily shut down 212 Steakhouse during peak season to protect employees and the public from COVID-19 exposure—intentionally withheld a mere $2,600 in total alleged unpaid overtime across all class members is both implausible and unsupported by any logic and the record, it was not intentional at all."

**ii. Huk's Opposition to Tip-Sharing Policy Conflicts with Class Interests Destroy Rule 23(a)(4) Adequacy**

In her sworn declaration, Huk stated: *"I do not have any conflicts of interest with any of the other employees who work or worked at the Restaurant."* — Dkt. 74 ¶10. Also she stated *"As a class representative, I am prepared to vigorously pursue the claims of my coworkers."* — Dkt. 74 ¶9. These statements were materially false. Huk held a clear and disqualifying conflict of interest with fellow front-of-house employees due to her open opposition to the Restaurant's established tip-sharing policy—a policy that uniformly benefitted all servers, runners, and bartenders.

Huk admitted that 212 Steakhouse used a point-based formula for tip distribution: *"It was a points system. You want me to explain it to you?"* — Huk Dep., Dkt. 119-10, p. 25. Yet she repeatedly opposed the inclusion of bar staff. On September 26, 2021, she texted Defendant Volper: *"I do not agree for bar having 1%... it's just not fair... I don't understand why bar would get same money and not do fair amount of work... if that's how you want for things to be then I can't be a part of your team anymore."* — Ex. B. Time records confirm her last shift was September 24, 2021, after which she resigned over this disagreement.

Defendant Volper refused to alter the policy, explaining that the tip system had been in place since 2014, applied equally to servers, runners, and bartenders, and maintained fairness. Huk's position—seeking to retain 100% of her own tips while excluding coworkers—placed her in direct conflict with other class members who benefited from the uniform system.

Huk's hostility to a class-wide benefit, concealment of this conflict from the Court, and lack of alignment with absent members show she cannot *"fairly and adequately protect the interests of the class"* under Rule 23(a)(4). See In re IMAX Sec. Litig., 272 F.R.D. 138, 154 (S.D.N.Y. 2010)

(conflict of interest and credibility issues disqualify class representative). Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000) ("conflicts or antagonism between representative and class" preclude adequacy).

**C. Illegal Post-Termination Conduct and Fraudulent Misrepresentations Regarding System Access**

In addition to submitting false declarations and violating public health mandates, Plaintiff Nino Martinenko engaged in conduct that was both unlawful under New York criminal statutes and highly irregular in a wage-and-hour case. Internal audit logs (Dkts. 112-11, 112-12) show that between January 1 and January 8, 2022—after her employment ended on December 28, 2021—Martinenko logged into 212 Steakhouse's payroll and timekeeping system ("LAVU") six times using elevated "Level 3" administrative credentials. This access allowed her to alter, delete, and fabricate clock-in and clock-out data for all employees. Apart from Defendant Volper, no other employee or manager held Level 3 access. These logins were not accidental or residual; they were deliberate, repeated, and occurred in close temporal proximity to the filing of the lawsuit on January 20, 2022.

In her sworn declaration opposing decertification (Dkt. 122 ¶11), submitted on December 21, 2023, Martinenko stated: "I only accessed the time system twice, and both times for the purpose of checking this other employee's clock in and out time. I did not access the system to check my own clock in and out time. I never accessed this system after my employment with Defendants ended. I could only access the system from the office at 212 Steakhouse." — Dkt. 122, ¶11. Every element of this statement is false: Audit logs (Dkts. 112-11, 112-12) confirm not two, but six distinct logins between January 1 and January 8, 2022—after her employment with the defendant ended not during employment. The system was not only limited to access from the

office  at 212 Steakhouse but it was accessible remotely, a fact known to both Martinenko and Defendant Volper (see Exhibit F - System accessible outside the 212 steakhouse office).

Martinenko claimed that: "At Defendant Volper's direction, Defendants granted me access to their time keeping system in October 2021. He asked me to check the clock in and out times for a back of house employee who he suspected was not clocking out." Dkt. 122, p. 2 ¶10

However, on **November 16, 2023**, Plaintiffs' counsel **Denise A. Schulman** submitted a declaration stating: "From Group 2, the following time entries reflected overnight shifts of 16.25 or more hours and thus clearly indicated that the Class Members had forgotten to clock out. Accordingly, I omitted from the calculation the weeks encompassing these time entries." — Dkt. 116, ¶10.

Schulman was referencing exactly the entries Martinenko altered during her post-termination logins.

In her own declaration, Martinenko claimed that defendant asked me to check the clock in and out times for a back of house employee who he suspected was not clocking out she highlighted only a non-class "back-of-house" employee. That was false. But records (Dkt. 72-2, Ex. 19) confirm that the affected employees included: Juan Aguilar (server), Tristian Collazo (server), and Lytchez Lazarov (runner), all of whom were members of the certified Rule 23 class and whose time records formed the basis of the damages model in this case. By describing her access as limited to a single "back-of-house" employee in her declaration (Dkt. 122 ¶10), Martinenko deliberately mischaracterized the scope and impact of her post-termination logins. She attempted to mislead the Court by implying that her actions were narrow, harmless, and unrelated to class

members' wage claims—when in fact, she was tampering with the exact records at issue in this litigation.

This was not a semantic error or omission. It was a strategic deception—a false factual representation under oath, designed to: Minimize the seriousness of her unauthorized access, and Shield herself from disqualification as a class representative under Rule 23(a)(4). By misrepresenting the class status of the affected employees and downplaying her misconduct, Martinenko confused the Court and materially interfered with its ability to evaluate the integrity of the class structure, the reliability of the damages model, and her own adequacy to represent the class.

As a result of this unlawful conduct and false declarations, integrity of the time records has been irreparably compromised. The timekeeping records submitted in this case can no longer be treated as reliable or admissible evidence by the Court and Jury.  This was not incidental; it was repeated, administrative-level access to confidential records after termination—behavior that violates New York Penal Law § 156.05 (Unauthorized Use of a Computer) and, if records were modified which she could, § 156.20 (Computer Tampering in the Fourth Degree).

Courts in this Circuit have found disqualification appropriate for far less. For example, in *Zekic v. Reading Bakery Sys., Inc.*, No. 20-cv-1767, 2021 WL 2646794, at *3 (E.D. Pa. June 28, 2021), the court held that "[p]ost-termination conduct bearing on honesty and access to confidential business information may justify disqualification.

**D. Tax Fraud and Concealment of Income**

24

Depositions reveal that both class representatives, Nino Martinenko and Dagmara Huk, engaged in systematic concealment of cash tip income, made contradictory sworn statements, and violated federal tax law—facts that destroy typicality under Rule 23(a)(3) and adequacy under Rule 23(a)(4).

Martinenko testified she earned $900–$1,200/week in wages plus $150/week in unreported cash tips (Dkt. 119-11, pp. 38–42), yielding an hourly rate over $50—well above legal wage floors. She admitted she never reported tips to the IRS (Dkt. 119-11, p. 53) or to her employer (Dkt. 119-11, pp. 53–54). She further admitted to failing to pay taxes in multiple years (2015–2018, 2021). Her assumption that she earned only "$150/week" in tips during 2021 is demonstrably false. Even assuming only $150/week in cash tips—far below the real amount—Martinenko concealed at least $26,250 in taxable income over a 175-week period.

Yet elsewhere in her deposition, Huk reversed course, stating that her cash tips were supposedly reported: Q: But you reported that [cash tips], as you said, on top of that? A: Well, my accountant takes care of that. Q: Did he report it? A: Yes. I believe so. — *Dkt. 119-10, pp. 25–26.* These responses are both speculative and irreconcilable. Huk openly admitted that she "did not really keep track" of cash tips "I don't really keep track of my cash. Maybe 400." — *Dkt. 119-10, pp. 45–47.* — The $400/week in concealed tips totals **$18,400** over 46 weeks.

Both plaintiffs claimed different tip amounts despite operating under the same fixed point system. Discovery confirms that tip distributions were equal and based on a fixed point system: Dkt. 63-9 (p. 2): Equal $444.13 cash tip to Martinenko, Huk, Sasha, and Paco. Dkt. 63-9 (p. 4): Equal $287.12 cash tip distributed to same group. Dkt. 63-8 (pp. 4, 7, 9, 12): Identical cash tip allocations. Nino admitted about this point system in her deposition: "Cash tips would go, you

know, together on the table. And we would split it the same way, you know, with the points system." —- Martinenko Dep., Dkt. 119-11, p. 44. Even Huk admitted the tip system was point-based: "It was a points system. You want me to explain it to you?" — Huk Dep., Dkt. 119-10, p. 25.

The Court certified the class on the mistaken belief that Martinenko and Huk were adequate representatives. (Dkt. 87, p. 17.  In reality, they share a pattern of dishonesty, non-compliance with federal tax law, and deliberate misstatements. Their concealment and inconsistent testimony create unique defenses—including federal tax fraud—that are not applicable to the class as a whole, making their claims atypical. Their deliberate misstatements to the Court breach the fiduciary duty owed to absent class members, violating Rule 23(a)(4).

Courts have held that honesty and credibility are essential for class representatives. See *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) ("A plaintiff whose credibility is seriously called into question may not be an adequate class representative."); *Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983) (misrepresentation warrants denial of certification); *Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 160 (S.D.N.Y. 2010) (credibility is relevant to adequacy).

# A-III. Fraud and Misconduct by Class Counsel

Rule 23(g) requires that class counsel "fairly and adequately represent the interests of the class." The counsels of firm Joseph & Kirschenbaum LLP failed this duty. From filing an unverified Complaint, to submitting false sworn declarations, soliciting and re-contacting absent class members, recycling perjured affidavits, concealing conflicts, and committing fraud on the court by submitting a fraudulent fee petition, counsel's conduct corrupted the judicial process. These

acts constitute misconduct under Rule 60(b)(3), 60(b)(6), and fraud on the court under Rule 60(d)(3).

## A. Plaintiffs' Counsel Filed the Complaint (Dkt. 1) with False, Unverified Claims, Corrupting the Entire Proceeding

The fraud on the Court began at the outset, when Plaintiffs' counsel filed the Complaint (Dkt. 1) on January 20, 2022, without client verification or factual foundation. Plaintiff Nino Martinenko admitted she had not read the Complaint before filing—"I read it once, and it was probably a month ago" (Dkt. 119-11, p. 29)—confirming the allegations were unverified.

As detailed in Section II above, the pleading contained multiple material misrepresentations, including fabricated claims of centralized payroll control, uniform policies, widespread overtime violations, and willful wage underpayment. Each was directly contradicted by sworn testimony, time records, and audit data in the record.

Filing and litigating on the basis of this materially false Complaint violated Rule 11(b)(1) (improper purpose), Rule 11(b)(3) (no evidentiary support), Rule 60(b)(2) (new evidence disproving allegations), Rule 60(b)(3) (judgment obtained through misrepresentation), Rule 60(b)(6) (extraordinary fraud), and Rule 60(d)(3) (fraud on the court). It also breached NYRPC 3.3(a)(1), 4.1, 8.4(a), (c), (d). Under Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944), Kupferman v. Consol. Research & Mfg. Corp., 459 F.2d 1072 (2d Cir. 1972), and Chambers v. NASCO, Inc., 501 U.S. 32 (1991), this constitutes classic fraud on the court. The Complaint (Dkt. 1) was a fraudulent pleading that corrupted the proceedings from inception. It must be struck, and all orders and judgments flowing from it vacated.

## B. Knowingly Submitting False Declaration

**1. Plaintiffs' Counsel Denise Schulman and Michael DiGiulio – Submission of Knowingly False Declarations Constitutes Fraud on the Court**

Plaintiffs' counsel, Denise Schulman and Michael DiGiulio, submitted multiple sworn declarations in support of FLSA and Rule 23 class certification falsely attesting: *"I am familiar with the facts and circumstances set forth herein." — Schulman: Dkt. 21 ¶1; Dkt. 29 ¶1; DiGiulio: Dkt. 72 ¶1; Dkt. 121 ¶3.*

These statements were materially false and misleading and made for the purpose of persuading the Court to rely on counsel's assertions as if they were personally and professionally verified by officers of the court. However, Schulman and DiGiulio were not personally familiar with the facts they submitted. They lacked firsthand knowledge of the allegations, class composition, payroll practices, and wage records that they purported to verify. Worse still, they intentionally and knowingly misled the Court by submitting declarations that were later shown—through depositions, payroll data, and opt-out records—to contain numerous fabricated, unverified, or factually unsupported claims, while simultaneously concealing contradictory material evidence.

This conduct constitutes fraud on the court under Rule 60(d)(3) and violates: Fed. R. Civ. P. 11(b)(3) (lack of evidentiary support), NYRPC 3.3(a)(1) (false statements to tribunal), NYRPC 4.1 (false or misleading statements to others), NYRPC 8.4(c), (d) (dishonesty and conduct prejudicial to justice), and NYRPC 5.1 (failure to supervise).Courts have denied certification for similar misconduct. *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 72 (E.D.N.Y. 2012) (Rule 23(g) requires not just experience, but honest and accurate advocacy; failure to investigate or verify factual representations warrants denial).

**2. Intentionally Submitted Plaintiff Martinenko's Declaration**

During her April 4, 2022 Declaration Plaintiff stated: "I frequently worked more than 40 hours per week at 212 Steakhouse." (Dkt. 22, ¶3). But the truth is irrefutable — See Dkt. 116-9. Nonetheless, Plaintiffs' counsel submitted this claim to secure both conditional and Rule 23 certification, in violation of Rule 11(b)(3) and NYRPC 3.3(a)(1), which require factual verification before submission. It materially misled the Court and contributed to judgments that must now be vacated under Rules 60(b)(3) and 60(d)(3) for misrepresentation and fraud on the court.

In both her April 4, 2022 (Dkt. 22 ¶1) and December 9, 2022 (Dkt. 73 ¶1, ¶15) declarations, Martinenko swore under penalty of perjury that she was "familiar with the facts" and "payroll practices at 212 Steakhouse." These were deliberate falsehoods. In deposition, she admitted she had not read the Complaint before filing — Dkt. 119-11, p. 29. She also admitted she did not know what "spread-of-hours" meant (id., p. 69). This proves she lacked personal knowledge of her own claims, payroll systems, or the legal theories at issue.

Despite knowing she was uninformed, Plaintiffs' counsel—Denise Schulman and Michael DiGiulio—drafted and filed these declarations, affirmatively misrepresenting her familiarity to meet Rule 23(a)(3)–(4) typicality and adequacy requirements. This was a calculated fraud on the court in violation of Fed. R. Civ. P. 11(b)(3): Submitting factual contentions without evidentiary support; Fed. R. Civ. P. 23(a)(4): Misrepresenting the adequacy of the class representative; Fed. R. Civ. P. 60(b)(3) and 60(d)(3): Misrepresentation and fraud on the court; NYRPC Rule 3.3(a)(1): Making false statements to the tribunal; NYRPC Rule 4.1: False statements of fact to others; NYRPC Rule 8.4(a), (c), and (d): Knowingly assisting misconduct, engaging in fraud and deceit, and prejudicing the administration of justice.

As the Second Circuit held: *"If a class representative is not honest and candid, the adequacy requirement of Rule 23(a)(4) is not satisfied."* — Savino v. Computer Credit, Inc., 164 F.3d 81, 87 (2d Cir. 1998). Martinenko was not honest, not informed, and wholly inadequate. Worse, her counsel knew of these deficiencies and concealed them to obtain certification, corrupting the proceeding from inception.

### 3. Plaintiffs' Counsel Knowingly Submitted False Declaration Regarding the Class List

In sworn declarations submitted November 1, 2022 (Dkt. 64 ¶21) and December 9, 2022 (Dkt. 73 ¶11), Plaintiff Nino Martinenko—through counsel—falsely claimed that she review the front-of-house list and  employees *Meriken Tan* and *Nadia Paputnikava* were missing from the list. This was a material misrepresentation made with actual knowledge of its falsity. The truth is she never reviewed the list.

Both names appeared on the official 216(b) list generated from the restaurant's POS system and provided to Plaintiffs on May 5, 2022. Q: I am only asking about the list that we received May 5, 2022 which is called the 216B list. It is only the front-of-house employees from January 2019, so three years ago. Do you recall preparing that specific list? A: Yes. Q: How did you prepare it? A: I have to go to the POS system to generate that records. — *Volper Dep.*, Dkt. 119-12, p. 155. *(Whereupon, 216B list was marked as Defendant's Exhibit 19)*

It is further confirmed that the list was shown again during deposition: Q: "This is Exhibit 19. This is the list of front-of-house employees that your attorney provided the plaintiff. He gave this to us on May 5, 2022. Is this the list you were just discussing that you used the POS to determine?" *A: "Yes." (Dkt. 119-12, p. 156). Further,  it clearly showed they reviewed the list.* Q. This was given to us on May 5, 2022. You will see the first, I am

*going to go through and ask if these people are currently working at the restaurant? A.*

*Okay. (Dkt. 119-12, p. 156). Crucially, It is confirmed they go to the list, they review it and*

*during this review, Plaintiffs' counsel never objected or claimed that Nadia Paputnikava or*

*Meriken Tan were absent from the list. Still they submitted the wrong declarations*

*knowingly.*

Plaintiffs' counsel's knowledge is further proven by a June 1, 2023 email to the defence attorney

from attorney Denise Schulman acknowledging: "Based on the dates of employment from the

216(b) mailing list… g. Mariken Tan – 2016–2018." (Exhibit I). This confirms they knew Tan

was on the list from May 2022—yet knowingly submitted a declaration in November and

another in December falsely claiming the opposite.

By submitting two sworn declarations contradicting this known fact, counsel engaged in

deliberate misrepresentation and subornation of perjury to bolster Rule 23(a)(1) numerosity and

commonality. This conduct constitutes fraud on the court under Rule 60(d)(3) and violates Fed.

R. Civ. P. 11(b)(3): Submitting factual contentions with no evidentiary support; Fed. R. Civ. P.

23(a)(1): Ability to identify or locate members; Fed. R. Civ. P. 60(b)(3) and 60(d)(3): Judgment

obtained through fraud and deception; NYRPC Rule 3.3(a)(1): Knowingly making false

statements to the Court; NYRPC Rule 4.1: Making false statements of material fact to third

parties; NYRPC Rule 8.4(a), (c), (d): Assisting or engaging in fraud, dishonesty, and conduct

prejudicial to justice.

See: Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 245–46 (1944): "The system

of justice is corrupted when attorneys submit fabricated documents or knowingly false

statements to influence judicial action;  Averbach v. Rival Mfg. Co., 879 F.2d 1196 (3d Cir.

1989): Fraud on the court exists where counsel "actively attempts to deceive the court through false declarations or by failing to disclose material evidence."

**4. Plaintiffs' Counsel Knowingly Submitted a False Declaration Regarding Unauthorized System Access**

In her December 21, 2023 declaration opposing decertification, Plaintiff Martinenko denied any access to the timekeeping system after December 28, 2021 and claimed she only accessed it twice in October 2021 for a back-of-house employee (Dkt. 122 ¶¶10–11). These assertions are conclusively disproven by internal audit logs showing six post-termination logins between January 1–8, 2022 using her *Level 3* administrative credentials (Dkts. 112-11, 112-12).

Documentary evidence that she edited records for front-of-house employees (Dkt. 72-2, Ex. 19), contrary to her sworn claim that the access was for a back-of-house employee. Yet Plaintiff never disclosed that she edited those entries—nor that they involved front-of-house class members, who are the part of this lawsuit. The names involved in the records she viewed and edited—Juan Aguilar, Tristian Collazo, and Lytchez Lazarov—were all front-of-house employees, NOT the back of house. (Dkt. 72-2, Exhibit 19). Plaintiffs' counsel had actual knowledge of these contradictions, as Denise Schulman's own November 16, 2023 declaration (Dkt. 116 ¶10) referenced the very time edits made by Martinenko, yet no disclosure was made to the Court.

Proof that access was possible from any location, not only from the restaurant (Exhibit E). This conduct meets the elements of fraud on the court under Fed. R. Civ. P. 60(d)(3) and constitutes: Rule 60(b)(3) – Judgment obtained through misrepresentation and misconduct. Rule 11(b)(3) – Submitting factual contentions without evidentiary support. NYRPC 3.3(a)(1) –  Knowingly

making false statements to the tribunal. NYRPC 4.1 – False statements of material fact to others. NYRPC 8.4(a), (c), (d) – Assisting fraud, engaging in deceit, and prejudicing justice.

Federal precedent mandates vacatur where knowingly false declarations corrupt the proceedings: Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 245–46 (1944) – "A deliberately planned and carefully executed scheme to defraud… the judicial process." Kupferman v. Consol. Research & Mfg. Corp., 459 F.2d 1072, 1078 (2d Cir. 1972) – Attorney's knowledge of falsity constitutes fraud on the court.

### 5. Plaintiffs' Counsel Knowingly Reused Dagmara Huk's False Declaration in Support of Summary Judgment and to Oppose Decertification

After securing Rule 23 certification based in part on materially false affidavits, Plaintiffs' counsel—Denise Schulman, Michael DiGiulio, and Joseph & Kirschenbaum LLP—deliberately recycled a defective declaration from Dagmara Huk (Dkt. 74, dated December 2022) at two critical litigation stages:

1. To support their motion for summary judgment (Dkt. 115-10, filed Nov. 16, 2023);
2. To oppose Defendants' motion to decertify the Rule 23 class (Dkt. 123, filed Dec. 21, 2023).

In both filings, Plaintiffs attached **the same declaration verbatim**—without any update, reaffirmation, correction, or disclosure that the declaration had been discredited. No new declaration was submitted. No class member swore to the facts alleged in the Rule 56.1 statement. Despite asserting that the "material facts" were undisputed across the entire Rule 23 class, Plaintiffs' summary judgment submission relied **exclusively** on a single declaration from a

witness who: Had been found to lack standing under NYLL § 195. Expressed open conflict with class members over tip-sharing; And never submitted an updated or verified declaration after her deposition.

This omission is significant. In moving for summary judgment on behalf of a class, Plaintiffs were required to submit competent Rule 56(c)(4) evidence—namely "an affidavit or declaration made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."

No such declarations were submitted by Plaintiff Martinenko or any other class member. Huk's 2022 declaration was the only class-member declaration attached to the motion. And it was defective on its face.

By the time of these filings, intervening discovery had already discredited Huk's credibility, adequacy, and legal standing. In his August 13, 2024 Report and Recommendation, Magistrate Judge Lehrburger explicitly found that: "Plaintiffs do not identify any record evidence that Huk incurred a concrete informational harm… Huk's NYLL § 195 claims should be dismissed for lack of standing." — Dkt. 132, at pp. 66–67.

Despite this finding, Plaintiffs' counsel did not withdraw or replace Huk's declaration. They also did not obtain or submit a new declaration from Huk or anyone else. They knowingly reused an affidavit that was (a) 12 months outdated, (b) undermined by sworn deposition testimony, (c) contradicted by payroll records, and (d) legally insufficient under Rule 56 and Article III standing doctrine.

34

This conduct materially misled the Court and resulted in final judgment on classwide issues without any admissible, verified testimony from members of the class. It is precisely the kind of conduct that warrants vacatur under Rule 60.

This misconduct violates: Fed. R. Civ. P. 56(c)(4) – Requiring personal knowledge and admissible evidence in support of summary judgment; Fed. R. Civ. P. 60(b)(3) – Judgment obtained through misrepresentation or misconduct; Fed. R. Civ. P. 60(d)(3) – Fraud on the court by officers of the court; Rule 11(b)(3) – Submitting factual contentions without evidentiary support; NYRPC Rule 3.3(a)(1) – Knowingly making false statements to the tribunal; NYRPC Rule 4.1 – Knowingly making false statements of material fact to others; NYRPC Rule 8.4(a), (c), (d) – Assisting fraud, engaging in deceit, and prejudicing the administration of justice.

Federal courts have condemned similar tactics. In Tracy v. NVR, Inc., 2009 WL 3153150, at *3 (W.D.N.Y. Sept. 30, 2009), the court rejected a class certification declaration reused at summary judgment because it lacked personal knowledge and failed to account for post-certification developments. Summary judgment cannot rest on recycled, conclusory affidavits that do not reflect the record, deposition testimony, or credibility issues that arose in discovery.

Here, Plaintiffs not only relied on a declaration already found legally and factually defective—they also failed to produce *any other* declarations to support their sweeping factual assertions on behalf of absent class members. That is fatal under Rule 56 and Rule 23.

Accordingly, the summary judgment order must be vacated under Rule 60(b)(3) and Rule 60(d)(3), as it was obtained by knowingly misleading the Court and relying on a procedurally and factually invalid submission.

**D. Plaintiffs' Counsel's Improper Solicitation in Violation of Court Order and NYRPC**

Deposition testimony confirms Plaintiffs' counsel engaged in unauthorized solicitation of class members. During Dagmara Huk's December 20, 2022 deposition: Q: "How did you find out about this lawsuit, Craigslist?" A: "No. I don't think it was on Craigslist." Q: "How did you find out?" A: "Through my lawyer." Q: "Through your lawyer?" A: "Yes. I got contacted by my lawyer." Q: "Your lawyer contacted you about the lawsuit?" A: (No verbal response.) Q: And what did your lawyer say? MR. DiGiULIO: Objection. Don't answer that.  Q. Okay. That's interesting. — *Dagmara Huk Dep., Dkt. 119-10, p. 21*

When asked whether her lawyer had contacted her, Huk gave no verbal response, and Plaintiffs' counsel immediately instructed her not to answer. This is a violation of Fed. R. Civ. P. 30(c)(2) to hide the unauthorized contact. This obstruction confirms the improper solicitation and underscores the effort to conceal it.

On April 3, 2023, Defendant submitted a pre-motion letter seeking disqualification and sanctions, citing the very deposition excerpt above: *"Plaintiffs' counsel has actively engaged in unethical conduct and violated numerous ethical rules prohibiting unethical communications, advertising, and solicitation."* — Dkt. 84, p. 1

Despite clear deposition testimony and direct questioning by Defendant's counsel, Denise Schulman falsely stated in opposing Defendants' request for a pre-motion conference on the same day by saying: "Defendants' anticipated motion is entirely frivolous, as Plaintiffs' counsel have not engaged in any improper communications, advertising, or solicitation." — *Dkt. 85, p. 1.* *"Ms. Huk testified that she learned about this lawsuit by being contacted by counsel. She did not testify that counsel called her (Ex. 1 at 13.)"* — *Dkt. 85, p. 2. These are knowingly false and*

*materially misleading representations. Plaintiff counsel further misled the court by saying: Defendants' counsel did not ask her the method by which she was contacted. Dkt. 85, p. 2.*

The transcript makes clear that defendant counsel clearly asked under deposition and Huk stated she "got contacted by [her] lawyer", and DiGiULIO blocked further testimony as to how.  Q: And what did your lawyer say?  MR. DiGiULIO: Objection. Don't answer that. Q. Okay. That's interesting. — Dagmara Huk Dep., Dkt. 119-10, p. 21. Schulman continue misleading the court by saying: "In reality, counsel "contacted" Ms. Huk in the same way that it "contacted" all potential opt-in plaintiffs: by disseminating the Court-approved notice via mail and text message." Dkt. 85, p. 2

This statement is knowingly false and materially misleading, for several reasons: Schulman's statement proves awareness of the Court's Order under the April 26, 2022 conditional certification order (Dkt. 30, p. 13), which strictly authorized notice *only* "by first-class mail, email, and text message." Dagmara Huk also never testified that she was contacted via mail, email, or text message. To the contrary, Huk confirmed under oath: *"I got contacted by my lawyer." — Huk Dep., Dkt. 119-10, p. 21*

Denise Schulman repeated this misrepresentation blatantly denied making the call—under penalty of perjury —at an April 4, 2023 hearing: "As for the opt-in plaintiff, Dagmara Huk, I never called her." — *Dkt. 94, p. 5, ll. 16–17.* These statements were materially false and knowingly contradicted by attorneys billing records, *Plaintiffs' sealed billing records later submitted in support of their attorneys' fees request (Dkt. 152-1) completely contradict Schulman's denials.*

**37**

*On May 10, 2022, Schulman recorded: "Call with potential opt-in (Dagmara)" – 0.1 hrs — Dkt. 152-1, p. 3.* This call occurred 14 days after the Court's conditional certification order (Dkt. 30), which explicitly limited notice to: First-class mail; Email; Text message. *Attorney-initiated phone calls were not authorized. Furthermore,* The billing records submitted by Plaintiffs' counsel (Dkt. 152-1) reveal a pattern of direct attorney-initiated contact with individuals who never officially joined the lawsuit and were never authorized by the Court to be contacted outside of approved notice protocols: May 10, 2022 – "Call with potential opt-in Dagmara and Damon. (Dkt. 152-1, p.3). Call with Dimitry Zarobin (Dkt. 152, p.15).

Furthermore, Plaintiffs' billing records show that on **March 14, 2024**, attorney Schulman recorded a return call: *"Call with Vivian Peng"* (Dkt. 152-1 at 23). Counsel had an obligation of fairness and candor to disclose both the fact of the call and its outcome. Even if Peng's initial inquiry was voluntary, Plaintiffs' counsel's duty did not end with returning the call. Once they learned that Peng was **not interested in opting in**, they were required to update the record.

The issue is not that the call occurred; it is that counsel remained silent about its outcome. Under **NYRPC 3.3(a)(1)** (candor to the tribunal), **Rule 26(e)** (duty to supplement discovery), and **Rule 23(g)** (fiduciary duty to the class and the Court), Plaintiffs' counsel were obligated to correct the record once they knew Peng would not participate. Their silence concealed class attrition, misled the Court about class size, and tainted both certification and fee proceedings.

In fact, Nadia Paputnikava signed a sworn declaration (Exhibit K) confirming that she contacted Plaintiffs' counsel, was informed about the lawsuit, and she declined to participate. None of these individuals—Damon, Zarobin, Peng, or Paputnikava—submitted opt-in forms ever to join the lawsuit. But still Damon, Zarobin, Peng were included in the judgement. (See Dkt. 154, p. 3).

38

Yet Plaintiffs' counsel engaged them through unauthorized channels, in direct defiance of the Court's protocol (Dkt. 30) and violated Rule 23(d): If counsel makes unauthorized contact, they must either: Disclose it to the Court, or Risk sanctions for violating the notice protocol.

As officers of the Court, Plaintiffs' counsel had a heightened and nondelegable duty to disclose material facts regarding class composition, notice compliance, and the voluntary participation of individuals in this litigation under Rule 23(g), Rule 23(g) – requiring class counsel to act fairly, honestly, and with loyalty to the Court and the class; and the New York Rules of Professional Conduct, including Rule 3.3(a)(1) (mandating candor to the tribunal and forbidding false or misleading factual assertions) and Rule 4.1 (requiring truthfulness in statements to others, including opposing counsel and parties), NYRPC 8.4(a), (c), and (d) – prohibiting dishonest conduct and actions prejudicial to the administration of justice which mandate full disclosure of material facts and prohibit misleading omissions.

These actions violated Rule 23(c)(2)(B) – Failure to follow Court-approved notice procedure. Rule 23(d) – Failure to disclose unauthorized contact. Rule 60(b)(3) & 60(d)(3) – Misrepresentation and fraud on the court. Rule 11(b)(3) – Factual contentions without evidentiary support. NYRPC 3.3(a)(1), 4.1, 7.3(a), 8.4(a), (c), (d) – False statements, improper solicitation, and conduct prejudicial to justice.

Case law confirms vacatur is warranted where false affidavits conceal critical communications (Cruz v. Law Office of James J. Gross, 2023 WL 3992384; Stalevski v. United States, 2021 WL 2809104) and where counsel knowingly permits false or deceptive conduct (Kupferman, 459 F.2d at 1078).

**E. Counsel Improperly Re Solicited Previously Opt Out Class Members From the Lawsuit**

On August 25, 2023, Plaintiffs' counsel Denise Schulman accused Defendants—without evidentiary support—of coercing opt-outs, asserting that "every class member who is a current employee… opted out" and suggesting this was due to "improper influence" (Dkt. 100, p. 2). By doubling down and affirmatively stating their involvement in Dkt. 120, Plaintiffs' counsel claim in opposition to decertification:*"Three of the four former employees who opted out previously provided affidavits in support of Defendants' motion to sanction Plaintiff's counsel, indicating that Defendants are in current contact with them. See Dkt. Nos. 84-2; 112-2." — Dkt. 120, p. 10*

These statements were knowingly false. Plaintiffs' counsel had received at least nine notarized opt-out affidavits from front-of-house employees explicitly stating: "I would not like to take part in this lawsuit" (e.g., Dkt. 84-2 ¶¶ 9–10). At the April 4, 2023 hearing, Schulman admitted having seen these affidavits (Dkt. 94, p. 4). She raised no objection to their validity at that time. Nearly five months later, Plaintiffs' counsel reversed course—implying opt-outs were invalid or coerced—without presenting a single supporting affidavit, declaration, or complaint from any opt-out.

In reality all opt-outs were voluntary, notarized, and explicitly rejected class participation (Dkts. 84-2, 100-1); Several former employees informed Defendant that they were contacted by Plaintiffs' counsel but chose not to join; Alexander "Sacha" submitted an affidavit (Exhibit J) confirming Defendant Volper played no role in opt-out decisions. All employees voluntarily opt out from the lawsuit without any pressure.

Furthermore, dispute the facts that none of the absent class members wanted to join this lawsuit. All individuals received two rounds of notice—once via FLSA-approved text and mail, and

again under Rule 23 by first-class mail. Few stay silent and few respond that they do not want to take part in this lawsuit. (Dkt. 84-2; Dkt. 100-1). Out of 44 class members only 1 Opt In joined the lawsuit by direct solicitation of a lawyer. (Dkt. 152-1, p. 3) whose claims were later dismissed for lack of standing; (Dkt. 141). Not a single employee ever filed a grievance or motion to rejoin or to withdraw their opt-out form; No record exists of any retaliation allegation from any class member.

Once individuals had opted out, Plaintiffs' counsel had no further jurisdiction or ethical right to contact them. Under Rule 23(d) and NYRPC 7.3(a)(1), Plaintiffs' counsel were barred from re-soliciting or contacting opt-outs unless explicitly authorized by the Court. This re-solicitation and misrepresentation directly influenced the outcome of class certification. In his August 13, 2024 Report and Recommendation, Magistrate Judge Lehrburger adopted the narrative that all opt-outs were potentially coerced: Despite this record, the R&R speculated that because every current employee opted out using similar forms and envelopes, "the possibility [exists] that Defendants improperly urged current employees to opt-out." Dkt. 132 at 23–24. The District Court adopted that reasoning, concluding: "That is sufficient to at least raise the specter of retaliation… merely another thumb on the scale in favor of certification." Dkt. 141 at 8.

The Court's conclusion that the opt-outs raised a "specter of retaliation" (Dkt. 141 at 8) was based entirely on speculation about formatting similarities in opt-out forms. This finding was unsupported by the record. Rule 23(c)(2)(B) guarantees absent class members the constitutional right to opt out, and formatting similarities cannot override sworn testimony.

Plaintiffs never submitted a single affidavit, declaration, or statement from any opt-out alleging retaliation or coercion. To the contrary, multiple notarized affidavits (Dkts. 84-2, 100-1)

confirmed that employees voluntarily withdrew from the case. The Court's reliance on conjecture about envelopes and identical wording ignored this sworn evidence, improperly discounted valid opt-outs, artificially inflated numerosity, and bolstered adequacy.

In reality, it was **class counsel who misled the Court** by advancing an unfounded coercion narrative in order to preserve certification despite overwhelming evidence that current employees did not want to participate. Counsel's misrepresentation, and the Court's adoption of it, stripped employees of their Rule 23(c)(2)(B) rights and allowed certification to stand on a tainted record.

Once employees opted out, Plaintiffs' counsel had no further right to contact them. Under Rule 23(d) and NYRPC 7.3(a)(1), re-solicitation of opt-outs was prohibited absent Court approval. Yet Plaintiffs' counsel engaged in such contact, misrepresented the record, and persuaded the Court to disregard valid opt-outs. This was a direct violation of Rule 23 and the ethical rules requiring candor and fairness. This conduct violated the Fed. R. Civ. P. 11(b)(3) – unsupported factual contentions. Fed. R. Civ. P. 23(d) – barred re-contact with opt-outs absent court approval. Fed. R. Civ. P. 60(b)(3), 60(d)(3) – fraud and misrepresentation affecting judgment. NYRPC 1.2, 3.3(a)(1), 4.1, 4.2, 7.3(a), 8.4(c), 8.4(d) – prohibiting false statements, unauthorized contact, and prejudicial conduct.

Courts have vacated judgments for such tactics. See Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 245–46 (1944) (scheme to defraud both the court and opposing party); Kupferman v. Consol. Research & Mfg. Corp., 459 F.2d 1072, 1078 (2d Cir. 1972) (attorney's knowledge of falsity constitutes fraud on the court); Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) (inherent power to sanction bad faith conduct).

**F. Plaintiffs' Counsel Improperly Obstructed Deposition Testimony to Conceal a Material Conflict of Interest of plaintiff**

During Plaintiff Nino Martinenko's December 20, 2022 deposition, Plaintiffs' counsel Michael DiGiulio (Joseph & Kirschenbaum LLP) improperly instructed her not to answer questions directly relevant to her adequacy under Rule 23(a)(4). These questions concerned COVID-19 misconduct, her termination for endangering coworkers, and conduct that inflicted economic harm on proposed class members. This was not a matter of privilege or protective order—it was a deliberate violation of Fed. R. Civ. P. 30(c)(2) to suppress disqualifying evidence.

Defense counsel sought testimony on whether Martinenko worked while symptomatic in December 2021 and later tested positive for COVID-19 (Dkt. 119-11, pp. 76–79); Misrepresented her vaccination status in violation of NYC Executive Order 225 and refused employer-mandated testing; Caused a full restaurant shutdown over the 2021 holiday season, resulting in over $105,000 in lost revenue and $27,000 in lost wages/tips to coworkers, harming the financial interests of other class members, including front-of-house servers who face financial injuries; She then blamed management for her termination and asserted wage claims against the same employer who attempted to protect her coworkers' health.

By improperly shielding Plaintiff from deposition questions on these critical topics, Plaintiffs' counsel prevented the development of a factual record on issues of adequacy, typicality, and Rule 23 conflicts. This directly tainted the subsequent Rule 23 certification order (Dkt. 132) and summary judgment rulings.

The certification order was issued under the false premise—promoted by Plaintiffs' counsel—that Plaintiff Martinenko had "no conflicts" and could fairly represent all class

members. In fact, she: Physically endangered other class members; Caused financial loss to those same individuals; Filed a lawsuit seeking to profit from that situation; And was shielded from accountability by her attorneys through deposition obstruction. It is a structural and ethical conflict that should have barred her from serving as class representative. "Where a proposed class representative's credibility is questionable and her interests are adverse to the class, courts will find that she cannot adequately represent the class." — *In re IMAX Sec. Litig., 272 F.R.D. 138, 154 (S.D.N.Y. 2010).*

### G. Billing Fraud and Misconduct in Attorney Fee Petition

On January 10, 2025, Plaintiffs' counsel moved for attorneys' fees totaling $223,458.28 (Dkts. 152, 166). The petition contained duplicative and excessive billing entries, charges for time spent on dismissed FLSA claims, and entries reflecting post-judgment coordination with defense counsel. Critically, Rule 23(h) notice of the fee petition was never provided to absent class members, depriving them of due process.

The billing records further revealed misconduct. Counsel claimed to have excluded time spent on dismissed FLSA claims, yet their petition billed for work on those very claims. They also billed for communications with employees who had opted out, in violation of Rule 23 protocols. Such fee petitions tainted by fraud and concealment must be vacated. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245–46 (1944) (judgment procured by counsel's fraud must be set aside).

### 1. Misrepresentation of Billing Exclusions Constitutes Fraud on The Court Under Rule 60(d)(3)

The Court's final judgment awarding $223,458.28 in attorneys' fees and costs (Dkt. 154) was procured through materially false statements by Plaintiffs' counsel. In a sworn declaration submitted with the fee application, attorney Michael DiGiulio represented:

"Plaintiffs' counsel exercised billing judgment to exclude over 50 hours of entries that were duplicative, vague, or otherwise excludable or solely related to Plaintiffs' and the Class's NYLL § 195 claims." — *DiGiulio Decl., Dkt. 152 ¶19.* This statement was objectively false, and no record exists to substantiate it. Plaintiffs submitted only a single billing file (Dkt. 152-1), containing no redactions, no comparison list, no metadata, and no indication of any excluded time. Despite claiming to have removed over 50 hours related to voluntarily dismissed claims, Plaintiffs did not submit any documentation to support that assertion — nor have they since.

Defendants conducted a full forensic review of the billing records (Dkt. 152-1) and identified at least 23 billing entries totaling around $5,720.00 that were entirely devoted to NYLL § 195 dismissal-related tasks.

Improper Billing Entries Related to NYLL § 195 Claims

1. **10/01/2024 – Denise Schulman – 1.3 hrs – $500/hr – $650.00**

   *Draft letter to court re: dismissal of NYLL 195 claims*

2. **10/01/2024 – Denise Schulman – 0.3 hrs – $500/hr – $150.00**

   *Edit letter to court re: dismissal of NYLL 195 claims*

3. **10/01/2024 – Mike DiGiulio – 0.3 hrs – $350/hr – $105.00**

   *Call with partners re: stip letter, dismissal issues*

4. **10/08/2024 – Denise Schulman – 0.1 hrs – $500/hr – $50.00**

   *Email defense re: NYLL 195 claims*

5. **10/10/2024 – Denise Schulman – 0.8 hrs – $500/hr – $400.00**

   *Edit letter to court re: dismissing NYLL 195 claims*

6. **10/10/2024 – Denise Schulman – 0.1 hrs – $500/hr – $50.00**

   *Call with defense re: next steps for NYLL 195*

7. **10/10/2024 – Mike DiGiulio – 0.2 hrs – $350/hr – $70.00**

   *Edit letter to court re: dismissal 195*

8. **10/15/2024 – Denise Schulman – 0.2 hrs – $500/hr – $100.00**

   *Finalize/file letter to court re: dismissal of NYLL 195 claims*

9. **10/15/2024 – Denise Schulman – 0.4 hrs – $500/hr – $200.00**

   *Draft notice to class of dismissal of NYLL 195 claims*

10. **10/15/2024 – Denise Schulman – 0.4 hrs – $500/hr – $200.00**

    *Edit letter to court re: dismissing NYLL 195 claims*

11. **10/15/2024 – Mike DiGiulio – 0.1 hrs – $350/hr – $35.00**

    *Review notice of dismissal for class*

12. **10/16/2024 – Mike DiGiulio – 0.1 hrs – $350/hr – $35.00**

    *Review filing re: dismissal and notice to class*

13. **10/21/2024 – Denise Schulman – 0.1 hrs – $500/hr – $50.00**

    *Review defendants' letter to court*

14. **10/21/2024 – Mike DiGiulio – 0.2 hrs – $350/hr – $70.00**

    *Review letter response to dismissal letter*

15. **10/23/2024 – Denise Schulman – 0.5 hrs – $500/hr – $250.00**

   *Research letter to court re: NYLL 195 dismissal*

16. **10/23/2024 – Denise Schulman – 0.1 hrs – $500/hr – $50.00**

   *Discuss letter to court with Maimon*

17. **10/23/2024 – Denise Schulman – 0.9 hrs – $500/hr – $450.00**

   *Research/draft letter to court re: NYLL 195 dismissal*

18. **10/23/2024 – Mike DiGiulio – 0.2 hrs – $350/hr – $70.00**

   *Review reply letter re: dismissal*

19. **10/27/2024 – Denise Schulman – 0.2 hrs – $500/hr – $100.00**

   *Call with Maimon re: letter to court*

20. **10/27/2024 – Denise Schulman – 1.5 hrs – $500/hr – $750.00**

   *Research/draft letter to court re: NYLL 195 dismissal*

21. **10/28/2024 – Denise Schulman – 0.2 hrs – $500/hr – $100.00**

   *Finalize/file letter to court*

22. **10/28/2024 – Denise Schulman – 1.1 hrs – $500/hr – $550.00**

   *Edit letter to court re: NYLL 195 dismissal*

23. **10/28/2024 – Mike DiGiulio – 0.2 hrs – $350/hr – $70.00**

   *Review reply letter to dismissal request*

These entries occurred in October 2024, during the exact timeframe when Plaintiffs were seeking dismissal of the NYLL § 195 wage-notice and wage-statement claims for lack of Article III standing. See:

- *Plaintiffs' Motion to Dismiss NYLL § 195 Claims* – Dkt. 146, filed Oct. 16, 2024

- *Order Granting Dismissal Without Prejudice* – Dkt. 153, Nov. 13, 2024

Plaintiffs were not merely reducing the scope of claims — they were abandoning an entire statutory theory of liability for lack of jurisdiction. Nonetheless, they billed full partner and associate rates for work performed to execute that abandonment — then falsely certified those entries had been excluded.

These time entries included: Drafting and revising letters to the Court concerning dismissal of § 195 claims; Preparing notice to the class about the dismissal; Internal calls, meetings, and strategy discussions on dismissal logistics; Reviewing opposing counsel's responses regarding the dismissal. Each of these tasks was severable, non-recoverable, and arose after the claims had been formally withdrawn.

Nonetheless, the Court accepted DiGiulio's claim and awarded full fees:"Class Counsel represents that they removed more than fifty hours of entries that related solely to Plaintiffs' and the Class's NYLL Section 195 claims (which Plaintiffs voluntarily dismissed) or that were otherwise duplicative, vague or excludable." — *Fee Order, Dkt. 166 at 10.*

That finding was a key basis for the Court's conclusion that Class Counsel's time was reasonable, and that no reduction was necessary: "Class Counsel's rates and hours are reasonable and were reasonably expended."  — Dkt. 166 at 14

This fee award was incorporated into the final judgment:"ORDERED, ADJUDGED AND DECREED: That for the reasons stated... Plaintiffs are awarded $223,458.28 in attorneys' fees and costs." — *Final Judgment, Dkt. 154 at 2.*

See: Mink v. SEC, 2024 WL 1158656, at *6 (S.D.N.Y. Mar. 19, 2024)  "Failure to disclose material facts to the court in a sworn declaration supports relief under Rule 60(b)(3) and

60(d)(3)." Kupferman v. Consolidated Research & Mfg. Corp., 459 F.2d 1072, 1078 (2d Cir.

1972)  Fraud on the court includes "the failure to disclose facts… that would prevent judgment

from being corrupted by inaccuracies." Passlogix, Inc. v. 2FA Tech., LLC, 708 F. Supp. 2d 378,

405–06 (S.D.N.Y. 2010)  "A misrepresentation is material if the court relied on it in rendering

judgment." Creative Montessori Learning Ctrs. v. Ashford Gear LLC, 662 F.3d 913, 918 (7th Cir.

2011)  "Fee awards based on counsel's misrepresentations undermine the integrity of the class

mechanism."

## H. Counsel's Misconduct Tainted the Entire Proceeding

As set forth in the preceding sections, Plaintiffs' counsel engaged in misconduct at every stage of

this litigation: filing an unverified and false Complaint (Dkt.1), false and misleading statements

to mislead the court, submitting false and misleading declarations, improperly soliciting and

re-contacting class members, obstructing deposition testimony, and presenting a fee petition that

included work on dismissed claims and was approved without the Rule 23(h) notice required by

due process. These material facts mislead and influence the decisions and orders of three federal

court's judges.

These acts violated Rule 11(b), deprived absent class members of their rights under Rule 23(e)

and (h), and breached counsel's fiduciary duties under Rule 23(g). They also constitute ethical

violations under NYRPC Rules 3.3, 4.1, 5.1, and 8.4, and amount to fraud on the court under

Rule 60(d)(3).

Courts in this Circuit stress that class counsel must meet the highest standards of candor, because

their misconduct affects not only opposing parties but absent class members and the judicial

system itself. *See Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 605 (D.N.J. 2004) ("Fraud on the court… strikes at the very integrity of the judicial process.").

Because counsel's misconduct permeated class certification, summary judgment, and fees, the resulting orders are irreparably tainted. Relief is therefore required under Rule 60(b)(2), (3), and (6), and vacatur is independently warranted under Rule 60(d)(3).

# A-IV. Coordinated actions and collision between officers of the court to hide fraud on the court (Defense Counsel and plaintiff's counsel)

## A. Court Order to Address § 195 Claims

On **September 24, 2024**, the Court issued an Opinion and Order directing the parties to "meet and confer regarding next steps for addressing individualized injury with respect to the unnamed class member § 195 claims." (Dkt. 141, p. 27, point 8).

**This required:**

- Continued litigation of individualized damages/injury for certified § 195 claims;
- Compliance with **Rule 23(e)**, which mandates court approval and notice to class members before any dismissal, settlement, or compromise of certified class claims;
- Preservation of absent class members' statutory rights until adjudicated or lawfully resolved.

Within days, instead of preparing to litigate individualized § 195 claims as ordered, defense counsel Jonathan Greenbaum coordinated with Plaintiffs' counsel to negotiate dismissal.

## B. Improper Voluntary Dismissal of Certified § 195 Claims

On October 1, 2024, Plaintiffs filed a letter motion under Fed. R. Civ. P. 41(a)(2) and Fed. R. Civ. P. 23(e) seeking to dismiss the certified § 195 claims "without prejudice." (Dkt. 145). Followed by Dkt. 149, p.1, "The Court may dismiss the remaining NYLL § 195 claims without prejudice pursuant to either Rule 41(a)(2) or Rule 15"

This dismissal was improper as a matter of law and procedure:

1. **Rule 41(a)(2) does not allow piecemeal dismissal.** The rule permits dismissal of an **action**, not selected claims within it. See *Hester Indus., Inc. v. Tyson Foods, Inc.*, 160 F.3d 911, 916 (2d Cir. 1998) ("Rule 41(a) does not speak of dismissing one claim in a suit; it speaks of dismissing an action."); *Lowery v. AmGuard Ins. Co.*, 84 F.4th 1227, 1234 (11th Cir. 2023) (same).

2. **Rule 15 Cannot Be Used to Amend Away Certified Class Claims.** Plaintiffs alternatively suggested dismissal could be accomplished "pursuant to either Rule 41(a)(2) or Rule 15." (Dkt. 149, p. 1). That suggestion fails. Rule 15 governs amendment of pleadings, not the extinguishment of certified class rights. Once a claim has been certified, it belongs to the class as a whole, not merely the named Plaintiff. See *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) ("A class action is not an ordinary suit, but one in which the class acquires a legal status separate from that of the named parties."). Any amendment that would eliminate certified claims must comply with Rule 23(e)'s notice

and approval requirements. Plaintiffs could not use Rule 15 to amend away absent class members' statutory rights.

3. **Rule 23(e) governs dismissal of certified class claims.** Once claims are certified, they may be dismissed or compromised only with **court approval** and **notice to all class members**. Fed. R. Civ. P. 23(e)(1). Here, no notice was provided before the certified § 195 rights of absent class members were extinguished.

4. **The Court's directive (Dkt. 141) was ignored.** Instead of litigating individualized injury as ordered, counsel colluded to remove the issue from judicial consideration altogether.

5. **The dismissal served only to protect attorneys' fees.** Plaintiffs' billing records confirm that on **Sept. 27 and Sept. 30, 2024**, counsel billed for "Call with defense re: next steps," "Email defense re: next steps," and "Discussion w team re: settlement." (Dkt. 152-1, pp. 24–25). Around the same time, Greenbaum himself remarked that "if Plaintiffs' counsel are smart, they'll dismiss the § 195 claims"—foreshadowing the very maneuver that followed.

Plaintiffs argued that dismissal of the § 195 claims was in the "best interest of the class." Yet they never addressed the six notices that were returned undeliverable (Dkt. 132, pp. 12–16). These individuals never received actual notice and thus had no opportunity to participate, opt out, or protect their rights. The "best interest of the class" justification collapses under scrutiny.

This omission is not harmless. By the time final judgment was entered on November 13, 2024 (Dkt. 153), the six-year statute of limitations had already barred any § 195 claims accruing before November 13, 2018. For the six undeliverable class members, dismissal without renewed notice permanently deprived them of statutory rights.

Far from serving the class's "best interest," this maneuver extinguished viable claims without the protections of Rule 23(e). Due process requires notice "reasonably calculated" to reach absent class members before their rights are cut off. Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). No such effort was made here.

The failure to address undeliverable notices and statute-of-limitations consequences shows the dismissal was designed not to protect the class, but to protect counsel's fees and to avoid trial scrutiny. This strengthens the conclusion that the dismissal of certified § 195 claims was not a neutral litigation choice. It was a coordinated maneuver between Plaintiffs' and Defendant's counsel to achieve finality while concealing fraud from judicial scrutiny. By facilitating dismissal against his client's instructions, Greenbaum acted in collusion with opposing counsel. This conduct constitutes **fraud on the court** under Rule 60(d)(3) and renders the judgment void under Rule 60(b)(4). Relief is also appropriate under Rule 60(b)(6) given the extraordinary circumstances.

## C. Post-Judgment Misrepresentations and Suppression of Defendant's Voice (Dkt. 181)

One week before the January 29, 2025 post-judgment conference, Defendant expressly instructed his counsel to notify the Court that he wished to testify in open court to present evidence of fraud and misconduct:

> "Please include in the letter to Judge Rochon that Defendant Nikolay Volper is requesting… that I would like to testify in Judge Rochon's courtroom to present facts and evidences that will show opposing party misconduct and Fraud on the Court and all party involve to be present." (Ex. G20).

Rather than carrying out this instruction, Greenbaum minimized and deflected:

- "It's your letter, as I said I will forward it but it's your statement."

- "I doubt she will entertain [your request] but you never know."

He never meaningfully presented Defendant's request to the Court.

This suppression was the direct precursor to the January 29, 2025 hearing (Dkt. 181). At that hearing, Plaintiffs' counsel Denise Schulman told the Court that Defendants had made only "baseless and irrelevant accusations" against her. (Dkt. 181, p. 4). That was false. Throughout the litigation, Defendant had repeatedly raised—both in writing and orally—specific allegations of false declarations, unlawful POS access, solicitation violations, and ethical breaches, supported by contemporaneous emails, exhibits, and deposition transcripts (see Exs. G, G1–G3; H; Dkt. 152-1).

When the Court inquired whether Defendant himself wished to be heard, the following exchange occurred (Dkt. 181, p. 5):

> THE COURT: Well, generally, Mr. Greenbaum, I hear from parties through their counsel.
>
> MR. GREENBAUM: Well, I guess Mr. Volper relies on the declaration he submitted. That's all I can say unless your Honor would — I don't know if he has anything to add from that.

This exchange shows how Greenbaum actively suppressed Defendant's ability to speak and present critical evidence directly to the Court. Despite having been repeatedly provided with

detailed records and instructions, Greenbaum refused to raise the fraud and ethical violations himself and prevented Defendant from doing so.

Later in the same hearing, the Court observed:

> "Instead, Defendants seek to relitigate issues of purported misconduct and ethical violations by Class Counsel that could have been raised during the litigation." (Dkt. 181, p. 9).

That conclusion was a direct result of Greenbaum's suppression. The record shows Defendant did raise these issues during the litigation, but counsel deliberately withheld them from the Court.

The effect was twofold:

1. Plaintiffs' counsel misled the Court unchallenged, dismissing substantiated allegations as "baseless."
2. Defendant was silenced by his own attorney, who both refused to present the evidence and blocked Defendant from doing so himself.

This conduct exemplifies fraud on the court as defined by the Second Circuit: "suppression of material facts by officers of the court preventing the judicial process from functioning impartially." *Kupferman v. Consol. Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972). It also violated NYRPC 1.2(a) (acting against client's objectives), NYRPC 3.3(a)(1) (candor to tribunal), NYRPC 8.4(c) (deceit), and Judiciary Law § 487 (collusion and deceit). Defendant was further deprived of due process by being denied the opportunity to be heard on critical evidence of fraud.

**D. Defendant Was Always Out of Settlement; Counsel Hid the Record**

The record establishes beyond dispute that Defendant never authorized settlement or compromise with Plaintiffs. At every stage of this litigation, Defendant's position was the same: proceed to trial and expose Plaintiffs' false claims and attorney misconduct. Any reference to "settlement," "dismissal," or "attorneys' fees" originated from counsel—not Defendant.

On July 24, 2023, Defendant made his position explicit in an email to attorneys Segal and Greenbaum:"I am totally out of any agreements with Nino attorney not even for $1 for many good personal reasons and ready to face trial." (Ex. G19).

This was not an isolated comment. It reflected a consistent posture carried through the entire case. Defendant rejected compromise categorically—not one dollar, not one claim, not one stipulation. His singular goal was to reach a jury trial to dispute the false allegations and expose Plaintiffs' fraud and all class counsels involved in the case.

Despite this unwavering position, defense counsel Greenbaum engaged in undisclosed settlement discussions with Plaintiffs' attorneys.

Text on October 13, 2023 again confirmed that Defendant was not interested in any kind of settlement and instead he wanted to go to trial "As I mentioned before there is no reason to negotiate not even for $1". (Ex. H, A-2023).

**April 18, 2024 — Defendant was not interested in any settlement (Ex. G17).**

On April 18, 2024, defense counsel Greenbaum emailed Defendant confirming that Plaintiffs' counsel Kirschenbaum had privately called the night before to propose a $400,000 settlement

"all in" for the class and attorneys' fees. Greenbaum admitted that, consistent with prior conversations, Defendant was "still not interested." He wrote:

"I said based on my prior discussions with you that you wouldn't be interested... You indicated you were still not interested... I feel that you can now settle this matter for 200k, but you indicated you do not want to pursue this." (Ex. G7).

This email proves two points:

1. **Settlement outreach occurred off the record**, implicating Rule 23(e)'s requirement for court approval and notice to class members.

2. **Defendant unequivocally rejected the overture.**

Yet, counsel concealed this outreach from the Court and later refused to raise it in a Rule 60 motion. His silence enabled Plaintiffs' attorneys to advance a fee-driven strategy while misrepresenting that Defendant was unwilling to resolve the case. This conduct constitutes **fraud on the court** under Rule 60(d)(3), violations of **NYRPC 1.2(a)** (acting against client instructions) and **3.3(a)(1)** (failure of candor to tribunal), and deceit under **Judiciary Law § 487.**

On **September 11, 2024**, Greenbaum revealed by text that Plaintiffs' counsel **Maimon Kirschenbaum** again tried to approach and had privately called him seeking settlement in order to preserve attorneys' fees. (Ex. H, A-2024) The text exchange makes Defendant's opposition unmistakable:

**Greenbaum:** "You know who called me (Kirschenbaum).." **Volper:** "What he want?"
**Greenbaum:** "He wants to settle! Doesn't want to lose his attorneys' fees. Doesn't care about anyone else."

Defendant volper was not interested and denied it

**Volper:** "No chance. I was very clear on that." **Greenbaum:** "I told him: no settlement. You have no money. Get in line. If he closes you down, it's on him." **Volper:** "He already cost me a lot of money and stress. He lost his chance. Tell him he will get more money after the trial."

This exchange proves two things:

1. Plaintiffs' counsel was pursuing private settlement to protect fees, not class interests.

2. Defendant categorically rejected the overture and reaffirmed his commitment to trial.

Nevertheless, Greenbaum never disclosed this improper outreach to the Court, even though it directly implicated **Rule 23(e)** (mandatory court approval for class settlements), the integrity of the fee award, and the fairness of proceedings.

Defendant later instructed Greenbaum to raise this collusive outreach in a Rule 60 motion. Greenbaum refused. In an **October 11, 2024 email**, he wrote: "I cannot raise the fraud issues you have alluded to or ethical issues… I do not believe they have grounds… As an attorney I cannot file pleadings in court in which I do not believe have grounds to be made."

Greenbaum's refusal to act concealed material evidence of misconduct and insulated Plaintiffs' counsel from scrutiny. Defendant, by contrast, was consistent: he **never consented to dismissal, settlement, or stipulation**. His intent was always to contest the false allegations in open court. And let the Jury and Judge to determine.

On **September 30, 2024**, Defendant again reiterated his instructions:"Please start to prepare our appeal summary judgment… There are a lot of ethical violations and crime committed by the main plaintiff which you don't address to the court."

By contrast, contemporaneous records reveal that Greenbaum and Plaintiffs' counsel were coordinating to dispose of the certified § 195 claims and preserve attorneys' fees:

- On **September 27, 2024**, Schulman emailed Greenbaum proposing dismissal of the § 195 claims and a stay pending appeal. Greenbaum responded: "I don't believe it's a final appealable order, I'm around for a discussion, just let me know." (Ex. G2).
- Plaintiffs' billing records for that day show entries for "Call with defense re: next steps" and "Email defense re: next steps" (Dkt. 152-1, p. 25).

These communications confirm the truth: while Defendant consistently rejected settlement and insisted on trial, **his attorney engaged in unauthorized discussions with Plaintiffs' counsel about dismissing certified claims and preserving fees.**

This conduct deprived Defendant of his right to trial and the Court of candor. It constitutes fraud on the court under Rule 60(d)(3), as well as violations of NYRPC Rules 1.2(a), 1.16, 3.3, 8.4(c), and Judiciary Law § 487.

### E. Early Notice of False Declarations (May 1, 2023) — Counsel's Duty to Correct

On May 1, 2023, defense counsel Jonathan Greenbaum emailed Defendant acknowledging a factual error in Plaintiff Martinenko's declaration (Dkt. 73) that had been used to support certification. Referring to ¶¶ 10–11 (front-of-house employee list), Greenbaum wrote:

"Look at para 10, 11 then exhibit 1 is a tip sheet, exh 2 weekly tip sheets, exh 3 pay stubs."
(Ex. G1).

The underlying § 216(b) list (Ex. 19) shows the individuals Nadia and Marikan were in fact
included, contradicting Plaintiff's sworn assertion that they were omitted. In other words, by
May 1, 2023, defense counsel had actual knowledge that a material statement in Plaintiff's
declaration was false and that the attached records disproved it.

Despite this notice, counsel (i) did not move to strike or correct the declaration under Fed. R.
Civ. P. 11(b), (ii) did not alert the Court under NYRPC 3.3(a)(1) (candor; duty to correct false
evidence), and (iii) allowed the false narrative to stand through class certification and into
summary-judgment briefing. The failure to correct a known falsehood that goes to Rule 23(a)
adequacy/typicality and the factual premise for certification is classic fraud on the court when
done by officers of the court. See *Kupferman*, 459 F.2d at 1078 (suppression of material facts by
counsel impairs the tribunal's impartial function).

This 2023 email thus predates—and helps explain—later suppression: after counsel
acknowledged falsity in May 2023, he repeatedly refused in 2024 to raise fraudulent affidavits,
to reopen discovery (re: POS access), or to correct the record, while coordinating a path to final
judgment. The Court should weigh this early knowledge as part of the pattern justifying relief
under Rule 60(b)(3) (fraud/misrepresentation), Rule 60(b)(6) (extraordinary circumstances), and
Rule 60(d)(3) (fraud on the court).

The Court's own observation at the January 29, 2025 conference underscores the prejudice
caused by this silence. On page 9 of the transcript (Dkt. 181), the Court stated:

"Instead, Defendants seek to relitigate issues of purported misconduct and ethical

violations by Class Counsel that could have been raised during the litigation."

But the record shows those issues *were* raised—through emails, texts, and repeated instructions

from Defendant. Counsel simply suppressed them.

Chain communications (Ex. G – emails; Ex. H – text messages) confirm that Defendant

consistently identified fraud and ethical violations throughout the case. Some were later

confirmed, and others only became clear after Plaintiffs' fee billing records were filed (Dkt.

152-1, Nov. 8, 2024).

## F. Suppression of Evidence of Ethical Violations and False Declarations

**January 2024 — Defendant Provided Counsel Proof of False Declarations and Solicitation Misconduct**

On January 8, 2024, Defendant emailed Greenbaum a detailed summary of contradictions and

fraudulent filings by Plaintiffs and their counsel (Ex. G23). Defendant identified, with citations:

- Plaintiff Martinenko's contradictory testimony on working hours and compensation;

- Affidavits falsely claiming she did not know her hours, contradicted by prior statements;

- Misrepresentations in Dkt. 73 (Dec. 9, 2022 declaration) that "Nadia and Mariken" were omitted from the front-of-house list, when records show they were included (see Dkt. 63, filed May 3, 2022, and deposition at pp. 154–169);

- Plaintiff's false claim of starting in 2016 to secure additional damages, contradicted by her deposition admission that she began in June or July 2015 and the original Complaint (Dkt. 1    8);

**61**

- Multiple misleading affidavits (Dkts. 73, 122) knowingly submitted by counsel despite contrary records;

- Coercive threats by Plaintiffs' counsel, including Maimon Kirschenbaum stating during negotiations, "I close businesses," to force surrender to inflated demands;

- Retaliatory escalation of settlement demands ($120,000 to $195,000) after Defendant moved to disqualify Plaintiffs' counsel.

Despite being provided with this detailed proof, Greenbaum took no action to strike false declarations, move for Rule 11 sanctions, or challenge adequacy under Rule 23(a)(4). Instead, he suppressed the evidence and later coordinated dismissal of § 195 claims with Plaintiffs' counsel.

This email confirms that counsel had actual notice of fraud and ethical violations months before judgment. His refusal to act, despite clear client instruction, constitutes willful suppression of material facts. Such conduct is the very definition of fraud on the court under *Kupferman v. Consolidated Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972).

## 1. Suppression of Evidence of POS Misconduct

From July 2023 through September 2024, Defendant repeatedly instructed then-counsel Jonathan Greenbaum to present evidence that Plaintiff Nino Martinenko unlawfully accessed the employer's POS/payroll systems after termination and that Plaintiffs' declarations were false or misleading. Despite receiving documentary support (including audit logs and citations to the Rules of Professional Conduct), Greenbaum refused to bring these issues to the Court, minimized the misconduct as merely "inappropriate," declined to seek reopening of discovery, and watered down filings to avoid "backlash." This suppression of material facts by an officer of

the court is fraud on the court. See Kupferman v. Consol. Research & Mfg. Corp., 459 F.2d 1072, 1078 (2d Cir. 1972).

**2. July 18, 2023 — First explicit instruction to raise unlawful access and false affidavits.**

Defendant directed Greenbaum to alert the Court to Martinenko's "illegal cyber crime activity" in the POS/payroll systems and to her "misleading affidavit" prepared by counsel, and asked counsel to examine minimum-wage assertions and IRS rules:

"Since I am out of any settlements… we should start preparing for defense and address the court with Nino Martinenko illegal cyber crime activity… [A] cyber crime attorney… confirmed that this is a crime… Also Nina Martinenko misleading affidavit… Please look also at the minimum wage claims by Nino Attorneys and IRS rules."

**3. August 10, 2023 — Detailed post-termination access; request for depositions. (Ex. G3)**

Defendant emailed Greenbaum documenting that, after termination, Martinenko used still-active Level 3 administrative credentials to access the restaurant's operating system on January 8, 2022, remained logged in ~46 minutes, and had the *ability to view, edit, and delete* business records—days before the complaint was filed on January 20, 2022:

"Her activity is illegal and a crime under the law even if she doesn't take or delete any information. Also raise serious concerns about the integrity in this case and we need to call for deposition — Nino and Dakmara — to address many of this very suspicious activity and testimony by both."

Defendant asked to reopen discovery and to take depositions on the unlawful access. Defendant supplied audit logs (e.g., **Dkts. 112-11, 112-12**) showing managerial

permissions and post-termination logins. Greenbaum nevertheless refused to move to reopen discovery or to raise the issue, asserting that unlawful access was "not relevant to a wage violation case."

**4. August 26, 2024 — Reiteration before the § 195 directive. (Ex. G2)**

Shortly before the Court's order addressing § 195 claims, Defendant again wrote Greenbaum explaining how Plaintiffs' ethical violations and false statements had affected the Court's recommendations and insisting these issues be presented to the Court before proceeding further.

**5. August 31–September 3, 2024 — Repeated Requests; Counsel's Minimization and Word-Watering**

The suppression pattern came into sharp focus in an August 31, 2024 email exchange. Defendant explicitly directed counsel to raise Plaintiff Martinenko's post-termination POS access, false affidavits, and misleading testimony, stressing their importance for credibility, class adequacy, and damages:

> "Look at my deposition. Nino Martinenko attorney use the word unlawfull [sic] in this civil case. Also you never address the facts that the judge never address the facts of her improper activities and use only part of her statement to look in the past clock in and out but also change [the] time records as well not only look… her ability to change records can play big role in this case as you know not only on damage side but on class. The law is very clear on this elegal [sic] activities even if she still don't change or download records still felony." — Email from Defendant to Greenbaum, Aug. 31, 2024 (Ex. G4).

Greenbaum's response was an admission of deliberate suppression:

> "You will notice I used the word improper instead of illegal. I did it for several
>
> reasons, most of all I think it would backfire with the judge as a gratuitous
>
> statement… so inappropriate and improper is the more appropriate thing to say in a
>
> civil case. The judge isn't going to decide something is a crime without the DA or
>
> US attorney bringing it." — Email from Greenbaum to Defendant, Aug. 31, 2024
>
> (Ex. G4).

Defendant pleaded again for fairness and protection:

> "To be clear I perfectly understand why you don't want to address and step up in
>
> Nino Martinenko and her attorney's bad actions. End of the day that was their
>
> decision in order to do max damages and put me out of business. As you know I pay
>
> a lot for my mistakes in this case — money, time, and stress. All I ask you [is] to
>
> protect me and address their activity in this case and be fair." — Email from
>
> Defendant to Greenbaum, Aug. 31, 2024 (Ex. G4).

This was not a passive client. Defendant repeatedly identified specific fraud, instructed counsel
to raise it, and asked for protection. Greenbaum refused. He not only minimized unlawful
conduct as merely "improper," but he admitted he softened the language intentionally to avoid
judicial "backlash."

This is a direct admission that:

1. He had evidence of Plaintiff's unlawful access and ability to alter records.

2. He knowingly diluted the truth from "illegal" to "improper."

**65**

3.  He refused to move for relief under Rule 11, Rule 23(a)(4), or to reopen discovery —
    despite express instructions.

Across subsequent emails and calls (Sept. 1–3, 2024), Greenbaum continued to decline, insisting:
"this is not an ethical violation" and claiming it would be "unethical to file ethical complaints."
He maintained that his firm had no policy of reporting such violations, even though NYRPC
3.3(a)(1) requires candor to the tribunal.

This was not strategy — it was conscious suppression of material facts. Defendant's intent was
clear: bring the misconduct before the Court. Counsel's reply shows deliberate refusal. By
September 2024, with these issues buried, Greenbaum pivoted to collusive discussions with
Plaintiffs' counsel that culminated in dismissal of § 195 claims one month later.

As the Second Circuit has held:

> "Fraud upon the court… is a fraud perpetrated by officers of the court so that the
> judicial machinery cannot perform in the usual manner its impartial task of
> adjudging cases." — *Kupferman v. Consol. Research & Mfg. Corp.*, 459 F.2d 1072,
> 1078 (2d Cir. 1972).

By watering down unlawful misconduct and refusing to disclose Defendant's evidence,
Greenbaum prevented the Court from considering facts that would have undermined class
certification, disqualified Martinenko under Rule 23(a)(4), and exposed false affidavits under
Rule 11(b). This email chain is therefore critical proof of fraud on the court under Rule 60(d)(3).

**6. Early September 2024 — Pointed email exchange showing suppression of material facts.**

• Defendant (approx. 9:02 AM EDT) pressed counsel:

"Look at my deposition. Nino's attorney used the word *unlawful* in this civil case. Also you never addressed the facts that the judge never addressed the facts of her improper activities and used only part of her statement to look in the past clock in and out but also change the time records as well."

• Greenbaum (approx. 8:36 AM) minimized:

"That she 'could' change records is in there. There is no evidence she changed records."

• Defendant (9:11 AM) clarified capabilities and instances:

"She clocked in anytime for work and that's a different system. In order to change time records… she needed to log into the management account, which she did a few times for other staff in 2020… and then she logged in 6 times after she was fired on December 30, 2021."

Despite the audit logs corroborating post-termination access and managerial permissions, Greenbaum refused to escalate the matter as a legal violation, calling it merely "inappropriate."

**7. September 1 & 3, 2024 — Direct requests to report ethical violations.**

Defendant wrote at **5:40 PM EDT (Sept. 1)** and **4:44 AM PDT (Sept. 3)**:

"As my attorney in this case please let me know if you are going to report to the court Nino Martinenko's attorney's ethical violations or not."

Greenbaum made **no affirmative response** and never reported the issues, although.

Defendant identified that Plaintiffs' counsel had: submitted a **false declaration (Dkt. 122)** denying post-termination system access; failed to disclose unauthorized payroll/POS

67

access; and relied on misleading declarations to obtain certification and summary

judgment.

**8. September 3, 2024 — Rule-based roadmap provided; still ignored.**

 Defendant emailed at **10:06 AM PDT**:

> "Please find the ethic rules… To start we can look **3.3** rules and why is very
>
> important to address them now to the court before trial… I just find 2 more
>
> breakings of these rules… You will see I am right on all my points."
>
>  Greenbaum still declined to raise the issues, to seek discovery relief, or to correct
>
> the record.

**9. Appellate-strategy texts confirm Defendant's no-settlement posture and counsel's
knowledge of prejudice.**

On September 25, 2024, Defendant and attorney Jonathan Greenbaum exchanged texts about

appeal, during which Greenbaum acknowledged serious ethical violations by Plaintiffs' counsel

and prejudice to Defendant:

Volper: "Yes, we need to appeal in 30 days and file the notice of appeal." Greenbaum: "I agree,

but I think it may be dismissed as premature… but to be safe, I agree." Volper: "Yes, we need to

send notice. But you see how the ethics rules they break play in their favor." Greenbaum: "Good

issue for part of appeal. I think you were prejudiced." Volper: "Good issues to disqualify these

attorneys—3 different ethics rule problems in this sample alone. One of them is very serious. So

far I count over 30 ethics rule and civil procedure violations in this case." Volper: "I mean 30

counts."

These messages show (1) Defendant's firm commitment to trial/appeal, and (2) Greenbaum's

actual knowledge of ethical breaches and prejudice that needed to be litigated—not compromised.

Even as Defendant insisted these ethical and factual issues be decided at trial by a jury and judge, Greenbaum unilaterally pursued a Rule 41 path to avoid trial and secure finality on § 195 claims, contrary to Defendant's explicit instructions.

These facts show knowing suppression of material evidence and conscious word-watering by defense counsel to prevent the Court from learning that (i) Plaintiff retained managerial-level access and used it post-termination, and (ii) declarations submitted by Plaintiffs were false or misleading. Such suppression by an officer of the court "prevent[s] the judicial process from functioning impartially," constituting fraud on the court. *Kupferman*, 459 F.2d at 1078. The conduct also violates Rule 11(b) (duty of candor as to factual contentions) and NYRPC 3.3 (candor to tribunal), 5.1 (firm supervisory responsibilities), and 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation). Relief is therefore warranted under Rule 60(d)(3) (fraud on the court) and, given the resulting deprivation of a merits trial and contamination of class rulings, under Rule 60(b)(6) (extraordinary circumstances).

Counsel's Argument in Dkt. 128 Proved Individualized Issues but Suppressed Fraud and Adequacy Challenges

Defense counsel's own briefing confirms that he possessed evidence to dismantle class certification but deliberately narrowed his argument to avoid addressing Plaintiffs' false declarations and adequacy. In Defendants' Reply Memorandum on Decertification and Dismissal (Dkt. 128  make clear that counsel sought judgment solely as to Count 5 of the Complaint

(NYLL § 195(3) wage statements). Out of five counts in the Complaint (overtime, minimum wage, spread of hours, wage notices, and wage statements), counsel addressed only the narrowest, most technical paperwork claim. He abandoned Counts 1–4, despite having in hand records and deposition testimony that directly undermined Plaintiffs' core overtime and minimum wage allegations.

By January 2024, counsel had received and reviewed:

- Payroll and POS time records showing Plaintiff Martinenko "clocked in" on 34 days without serving guests, proving inflated overtime. (Exs. G15, G16)

- Tip sheets and employee lists contradicting Martinenko's declaration (Dkts. 22, 73) that employees Nadia and Marikan were omitted.

- Martinenko's deposition admission that she had never read the Complaint (Dkt. 119-11, p. 29), establishing the pleading was filed without client verification.

- Audit logs proving post-termination POS access, contradicting Plaintiff's sworn denials.

None of this was raised in Dkt. 128. Counsel never moved to strike the false declarations under Rule 11(b), never argued typicality/adequacy failures under Rule 23(a)(3)–(4), and never presented the Court with the evidence of Plaintiff's misconduct.

Even in its narrowed form, Dkt. 128 conceded that:

- "Individual issues surrounding the overtime claims and spread of hours claims predominate." (pp. 6–7).

- More than half the class had no or only de minimis overtime.

- Plaintiff Martinenko's claims were unique and exaggerated, based on her staying after work without clocking out.

These arguments should have been fatal to certification. If overtime and spread-of-hours claims turned on individualized inquiries, Rule 23(b)(3) predominance failed. If Martinenko's claims were exaggerated and atypical, Rule 23(a)(3) typicality collapsed. And if she offered knowingly false testimony, her adequacy under Rule 23(a)(4) and her counsel's candor under Rule 11(b) were destroyed.

Yet counsel deliberately **stopped short** of drawing those conclusions. He never connected these contradictions back to the **Original Complaint (Dkt. 1)**, which falsely alleged uniform overtime and spread-of-hours violations; or to **Martinenko's sworn declarations (Dkt. 22, 73)**, which falsely claimed she "frequently" worked overtime and misrepresented co-workers. Nor did he raise her deposition admission that she had not even read the Complaint before it was filed.

This narrowing dovetails with the later events of September–October 2024. Having steered the case into § 195 territory, counsel coordinated with Plaintiffs' attorneys to stipulate dismissal of those same § 195 claims (Counts 4 and 5) "without prejudice," contrary to the Court's directive in Dkt. 141. Plaintiffs' billing entries confirm discussions with defense counsel on "next steps" immediately preceding the dismissal. The very claim Greenbaum chose to litigate in Dkt. 128 was the claim he later helped opposing counsel abandon, against Defendant's explicit instructions to proceed to trial.

Dkt. 128 is therefore not a neutral filing; it is a smoking gun of suppression. It demonstrates that counsel:

- Possessed evidence disproving the Complaint but refused to raise it;

- Conceded the Rule 23 requirements were not met but suppressed those arguments;

- Narrowed the case to Count 5 to align with Plaintiffs' later dismissal strategy.

As the Second Circuit has recognized, "concealment of material facts by counsel constitutes fraud on the court." *Kupferman v. Consol. Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972). The Supreme Court likewise holds that judgments procured through such misconduct cannot stand. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944).

F. Coordinated Plan to Achieve Finality and Avoid Trial (Sept. 25–30, 2024)

In the days immediately following the Court's September 24, 2024 order, Plaintiffs' counsel and Defendant's counsel (Mr. Greenbaum) coordinated a path to **extinguish the certified § 195 claims**, obtain **final judgment**, and **avoid trial—contrary** to (i) Defendant's explicit "no settlement/no dismissal" instructions and (ii) the Court's directive to litigate **individualized § 195 injury** for the certified class. Dkt. 141 required the parties to meet and confer on **how to litigate** those individualized issues, not to abandon the claims.

**Plaintiffs' Own Billing Confirms "Appeal-First," Then a Pivot to Collusive Finality After Defense Pitch**

Immediately after the Court's September 24, 2024 decision, both sides turned to strategy. Plaintiffs' billing records show a focus on appeal and fee applications while simultaneously opening a record line of communication with the defense about "next steps." (Dkt. 152-1, pp. 24–25).

On September 25, 2024, Plaintiffs' billing shows their parallel appeal-first strategy that the plaintiff counsels discussed the next steps while reviewing the Summary Judgement decision with Maimon and Mike and they discuss potential appeal with partner:

- "Discuss next steps with Maimon" (9/25, 0.2);

- "Discuss SJ decision with Mike" (9/25, 0.5);

- "Review judgment, deadlines for fee requests" (9/25, 0.3);

- "Review SJ order… discuss potential appeal with partner" (9/25, 0.5). (Dkt. 152-1, p.24).

And On September 26, 2024, the theme continued: "Compile time for fee application" (multiple entries) and "Confer with clients re: case update, appeal, and next steps" (0.3).

These billing entries showed: Plaintiffs prioritized **appeal** and **fee preparation** immediately after the order. In parallel, they began coordinating **"next steps"** with their clients and the defense.

B. Sept. 27–30 Communications: Proposal, Negotiation, and Pivot to Finality

On **September 25, 2024**, Defendant and attorney Jonathan Greenbaum exchanged texts about appeal, during which Greenbaum acknowledged serious ethical violations by Plaintiffs' counsel and prejudice to Defendant:  (Ex. H, A-2024). **Volper:** "Yes, we need to appeal in 30 days and file the notice of appeal. Two days after this instruction to prepare the appeal, Plaintiffs and defense counsel coordinated a path to dismiss the certified § 195 claims and obtain final judgment—contrary to Defendant's instructions and the Court's directive to litigate individualized § 195 injury (Dkt. 141, p. 27).

On September 27, 2024, Plaintiffs' counsel Denise Schulman emailed Greenbaum proposing to stay the certified § 195 class claims pending their appeal of Huk's § 195

ruling—and, if they lost, to dismiss the remaining § 195 claims without prejudice. (Ex.

G12)

Greenbaum replied at 12:47 p.m.: "I don't believe it's a final appealable order, I'm around for a

discussion, just let me know." (Despite the fact, only 2 days early defendant clearly instruct him

that we should prepare our appeal). (Ex. H)

At 12:23 p.m., Schulman noted the judgment "came with a notice of right to appeal" and

proposed a 4:00 p.m. call.

Greenbaum confirmed:  "4 is good, I don't think the form makes it appealable—could have been

a mistake by the clerk (in any event I think it's pretty clear it's not a final order)."

Greenbaum forwarded the exchange to Defendant and wrote: *"I will call you back after talking

to Denise."* (Ex. G13). During that call, Greenbaum raised dismissal of the § 195 claims.

Defendant immediately rejected the idea, stating unequivocally that he would not agree and

intended to go to trial to present the evidence of misconduct. Despite this clear instruction,

Greenbaum proceeded to negotiate judgment mechanics with Plaintiffs' counsel, seeking to

enable finality rather than litigating individualized § 195 injury as ordered in Dkt. 141.

Further, Plaintiffs' billing time records (Dkt. 152-1) confirm the plan: on Sept. 27, 2024, entries

show "Call with defense re: next steps" and "Email defense re: next steps." where they

negotiated about the plan to dismiss 195 claims and did not expose the defendant or the court.

That evening of Sept. 27, 2024 Defendant texted Greenbaum: "Just let me know if they file the

notice. We need to think what to say. They definitely don't want to go to trial when they will

have a lot of challenges." (Ex. H). Greenbaum answered:  "Agree, which is why they may just

give up on it." "Also, why did they file a class action and now want to appeal only one person?" "The judge can revisit class certification at any time before final judgment. A partial judgment may lead to multiple appeals on the same issue." This statement reflects counsel's clear awareness that **Rule 23(c)(1)(C)** authorizes the Court to alter or decertify a class at any time prior to final judgment — including at trial. See *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation.").

Two days later on September 30, 2024 at 2:38 p.m., Schulman emailed Greenbaum: "After further consideration following our conversation last Friday, we will agree to dismiss the remaining NYLL 195 claims without prejudice and ask the judge to enter a final judgment disposing of the case in full. If you are on board with that, I will prepare a letter to Judge Rochon."

 At 2:42 p.m., Greenbaum forwarded this email to Defendant by saying: "Called their bluff, I said they would do this." Defendant immediately objected: "We don't agree and we submit our appeal. Please start to prepare our appeal summary judgment. This is the court order notice send by the court it our option not there option there a lot ethical violations and crime committed by main plentiful which you don't address to the court. We have till Oct 24 date" (Ex. C10). Plaintiffs' September 30 billing records again confirm the coordinated push toward dismissal and finality, including "Discussion w team re: settlement," "Email defense re: next steps," "Discuss next steps with legal team," and "Confer with partners re: next steps" (Dkt. 152-1, p. 25).

Read end-to-end, these communications show that dismissal did not originate with Plaintiffs. The pathway was previewed to the client by defense counsel before September 27, advanced with Plaintiffs on September 27, and adopted by Plaintiffs on September 30 expressly "following [the]

conversation last Friday." Each time dismissal surfaced, Defendant objected and directed trial and appeal, yet counsel continued to negotiate a final-judgment mechanism with Plaintiffs. The effect was to avoid trial, foreclose the Court's ability to revisit certification in light of trial evidence, and insulate disputed issues—false declarations, solicitation conduct, and post-termination POS access—from adversarial testing, all in tension with Dkt. 141's instruction to litigate individualized § 195 injury for the certified class.

This sequence aligns with Defendant Volper's recollection that, days before September 27, counsel remarked: "If Plaintiffs' counsel are smart, they'll dismiss the outstanding § 195 claims." Defendant immediately questioned why his attorney was raising dismissal and stated he hoped the idea would not be carried forward—consistent with his long-standing "no settlement, no dismissal" directive. Nevertheless, counsel proceeded. After Plaintiffs' September 27 exchange and call, their September 30 email reframed the course as "our proposal," and billing entries for September 27 ("Call with defense re: next steps"; "Email defense re: next steps") corroborate off-record coordination. When counsel later characterized the outcome to his client as "calling their bluff, "The "bluff" was therefore not aimed at Plaintiffs—it was aimed at misleading Defendant into believing the dismissal was a defensive win, rather than an unauthorized collaboration.

Here, the contemporaneous emails, texts, and billing entries make the quid pro quo unmistakable. Defense counsel first seeded the idea to jettison the certified § 195 claims, then worked with Plaintiffs on September 27 to advance that path, and Plaintiffs publicly adopted it on September 30 "following [the] conversation last Friday." In return for Plaintiffs taking ownership of the dismissal as "our" proposal, defense counsel withheld and minimized material misconduct—false declarations, solicitation, ethical voilations and unlawful POS access—that

would have been exposed at trial and threatened certification. The exchange yielded exactly what both sides needed: finality without trial, preservation of Plaintiffs' fee posture, and insulation of the record from adversarial testing—at the direct expense of Defendant's trial rights, the Court's ability to revisit certification, and Rule 23(e)'s protections for absent class members. In short, the record compels the inference of a coordinated quid pro quo: Plaintiffs fronted the dismissal; defense counsel suppressed the problems that would have defeated it—producing a collusive judgment that cannot stand.

This was collusion, not litigation, and it constitutes fraud on the court warranting relief under Rule 60(d)(3). See Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944); Kupferman v. Consolidated Research & Mfg. Corp., 459 F.2d 1072, 1078 (2d Cir. 1972).

## G. October 2024 — Suppression of Fraud Evidence and Collapse of Representation

On **October 9, 2024**, Defendant emailed Greenbaum a detailed breakdown of fraud and misconduct committed by Plaintiffs and their attorneys. (Ex. G11) The email included:

- Citations to at least 14 specific pages of the Rules of Professional Conduct;

- Evidence of a false affidavit regarding POS system access;

- A drive link showing the POS system could be accessed remotely, contradicting Plaintiff Martinenko's sworn statement in support of summary judgment.

Defendant concluded: "Fraud on the court during civil procedure. We must file and address this to the court."

Greenbaum responded:"There are no grounds for taking the action you are seeking… I cannot raise the fraud issues you have alluded to or ethical issues you have alluded to because as an attorney I cannot file pleadings in court in which I do not believe have grounds to be made."

**Greenbaum admitted three critical points:**

1. He had reviewed the evidence and the deposition transcript;

2. The § 195 claims had been dismissed without prejudice by stipulation;

3. He would not raise Rule 60(b) or Rule 11 issues because *he personally* did not believe they had grounds.

Thus, even after reviewing concrete proof of false affidavits and misconduct, Greenbaum suppressed the evidence, refused to act, and affirmatively supported entry of final judgment—despite Defendant's objections and the Court's pending directive to litigate § 195 individualized injury (Dkt. 132, p. 72).

**On October 17, 2024 text messages — Defendant reiterates intent to expose fraud at trial.**
 Defendant again urged Greenbaum to place misconduct on the record (Ex. H, A-2024):

- **Volper:** "Do you want to underline possible reasons they don't want to go to trial? Questions about Nino's illegal entry in the system after she got fired, false and misleading affidavits, time theft. We have witnesses to challenge these claims. I emailed you the proofs. (Ex. G16) You asked for them."

- **Greenbaum:** "I sent you emails. I will see where we can add it."

- **Volper:** "Better to be on the record even for future appeals. Under Rule 23(a)(4), we should concentrate not only on defense but attacking the facts. They asked for a jury trial,

then sought to avoid costs, and now demand fees. That shows their confidence is tactical, not factual."

These texts show Defendant's consistent strategy: **expose fraud, put evidence on record, and proceed to trial.** Greenbaum acknowledged receipt but again took no action.

**On October 31, 2024**, after the parties had coordinated dismissal of the § 195 claims, Defendant emailed Greenbaum:

"Since you take action that we can not go even to trial how we ask the judge now that they need to follow Rules 30… Why you think they take our pitch so fast… in my opinion they are very happy that was they dream outcome." (Ex. G14).

This message reflects Defendant's immediate recognition that dismissal deprived him of his right to trial, to cross-examine false declarations, to seek class decertification, and to confront Plaintiff's unlawful POS access.

Greenbaum responded by minimizing and deflecting:

- "Attorneys do this all the time" (regarding improper deposition instructions);
- "You did not file a motion for protective order" (blaming the client for counsel's failure to act);
- "None of the above raise ethical issues" (denying obvious violations of Rule 11 and NYRPC 3.3, 8.4);
- "The record from discovery is not helpful" (an admission that his own suppression ensured critical evidence never reached the Court).

This exchange proves that Defendant (i) recognized the collusive dismissal deprived him of trial, and (ii) pressed counsel to raise deposition and ethical violations. Counsel instead dismissed them as "not ethical" and shifted blame. This is classic **fraud on the court**: an officer of the court deliberately refusing to disclose misconduct, preventing the Court from functioning impartially. *Kupferman v. Consol. Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972).

**On December 13, 2024 texts — total breakdown of trust (Ex. H, A-2024).**

 By December, Defendant had lost all faith in his counsel due to continued suppression:

- **Volper:** "I sent you an official email. What you are doing is absolutely disgusting."

- **Greenbaum:** "Not understanding this. We spoke about the appeal to the court of appeals multiple times. We can discuss."

- **Volper:** "Nothing to discuss. The records are very clear. You stabbed me in the back once. I won't allow you to do it a second time."

- **Greenbaum:** "I'm still going to call you. Can you send the full Daily News article?"

- **Volper:** "Stop BS'ing me. Your intentions are 100% clear."

These exchanges reflect a **complete collapse of the attorney-client relationship**, triggered by Greenbaum's refusal to act on documented misconduct and his role in facilitating an unauthorized stipulation.

These entries prove that while Defendant was demanding trial and fraud exposure, Plaintiffs' counsel and Greenbaum were coordinating off-the-record to **secure dismissal and final judgment**.

This confirms a clear record of material non-disclosure, breach of Rule 1.2(a), failure to withdraw under Rule 1.16, failure to correct the record under Rule 3.3(a), facilitation of misconduct under Rules 5.1 and 8.4, and fraud on the court under Rule 60(d)(3). Greenbaum's silence and participation in these exchanges not only misrepresented Defendant's position, but facilitated Plaintiffs' procedural maneuvers to insulate their fraudulent case from scrutiny and to secure attorneys' fees without trial or Rule 23(e) safeguards.

Mr. Greenbaum's failure to act on his client's instructions, refusal to disclose material facts, failure to withdraw, and silent facilitation of an improper judgment constitute actionable misconduct. This conduct also meets the legal standard for vacatur set forth in: Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944) (fraud on the court by counsel warrants post-judgment relief); Kupferman v. Consolidated Research & Mfg. Corp., 459 F.2d 1072 (2d Cir. 1972) (fraud on the court includes suppression of material facts by attorneys); Savino v. Computer Credit, Inc., 164 F.3d 81 (2d Cir. 1998) (misleading representations to court and class members justify denial of certification); Chambers v. NASCO, Inc., 501 U.S. 32 (1991) (federal courts have inherent power to vacate judgments obtained through fraud and misconduct).

Greenbaum's conduct constitutes: Fraud on the court under Rule 60(d)(3); Breach of fiduciary duty under NYRPC 1.2(a); Failure to disclose material facts under Rule 3.3(a)(1); Misconduct under NYRPC 8.4(c) and Judiciary Law § 487; Failure to withdraw under Rule 1.16; Violation of class notice and approval procedures under Rule 23(e).

# A-V. Judicial Errors That Compound Prejudice and The Court's Summary Judgment Rulings Rest on Ignored Facts and False Pleadings

**A. Magistrate Judge Lehrburger's Ruling on Unauthorized Communications Was Factually and Legally Incorrect**

In denying Defendants' motion to disqualify and sanction Plaintiffs' counsel for unauthorized and coercive communications with putative class members (Dkt. 84), Magistrate Judge Lehrburger erroneously concluded: "The text communication, and the communication with Huk, both were authorized pursuant to the Court's earlier order granting conditional certification of the collective and approving notice by text and other means." — Dkt. 86.

This was factually wrong. The conditional certification order (Dkt. 30, p. 13), entered by Judge Lewis J. Liman on April 26, 2022, expressly authorized notice only by: first-class mail, email, and text message. No "other means" of communication—such as unsolicited phone calls, follow-up messages, or unapproved personal contact—was authorized. Plaintiffs' counsel themselves confirmed this narrow scope: "Plaintiff has made a sufficient showing for the Court to authorize notice by first-class mail, email, and text message." — Dkt. 85 at 2. The Magistrate Judge's expansion to "text and other means" had no basis in the record and legitimized misconduct that violated Rule 23(c)(2)(B). That Rule governs the rights of absent class members and mandates that **notice must be "in a reasonable manner" and in the "form and content" that the Court approves.** The purpose is to ensure that absent members receive accurate,

court-approved information about their rights and that no party engages in coercive, misleading, or unauthorized communication. Courts have repeatedly held that unauthorized communications with putative class members undermine due process and justify sanctions or disqualification. See, e.g., *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101–02 (1981) (trial courts must guard against unauthorized or coercive communications that interfere with Rule 23 rights).

### B. The Court Improperly Disregarded Sworn Opt-Out Affidavits

Both the Report and Recommendation (Dkt. 132, pp. 23–24) and the District Court's final Opinion and Order (Dkt. 141, p. 8) minimized sworn opt-out affidavits from current and former employees by speculating that they may have been "pressured" due to similarities in formatting, mailing patterns, and language. The Court admitted there was no direct evidence of misconduct, yet it treated this speculation as a "thumb on the scale" justifying certification.

This reasoning conflicts with the record. At least nine employees—Bonifacio Ramos, Alexander Rynkovsky, Luis Fernandez, Marikan Tan, Everardo Perez, Nadia Paputnikova, Samuel Garcia, Oscar Morales, and Alexander Porras—submitted notarized affidavits explicitly stating: "It is my position that I would not like to take part in this lawsuit against defendants." — Dkt. 84-2 ¶¶ 9–10.

### C. The Court Ignored and Mischaracterized Valid Opt-Out Affidavits

On April 4, 2023, Magistrate Judge Lehrburger conducted a hearing on Defendants' motion to disqualify Plaintiffs' counsel (Dkt. 84). At that hearing, Plaintiffs' counsel Denise Schulman expressly admitted she had reviewed the notarized opt-out affidavits: **Q:** Yes, I have seen the affidavits.  **A:** Yes. — Dkt. 94 at 24.

Thus, both the Court and Plaintiffs' counsel had actual knowledge that multiple current and former employees unequivocally disclaimed participation in this lawsuit. At least nine individuals—including Ramos, Rynkovsky, Fernandez, Tan, Perez, Paputnikova, Garcia, Morales, and Porras—executed sworn affidavits stating: *"I would not like to take part in this lawsuit against defendants."* Dkt. 84-2 ¶¶ 9–10. These were notarized, voluntary, and in the record long before Plaintiffs later raised claims of coercion.

Despite this, the August 13, 2024 Report and Recommendation speculated that because every current employee opted out using similar forms and envelopes, *"the possibility [exists] that Defendants improperly urged current employees to opt out."* Dkt. 132 at 23–24. The District Court adopted this reasoning, concluding: *"That is sufficient to at least raise the specter of retaliation… merely another thumb on the scale in favor of certification."* Dkt. 141 at 8.

This reasoning was deeply flawed. Once an employee opts out, Plaintiffs' counsel has no authority to represent or re-contact that individual. Rule 23(c)(2)(B) guarantees absent class members the constitutional right to decline representation, and due process requires that courts respect and enforce that decision. By disregarding sworn, notarized opt-outs and relying instead on conjecture about form similarities, the Court **nullified employees' constitutional rights**, artificially inflated numerosity, and preserved adequacy on a false premise.

The Court compounded this error by refusing to hold an evidentiary hearing, refusing to question a single employee, and failing to require rebuttal affidavits from Plaintiffs. Instead, it rested its findings on pure speculation. That is impermissible under *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), which prohibits granting dispositive relief based on conjecture rather than sworn evidence.

This judicial oversight is precisely the type of "mistake" subject to correction under Rule 60(b)(1), as the Supreme Court clarified in *Kemp v. United States*, 596 U.S. 528, 533–34 (2022), where judicial errors of law or fact fall within Rule 60(b)(1). It also falls within Rule 60(b)(3) because Plaintiffs' counsel advanced a knowingly false coercion narrative, and Rule 60(d)(3) because counsel's misrepresentations deceived the tribunal and corrupted the certification process. See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245–46 (1944); *Kupferman v. Consol. Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972).

By ignoring sworn affidavits, accepting speculation as evidence, and enabling counsel's misrepresentations, the Court violated Rule 23(c)(2)(B), stripped employees of due process, and allowed judgment to rest on a tainted record. This is an independent and sufficient ground for vacatur of class certification and summary judgment.

### D. The Court Ignored Material Evidence of Plaintiff Martinenko's Tax Fraud

The Report and Recommendation (Dkt. 132) omitted one of the most serious admissions in the record: at her December 20, 2022 deposition, Plaintiff Martinenko admitted under oath that she never reported her cash tips to the IRS or to her employer during her employment at 212 Steakhouse. Dkt. 119-11, pp. 40–45.

This was not a minor or collateral matter. Martinenko's wage-and-hour claims rested on incomplete disclosures, because she deliberately concealed substantial portions of her actual earnings. By engaging in tax fraud, she not only committed a federal crime but also destroyed her credibility as a witness. Such misconduct strikes at the heart of Rule 23(a)(3) and (a)(4): she was not "typical" of law-abiding employees and she could not "fairly and adequately protect the interests of the class."

Courts have consistently held that adequacy requires integrity, honesty, and candor. See *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000) (representatives must share the same interests as the class and be free from conflicts); *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) (representatives are inadequate where "serious credibility problems" exist). A representative who admits to tax fraud and concealing income cannot meet this standard.

Yet Magistrate Judge Lehrburger ignored this sworn testimony entirely. Neither the R&R (Dkt. 132) nor the District Court's adoption order (Dkt. 141) made any mention of her admissions or their consequences for class representation. Instead, the Court allowed certification to stand on declarations that falsely claimed she was adequate and free of conflicts. This failure to confront material evidence is exactly the kind of judicial oversight that the Supreme Court in *Kemp v. United States*, 596 U.S. 528, 533–34 (2022), recognized as a "mistake" within Rule 60(b)(1).

By ignoring this critical admission, the Court certified a class on a false record and allowed a judgment to stand despite overwhelming evidence that the lead Plaintiff was not credible, was not typical, and was not adequate. This is an independent and compelling ground for vacatur under Rule 60(b)(1), 60(b)(3), and 60(d)(3).

## E. False Complaint and Declarations

From the outset, this case was built on falsehoods. Plaintiff Martinenko's Complaint (Dkt. 1) and sworn affidavit (Dkt. 22) alleged uniform overtime and spread-of-hours violations across the class that her coworkers "worked in excess of 10 hours per day.  In her declaration, she swore she "frequently worked more than 40 hours per week" . Dkt. 22 ¶¶ 3.

Those statements were false and contradicted by the payroll and time records produced during discovery. The data showed that out of 30 absent class members, **15 had no overtime damages whatsoever**, and **11 had no spread-of-hours damages.** These records were filed on the docket and before the Court well before the R&R. The contradiction was plain and undisputed: Plaintiffs' core allegations of uniform violations were factually untrue.

Yet the Report and Recommendation (Dkt. 132) and the adoption order (Dkt. 141) **never addressed these discrepancies**. Instead, the Court credited the Complaint and affidavit as though they were reliable evidence, effectively elevating unverified attorney-drafted pleadings above objective payroll data. This was a fundamental error under Rule 11(b)(3), which requires that factual contentions in pleadings and affidavits have evidentiary support. See *Business Guides, Inc. v. Chromatic Communications Enters., Inc.*, 498 U.S. 533, 542 (1991) (Rule 11 imposes a duty of reasonable inquiry to ensure factual accuracy).

The Court had everything it needed in the record to conclude that the Complaint and affidavit were false: Payroll records and damages tables showing no overtime or spread-of-hours for large portions of the class (Dkt. 116-1, 116-9,116-10). Deposition testimony confirming the absence of uniform violations (Dkts. 119-10, 119-11). The damages model itself, which overstated liability by treating uninjured members as if they suffered uniform harm. Defendant Volper testified he had no role in payroll or scheduling (Dkt. 119-12, pp. 14, 25, 40–47), undercutting the Complaint's claim of a uniform, centrally controlled pay practice.

Despite this, the Court ignored the record and adopted Plaintiffs' false narrative. That judicial oversight is exactly the type of "mistake" remediable under Rule 60(b)(1), as clarified in *Kemp v. United States*, 596 U.S. 528, 533–34 (2022) (judicial errors of law or fact fall within Rule

60(b)(1)). It also constitutes "fraud on the court" under Rule 60(d)(3), because Plaintiffs' counsel knowingly submitted false pleadings and affidavits to obtain certification and summary judgment. See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245–46 (1944) (relief warranted where judgment rests on fraudulent misrepresentations).

A reasonable jury, faced with payroll records showing no overtime or spread-of-hours for most class members, would have found these claims false. The Court's failure to grapple with that evidence not only deprived Defendant of a jury trial under Rule 56, but also allowed false pleadings to dictate certification and judgment. This error goes to the heart of the case and demands vacatur under Rule 60(b)(1), (3), and (d)(3).

### F. POS System Tampering (Dkts. 112-11, 112-12; Ex. L, Last Check Close)

The Court ignored undisputed evidence that Plaintiff Martinenko unlawfully accessed the POS system after her termination, compromising the very time records upon which Plaintiffs' damages were calculated. Payroll and POS records confirm that Martinenko's last paycheck was closed on December 28, 2021 at 10:54 p.m., and she clocked out for the final time at 11:31 p.m. that night (Ex. L, Check Close). Despite this, audit logs show she unlawfully entered the POS system at least six times between January 1 and January 8, 2022 using Level 3 managerial credentials (Dkts. 112-11, 112-12).

The problem with record reliability was not limited to post-termination access. POS "Check Close" records showed that during her employment, Martinenko routinely clocked in and remained on the premises long after all customer transactions had ended, thereby inflating her recorded hours. Defendant Volper explained, with December 2021 as an example, that Martinenko overstated more than twenty hours of work in that month alone (Dkt. 119-5). He

further testified that if this pattern were extrapolated across her employment, her overtime and spread-of-hours damages would be "completely wiped out." Id. Indeed, the data show **34 separate days** when Martinenko clocked in and out but the POS reflected no guest service or payment activity.

Rather than confront this evidence, the Report and Recommendation dismissed it wholesale, stating that the "closed check document" (Dkt. 119-7) had not been produced in discovery, was "hearsay," and therefore inadmissible. Dkt. 132 at 50. This was clear error. Rule 56(c)(3) expressly provides that a court "need consider only the cited materials, but it may consider other materials in the record." The Second Circuit has emphasized that courts may not ignore probative record evidence, even if not formally introduced, when it goes directly to the heart of a damages model. *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001).

More critically, the Court itself acknowledged that if this analysis were extended across her employment, Martinenko's claimed overtime and spread-of-hours damages could be "completely wiped out." Dkt. 119-5. By disregarding such probative evidence on procedural grounds instead of assessing its impact on the reliability of Plaintiffs' damages, the Court substituted technicalities for substance and denied Defendant the jury's right to weigh credibility.

The implications are fatal to summary judgment. Plaintiffs' damages model rests on the same POS records Martinenko unlawfully accessed and could manipulate. Her post-termination entries and Level 3 access created a genuine dispute of material fact as to the integrity of the data. A reasonable jury could conclude that the records were unreliable and that damages were overstated or fabricated. Under *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), such disputes must be resolved by a factfinder, not by summary judgment.

The Court's refusal to consider this evidence constitutes: **Rule 60(b)(1):** judicial mistake of law and fact (see *Kemp v. United States*, 596 U.S. 528, 533–34 (2022)); **Rule 60(b)(2):** newly discovered evidence regarding wage notices and POS audit logs; **Rule 60(b)(3):** misrepresentation by Plaintiffs in denying tampering; and **Rule 60(b)(6):** extraordinary circumstances undermining the fairness of the proceeding.

Because Plaintiffs' damages depended on records shown to be inflated, incomplete, and compromised, their reliability was squarely at issue. By adopting Plaintiffs' damages calculations wholesale and ignoring the audit logs, the Court committed clear error under Rule 56 and allowed judgment to stand on a tainted record.

### G. Adequacy, Typicality, and Numerosity Findings Were Legally and Factually Erroneous

In certifying the class, the Court found: "Plaintiff's claims are typical of those of the class members, and she will fairly and adequately represent the interests of the class." — Dkt. 87, p. 10. "Martinenko and Huk… have fairly and adequately protected the interests of the class… Neither has any apparent conflict with the class… both are prepared to act as class representative and to do so vigorously." — Dkt. 87, p. 17.

However, these findings were based entirely on declarations submitted by Plaintiffs and their counsel—specifically Dkt. 22 (First Martinenko Decl.), Dkt. 73 (Second Martinenko Decl.), and Dkt. 74 (Huk Decl.). These claims under the complaint, which formed the evidentiary foundation for class certification, have now been proven materially false or misleading by post-certification discovery, including: relying entirely on their sworn declarations (Dkts. 22, 73, 74).

Post-certification discovery has proven those declarations materially false, including: Martinenko admitted she never read the Complaint before filing (Dkt. 119-11, p. 29). Admitted failure to report tip income to the IRS (pp. 44–46). False denial of post-termination system access, disproven by audit logs (Dkts. 112-11, 112-12). Violations of NY COVID-19 Executive Orders and misleading sworn testimony (pp. 76–79). Concealed conflicts with absent class members (Dkt. 73 ¶18). These facts eliminate any basis for Rule 23(a)(3) typicality or Rule 23(a)(4) adequacy. Martinenko is legally disqualified as a class representative, and certification obtained through false declarations and concealment must be vacated under Rule 60(b)(2), 60(b)(3), Rule 60(d)(3), and Rule 23(c)(1)(C).

Further In the Report and Recommendation, the Court acknowledged: "By the Court's count, the class now stands at 32 members." (Dkt. 132, p. 20).

Under the Final Judgment (Dkt. 153), these same 32 members were the only individuals awarded relief, with the distribution detailed in Dkt. 145-2, p. 5.

In Dkt. 132 the court noted: "Plaintiffs have the burden of showing numerosity, but they need not prove the exact class size or identity of class members to satisfy the numerosity requirement. Robidoux, 987 F.2d at 935. When there are less than 40 class members, relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members. Id. at 936. Taking these factors into consideration, the Court concludes that numerosity is satisfied." — Dkt. 132, p. 11.

The Court recognized that "[r]elevant considerations as to the practicability of joinder include: (1) the judicial economy that will arise from avoiding multiple actions; (2) the geographic dispersion of members of the proposed class; (3) the financial resources of those members; (4) the ability of the members to file

individual suits; and (5) requests for prospective relief that may have an effect on future class members."
(Dkt. 87, p. 10) (citing Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993)); accord Balverde v. Lunella
Ristorante, Inc., No. 15-CV-5518, 2017 WL 1954934, at *5 (S.D.N.Y. May 10, 2017).

This finding cannot stand. By its own admission, the Court's numerosity ruling was based on a
sub-40 class size—squarely in the "gray area" where Rule 23 requires close scrutiny of the
Robidoux factors. Yet each of those factors was either factually unsupported, contradicted by the
undisputed record, or inflated through misrepresentation and omission by Plaintiffs' counsel.
When those factors are applied correctly, it becomes clear that joinder of 24–32 individuals was
entirely practicable and that numerosity was not met.

## 1. Geographic Dispersion Was Nonexistent

Under *Robidoux* and *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1255 (2d Cir. 2002), lack of
geographic dispersion weighs heavily **against** numerosity. Here: All remaining 32 members
resided in the **New York City metropolitan area**, within commuting distance of the courthouse.
Both Rule 23 representatives and nearly all absent members worked at the **same single-location
restaurant** in Manhattan. No member lived outside New York State; most lived within a few
miles of each other.

While the R&R admitted "most of the class members appear to be in the New York metropolitan
area" (Dkt. 132, p. 11), this fact was improperly treated as neutral. In reality, the absence of
dispersion meant joinder was practical and efficient, directly undercutting numerosity.

## 2. Financial Resources Were Misrepresented

The Court's numerosity finding was premised, in part, on a fundamental factual and legal error: reliance on NYC median household income to conclude that class members lacked resources for individual litigation. This is legally unsound under *Robidoux*, which requires assessing individual financial ability, not household statistics—particularly where the claims are individual wage claims, not household-based damages. The error is compounded by the Court's statement: "The W-2 issued by Defendants to Martinenko in 2021 showing that she made a total of $44,504 suggests otherwise"(Dkt. 121-6.) That amount falls well below the median household income in New York City.9" (Dkt. 132, p. 23). The Judge ignored her unreported cash tips: ~$12,800 (per Nino's testimony, Dkt. 119-11). When added, her 2021 total income rises to $57,304 for 1,071 hours and 38 minutes worked, yielding $53.45/hour—well above the NYC average hourly wage (~$36 in 2021). The U.S. Census Bureau's 2021 data shows the median *individual* income in NYC was $43,133. Furthermore, In the New York–Newark–Jersey City MSA (which includes NYC), the Bureau of Labor Statistics reported an average hourly wage of $36.18 in 2021. Another source, ZipRecruiter, estimates that the overall average hourly wage in NYC in 2021 was around $26.21.

Martinenko not only exceeded all of these benchmarks, but she also held a second job for at least two months in 2021 (Dkt. 119-11, p. 51–52)—income the Court never considered and plaintiff never exposed. Now her average personal income is even higher than $57,304. Moreover, her time records (Dkt. 116-10) show she took a 54-day international vacation to Georgia (July 31–Sept. 23, 2021), representing 38 lost working days. (At $415.25/day 57,304 ÷ 138 days worked), she forfeited approximately $15,779.50 ($415.25 x 38) in earnings—an amount wholly inconsistent with any claim of financial incapacity. An individual who can afford to forgo nearly $16,000 in potential wages is plainly able to finance an individual lawsuit. She could afford to

file an individual lawsuit. This misrepresentation directly distorted the financial resources factor

under *Robidoux*, removing a key basis for finding numerosity.

Moreover, the error becomes even more glaring when compared to Plaintiff Flores. Under Dkt.

132, p. 5, the Magistrate Judge under DiGiulio Declaration (Dkt. 115) referenced Dkt. 115-12,

documenting that Plaintiff Flores filed an individual action in New York Supreme Court. In point

10 of that declaration, it is noted that in 2020 Defendant increased Flores's hourly rate to $13.76.

Despite earning substantially less than the confirmed $53.45/hour average rate of class

representative Martinenko, Flores had both the resources and willingness to pursue his claims

individually in state court. This is not a theoretical possibility—it is concrete evidence that

joinder and individual actions were practical for members of this proposed class. If a

lower-earning class member could pursue litigation independently, higher-earning members such

as Martinenko, who also had additional undisclosed income—certainly could have done the

same. Indeed, under Flores's state court settlement, Defendant Volper paid roughly $10,000 in

attorney's fees, further confirming that individual claims were financially viable. The Court's

reliance on a generalized "financial hardship" narrative—crafted by Plaintiffs' counsel and

unsupported by the actual income data—was materially misleading and directly undermines the

numerosity finding in Dkt. 132, pp. 11–12.

### 3. Fabricated "Fear of Retaliation"

Numerosity is presumed satisfied if the class has at least 40 members, see Robidoux v. Celani,

987 F.2d 931, 936 (2d. Cir. 1993), while prospective classes of twenty to forty members fall in a

"gray area." 1 Newberg on Class Actions § 3:12 (5th ed. 2011).) Plaintiffs have the burden of

showing numerosity, but they need not prove the "exact class size or identity of class members to

satisfy the numerosity requirement." Robidoux, 987 F.2d at 935. When there are less than 40 class members, "[r]elevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." Id. at 936. Taking these factors into consideration, the Court concludes that numerosity is satisfied.

In Dkt. 141, the Court granted summary judgment to Defendants on certain claims but allowed Plaintiffs to seek dismissal of all remaining NYLL § 195 wage notice and statement claims. Plaintiffs then moved under Fed. R. Civ. P. 41(a)(2) and Rule 23(e) to dismiss those claims without prejudice (Dkt. 146), explicitly requesting that class members be free to pursue them individually in New York State court.

Rather than analyzing these factors as *Robidoux* requires, the Court preserved certification by invoking a "specter of retaliation." It reasoned that because all current employees opted out using similar forms and envelopes, "the possibility exists that Defendants improperly urged employees to opt out." Dkt. 132 at 23–24; Dkt. 141 at 8.

This finding was unsupported by evidence. Plaintiffs did not present a single affidavit or declaration from any opt-out alleging coercion. To the contrary, notarized affidavits confirmed voluntary withdrawal, including Alexander Rynkovsky's sworn statement disclaiming any improper influence. By disregarding this sworn evidence and speculating about formatting similarities, the Court effectively nullified valid opt-outs and inflated numerosity on the basis of conjecture.

95

The reliance on a fabricated retaliation theory improperly discounted sworn testimony, bolstered adequacy and numerosity without factual support, and violated Rule 23(c)(2)(B). That Rule guarantees absent class members the right to opt out, and their decisions cannot be discarded on speculation. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (summary judgment cannot rest on conjecture).

The Court's own subsequent rulings (Dkts. 146–147) further undercut its retaliation rationale. In granting dismissal of the § 195 claims without prejudice, the Court explicitly authorized all 32 class members to pursue those claims individually in New York State court. Dkt. 147. That order proves beyond doubt that class members had the capacity to sue individually, eliminating any basis for numerosity and contradicting the earlier reliance on "fear of retaliation."

Numerosity was never satisfied. Plaintiffs failed every *Robidoux* factor, and the Court relied on speculation about retaliation instead of sworn evidence.

**b. This Action Now Fragments Into 31 Potential State Court Suits**

As a direct result of the dismissal, the consolidated class action no longer resolves all claims in one forum. Instead, it forces each member who wishes to pursue their § 195 claims to initiate a separate state court proceeding. This is the precise outcome that the judicial economy factor warns against.

Previously, the Court claimed that keeping the case as a single class action avoided the duplication of evidence, procedural overlap, and inconsistent rulings that might occur if individual suits were filed. Now, the dismissal orders have guaranteed:

Duplication of effort: Evidence, testimony, and wage records that were already gathered in federal discovery must be reintroduced in multiple state proceedings.

96

Increased litigation costs: Class members must now retain counsel, pay filing fees, and bear the expense of starting entirely new actions.

Risk of inconsistent rulings: Different state judges may rule inconsistently on identical wage notice and statement claims that were once part of a unified federal case.

**c. Joinder Was Always Practical — the Court's Own Orders Prove It**

The Court's decision to offload § 195 claims to 31 potential state cases shows that joinder of individual actions was always feasible. If the Court believed that each member could realistically pursue their own § 195 claims in state court post-judgment, then there was no legitimate barrier to joinder for the other claims at the certification stage.

This is especially true because:

- All 31 members live in the New York metropolitan area (Dkt. 132, p. 11).
- At least one lower-earning class member (Flores) successfully pursued individual claims in New York Supreme Court (Dkt. 115-12, ¶10), proving such actions were viable.
- The Court acknowledged that the class size fell below the typical 40-member threshold, placing it in the "gray area" where the *Robidoux* factors are critical.

**d. Judicial Economy Factor Is No Longer Met**

The Court in Dkt. 132 found numerosity partly on the ground that a single action would avoid multiple suits.  But the post-certification dismissal of § 195 claims without prejudice under Dkts. 141, 145, and 146 has destroyed the very efficiency that was used to justify numerosity in Dkt. 132. The class is now splintered into 31 potential state actions — the opposite of "avoiding a multiplicity of actions."

Accordingly, the judicial economy factor can no longer support numerosity, and its original application was based on a misrepresentation of how claims would be resolved. The certification order should be vacated under Fed. R. Civ. P. 60(b)(3) and 60(d)(3) because Plaintiffs' counsel's representations, and the Court's reliance on them, have proven materially false and inconsistent with subsequent procedural developments.

**5. Prospective Injunctive Relief Was Inapplicable**

Prospective injunctive relief under Robidoux applies when **future members** will be affected. This case involves **past wage-and-hour claims only**. Plaintiffs' counsel permitted the Court to weigh a factor that had **no legal or factual basis**, further padding the numerosity analysis.

H. Newly Discovered Wage Notices for Haley and Tela Undermine Summary Judgment and Rule 23 Findings

The Court's R&R concluded that "Defendants could not produce a single compliant notice" and deemed Defendant's deposition testimony too "vague" to create a triable issue. (Dkt. 132, pp. 40–41). Relying on that conclusion, the Court entered **summary judgment** on Plaintiffs' NYLL minimum wage claim based on unlawful use of the tip credit, holding that Defendants categorically failed to provide the required written notices.

Contrary to the Court's characterization, Defendant's deposition testimony was not "vague" or unsupported. In sworn testimony at pages 115–119, Defendant confirmed that he personally completed the 195 wage notice forms, distributed them to employees, and obtained signatures. He specifically recalled giving one to "Hailey, the bartender," and testified that copies were kept at the restaurant. (Volper Dep. 115:20–119:5).

Newly located signed wage notices for Haley and Tela (Exhibits, D & E) now corroborate this testimony. The Court's finding that "Defendants could not produce a single compliant notice" (Dkt. 132 at 40) was therefore factually mistaken and materially prejudicial. This new evidence warrants relief under Rule 60(b)(2), and Plaintiffs' contrary representations constitute misrepresentation under Rule 60(b)(3) and fraud on the court under Rule 60(d)(3).

The effect is material:

1. **Haley** – Having signed a compliant § 195 wage notice, her claim for statutory wage-notice damages must be removed. She had no overtime damages and only $30 in spread-of-hours damages. The class damages table (Dkt. 116-1) overstated her liability by treating her as if she lacked notice and incurred uniform statutory damages.

2. **Tela** – Tela likewise signed a compliant § 195 wage notice. Moreover, Tela never incurred **any damages** under the NYLL, whether for wage notice, overtime, or spread-of-hours. Yet she was nevertheless included in the classwide damages calculation in Dkt. 116-1.

Both Haley and Tela were **absent class members certified under Rule 23**, and their inclusion as "uniformly harmed" members was a critical component of the Court's predominance and damages findings. The newly discovered records show that at least some absent class members were not injured at all, and others incurred only nominal damages. This destroys the premise that "there is no genuine dispute" regarding uniform notice violations, undermines the typicality and adequacy findings under Rule 23(a), and materially affects the predominance analysis under Rule 23(b)(3). The Supreme Court has repeatedly disapproved classes that include uninjured members" See: **Tyson Foods, Inc. v. Bouaphakeo**, 577 U.S. 442 (2016) – The Court warned

against classes that include uninjured members; damages must reflect only those actually harmed. **Denney v. Deutsche Bank AG**, 443 F.3d 253, 264 (2d Cir. 2006) – "No class may be certified that contains members lacking Article III standing." Courts in this District have rejected attempts to extend liability where some employees received proper notices or suffered no injury. **Copantitla v. Fiskardo Estiatorio, Inc.**, 788 F. Supp. 2d 253, 289–90 (S.D.N.Y. 2011) – Reinforces strict construction of NYLL notice requirements, but also highlights that employees must actually lack notice to recover.

I. Misapplication of Law – Reliance on Inapposite Authority to Avoid Rule 23(e) and 23(h) Notice Requirements

In approving the dismissal of certified NYLL § 195 claims without Rule 23(e) notice, the Court relied on nine cases, none of which involved post-certification dismissal of certified class claims where absent members' rights were extinguished:

1. **Katz v. Donna Karan Co., LLC**, 872 F.3d 114 (2d Cir. 2017) – addressed Article III standing in a non-class context; did not involve Rule 23(e) notice or post-certification dismissal.

2. **Gomez v. City of New York**, 805 F.3d 419 (2d Cir. 2015) – concerned standing to appeal in an individual action; no application to absent class member rights.

3. **Magoffin v. D.C. United**, 540 F. Supp. 2d 26 (D.D.C. 2008) – a pre-certification settlement; Rule 23(e) notice was not triggered because no class had been certified.

4. **Perry v. Schumacher Grp. of La., Inc.**, 891 F.3d 954 (11th Cir. 2018) – involved standing after claims were mooted; no certified class was affected.

5. **Rossi v. Procter & Gamble Co.**, 2020 WL 3496319 (S.D.N.Y. June 29, 2020) – a pre-certification dismissal where Rule 23(e) was not implicated.

6. **Carter v. HealthPort Techs., LLC**, 822 F.3d 47 (2d Cir. 2016) – addressed mootness and numerosity; did not address dismissal of certified claims without notice.

7. **Hecht v. United Collection Bureau, Inc.**, 691 F.3d 218 (2d Cir. 2012) – concerned individual mootness; no absent class member rights at stake.

8. **Koehler v. Green**, 358 F. App'x 196 (2d Cir. 2009) – an unpublished summary order dealing with jurisdictional mootness; no Rule 23(e) analysis.

9. **Altman v. Liberty Equities Corp.**, 54 F.R.D. 620 (S.D.N.Y. 1972) – decided before the 2003 amendments clarifying that Rule 23(e) applies to all certified class dismissals, not just settlements; factually and legally outdated.

None of these cases justified bypassing the Federal Rules' requirement that "the claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval," Fed. R. Civ. P. 23(e), and that notice must be given in a "reasonable manner to all class members who would be bound." Fed. R. Civ. P. 23(e)(1).

By importing standards from cases that either predate the current Rule 23(e) framework or involve no certified class at all, the Court committed clear legal error. The governing authority — as confirmed by *Waetzig* and *Lowery* — makes plain that this dismissal was a "final proceeding" subject to correction when notice is denied.

## J. Procedural Due Process Violations

At the heart of this Rule 60 motion is a denial of procedural due process. Certified class claims were dismissed, fees were awarded, and final judgment was entered—all without the notice and safeguards the Federal Rules and the Constitution demand. These errors infected not just one ruling, but the entire Final Judgment.

## 1. Rule 23(e) Violation – Defective Dismissal of NYLL § 195 Claims Without Notice

On September 30, 2024, Plaintiffs and defense counsel filed a stipulation dismissing the remaining NYLL § 195 wage notice and statement claims "without prejudice." (Dkt. 141). The notice to class members (Dkt. 145-1) consisted of a single sentence, provided **after** dismissal had already been granted, with no explanation, no fairness hearing, and no opportunity to object. This procedure violated Rule 23(e), which requires that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval" and that notice must be given in a "reasonable manner to all class members who would be bound." Fed. R. Civ. P. 23(e)(1)–(2).

The Supreme Court has long recognized that due process requires notice and an opportunity to be heard before rights are extinguished. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176–77 (1974). Post-certification dismissal of claims without contemporaneous notice also violates *In re Nissan Motor Corp.*, 552 F.2d 1088, 1103–04 (5th Cir. 1977).

The Court itself acknowledged this requirement in its November 13, 2024 Order: "Under Rule 23(e), the claims of a certified class may be voluntarily dismissed 'only with the court's approval.'" (Dkt. 153 at 2). Yet, despite that recognition, the Court permitted dismissal of certified claims without compliance with Rule 23(e). The Court further noted that the Second Circuit has not resolved "whether the proper vehicle … is Rule 15 or Rule 41(a)" (Dkt. 153 at 2), yet proceeded under Rule 41(a), a rule that by its plain text applies only to dismissal of "actions," not individual claims. See *Lowery v. AmGuard Ins. Co.*, 84 F.4th 1227, 1234 (11th Cir. 2023).

This ruling directly conflicts with *Waetzig v. Halliburton Energy Servs., Inc.*, 601 U.S. ___ (2024), which confirmed that dismissals without prejudice are final proceedings subject to

post-judgment review. By permitting dismissal of only certain certified claims without Rule 15

amendment and without contemporaneous Rule 23(e) notice, the Court deprived absent members

of their due process rights.

## 2. Rule 23(h) Violation – No Notice of Attorneys' Fee Petition

Rule 23(h) requires that motions for attorneys' fees "must be served on all parties and, for

motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P.

23(h)(1). This safeguard ensures absent members—whose recoveries are diminished by fee

awards—can object. Courts strictly enforce this requirement. *In re Mercury Interactive Corp.*

*Sec. Litig.*, 618 F.3d 988, 993–95 (9th Cir. 2010); *Redman v. RadioShack Corp.*, 768 F.3d 622,

637 (7th Cir. 2014).

Here, absent class members received **no notice** of class counsel's $223,458.28 fee motion (Dkts.

152, 166). The absence of Rule 23(h) notice deprived them of their right to object to billing

entries that included time for (i) dismissed claims, (ii) attorney-initiated solicitation of opt-ins,

and (iii) improper coordination with defense counsel (see Section III.E, supra). The fee award is

therefore void for want of due process under Rule 60(b)(4).

## 3. Due Process Requires Vacatur Under Rule 60(b)(4)

The Constitution requires that parties receive notice and an opportunity to be heard before their

rights are adjudicated. *Mullane*, 339 U.S. at 314. By (i) dismissing certified claims without

contemporaneous Rule 23(e) notice and (ii) awarding attorneys' fees without Rule 23(h) notice,

the Court deprived absent members of those fundamental protections. This defect is not technical

but constitutional: judgments entered without due process are void. *United Student Aid Funds,*

**103**

*Inc. v. Espinosa*, 559 U.S. 260, 272 (2010). Accordingly, the Final Judgment (Dkt. 153) must be vacated under Rule 60(b)(4).

## K. Judicial Errors in Applying Rule 41 and Rule 15

### 1. Misapplication of Rule 41(a)(2)

In its Final Judgment Order (Dkt. 153), the Court granted Plaintiffs' request to dismiss the NYLL § 195 wage notice and statement claims "without prejudice" under Rule 41(a)(2), reasoning that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Dkt. 153 at 2. The Court relied on cases such as *Seidman v. Chobani, LLC*, 2016 WL 1271066 (S.D.N.Y. Mar. 29, 2016), and *Thorpe v. City of New York*, 2022 WL 3112125 (S.D.N.Y. Aug. 4, 2022), to conclude that the Second Circuit has not definitively resolved whether the proper vehicle for dismissal is Rule 41 or Rule 15. It then applied the *Zagano* factors—developed for voluntary dismissal of entire actions—to permit Plaintiffs to excise certified claims. Dkt. 153 at 3–4.

This was a **fundamental legal error**. Rule 41 governs dismissal of an *action*, not selective withdrawal of claims within a certified class action. The Second Circuit has made this distinction clear: "Rule 41(a) does not speak of dismissing one claim in a suit; it speaks of dismissing an action." *Hester Indus., Inc. v. Tyson Foods, Inc.*, 160 F.3d 911, 916 (2d Cir. 1998). The Eleventh Circuit recently reaffirmed this principle: "Rule 41(a) only applies to entire actions, not individual claims." *Lowery v. AmGuard Ins. Co.*, 84 F.4th 1227, 1234 (11th Cir. 2023).

The Court's reliance on Rule 41 to dismiss certified claims ignored the controlling framework of Rule 23(e). Rule 23(e)(1) mandates that "the claims, issues, or defenses of a certified class may

be settled, voluntarily dismissed, or compromised only with the court's approval," and that the Court "must direct notice in a reasonable manner to all class members who would be bound." Fed. R. Civ. P. 23(e)(1). By allowing dismissal of certified claims through Rule 41, the Court denied absent class members the protections of Rule 23(e), including notice and an opportunity to object.

Further, none of the nine cases the Court cited in Dkt. 153 involved post-certification dismissal of claims that would strip absent members of statutory rights:

- *Magoffin* and *Rossi* involved pre-certification settlements, where Rule 23(e) did not apply.
- *Hecht* and *Gomez* addressed mootness of individual claims, not certified class claims.
- *Altman* relied on outdated pre-2003 Rule 23 authority, before amendments clarified that all certified class dismissals—whether by settlement or voluntary withdrawal—require notice and approval.

The Court's misapplication of Rule 41 to dismiss § 195 claims while maintaining certification denied absent members their Rule 23(e) due process protections. This is not a minor procedural error; it rendered the judgment void. As the Supreme Court has made clear, a judgment is void under Rule 60(b)(4) where the court acts in a manner inconsistent with due process of law. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010).

Here, absent class members received neither the protections of Rule 23(e) nor meaningful Rule 23(h) notice of attorneys' fees. By treating Rule 41 as sufficient to extinguish certified claims, the Court acted beyond its authority. The Final Judgment (Dkt. 153) is therefore void and must be vacated under Rule 60(b)(4).

## 2. Improper Reliance on Rule 15 Without Rule 23(e) Compliance

Alternatively, the Court reasoned that "although a motion to eliminate only certain claims may actually be a motion to amend the complaint (under Rule 15) rather than one for dismissal, there is no substantive difference between the two." (Dkt. 153 at 3, quoting *Seidman*). This conflation of Rule 41 and Rule 15 was erroneous.

Rule 15 permits amendment of pleadings to withdraw claims, but in the class action context, such amendments are governed by Rule 23(e). *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) ("The Rule 23(e) requirement of court approval applies to voluntary dismissals of class actions, even where the case has not been certified."). The Second Circuit reaffirmed in *Katz v. Donna Karan Co.*, 872 F.3d 114, 121 (2d Cir. 2017), that dismissal for lack of standing must be without prejudice but must comply with Rule 23(e).

Here, Rule 23(e) was not satisfied. The notice mailed to class members (Dkt. 145-1) was issued only **after** dismissal had been granted. It gave no explanation, no right to object, and no disclosure regarding attorneys' fees. This deprived absent members of their Rule 23(e)(1) right to notice "in a reasonable manner" and their Rule 23(e)(5) right to object. It also violated due process under *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), and *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974).

By relying on Rule 15 without Rule 23(e) safeguards, the Court stripped absent members of certified claims and simultaneously enabled class counsel to seek $223,458.28 in attorneys' fees on those dismissed claims (see Dkts. 152, 166). This procedure was unconstitutional, and the resulting judgment is void under Rule 60(b)(4).

**3. Combined Effect – A Void Judgment**

The Court's November 13, 2024 Order (Dkt. 153) expressly acknowledged the unresolved "vehicle" issue between Rule 41 and Rule 15, but improperly treated them as interchangeable. In fact, neither rule justified the dismissal: Rule 41 cannot dismiss claims, and Rule 15 required Rule 23(e) compliance that never occurred.

The combined effect is a judgment that (i) dismissed certified claims without proper procedural safeguards, (ii) denied absent members notice and an opportunity to object, and (iii) permitted counsel to extract fees on dismissed claims. This is a textbook due process violation. Under *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010), a judgment entered without constitutionally required notice is void and must be vacated under Rule 60(b)(4).

# A-VI. ARTICLE III STANDING VIOLATIONS IN FINAL JUDGMENT

## 1. The Court's Own Orders Recognize Standing Defects

In its September 24, 2024 Opinion (Dkt. 141), the Court acknowledged that "every class member must have Article III standing in order to recover individual damages" (*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021)), and dismissed Plaintiff Huk's § 195 wage-notice claims for lack of standing. (Dkt. 141 at 26). The Court further admitted that standing for other unnamed members' § 195 claims was "indeterminate" and would require individualized proof. (Id. at 18–20).

Class Counsel reinforced this defect in their October 15, 2024 letter (Dkt. 145), conceding that "there may not be common proof in this case that will establish all Class Members' standing, or lack thereof." (Id. at 1). In their October 28, 2024 submission (Dkt. 149), counsel went further, acknowledging that "trial of these [§ 195] claims would require individualized evidence regarding standing." (Id. at 2). Yet, rather than move to decertify or withdraw the claims, counsel urged dismissal "without prejudice" under Rule 41(a)(2) or Rule 15, explicitly for the purpose of securing "immediate entry of an enforceable final judgment." (Id. at 3).

Finally, in its November 13, 2024 Final Judgment Order (Dkt. 153), the Court granted Plaintiffs' motion to dismiss all § 195 claims without prejudice, citing *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024) and *Katz v. Donna Karan Co.*, 872 F.3d 114 (2d Cir. 2017). At the same time, the Court denied Defendants' motion to decertify and entered final judgment awarding damages to the entire class on minimum wage, overtime, and spread-of-hours claims. (Dkt. 153 at 7–9).

## 2. Fraud on the Court – NYLL § 195 Class Claims Were Improperly Maintained, Then Strategically Abandoned Without Article III Standing

The Court's final judgment (Dkt. 153) confirms that Named Plaintiff Nino Martinenko's NYLL § 195 wage-notice and wage-statement claims were preserved after summary judgment (Dkt. 141), and the Class's claims under § 195 were only dismissed voluntarily, without prejudice, on Plaintiffs' motion filed after judgment. See Dkt. 153 at 2–3.

Despite prevailing on minimum wage, overtime, and spread-of-hours claims, Plaintiffs never proved concrete harm or Article III standing for the absent class members' § 195 claims—an essential constitutional requirement under TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021),

and reaffirmed by the Second Circuit in Guthrie v. Rainbow Fencing, Inc., 113 F.4th 300 (2d Cir. 2024).

### 3. Plaintiffs Lacked Article III Standing for Class-Wide § 195 Claims

As the party invoking federal jurisdiction, Plaintiffs bore the burden of establishing standing under Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992). Yet they failed to offer individualized evidence that any absent class member suffered concrete harm from the lack of a wage notice or wage statement—particularly where:

Front-of-house employees were earning around $53 per hour, based on time records and tip-adjusted earnings; Employees performed their payroll calculations weekly, as shown Martinenko and Huk depositions;(Dkts. 119-10, 119-11) 15 of 30 collective/class members had zero overtime damages. 11 of 30 had no spread-of-hours damages. (*See Dkt. 116-1*), making § 195 statutory penalties their only damages—but no proof was offered of any confusion or miscalculation.

This directly violates the standard articulated in Guthrie, which held that plaintiffs cannot assume informational or monetary harm from § 195 violations "without analysis" or rely on "speculation and conjecture." 113 F.4th at 309 (quoting Quieju v. La Jugueria Inc., No. 23-cv-00264, 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25, 2023)).

Moreover, TransUnion held that all claims (not just certain ones) must satisfy Article III's "concrete harm" requirement in federal court. See TransUnion, 141 S. Ct. at 2204 ("Every class member must have Article III standing... even in a Rule 23(b)(3) class action").

**109**

Yet here, Plaintiffs sought and obtained $5,000 in two statutory penalties ($10,000) for

Martinenko under NYLL § 195—even though no individualized harm or reliance was shown.

See Dkt. 153 at 1–2 (noting § 195 claims remained as to Martinenko only after Huk's were

dismissed for lack of standing). This violated the very precedent cited by the Court itself

(Guthrie) and rendered the award unconstitutional as applied.

### 4. Plaintiffs Withdrew the § 195 Claims to Avoid Trial and Scrutiny of Fraud

The record shows that Plaintiffs voluntarily dismissed the remaining § 195 claims after the Court

required individualized standing and flagged Guthrie's holding. (Dkt. 153 at 4–6.) Their stated

reason: to avoid a "time-consuming" trial and proceed in state court, where no Article III

standing is required.

But internal communications (see Sept. 27–30 emails and texts, detailed in Section IV) show this

dismissal was coordinated with Defense counsel Greenbaum, who concealed Defendant's

opposition and failed to inform the Court that the dismissal lacked client consent. See Exhibit B

(Sept. 30, 2024: Greenbaum to Volper: "Called their bluff, I said they would do this."; Volper:

"We don't agree and we submit our appeal").

This was a tactical maneuver to avoid a trial that would have exposed:

- False declarations about POS access and timekeeping systems;

- Fabricated claims of tip-credit confusion;

- Inadequate Rule 23(a)(4) representation by Martinenko.

In short, the § 195 claims were used to inflate the class and damages, and once challenged under Article III, quickly abandoned to preserve the final judgment and attorneys' fees—a maneuver made possible only through improper collusion with Defense counsel.

**5. The Court's Judgment Improperly Awarded Relief Based on § 195 Claims**

The final judgment entered on November 13, 2024 (Dkt. 153), incorporated penalties and awards based on Named Plaintiff Martinenko's § 195 claim—without ever finding that she suffered concrete, individualized informational or monetary harm as required by TransUnion and Guthrie. See Dkt. 153 at 1–2; see also Dkt. 145-2 (damages chart). Because these statutory awards were premised on violations that were not proven to cause concrete harm, they cannot stand under Supreme Court precedent.

**Procedural Irregularities and Fraud Relating to Final Judgment and Class Claims under NYLL § 195**

On November 14, 2024, the Court entered Final Judgment (Dkt. 153), awarding $5,000 in statutory damages to Plaintiff Nino Martinenko under NYLL § 195(1) and (3), while simultaneously dismissing the remaining class § 195 claims "without prejudice" through a stipulation secretly arranged between Plaintiffs' counsel and Defendant's then-counsel, Jonathan Greenbaum, without Defendant's informed consent or Rule 23(e) notice. Plaintiffs have now reversed course: on December 12, 2024, Opt-In Plaintiff Dagmara Huk filed a cross-appeal (Dkt. 165) solely challenging the Court's dismissal of her § 195 claims for lack of standing. This proves two critical facts: (1) Plaintiffs' counsel are selectively pursuing standing arguments based on individual strategy, not class interest; and (2) they have **never proven classwide injury, informational harm, or standing** for absent class members—nor could they, given the

**111**

undisputed evidence that front-of-house employees were making over $53/hour, self-calculated their payroll, and were not misled or confused by the alleged wage notice deficiencies. Their procedural manipulation—first abandoning § 195 claims, then selectively reviving them—constitutes **fraud on the court under Rule 60(d)(3)**, and warrants vacatur of the judgment, fees, and class certification.

# A-VII. The Court Lacked Supplemental Jurisdiction Under 28 U.S.C. § 1367 After the FLSA Claim Collapsed

This Court's jurisdiction was expressly premised on the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., under 28 U.S.C. § 1331. (Compl.    4, Dkt. 1; Joint Status Report, Dkt. 56 at 2). Plaintiffs did not invoke diversity jurisdiction under 28 U.S.C. § 1332, nor did they allege jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). The only asserted basis for adjudicating the New York Labor Law ("NYLL") claims was supplemental jurisdiction under 28 U.S.C. § 1367(a).

Section 1367(c)(3) provides that a federal court "may decline to exercise supplemental jurisdiction over a claim … if the district court has dismissed all claims over which it has original jurisdiction." Here, the FLSA claim—the sole federal claim—failed once the evidentiary record was developed. Plaintiffs' own time records (Dkt. 116-9), sworn testimony (Martinenko Dep., Dkt. 119-11; Huk Dep., Dkt. 119-10), and Defendants' payroll summaries (Dkt. 116-1) showed that no Plaintiff or class member regularly worked more than forty hours per week. At most, alleged overtime damages were trivial, sporadic, and non-actionable under controlling

112

precedent. Thus, the FLSA claim failed as a matter of law, extinguishing the only federal jurisdictional hook.

Despite this, the Court proceeded to enter class certification orders (Dkts. 70, 87, 92, 132), Partial summary judgment (Dkt. 141), and ultimately Final Judgment (Dkt. 153–54) **exclusively on NYLL damages** — including wage notice and statement penalties, spread-of-hours pay, and liquidated damages under state law. The Final Judgment contained no FLSA award. This result was not inadvertent: it mirrored Plaintiffs' own proposed judgment (Dkt. 145-2), which the Court adopted, and which itemized only NYLL damages (Dkt. 153).

Plaintiffs themselves later acknowledged this jurisdictional defect. They moved under Rule 59(e) to amend the Final Judgment, attempting to expand or clarify its scope. The Court rejected that request in a November 26, 2024 Order (Dkt. 159), holding that the Final Judgment was already final, closed the action, and did not allow repleading or amendment Dkt. 159 - Court Order Denying …

That ruling is dispositive: it confirms the Final Judgment awarded only NYLL damages, and Plaintiffs' belated effort to alter it was procedurally and jurisdictionally barred.

Once the FLSA claim fell away, supplemental jurisdiction under § 1367 could not sustain the Court's authority. See *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). See also *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308–09 (2d Cir. 2024) (Article III standing requires a cognizable federal injury; supplemental jurisdiction cannot preserve state claims when the federal foundation collapses). Because the Final Judgment was entered solely on NYLL claims, subject-matter jurisdiction was lacking, and the judgment is void under Fed. R. Civ. P. 60(b)(4).

# A-VIII. Conclusion & Relief Requested

This case has been irreparably tainted by fraud, misconduct, collusion, due process violations, and judicial error. Relief under Federal Rule of Civil Procedure 60 is not only warranted but essential to restore the integrity of these proceedings and protect the rights of absent class members, the Defendant, and the Court itself.

**1. Fraud by Class Representatives (Rule 60(b)(2), (3), and (6))**

 Plaintiff Nino Martinenko and opt-in Plaintiff Dagmara Huk submitted false declarations and misleading affidavits that directly undermined numerosity, typicality, and adequacy under Rule 23(a). Martinenko admitted she had not read the Complaint before filing (Dkt. 119-11, p. 29), falsely claimed to have worked more than 40 hours per week (Dkt. 22 ¶3), and denied post-termination POS access despite audit logs proving otherwise (Dkts. 112-11, 112-12). Huk admitted she was solicited by counsel ("I got contacted by my lawyer," Dkt. 119-10, p. 21) and concealed material tip income. These misrepresentations provided the factual foundation for certification and summary judgment, and their exposure post-judgment is newly discovered evidence, misrepresentation, and fraud.

**2. Fraud and Misconduct by Class Counsel (Rule 60(d)(3), 60(b)(3), and 60(b)(6))**

 Joseph & Kirschenbaum LLP deliberately filed unverified claims, submitted false declarations, engaged in unauthorized solicitation and re-solicitation, concealed disqualifying evidence, recycled defective affidavits, and submitted a fraudulent fee petition. They misled the Court about authorized notice procedures, falsely denied phone solicitations, and even billed for calls with individuals who never joined the case (Dkt. 152-1). This pattern of deception violated Rule

**114**

11(b), Rule 23(g), Rule 23(h), and NYRPC 3.3, 4.1, 7.3, and 8.4, amounting to fraud on the court.

### 3. Collusion by Defense Counsel Jonathan Greenbaum (Rule 60(d)(3))

Defense counsel Greenbaum suppressed Defendant's repeated instructions to expose fraud, misrepresentation, and cybercrime evidence. He refused to present critical facts, minimized unlawful conduct as merely "improper," and colluded with Plaintiffs' counsel to engineer dismissal of the § 195 claims without Defendant's consent (see Exh. G–H; Dkt. 152-1). Billing records and contemporaneous texts confirm off-the-record coordination, settlement overtures never disclosed to the Court, and a stipulation of dismissal falsely presented as joint. This betrayal of fiduciary duty and concealment of material facts constitutes fraud on the court.

### 4. Procedural Due Process Violations (Rule 60(b)(4))

The judgment is void because absent class members were denied notice and opportunity to be heard: Rule 23(e) was violated when the NYLL § 195 claims were dismissed without a fairness hearing or notice to the class. Rule 23(h) was violated when no notice of the $223,458.28 fee petition was provided to absent members, depriving them of their right to object. Both defects rendered the proceedings constitutionally inadequate and the final judgment void.

### 5. Judicial Errors Compounding Prejudice (Rule 60(b)(6))

Even independent of fraud, the judgment must be vacated because of judicial error: The Court erroneously expanded notice authorization to "other means" (Dkt. 86), contrary to the conditional certification order (Dkt. 30). False and misleading claims under original complaint. Sworn opt-out affidavits from at least nine employees (Dkt. 84-2, 100-1) were disregarded despite Plaintiffs' counsel's admission she had reviewed them (Dkt. 94 at 24). Ignoring her

Unlawful POS system multiple entries after her termination. (Dkt. 112-11, 112-12). Plaintiff

Martinenko's sworn admission of unreported tip income (Dkt. 119-11, pp. 40–45) was ignored.

The Court never analyzed adequacy or typicality under Rule 23(a)(3)–(4), despite overwhelming

evidence of dishonesty and conflicts of interest. These cumulative errors deprived Defendant of a

fair adjudication and constitute extraordinary circumstances warranting relief under Rule

60(b)(6).

This fraud did not merely disadvantage the Defendant—it misled three federal judges of this

Court. Magistrate Judge Lehrburger was induced to deny sanctions and expand notice procedures

based on false assurances. Judge Liman was misled into granting conditional and class

certification on fabricated declarations. And Judge Rochon was misled into entering summary

judgment, awarding fees, and endorsing stipulations procured through collusion. Each ruling was

infected by the same foundation of deceit. Fraud on the court is never harmless, but here it

corrupted three judicial officers in succession, compounding the prejudice and undermining the

integrity of the federal judiciary itself. Rule 60 relief is therefore not optional; it is imperative.

**Requested Relief**

For the foregoing reasons, Defendant respectfully requests that this Court: Vacate class

certification and summary judgment pursuant to Rule 60(b)(2), (3), (4), (6), and 60(d)(3). Vacate

the attorney fee order (Dkt. 166) and deny Plaintiffs' fee petition under Rule 23(h), Rule 11, and

Rule 60. Strike Plaintiffs' false declarations and complaint (Dkts. 1, 22, 29, 64, 73, 74, 122, 123,

115-10, 116) as procured by fraud. Disqualify Joseph & Kirschenbaum LLP as class counsel

under Rule 23(g) and impose sanctions under Rule 11, 28 U.S.C. § 1927, and the Court's

inherent authority. Order corrective notice to absent class members advising them of the vacatur,

the misconduct uncovered, and their rights going forward. Restore this case for trial on the merits, ensuring new proceedings free of fraud, collusion, and ethical violations; and Grant such other and further relief as the Court deems just and proper.

# EXHIBIT B

**2:33**

 

**Takmara** ›

Sep 26, 2021 at 7:32 AM

Hi Nikolay, I spoke.to nino and I do not agree for bar having 1 % , it's just not fair because bar doesn't bring enough money to the pool and he is not willing to take tables...

So I dont understand why bar would get same money and not do fair amount of work



I guest Nino don't explain in details why and the changes

But if that's how u want for things to be then I can't be a part of your team any more

I'm sorry

Ok

Text Message • RCS 

# EXHIBIT C

Check number: 11205  |  Amount: $931.95

Check number: 11456  |  Amount: $662.41

continued on the next page

Page 17 of 28

Check number: 11473  |  Amount: $714.43

Check number: 11448  |  Amount: $904.55

Check number: 11422  |  Amount: $1,071.68

Check number: 11492  |  Amount: $514.04

Check number: 11867  |  Amount: $231.28

Check number: 10483  |  Amount: $1,153.43

Check number: 10442  |  Amount: $937.00

Check number: 10466  |  Amount: $560.42

Check number: 10372  |  Amount: $1,070.23







Scanned with CamScanner

# EXHIBIT D



**NEW YORK**
STATE OF
OPPORTUNITY.

**Notice and Acknowledgement of Pay Rate and Payday**
**Under Section 195.1 of the New York State Labor Law**
Notice for Hourly Rate Employees

**1. Employer Information**

Name: 212 Steakhouse INC.

Doing Business As (DBA) Name(s): 212 Steakhouse

FEIN (optional):

Physical Address: 316 East 53st
New York NY 10022

Mailing Address:

Phone: 212-858-0446

**2. Notice given:**
☐ At hiring
☐ Before a change in pay rate(s), allowances claimed or payday

**3. Employee's rate of pay:**
$ 10. per hour

**4. Allowances taken:**
☐ None
☐ Tips _____ per hour
☒ Meals ___3___ per meal
☐ Lodging _____
☐ Other _____

**5. Regular payday:** Friday

**6. Pay is:**
☒ Weekly
☐ Bi-weekly
☐ Other

**7. Overtime Pay Rate:**
$ 15. per hour (This must be at least 1½ times the worker's regular rate with few exceptions.)

**8. Employee Acknowledgement:**
On this day I have been notified of my pay rate, overtime rate (if eligible), allowances, and designated pay day on the date given below. I told my employer what my primary language is.

**Check one:**
☒ I have been given this pay notice in English because it is my primary language.

☐ My primary language is _____. I have been given this pay notice in English only, because the Department of Labor does not yet offer a pay notice form in my primary language.

Haley McKendree
Print Employee Name

Hela Melendez
Employee Signature

08/29/22
Date

Nikolas Volpen 8/28/22
Preparer's Name and Title

The employee must receive a signed copy of this form. The employer must keep the original for 6 years.

**Please note:** It is unlawful for an employee to be paid less than an employee of the opposite sex for equal work. Employers also may not prohibit employees from discussing wages with their co-workers.

LS 54 (01/17)

# EXHIBIT E



**NEW YORK**
STATE OF
OPPORTUNITY.

**Notice and Acknowledgement of Pay Rate and Payday**
**Under Section 195.1 of the New York State Labor Law**
Notice for Hourly Rate Employees

**1. Employer Information**

Name: 212 Steakhouse Inc

Doing Business As (DBA) Name(s):

212 STEAKHOUSE

FEIN (optional):

Physical Address:
316 EAST 53 ST
New York NY 10022
Mailing Address:
316 EAST 53 ST
New York NY 10022
Phone: 212-858-0646

**2. Notice given:**
☐ At hiring
☒ Before a change in pay rate(s), allowances claimed or payday

**3. Employee's rate of pay:**
$ 10.00 per hour

**4. Allowances taken:**
☐ None
☐ Tips _____ per hour
☒ Meals ___2___ per meal
☐ Lodging _____
☐ Other _____

**5. Regular payday:** _____

**6. Pay is:**
☒ Weekly
☐ Bi-weekly
☐ Other

**7. Overtime Pay Rate:**
$ 15.00 per hour (This must be at least 1½ times the worker's regular rate with few exceptions.)

**8. Employee Acknowledgement:**
On this day I have been notified of my pay rate, overtime rate (if eligible), allowances, and designated pay day on the date given below. I told my employer what my primary language is.

**Check one:**
☒ I have been given this pay notice in English because it is my primary language.

☐ My primary language is _____. I have been given this pay notice in English only, because the Department of Labor does not yet offer a pay notice form in my primary language.

Tela L. Wittig
Print Employee Name

_____
Employee Signature

08/28/22
Date

Nikuny Vorya    8/28/22
Preparer's Name and Title

**The employee must receive a signed copy of this form. The employer must keep the original for 6 years.**

**Please note:** It is unlawful for an employee to be paid less than an employee of the opposite sex for equal work. Employers also may not prohibit employees from discussing wages with their co-workers.

LS 54 (01/17)

# EXHIBIT F





# EXHIBIT I

7/17/25, 11:38 AM
Case 1:22-cv-00518-JLR-RWL Document 198-1 Filed 10/30/25 Page 131 of 170
Yahoo Mail - Fwd: 5.30.23 Produciton.pdf--212 additional time records

## Fwd: 5.30.23 Produciton.pdf--212 additional time records

From: Jonathan Greenbaum (jg@coburngreenbaum.com)

To: mail4opt@yahoo.com

Date: Thursday, June 1, 2023 at 09:23 AM PDT

see below—can you make heads or tails?

Jonathan W. Greenbaum
Coburn & Greenbaum, PLLC
District of Columbia/New York
202.744.5003
www.coburngreenbaum.com

Begin forwarded message:

**From:** Denise Schulman <denise@jk-llp.com>
**Subject: RE: 5.30.23 Produciton.pdf--212 additional time records**
**Date:** June 1, 2023 at 12:07:38 PM EDT
**To:** Jonathan Greenbaum <jg@coburngreenbaum.com>, Mike DiGiulio <mike@jk-llp.com>

Jonathan,

A few things appear to remain outstanding.

1. No time records have been produced for the following people who were identified at deposition and/or in our client's declaration: Lucia, Alina, and Cinzia Bonifirraro.
2. Defendants filed with the court an affidavit from Alexander Porras but haven't provided any time records for that name.
3. Please identify whose time records are at 212SH221-228.
4. Based on the dates of employment from the 216(b) mailing list, the following years of time records are missing:
   a. Angel Hernandez – 2020

    b. Hector Conoz – 2022

    c. Jose Raul Roque – 2022

    d. Juan Aguilar – 2020

    e. Radzivon Babniyazav – 2018

    f. Raul Romero – 2020

    g. Mariken Tan – 2016-2018

5. Note that while you have produced time records for 23 people in 2016, for there other years there are just 7 to 13 people (all numbers not including Nino and Dagmara). As such, it's not clear whether all time records have in fact been produced for the years 2017 and later.

6. Defendants have not produced any additional time sheets.

7. Defendants have not provided the sworn affidavit required under the Court's order.

8. We have not received the class list. We have held off on writing the Court about this since it sounded like we would be receiving the list early this week. However, if we don't have it by the end of the week we will have to ask the Court on Monday to set a deadline.

Thanks,
Denise

---

**From:** Jonathan Greenbaum <jg@coburngreenbaum.com>
**Sent:** Tuesday, May 30, 2023 2:59 PM
**To:** Denise Schulman <denise@jk-llp.com>; Mike DiGiulio <mike@jk-llp.com>
**Subject:** 5.30.23 Produciton.pdf--212 additional time records

Jonathan W. Greenbaum
Coburn & Greenbaum, PLLC
District of Columbia/New York
202.744.5003
https://link.edgepilot.com/s/3aa0d336/LiREyYhsBEypHgffZ5TvSg?u=http://www.coburngreenbaum.com/

# EXHIBIT J

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------x
**NINO MARTINENKO, on behalf of**
**herself and others similarly situated,**
**Plaintiff,**

**CASE NO. 22 CV 518**

**v.**

**212 STEAKHOUSE, INC., and**
**NIKOLAY VOLPER,**
**Defendants.**
--------------------------------------------------x

### DECLARATION OF ALEXANDER RYNKOVSKY

I, Alexander Rynkovsky, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I currently reside at 65 Oriental Blvd., Apt. 8B, Brooklyn, New York 11235.
2. I began working at 212 Steakhouse in October 2015 as a server, and my final day of employment was January 7, 2025.
3. Throughout my employment, I never had any negative interactions with Defendant Nikolay Volper.
4. On or about March 6, 2023, I submitted an affidavit affirming that I did not wish to participate in the lawsuit filed against 212 Steakhouse and Mr. Volper.
5. In or around June 2023, I and several coworkers received by mail a second notice inviting us to join the lawsuit.
6. We all made the personal decision to decline participation, consistent with the affidavits we had submitted earlier in March 2023.
7. Several of us met together at the restaurant to prepare a new affidavit template again stating our intent not to join the lawsuit and mailed them to the law firm Joseph & Kirschenbaum LLP.
8. Some of these affidavits were mailed from the restaurant address.
9. Defendant Nikolay Volper had no involvement in our decision-making process. He was not aware of the meeting, the template, or the affidavits we mailed from the resturant address.
10. At no time did Mr. Volper pressure or influence me or any coworker to opt out of the lawsuit.
11. Our decision to decline participation in the lawsuit was entirely voluntary and made without coercion.

I declare under penalty of perjury of the law of the United States that the foregoing is true and correct.

Dated: 7/26/2025
New York, New York

By: _Alex Rynlov_
Alexander Rynkovsky

# EXHIBIT K

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NINO MARTINENKO, on behalf of
herself and others similarly situated,
Plaintiff,

-against-.

212 STEAKHOUSE, INC., and
NIKOLAY VOLPER, Defendants.
------------------------------------------------------------X

**Case 1:22-cv-00518-JLR-RWL**

**DECLARATION OF Nadia Paputnikova**

I, Nadia Paputnikova, being duly sworn, deposes and swear to affirm the truth under
penalty of perjury:

1. I currently reside at 2750 E 12th street, Apt. 3E, Brooklyn, New York 11235.

2. I began my employment with Defendant, in 212 steakhouse as a bartender in or about
   July 2016.

3. Due to COVID shutdown, I ceased my employment with Defendant at 212 steakhouse in
   or about March 2020.

4. In or about May 2022, I received a notice from the Law Firm Joseph and Kirschenbaum
   LLP., I was curious to find out about this lawsuit.

5. I made a phone call to the phone number that was provided as a contact number in the
   notice and I spoke with male attorney. He explained to me that this wage related lawsuit.

6. He asked me if I wanted to join this lawsuit. But I **Declined**.

DATED:   07/27/2025

_____

Nadia Paputnikova

# EXHIBIT L

Control Panel

Report: **Transactions**

12/01/2021     to 12/31/2021 (31 days)     NEXT >>

| Order ID | Check | Date/Time | Pay Type | Card Type | Info | Action | Amount | Cash Tip | Card Tip | Server | Register | Order Opened | Order Closed | Order Voided |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 105:-17495 | 1 | 12-01-2021 17:47:12 | DISCOVER | | | Sale | $25.04 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-01-2021 17:45:22 | 12-01-2021 17:47:12 | - |
| 105:-17494 | 1 | 12-01-2021 18:28:14 | MASTERCARD | | | Sale | $87.10 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-01-2021 17:36:09 | 12-01-2021 18:28:14 | - |
| 105:-17493 | 1 | 12-01-2021 18:32:14 | VISA | | | Sale | $239.52 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-01-2021 17:22:00 | 12-01-2021 18:32:14 | - |
| 105:-17497 | 1 | 12-01-2021 20:00:09 | MASTERCARD | | | Sale | $383.24 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-01-2021 18:29:52 | 12-01-2021 20:00:09 | - |
| 105:-17496 | 1 | 12-01-2021 20:36:17 | VISA | | · | Sale | $172.01 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-01-2021 18:22:12 | 12-01-2021 20:36:17 | - |
| 1038-16548 | 1 | 12-01-2021 20:58:00 | DISCOVER | | | Sale | $168.75 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-01-2021 20:56:19 | 12-01-2021 20:58:00 | - |
| 1038-16547 | 1 | 12-01-2021 21:17:51 | AMEX | | | Sale | $300.49 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-01-2021 20:01:54 | 12-01-2021 21:17:51 | - |
| 105:-17498 | 1 | 12-01-2021 21:29:10 | AMEX | | | Sale | $330.98 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-01-2021 19:50:37 | 12-01-2021 21:29:10 | - |
| 105:-17501 | 1 | 12-01-2021 21:54:56 | VISA | | | Sale | $227.54 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-01-2021 20:35:38 | 12-01-2021 21:54:56 | - |
| 1038-16546 | 1 | 12-01-2021 21:56:54 | VISA | | | Sale | $219.93 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-01-2021 19:39:11 | 12-01-2021 21:56:55 | - |
| 105:-17502 | 1 | 12-01-2021 21:58:42 | VISA | | | Sale | $71.62 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-01-2021 21:00:07 | 12-01-2021 21:58:55 | - |
| 105:-17502 | 1 | 12-01-2021 21:58:54 | VISA | | | Sale | $44.87 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-01-2021 21:00:07 | 12-01-2021 21:58:55 | - |
| 105:-17500 | 1 | 12-01-2021 22:04:15 | MASTERCARD | | | Sale | $177.00 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-01-2021 20:19:23 | 12-01-2021 22:04:24 | - |
| 105:-17500 | 1 | 12-01-2021 22:04:24 | Gift Certificate | | | Sale | $15.71 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-01-2021 20:19:23 | 12-01-2021 22:04:24 | - |
| 1038-16549 | 1 | 12-01-2021 22:28:22 | MASTERCARD | | | Sale | $194.87 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-01-2021 20:59:52 | 12-01-2021 22:27:49 | - |
| 105:-17492 | 1 | 12-01-2021 22:47:59 | MASTERCARD | | · | Sale | $5,760.57 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-01-2021 17:13:25 | 12-01-2021 22:48:00 | - |
| 105:-17499 | 1 | 12-01-2021 23:00:54 | MASTERCARD | | | Sale | $501.91 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-01-2021 20:00:38 | 12-01-2021 23:00:55 | - |
| 1038-16550 | 1 | 12-01-2021 23:01:31 | Cash | | | Sale | $295.62 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-01-2021 21:11:20 | 12-01-2021 23:01:32 | - |
| 1038-16551 | 1 | 12-02-2021 18:58:19 | VISA | | | Sale | $279.80 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-02-2021 17:10:34 | 12-02-2021 18:58:19 | - |
| 1038-16554 | 1 | 12-02-2021 19:01:45 | VISA | | | Sale | $117.58 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-02-2021 18:03:51 | 12-02-2021 19:01:45 | - |
| 1038-16555 | 1 | 12-02-2021 19:12:13 | AMEX | | | Sale | $19.60 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-02-2021 19:10:42 | 12-02-2021 19:12:13 | - |
| 105:-17503 | 1 | 12-02-2021 19:28:17 | Cash | | | Sale | $349.49 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-02-2021 17:27:22 | 12-02-2021 19:28:46 | - |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 105:-17503 | 2 | 12-02-2021 19:28:46 | VISA | Sale | $248.23 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-02-2021 17:27:22 | 12-02-2021 19:28:46 | - |
| 1038-16552 | 1 | 12-02-2021 20:12:39 | DISCOVER | Sale | $335.33 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-02-2021 17:52:50 | 12-02-2021 20:12:39 | - |
| 1038-16556 | 1 | 12-02-2021 20:25:01 | DISCOVER | Sale | $216.66 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-02-2021 19:41:29 | 12-02-2021 20:25:01 | - |
| 1038-16557 | 1 | 12-02-2021 21:27:34 | AMEX | Sale | $445.29 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-02-2021 20:00:09 | 12-02-2021 21:27:34 | - |
| 105:-17504 | 1 | 12-02-2021 21:57:57 | MASTERCARD | Sale | $195.97 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-02-2021 17:37:48 | 12-02-2021 21:57:57 | - |
| 105:-17506 | 1 | 12-02-2021 22:30:42 | AMEX | Sale | $76.21 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-02-2021 22:28:27 | 12-02-2021 22:30:42 | - |
| 1038-16558 | 1 | 12-02-2021 22:49:58 | MASTERCARD | Sale | $296.13 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-02-2021 20:45:39 | 12-02-2021 22:49:58 | - |
| 1038-16560 | 1 | 12-02-2021 22:52:22 | VISA | Sale | $501.91 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-02-2021 21:37:37 | 12-02-2021 22:52:22 | - |
| 1038-16559 | 1 | 12-02-2021 22:56:52 | VISA | Sale | $324.44 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-02-2021 21:04:55 | 12-02-2021 22:56:52 | - |
| 105:-17505 | 1 | 12-02-2021 22:58:55 | MASTERCARD | Sale | $3,208.57 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-02-2021 20:59:29 | 12-02-2021 22:58:55 | - |
| 1038-16553 | 1 | 12-02-2021 22:59:35 | Cash | Sale | $100.00 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-02-2021 17:58:01 | 12-02-2021 18:53:43 | - |
| 1038-16553 | 1 | 12-02-2021 22:59:37 | VISA | Sale | $142.78 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-02-2021 17:58:01 | 12-02-2021 18:53:43 | - |
| 105:-17507 | 1 | 12-03-2021 13:54:11 | VISA | Sale | $97.99 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-03-2021 12:53:14 | 12-03-2021 13:54:11 | - |
| 105:-17508 | 1 | 12-03-2021 14:20:22 | VISA | Sale | $264.56 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-03-2021 13:21:44 | 12-03-2021 14:20:22 | - |
| 105:-17509 | 1 | 12-03-2021 14:51:13 | AMEX | Sale | $183.99 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-03-2021 13:26:19 | 12-03-2021 14:51:13 | - |
| 1038-16561 | 1 | 12-03-2021 18:40:32 | VISA | Sale | $181.82 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-03-2021 17:23:53 | 12-03-2021 18:40:32 | - |
| 105:-17515 | 1 | 12-03-2021 19:17:27 | AMEX | Sale | $43.56 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-03-2021 19:14:44 | 12-03-2021 19:17:27 | - |
| 1038-16563 | 1 | 12-03-2021 19:38:28 | VISA | Sale | $166.57 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-03-2021 18:25:36 | 12-03-2021 19:38:28 | - |
| 105:-17511 | 1 | 12-03-2021 19:58:32 | VISA | Sale | $180.73 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-03-2021 18:28:44 | 12-03-2021 19:58:33 | - |
| 1038-16564 | 1 | 12-03-2021 20:03:22 | MASTERCARD | Sale | $214.48 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-03-2021 18:50:39 | 12-03-2021 20:03:22 | - |
| 1038-16562 | 1 | 12-03-2021 20:05:24 | VISA | Sale | $102.34 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-03-2021 17:44:42 | 12-03-2021 20:05:24 | - |
| 105:-17514 | 1 | 12-03-2021 20:15:26 | VISA | Sale | $86.56 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-03-2021 18:54:51 | 12-03-2021 20:15:29 | - |
| 105:-17514 | 1 | 12-03-2021 20:15:29 | VISA | Sale | $86.55 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-03-2021 18:54:51 | 12-03-2021 20:15:29 | - |
| 105:-17512 | 1 | 12-03-2021 20:15:52 | AMEX | Sale | $591.20 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-03-2021 18:45:04 | 12-03-2021 20:15:52 | - |
| 1038-16565 | 1 | 12-03-2021 20:22:39 | VISA | Sale | $239.52 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-03-2021 19:18:51 | 12-03-2021 20:22:40 | - |
| 105:-17510 | 1 | 12-03-2021 | AMEX | Sale | $414.15 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-03-2021 | 12-03-2021 | - |

| ID | | Date | Card | Type | Amount | | | Name | Source | Time1 | Time2 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 105:-17516 | 1 | 12-03-2021 20:41:29 | DISCOVER | Sale | $204.68 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-03-2021 19:20:18 | 12-03-2021 20:41:29 | - |
| 1038-16568 | 1 | 12-03-2021 21:14:21 | VISA | Sale | $388.68 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-03-2021 19:35:40 | 12-03-2021 21:14:21 | - |
| 105:-17520 | 1 | 12-03-2021 21:19:51 | VISA | Sale | $167.67 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-03-2021 20:19:19 | 12-03-2021 21:19:51 | - |
| 105:-17513 | 1 | 12-03-2021 21:22:08 | MASTERCARD | Sale | $258.03 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-03-2021 18:54:40 | 12-03-2021 21:22:08 | - |
| 105:-17519 | 1 | 12-03-2021 21:32:53 | VISA | Sale | $236.25 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-03-2021 19:45:04 | 12-03-2021 21:32:53 | - |
| 1038-16567 | 1 | 12-03-2021 21:46:24 | AMEX | Sale | $255.85 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-03-2021 19:34:18 | 12-03-2021 21:46:30 | - |
| 1038-16567 | 1 | 12-03-2021 21:46:29 | MASTERCARD | Sale | $255.85 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-03-2021 19:34:18 | 12-03-2021 21:46:30 | - |
| 105:-17518 | 1 | 12-03-2021 21:58:22 | MASTERCARD | Sale | $557.44 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-03-2021 19:41:12 | 12-03-2021 21:58:23 | - |
| 105:-17522 | 1 | 12-03-2021 22:17:06 | DISCOVER | Sale | $560.71 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-03-2021 21:00:51 | 12-03-2021 22:17:06 | - |
| 1038-16570 | 1 | 12-03-2021 22:20:28 | VISA | Sale | $194.88 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-03-2021 20:24:33 | 12-03-2021 22:20:28 | - |
| 105:-17521 | 1 | 12-03-2021 22:22:25 | VISA | Sale | $231.89 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-03-2021 20:44:47 | 12-03-2021 22:22:25 | - |
| 1038-16569 | 1 | 12-03-2021 22:23:35 | VISA | Sale | $321.18 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-03-2021 19:53:59 | 12-03-2021 22:23:35 | - |
| 105:-17517 | 1 | 12-03-2021 22:37:32 | AMEX | Sale | $2,872.10 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-03-2021 19:33:21 | 12-03-2021 22:37:33 | - |
| 105:-17525 | 1 | 12-03-2021 22:39:41 | DISCOVER | Sale | $123.02 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-03-2021 21:49:01 | 12-03-2021 22:39:41 | - |
| 1038-16572 | 1 | 12-03-2021 22:46:44 | VISA | Sale | $164.27 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-03-2021 21:05:21 | 12-03-2021 22:46:44 | - |
| 1038-16573 | 1 | 12-03-2021 22:52:52 | VISA | Sale | $449.65 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-03-2021 21:25:10 | 12-03-2021 22:52:52 | - |
| 1038-16574 | 1 | 12-03-2021 23:00:07 | VISA | Sale | $283.07 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-03-2021 21:32:49 | 12-03-2021 23:00:08 | - |
| 105:-17526 | 1 | 12-03-2021 23:05:20 | MASTERCARD | Sale | $199.25 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-03-2021 21:51:18 | 12-03-2021 23:05:20 | - |
| 105:-17524 | 1 | 12-03-2021 23:14:34 | Cash | Sale | $151.33 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-03-2021 21:43:48 | 12-03-2021 23:14:34 | - |
| 1038-16566 | 1 | 12-03-2021 23:32:18 | AMEX | Sale | $1,456.74 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-03-2021 19:21:24 | 12-03-2021 23:32:19 | - |
| 1038-16571 | 1 | 12-03-2021 23:34:28 | Cash | Sale | $227.53 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-03-2021 20:24:54 | 12-03-2021 23:34:29 | - |
| 105:-17527 | 1 | 12-03-2021 23:36:31 | AMEX | Sale | $186.18 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-03-2021 21:56:48 | 12-03-2021 23:36:36 | - |
| 105:-17527 | 1 | 12-03-2021 23:36:36 | VISA | Sale | $186.19 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-03-2021 21:56:48 | 12-03-2021 23:36:36 | - |
| 105:-17528 | 1 | 12-04-2021 15:34:33 | VISA | Sale | $325.52 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-04-2021 13:48:19 | 12-04-2021 15:34:33 | - |
| 105:-17529 | 1 | 12-04-2021 17:54:35 | VISA | Sale | $247.14 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-04-2021 15:44:05 | 12-04-2021 17:54:35 | - |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1038-16576 | 1 | 12-04-2021 18:09:59 | Cash | Sale | $197.06 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-04-2021 17:18:26 | 12-04-2021 18:10:00 | - |
| 105:-17530 | 1 | 12-04-2021 18:18:49 | VISA | Sale | $389.76 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-04-2021 17:07:48 | 12-04-2021 18:18:50 | - |
| 1038-16575 | 1 | 12-04-2021 18:25:17 | VISA | Sale | $463.80 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-04-2021 17:13:53 | 12-04-2021 18:25:18 | - |
| 1038-16577 | 1 | 12-04-2021 18:26:57 | MASTERCARD | Sale | $88.18 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-04-2021 17:35:39 | 12-04-2021 18:26:57 | - |
| 105:-17533 | 1 | 12-04-2021 18:32:58 | Cash | Sale | $262.39 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-04-2021 17:46:38 | 12-04-2021 18:32:58 | - |
| 105:-17531 | 1 | 12-04-2021 18:49:49 | AMEX | Sale | $231.90 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-04-2021 17:30:36 | 12-04-2021 18:49:49 | - |
| 105:-17534 | 1 | 12-04-2021 18:54:20 | VISA | Sale | $263.48 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-04-2021 18:07:20 | 12-04-2021 18:54:21 | - |
| 105:-17532 | 1 | 12-04-2021 19:03:40 | VISA | Sale | $222.09 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-04-2021 17:30:51 | 12-04-2021 19:03:40 | - |
| 1038-16582 | 1 | 12-04-2021 19:04:04 | VISA | Sale | $38.11 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-04-2021 19:01:33 | 12-04-2021 19:04:04 | - |
| 1038-16581 | 1 | 12-04-2021 19:17:55 | VISA | Sale | $286.35 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-04-2021 18:22:49 | 12-04-2021 19:17:55 | - |
| 1038-16578 | 1 | 12-04-2021 19:20:49 | VISA | Sale | $830.70 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-04-2021 17:42:51 | 12-04-2021 19:20:49 | - |
| 105:-17536 | 1 | 12-04-2021 19:22:24 | VISA | Sale | $247.15 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-04-2021 18:13:40 | 12-04-2021 19:22:24 | - |
| 105:-17535 | 1 | 12-04-2021 19:24:02 | VISA | Sale | $272.18 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-04-2021 18:08:50 | 12-04-2021 19:24:02 | - |
| 1038-16579 | 1 | 12-04-2021 19:31:17 | MASTERCARD | Sale | $493.21 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-04-2021 17:53:49 | 12-04-2021 19:31:17 | - |
| 1038-16580 | 1 | 12-04-2021 19:34:50 | VISA | Sale | $263.48 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-04-2021 18:08:32 | 12-04-2021 19:34:50 | - |
| 105:-17538 | 1 | 12-04-2021 20:28:32 | VISA | Sale | $397.19 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-04-2021 19:13:59 | 12-04-2021 20:28:32 | - |
| 105:-17539 | 1 | 12-04-2021 20:41:50 | MASTERCARD | Sale | $169.29 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-04-2021 19:24:10 | 12-04-2021 20:42:04 | - |
| 105:-17539 | 1 | 12-04-2021 20:42:03 | VISA | Sale | $169.29 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-04-2021 19:24:10 | 12-04-2021 20:42:04 | - |
| 1038-16588 | 1 | 12-04-2021 21:12:55 | VISA | Sale | $405.01 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-04-2021 19:56:57 | 12-04-2021 21:12:56 | - |
| 1038-16586 | 1 | 12-04-2021 21:14:55 | VISA | Sale | $131.74 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-04-2021 19:40:20 | 12-04-2021 21:14:55 | - |
| 105:-17541 | 1 | 12-04-2021 21:14:59 | AMEX | Sale | $140.45 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-04-2021 19:46:13 | 12-04-2021 21:14:59 | - |
| 1038-16584 | 1 | 12-04-2021 21:15:13 | VISA | Sale | $552.65 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-04-2021 19:24:15 | 12-04-2021 21:15:13 | - |
| 1038-16587 | 1 | 12-04-2021 21:15:28 | AMEX | Sale | $508.02 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-04-2021 19:52:11 | 12-04-2021 21:15:28 | - |
| 1038-16585 | 1 | 12-04-2021 21:30:42 | MASTERCARD | Sale | $179.65 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-04-2021 19:38:58 | 12-04-2021 21:30:42 | - |
| 105:-17540 | 1 | 12-04-2021 21:41:38 | VISA | Sale | $265.64 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-04-2021 19:37:59 | 12-04-2021 21:41:38 | - |
| 105:-17537 | 1 | 12-04-2021 | AMEX | Sale | $999.44 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-04-2021 | 12-04-2021 | - |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 21:46:25 | | | | | | | | 19:04:04 | 21:46:25 |
| 1038-16592 | 1 | 12-04-2021 21:53:26 | AMEX | | Sale | $199.24 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-04-2021 21:48:52 | 12-04-2021 21:53:27 | - |
| 105:-17542 | 1 | 12-04-2021 21:58:09 | VISA | | Sale | $305.09 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-04-2021 20:20:02 | 12-04-2021 21:58:09 | - |
| 1038-16583 | 1 | 12-04-2021 21:58:28 | VISA | | Sale | $354.93 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-04-2021 19:18:07 | 12-04-2021 21:58:29 | - |
| 105:-17543 | 1 | 12-04-2021 22:08:23 | MASTERCARD | | Sale | $199.79 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-04-2021 20:22:04 | 12-04-2021 22:08:27 | - |
| 105:-17543 | 1 | 12-04-2021 22:08:27 | VISA | | Sale | $199.79 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-04-2021 20:22:04 | 12-04-2021 22:08:27 | - |
| 1038-16589 | 1 | 12-04-2021 22:25:33 | VISA | | Sale | $209.03 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-04-2021 20.19:55 | 12-04-2021 22:25:34 | - |
| 105:-17545 | 1 | 12-04-2021 22:27:33 | VISA | | Sale | $523.68 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-04-2021 20:50:04 | 12-04-2021 22:27:34 | - |
| 105:-17544 | 1 | 12-04-2021 22:50:01 | VISA | | Sale | $300.00 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-04-2021 20:34:01 | 12-04-2021 22:50:06 | - |
| 105:-17544 | 1 | 12-04-2021 22:50:05 | VISA | | Sale | $580.73 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-04-2021 20:34:01 | 12-04-2021 22:50:06 | - |
| 1038-16590 | 1 | 12-04-2021 23:07:57 | VISA | | Sale | $195.99 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-04-2021 21:29:19 | 12-04-2021 23:07:57 | - |
| 105:-17547 | 1 | 12-04-2021 23:11:09 | VISA | | Sale | $435.49 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-04-2021 22:15:01 | 12-04-2021 23:11:09 | - |
| 1038-16591 | 1 | 12-04-2021 23:17:41 | Cash | | Sale | $351.67 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-04-2021 21:33:00 | 12-04-2021 23:17:41 | - |
| 105:-17546 | 1 | 12-04-2021 23:32:14 | VISA | | Sale | $87.98 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-04-2021 21:22:11 | 12-04-2021 23:32:14 | - |
| 1038-16593 | 1 | 12-04-2021 23:41:29 | DISCOVER | | Sale | $388.08 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-04-2021 22:01:11 | 12-04-2021 23:43:05 | - |
| 1038-16593 | 1 | 12-04-2021 23:41:35 | VISA | | Sale | $388.08 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-04-2021 22:01:11 | 12-04-2021 23:43:05 | - |
| 1038-16593 | 1 | 12-04-2021 23:43:03 | Cash | | Sale | $369.19 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-04-2021 22:01:11 | 12-04-2021 23:43:05 | - |
| 105:-17548 | 1 | 12-05-2021 15:59:25 | VISA | | Sale | $284.00 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-05-2021 14:11:08 | 12-05-2021 15:59:33 | - |
| 105:-17548 | 1 | 12-05-2021 15:59:33 | Gift Certificate | | Sale | $25.20 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-05-2021 14:11:08 | 12-05-2021 15:59:33 | - |
| 105:-17549 | 1 | 12-05-2021 16:46:14 | VISA | | Sale | $43.55 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-05-2021 15:29:33 | 12-05-2021 16:50:43 | - |
| 105:-17549 | 2 | 12-05-2021 16:47:31 | VISA | | Sale | $37.79 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-05-2021 15:29:33 | 12-05-2021 16:50:43 | - |
| 105:-17549 | 2 | 12-05-2021 16:48:00 | Cash | | Sale | $70.00 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-05-2021 15:29:33 | 12-05-2021 16:50:43 | - |
| 105:-17549 | 3 | 12-05-2021 16:48:29 | VISA | | Sale | $13.47 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-05-2021 15:29:33 | 12-05-2021 16:50:43 | - |
| 105:-17549 | 3 | 12-05-2021 16:50:42 | Cash | | Sale | $115.00 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-05-2021 15:29:33 | 12-05-2021 16:50:43 | - |
| 105:-17551 | 1 | 12-05-2021 17:50:12 | VISA | | Sale | $93.63 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-05-2021 17:12:36 | 12-05-2021 17:50:12 | - |
| 105:-17550 | 1 | 12-05-2021 17:58:25 | Cash | | Sale | $300.49 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-05-2021 17:09:29 | 12-05-2021 17:58:26 | - |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 1038-16594 | 1 | 12-05-2021 18:21:29 | VISA | Sale | $140.45 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-05-2021 17:18:13 | 12-05-2021 18:21:29 | - |
| 1038-16596 | 1 | 12-05-2021 18:54:59 | MASTERCARD | Sale | $15.24 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-05-2021 17:50:18 | 12-05-2021 18:54:59 | - |
| 1038-16595 | 1 | 12-05-2021 18:58:33 | Cash | Sale | $275.45 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-05-2021 17:41:24 | 12-05-2021 18:58:34 | - |
| 105?-17553 | 1 | 12-05-2021 19:06:58 | VISA | Sale | $244.96 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-05-2021 17:58:38 | 12-05-2021 19:06:58 | - |
| 105?-17555 | 1 | 12-05-2021 19:08:48 | VISA | Sale | $181.82 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-05-2021 18:06:00 | 12-05-2021 19:08:48 | - |
| 1038-16597 | 1 | 12-05-2021 19:10:08 | MASTERCARD | Sale | $394.12 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-05-2021 18:06:15 | 12-05-2021 19:10:08 | - |
| 105?-17560 | 1 | 12-05-2021 20:11:29 | VISA | Sale | $167.66 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-05-2021 19:09:31 | 12-05-2021 20:11:29 | - |
| 105?-17556 | 1 | 12-05-2021 20:25:27 | VISA | Sale | $565.03 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-05-2021 18:09:35 | 12-05-2021 20:25:27 | - |
| 105?-17554 | 1 | 12-05-2021 20:27:36 | AMEX | Sale | $326.62 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-05-2021 18:02:24 | 12-05-2021 20:27:36 | - |
| 105?-17557 | 1 | 12-05-2021 20:28:23 | VISA | Sale | $149.16 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-05-2021 18:19:08 | 12-05-2021 20:28:23 | - |
| 105?-17561 | 1 | 12-05-2021 20:29:02 | MASTERCARD | Sale | $107.79 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-05-2021 19:22:31 | 12-05-2021 20:29:02 | - |
| 105?-17552 | 1 | 12-05-2021 20:29:23 | MASTERCARD | Sale | $526.95 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-05-2021 17:45:20 | 12-05-2021 20:29:23 | - |
| 105?-17559 | 1 | 12-05-2021 20:37:58 | MASTERCARD | Sale | $465.98 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-05-2021 18:57:59 | 12-05-2021 20:37:59 | - |
| 105?-17562 | 1 | 12-05-2021 20:47:54 | Cash | Sale | $100.00 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-05-2021 19:38:57 | 12-05-2021 20:48:04 | - |
| 105?-17562 | 1 | 12-05-2021 20:48:03 | VISA | Sale | $78.55 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-05-2021 19:38:57 | 12-05-2021 20:48:04 | - |
| 1038-16599 | 1 | 12-05-2021 20:49:10 | VISA | Sale | $205.76 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-05-2021 19:36:19 | 12-05-2021 20:49:10 | - |
| 1038-16598 | 1 | 12-05-2021 21:10:38 | DISCOVER | Sale | $318.99 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-05-2021 19:15:32 | 12-05-2021 21:10:38 | - |
| 1038-16600 | 1 | 12-05-2021 21:14:29 | DISCOVER | Sale | $166.57 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-05-2021 20:13:32 | 12-05-2021 21:14:29 | - |
| 105?-17558 | 1 | 12-05-2021 21:18:33 | MASTERCARD | Sale | $697.86 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-05-2021 18:35:47 | 12-05-2021 21:18:33 | - |
| 105?-17565 | 1 | 12-05-2021 21:41:51 | Cash | Sale | $197.05 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-05-2021 20:48:46 | 12-05-2021 21:41:52 | - |
| 1038-16601 | 1 | 12-05-2021 21:58:43 | VISA | Sale | $360.36 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-05-2021 21:00:16 | 12-05-2021 21:58:43 | - |
| 105?-17563 | 1 | 12-05-2021 22:14:39 | VISA | Sale | $264.56 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-05-2021 20:31:31 | 12-05-2021 22:14:39 | - |
| 1038-16602 | 1 | 12-05-2021 22:18:51 | MASTERCARD | Sale | $378.88 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-05-2021 21:11:26 | 12-05-2021 22:18:51 | - |
| 105?-17564 | 1 | 12-05-2021 22:32:37 | MASTERCARD | Sale | $427.87 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-05-2021 20:42:51 | 12-05-2021 22:32:37 | - |
| 1038-16603 | 1 | 12-06-2021 17:01:27 | VISA | Sale | $398.48 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-06-2021 15:49:18 | 12-06-2021 17:01:27 | - |
| 105?-17567 | 1 | 12-06-2021 | VISA | Sale | $174.20 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-06-2021 | 12-06-2021 | - |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 18:48:35 | | | Sound Panel | | | | | | 18:12:17 | 18:48:35 |
| 1038-16605 | 1 | 12-06-2021 19:51:48 | VISA | Sale | $357.09 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-06-2021 18:10:14 | 12-06-2021 19:51:48 | - |
| 105:-17566 | 1 | 12-06-2021 19:58:32 | VISA | Sale | $157.86 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-06-2021 17:55:32 | 12-06-2021 20:01:29 | - |
| 105:-17566 | 2 | 12-06-2021 20:00:07 | Cash | Sale | $180.00 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-06-2021 17:55:32 | 12-06-2021 20:01:29 | - |
| 105:-17566 | 2 | 12-06-2021 20:00:41 | VISA | Sale | $1.81 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-06-2021 17:55:32 | 12-06-2021 20:01:29 | - |
| 105:-17566 | 3 | 12-06-2021 20:01:29 | VISA | Sale | $87.10 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-06-2021 17:55:32 | 12-06-2021 20:01:29 | - |
| 1038-16608 | 1 | 12-06-2021 20:39:26 | MASTERCARD | Sale | $212.29 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-06-2021 19:37:38 | 12-06-2021 20:39:26 | - |
| 1038-16606 | 1 | 12-06-2021 20:42:41 | VISA | Sale | $467.06 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-06-2021 18:33:09 | 12-06-2021 20:42:42 | - |
| 105:-17569 | 1 | 12-06-2021 20:45:08 | VISA | Sale | $164.39 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-06-2021 19:31:29 | 12-06-2021 20:45:08 | - |
| 105:-17568 | 1 | 12-06-2021 20:48:50 | MASTERCARD | Sale | $416.98 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-06-2021 19:30:19 | 12-06-2021 20:48:50 | - |
| 1038-16604 | 1 | 12-06-2021 20:53:09 | VISA | Sale | $1,782.27 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-06-2021 18:02:59 | 12-06-2021 20:53:09 | - |
| 1038-16609 | 1 | 12-06-2021 21:00:12 | VISA | Sale | $57.70 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-06-2021 19:59:58 | 12-06-2021 21:00:12 | - |
| 105:-17570 | 1 | 12-06-2021 21:01:16 | AMEX | Sale | $467.05 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-06-2021 19:32:12 | 12-06-2021 21:01:16 | - |
| 1038-16607 | 1 | 12-06-2021 21:04:01 | VISA | Sale | $345.14 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-06-2021 19:22:06 | 12-06-2021 21:04:01 | - |
| 105:-17572 | 1 | 12-06-2021 21:42:07 | VISA | Sale | $193.79 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-06-2021 20:26:13 | 12-06-2021 21:42:07 | - |
| 105:-17573 | 1 | 12-06-2021 21:43:34 | Cash | Sale | $202.51 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-06-2021 20:45:32 | 12-06-2021 21:43:34 | - |
| 105:-17571 | 1 | 12-06-2021 21:45:19 | AMEX | Sale | $225.37 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-06-2021 20:08:29 | 12-06-2021 21:45:20 | - |
| 1038-16610 | 1 | 12-06-2021 21:53:27 | Cash | Sale | $198.15 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-06-2021 20:56:16 | 12-06-2021 21:53:28 | - |
| 105:-17574 | 1 | 12-07-2021 14:03:53 | AMEX | Sale | $459.43 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-07-2021 12:47:56 | 12-07-2021 14:03:54 | - |
| 1038-16611 | 1 | 12-07-2021 17:17:16 | AMEX | Sale | $37.02 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-07-2021 17:13:37 | 12-07-2021 17:17:16 | - |
| 105:-17576 | 1 | 12-07-2021 18:39:21 | MASTERCARD | Sale | $260.21 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-07-2021 17:19:42 | 12-07-2021 18:39:22 | - |
| 105:-17575 | 1 | 12-07-2021 19:07:58 | VISA | Sale | $100.49 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-07-2021 17:11:08 | 12-07-2021 19:08:04 | - |
| 105:-17575 | 1 | 12-07-2021 19:08:03 | VISA | Sale | $127.06 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-07-2021 17:11:08 | 12-07-2021 19:08:04 | - |
| 105:-17577 | 1 | 12-07-2021 19:33:33 | AMEX | Sale | $152.42 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-07-2021 18:39:53 | 12-07-2021 19:33:33 | - |
| 105:-17578 | 1 | 12-07-2021 19:41:47 | MASTERCARD | Sale | $105.61 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-07-2021 19:11:04 | 12-07-2021 19:41:48 | - |
| 1038-16613 | 1 | 12-07-2021 20:15:59 | VISA | Sale | $67.55 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-07-2021 18:54:50 | 12-07-2021 20:16:13 | - |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1038-16613 | 1 | 12-07-2021 20:16:13 | MASTERCARD | Sale | $67.46 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-07-2021 18:54:50 | 12-07-2021 20:16:13 | - |
| 1038-16612 | 1 | 12-07-2021 20:18:23 | MASTERCARD | Sale | $1,307.57 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-07-2021 18:23:12 | 12-07-2021 20:18:24 | - |
| 1038-16614 | 1 | 12-07-2021 20:30:35 | VISA | Sale | $227.55 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-07-2021 19:16:45 | 12-07-2021 20:30:35 | - |
| 105?-17579 | 1 | 12-07-2021 21:05:14 | VISA | Sale | $142.61 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-07-2021 19:30:11 | 12-07-2021 21:05:14 | - |
| 1038-16615 | 1 | 12-07-2021 22:04:34 | MASTERCARD | Sale | $190.53 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-07-2021 21:05:03 | 12-07-2021 22:04:34 | - |
| 105?-17580 | 1 | 12-07-2021 22:09:03 | AMEX | Sale | $680.46 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-07-2021 19:59:14 | 12-07-2021 22:09:03 | - |
| 105?-17582 | 1 | 12-07-2021 22:49:18 | VISA | Sale | $305.94 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-07-2021 21:25:28 | 12-07-2021 22:49:18 | - |
| 105?-17581 | 1 | 12-07-2021 22:59:22 | AMEX | Sale | $219.92 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-07-2021 20:35:38 | 12-07-2021 22:59:22 | - |
| 105?-17583 | 1 | 12-08-2021 17:03:31 | AMEX | Sale | $289.60 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-08-2021 12:29:07 | 12-08-2021 17:03:31 | - |
| 1038-16616 | 1 | 12-08-2021 17:04:06 | VISA | Sale | $141.53 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-08-2021 13:16:15 | 12-08-2021 17:04:07 | - |
| 1038-16617 | 1 | 12-08-2021 17:14:17 | Cash | Sale | $738.18 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-08-2021 16:01:56 | 12-08-2021 17:14:28 | - |
| 1038-16618 | 1 | 12-08-2021 18:24:00 | MASTERCARD | Sale | $656.50 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-08-2021 16:57:24 | 12-08-2021 18:24:00 | - |
| 105?-17584 | 1 | 12-08-2021 18:47:35 | AMEX | Sale | $190.51 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-08-2021 17:09:15 | 12-08-2021 18:47:35 | - |
| 105?-17585 | 1 | 12-08-2021 18:57:02 | AMEX | Sale | $590.10 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-08-2021 18:16:46 | 12-08-2021 18:57:02 | - |
| 1038-16620 | 1 | 12-08-2021 19:43:36 | VISA | Sale | $320.08 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-08-2021 18:00:19 | 12-08-2021 19:43:36 | - |
| 105?-17586 | 1 | 12-08-2021 19:57:42 | AMEX | Sale | $167.67 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-08-2021 18:24:18 | 12-08-2021 19:57:42 | - |
| 1038-16622 | 1 | 12-08-2021 20:15:31 | MASTERCARD | Sale | $142.39 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-08-2021 18:56:21 | 12-08-2021 20:15:31 | - |
| 1038-16621 | 1 | 12-08-2021 20:29:08 | VISA | Sale | $194.88 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-08-2021 18:11:57 | 12-08-2021 20:29:16 | - |
| 1038-16621 | 1 | 12-08-2021 20:29:16 | VISA | Sale | $194.88 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-08-2021 18:11:57 | 12-08-2021 20:29:16 | - |
| 105?-17590 | 1 | 12-08-2021 21:41:17 | VISA | Sale | $142.62 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-08-2021 20:58:45 | 12-08-2021 21:41:17 | - |
| 1038-16623 | 1 | 12-08-2021 21:41:30 | AMEX | Sale | $281.98 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-08-2021 20:39:42 | 12-08-2021 21:41:30 | - |
| 1038-16619 | 1 | 12-08-2021 21:44:50 | Cash | Sale | $221.01 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-08-2021 17:52:51 | 12-08-2021 21:44:51 | - |
| 105?-17587 | 1 | 12-08-2021 22:03:41 | MASTERCARD | Sale | $934.12 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-08-2021 19:51:46 | 12-08-2021 22:03:41 | - |
| 105?-17588 | 1 | 12-08-2021 22:13:05 | AMEX | Sale | $2,406.14 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-08-2021 20:19:00 | 12-08-2021 22:13:05 | - |
| 105?-17589 | 1 | 12-08-2021 22:21:23 | AMEX | Sale | $325.53 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-08-2021 20:22:04 | 12-08-2021 22:21:24 | - |
| 1038-16624 | 1 | 12-08-2021 | VISA | Sale | $675.02 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-08-2021 | 12-08-2021 | - |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 22:23:31 | | | | | | | | 20:55:41 | 22:23:31 |
| 105:-17591 | 1 | 12-08-2021 22:26:29 | VISA | Sale | $142.62 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-08-2021 21:26:48 | 12-08-2021 22:26:29 | - |
| 1038-16625 | 1 | 12-09-2021 15:27:55 | Cash | Sale | $180.73 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-09-2021 13:51:38 | 12-09-2021 15:27:55 | - |
| 1038-16626 | 1 | 12-09-2021 16:43:57 | MASTERCARD | Sale | $115.41 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-09-2021 15:41:09 | 12-09-2021 16:43:57 | - |
| 1038-16628 | 1 | 12-09-2021 19:06:46 | AMEX | Sale | $259.11 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-09-2021 17:32:15 | 12-09-2021 19:06:47 | - |
| 1038-16627 | 1 | 12-09-2021 19:12:53 | VISA | Sale | $285.25 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-09-2021 17:23:33 | 12-09-2021 19:12:53 | - |
| 105:-17595 | 1 | 12-09-2021 20:36:43 | AMEX | Sale | $22.86 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-09-2021 20:31:07 | 12-09-2021 20:36:43 | - |
| 105:-17596 | 1 | 12-09-2021 20:56:10 | AMEX | Sale | $2,961.40 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-09-2021 20:52:14 | 12-09-2021 20:56:10 | - |
| 105:-17592 | 1 | 12-09-2021 20:59:51 | AMEX | Sale | $543.28 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-09-2021 18:12:52 | 12-09-2021 20:59:52 | - |
| 105:-17594 | 1 | 12-09-2021 21:07:01 | AMEX | Sale | $287.43 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-09-2021 18:41:03 | 12-09-2021 21:07:01 | - |
| 1038-16629 | 1 | 12-09-2021 21:19:54 | AMEX | Sale | $224.28 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-09-2021 19:32:47 | 12-09-2021 21:19:54 | - |
| 1038-16631 | 1 | 12-09-2021 21:20:23 | VISA | Sale | $103.43 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-09-2021 20:12:08 | 12-09-2021 21:20:23 | - |
| 1038-16633 | 1 | 12-09-2021 21:47:26 | Cash | Sale | $148.07 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-09-2021 20:28:50 | 12-09-2021 21:47:27 | - |
| 1038-16634 | 1 | 12-09-2021 21:56:45 | MASTERCARD | Sale | $322.28 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-09-2021 20:34:07 | 12-09-2021 21:56:45 | - |
| 1038-16630 | 1 | 12-09-2021 22:23:59 | AMEX | Sale | $836.15 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-09-2021 20:02:47 | 12-09-2021 22:23:59 | - |
| 105:-17593 | 1 | 12-09-2021 22:26:06 | AMEX | Sale | $6,028.19 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-09-2021 18:33:34 | 12-09-2021 22:26:06 | - |
| 105:-17597 | 1 | 12-09-2021 22:40:56 | VISA | Sale | $222.35 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-09-2021 21:30:06 | 12-09-2021 22:40:56 | - |
| 1038-16637 | 1 | 12-09-2021 22:54:35 | AMEX | Sale | $973.34 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-09-2021 21:20:37 | 12-09-2021 22:54:51 | - |
| 1038-16636 | 1 | 12-09-2021 22:55:48 | DISCOVER | Sale | $141.53 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-09-2021 21:02:08 | 12-09-2021 22:55:49 | - |
| 1038-16635 | 1 | 12-09-2021 22:56:02 | AMEX | Sale | $247.44 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-09-2021 20:56:09 | 12-09-2021 22:56:02 | - |
| 105:-17598 | 1 | 12-10-2021 14:52:09 | VISA | Sale | $471.43 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-10-2021 13:13:44 | 12-10-2021 14:52:09 | - |
| 105:-17599 | 1 | 12-10-2021 17:27:17 | VISA | Sale | $311.38 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-10-2021 15:38:55 | 12-10-2021 17:27:17 | - |
| 105:-17600 | 1 | 12-10-2021 17:56:30 | MASTERCARD | Sale | $172.02 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-10-2021 17:06:52 | 12-10-2021 17:56:30 | - |
| 105:-17603 | 1 | 12-10-2021 18:14:51 | Cash | Sale | $37.02 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-10-2021 18:13:25 | 12-10-2021 18:14:52 | - |
| 105:-17604 | 1 | 12-10-2021 18:22:12 | MASTERCARD | Sale | $37.02 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-10-2021 18:17:43 | 12-10-2021 18:22:13 | - |
| 1038-16638 | 1 | 12-10-2021 18:58:31 | VISA | Sale | $691.36 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-10-2021 17:14:33 | 12-10-2021 18:58:32 | - |

| 1038-16639 | 1 | 12-10-2021 19:13:00 | VISA | Sale | $625.50 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-10-2021 17:49:05 | 12-10-2021 19:13:00 | - |
| 1038-16640 | 1 | 12-10-2021 19:56:27 | VISA | Sale | $94.72 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-10-2021 19:05:20 | 12-10-2021 19:56:49 | - |
| 1038-16640 | 1 | 12-10-2021 19:56:49 | VISA | Sale | $94.72 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-10-2021 19:05:20 | 12-10-2021 19:56:49 | - |
| 105:-17602 | 1 | 12-10-2021 19:59:01 | MASTERCARD | Sale | $355.01 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-10-2021 18:07:34 | 12-10-2021 19:59:02 | - |
| 105:-17606 | 1 | 12-10-2021 20:02:29 | AMEX | Sale | $258.04 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-10-2021 18:59:57 | 12-10-2021 20:02:29 | - |
| 105:-17608 | 1 | 12-10-2021 20:02:51 | VISA | Sale | $158.96 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-10-2021 19:14:11 | 12-10-2021 20:02:51 | - |
| 105:-17611 | 1 | 12-10-2021 20:36:31 | VISA | Sale | $183.99 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-10-2021 20:07:35 | 12-10-2021 20:36:31 | - |
| 1038-16643 | 1 | 12-10-2021 20:38:42 | VISA | Sale | $71.86 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-10-2021 19:51:11 | 12-10-2021 20:38:43 | - |
| 105:-17609 | 1 | 12-10-2021 21:01:26 | VISA | Sale | $209.02 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-10-2021 19:20:46 | 12-10-2021 21:01:26 | - |
| 105:-17607 | 1 | 12-10-2021 21:11:47 | MASTERCARD | Sale | $162.22 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-10-2021 19:02:14 | 12-10-2021 21:11:47 | - |
| 105:-17612 | 1 | 12-10-2021 21:20:23 | MASTERCARD | Sale | $243.86 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-10-2021 20:11:03 | 12-10-2021 21:20:23 | - |
| 1038-16642 | 1 | 12-10-2021 21:41:32 | VISA | Sale | $274.36 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-10-2021 19:38:51 | 12-10-2021 21:41:32 | - |
| 105:-17601 | 1 | 12-10-2021 21:42:10 | VISA | Sale | $656.50 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-10-2021 17:57:14 | 12-10-2021 21:42:10 | - |
| 1038-16641 | 1 | 12-10-2021 21:56:53 | VISA | Sale | $217.75 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-10-2021 19:16:34 | 12-10-2021 21:56:54 | - |
| 1038-16645 | 1 | 12-10-2021 22:16:28 | VISA | Sale | $254.75 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-10-2021 20:14:40 | 12-10-2021 22:16:28 | - |
| 105:-17618 | 1 | 12-10-2021 22:17:55 | Cash | Sale | $140.44 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-10-2021 20:57:57 | 12-10-2021 22:17:56 | - |
| 1038-16647 | 1 | 12-10-2021 22:31:31 | AMEX | Sale | $224.28 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-10-2021 21:14:29 | 12-10-2021 22:31:31 | - |
| 105:-17620 | 1 | 12-10-2021 22:33:12 | VISA | Sale | $124.10 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-10-2021 21:30:46 | 12-10-2021 22:33:12 | - |
| 1038-16648 | 1 | 12-10-2021 22:35:59 | VISA | Sale | $161.13 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-10-2021 21:49:51 | 12-10-2021 22:35:59 | - |
| 1038-16646 | 1 | 12-10-2021 22:41:09 | VISA | Sale | $311.38 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-10-2021 20:33:19 | 12-10-2021 22:41:09 | - |
| 1038-16644 | 1 | 12-10-2021 22:42:06 | DISCOVER | Sale | $140.00 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-10-2021 20:07:16 | 12-10-2021 22:42:18 | - |
| 1038-16644 | 1 | 12-10-2021 22:42:17 | MASTERCARD | Sale | $223.63 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-10-2021 20:07:16 | 12-10-2021 22:42:18 | - |
| 105:-17616 | 1 | 12-10-2021 22:50:13 | AMEX | Sale | $630.37 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-10-2021 20:49:16 | 12-10-2021 22:50:13 | - |
| 105:-17617 | 1 | 12-10-2021 22:51:00 | MASTERCARD | Sale | $263.45 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-10-2021 20:56:21 | 12-10-2021 22:51:00 | - |
| 105:-17615 | 1 | 12-10-2021 22:52:32 | VISA | Sale | $292.86 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-10-2021 20:31:46 | 12-10-2021 22:52:32 | - |
| 105:-17613 | 1 | 12-10-2021 | VISA | Sale | $75.00 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-10-2021 | 12-10-2021 | - |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 22:53:09 | | | | | | | 20:13:32 | 22:53:20 | |
| 105:-17613 | 1 | 12-10-2021 22:53:20 | VISA | Sale | $248.34 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-10-2021 20:13:32 | 12-10-2021 22:53:20 | - |
| 105:-17614 | 1 | 12-10-2021 22:54:13 | VISA | Sale | $172.01 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-10-2021 20:21:29 | 12-10-2021 22:54:13 | - |
| 105:-17610 | 1 | 12-10-2021 23:20:02 | AMEX | Sale | $145.89 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-10-2021 19:35:03 | 12-10-2021 23:20:02 | - |
| 105:-17621 | 1 | 12-10-2021 23:23:10 | VISA | Sale | $100.16 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-10-2021 21:58:04 | 12-10-2021 23:25:28 | - |
| 105:-17621 | 2 | 12-10-2021 23:23:45 | VISA | Sale | $161.13 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-10-2021 21:58:04 | 12-10-2021 23:25:28 | - |
| 105:-17621 | 3 | 12-10-2021 23:24:24 | VISA | Sale | $67.50 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-10-2021 21:58:04 | 12-10-2021 23:25:28 | - |
| 105:-17621 | 4 | 12-10-2021 23:24:58 | VISA | Sale | $197.06 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-10-2021 21:58:04 | 12-10-2021 23:25:28 | - |
| 105:-17621 | 5 | 12-10-2021 23:25:27 | VISA | Sale | $63.15 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-10-2021 21:58:04 | 12-10-2021 23:25:28 | - |
| 105:-17619 | 1 | 12-10-2021 23:27:55 | VISA | Sale | $464.89 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-10-2021 21:21:18 | 12-10-2021 23:27:55 | - |
| 1038-16649 | 1 | 12-10-2021 23:28:28 | VISA | Sale | $276.55 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-10-2021 21:59:27 | 12-10-2021 23:28:28 | - |
| 1038-16650 | 1 | 12-10-2021 23:48:12 | VISA | Sale | $904.74 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-10-2021 22:00:28 | 12-10-2021 23:48:13 | - |
| 105:-17623 | 1 | 12-11-2021 15:43:33 | VISA | Sale | $91.45 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-11-2021 14:49:31 | 12-11-2021 15:43:33 | - |
| 105:-17622 | 1 | 12-11-2021 15:55:09 | Cash | Sale | $579.21 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-11-2021 13:22:42 | 12-11-2021 15:55:10 | - |
| 105:-17624 | 1 | 12-11-2021 17:16:30 | VISA | Sale | $205.77 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-11-2021 16:02:08 | 12-11-2021 17:16:30 | - |
| 1038-16651 | 1 | 12-11-2021 17:30:05 | MASTERCARD | Sale | $115.41 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-11-2021 16:15:41 | 12-11-2021 17:30:06 | - |
| 105:-17625 | 1 | 12-11-2021 17:47:54 | VISA | Sale | $866.64 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-11-2021 16:19:01 | 12-11-2021 17:47:54 | - |
| 1038-16652 | 1 | 12-11-2021 19:00:27 | AMEX | Sale | $499.72 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-11-2021 17:13:59 | 12-11-2021 19:00:27 | - |
| 105:-17628 | 1 | 12-11-2021 19:03:39 | Cash | Sale | $329.89 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-11-2021 17:23:27 | 12-11-2021 19:03:39 | - |
| 105:-17629 | 1 | 12-11-2021 19:12:23 | AMEX | Sale | $349.48 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-11-2021 17:25:42 | 12-11-2021 19:12:24 | - |
| 105:-17630 | 1 | 12-11-2021 19:14:01 | MASTERCARD | Sale | $398.48 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-11-2021 17:31:34 | 12-11-2021 19:14:01 | - |
| 105:-17627 | 1 | 12-11-2021 19:14:35 | MASTERCARD | Sale | $223.42 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-11-2021 17:21:27 | 12-11-2021 19:14:35 | - |
| 105:-17631 | 1 | 12-11-2021 19:25:34 | VISA | Sale | $400.65 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-11-2021 17:50:24 | 12-11-2021 19:25:34 | - |
| 105:-17626 | 1 | 12-11-2021 19:26:01 | VISA | Sale | $398.47 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-11-2021 17:16:55 | 12-11-2021 19:26:01 | - |
| 1038-16656 | 1 | 12-11-2021 19:57:37 | MASTERCARD | Sale | $352.76 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-11-2021 19:06:16 | 12-11-2021 19:57:37 | - |
| 1038-16653 | 1 | 12-11-2021 20:00:15 | VISA | Sale | $199.24 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-11-2021 18:09:01 | 12-11-2021 20:00:15 | - |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1052-17633 | 1 | 12-11-2021 20:08:23 | DISCOVER | Sale | $232.98 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-11-2021 18:39:07 | 12-11-2021 20:08:23 | - |
| 1052-17632 | 1 | 12-11-2021 20:30:47 | VISA | Sale | $690.26 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-11-2021 18:16:04 | 12-11-2021 20:30:47 | - |
| 1052-17635 | 1 | 12-11-2021 20:38:05 | DISCOVER | Sale | $513.90 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-11-2021 19:07:03 | 12-11-2021 20:38:05 | - |
| 1052-17634 | 1 | 12-11-2021 20:38:37 | AMEX | Sale | $378.05 | $0.00 | $0.00 | Lverardo | Bar (receipt2) | 12-11-2021 18:49:14 | 12-11-2021 20:38:37 | - |
| 1038-16654 | 1 | 12-11-2021 20:43:10 | MASTERCARD | Sale | $149.16 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-11-2021 18:55:06 | 12-11-2021 20:43:27 | - |
| 1038-16654 | 1 | 12-11-2021 20:43:27 | VISA | Sale | $149.15 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-11-2021 18:55:06 | 12-11-2021 20:43:27 | - |
| 1038-16658 | 1 | 12-11-2021 20:56:21 | VISA | Sale | $198.15 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-11-2021 19:16:45 | 12-11-2021 20:55:47 | - |
| 1052-17637 | 1 | 12-11-2021 20:56:48 | MASTERCARD | Sale | $143.71 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-11-2021 19:48:10 | 12-11-2021 20:56:48 | - |
| 1038-16659 | 1 | 12-11-2021 21:02:46 | VISA | Sale | $252.59 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-11-2021 19:20:40 | 12-11-2021 21:02:46 | - |
| 1038-16655 | 1 | 12-11-2021 21:03:08 | VISA | Sale | $181.81 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-11-2021 19:02:20 | 12-11-2021 21:03:08 | - |
| 1038-16661 | 1 | 12-11-2021 21:13:36 | AMEX | Sale | $106.69 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-11-2021 20:22:43 | 12-11-2021 21:13:36 | - |
| 1052-17636 | 1 | 12-11-2021 21:24:48 | MASTERCARD | Sale | $381.06 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-11-2021 19:09:43 | 12-11-2021 21:24:48 | - |
| 1052-17640 | 1 | 12-11-2021 21:33:32 | VISA | Sale | $106.69 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-11-2021 20:12:15 | 12-11-2021 21:33:33 | - |
| 1052-17638 | 1 | 12-11-2021 21:37:14 | MASTERCARD | Sale | $341.84 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-11-2021 20:02:07 | 12-11-2021 21:37:14 | - |
| 1052-17641 | 1 | 12-11-2021 21:59:00 | MASTERCARD | Sale | $172.01 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-11-2021 20:33:56 | 12-11-2021 21:59:00 | - |
| 1038-16660 | 1 | 12-11-2021 21:59:25 | VISA | Sale | $432.23 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-11-2021 19:35:20 | 12-11-2021 21:59:26 | - |
| 1038-16657 | 1 | 12-11-2021 22:05:16 | VISA | Sale | $228.88 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-11-2021 19:13:15 | 12-11-2021 22:05:16 | - |
| 1038-16662 | 1 | 12-11-2021 22:10:49 | VISA | Sale | $394.10 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-11-2021 20:38:34 | 12-11-2021 22:10:49 | - |
| 1052-17642 | 1 | 12-11-2021 22:18:43 | VISA | Sale | $217.73 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-11-2021 20:36:31 | 12-11-2021 22:18:43 | - |
| 1052-17643 | 1 | 12-11-2021 22:24:41 | Cash | Sale | $168.75 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-11-2021 20:53:15 | 12-11-2021 22:24:42 | - |
| 1052-17644 | 1 | 12-11-2021 22:43:50 | AMEX | Sale | $252.57 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-11-2021 21:02:02 | 12-11-2021 22:43:50 | - |
| 1052-17645 | 1 | 12-11-2021 22:45:17 | AMEX | Sale | $659.78 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-11-2021 21:29:08 | 12-11-2021 22:45:18 | - |
| 1052-17639 | 1 | 12-11-2021 22:52:17 | MASTERCARD | Sale | $706.57 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-11-2021 20:04:54 | 12-11-2021 22:52:17 | - |
| 1052-17648 | 1 | 12-12-2021 15:47:38 | VISA | Sale | $280.90 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-12-2021 14:09:46 | 12-12-2021 15:47:39 | - |
| 1052-17646 | 1 | 12-12-2021 15:48:17 | DISCOVER | Sale | $188.35 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-12-2021 13:55:42 | 12-12-2021 15:48:17 | - |
| 1052-17647 | 1 | 12-12-2021 | MASTERCARD | Sale | $93.63 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-12-2021 | 12-12-2021 | - |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 16:06:02 | | | | | | | | 14:08:58 | 16:06:06 | |
| 105:-17647 | 1 | 12-12-2021 16:06:05 | MASTERCARD | Sale | $93.63 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-12-2021 14:08:58 | 12-12-2021 16:06:06 | - |
| 105:-17649 | 1 | 12-12-2021 16:15:29 | AMEX | Sale | $218.83 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-12-2021 15:02:33 | 12-12-2021 16:15:30 | - |
| 105:-17651 | 1 | 12-12-2021 17:09:11 | Cash | Sale | $70.00 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-12-2021 16:03:52 | 12-12-2021 16:49:56 | - |
| 105:-17651 | 1 | 12-12-2021 17:09:23 | Gift Certificate | Sale | $6.21 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-12-2021 16:03:52 | 12-12-2021 16:49:56 | - |
| 105:-17652 | 1 | 12-12-2021 18:18:12 | VISA | Sale | $150.00 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-12-2021 17:13:52 | 12-12-2021 18:19:01 | - |
| 105:-17652 | 1 | 12-12-2021 18:19:01 | Gift Certificate | Sale | $13.31 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-12-2021 17:13:52 | 12-12-2021 18:19:01 | - |
| 1038-16665 | 1 | 12-12-2021 18:23:49 | VISA | Sale | $305.93 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-12-2021 17:11:40 | 12-12-2021 18:23:50 | - |
| 105:-17653 | 1 | 12-12-2021 19:02:27 | VISA | Sale | $136.09 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-12-2021 17:26:15 | 12-12-2021 19:02:28 | - |
| 1038-16666 | 1 | 12-12-2021 19:54:21 | VISA | Sale | $413.72 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-12-2021 17:17:07 | 12-12-2021 19:54:25 | - |
| 1038-16666 | 1 | 12-12-2021 19:54:25 | VISA | Sale | $413.72 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-12-2021 17:17:07 | 12-12-2021 19:54:25 | - |
| 1038-16667 | 1 | 12-12-2021 20:22:06 | AMEX | Sale | $366.47 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-12-2021 18:36:43 | 12-12-2021 20:22:06 | - |
| 105:-17654 | 1 | 12-12-2021 20:22:32 | Cash | Sale | $78.39 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-12-2021 18:33:35 | 12-12-2021 20:22:33 | - |
| 1038-16668 | 1 | 12-12-2021 20:41:27 | MASTERCARD | Sale | $274.36 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-12-2021 19:04:59 | 12-12-2021 20:41:27 | - |
| 105:-17658 | 1 | 12-12-2021 20:48:06 | AMEX | Sale | $160.04 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-12-2021 19:48:26 | 12-12-2021 20:48:07 | - |
| 105:-17655 | 1 | 12-12-2021 20:51:00 | MASTERCARD | Sale | $252.61 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-12-2021 18:48:36 | 12-12-2021 20:51:00 | - |
| 1038-16670 | 1 | 12-12-2021 21:21:30 | VISA | Sale | $259.12 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-12-2021 20:07:19 | 12-12-2021 21:21:30 | - |
| 1038-16669 | 1 | 12-12-2021 21:27:47 | Cash | Sale | $505.18 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-12-2021 19:32:29 | 12-12-2021 21:27:47 | - |
| 105:-17656 | 1 | 12-12-2021 21:28:11 | VISA | Sale | $624.92 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-12-2021 19:13:55 | 12-12-2021 21:28:12 | - |
| 105:-17660 | 1 | 12-12-2021 21:52:43 | VISA | Sale | $226.45 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-12-2021 19:53:13 | 12-12-2021 21:52:43 | - |
| 105:-17663 | 1 | 12-12-2021 21:54:48 | VISA | Sale | $237.36 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-12-2021 20:21:21 | 12-12-2021 21:54:48 | - |
| 105:-17657 | 1 | 12-12-2021 21:56:19 | DISCOVER | Sale | $265.66 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-12-2021 19:15:53 | 12-12-2021 21:56:20 | - |
| 1038-16671 | 1 | 12-12-2021 21:58:22 | AMEX | Sale | $174.20 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-12-2021 20:31:33 | 12-12-2021 21:58:22 | - |
| 1038-16664 | 1 | 12-12-2021 21:59:26 | MASTERCARD | Sale | $401.23 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-12-2021 17:10:32 | 12-12-2021 21:59:42 | - |
| 1038-16664 | 1 | 12-12-2021 21:59:41 | Cash | Sale | $554.69 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-12-2021 17:10:32 | 12-12-2021 21:59:42 | - |
| 105:-17662 | 1 | 12-12-2021 22:08:44 | VISA | Sale | $364.72 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-12-2021 20:05:37 | 12-12-2021 22:08:45 | - |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 105:-17661 | 1 | 12-12-2021 22:12:08 | Cash | Sale | $285.25 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-12-2021 20:00:28 | 12-12-2021 22:12:08 | - |
| 105:-17664 | 1 | 12-12-2021 22:12:26 | AMEX | Sale | $254.76 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-12-2021 20:42:35 | 12-12-2021 22:12:26 | - |
| 1038-16672 | 1 | 12-12-2021 22:23:37 | VISA | Sale | $173.10 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-12-2021 20:45:13 | 12-12-2021 22:23:37 | - |
| 1038-16673 | 1 | 12-12-2021 22:55:28 | MASTERCARD | Sale | $213.40 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-12-2021 21:35:29 | 12-12-2021 22:55:29 | - |
| 105:-17659 | 1 | 12-12-2021 22:57:29 | VISA | Sale | $317.91 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-12-2021 19:52:46 | 12-12-2021 22:57:29 | - |
| 105:-17665 | 1 | 12-12-2021 22:59:00 | VISA | Sale | $48.99 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-12-2021 22:05:48 | 12-12-2021 22:59:00 | - |
| 105:-17666 | 1 | 12-12-2021 06:44:37 | MASTERCARD | Sale | $697.89 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-13-2021 05:59:57 | 12-13-2021 06:44:37 | - |
| 105:-17667 | 1 | 12-13-2021 18:10:09 | Cash | Sale | $562.88 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-13-2021 16:39:39 | 12-13-2021 18:10:10 | - |
| 1038-16674 | 1 | 12-13-2021 19:22:58 | VISA | Sale | $154.59 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-13-2021 17:48:32 | 12-13-2021 19:22:58 | - |
| 1038-16675 | 1 | 12-13-2021 19:37:10 | VISA | Sale | $213.39 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-13-2021 18:24:56 | 12-13-2021 19:37:10 | - |
| 105:-17670 | 1 | 12-13-2021 20:09:08 | AMEX | Sale | $108.88 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-13-2021 19:34:19 | 12-13-2021 20:09:08 | - |
| 105:-17668 | 1 | 12-13-2021 20:30:26 | AMEX | Sale | $845.92 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-13-2021 17:56:42 | 12-13-2021 20:30:26 | - |
| 105:-17669 | 1 | 12-13-2021 20:37:29 | VISA | Sale | $116.49 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-13-2021 19:23:12 | 12-13-2021 20:37:30 | - |
| 1038-16676 | 1 | 12-13-2021 21:01:28 | Cash | Sale | $215.57 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-13-2021 19:02:10 | 12-13-2021 21:01:29 | - |
| 105:-17671 | 1 | 12-13-2021 21:03:18 | VISA | Sale | $231.90 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-13-2021 19:35:05 | 12-13-2021 21:03:18 | - |
| 1038-16678 | 1 | 12-13-2021 21:09:28 | VISA | Sale | $103.43 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-13-2021 19:43:52 | 12-13-2021 21:09:28 | - |
| 105:-17672 | 1 | 12-13-2021 21:16:27 | VISA | Sale | $168.75 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-13-2021 19:47:17 | 12-13-2021 21:16:28 | - |
| 1038-16677 | 1 | 12-13-2021 21:19:17 | VISA | Sale | $529.12 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-13-2021 19:20:40 | 12-13-2021 21:19:18 | - |
| 1038-16679 | 1 | 12-13-2021 21:34:29 | AMEX | Sale | $209.04 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-13-2021 19:49:35 | 12-13-2021 21:34:29 | - |
| 105:-17674 | 1 | 12-13-2021 21:37:24 | AMEX | Sale | $388.68 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-13-2021 20:05:50 | 12-13-2021 21:37:24 | - |
| 105:-17675 | 1 | 12-13-2021 22:13:26 | Cash | Sale | $179.64 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-13-2021 20:14:34 | 12-13-2021 22:13:27 | - |
| 105:-17673 | 1 | 12-13-2021 22:25:16 | AMEX | Sale | $334.24 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-13-2021 19:48:38 | 12-13-2021 22:25:16 | - |
| 1038-16680 | 1 | 12-13-2021 22:30:27 | Cash | Sale | $166.58 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-13-2021 20:40:18 | 12-13-2021 22:30:28 | - |
| 105:-17676 | 1 | 12-13-2021 22:38:17 | VISA | Sale | $179.64 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-13-2021 21:30:13 | 12-13-2021 22:38:17 | - |
| 105:-17677 | 1 | 12-14-2021 16:28:15 | VISA | Sale | $222.09 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-14-2021 14:58:36 | 12-14-2021 16:28:15 | - |
| 1038-16682 | 1 | 12-14-2021 | MASTERCARD | Sale | $111.05 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-14-2021 | 12-14-2021 | |

| | | Date | Card | Type | Amount | | | Server | Panel | Date | Date | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 18:48:23 | | | | | | | | 17:27:03 | 18:48:27 | |
| 1038-16682 | 1 | 12-14-2021 18:48:27 | DISCOVER | Sale | $111.05 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-14-2021 17:27:03 | 12-14-2021 18:48:27 | - |
| 105:-17678 | 1 | 12-14-2021 19:37:29 | Cash | Sale | $362.54 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-14-2021 17:30:39 | 12-14-2021 19:37:30 | |
| 1038-16683 | 1 | 12-14-2021 19:38:10 | VISA | Sale | $155.68 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-14-2021 18:20:42 | 12-14-2021 19:38:11 | - |
| 1038-16681 | 1 | 12-14-2021 20:15:02 | AMEX | Sale | $358.18 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-14-2021 16:55:20 | 12-14-2021 20:15:02 | - |
| 1038-16686 | 1 | 12-14-2021 20:21:02 | VISA | Sale | $237.33 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-14-2021 18:38:41 | 12-14-2021 20:21:02 | - |
| 105:-17679 | 1 | 12-14-2021 20:29:09 | AMEX | Sale | $480.00 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-14-2021 18:06:47 | 12-14-2021 20:29:12 | - |
| 105:-17679 | 1 | 12-14-2021 20:29:12 | VISA | Sale | $248.35 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-14-2021 18:06:47 | 12-14-2021 20:29:12 | - |
| 1038-16685 | 1 | 12-14-2021 21:36:50 | AMEX | Sale | $610.78 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-14-2021 18:27:37 | 12-14-2021 21:36:51 | - |
| 105:-17684 | 1 | 12-14-2021 21:45:08 | VISA | Sale | $17.42 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-14-2021 21:44:02 | 12-14-2021 21:45:08 | - |
| 105:-17683 | 1 | 12-14-2021 22:03:41 | AMEX | Sale | $3,625.54 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-14-2021 21:40:25 | 12-14-2021 22:03:41 | - |
| 1038-16687 | 1 | 12-14-2021 22:10:38 | MASTERCARD | Sale | $249.31 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-14-2021 20:19:48 | 12-14-2021 22:10:38 | - |
| 105:-17681 | 1 | 12-14-2021 22:15:38 | AMEX | Sale | $325.54 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-14-2021 20:24:59 | 12-14-2021 22:15:40 | - |
| 105:-17685 | 1 | 12-14-2021 22:33:18 | VISA | Sale | $34.84 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-14-2021 22:31:39 | 12-14-2021 22:33:18 | - |
| 105:-17682 | 1 | 12-14-2021 22:51:48 | AMEX | Sale | $1,850.88 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-14-2021 21:33:40 | 12-14-2021 22:51:48 | - |
| 1038-16688 | 1 | 12-14-2021 22:53:34 | VISA | Sale | $187.25 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-14-2021 20:45:46 | 12-14-2021 22:53:34 | - |
| 1038-16689 | 1 | 12-14-2021 22:54:48 | AMEX | Sale | $289.60 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-14-2021 20:47:55 | 12-14-2021 22:54:48 | - |
| 1038-16690 | 1 | 12-14-2021 22:59:13 | AMEX | Sale | $45.00 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-14-2021 21:14:31 | 12-14-2021 22:59:17 | - |
| 1038-16690 | 1 | 12-14-2021 22:59:17 | VISA | Sale | $62.79 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-14-2021 21:14:31 | 12-14-2021 22:59:17 | - |
| 105:-17686 | 1 | 12-15-2021 14:04:25 | VISA | Sale | $229.73 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-15-2021 12:07:35 | 12-15-2021 14:04:25 | - |
| 105:-17688 | 1 | 12-15-2021 14:26:01 | AMEX | Sale | $74.04 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-15-2021 13:38:59 | 12-15-2021 14:26:01 | - |
| 105:-17687 | 1 | 12-15-2021 14:47:57 | VISA | Sale | $1,139.94 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-15-2021 12:38:42 | 12-15-2021 14:47:57 | - |
| 105:-17689 | 1 | 12-15-2021 17:38:09 | MASTERCARD | Sale | $374.52 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-15-2021 16:21:22 | 12-15-2021 17:38:09 | - |
| 1038-16691 | 1 | 12-15-2021 17:53:57 | MASTERCARD | Sale | $18.51 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-15-2021 17:52:23 | 12-15-2021 17:53:57 | - |
| 1038-16692 | 1 | 12-15-2021 18:18:06 | MASTERCARD | Sale | $90.37 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-15-2021 18:04:30 | 12-15-2021 18:18:06 | - |
| 105:-17690 | 1 | 12-15-2021 18:40:28 | VISA | Sale | $361.45 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-15-2021 17:35:58 | 12-15-2021 18:40:28 | - |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 105:-17691 | 1 | 12-15-2021 19:25:27 | VISA | Sale | $427.88 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-15-2021 17:56:50 | 12-15-2021 19:25:27 | - |
| 1038-16693 | 1 | 12-15-2021 20:48:46 | VISA | Sale | $3,808.42 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-15-2021 18:23:08 | 12-15-2021 20:48:46 | - |
| 105:-17692 | 1 | 12-15-2021 21:06:25 | VISA | Sale | $113.23 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-15-2021 18:28:31 | 12-15-2021 21:06:35 | - |
| 105:-17692 | 1 | 12-15-2021 21:06:35 | VISA | Sale | $113.23 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-15-2021 18:28:31 | 12-15-2021 21:06:35 | - |
| 105:-17693 | 1 | 12-15-2021 21:07:24 | AMEX | Sale | $105.06 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-15-2021 18:43:59 | 12-15-2021 21:07:29 | - |
| 105:-17693 | 1 | 12-15-2021 21:07:29 | AMEX | Sale | $105.06 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-15-2021 18:43:59 | 12-15-2021 21:07:29 | - |
| 105:-17694 | 1 | 12-15-2021 21:39:17 | Cash | Sale | $72.94 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-15-2021 19:05:03 | 12-15-2021 21:39:17 | - |
| 105:-17698 | 1 | 12-15-2021 21:41:11 | MASTERCARD | Sale | $167.12 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-15-2021 20:17:29 | 12-15-2021 21:41:16 | - |
| 105:-17698 | 1 | 12-15-2021 21:41:16 | MASTERCARD | Sale | $167.12 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-15-2021 20:17:29 | 12-15-2021 21:41:16 | - |
| 105:-17695 | 1 | 12-15-2021 21:48:04 | VISA | Sale | $123.03 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-15-2021 20:02:05 | 12-15-2021 21:48:04 | - |
| 1038-16694 | 1 | 12-15-2021 21:49:55 | AMEX | Sale | $195.97 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-15-2021 20:35:10 | 12-15-2021 21:49:56 | - |
| 105:-17701 | 1 | 12-15-2021 22:28:48 | VISA | Sale | $180.73 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-15-2021 21:24:36 | 12-15-2021 22:28:48 | - |
| 105:-17700 | 1 | 12-15-2021 22:33:53 | VISA | Sale | $324.43 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-15-2021 20:56:29 | 12-15-2021 22:33:53 | - |
| 105:-17696 | 1 | 12-15-2021 23:08:49 | MASTERCARD | Sale | $672.82 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-15-2021 20:02:57 | 12-15-2021 23:08:49 | - |
| 105:-17699 | 1 | 12-15-2021 23:21:22 | MASTERCARD | Sale | $207.95 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-15-2021 20:43:41 | 12-15-2021 23:21:22 | - |
| 105:-17697 | 1 | 12-15-2021 23:27:00 | MASTERCARD | Sale | $313.54 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-15-2021 20:12:46 | 12-15-2021 23:27:01 | - |
| 1038-16696 | 1 | 12-16-2021 15:42:41 | VISA | Sale | $130.65 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-16-2021 14:49:34 | 12-16-2021 15:42:41 | - |
| 1038-16695 | 1 | 12-16-2021 16:12:48 | AMEX | Sale | $164.40 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-16-2021 14:10:57 | 12-16-2021 16:12:48 | - |
| 105:-17702 | 1 | 12-16-2021 18:31:22 | VISA | Sale | $412.63 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-16-2021 17:20:42 | 12-16-2021 18:31:22 | - |
| 105:-17704 | 1 | 12-16-2021 18:40:22 | AMEX | Sale | $158.95 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-16-2021 17:34:28 | 12-16-2021 18:40:22 | - |
| 1038-16697 | 1 | 12-16-2021 19:13:17 | VISA | Sale | $370.17 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-16-2021 17:33:14 | 12-16-2021 19:13:17 | - |
| 1038-16699 | 1 | 12-16-2021 19:48:23 | AMEX | Sale | $287.43 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-16-2021 18:22:07 | 12-16-2021 19:48:24 | - |
| 1038-16698 | 1 | 12-16-2021 20:00:13 | VISA | Sale | $501.92 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-16-2021 17:38:54 | 12-16-2021 20:00:13 | - |
| 105:-17703 | 1 | 12-16-2021 20:05:43 | MASTERCARD | Sale | $619.49 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-16-2021 17:33:27 | 12-16-2021 20:05:43 | - |
| 1038-16700 | 1 | 12-16-2021 20:39:19 | VISA | Sale | $14.15 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-16-2021 19:47:02 | 12-16-2021 20:39:20 | - |
| 105:-17706 | 1 | 12-16-2021 | MASTERCARD | Sale | $104.51 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-16-2021 | 12-16-2021 | - |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 12-16-2021 20:45:29 | | | | | | | | 19:12:57 | 12-16-2021 20:45:29 | |
| 105:-17705 | 1 | 12-16-2021 21:01:02 | AMEX | Sale | $381.06 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-16-2021 18:32:58 | 12-16-2021 21:01:02 | - |
| 105:-17707 | 1 | 12-16-2021 21:05:34 | VISA | Sale | $523.68 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-16-2021 19:56:32 | 12-16-2021 21:05:35 | - |
| 1038-16702 | 1 | 12-16-2021 21:06:01 | AMEX | Sale | $323.35 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-16-2021 19:57:56 | 12-16-2021 21:06:01 | - |
| 1038-16704 | 1 | 12-16-2021 21:33:46 | AMEX | Sale | $691.15 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-16-2021 20:04:13 | 12-16-2021 21:33:46 | - |
| 1038-16703 | 1 | 12-16-2021 21:41:21 | AMEX | Sale | $133.90 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-16-2021 20:01:50 | 12-16-2021 21:41:21 | - |
| 1038-16705 | 1 | 12-16-2021 21:48:51 | VISA | Sale | $253.68 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-16-2021 20:17:41 | 12-16-2021 21:48:51 | - |
| 105:-17708 | 1 | 12-16-2021 22:51:39 | VISA | Sale | $242.78 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-16-2021 21:33:15 | 12-16-2021 22:51:39 | - |
| 105:-17709 | 1 | 12-17-2021 14:15:34 | VISA | Sale | $806.14 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-17-2021 12:08:38 | 12-17-2021 14:15:34 | - |
| 1038-16706 | 1 | 12-17-2021 18:26:36 | AMEX | Sale | $201.40 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-17-2021 17:36:48 | 12-17-2021 18:26:36 | - |
| 105:-17710 | 1 | 12-17-2021 18:30:19 | VISA | Sale | $309.20 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-17-2021 17:04:30 | 12-17-2021 18:30:19 | - |
| 105:-17713 | 1 | 12-17-2021 18:57:42 | MASTERCARD | Sale | $19.60 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-17-2021 18:30:57 | 12-17-2021 18:57:42 | - |
| 105:-17712 | 1 | 12-17-2021 19:03:58 | MASTERCARD | Sale | $117.59 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-17-2021 17:44:56 | 12-17-2021 19:03:58 | - |
| 105:-17714 | 1 | 12-17-2021 19:16:40 | VISA | Sale | $45.73 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-17-2021 19:13:38 | 12-17-2021 19:16:40 | - |
| 105:-17711 | 1 | 12-17-2021 19:35:33 | MASTERCARD | Sale | $976.59 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-17-2021 17:41:38 | 12-17-2021 19:35:33 | - |
| 1038-16707 | 1 | 12-17-2021 19:44:59 | VISA | Sale | $130.65 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-17-2021 18:17:55 | 12-17-2021 19:44:59 | - |
| 1038-16709 | 1 | 12-17-2021 20:10:50 | VISA | Sale | $235.17 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-17-2021 19:06:10 | 12-17-2021 20:10:50 | - |
| 105:-17716 | 1 | 12-17-2021 20:23:52 | VISA | Sale | $127.39 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-17-2021 19:36:14 | 12-17-2021 20:23:52 | - |
| 1038-16708 | 1 | 12-17-2021 20:33:24 | VISA | Sale | $123.00 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-17-2021 18:38:52 | 12-17-2021 20:33:36 | - |
| 1038-16708 | 1 | 12-17-2021 20:33:35 | AMEX | Sale | $233.02 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-17-2021 18:38:52 | 12-17-2021 20:33:36 | - |
| 1038-16711 | 1 | 12-17-2021 20:51:43 | DISCOVER | Sale | $100.00 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-17-2021 19:43:18 | 12-17-2021 20:56:02 | - |
| 1038-16711 | 1 | 12-17-2021 20:56:02 | VISA | Sale | $213.55 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-17-2021 19:43:18 | 12-17-2021 20:56:02 | - |
| 1038-16710 | 1 | 12-17-2021 21:09:44 | MASTERCARD | Sale | $621.68 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-17-2021 19:16:42 | 12-17-2021 21:09:45 | - |
| 105:-17718 | 1 | 12-17-2021 21:35:30 | AMEX | Sale | $383.23 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-17-2021 19:43:55 | 12-17-2021 21:35:30 | - |
| 105:-17724 | 1 | 12-17-2021 21:37:36 | VISA | Sale | $46.82 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-17-2021 21:23:54 | 12-17-2021 21:37:36 | - |
| 105:-17717 | 1 | 12-17-2021 21:41:01 | MASTERCARD | Sale | $204.69 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-17-2021 19:43:24 | 12-17-2021 21:41:01 | - |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1038-16714 | 1 | 12-17-2021 21:46:33 | AMEX | | Sale | $109.96 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-17-2021 20:32:36 | 12-17-2021 21:46:39 | - |
| 1038-16714 | 1 | 12-17-2021 21:46:39 | AMEX | | Sale | $109.96 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-17-2021 20:32:36 | 12-17-2021 21:46:39 | - |
| 105:-17715 | 1 | 12-17-2021 21:58:25 | VISA | | Sale | $495.37 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-17-2021 19:17:07 | 12-17-2021 21:58:25 | - |
| 105:-17720 | 1 | 12-17-2021 22:13:46 | VISA | | Sale | $71.04 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-17-2021 20:49:07 | 12-17-2021 22:13:51 | - |
| 105:-17720 | 1 | 12-17-2021 22:13:51 | Cash | | Sale | $194.61 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-17-2021 20:49:07 | 12-17-2021 22:13:51 | - |
| 1038-16713 | 1 | 12-17-2021 22:26:55 | VISA | | Sale | $353.83 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-17-2021 19:59:04 | 12-17-2021 22:26:55 | - |
| 105:-17722 | 1 | 12-17-2021 22:45:24 | Cash | | Sale | $153.50 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-17-2021 20:59:58 | 12-17-2021 22:45:25 | - |
| 105:-17725 | 1 | 12-17-2021 22:52:14 | VISA | | Sale | $155.69 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-17-2021 21:31:12 | 12-17-2021 22:52:14 | - |
| 105:-17719 | 1 | 12-17-2021 22:53:14 | DISCOVER | | Sale | $164.43 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-17-2021 20:43:05 | 12-17-2021 22:55:17 | - |
| 105:-17719 | 1 | 12-17-2021 22:54:43 | MASTERCARD | | Sale | $300.21 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-17-2021 20:43:05 | 12-17-2021 22:55:17 | - |
| 105:-17719 | 1 | 12-17-2021 22:55:16 | Cash | | Sale | $385.66 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-17-2021 20:43:05 | 12-17-2021 22:55:17 | - |
| 105:-17773 | 1 | 12-17-2021 23:03:29 | VISA | | Sale | $155.69 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-17-2021 21:18:09 | 12-17-2021 23:03:29 | - |
| 1038-16712 | 1 | 12-17-2021 23:38:42 | VISA | | Sale | $104.51 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-17-2021 19:51:30 | 12-17-2021 23:38:42 | - |
| 105:-17721 | 1 | 12-17-2021 23:56:17 | VISA | | Sale | $653.00 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-17-2021 20:57:01 | 12-17-2021 23:56:26 | - |
| 105:-17721 | 1 | 12-17-2021 23:56:25 | AMEX | | Sale | $577.95 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-17-2021 20:57:01 | 12-17-2021 23:56:26 | - |
| 1038-16715 | 1 | 12-17-2021 23:57:27 | AMEX | | Sale | $400.00 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-17-2021 21:27:53 | 12-17-2021 23:59:27 | - |
| 1038-16715 | 1 | 12-17-2021 23:57:43 | MASTERCARD | | Sale | $400.00 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-17-2021 21:27:53 | 12-17-2021 23:59:27 | - |
| 1038-16715 | 1 | 12-17-2021 23:58:14 | AMEX | | Sale | $400.00 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-17-2021 21:27:53 | 12-17-2021 23:59:27 | - |
| 1038-16715 | 1 | 12-17-2021 23:58:33 | VISA | | Sale | $200.00 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-17-2021 21:27:53 | 12-17-2021 23:59:27 | - |
| 1038-16715 | 1 | 12-17-2021 23:59:27 | MASTERCARD | | Sale | $383.34 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-17-2021 21:27:53 | 12-17-2021 23:59:27 | - |
| 105:-17726 | 1 | 12-18-2021 00:08:14 | VISA | | Sale | $253.63 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-17-2021 22:38:12 | 12-18-2021 00:08:29 | - |
| 105:-17726 | 1 | 12-18-2021 00:08:28 | Cash | | Sale | $248.00 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-17-2021 22:38:12 | 12-18-2021 00:08:29 | - |
| 105:-17727 | 1 | 12-18-2021 14:10:59 | MASTERCARD | | Sale | $214.48 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-18-2021 13:18:05 | 12-18-2021 14:10:59 | - |
| 105:-17728 | 1 | 12-18-2021 17:55:05 | VISA | | Sale | $308.11 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-18-2021 17:08:54 | 12-18-2021 17:55:05 | - |
| 105:-17729 | 1 | 12-18-2021 19:15:28 | VISA | | Sale | $565.06 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-18-2021 17:25:22 | 12-18-2021 19:15:28 | - |
| 1038-16718 | 1 | 12-18-2021 | VISA | | Sale | $289.60 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-18-2021 | 12-18-2021 | - |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1038-16717 | 1 | 12-18-2021 19:27:06 | VISA | Sale | $93.60 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-18-2021 18:17:09 | 12-18-2021 19:27:28 | - |
| 1038-16717 | 1 | 12-18-2021 19:27:28 | MASTERCARD | Sale | $93.67 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-18-2021 18:17:09 | 12-18-2021 19:27:28 | - |
| 105:-17732 | 1 | 12-18-2021 19:28:13 | AMEX | Sale | $238.44 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-18-2021 18:22:13 | 12-18-2021 19:28:14 | - |
| 105:-17740 | 1 | 12-18-2021 19:38:01 | VISA | Sale | $8.71 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-18-2021 19:31:54 | 12-18-2021 19:38:02 | - |
| 105:-17731 | 1 | 12-18-2021 19:39:35 | AMEX | Sale | $456.18 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-18-2021 18:18:44 | 12-18-2021 19:39:35 | - |
| 105:-17730 | 1 | 12-18-2021 19:45:10 | VISA | Sale | $174.20 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-18-2021 18:12:02 | 12-18-2021 19:45:11 | - |
| 105:-17733 | 1 | 12-18-2021 19:51:40 | VISA | Sale | $286.34 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-18-2021 18:23:45 | 12-18-2021 19:51:41 | - |
| 105:-17735 | 1 | 12-18-2021 20:02:11 | AMEX | Sale | $193.79 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-18-2021 18:40:16 | 12-18-2021 20:02:12 | - |
| 1038-16719 | 1 | 12-18-2021 20:11:42 | VISA | Sale | $283.07 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-18-2021 18:39:50 | 12-18-2021 20:11:43 | - |
| 1038-16720 | 1 | 12-18-2021 20:25:09 | MASTERCARD | Sale | $487.23 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-18-2021 18:43:09 | 12-18-2021 20:25:09 | - |
| 1038-16716 | 1 | 12-18-2021 20:25:18 | MASTERCARD | Sale | $784.98 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-18-2021 17:31:17 | 12-18-2021 20:25:18 | - |
| 105:-17737 | 1 | 12-18-2021 20:26:45 | VISA | Sale | $268.92 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-18-2021 18:58:30 | 12-18-2021 20:26:46 | - |
| 1038-16721 | 1 | 12-18-2021 20:31:07 | DISCOVER | Sale | $286.44 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-18-2021 18:47:39 | 12-18-2021 20:31:07 | - |
| 105:-17738 | 1 | 12-18-2021 20:42:41 | AMEX | Sale | $1,046.30 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-18-2021 19:00:26 | 12-18-2021 20:42:41 | - |
| 1038-16723 | 1 | 12-18-2021 20:55:57 | AMEX | Sale | $656.51 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-18-2021 19:48:17 | 12-18-2021 20:55:57 | - |
| 105:-17739 | 1 | 12-18-2021 21:03:05 | MASTERCARD | Sale | $234.08 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-18-2021 19:17:39 | 12-18-2021 21:03:05 | - |
| 105:-17742 | 1 | 12-18-2021 21:19:40 | MASTERCARD | Sale | $210.11 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-18-2021 19:49:14 | 12-18-2021 21:19:40 | - |
| 1038-16722 | 1 | 12-18-2021 21:29:22 | VISA | Sale | $388.66 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-18-2021 19:17:59 | 12-18-2021 21:29:22 | - |
| 1038-16725 | 1 | 12-18-2021 21:56:24 | AMEX | Sale | $232.98 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-18-2021 20:39:16 | 12-18-2021 21:56:25 | - |
| 1038-16724 | 1 | 12-18-2021 22:09:00 | VISA | Sale | $361.46 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-18-2021 19:59:27 | 12-18-2021 22:09:00 | - |
| 105:-17744 | 1 | 12-18-2021 22:18:30 | AMEX | Sale | $229.71 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-18-2021 20:43:14 | 12-18-2021 22:18:30 | - |
| 105:-17736 | 1 | 12-18-2021 22:18:52 | MASTERCARD | Sale | $887.32 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-18-2021 18:51:35 | 12-18-2021 22:18:52 | - |
| 105:-17741 | 1 | 12-18-2021 22:24:16 | VISA | Sale | $278.71 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-18-2021 19:41:44 | 12-18-2021 22:24:16 | - |
| 105:-17745 | 1 | 12-18-2021 22:55:20 | VISA | Sale | $288.52 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-18-2021 21:12:18 | 12-18-2021 22:55:21 | - |
| 105:-17746 | 1 | 12-18-2021 22:56:16 | VISA | Sale | $251.00 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-18-2021 21:15:22 | 12-18-2021 22:56:41 | - |

| 1038-16727 | 1 | 12-18-2021 22:56:22 | AMEX | Sale | $218.84 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-18-2021 22:03:38 | 12-18-2021 22:56:22 | - |
| 105:-17746 | 1 | 12-18-2021 22:56:35 | VISA | Sale | $125.45 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-18-2021 21:15:22 | 12-18-2021 22:56:41 | - |
| 105:-17746 | 1 | 12-18-2021 22:56:41 | VISA | Sale | $125.46 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-18-2021 21:15:22 | 12-18-2021 22:56:41 | - |
| 1038-16726 | 1 | 12-18-2021 23:01:08 | MASTERCARD | Sale | $612.95 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-18-2021 21:41:40 | 12-18-2021 23:01:08 | - |
| 105:-17743 | 1 | 12-18-2021 23:09:09 | AMEX | Sale | $1,315.21 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-18-2021 20:08:40 | 12-18-2021 23:09:09 | - |
| 105:-17748 | 1 | 12-19-2021 18:23:37 | MASTERCARD | Sale | $160.04 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-19-2021 17:15:51 | 12-19-2021 18:23:38 | - |
| 105:-17750 | 1 | 12-19-2021 18:25:42 | DISCOVER | Sale | $123.03 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-19-2021 17:42:29 | 12-19-2021 18:25:42 | - |
| 105:-17749 | 1 | 12-19-2021 18:37:16 | VISA | Sale | $199.23 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-19-2021 17:38:01 | 12-19-2021 18:37:17 | - |
| 105:-17747 | 1 | 12-19-2021 19:07:46 | MASTERCARD | Sale | $291.77 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-19-2021 17:14:55 | 12-19-2021 19:07:46 | - |
| 105:-17752 | 1 | 12-19-2021 19:18:06 | VISA | Sale | $295.05 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-19-2021 18:00:28 | 12-19-2021 19:18:06 | - |
| 105:-17753 | 1 | 12-19-2021 19:40:42 | VISA | Sale | $169.84 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-19-2021 18:09:40 | 12-19-2021 19:40:42 | - |
| 105:-17756 | 1 | 12-19-2021 19:46:42 | VISA | Sale | $211.21 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-19-2021 18:30:06 | 12-19-2021 19:46:42 | - |
| 105:-17751 | 1 | 12-19-2021 19:52:10 | VISA | Sale | $235.16 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-19-2021 17:44:37 | 12-19-2021 19:52:10 | - |
| 105:-17761 | 1 | 12-19-2021 19:53:23 | VISA | Sale | $272.19 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-19-2021 19:09:08 | 12-19-2021 19:53:23 | - |
| 105:-17754 | 1 | 12-19-2021 19:57:11 | VISA | Sale | $321.17 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-19-2021 18:23:13 | 12-19-2021 19:57:11 | - |
| 1038-16728 | 1 | 12-19-2021 20:15:40 | DISCOVER | Sale | $223.18 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-19-2021 18:17:31 | 12-19-2021 20:15:40 | - |
| 105:-17757 | 1 | 12-19-2021 20:30:17 | VISA | Sale | $125.21 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-19-2021 18:51:40 | 12-19-2021 20:30:18 | - |
| 105:-17760 | 1 | 12-19-2021 20:40:34 | MASTERCARD | Sale | $434.42 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-19-2021 19:06:20 | 12-19-2021 20:40:34 | - |
| 1038-16729 | 1 | 12-19-2021 20:41:54 | VISA | Sale | $302.67 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-19-2021 19:19:29 | 12-19-2021 20:41:55 | - |
| 105:-17763 | 1 | 12-19-2021 20:43:56 | MASTERCARD | Sale | $335.33 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-19-2021 19:31:31 | 12-19-2021 20:43:56 | - |
| 105:-17755 | 1 | 12-19-2021 20:46:05 | VISA | Sale | $455.06 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-19-2021 18:28:30 | 12-19-2021 20:46:05 | - |
| 1038-16730 | 1 | 12-19-2021 20:48:59 | VISA | Sale | $217.75 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-19-2021 19:37:40 | 12-19-2021 20:49:00 | - |
| 105:-17762 | 1 | 12-19-2021 21:08:21 | VISA | Sale | $360.37 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-19-2021 19:23:49 | 12-19-2021 21:08:21 | - |
| 105:-17759 | 1 | 12-19-2021 21:20:09 | VISA | Sale | $276.16 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-19-2021 18:58:20 | 12-19-2021 21:22:14 | - |
| 105:-17759 | 1 | 12-19-2021 21:22:14 | AMEX | Sale | $115.78 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-19-2021 18:58:20 | 12-19-2021 21:22:14 | - |
| 1038-16731 | 1 | 12-19-2021 | VISA | Sale | $92.54 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-19-2021 | 12-19-2021 | - |

| | | 21:25:34 | | | | | | | | 20:03:46 | 21:25:34 | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 1038-16735 | 1 | 12-19-2021 21:35:30 | VISA | Sale | $204.69 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-19-2021 20:46:26 | 12-19-2021 21:35:30 | - |
| 1038-16732 | 1 | 12-19-2021 21:39:48 | MASTERCARD | Sale | $369.09 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-19-2021 20:18:44 | 12-19-2021 21:39:48 | - |
| 105:-17758 | 1 | 12-19-2021 21:50:40 | VISA | Sale | $425.00 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-19-2021 18:54:39 | 12-19-2021 21:50:57 | - |
| 105:-17758 | 1 | 12-19-2021 21:50:56 | Cash | Sale | $421.54 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-19-2021 18:54:39 | 12-19-2021 21:50:57 | - |
| 1038-16734 | 1 | 12-19-2021 21:52:42 | VISA | Sale | $191.62 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-19-2021 20:35:57 | 12-19-2021 21:52:42 | - |
| 105:-17764 | 1 | 12-19-2021 21:58:23 | MASTERCARD | Sale | $79.47 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-19-2021 19:51:16 | 12-19-2021 21:58:28 | - |
| 105:-17764 | 1 | 12-19-2021 21:58:28 | VISA | Sale | $79.47 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-19-2021 19:51:16 | 12-19-2021 21:58:28 | - |
| 105:-17766 | 1 | 12-19-2021 22:03:15 | VISA | Sale | $181.82 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-19-2021 21:15:01 | 12-19-2021 22:03:15 | - |
| 1038-16733 | 1 | 12-19-2021 22:13:45 | VISA | Sale | $221.00 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-19-2021 20:28:11 | 12-19-2021 22:13:45 | - |
| 105:-17765 | 1 | 12-19-2021 22:52:18 | VISA | Sale | $1,142.08 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-19-2021 20:35:47 | 12-19-2021 22:52:18 | - |
| 105:-17767 | 1 | 12-20-2021 15:37:12 | DISCOVER | Sale | $143.71 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-20-2021 15:03:34 | 12-20-2021 15:37:12 | - |
| 105:-17768 | 1 | 12-20-2021 19:05:48 | MASTERCARD | Sale | $434.41 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-20-2021 17:31:44 | 12-20-2021 19:05:48 | - |
| 1038-16738 | 1 | 12-20-2021 19:24:27 | AMEX | Sale | $287.42 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-20-2021 18:31:29 | 12-20-2021 19:24:28 | - |
| 105:-17769 | 1 | 12-20-2021 19:34:31 | AMEX | Sale | $241.69 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-20-2021 18:13:07 | 12-20-2021 19:34:31 | - |
| 1038-16737 | 1 | 12-20-2021 19:36:39 | MASTERCARD | Sale | $254.75 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-20-2021 17:58:26 | 12-20-2021 19:36:39 | - |
| 1038-16740 | 1 | 12-20-2021 20:07:39 | MASTERCARD | Sale | $154.60 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-20-2021 18:54:20 | 12-20-2021 20:07:39 | - |
| 105:-17770 | 1 | 12-20-2021 20:23:16 | VISA | Sale | $288.52 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-20-2021 18:40:52 | 12-20-2021 20:23:16 | - |
| 1038-16741 | 1 | 12-20-2021 20:29:06 | VISA | Sale | $143.71 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-20-2021 19:31:36 | 12-20-2021 20:29:07 | - |
| 105:-17772 | 1 | 12-20-2021 20:44:40 | MASTERCARD | Sale | $131.74 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-20-2021 18:59:47 | 12-20-2021 20:44:40 | - |
| 105:-17774 | 1 | 12-20-2021 20:59:44 | VISA | Sale | $129.57 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-20-2021 19:20:34 | 12-20-2021 20:59:44 | - |
| 1038-16742 | 1 | 12-20-2021 21:48:40 | Cash | Sale | $160.00 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-20-2021 19:41:51 | 12-20-2021 21:49:13 | - |
| 1038-16742 | 1 | 12-20-2021 21:49:05 | VISA | Sale | $141.55 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-20-2021 19:41:51 | 12-20-2021 21:49:13 | - |
| 1038-16742 | 1 | 12-20-2021 21:49:12 | VISA | Sale | $141.55 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-20-2021 19:41:51 | 12-20-2021 21:49:13 | - |
| 105:-17775 | 1 | 12-20-2021 21:49:47 | VISA | Sale | $151.33 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-20-2021 20:01:16 | 12-20-2021 21:49:48 | - |
| 105:-17773 | 1 | 12-20-2021 21:50:25 | AMEX | Sale | $252.57 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-20-2021 19:13:56 | 12-20-2021 21:50:25 | - |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 105:-17771 | 1 | 12-20-2021 21:51:50 | AMEX | Sale | $483.41 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-20-2021 18:48:35 | 12-20-2021 21:51:50 | - |
| 105:-17776 | 1 | 12-20-2021 22:01:02 | AMEX | Sale | $865.54 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-20-2021 20:08:03 | 12-20-2021 22:01:02 | - |
| 1038-16743 | 1 | 12-20-2021 22:06:44 | MASTERCARD | Sale | $1,375.06 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-20-2021 19:44:09 | 12-20-2021 22:06:44 | - |
| 105:-17777 | 1 | 12-20-2021 22:08:09 | VISA | Sale | $175.28 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-20-2021 21:03:31 | 12-20-2021 22:08:09 | - |
| 105:-17778 | 1 | 12-20-2021 22:26:02 | AMEX | Sale | $47.90 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-20-2021 22:21:20 | 12-20-2021 22:26:02 | - |
| 1038-16739 | 1 | 12-20-2021 22:27:45 | Cash | Sale | $121.94 | $0.00 | $0.00 | Imran | Bar (receipt2) | 12-20-2021 18:49:53 | 12-20-2021 20:03:22 | - |
| 105:-17779 | 1 | 12-21-2021 15:49:39 | VISA | Sale | $232.98 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-21-2021 14:14:41 | 12-21-2021 15:49:40 | - |
| 105:-17780 | 1 | 12-21-2021 19:00:27 | VISA | Sale | $303.76 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-21-2021 16:09:01 | 12-21-2021 19:00:28 | - |
| 1038-16744 | 1 | 12-21-2021 19:27:38 | MASTERCARD | Sale | $636.91 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-21-2021 18:10:19 | 12-21-2021 19:27:38 | - |
| 1038-16745 | 1 | 12-21-2021 20:21:35 | MASTERCARD | Sale | $284.16 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-21-2021 18:37:54 | 12-21-2021 20:21:36 | - |
| 105:-17783 | 1 | 12-21-2021 20:22:28 | VISA | Sale | $87.10 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-21-2021 19:25:14 | 12-21-2021 20:22:28 | - |
| 105:-17785 | 1 | 12-21-2021 21:01:31 | AMEX | Sale | $166.58 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-21-2021 20:16:13 | 12-21-2021 21:01:31 | - |
| 105:-17781 | 1 | 12-21-2021 21:17:24 | DISCOVER | Sale | $167.22 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-21-2021 19:39:11 | 12-21-2021 21:18:11 | - |
| 105:-17784 | 1 | 12-21-2021 21:17:46 | VISA | Sale | $83.61 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-21-2021 19:39:11 | 12-21-2021 21:18:11 | - |
| 105:-17784 | 1 | 12-21-2021 21:18:03 | MASTERCARD | Sale | $83.61 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-21-2021 19:39:11 | 12-21-2021 21:18:11 | - |
| 105:-17784 | 1 | 12-21-2021 21:18:11 | AMEX | Sale | $83.63 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-21-2021 19:39:11 | 12-21-2021 21:18:11 | - |
| 105:-17788 | 1 | 12-21-2021 21:22:49 | VISA | Sale | $76.21 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-21-2021 20:35:33 | 12-21-2021 21:22:49 | - |
| 105:-17786 | 1 | 12-21-2021 21:36:12 | MASTERCARD | Sale | $207.94 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-21-2021 20:23:04 | 12-21-2021 21:36:12 | - |
| 1038-16747 | 1 | 12-21-2021 21:36:39 | VISA | Sale | $273.27 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-21-2021 20:08:56 | 12-21-2021 21:36:39 | - |
| 1038-16746 | 1 | 12-21-2021 21:40:31 | MASTERCARD | Sale | $327.71 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-21-2021 19:45:29 | 12-21-2021 21:40:31 | - |
| 105:-17787 | 1 | 12-21-2021 21:42:23 | MASTERCARD | Sale | $153.51 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-21-2021 20:35:36 | 12-21-2021 21:42:24 | - |
| 105:-17791 | 1 | 12-21-2021 22:15:03 | VISA | Sale | $194.87 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-21-2021 21:01:46 | 12-21-2021 22:15:03 | - |
| 105:-17789 | 1 | 12-21-2021 22:42:41 | MASTERCARD | Sale | $209.03 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-21-2021 20:36:23 | 12-21-2021 22:42:43 | - |
| 105:-17789 | 1 | 12-21-2021 22:42:43 | VISA | Sale | $209.03 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-21-2021 20:36:23 | 12-21-2021 22:42:43 | - |
| 1038-16748 | 1 | 12-22-2021 14:14:19 | Cash | Sale | $191.62 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-22-2021 12:53:36 | 12-22-2021 14:14:20 | - |
| 1038-16749 | 1 | 12-22-2021 | VISA | Sale | $175.29 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-22-2021 | 12-22-2021 | - |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1038-16750 | 1 | 12-22-2021 15:01:59 | MASTERCARD | | Sale | $528.04 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-22-2021 14:01:31 | 12-22-2021 15:01:59 | - |
| 1038-16751 | 1 | 12-22-2021 16:03:06 | MASTERCARD | | Sale | $582.48 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-22-2021 15:13:38 | 12-22-2021 16:03:06 | - |
| 105?-17792 | 1 | 12-22-2021 16:19:00 | AMEX | | Sale | $190.53 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-22-2021 15:22:37 | 12-22-2021 16:19:00 | - |
| 1038-16752 | 1 | 12-22-2021 18:03:50 | MASTERCARD | | Sale | $258.03 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-22-2021 16:59:49 | 12-22-2021 18:03:50 | - |
| 105?-17793 | 1 | 12-22-2021 19:46:20 | MASTERCARD | | Sale | $395.20 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-22-2021 17:46:43 | 12-22-2021 19:46:20 | - |
| 1038-16753 | 1 | 12-22-2021 20:27:13 | MASTERCARD | | Sale | $123.02 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-22-2021 18:48:06 | 12-22-2021 20:27:14 | - |
| 105?-17796 | 1 | 12-22-2021 20:53:58 | VISA | | Sale | $124.12 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-22-2021 19:50:53 | 12-22-2021 20:53:58 | - |
| 105?-17797 | 1 | 12-22-2021 21:04:03 | VISA | | Sale | $264.56 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-22-2021 19:59:06 | 12-22-2021 21:04:03 | - |
| 1038-16754 | 1 | 12-22-2021 21:18:44 | AMEX | | Sale | $208.49 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-22-2021 18:51:29 | 12-22-2021 21:18:52 | - |
| 1038-16755 | 1 | 12-22-2021 21:18:50 | MASTERCARD | | Sale | $419.17 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-22-2021 19:20:58 | 12-22-2021 21:18:50 | - |
| 1038-16754 | 1 | 12-22-2021 21:18:51 | VISA | | Sale | $208.49 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-22-2021 18:51:29 | 12-22-2021 21:18:52 | - |
| 105?-17794 | 1 | 12-22-2021 21:26:33 | MASTERCARD | | Sale | $472.48 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-22-2021 19:00:23 | 12-22-2021 21:26:33 | - |
| 105?-17798 | 1 | 12-22-2021 21:27:01 | Cash | | Sale | $111.05 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-22-2021 20:29:52 | 12-22-2021 21:27:01 | - |
| 105?-17795 | 1 | 12-22-2021 21:28:51 | MASTERCARD | | Sale | $428.96 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-22-2021 19:41:28 | 12-22-2021 21:28:51 | - |
| 1038-16758 | 1 | 12-22-2021 21:41:26 | VISA | | Sale | $656.51 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-22-2021 19:39:52 | 12-22-2021 21:41:26 | - |
| 1038-16756 | 1 | 12-22-2021 21:42:06 | Cash | | Sale | $78.39 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-22-2021 19:26:06 | 12-22-2021 21:42:06 | - |
| 105?-17799 | 1 | 12-22-2021 21:56:38 | AMEX | | Sale | $104.51 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-22-2021 21:22:09 | 12-22-2021 21:56:38 | - |
| 1038-16759 | 1 | 12-22-2021 21:57:42 | AMEX | | Sale | $229.72 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-22-2021 20:14:53 | 12-22-2021 21:57:43 | - |
| 1038-16757 | 1 | 12-23-2021 17:02:54 | MASTERCARD | | Sale | $174.20 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-22-2021 19:33:41 | 12-22-2021 21:33:24 | - |
| 105?-17805 | 1 | 12-23-2021 18:15:56 | Cash | | Sale | $8.71 | $0.00 | $0.00 | Imran | Bar (receipt2) | 12-23-2021 18:13:32 | 12-23-2021 18:15:57 | - |
| 105?-17800 | 1 | 12-23-2021 18:28:02 | AMEX | | Sale | $302.66 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-23-2021 16:58:25 | 12-23-2021 18:28:02 | - |
| 1038-16760 | 1 | 12-23-2021 18:52:48 | MASTERCARD | | Sale | $324.44 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-23-2021 17:11:28 | 12-23-2021 18:52:48 | - |
| 105?-17802 | 1 | 12-23-2021 19:08:01 | MASTERCARD | | Sale | $129.55 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-23-2021 17:51:21 | 12-23-2021 19:08:01 | - |
| 105?-17801 | 1 | 12-23-2021 19:08:59 | MASTERCARD | | Sale | $227.54 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-23-2021 17:44:15 | 12-23-2021 19:08:59 | - |
| 105?-17804 | 1 | 12-23-2021 19:09:54 | Cash | | Sale | $207.95 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-23-2021 18:05:28 | 12-23-2021 19:09:54 | - |

| 105:-17803 | 1 | 12-23-2021 19:12:46 | VISA | Sale | $223.19 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-23-2021 18:02:23 | 12-23-2021 19:12:46 | - |
| 1038-16761 | 1 | 12-23-2021 19:24:13 | MASTERCARD | Sale | $217.74 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-23-2021 17:50:38 | 12-23-2021 19:24:14 | - |
| 105:-17806 | 1 | 12-23-2021 20:00:31 | VISA | Sale | $321.18 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-23-2021 18:22:02 | 12-23-2021 20:00:31 | - |
| 1038-16766 | 1 | 12-23-2021 20:04:04 | VISA | Sale | $98.53 | $0.00 | $0.00 | Imran | Bar (receipt2) | 12-23-2021 18:48:00 | 12-23-2021 20:04:29 | - |
| 1038-16766 | 1 | 12-23-2021 20:04:14 | MASTERCARD | Sale | $98.53 | $0.00 | $0.00 | Imran | Bar (receipt2) | 12-23-2021 18:48:00 | 12-23-2021 20:04:29 | - |
| 1038-16766 | 1 | 12-23-2021 20:04:26 | DISCOVER | Sale | $98.53 | $0.00 | $0.00 | Imran | Bar (receipt2) | 12-23-2021 18:48:00 | 12-23-2021 20:04:29 | - |
| 1038-16766 | 1 | 12-23-2021 20:04:29 | VISA | Sale | $98.52 | $0.00 | $0.00 | Imran | Bar (receipt2) | 12-23-2021 18:48:00 | 12-23-2021 20:04:29 | - |
| 1038-16762 | 1 | 12-23-2021 20:12:29 | Cash | Sale | $917.80 | $0.00 | $0.00 | Inran | Bar (receipt2) | 12-23-2021 17:54:02 | 12-23-2021 20:12:29 | - |
| 1038-16763 | 1 | 12-23-2021 20:13:35 | MASTERCARD | Sale | $367.96 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-23-2021 18:01:07 | 12-23-2021 20:13:35 | - |
| 105:-17807 | 1 | 12-23-2021 20:32:07 | VISA | Sale | $379.98 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-23-2021 18:32:07 | 12-23-2021 20:32:07 | - |
| 105:-17809 | 1 | 12-23-2021 20:40:07 | VISA | Sale | $119.75 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-23-2021 19:44:39 | 12-23-2021 20:40:07 | - |
| 1038-16768 | 1 | 12-23-2021 20:51:05 | Cash | Sale | $164.39 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-23-2021 19:28:45 | 12-23-2021 20:51:06 | - |
| 1038-16773 | 1 | 12-23-2021 21:07:35 | Cash | Sale | $37.02 | $0.00 | $0.00 | Imran | Bar (receipt2) | 12-23-2021 21:05:48 | 12-23-2021 21:07:36 | - |
| 105:-17812 | 1 | 12-23-2021 21:08:08 | VISA | Sale | $326.62 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-23-2021 19:52:16 | 12-23-2021 21:08:08 | - |
| 105:-17814 | 1 | 12-23-2021 21:13:17 | VISA | Sale | $103.98 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-23-2021 20:18:43 | 12-23-2021 21:13:29 | - |
| 105:-17814 | 1 | 12-23-2021 21:13:29 | VISA | Sale | $103.98 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-23-2021 20:18:43 | 12-23-2021 21:13:29 | - |
| 105:-17810 | 1 | 12-23-2021 21:20:22 | VISA | Sale | $164.40 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-23-2021 19:46:03 | 12-23-2021 21:20:22 | - |
| 1038-16772 | 1 | 12-23-2021 21:35:32 | Cash | Sale | $93.63 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-23-2021 20:30:13 | 12-23-2021 21:35:33 | - |
| 105:-17811 | 1 | 12-23-2021 21:36:41 | MASTERCARD | Sale | $213.38 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-23-2021 19:48:50 | 12-23-2021 21:36:41 | - |
| 1038-16767 | 1 | 12-23-2021 21:41:33 | VISA | Sale | $580.29 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-23-2021 19:17:06 | 12-23-2021 21:41:33 | - |
| 1038-16769 | 1 | 12-23-2021 21:47:50 | VISA | Sale | $439.85 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-23-2021 20:11:54 | 12-23-2021 21:47:50 | - |
| 105:-17813 | 1 | 12-23-2021 21:54:48 | VISA | Sale | $196.18 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-23-2021 20:09:35 | 12-23-2021 21:55:51 | - |
| 105:-17813 | 1 | 12-23-2021 21:55:01 | DISCOVER | Sale | $196.18 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-23-2021 20:09:35 | 12-23-2021 21:55:51 | - |
| 105:-17813 | 1 | 12-23-2021 21:55:50 | Cash | Sale | $325.14 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-23-2021 20:09:35 | 12-23-2021 21:55:51 | - |
| 1038-16771 | 1 | 12-23-2021 21:58:15 | VISA | Sale | $197.06 | $0.00 | $0.00 | Imran | Bar (receipt2) | 12-23-2021 20:26:02 | 12-23-2021 21:58:29 | - |
| 1038-16771 | 1 | 12-23-2021 | VISA | Sale | $98.53 | $0.00 | $0.00 | Imran | Bar (receipt2) | 12-23-2021 | 12-23-2021 | - |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 21:58:24 | | | | | | | | | 20:26:02 | 21:58:29 | |
| 1038-16771 | 1 | 12-23-2021 21:58:28 | VISA | Sale | $98.54 | $0.00 | $0.00 | Imran | Bar (receipt2) | | 12-23-2021 20:26:02 | 12-23-2021 21:58:29 | - |
| 105?-17817 | 1 | 12-23-2021 22:04:36 | VISA | Sale | $113.23 | $0.00 | $0.00 | Imran | Bar (receipt2) | | 12-23-2021 20:52:36 | 12-23-2021 22:04:36 | - |
| 105?-17816 | 1 | 12-23-2021 22:11:34 | VISA | Sale | $127.38 | $0.00 | $0.00 | Imran | Bar (receipt2) | | 12-23-2021 20:51:44 | 12-23-2021 22:11:34 | - |
| 105?-17815 | 1 | 12-23-2021 22:13:21 | VISA | Sale | $255.86 | $0.00 | $0.00 | Damian | Bar (receipt2) | | 12-23-2021 20:40:43 | 12-23-2021 22:13:21 | - |
| 105?-17808 | 1 | 12-23-2021 22:20:48 | Cash | Sale | $76.21 | $0.00 | $0.00 | Imran | Bar (receipt2) | | 12-23-2021 19:19:58 | 12-23-2021 22:20:49 | - |
| 1038-16775 | 1 | 12-23-2021 22:28:11 | VISA | Sale | $271.09 | $0.00 | $0.00 | Everardo | Bar (receipt2) | | 12-23-2021 21:44:31 | 12-23-2021 22:28:12 | - |
| 1038-16770 | 1 | 12-23-2021 22:40:45 | VISA | Sale | $153.51 | $0.00 | $0.00 | Damian | Bar (receipt2) | | 12-23-2021 20:16:24 | 12-23-2021 22:40:45 | - |
| 1038-16765 | 1 | 12-23-2021 22:41:21 | VISA | Sale | $525.21 | $0.00 | $0.00 | Damian | Bar (receipt2) | | 12-23-2021 18:46:30 | 12-23-2021 22:41:21 | - |
| 1038-16774 | 1 | 12-23-2021 22:48:43 | VISA | Sale | $243.88 | $0.00 | $0.00 | Everardo | Bar (receipt2) | | 12-23-2021 21:13:09 | 12-23-2021 22:48:43 | - |
| 1038-16764 | 1 | 12-23-2021 22:57:59 | Cash | Sale | $146.98 | $0.00 | $0.00 | Damian | Bar (receipt2) | | 12-23-2021 18:13:35 | 12-23-2021 20:11:27 | - |
| 1038-16776 | 1 | 12-27-2021 18:42:23 | VISA | Sale | $213.39 | $0.00 | $0.00 | Damian | Bar (receipt2) | | 12-27-2021 17:46:51 | 12-27-2021 18:42:23 | - |
| 105?-17819 | 1 | 12-27-2021 18:44:13 | VISA | Sale | $492.11 | $0.00 | $0.00 | Nino | Bar (receipt2) | | 12-27-2021 17:31:28 | 12-27-2021 18:44:13 | - |
| 105?-17818 | 1 | 12-27-2021 18:45:59 | MASTERCARD | Sale | $192.71 | $0.00 | $0.00 | Nino | Bar (receipt2) | | 12-27-2021 17:15:52 | 12-27-2021 18:45:59 | - |
| 105?-17824 | 1 | 12-27-2021 19:18:33 | VISA | Sale | $8.71 | $0.00 | $0.00 | Nino | Bar (receipt2) | | 12-27-2021 19:16:14 | 12-27-2021 19:18:33 | - |
| 1038-16777 | 1 | 12-27-2021 19:47:25 | VISA | Sale | $131.74 | $0.00 | $0.00 | Damian | Bar (receipt2) | | 12-27-2021 18:44:57 | 12-27-2021 19:47:26 | - |
| 1038-16778 | 1 | 12-27-2021 19:48:33 | Cash | Sale | $133.91 | $0.00 | $0.00 | Damian | Bar (receipt2) | | 12-27-2021 18:48:05 | 12-27-2021 19:48:34 | - |
| 105?-17821 | 1 | 12-27-2021 19:49:04 | AMEX | Sale | $386.50 | $0.00 | $0.00 | Nino | Bar (receipt2) | | 12-27-2021 18:27:51 | 12-27-2021 19:49:04 | - |
| 1038-16779 | 1 | 12-27-2021 20:00:48 | MASTERCARD | Sale | $309.20 | $0.00 | $0.00 | Damian | Bar (receipt2) | | 12-27-2021 18:54:14 | 12-27-2021 20:00:48 | - |
| 105?-17820 | 1 | 12-27-2021 20:04:50 | MASTERCARD | Sale | $240.61 | $0.00 | $0.00 | Nino | Bar (receipt2) | | 12-27-2021 18:17:08 | 12-27-2021 20:04:51 | - |
| 105?-17823 | 1 | 12-27-2021 20:27:15 | AMEX | Sale | $163.00 | $0.00 | $0.00 | Nino | Bar (receipt2) | | 12-27-2021 19:14:38 | 12-27-2021 20:27:18 | - |
| 105?-17823 | 1 | 12-27-2021 20:27:18 | VISA | Sale | $64.54 | $0.00 | $0.00 | Nino | Bar (receipt2) | | 12-27-2021 19:14:38 | 12-27-2021 20:27:18 | - |
| 1038-16780 | 1 | 12-27-2021 20:33:12 | VISA | Sale | $182.90 | $0.00 | $0.00 | Damian | Bar (receipt2) | | 12-27-2021 18:58:38 | 12-27-2021 20:33:12 | - |
| 105?-17825 | 1 | 12-27-2021 20:41:25 | VISA | Sale | $175.07 | $0.00 | $0.00 | Nino | Bar (receipt2) | | 12-27-2021 19:33:54 | 12-27-2021 20:41:25 | - |
| 1038-16781 | 1 | 12-27-2021 20:52:40 | VISA | Sale | $310.28 | $0.00 | $0.00 | Damian | Bar (receipt2) | | 12-27-2021 19:09:17 | 12-27-2021 20:52:41 | - |
| 105?-17822 | 1 | 12-27-2021 20:55:50 | AMEX | Sale | $275.44 | $0.00 | $0.00 | Nino | Bar (receipt2) | | 12-27-2021 19:05:05 | 12-27-2021 20:55:50 | - |

Board Panel

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1038-16783 | 1 | 12-27-2021 20:59:31 | MASTERCARD | Sale | $133.92 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-27-2021 19:55:55 | 12-27-2021 20:59:31 | - |
| 1038-16782 | 1 | 12-27-2021 21:12:05 | VISA | Sale | $213.39 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-27-2021 19:47:42 | 12-27-2021 21:12:05 | - |
| 105:-17826 | 1 | 12-27-2021 21:37:16 | AMEX | Sale | $240.60 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-27-2021 19:54:18 | 12-27-2021 21:37:16 | - |
| 105:-17829 | 1 | 12-27-2021 21:37:25 | AMEX | Sale | $415.91 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-27-2021 20:21:12 | 12-27-2021 21:37:25 | - |
| 1038-16785 | 1 | 12-27-2021 21:39:05 | MASTERCARD | Sale | $142.62 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-27-2021 20:12:56 | 12-27-2021 21:39:05 | - |
| 1038-16786 | 1 | 12-27-2021 21:43:40 | AMEX | Sale | $215.57 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-27-2021 20:15:11 | 12-27-2021 21:43:40 | - |
| 1038-16784 | 1 | 12-27-2021 21:49:26 | VISA | Sale | $176.39 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-27-2021 20:11:56 | 12-27-2021 21:49:26 | - |
| 105:-17830 | 1 | 12-27-2021 22:04:48 | VISA | Sale | $533.48 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-27-2021 20:32:25 | 12-27-2021 22:04:48 | - |
| 105:-17827 | 1 | 12-27-2021 22:09:15 | VISA | Sale | $52.26 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-27-2021 19:54:54 | 12-27-2021 22:09:25 | - |
| 105:-17827 | 2 | 12-27-2021 22:09:21 | VISA | Sale | $163.31 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-27-2021 19:54:54 | 12-27-2021 22:09:25 | - |
| 105:-17827 | 3 | 12-27-2021 22:09:25 | VISA | Sale | $201.41 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-27-2021 19:54:54 | 12-27-2021 22:09:25 | - |
| 1038-16787 | 1 | 12-28-2021 18:18:09 | MASTERCARD | Sale | $216.66 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-28-2021 17:07:32 | 12-28-2021 18:18:10 | - |
| 1038-16791 | 1 | 12-28-2021 18:37:39 | VISA | Sale | $344.04 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-28-2021 17:53:31 | 12-28-2021 18:37:39 | - |
| 1038-16789 | 1 | 12-28-2021 18:42:39 | VISA | Sale | $229.72 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-28-2021 17:20:33 | 12-28-2021 18:42:40 | - |
| 1038-16788 | 1 | 12-28-2021 18:43:26 | VISA | Sale | $284.16 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-28-2021 17:13:41 | 12-28-2021 18:43:26 | - |
| 1038-16790 | 1 | 12-28-2021 18:55:05 | VISA | Sale | $240.00 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-28-2021 17:22:05 | 12-28-2021 18:55:08 | - |
| 1038-16790 | 1 | 12-28-2021 18:55:08 | VISA | Sale | $595.06 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-28-2021 17:22:05 | 12-28-2021 18:55:08 | - |
| 1038-16792 | 1 | 12-28-2021 19:59:25 | VISA | Sale | $169.84 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-28-2021 19:15:52 | 12-28-2021 19:59:25 | - |
| 105:-17832 | 1 | 12-28-2021 20:29:04 | VISA | Sale | $130.64 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-28-2021 19:36:02 | 12-28-2021 21:21:42 | - |
| 1038-16793 | 1 | 12-28-2021 20:30:13 | VISA | Sale | $244.97 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-28-2021 19:20:33 | 12-28-2021 20:30:13 | - |
| 105:-17834 | 1 | 12-28-2021 20:48:16 | MASTERCARD | Sale | $253.67 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-28-2021 19:45:31 | 12-28-2021 20:48:17 | - |
| 105:-17835 | 1 | 12-28-2021 21:10:28 | MASTERCARD | Sale | $88.18 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-28-2021 20:12:51 | 12-28-2021 21:10:29 | - |
| 105:-17832 | 2 | 12-28-2021 21:21:41 | VISA | Sale | $439.85 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-28-2021 19:36:02 | 12-28-2021 21:21:42 | - |
| 1038-16795 | 1 | 12-28-2021 21:53:57 | VISA | Sale | $176.36 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-28-2021 20:12:14 | 12-28-2021 21:53:57 | - |
| 1038-16796 | 1 | 12-28-2021 22:03:41 | MASTERCARD | Sale | $235.17 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-28-2021 20:14:48 | 12-28-2021 22:03:41 | - |
| 1038-16794 | 1 | 12-28-2021 | VISA | Sale | $354.92 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-28-2021 | 12-28-2021 | - |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | 22:06:26 | | | | | | | 19:53:04 | 22:06:26 |
| 1038-16798 | 1 | 12-28-2021 22:11:56 | VISA | Sale | $202.51 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-28-2021 21:01:19 | 12-28-2021 22:11:56 | - |
| 105:-17831 | 1 | 12-28-2021 22:13:29 | AMEX | Sale | $667.41 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-28-2021 19:25:19 | 12-28-2021 22:13:30 | - |
| 105:-17836 | 1 | 12-28-2021 22:54:00 | VISA | Sale | $395.21 | $0.00 | $0.00 | Nino | Bar (receipt2) | 12-28-2021 21:30:55 | 12-28-2021 22:54:00 | - |
| 1038-16799 | 1 | 12-28-2021 23:02:03 | DISCOVER | Sale | $181.83 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-28-2021 21:48:38 | 12-28-2021 23:02:03 | - |
| 1038-16800 | 1 | 12-28-2021 23:15:24 | VISA | Sale | $150.24 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-28-2021 22:17:05 | 12-28-2021 23:15:24 | - |
| 1038-16801 | 1 | 12-29-2021 19:27:25 | VISA | Sale | $375.62 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-29-2021 17:55:24 | 12-29-2021 19:27:25 | - |
| 105:-17840 | 1 | 12-29-2021 19:29:06 | MASTERCARD | Sale | $131.73 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-29-2021 18:18:46 | 12-29-2021 19:29:06 | - |
| 105:-17838 | 1 | 12-29-2021 19:31:16 | MASTERCARD | Sale | $192.71 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-29-2021 18:05:15 | 12-29-2021 19:31:16 | - |
| 105:-17839 | 1 | 12-29-2021 19:34:20 | VISA | Sale | $345.12 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-29-2021 18:15:27 | 12-29-2021 19:34:21 | - |
| 105:-17837 | 1 | 12-29-2021 19:51:05 | VISA | Sale | $579.21 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-29-2021 17:12:51 | 12-29-2021 19:51:05 | - |
| 105:-17841 | 1 | 12-29-2021 20:03:22 | AMEX | Sale | $291.79 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-29-2021 18:43:46 | 12-29-2021 20:03:22 | - |
| 105:-17843 | 1 | 12-29-2021 20:13:34 | VISA | Sale | $127.37 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-29-2021 19:18:06 | 12-29-2021 20:13:34 | - |
| 105:-17844 | 1 | 12-29-2021 20:13:55 | AMEX | Sale | $78.39 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-29-2021 19:31:30 | 12-29-2021 20:13:55 | - |
| 105:-17845 | 1 | 12-29-2021 21:04:26 | VISA | Sale | $314.64 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-29-2021 19:38:06 | 12-29-2021 21:04:26 | - |
| 105:-17847 | 1 | 12-29-2021 21:14:47 | VISA | Sale | $395.20 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-29-2021 19:54:45 | 12-29-2021 21:14:47 | - |
| 1038-16803 | 1 | 12-29-2021 21:20:04 | MASTERCARD | Sale | $192.71 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-29-2021 19:32:27 | 12-29-2021 21:20:04 | - |
| 1038-16802 | 1 | 12-29-2021 21:20:51 | Cash | Sale | $227.55 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-29-2021 19:20:30 | 12-29-2021 21:20:51 | - |
| 105:-17846 | 1 | 12-29-2021 21:24:42 | VISA | Sale | $532.40 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-29-2021 19:39:14 | 12-29-2021 21:24:42 | - |
| 1038-16804 | 1 | 12-29-2021 21:29:41 | MASTERCARD | Sale | $115.40 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-29-2021 19:55:02 | 12-29-2021 21:29:41 | - |
| 1038-16805 | 1 | 12-29-2021 21:33:39 | VISA | Sale | $161.12 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-29-2021 20:03:21 | 12-29-2021 21:33:39 | - |
| 105:-17848 | 1 | 12-29-2021 22:21:58 | VISA | Sale | $241.69 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-29-2021 20:00:10 | 12-29-2021 22:21:58 | - |
| 1038-16806 | 1 | 12-29-2021 22:33:57 | VISA | Sale | $211.21 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-29-2021 21:35:47 | 12-29-2021 22:33:58 | - |
| 105:-17849 | 1 | 12-29-2021 22:36:53 | VISA | Sale | $503.00 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-29-2021 20:25:54 | 12-29-2021 22:36:53 | - |
| 105:-17850 | 1 | 12-30-2021 00:08:00 | VISA | Sale | $414.26 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-29-2021 21:34:05 | 12-30-2021 00:08:11 | - |
| 105:-17850 | 1 | 12-30-2021 00:08:11 | AMEX | Sale | $414.27 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-29-2021 21:34:05 | 12-30-2021 00:08:11 | - |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 105:-17842 | 1 | 12-30-2021 00:20:55 | MASTERCARD | Sale | $112.14 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-29-2021 18:45:25 | 12-30-2021 00:21:23 | - |
| 105:-17842 | 1 | 12-30-2021 00:21:15 | VISA | Sale | $112.14 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-29-2021 18:45:25 | 12-30-2021 00:21:23 | - |
| 105:-17842 | 1 | 12-30-2021 00:21:23 | VISA | Sale | $112.14 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-29-2021 18:45:25 | 12-30-2021 00:21:23 | - |
| 105:-17852 | 1 | 12-30-2021 18:09:58 | AMEX | Sale | $125.21 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-30-2021 17:18:30 | 12-30-2021 18:09:58 | - |
| 105:-17851 | 1 | 12-30-2021 18:17:51 | VISA | Sale | $179.65 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-30-2021 17:14:48 | 12-30-2021 18:17:51 | - |
| 105:-17853 | 1 | 12-30-2021 18:19:18 | AMEX | Sale | $92.54 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-30-2021 17:21:11 | 12-30-2021 18:19:18 | - |
| 105:-17857 | 1 | 12-30-2021 18:41:11 | AMEX | Sale | $201.43 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-30-2021 17:42:49 | 12-30-2021 18:41:11 | - |
| 105:-17854 | 1 | 12-30-2021 18:44:06 | VISA | Sale | $126.29 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-30-2021 17:30:58 | 12-30-2021 18:44:06 | - |
| 105:-17860 | 1 | 12-30-2021 19:10:29 | AMEX | Sale | $181.81 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-30-2021 18:02:46 | 12-30-2021 19:10:30 | - |
| 1038-16807 | 1 | 12-30-2021 19:11:41 | VISA | Sale | $174.20 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-30-2021 17:56:40 | 12-30-2021 19:11:42 | - |
| 105:-17858 | 1 | 12-30-2021 19:14:47 | AMEX | Sale | $207.93 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-30-2021 17:55:59 | 12-30-2021 19:14:47 | - |
| 105:-17859 | 1 | 12-30-2021 19:19:18 | DISCOVER | Sale | $217.74 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-30-2021 18:00:38 | 12-30-2021 19:19:18 | - |
| 105:-17855 | 1 | 12-30-2021 19:35:41 | VISA | Sale | $407.31 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-30-2021 17:39:40 | 12-30-2021 19:35:41 | - |
| 105:-17856 | 1 | 12-30-2021 19:55:50 | VISA | Sale | $382.15 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-30-2021 17:39:55 | 12-30-2021 19:55:50 | - |
| 105:-17865 | 1 | 12-30-2021 20:14:24 | AMEX | Sale | $170.94 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-30-2021 19:13:22 | 12-30-2021 20:14:24 | - |
| 105:-17863 | 1 | 12-30-2021 20:14:56 | AMEX | Sale | $203.59 | $0.00 | $0.30 | Alex | Bar (receipt2) | 12-30-2021 18:56:20 | 12-30-2021 20:14:56 | - |
| 105:-1/864 | 1 | 12-30-2021 20:16:53 | VISA | Sale | $140.44 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-30-2021 19:01:57 | 12-30-2021 20:16:53 | - |
| 105:-17866 | 1 | 12-30-2021 21:05:01 | AMEX | Sale | $397.39 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-30-2021 19:47:45 | 12-30-2021 21:05:01 | - |
| 105:-17861 | 1 | 12-30-2021 21:10:17 | MASTERCARD | Sale | $199.24 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-30-2021 18:04:24 | 12-30-2021 21:10:17 | - |
| 1038-16808 | 1 | 12-30-2021 21:30:29 | VISA | Sale | $186.16 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-30-2021 18:56:40 | 12-30-2021 21:30:29 | - |
| 105:-17868 | 1 | 12-30-2021 21:33:14 | AMEX | Sale | $302.68 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-30-2021 19:59:41 | 12-30-2021 21:33:14 | - |
| 105:-17862 | 1 | 12-30-2021 21:37:36 | Cash | Sale | $145.49 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-30-2021 18:33:00 | 12-30-2021 21:37:37 | - |
| 105:-17867 | 1 | 12-30-2021 21:57:32 | VISA | Sale | $303.76 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-30-2021 19:54:50 | 12-30-2021 21:57:32 | - |
| 105:-17872 | 1 | 12-30-2021 22:09:47 | VISA | Sale | $322.27 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-30-2021 21:07:29 | 12-30-2021 22:09:47 | - |
| 105:-17871 | 1 | 12-30-2021 22:14:41 | MASTERCARD | Sale | $162.21 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-30-2021 21:01:35 | 12-30-2021 22:14:41 | - |
| 105:-17870 | 1 | 12-30-2021 | VISA | Sale | $106.27 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-30-2021 | 12-30-2021 | - |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 22:30:35 | | | | | | | | 20:47:10 | 22:31:07 | |
| 105:-17870 | 2 | 12-30-2021 22:30:50 | VISA | Sale | $32.66 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-30-2021 20:47:10 | 12-30-2021 22:31:07 | - |
| 105:-17870 | 3 | 12-30-2021 22:31:06 | VISA | Sale | $175.29 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-30-2021 20:47:10 | 12-30-2021 22:31:07 | - |
| 105:-17873 | 1 | 12-30-2021 22:33:24 | MASTERCARD | Sale | $223.20 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-30-2021 21:14:13 | 12-30-2021 22:33:24 | - |
| 105:-17869 | 1 | 12-30-2021 22:36:09 | VISA | Sale | $1,002.75 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-30-2021 20:30:14 | 12-30-2021 22:36:09 | - |
| 105:-17874 | 1 | 12-30-2021 22:54:26 | Cash | Sale | $239.52 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-30-2021 21:40:54 | 12-30-2021 22:54:27 | - |
| 1038-16809 | 1 | 12-30-2021 23:06:31 | VISA | Sale | $484.48 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-30-2021 21:06:00 | 12-30-2021 23:06:32 | - |
| 105:-17875 | 1 | 12-31-2021 18:16:08 | VISA | Sale | $222.10 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-31-2021 17:02:19 | 12-31-2021 18:16:08 | - |
| 1038-16811 | 1 | 12-31-2021 18:21:27 | MASTERCARD | Sale | $227.54 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-31-2021 17:29:27 | 12-31-2021 18:21:27 | - |
| 105:-17876 | 1 | 12-31-2021 18:23:13 | VISA | Sale | $483.39 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-31-2021 17:08:33 | 12-31-2021 18:23:14 | - |
| 1038-16810 | 1 | 12-31-2021 18:26:58 | VISA | Sale | $140.45 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-31-2021 17:16:47 | 12-31-2021 18:26:59 | - |
| 105:-17877 | 1 | 12-31-2021 18:37:51 | VISA | Sale | $179.63 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-31-2021 17:38:53 | 12-31-2021 18:37:52 | - |
| 105:-17879 | 1 | 12-31-2021 18:51:55 | AMEX | Sale | $291.39 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-31-2021 17:59:30 | 12-31-2021 18:51:55 | - |
| 1038-16812 | 1 | 12-31-2021 19:24:16 | VISA | Sale | $209.04 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-31-2021 18:11:59 | 12-31-2021 19:24:17 | - |
| 105:-17878 | 1 | 12-31-2021 19:32:10 | VISA | Sale | $292.87 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-31-2021 17:45:36 | 12-31-2021 19:32:10 | - |
| 1038-16813 | 1 | 12-31-2021 19:33:29 | VISA | Sale | $215.57 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-31-2021 18:37:15 | 12-31-2021 19:33:29 | - |
| 105:-17880 | 1 | 12-31-2021 19:34:32 | MASTERCARD | Sale | $507.35 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-31-2021 18:15:03 | 12-31-2021 19:34:32 | - |
| 105:-17881 | 1 | 12-31-2021 19:51:48 | MASTERCARD | Sale | $439.86 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-31-2021 18:21:28 | 12-31-2021 19:51:48 | - |
| 105:-17882 | 1 | 12-31-2021 19:54:38 | VISA | Sale | $178.55 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-31-2021 18:41:16 | 12-31-2021 19:54:38 | - |
| 105:-17884 | 1 | 12-31-2021 20:03:14 | VISA | Sale | $202.50 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-31-2021 19:05:44 | 12-31-2021 20:03:14 | - |
| 105:-17885 | 1 | 12-31-2021 20:04:13 | MASTERCARD | Sale | $148.07 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-31-2021 19:06:08 | 12-31-2021 20:04:13 | - |
| 105:-17883 | 1 | 12-31-2021 20:08:12 | MASTERCARD | Sale | $338.59 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-31-2021 18:41:39 | 12-31-2021 20:08:12 | - |
| 1038-16814 | 1 | 12-31-2021 20:11:28 | VISA | Sale | $670.68 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-31-2021 19:01:59 | 12-31-2021 20:11:28 | - |
| 105:-17887 | 1 | 12-31-2021 20:12:38 | VISA | Sale | $230.82 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-31-2021 19:18:45 | 12-31-2021 20:12:38 | - |
| 105:-17886 | 1 | 12-31-2021 20:38:03 | VISA | Sale | $182.90 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-31-2021 19:10:24 | 12-31-2021 20:38:03 | - |
| 105:-17891 | 1 | 12-31-2021 20:43:21 | AMEX | Sale | $86.01 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-31-2021 19:51:14 | 12-31-2021 20:43:21 | - |

| ID | Qty | Date/Time | Card | Type | Amount | | | Server | Source | Date/Time | Date/Time | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1058-17888 | 1 | 12-31-2021 20:45:01 | VISA | Sale | $230.82 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-31-2021 19:24:10 | 12-31-2021 20:45:01 | - |
| 1038-16816 | 1 | 12-31-2021 20:49:56 | VISA | Sale | $214.47 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-31-2021 19:09:58 | 12-31-2021 20:49:56 | - |
| 1038-16815 | 1 | 12-31-2021 21:11:52 | MASTERCARD | Sale | $287.38 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-31-2021 19:03:31 | 12-31-2021 21:16:04 | - |
| 1038-16815 | 1 | 12-31-2021 21:16:04 | VISA | Sale | $286.38 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-31-2021 19:03:31 | 12-31-2021 21:16:04 | - |
| 1038-16820 | 1 | 12-31-2021 21:20:33 | VISA | Sale | $216.66 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-31-2021 19:43:02 | 12-31-2021 21:20:33 | - |
| 1038-16823 | 1 | 12-31-2021 21:38:42 | VISA | Sale | $256.11 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-31-2021 20:07:12 | 12-31-2021 21:38:42 | - |
| 1038-16818 | 1 | 12-31-2021 21:39:28 | VISA | Sale | $430.06 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-31-2021 19:37:50 | 12-31-2021 21:39:28 | - |
| 1038-16819 | 1 | 12-31-2021 21:50:05 | Cash | Sale | $143.71 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-31-2021 19:40:30 | 12-31-2021 21:50:06 | - |
| 1058-17896 | 1 | 12-31-2021 21:52:29 | VISA | Sale | $200.31 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-31-2021 20:45:21 | 12-31-2021 21:52:29 | - |
| 1058-17893 | 1 | 12-31-2021 22:01:06 | AMEX | Sale | $188.34 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-31-2021 20:27:25 | 12-31-2021 22:01:06 | - |
| 1038-16817 | 1 | 12-31-2021 22:03:54 | Cash | Sale | $97.98 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-31-2021 19:16:52 | 12-31-2021 22:03:55 | - |
| 1038-16821 | 1 | 12-31-2021 22:05:28 | VISA | Sale | $519.33 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-31-2021 19:49:10 | 12-31-2021 22:05:28 | - |
| 1058-17895 | 1 | 12-31-2021 22:05:40 | VISA | Sale | $254.77 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-31-2021 20:30:39 | 12-31-2021 22:05:40 | - |
| 1058-17894 | 1 | 12-31-2021 22:10:42 | VISA | Sale | $207.94 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-31-2021 20:28:00 | 12-31-2021 22:10:42 | - |
| 1038-16822 | 1 | 12-31-2021 22:11:16 | Cash | Sale | $283.06 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-31-2021 19:49:59 | 12-31-2021 22:11:16 | - |
| 1058-17889 | 1 | 12-31-2021 22:11:19 | MASTERCARD | Sale | $244.00 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-31-2021 19:39:00 | 12-31-2021 22:15:23 | - |
| 1058-17889 | 1 | 12-31-2021 22:14:44 | MASTERCARD | Sale | $146.00 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-31-2021 19:39:00 | 12-31-2021 22:15:23 | - |
| 1058-17889 | 1 | 12-31-2021 22:15:22 | Cash | Sale | $103.21 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-31-2021 19:39:00 | 12-31-2021 22:15:23 | - |
| 1058-17897 | 1 | 12-31-2021 22:17:14 | VISA | Sale | $236.26 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-31-2021 20:56:13 | 12-31-2021 22:17:14 | - |
| 1038-16825 | 1 | 12-31-2021 22:18:16 | AMEX | Sale | $437.67 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-31-2021 20:39:07 | 12-31-2021 22:18:16 | - |
| 1038-16827 | 1 | 12-31-2021 22:21:33 | VISA | Sale | $63.15 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-31-2021 21:02:11 | 12-31-2021 22:21:38 | - |
| 1038-16827 | 1 | 12-31-2021 22:21:38 | VISA | Sale | $63.15 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-31-2021 21:02:11 | 12-31-2021 22:21:38 | - |
| 1038-16824 | 1 | 12-31-2021 22:36:34 | AMEX | Sale | $241.27 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-31-2021 20:31:17 | 12-31-2021 22:36:34 | - |
| 1058-17890 | 1 | 12-31-2021 22:44:13 | VISA | Sale | $335.32 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-31-2021 19:47:08 | 12-31-2021 22:44:14 | - |
| 1038-16829 | 1 | 12-31-2021 22:45:19 | Cash | Sale | $215.57 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-31-2021 21:39:53 | 12-31-2021 22:45:20 | - |
| 1058-17892 | 1 | 12-31-2021 | AMEX | Sale | $236.26 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-31-2021 | 12-31-2021 | - |

| | | 22:46:07 | | | | | | | | 20:22:34 | 22:46:07 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1038-16828 | 1 | 12-31-2021 22:48:03 | VISA | Sale | $149.16 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-31-2021 21:23:05 | 12-31-2021 22:48:03 | - |
| 105:-17899 | 1 | 12-31-2021 22:55:24 | AMEX | Sale | $205.76 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-31-2021 21:19:06 | 12-31-2021 22:55:25 | - |
| 105:-17898 | 1 | 12-31-2021 22:56:25 | VISA | Sale | $249.32 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-31-2021 21:10:21 | 12-31-2021 22:56:25 | - |
| 1038-16830 | 1 | 12-31-2021 23:01:53 | AMEX | Sale | $274.37 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-31-2021 21:41:04 | 12-31-2021 23:01:53 | - |
| 105:-17903 | 1 | 12-31-2021 23:17:45 | AMEX | Sale | $82.74 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-31-2021 22:28:17 | 12-31-2021 23:17:45 | - |
| 105:-17901 | 1 | 12-31-2021 23:20:57 | VISA | Sale | $284.15 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-31-2021 23:20:58 | 12-31-2021 23:20:58 | - |
| 1038-16831 | 1 | 12-31-2021 23:23:31 | Cash | Sale | $149.16 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-31-2021 21:55:14 | 12-31-2021 23:23:31 | - |
| 105:-17907 | 1 | 12-31-2021 23:26:57 | AMEX | Sale | $222.10 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-31-2021 21:56:38 | 12-31-2021 23:26:57 | - |
| 1038-16832 | 1 | 12-31-2021 23:28:49 | MASTERCARD | Sale | $173.11 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-31-2021 22:04:15 | 12-31-2021 23:28:49 | - |
| 105:-17905 | 1 | 12-31-2021 23:33:14 | MASTERCARD | Sale | $348.39 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-31-2021 22:37:03 | 12-31-2021 23:33:14 | - |
| 1038-16834 | 1 | 12-31-2021 23:33:54 | VISA | Sale | $130.64 | $0.00 | $0.00 | Damian | Bar (receipt2) | 12-31-2021 22:42:40 | 12-31-2021 23:33:54 | - |
| 1038-16826 | 1 | 12-31-2021 23:37:34 | MASTERCARD | Sale | $444.19 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-31-2021 20:54:39 | 12-31-2021 23:37:34 | - |
| 105:-17900 | 1 | 12-31-2021 23:38:06 | AMEX | Sale | $182.82 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-31-2021 21:23:44 | 12-31-2021 23:38:14 | - |
| 105:-17900 | 1 | 12-31-2021 23:38:14 | DISCOVER | Sale | $181.90 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-31-2021 21:23:44 | 12-31-2021 23:38:14 | - |
| 105:-17904 | 1 | 12-31-2021 23:54:30 | VISA | Sale | $423.52 | $0.00 | $0.00 | Everardo | Bar (receipt2) | 12-31-2021 22:32:45 | 12-31-2021 23:54:30 | - |
| 1038-16833 | 1 | 12-31-2021 23:57:02 | VISA | Sale | $234.07 | $0.00 | $0.00 | Alex | Bar (receipt2) | 12-31-2021 22:15:14 | 12-31-2021 23:57:02 | - |
| | | | | | **$242,276.28** | **$0.00** | **$0.00** | | | | | |

Export To Tab Delimited ".txt" file

Export To Tab Delimited ".xls" file

Export To Comma Delimited ".csv" file

# EXHIBIT M

12:02

**Takmara**

Oki

Wed,thur, Friday, Saturday

They told us we gonna close tomorrow till Sunday

Ok come Thursday Friday and Saturday

Dec 21, 2021 at 7:31 AM

Are you coming this days

Fell asleep

Yes

Dec 21, 2021 at 8:49 AM

Thursday, Friday and Saturday

Dec 21, 2021 at 3:20 PM

Perfect
You are in for this days

Text Message • RCS