## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

**NINO MARTINENKO, et al.,**

    *Plaintiffs,*                            **CASE NO. 1:22-cv-00518-JLR-RWL**

      **v.**

**212 STEAKHOUSE INC. and NIKOLAY VOLPER,**

    *Defendants*

---

### DEFENDANT NIKOLAY VOLPER'S MOTION FOR DISQUALIFICATION

---

## I. INTRODUCTION

Defendant respectfully renews his motion to disqualify Joseph & Kirschenbaum LLP under Rule 23(g), Rule 11, and the Court's inherent authority. This motion is based on substantial new evidence that was not available when the prior disqualification request was denied at Dkt. 86, which rested on incomplete information and the mistaken belief that counsel's conduct complied with Court-authorized notice procedures.

The new record shows that Plaintiff Martinenko and class counsel submitted false declarations under oath and later testified falsely under oath to support those statements, constituting perjury

and fraud on the Court. These false sworn statements directly affected FLSA conditional certification, Rule 23 certification, summary judgment, and the final fee judgment.

Additional newly-revealed evidence includes: improper solicitation outside Court-approved channels; concealment of class-member communications; post-termination payroll-system access impacting evidence integrity; and coordination with Defendant's former counsel to avoid trial and preserve attorneys' fees despite Defendant's clear "no-settlement" instructions and the Court's directive in Dkt. 141 to litigate individualized § 195 issues.

Given this expanded record and the central role these misrepresentations and violations played in certification and judgment, disqualification is necessary to protect the integrity of the proceedings, Defendant's rights, and the interests of absent class members.

## II. Statement of Facts

### A. Plaintiffs' Counsel Filed the Complaint Containing False Allegations

The Complaint was filed on 20 January, 2022 by Denise Schulman and Maimon Krischenbaum. This complaint falsely claimed that "Defendant Volper is in charge of employee discipline, payroll issues and scheduling at 212 Steakhouse." (Dkt. 1, ¶7). However, Plaintiff Martinenko testified under oath that she personally handled payroll: "I would also be in charge to write paychecks... I did payroll." — Dkt. 119-11, pp. 18, 37, 57 "One of my responsibilities at 212 Steakhouse was to write employees' paychecks." — Dkt. 22, ¶7.

Volper's deposition confirmed that "Most of the staff are determined to do their own... I was not engaged in that at all." — Dkt. 119-12, p. 40. "She [Martinenko] writes her own checks, and

determines her own hours." — Id., p. 42. "During this period most of the staff including Plaintiff was in charge... I was absent." — Id., p. 25

Opt-in Plaintiff Dagmara Huk corroborated this "There was no primary person. Sometimes me, sometimes Nino, sometimes Sasha." — Dkt. 119-10, pp. 24–25

Volper's testimony shows that he relied on employees to manage their own records: "I didn't really doubt somebody would cheat on the hours, or tips, or anything like that." When asked who extracted time records from the POS system to calculate pay, he responded: "Depends who is there, you know. I don't know exactly. Depends who is there." (Dkt. 119-12, p. 42).

The Complaint also falsely asserted that Plaintiff regularly worked overtime and had consistently long workdays, allegations that formed the supposed basis for both collective and class certification. Specifically, it alleged that "Plaintiff regularly worked more than 40 hours per week" (Dkt. 1, ¶23), that she "regularly worked five dinner shifts and two to three lunch shifts" (id. ¶24), and that "Plaintiff and all the Class members regularly had workdays that lasted more than ten (10) hours" (id. ¶48). In her declaration, Martinenko swore under oath that "I frequently worked more than 40 hours per week at 212 Steakhouse" (Dkt. 22 ¶3).

  Contrary to the claims that Plaintiff Nino Martinenko"regularly worked over 40 hours per week," the time record data disclosed in Dkt. 116-9 shows In 2016: 252 days worked / total hours 1,626 → average 32.25 hours per week, In 2017: 226 days worked / total 1,473 hours → average 32.6 hours per week, In 2018: 220 days worked / total 1,682 hours → average 38.25 hours per week and in 2021: 138 days worked / total 1,071 hours → average 38.8 hours per week. This four-year average confirms Plaintiff was not "regularly" working in excess of 40 hours as acquitted in claim ¶¶3,5. Additionally, Plaintiff's total overtime damages were de

minimis: just $829 over four years—or approximately $207.25 per year—according to Dkt. 116-1.

When deposed, Plaintiff was repeatedly asked to produce a single timecard showing she exceeded 40 hours in a week. She could not. "Show me where you worked in excess of 40 hours, which you stated in your complaint…" — Dkt. 119-11, p. 70. The only example she attempted to cite—a September week with longer shifts—was cherry-picked, isolated, and unrepresentative. When confronted, her attorney responded with derision rather than evidence: MR. DiGIULIO: "Sure. Forgery. Go for it." — Dkt. 119-11, p. 71.

Rather than correcting the record, counsel doubled down, claiming the Complaint only said "regularly worked," not "every week." Her counsel interjected with the evasive retort, "Sure. Forgery. Go for it." (Dkt. 119-11, pp. 70–71). This exchange illustrates a litigation strategy grounded in assertion rather than evidence. — Dkt. 119-11, p. 71.

 The Complaint's allegation that Plaintiff and class members "regularly had workdays that lasted more than ten hours". (Dkt. 1,¶48). When questioned on the subject, she admitted she did not even know what the term "spread-of-hours" meant: "Do you know what spread-of-hours means?" — "I don't know." (Dkt. 119-11, p. 69).

The actual damages for any spread-of-hours claim were also negligible: Martinenko's total spread-of-hours exposure amounted to just $888 over four years, or $222 annually (Dkt. 116-1). The class-wide audit further reveals that out of 30 absent class members fifteen of thirty class members had zero overtime damages, nine had less than $100 in overtime damages, eleven had no spread-of-hours damages, and eighteen had less than $100 in spread-of-hours damages (id.) over their 6 years of employment history.

The Complaint also alleged that "Defendants committed the following alleged acts knowingly, intentionally and willfully." (Dkt. 1, ¶21). "At all relevant times, Defendants willfully, regularly and repeatedly failed to pay Plaintiff and the FLSA Collective Plaintiffs at the required overtime rates for hours worked in excess of forty (40) hours per workweek." (Dkt. 1, ¶36). "Throughout the Class Period, Defendants willfully, regularly and repeatedly failed to pay Plaintiff and the Class members at the required overtime rate for hours worked in excess of forty (40) hours per workweek." (Dkt. 1, ¶45). All Employees Are Similarly Situated "At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated... They were subject to Defendants' decision, policy, plan and common policies, programs, practices... willfully failing and refusing to pay them proper overtime pay." (Dkt. 1, ¶10).

Yet, As detailed above under ¶ii (Fabricated overtime claims and spread of hours), Plaintiff's own hours fell below the 40-hour threshold across all relevant years. (See Dkt. 116-9.) The total overtime damages across four years were only $829, or $207.25 per year. This fact alone negates the claim of "regular and repeated" violations. Further, a class-wide payroll audit confirms the absence of a uniform violation or meaningful harm: 15 of 30 collective/class members had zero overtime damages. 11 of 30 had no spread-of-hours damages. (See Dkt. 116-1).

Both plaintiffs personally participated in payroll: Martinenko admitted that she did payroll, she wrote paychecks (Dkt. 22 ¶7; Dkt. 119-11, pp. 18, 37, 57). Huk likewise acknowledged preparing paychecks during her employment (Dkt. 119-10, pp. 14–15).. Defendant Volper had no operational role in payroll or scheduling (Dkt. 119-12, pp. 14, 25, 40–47), and staff largely self-managed shift assignments (id.; Dkt. 119-10, pp. 15, 24–25).

The Complaint alleged that "Defendants committed the following alleged acts knowingly, intentionally and willfully." (Dkt. 1, ¶21). Q. "Did you ever complain about the $7.25 to any owner or manager?" A. "No." Q. "Did you feel that that was the correct amount of minimum wage or tip minimum wage that you should get?" A. "I never thought –" — Dkt. 119-11, p. 39.

Such conduct implicates counsel's duties under **Federal Rule of Civil Procedure 11(b)**, **NYRPC 3.3(a)(1)**, **NYRPC 4.1**, and **NYRPC 8.4(c)–(d)**. These facts also bear directly on Rule **23(a)(4) and Rule 23(g)** adequacy requirements because class counsel cannot adequately represent a class where they advance materially false claims.

## B. Plaintiffs' Counsel Submitted False Declarations to Obtain FLSA Conditional Certification

Conditional certification was granted on April 26, 2022 (Dkt. 30). At that stage, the Court appropriately relied on the factual assertions presented in the Complaint (Dkt. 1), as well as sworn declarations submitted by Plaintiff Nino Martinenko (Dkt. 22) and her attorney Denise A. Schulman (Dkt. 29).

Martinenko falsely swore: "I frequently worked more than 40 hours per week at 212 Steakhouse." — (Dkt. 22, ¶3). This statement was proven to be false and misleading under the clearly addressed evidence in this document above.

Attorney Denise A. Schulman, under penalty of perjury, declared: "I am familiar with the facts and circumstances set forth herein."—Dkts. 21 & 29 ¶1. Schulman's failure to verify the factual basis of her declaration requires attorneys to certify that "the factual contentions have evidentiary support." By submitting Dkt. 29 under penalty of perjury without independent verification, and

by asserting she was "familiar with the facts" when those facts have been proven materially false, Schulman misled the Court and violated her ethical obligations.

Plaintiff Martinenko testified under oath that she did not read the Complaint before it was filed. (Dkt. 119-11, p. 29). This admission confirms that the Complaint's factual allegations were not verified by the named Plaintiff—constituting a violation and establishing a critical deficiency in the evidentiary foundation relied upon at the certification stage.

The Court's reliance on these statements was explicitly acknowledged in Dkt. 30: "The following facts are drawn from Plaintiff's complaint, Dkt. No. 1 ('Compl.'), are assumed to be true for purposes of this motion." — (Dkt. 30, p. 1).

The Court's reliance on these statements was explicitly acknowledged in Dkt. 30: "The following facts are drawn from Plaintiff's complaint, Dkt. No. 1 ('Compl.'), are assumed to be true for purposes of this motion." — (Dkt. 30, p. 1). But the Complaint, Dkt. 1, and the Declaration, Dkt. 22, were both false in substance, unsupported by payroll, time records, damages summary and contradicted by Plaintiff's own later sworn testimony. The Court assumed Dkt. 1 to be true solely for purposes of conditional certification, but that foundation is now discredited.

Under Judge Memorandum and Order Dkt. 30, p. 2, the Judge considered these statements to certify FLSA. "Plaintiff alleges that she regularly worked more than forty hours per week", id. 23, and that, during each week she was employed there, she regularly worked five dinner shifts, lasting at least eight hours each (from 4:00 p.m. until closing time, which was normally after 12:00 a.m.), and two to three lunch shifts, lasting at least four hours each (from 11:00 a.m. until at least 3:00 p.m.), id.   24."

Counsel's knowing submission and continued reliance on false sworn statements and documentary misrepresentations constitutes misconduct under **Rule 11(b)**, **28 U.S.C. § 1927**, **NYRPC 3.3, 4.1, and 8.4**.

### C. Plaintiffs' Counsel Submitted Additional False Declarations

### i. False Statements Regarding Familiarity With the Facts

In her December 9, 2022 Rule 23 declaration, Plaintiff Martinenko swore: "I am the Named Plaintiff in this action. I am familiar with the facts and circumstances set forth herein." — Dkt. 73 ¶1. "I am familiar with the payroll practices at 212 Steakhouse as well as the claims in this lawsuit." — id. ¶15

Both statements were false and made without personal knowledge. In deposition, Martinenko admitted she did **not** read the Complaint until nearly a year after it was filed (Dkt. 119-11, p. 29) and could not define "spread-of-hours" (id., p. 69). This demonstrates she was not familiar with the claims or payroll practices when counsel submitted her sworn declaration.

On the same date, Opt-In Plaintiff Huk declared: "I am familiar with the facts and circumstances set forth herein." — Dkt. 74 ¶1

However, Huk demonstrated no understanding of the claims, litigation posture, or supporting evidence. She did not meaningfully participate in discovery, filed no supplemental declaration, did not contribute to briefing, and did not oppose decertification. Despite this, Plaintiffs' counsel **recycled her year-old declaration twice without re-verification**—in support of summary judgment (Nov. 16, 2023, Dkt. 115-10) and in opposition to decertification (Dec. 21, 2023, Dkt. 123).

Counsel knowingly relied on declarations lacking factual foundation and failed to update or correct them after their falsity became apparent. This conduct violates **Rule 11(b)(3)** , **Rule 23(a)(4)**, and **NYRPC 3.3, 4.1, and 8.4**.

### ii. False Statements About Front of House Class List

In sworn declarations submitted November 1, 2022 (Dkt. 64 ¶21) and December 9, 2022 (Dkt. 73 ¶11), Plaintiff Nino Martinenko—through counsel—falsely claimed that she review the front-of-house list and  employees *Meriken Tan* and *Nadia Paputnikava* were missing from the list. This was a material misrepresentation made with actual knowledge of its falsity. The truth is she never reviewed the list.

Both names appeared on the official 216(b) list generated from the restaurant's POS system and provided to Plaintiffs on May 5, 2022. Q: I am only asking about the list that we received May 5, 2022 which is called the 216B list. It is only the front-of-house employees from January 2019, so three years ago. Do you recall preparing that specific list? A: Yes. Q: How did you prepare it? A: I have to go to the POS system to generate that records. — *Volper Dep.*, Dkt. 119-12, p. 155. *(Whereupon, 216B list was marked as Defendant's Exhibit 19)*

It is further confirmed that the list was shown again during deposition: Q: "This is Exhibit 19. This is the list of front-of-house employees that your attorney provided the plaintiff. He gave this to us on May 5, 2022. Is this the list you were just discussing that you used the POS to determine?" *A: "Yes." (Dkt. 119-12, p. 156). Further,  it clearly showed they reviewed the list.* Q. This was given to us on May 5, 2022. You will see the first, I am going to go through and ask if these people are currently working at the restaurant? *A.*

*Okay. (Dkt. 119-12, p. 156).* Crucially, It is confirmed they go to the list, they review it still they submitted the wrong declarations knowingly.

Plaintiffs' counsel's knowledge is further proven by a June 1, 2023 email to the defence attorney from attorney Denise Schulman acknowledging: "Based on the dates of employment from the 216(b) mailing list… g. Mariken Tan – 2016–2018." (Exhibit I). This confirms they knew Tan was on the list from May 2022—yet knowingly submitted a declaration in November and another in December falsely claiming the opposite.

By submitting two sworn declarations contradicting this known fact, counsel engaged in deliberate misrepresentation and subornation of perjury to bolster Rule 23(a)(1) numerosity and commonality. This conduct violates Fed. R. Civ. P. 11(b)(3), Fed. R. Civ. P. 23(a)(1), NYRPC Rule 3.3(a)(1), NYRPC Rule 4.1, NYRPC Rule 8.4(a), (c), (d).

### iii. Martinenko's Repeated Misstatement of Employment Dates Proves She Signed Declarations Without Reviewing the Facts

Plaintiff Martinenko repeatedly misstated her employment dates under penalty of perjury in sworn declarations supporting Rule 23 certification. In her December 9, 2022 declaration, she claimed: "I worked at 212 Steakhouse as a server from 2016 through 2018, and then again from early 2021 through December 2021" (Dkt. 73 ¶3, ¶7, ¶14).

Just eleven days later, in her December 20, 2022 deposition, she admitted she began employment at 212 steakhouse in "the end of June or beginning of July of 2015" — Dkt. 119-11, p. 14. Despite knowing the correct start date, Martinenko reaffirmed the false "2016–2018" range twice more: November 16, 2023 (Dkt. 117 ¶3) in support of summary judgment. December 21, 2023

(Dkt. 122 ¶3–4) in opposition to decertification. This was not an isolated oversight. It demonstrates a clear pattern of signing declarations without factual review,  because it would have been obvious to anyone reading the statement that the dates were wrong. The ease of spotting this error underscores that no meaningful review occurred before signing. This is entirely consistent with her deposition admission that she *never read the Complaint before it was filed* (Dkt. 119-11, p. 29). Such conduct violates Fed. R. Civ. P. 11(b)(3).

The declarations were drafted and recycled by counsel, signed without review, and riddled with falsehoods.

### iv. Counsel Submitted and Relied on False Statements Regarding Post-Termination System Access and Time Record Integrity

In her December 21, 2023 declaration opposing decertification, Plaintiff Martinenko swore that she only accessed the timekeeping system twice in October 2021 for a "back-of-house" employee and "never accessed the system after [her] employment ended" (Dkt. 122 ¶¶10–11). Internal audit logs directly refute this: she logged in six times between January 1–8, 2022—after her December 28, 2021 termination—using Level-3 administrative credentials (Dkts. 112-11, 112-12). Audit metadata also confirms that access was possible remotely and not restricted to the restaurant (Ex. E).

Contrary to her sworn assertion that her access involved only a back-of-house employee, documentary evidence shows she viewed and edited time records for front-of-house Rule 23 class members Juan Aguilar, Tristian Collazo, and Lytchez Lazarov (Dkt. 72-2, Ex. 19). She never disclosed editing those entries or that they involved class members at the heart of the litigation. Plaintiffs' counsel had actual knowledge: Schulman's November 16, 2023 declaration

(Dkt. 116 ¶10) relied on the very entries altered during Plaintiff's unauthorized post-termination access, yet counsel never corrected the record or alerted the Court.

This conduct—false sworn statements, concealed unauthorized access, undisclosed edits to class members' records, and counsel's knowing reliance on altered data—compromises the integrity of the evidence and it violates **Rule 11(b)(3)** and **NYRPC 3.3(a)(1), 4.1, 8.4(a), (c), (d)**.

### D. Plaintiffs' Counsel's Improper Solicitation in Violation of Court Order and NYRPC

Deposition testimony confirms Plaintiffs' counsel engaged in unauthorized solicitation of class members. During Dagmara Huk's December 20, 2022 deposition: Q: "How did you find out about this lawsuit, Craigslist?" A: "No. I don't think it was on Craigslist." Q: "How did you find out?" A: "Through my lawyer." Q: "Through your lawyer?" A: "Yes. I got contacted by my lawyer." Q: "Your lawyer contacted you about the lawsuit?" A: (No verbal response.) Q: And what did your lawyer say? MR. DiGiULIO: Objection. Don't answer that.  Q. Okay. That's interesting. — *Dkt. 119-10, p. 21*

When asked whether her lawyer had contacted her, Huk gave no verbal response, and Plaintiffs' counsel immediately instructed her not to answer. This is a violation of Fed. R. Civ. P. 30(c)(2) to hide the unauthorized contact.

On April 3, 2023, Defendant submitted a pre-motion letter seeking disqualification and sanctions, citing the very deposition excerpt above: *"Plaintiffs' counsel has actively engaged in unethical conduct and violated numerous ethical rules prohibiting unethical communications, advertising, and solicitation."* — Dkt. 84, p. 1

Denise Schulman falsely stated in opposing Defendants' request for a pre-motion conference on the same day by saying: "Defendants' anticipated motion is entirely frivolous, as Plaintiffs' counsel have not engaged in any improper communications, advertising, or solicitation." — *Dkt. 85, p. 1. "Ms. Huk testified that she learned about this lawsuit by being contacted by counsel. She did not testify that counsel called her (Ex. 1 at 13.)" — Dkt. 85, p. 2.* Plaintiff counsel further misled the court by saying: Defendants' counsel did not ask her the method by which she was contacted. Dkt. 85, p. 2.

The transcript makes clear that defendant counsel clearly asked under deposition and Huk stated she "got contacted by [her] lawyer", and DiGiULIO blocked further testimony as to how.  Q: And what did your lawyer say?  MR. DiGiULIO: Objection. Don't answer that. Q. Okay. That's interesting. — Dkt. 119-10, p. 21. Schulman continued misleading the court by saying: "In reality, counsel "contacted" Ms. Huk in the same way that it "contacted" all potential opt-in plaintiffs: by disseminating the Court-approved notice via mail and text message." Dkt. 85, p. 2

This statement is knowingly false and materially misleading, for several reasons: Schulman's statement proves awareness of the Court's Order under the April 26, 2022 conditional certification order (Dkt. 30, p. 13), which strictly authorized notice *only* "by first-class mail, email, and text message." Dagmara Huk also never testified that she was contacted via mail, email, or text message. To the contrary, Huk confirmed under oath:  *"I got contacted by my lawyer."*  — *Huk Dep., Dkt. 119-10, p. 21*

Denise Schulman repeated this misrepresentation blatantly denied making the call—under penalty of perjury —at an April 4, 2023 hearing: "As for the opt-in plaintiff, Dagmara Huk, I

never called her." — *Dkt. 94, p. 5, ll. 16–17.* These statements were materially false and knowingly contradicted by attorneys billing records, *Plaintiffs' sealed billing records later submitted in support of their attorneys' fees request (Dkt. 152-1) completely contradict Schulman's denials.*

*On May 10, 2022, Schulman recorded: "Call with potential opt-in (Dagmara)" – 0.1 hrs — Dkt. 152-1, p. 3.* This call occurred 14 days after the Court's conditional certification order (Dkt. 30), which explicitly limited notice to: First-class mail; Email; Text message. *Attorney-initiated phone calls were not authorized. Furthermore,* The billing records submitted by Plaintiffs' counsel (Dkt. 152-1) reveal a pattern of direct attorney-initiated contact with individuals who never officially joined the lawsuit and were never authorized by the Court to be contacted outside of approved notice protocols: May 10, 2022 – "Call with potential opt-in Dagmara and Damon. (Dkt. 152-1, p.3). Call with Dimitry Zarobin (Dkt. 152, p.15).

Furthermore, Plaintiffs' billing records show that on **March 14, 2024**, attorney Schulman recorded a return call: *"Call with Vivian Peng"* (Dkt. 152-1 at 23). Counsel had an obligation of fairness and candor to disclose both the fact of the call and its outcome.

In fact, Nadia Paputnikava signed a sworn declaration (Exhibit K) confirming that she contacted Plaintiffs' counsel, was informed about the lawsuit, and she declined to participate. None of these individuals—Damon, Zarobin, Peng, or Paputnikava—submitted opt-in forms ever to join the lawsuit. But still Damon, Zarobin, Peng were included in the judgement. (See Dkt. 154, p. 3). Yet Plaintiffs' counsel engaged them through unauthorized channels, in direct defiance of the Court's protocol (Dkt. 30) and violated Rule 23(d): If counsel makes unauthorized contact, they must either: Disclose it to the Court, or Risk sanctions for violating the notice protocol.

Counsel's conduct violated **Rule 23(c)(2)(B)**, **Rule 23(d)**, **Fed. R. Civ. P. 26(e)**, **Fed. R. Civ. P. 11(b)(3)**, **Fed. R. Civ. P. 30(c)(2)**, and multiple ethical duties **NYRPC 3.3(a)(1)**, **NYRPC 4.1**, **NYRPC 7.3(a)**, **NYRPC 8.4(a), (c), (d)**.

### E. Counsel Improperly Re Solicited Previously Opt Out Class Members From the Lawsuit

On August 25, 2023, Plaintiffs' counsel Denise Schulman accused Defendants—without evidentiary support—of coercing opt-outs, asserting that "every class member who is a current employee… opted out" and suggesting this was due to "improper influence" (Dkt. 100, p. 2). By doubling down and affirmatively stating their involvement in Dkt. 120, Plaintiffs' counsel claim in opposition to decertification:*"Three of the four former employees who opted out previously provided affidavits in support of Defendants' motion to sanction Plaintiff's counsel, indicating that Defendants are in current contact with them. See Dkt. Nos. 84-2; 112-2." — Dkt. 120, p. 10*

These statements were knowingly false. Plaintiffs' counsel had received at least nine notarized opt-out affidavits from front-of-house employees explicitly stating: "I would not like to take part in this lawsuit" (e.g., Dkt. 84-2 ¶¶ 9–10). At the April 4, 2023 hearing, Schulman admitted having seen these affidavits (Dkt. 94, p. 4).

In reality all opt-outs were voluntary, notarized, and explicitly rejected class participation (Dkts. 84-2, 100-1); Several former employees informed Defendant that they were contacted by Plaintiffs' counsel but chose not to join; Alexander "Sacha" submitted an affidavit (Exhibit J) confirming Defendant Volper played no role in opt-out decisions.

Once individuals had opted out, Plaintiffs' counsel had no further jurisdiction or ethical right to contact them. Under Rule 23(d) and NYRPC 7.3(a)(1), Plaintiffs' counsel were barred from

re-soliciting or contacting opt-outs unless explicitly authorized by the Court. This re-solicitation and misrepresentation directly influenced the outcome of class certification. In his August 13, 2024 Report and Recommendation, Magistrate Judge Lehrburger adopted the narrative that all opt-outs were potentially coerced: Despite this record, the R&R speculated that because every current employee opted out using similar forms and envelopes, "the possibility [exists] that Defendants improperly urged current employees to opt-out." Dkt. 132 at 23–24. The District Court adopted that reasoning, concluding: "That is sufficient to at least raise the specter of retaliation… merely another thumb on the scale in favor of certification." Dkt. 141 at 8.

In reality, it was **class counsel who misled the Court** by advancing an unfounded coercion narrative in order to preserve certification despite overwhelming evidence that current employees did not want to participate.

Once employees opted out, Plaintiffs' counsel had no further right to contact them. Under Rule 23(d) and NYRPC 7.3(a)(1), re-solicitation of opt-outs was prohibited absent Court approval. Yet Plaintiffs' counsel engaged in such contact, misrepresented the record, and persuaded the Court to disregard valid opt-outs. This was a direct violation of Rule 23 and the ethical rules requiring candor and fairness. This conduct violated the Fed. R. Civ. P. 11(b)(3), Fed. R. Civ. P. 23(d), NYRPC 1.2, 3.3(a)(1), 4.1, 4.2, 7.3(a), 8.4(c), 8.4(d).

### i. Misrepresentation of Billing Exclusions

The Court's final judgment awarding $223,458.28 in attorneys' fees and costs (Dkt. 154) resulted from materially false representations by Plaintiffs' counsel. In his sworn declaration, attorney Michael DiGiulio stated: "Plaintiffs' counsel exercised billing judgment to exclude over 50 hours

of entries that were duplicative, vague, or otherwise excludable or solely related to Plaintiffs' and the Class's NYLL § 195 claims." — Dkt. 152 ¶19.

This assertion is unsupported and demonstrably false. Plaintiffs submitted only one billing file (Dkt. 152-1), with **no redactions, no comparison list, no metadata, and no evidence that any time was excluded**, despite claiming to have removed "over 50 hours." No documentation has ever been provided to substantiate this claim.

A forensic review of Dkt. 152-1 identified **at least 23 billing entries totaling approximately $5,720.00** devoted entirely to work on the NYLL § 195 dismissal—entries that should have been excluded. These entries occurred in **October 2024**, during the same period Plaintiffs moved to dismiss the § 195 claims:

- Plaintiffs' Motion to Dismiss § 195 claims — Dkt. 146 (Oct. 16, 2024)
- Order Granting Dismissal Without Prejudice — Dkt. 153 (Nov. 13, 2024)

The billing entries included drafting and revising letters to the Court regarding dismissal, preparing class notice, internal strategy calls, and reviewing defense responses—tasks **entirely attributable to voluntarily withdrawn claims** and thus non-recoverable.

Despite this, the resulting fee award was incorporated into the final judgment:

"ORDERED, ADJUDGED AND DECREED… Plaintiffs are awarded $223,458.28 in attorneys' fees and costs." — Dkt. 154 at 2.

Plaintiffs' counsel's false sworn billing representations, failure to document or disclose supposed exclusions, and submission of misleading billing records violate **Fed. R. Civ. P. 11, 26(g), 37**, **28 U.S.C. § 1927**, and **NYRPC 3.3, 4.1, and 8.4**.

## F.  Plaintiffs' Counsel Colluded with Defendant's Former Attorney to Dismiss Claims and Avoid Trial and suppression of Ethical Violations and Fraud On The Court by Officers of the Court

On September 24, 2024, the Court ordered the parties to "meet and confer regarding next steps for addressing individualized injury with respect to the unnamed class member § 195 claims." (Dkt. 141, p. 27 ¶8). One week later, on October 1, 2024, Plaintiffs sought dismissal of the certified § 195 claims "without prejudice" under Rules 41(a)(2) and 23(e). (Dkt. 145; see also Dkt. 149 at 1).

### i. Suppression of Defendant's Attempt to Address Fraud and Ethical Violations (Dkt. 181)

At the January 29, 2025 hearing, Plaintiffs' counsel falsely told the Court that Defendant had made only "baseless and irrelevant accusations." (Dkt. 181, p. 4). In reality, Defendant had repeatedly raised concrete evidence of false declarations, unauthorized time-system access, improper solicitation, and ethical breaches (Exs. G, G1–G3, H; Dkt. 152-1).

When the Court asked if Defendant wished to be heard, Greenbaum told the Court: "I guess Mr. Volper relies on the declaration he submitted…" (Dkt. 181, p. 5).

### ii. Defendant Consistently Rejected Settlement; Defense Counsel Concealed This and Coordinated With Plaintiffs' Counsel

Defendant maintained a single, unwavering instruction throughout this litigation: **no settlement under any circumstances** and a demand to proceed to trial to expose Plaintiffs' false claims and attorney misconduct. Any references to settlement, dismissal, or fee preservation originated from counsel—not Defendant.

On July 24, 2023, Defendant emailed attorneys Segal and Greenbaum: "I am totally out of any agreements with Nino attorney not even for $1… ready to face trial." (Ex. G19)

On October 13, 2023, Defendant reiterated via text: "There is no reason to negotiate not even for $1." (Ex. H, 2023)

On April 18, 2024, Defendant again confirmed he did not want settlement (Ex. G17). That same day, Greenbaum acknowledged Plaintiffs' counsel Kirschenbaum privately called proposing a $400,000 "all-in" settlement, writing:

"I said… you wouldn't be interested… You indicated you were still not interested… I feel that you can now settle this matter for 200k, but you indicated you do not want to pursue this." (Ex. G7)

On September 11, 2024, Greenbaum confirmed another private outreach by Kirschenbaum to protect fees:

Greenbaum: "You know who called me (Kirschenbaum).."

Volper: "What he want?"

Greenbaum: "He wants to settle! Doesn't want to lose his attorneys' fees."

Volper: "No chance."

Greenbaum: "I told him: no settlement."

Volper: "Tell him he will get more money after the trial." (Ex. H, A-2024)

Defendant then instructed counsel to present this collusive conduct in a Rule 60 motion. Greenbaum refused: "I cannot raise the fraud issues... I do not believe they have grounds." — Email, Oct. 11, 2024

On September 30, 2024, Defendant again demanded counsel raise misconduct and prepare appeal: "Please start to prepare our appeal summary judgment... There are a lot of ethical violations... which you don't address."

Despite Defendant's consistent "no-settlement" position, defense counsel privately coordinated with Plaintiffs' counsel to dismiss certified § 195 claims and preserve fees. On September 27, 2024, Schulman emailed proposing dismissal and a stay; Greenbaum replied:"I'm around for a discussion, just let me know." (Ex. G2)

Plaintiffs' billing entries the same day confirm coordination: "Call with defense re: next steps" / "Email defense re: next steps" (Dkt. 152-1, p. 25)

These communications show that while Defendant repeatedly rejected settlement and demanded trial, defense counsel (1) concealed this from the Court, (2) refused to raise documented misconduct, and (3) coordinated with Plaintiffs' counsel to dismiss claims and preserve fees—directly contrary to Defendant's explicit instructions.

**iii. Early Notice of False Declarations (May 1, 2023) — Counsel's Duty to Correct**

On May 1, 2023, defense counsel Jonathan Greenbaum acknowledged a factual error in Plaintiff Martinenko's Rule 23 declaration (Dkt. 73) that had been used to secure certification. Referring to ¶¶10–11 (front-of-house employee list), Greenbaum instructed Defendant to "look at para 10, 11 then exhibit 1… exh 2… exh 3" (Ex. G1). The underlying § 216(b) list (Ex. 19) shows that Nadia and Marikan were included, directly contradicting Plaintiff's sworn claim that they were omitted. Thus, by May 1, 2023, defense counsel had **actual knowledge** that Plaintiff's declaration contained a material false statement and that attached records disproved it.

Chain communications (Ex. G – emails; Ex. H – texts) confirm Defendant repeatedly identified fraud and ethical violations throughout the case—some confirmed immediately, others confirmed later when Plaintiffs' sealed billing records (Dkt. 152-1, filed Nov. 8, 2024) revealed direct evidence of solicitation and misrepresentation.

On January 8, 2024, Defendant emailed Greenbaum a detailed summary of contradictions and false filings by Plaintiffs and their counsel (Ex. G23), identifying with citations:

 • contradictory testimony on hours and compensation;

 • affidavits claiming she did not know her hours, contradicted by prior admissions;

 • false statements in Dkt. 73 alleging "Nadia and Mariken" were omitted from the front-of-house list when records showed they were included (Dkt. 63, May 3, 2022; deposition pp. 154–169);

 • false claim of starting in 2016 contradicted by her admission she began in June/July 2015 and the Complaint (Dkt. 1 ¶8);

 • multiple misleading affidavits (Dkts. 73, 122) knowingly submitted despite contradictory evidence.

21

Between July 2023 and September 2024, Defendant repeatedly instructed counsel to present evidence that Plaintiff unlawfully accessed the POS/payroll system post-termination and that Plaintiffs' declarations were false. Despite receiving audit logs (Dkts. 112-11, 112-12) and ethical rule citations, Greenbaum refused to raise these issues, calling them merely "inappropriate," declined to move to reopen discovery, and diluted filings to avoid "backlash."

These facts show counsel had **actual notice** of false declarations as early as May 2023, and instead of correcting the record, suppressed evidence, violating duties of candor, Rule 11(b), and effective representation. It violated FRCP **11(b)(3)**, NYRPC **3.3(a)(1)**, NYRPC **1.2(a)**.

**July 18, 2023 — First explicit instruction to raise unlawful access and false affidavits.**
 Defendant directed Greenbaum to alert the Court to Martinenko's "illegal cyber crime activity" in the POS/payroll systems and to her "misleading affidavit" prepared by counsel, and asked counsel to examine minimum-wage assertions and IRS rules:

"Since I am out of any settlements… we should start preparing for defense and address the court with Nino Martinenko illegal cyber crime activity… [A] cyber crime attorney… confirmed that this is a crime… Also Nina Martinenko misleading affidavit… Please look also at the minimum wage claims by Nino Attorneys and IRS rules."

**August 10, 2023 — Detailed post-termination access; request for depositions. (Ex. G3)**
Defendant emailed Greenbaum documenting that, after termination, Martinenko used still-active Level 3 administrative credentials to access the restaurant's operating system on January 8, 2022, remained logged in ~46 minutes, and had the *ability to view, edit, and delete* business records—days before the complaint was filed on January 20, 2022:

"Her activity is illegal and a crime under the law even if she doesn't take or delete any information. Also raise serious concerns about the integrity in this case and we need to call for deposition — Nino and Dakmara — to address many of this very suspicious activity and testimony by both."

Defendant asked to reopen discovery and to take depositions on the unlawful access. Defendant supplied audit logs (e.g., **Dkts. 112-11, 112-12**) showing managerial permissions and post-termination logins. Greenbaum nevertheless refused to move to reopen discovery or to raise the issue, asserting that unlawful access was "not relevant to a wage violation case."

**August 26, 2024 — Reiteration before the § 195 directive. (Ex. G2)**

Shortly before the Court's order addressing § 195 claims, Defendant again wrote Greenbaum explaining how Plaintiffs' ethical violations and false statements had affected the Court's recommendations and insisting these issues be presented to the Court before proceeding further.

**August 31–September 3, 2024 — Repeated Requests; Counsel's Minimization and Suppression**

The suppression pattern crystallized in an August 31, 2024 email exchange. Defendant explicitly instructed counsel to raise Plaintiff Martinenko's **post-termination POS access**, false affidavits, and misleading testimony, emphasizing their importance to **credibility, class adequacy, and damages** (Ex. G4). Greenbaum's response constituted an admission of deliberate suppression.

Defendant pleaded for fairness and protection, writing:

"To be clear I perfectly understand why you don't want to address and step up in Nino Martinenko and her attorney's bad actions… I pay a lot for my mistakes in this case — money, time, and stress. All I ask you [is] to protect me and address their activity in this case and be fair." — Email to Greenbaum, Aug. 31, 2024 (Ex. G4)

Across multiple emails and calls (Sept. 1–3, 2024), Greenbaum refused, asserting: "this is not an ethical violation" and claiming it would be "unethical to file ethical complaints."

He stated his firm had **no policy** of reporting such violations, despite **NYRPC 3.3(a)(1)** requiring candor to the tribunal.

**Early September 2024 — Focused exchange confirming suppression**

Defendant pressed counsel: "Look at my deposition… you never addressed the facts that the judge never addressed the facts of her improper activities… to change the time records as well."

Greenbaum minimized: "That she 'could' change records is in there. There is no evidence she changed records."

Defendant clarified:

> "She logged into the management account… and then she logged in 6 times after she was fired on December 30, 2021."

Audit logs (Dkts. 112-11, 112-12) confirm **six post-termination logins** with managerial permissions. Greenbaum nevertheless refused to escalate, calling the conduct merely "inappropriate."

**September 1 & 3, 2024 — Direct requests to report ethical violations ignored**

Defendant wrote on September 1 (5:40 PM EDT) and September 3 (4:44 AM PDT):

"As my attorney… please let me know if you are going to report to the court Nino

Martinenko's attorney's ethical violations or not."

Greenbaum provided no affirmative response and never reported the conduct.

On September 3, 2024, at 10:06 AM EDT, Defendant sent counsel NYRPC citations, stating:

"To start we can look 3.3 rules and why is very important to address them now… I just

find 2 more breakings of these rules… You will see I am right on all my points."

Greenbaum continued refusing to raise the issues, reopen discovery, or correct the record. By this

point, counsel pivoted toward coordinating dismissal of § 195 claims rather than litigating

Plaintiffs' misconduct—conduct that culminated in the coordinated dismissal one month later.

**Appellate-strategy texts confirm Defendant's no-settlement posture and counsel's**

**knowledge of prejudice.**

 On September 25, 2024, Defendant and attorney Jonathan Greenbaum exchanged texts

concerning appeal.

Defendant stated: "Yes, we need to appeal in 30 days and file the notice of appeal."

Greenbaum responded: "I agree, but I think it may be dismissed as premature… but to be safe, I

agree."

Defendant added: "But you see how the ethics rules they break play in their favor." Greenbaum

admitted: "Good issue for part of appeal. I think you were prejudiced." Defendant continued:

"Good issues to disqualify these attorneys—3 different ethics rule problems in this sample alone.

One of them is very serious. So far I count over 30 ethics rule and civil procedure violations in this case… I mean 30 counts."

These messages confirm Defendant's consistent instruction to pursue trial and appeal, and Greenbaum's actual knowledge of ethical breaches and prejudice requiring litigation—not compromise.

**Suppressed fraud and adequacy challenges in Dkt. 128 despite having evidence.**

 Defense counsel's Reply on Decertification (Dkt. 128) demonstrates that he possessed evidence discrediting the Complaint and Rule 23(a)(3)–(4) adequacy, yet confined the case solely to Count 5 (NYLL § 195(3) wage statements), abandoning Counts 1–4 (overtime, minimum wage, spread-of-hours, wage-notice claims).

By January 2024, counsel had: payroll and POS records showing Plaintiff "clocked in" on 34 days without serving guests (Exs. G15, G16); tip sheets and employee lists disproving Plaintiff's declaration that "Nadia" and "Marikan" were omitted (Dkts. 22, 73; Ex. 19); Plaintiff's admission she never read the Complaint before filing (Dkt. 119-11, p. 29); and audit logs proving post-termination POS access contradicting her sworn denials (Dkts. 112-11, 112-12). None of this was raised. Counsel made no Rule 11(b) motion, no challenge to adequacy or typicality under Rule 23(a)(3)–(4), and presented no evidence of Plaintiffs' misconduct, despite direct relevance to fraud on the Court.

Even in its narrowed form, Dkt. 128 admitted that "individual issues surrounding the overtime claims and spread of hours claims predominate" (pp. 6–7); that more than half the class had zero or de minimis overtime; and that Plaintiff's claims were exaggerated and based on staying after work without clocking out. Yet counsel failed to connect these admissions to the false allegations

in the Complaint (Dkt. 1), the sworn declarations (Dkts. 22, 73) falsely asserting frequent overtime, or to Plaintiff's failure to read the Complaint before filing. Instead, counsel steered the case into NYLL § 195 issues only.

**Alignment with collusive dismissal strategy.**

This strategy dovetailed with the events of September–October 2024, when counsel coordinated with Plaintiffs' attorneys to dismiss the same § 195 claims "without prejudice," contrary to Defendant's instructions and the Court's order (Dkt. 141). Plaintiffs' billing entries reflect coordination with defense counsel on "next steps" immediately before dismissal. The claim counsel narrowed the case to in Dkt. 128 became the claim he later assisted opposing counsel in abandoning, facilitating final judgment and attorney-fee preservation.

**Dkt. 128 therefore constitutes a suppression record**: counsel possessed evidence disproving Plaintiffs' sworn filings, conceded predominance failures, had grounds to challenge adequacy and typicality, and nonetheless restricted argument to Count 5 to align with Plaintiffs' dismissal posture, against Defendant's explicit instructions to go to trial and expose misconduct.

### iv. Coordinated Plan to Achieve Finality and Avoid Trial (Sept. 25–30, 2024)

 In the days immediately following the Court's September 24, 2024 order, Plaintiffs' counsel and Defendant's counsel (Mr. Greenbaum) coordinated a path to **extinguish the certified § 195 claims**, obtain **final judgment**, and **avoid trial—contrary** to (i) Defendant's explicit "no settlement/no dismissal" instructions and (ii) the Court's directive to litigate **individualized § 195 injury** for the certified class. Dkt. 141 required the parties to meet and confer on **how to litigate** those individualized issues, not to abandon the claims.

**Plaintiffs' Own Billing Confirms "Appeal-First," Then a Pivot to Collusive Finality After Defense Pitch**

Immediately after the Court's September 24, 2024 decision, both sides turned to strategy. Plaintiffs' billing records show a focus on appeal and fee applications while simultaneously opening a record line of communication with the defense about "next steps." (Dkt. 152-1, pp. 24–25).

On September 25, 2024, Plaintiffs' billing shows their parallel appeal-first strategy that the plaintiff counsels discussed the next steps while reviewing the Summary Judgement decision with Maimon and Mike and they discuss potential appeal with partner:

- "Discuss next steps with Maimon" (9/25, 0.2);

- "Discuss SJ decision with Mike" (9/25, 0.5);

- "Review judgment, deadlines for fee requests" (9/25, 0.3);

- "Review SJ order… discuss potential appeal with partner" (9/25, 0.5). (Dkt. 152-1, p.24).

And On September 26, 2024, the theme continued: "Compile time for fee application" (multiple entries) and "Confer with clients re: case update, appeal, and next steps" (0.3).

These billing entries showed: Plaintiffs prioritized **appeal** and **fee preparation** immediately after the order. In parallel, they began coordinating **"next steps"** with their clients and the defense.

**Sept. 27–30 Communications: Proposal, Negotiation, and Pivot to Finalit**y

On September 25, 2024, Defendant and attorney Jonathan Greenbaum exchanged texts in which Greenbaum acknowledged serious ethical violations by Plaintiffs' counsel and prejudice to Defendant. (Ex. H, A-2024). Defendant instructed:

> "Yes, we need to appeal in 30 days and file the notice of appeal."

Two days later, despite that directive and Dkt. 141 (p. 27) requiring litigation of individualized § 195 injury, defense counsel began coordinating with Plaintiffs' counsel to dismiss the certified § 195 claims and obtain final judgment.

**September 27, 2024** — Plaintiffs' counsel Schulman emailed Greenbaum proposing to stay the § 195 class claims pending appeal of Huk's § 195 ruling and, if they lost, to dismiss the remaining § 195 claims without prejudice. (Ex. G12). Greenbaum replied:

> "I don't believe it's a final appealable order, I'm around for a discussion, just let me know."

This was inconsistent with Defendant's instruction only two days earlier to prepare the appeal. Schulman noted the judgment "came with a notice of right to appeal" and proposed a 4:00 p.m. call; Greenbaum confirmed:

> "4 is good… could have been a mistake by the clerk… it's not a final order."

Greenbaum forwarded the thread to Defendant stating:

> "I will call you back after talking to Denise." (Ex. G13)

On that call, Greenbaum raised dismissing § 195 claims; Defendant rejected dismissal and insisted on trial to present misconduct evidence. Nonetheless, counsel continued negotiating judgment mechanics.

Plaintiffs' billing confirms this coordination: "Call with defense re: next steps"; "Email defense re: next steps" (Dkt. 152-1, p. 25).

That evening, Defendant texted: "Just let me know if they file the notice… They definitely don't want to go to trial…" (Ex. H).

Greenbaum responded: "Agree, which is why they may just give up on it."

 "Also, why did they file a class action and now want to appeal only one person?"

**September 30, 2024** — Schulman emailed Greenbaum: "After further consideration following our conversation last Friday, we will agree to dismiss the remaining NYLL 195 claims without prejudice and ask the judge to enter a final judgment disposing of the case in full."

Greenbaum forwarded it to Defendant: "Called their bluff, I said they would do this."

Defendant objected immediately: "We don't agree and we submit our appeal. Please start to prepare our appeal… there [are] a lot [of] ethical violations and crime committed… We have till Oct 24 date." (Ex. C10).

Plaintiffs' Sep. 30 billing entries again confirm coordination toward dismissal and finality: "Discussion w team re: settlement"; "Email defense re: next steps"; "Discuss next steps with legal team"; "Confer with partners re: next steps." (Dkt. 152-1, p. 25).

**Contemporaneous statements establish sequence and motive.**

Prior to Sep. 27, Greenbaum had remarked to Defendant that "if Plaintiffs' counsel are smart, they'll dismiss the outstanding § 195 claims." Defendant hoped counsel would not relay this to opposing counsel and reiterated his "no settlement, no dismissal" directive. But following the Sep. 27 call, Plaintiffs adopted the dismissal plan on Sep. 30 "following our conversation last Friday," and Greenbaum portrayed it to Defendant as "calling their bluff." In reality, billing entries and messages confirm off-record coordination: defense counsel seeded dismissal, Plaintiffs adopted it, and both sides advanced it despite Defendant's instructions.

The result avoided trial, shielded known misconduct (false declarations, improper solicitation, unlawful POS access), preserved fee posture, foreclosed judicial review of certification in light of trial evidence, and bypassed the Court's Dkt. 141 mandate to litigate individualized § 195 injury. The coordinated sequence, documented instructions, contemporaneous billing, and counsel's misrepresentations to his client compel the inference of a quid pro quo to obtain final judgment and suppress fraud on the Court.

**v. October 2024 — Suppression of Fraud Evidence and Collapse of Representation**

On **October 9, 2024**, Defendant emailed Greenbaum a detailed breakdown of fraud and misconduct committed by Plaintiffs and their attorneys. (Ex. G11) The email included:

- Citations to at least 14 specific pages of the Rules of Professional Conduct;

- Evidence of a false affidavit regarding POS system access;

- A drive link showing the POS system could be accessed remotely, contradicting Plaintiff Martinenko's sworn statement in support of summary judgment.

Defendant concluded: "Fraud on the court during civil procedure. We must file and address this to the court."

Greenbaum responded:"There are no grounds for taking the action you are seeking... I cannot raise the fraud issues you have alluded to or ethical issues you have alluded to because as an attorney I cannot file pleadings in court in which I do not believe have grounds to be made."

**Greenbaum admitted three critical points:**

1. He had reviewed the evidence and the deposition transcript;

2. The § 195 claims had been dismissed without prejudice by stipulation;

3. He would not raise Rule 60(b) or Rule 11 issues because *he personally* did not believe they had grounds.

Thus, even after reviewing concrete proof of false affidavits and misconduct, Greenbaum suppressed the evidence, refused to act, and affirmatively supported entry of final judgment—despite Defendant's objections and the Court's pending directive to litigate § 195 individualized injury (Dkt. 132, p. 72).

**On October 17, 2024 text messages — Defendant reiterates intent to expose fraud at trial.**
Defendant again urged Greenbaum to place misconduct on the record (Ex. H, A-2024):

- **Volper:** "Do you want to underline possible reasons they don't want to go to trial? Questions about Nino's illegal entry in the system after she got fired, false and misleading affidavits, time theft. We have witnesses to challenge these claims. I emailed you the proofs. (Ex. G16) You asked for them."

- **Greenbaum:** "I sent you emails. I will see where we can add it."

- **Volper:** "Better to be on the record even for future appeals. Under Rule 23(a)(4), we should concentrate not only on defense but attacking the facts. They asked for a jury trial, then sought to avoid costs, and now demand fees. That shows their confidence is tactical, not factual."

**On October 31, 2024**, after the parties had coordinated dismissal of the § 195 claims, Defendant emailed Greenbaum:

> "Since you take action that we can not go even to trial how we ask the judge now that they need to follow Rules 30… Why you think they take our pitch so fast… in my opinion they are very happy that was they dream outcome." (Ex. G14).

Greenbaum responded by minimizing and deflecting "Attorneys do this all the time" (regarding improper deposition instructions);

This exchange proves that Defendant (i) recognized the collusive dismissal deprived him of trial, and (ii) pressed counsel to raise deposition and ethical violations. Counsel instead dismissed them as "not ethical" and shifted blame.

**On December 13, 2024 texts — total breakdown of trust (Ex. H, A-2024).**

 By December, Defendant had lost all faith in his counsel due to continued suppression:

- **Volper:** "I sent you an official email. What you are doing is absolutely disgusting."

- **Greenbaum:** "Not understanding this. We spoke about the appeal to the court of appeals multiple times. We can discuss."

- **Volper:** "Nothing to discuss. The records are very clear. You stabbed me in the back once. I won't allow you to do it a second time."

- **Greenbaum:** "I'm still going to call you. Can you send the full Daily News article?"

- **Volper:** "Stop BS'ing me. Your intentions are 100% clear."

These entries prove that while Defendant was demanding trial and fraud exposure, Plaintiffs' counsel and Greenbaum were coordinating off-the-record to **secure dismissal and final judgment**.

Greenbaum's conduct constitutes: Breach of fiduciary duty under NYRPC 1.2(a); Failure to disclose material facts under Rule 3.3(a)(1); Misconduct under NYRPC 8.4(c).

## III. CONCLUSION

For the reasons set forth above, Joseph & Kirschenbaum LLP cannot continue as class counsel. The record demonstrates a sustained pattern of misconduct, including the knowing submission and continued reliance on false sworn declarations; Plaintiff's own perjury during deposition and certification proceedings; improper solicitation of class members in violation of Court-approved notice procedures; concealment of material facts affecting class composition and adequacy; misrepresentation of billing records submitted to obtain attorneys' fees; and coordinated efforts with former defense counsel to avoid trial and suppress evidence of misconduct—contrary to Defendant's instructions and this Court's directive to litigate individualized § 195 injury.

Such conduct violates the Fed. R. Civ. P. 11(b), Rule 23(g), the Court's inherent authority, and NYRPC Rules 1.7, 3.3, 4.1, and 8.4, and implicates 18 U.S.C. §§ 1621 and 1623 (perjury and false declarations). This pattern of deception corrupted the adversarial process, prejudiced both Defendant and absent class members.

Accordingly, Defendant respectfully requests that the Court disqualify **Joseph & Kirschenbaum LLP as class counsel.**

## IV. REQUEST FOR ORAL ARGUMENT AND EVIDENTIARY HEARING

Defendant respectfully requests that the Court hold oral argument and an evidentiary hearing on this Motion to Disqualify. The motion presents sworn contradictions, false statements, improper communications with putative class members, post-termination system access affecting evidence integrity, and coordination between Plaintiffs' counsel and former defense counsel contrary to Defendant's instructions and the Court's directives.

These matters directly affect the integrity of the proceedings and the adequacy of class counsel. An in-person or video hearing is necessary to clarify the record, address credibility issues, and allow the Court to evaluate the evidence and testimony firsthand. Defendant is prepared to appear personally and present witnesses and documents.

Defendant respectfully requests that the Court schedule a hearing at its earliest convenience, either in-person or via Zoom, as the Court prefers.

**Respectfully submitted,**

**/s/ Nikolay Volper**

**Defendant, Pro Se**

**212 Steakhouse Inc.**

**Dated: November 4, 2025**