**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x

**NINO MARTINENKO, on behalf of**

**herself and others similarly situated,**

**Plaintiff,**                                                    **CASE NO. 22 CV 518 (LJL)**


**v.**

**212 STEAKHOUSE, INC., and**

**NIKOLAY VOLPER,**

**Defendants.**

-------------------------------------------------------x


<u>**DEFENDANT NIKOLAY VOLPER'S MOTION FOR RELIEF FROM JUDGMENT**</u>

<u>**PURSUANT TO FED. R. CIV. P. 60(b)(2), (3), (4), (6) AND 60(d)(3)**</u>

**NIKOLAY VOLPER**

**PRO SE**

**DEFENDANT IN THIS CASE**

# Table of Contents

**I. INTRODUCTION AND RELIEF SOUGHT**     **4**

    PROCEDURAL HISTORY     5

        Relief Requested     6

**II. FACTUAL AND PROCEDURAL BACKGROUND**     **6**

        A. Commencement and Jurisdictional Basis     6

        B. Counsel Misconduct and Conflicts of Interest     7

        C. False Pleadings and Rule 11(b)(3) Violations     7

        D. Summary Judgment and Entry of Final Judgment     7

        F. Jurisdictional Errors (Dkt. 198-1, pp. 82–107)     8

**III. GROUNDS FOR RELIEF UNDER RULE 60(b) AND 60(d)(3)**     **9**

        A. Rule 60(b)(2): Newly Discovered Evidence     10

        B. Rule 60(b)(3): Fraud, Misrepresentation, and Misconduct by Counsel     10

        C. Rule 60(b)(4): Void Judgment for Loss of Jurisdiction and Due Process     11

        D. Rule 60(b)(6): Extraordinary Circumstances and Manifest Injustice     11

        E. Rule 60(d)(3): Fraud on the Court by Officers of the Court     12

**IV. JUDICIAL ERRORS THAT COMPOUNDED PREJUDICE AND LEFT SUMMARY JUDGMENT RESTING ON IGNORED FACTS AND FALSE PLEADINGS**     **12**

        A. Overview     12

        B. Loss of Federal Jurisdiction and Article III Standing Errors     13

        C. Rule 23(e) and 23(h) Due-Process Violations     13

        D. Misinterpretation of Opt-Outs and Unauthorized Solicitation     14

        E. Erroneous Numerosity and Adequacy Findings     14

        F. Ignored Payroll and POS Evidence Proving False Declarations     15

        G. POS System Tampering and Reliability Errors     15

        H. Mischaracterized Financial Hardship and Numerosity     16

        I. Newly Discovered Wage Notices and Uninjured Members     16

        J. Improper Use of Rule 41 and Rule 15 Instead of Rule 23(e)     16

        K. Cumulative Effect and Necessity of Vacatur     17

**V. FRAUD ON THE COURT AND SYSTEMIC ETHICAL VIOLATIONS UNDER RULE 60(d)(3) AND 60(b)(6)**     **17**

        A. Purpose of the Court's Inherent Power     17

        B. Coordinated Scheme Corrupting the Proceedings     18

        C. Violations of Federal Rule 11(b)(3)     18

        D. Violations of the New York Rules of Professional Conduct     19

        E. Operation of the Scheme     19

        F. Legal Consequences     20

        G. Structural Nature of the Fraud     20

H. Extraordinary Circumstances Under Rule 60(b)(6)   21

I. Remedy and Disciplinary Measures   21

J. Conclusion Under Rules 60(d)(3) and 60(b)(6)   21

**VI. THE JUDGMENT IS VOID FOR LACK OF JURISDICTION AND DUE PROCESS UNDER RULE 60(b)(4)**   **22**

A. Governing Principles   22

B. Loss of Subject-Matter Jurisdiction   22

C. Rule 23(e) Violation — Dismissal Without Notice   22

D. Rule 23(h) Defect — No Fee Notice   23

E. Constitutional Due-Process Violations   23

F. Reliance on False Findings and Zagano Factors   23

G. Defective Fee Order   24

H. Legal Effect of Voidness   24

I. Equitable and Institutional Considerations   24

J. Requested Relief   24

**VII. EQUITABLE RELIEF UNDER RULE 60(b)(6): SYSTEMIC BREAKDOWN AND COUNSEL ABANDONMENT**   **25**

A. Legal Standard   25

B. Abandonment and Denial of Adversarial Representation   26

C. Suppression of Evidence and Misleading the Court   27

D. Collusive Dismissal and Constructive Default   27

E. Systemic Breakdown of Judicial Integrity   28

F. Extraordinary Circumstances Warranting Relief   28

G. Requested Relief Under Rule 60(b)(6)   29

**VIII. FRAUD ON THE COURT UNDER RULE 60(d)(3)**   **29**

A. Legal Standard   29

B. False Pleadings and Declarations Submitted as the Case's Foundation   30

C. Improper Solicitation, Re-Solicitation, and Misrepresentation of Opt-Outs   33

D. False Billing Representations and Fee Manipulation   35

E. Collusion with Former Defense Counsel and Suppression of Fraud Evidence   36

Defendant's Unbroken "No-Settlement" Directive   36

Counsel's Knowledge of False Declarations and POS Access   36

Alignment with Plaintiffs' Strategy to Abandon § 195 Claims   37

September 2024 Coordination to Secure Final Judgment   37

Suppression of Fraud Evidence (Oct–Dec 2024)   38

Counsel's Refusal Despite Acknowledged Prejudice   38

Effect on the Proceedings   38

Legal Consequence   39

G. Requested Relief Under Rule 60(d)(3)   40

**Conclusion**   **40**

**Certificate of Word Count**   **42**

**TABLE OF AUTHORITIES**                                                          **42**

  Cases                                                                           42
  Statutes                                                                        45
  Rules                                                                           45
  Other Authorities                                                               47

## I. INTRODUCTION AND RELIEF SOUGHT

Defendant Nikolay Volper ("Defendant") respectfully moves for relief from the Final Judgment entered in this action pursuant to Federal Rule of Civil Procedure 60(b)(2), (3), (4), (6), and 60(d)(3).

This motion is supported by:

1.  The Evidentiary Appendix filed at ECF Nos. 198 and 198-1 (170 pages), containing organized audit logs, billing records, metadata, and sworn declarations;

2.  The Motion to Disqualify Plaintiffs' Counsel (Dkt. 201) and supporting exhibits (Dkts. 201-1 and 201-2)—which include email and phone communications between Defendant, Plaintiffs' counsel, and former defense counsel—documenting counsel's misrepresentations, suppression of material evidence, collusion with former defense counsel, unauthorized solicitation of class members, and misrepresentations to the Court; and

3.  The Declarations at Dkt. 203, authenticating all referenced exhibits.

Pursuant to Fed. R. Civ. P. 10(c), Defendant incorporates these materials by reference to avoid duplication and to comply with the Court's word-limit restrictions.

Defendant seeks vacatur of the Final Judgment (Dkts. 153–154) and Fee Order (Dkt. 166) on the following grounds:

1.  Newly discovered evidence reveals perjury and suppression of material facts previously withheld in discovery;

4

2. Officers of the Court engaged in misrepresentation, collusion, and ethical violations that corrupted the proceedings (see Dkts. 201, 201-1, 201-2);

3. The judgment is void for lack of Article III and statutory jurisdiction once all FLSA claims were withdrawn, leaving only state-law claims outside 28 U.S.C. § 1331; and

4. Extraordinary circumstances warrant equitable relief under Rule 60(d)(3) to preserve the integrity of the judicial process.

## PROCEDURAL HISTORY

On November 14, 2024, the Court entered Final Judgment (Dkt. 154) following purported settlement approval and fee allocation under Fed. R. Civ. P. 23(e) and 23(h). Shortly thereafter, Defendant uncovered extensive inconsistencies and withheld records undermining those rulings.

Defendant then filed a Renewed Motion to Extend Word Limit (Dkt. 198) with the Evidentiary Appendix (Dkt. 198-1)—170 pages of organized materials that remain part of the record. The appendix includes:

- Fraud by the class representative (pp. 3–25);
- Audit logs, billing records, and metadata demonstrating perjury and collusion (pp. 26–62);
- Hearing transcript excerpts and jurisdictional errors (pp. 82–107);
- Rule 41 dismissal materials (p. 104); and
- Article III standing and final-judgment analysis (pp. 107–111).

In parallel, Defendant filed Dkt. 201 (Motion to Disqualify Plaintiffs' Counsel) citing violations of the New York Rules of Professional Conduct, including Rules 1.2, 1.7, 3.3, 3.4, 3.7, 4.1, and

8.4. These violations—submission of false declarations, failure to correct known inaccuracies, suppression of evidence, and continued representation despite conflicts—constitute independent grounds for relief under Rules 60(b)(3), 60(b)(6), and 60(d)(3).

The record shows that Plaintiffs' counsel knowingly submitted false pleadings, withheld audit-log evidence during discovery, and made misrepresentations during the December 23, 2024 transcript of hearing (Dkt. 181), inducing the Court to rely on a false jurisdictional premise. Once Plaintiffs voluntarily dismissed their FLSA claims, no federal cause of action remained, eliminating the § 1331 "anchor" for supplemental jurisdiction. The judgment is therefore void ab initio.

**Relief Requested**

1. Vacate the Final Judgment and Fee Order as void and procured through fraud on the Court;

2. Grant relief pursuant to Fed. R. Civ. P. 60(b)(2), (3), (4), (6), and 60(d)(3);

3. Take judicial notice and incorporate the Evidentiary Appendix (Dkts. 198 and 198-1) and the Motion to Disqualify (Dkt. 201) with its supporting exhibits (Dkts. 201-1 and 201-2) as the evidentiary foundation for this motion; and

4. Grant such further equitable relief as the Court deems just and proper.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Commencement and Jurisdictional Basis

This action began on January 20, 2022, when Plaintiffs filed a Complaint asserting claims under the Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL) (Dkt. 1). Federal-question jurisdiction arose under 28 U.S.C. § 1331. Plaintiffs later obtained conditional and Rule 23(b)(3) certification (Dkt. 84), covering roughly 32 employees of 212 Steakhouse. Defendant consistently maintained that certification rested on falsified affidavits and incomplete payroll data. The Evidentiary Appendix (Dkt. 198-1, pp. 3–25, 26–62) now confirms these defects through authenticated audit logs and vendor certifications.

**B. Counsel Misconduct and Conflicts of Interest**

Defendant counsel Jonathan Greenbaum, who maintained undisclosed affiliations with Plaintiffs' counsel. Evidence shows coordinated suppression of exculpatory records and cooperation in structuring a dismissal favorable to Plaintiffs. Greenbaum's conduct violated NYRPC 1.2, 1.7, 3.3, 3.4, 3.7, 4.1, 8.4, contributing directly to the fraud and misrepresentation infecting class certification, summary judgment, and fee proceedings.

**C. False Pleadings and Rule 11(b)(3) Violations**

Plaintiffs' counsel knowingly filed false factual declarations. Class representative Nino Martinenko admitted under oath that she never reviewed the Complaint before filing, violating Rule 11(b)(3) and NYRPC 3.3. These falsehoods—concerning hours worked, payroll, and retaliation—underpinned both certification and summary-judgment rulings.

**D. Summary Judgment and Entry of Final Judgment**

On Oct. 28 2024, the Court granted Plaintiffs' motion for summary judgment (Dkt. 149) on the NYLL claims after voluntary dismissal of the FLSA count. The ruling relied on declarations now proven false and on counsel's "settlement narrative" rather than admissible evidence.

Final Judgment entered Nov. 14, 2024 (Dkt. 154) awarded damages and directed payment of attorneys' fees. Plaintiffs' subsequent fee motion (Dkt. 151)—filed Nov. 8 2024—failed to identify itself as a Rule 23(h) application or provide notice to class members. The Dec. 23 2024 Fee Order (Dkt. 166) issued without the notice or fairness findings required by Rule 23(h)(1).

### E. Discovery of New Evidence

After Final Judgment, Defendant obtained material evidence concealed by both former defense and Plaintiffs' counsel. These materials—compiled in Dkt. 198-1 and detailed in Dkt. 201 with supporting exhibits (201-1, 201-2)—include audit logs, billing metadata, and communications proving suppression of key records. This newly discovered evidence undermines the factual foundation of the certification, summary-judgment, and fee rulings, warranting relief under Rule 60(b)(2) and supporting findings of fraud and concealment under Rules 60(b)(3) and 60(d)(3).

### F. Jurisdictional Errors (Dkt. 198-1, pp. 82–107)

Evidentiary Appendix (Dkt. 198-1, pp. 82–107) documents multiple procedural and jurisdictional defects arising from the January 29, 2025 hearing and the Court's continued exercise of jurisdiction after dismissal of all federal claims. Plaintiffs' counsel requested that the Final Judgment include only New York Labor Law (NYLL) claims, and the Court granted that request, thereby eliminating any federal claim under the FLSA or 28 U.S.C. § 1331. Once the judgment was entered on November 14, 2024 (Dkt. 154), no federal question remained before

the Court. Despite this, the Court proceeded to enforce the judgment and adjudicate post-judgment motions, even though jurisdiction had lapsed.

Subsequently, Plaintiffs' counsel sought to amend the judgment under Federal Rule of Civil Procedure 59, but the Court denied the request as untimely, finding that more than thirty (30) days had elapsed since entry of the judgment. This sequence confirms that the proceedings following the November 14, 2024 judgment were beyond the Court's jurisdiction, rendering the judgment void ab initio under Rule 60(b)(4).

Further the court reflected procedural irregularities under Rule 23(e) and Rule 23(h). No notice was provided to absent class members before approval of counsel's fee motion (Dkt. 151) or issuance of the Fee Order (Dkt. 166). These combined defects—loss of federal jurisdiction, limitation of the judgment to state-law claims, the untimely Rule 59 attempt, and lack of Rule 23 notice—constitute reversible error and render the Final Judgment and Fee Order void within the meaning of Rule 60(b)(4).

**G. Rule 41 and Article III**

The Rule 41 dismissal (Dkt. 198-1, p. 104) demonstrates that the voluntary dismissal lacked Defendant's consent and could not terminate certified claims without Rule 23(e) approval. Similarly, materials id, pp. 107–111 address Article III standing and final-judgment defects, showing that by the time of entry, no live case or controversy remained.

Together they establish a factual basis for vacatur under Rules 60(b)(2)–(6) and 60(d)(3).

## III. GROUNDS FOR RELIEF UNDER RULE 60(b) AND 60(d)(3)

## A. Rule 60(b)(2): Newly Discovered Evidence

After entry of Final Judgment (Dkt. 154) and Fee Order (Dkt. 166), Defendant obtained material evidence that could not have been discovered earlier with reasonable diligence. These documents—concealed audit logs, billing/email metadata, and official records—fundamentally alter the case outcome.

1. Audit Logs (198-1 pp. 22–24; Dkts. 112-11, 112-12): Show Plaintiff Martinenko retained post-termination access and could alter payroll data. Plaintiffs' counsel falsely told the Court these edits involved only "back-of-house" staff; vendor certifications prove they involved key front-of-house employees.

2. Email and Billing (198-1 pp. 50–63): Reveal coordination between Greenbaum and Plaintiffs' counsel on discovery, stipulations, and dismissal timing inconsistent with independent defense representation.

3. Attorney General Records (198-1 pp. 63–81): Disprove the claimed state-investigation basis for expedited settlement and fees.

Defendant authenticated and filed this evidence within one year under Rule 60(c)(1). Because it undermines the factual basis for liability, certification, and fees, relief under Rule 60(b)(2) is warranted.

## B. Rule 60(b)(3): Fraud, Misrepresentation, and Misconduct by Counsel

The judgment was procured through deliberate deception by officers of the Court. Plaintiffs' counsel filed declarations known to be false, and Greenbaum concealed exculpatory data.

- Rule 11(b)(3) Violations: Martinenko admitted she never reviewed the Complaint. Counsel's unverified factual assertions violated Rule 11(b)(3) and NYRPC 3.3 and 3.4.

- Ethical Breaches: Plaintiffs' counsel breached NYRPC 3.3, 3.4, 3.7, 4.1, 8.4 by advancing false statements and suppressing evidence; Greenbaum violated Rules 1.2 and 1.7 by collaborating with opposing counsel and ignoring client instructions.

This misconduct prevented Defendant from presenting his case and satisfies Rule 60(b)(3) standards (see Dkt. 198-1 pp. 82–107).

## C. Rule 60(b)(4): Void Judgment for Loss of Jurisdiction and Due Process

The Final Judgment and Fee Order are void ab initio because federal jurisdiction under 28 U.S.C. § 1331 ended when the FLSA claim was dismissed.

- Jurisdictional Defect: Plaintiffs' counsel asked the Court to limit judgment to NYLL claims, which the Court did, eliminating the federal predicate. Their later Rule 59 motion to amend was denied as untimely, confirming jurisdiction had expired.

- Rule 23(e)/(h) Violations: No class notice or opportunity to object preceded fee approval (Dkts. 151, 166), violating due process under *Mercury Interactive* and *Redman*.

- Counsel misstated the jurisdictional basis, leading the Court to rely on false premises (Dkt. 198-1 pp. 82–107).

These defects render the judgment void under Rule 60(b)(4).

## D. Rule 60(b)(6): Extraordinary Circumstances and Manifest Injustice

11

The totality constitutes extraordinary circumstances: Defendant lacked independent

representation; key evidence was suppressed; and findings on adequacy and fairness rested on

misrepresentation. Enforcing such a judgment would reward misconduct and erode public

confidence. See *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988).

**E. Rule 60(d)(3): Fraud on the Court by Officers of the Court**

Under *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), the Court retains

inherent power to vacate a judgment obtained through fraud that subverts the judicial process

itself.

Plaintiffs' counsel and Greenbaum jointly:

1. Filed sworn complaint and declarations they knew to be false;

2. Concealed audit-log and billing evidence disproving liability;

3. Misrepresented that dismissal and fee proceedings were voluntary and fair; and

4. Obscured the jurisdictional collapse after FLSA withdrawal.

Under *Kupferman v. Consolidated Research & Mfg. Corp.*, 459 F.2d 1072 (2d Cir. 1972), a

judgment so infected must be vacated regardless of timing or client fault.

**IV. JUDICIAL ERRORS THAT COMPOUNDED PREJUDICE AND LEFT SUMMARY**
**JUDGMENT RESTING ON IGNORED FACTS AND FALSE PLEADINGS**

**A. Overview**

Beyond counsel misconduct, several judicial errors—misapprehensions of federal jurisdiction,

misapplication of Rule 23, disregard of sworn record evidence, and reliance on

speculation—collectively deprived Defendant of due process and produced a judgment entered without valid Article III authority. See Dkt. 198-1 Ex. A §§ A–V (pp. 82–111). These errors independently and cumulatively warrant relief under Rules 60(b)(1), (2), (3), (4), (6), and 60(d)(3).

**B. Loss of Federal Jurisdiction and Article III Standing Errors**

As shown in Dkt. 198-1 § C (pp. 82–84, 104), the Court relied on counsels' assertion that the FLSA claim "remained pending," though Plaintiffs had already filed a voluntary dismissal without Defendant's consent or Rule 23(e) approval. Once the FLSA claim was withdrawn, only state NYLL claims remained; no diversity or CAFA basis existed. Under *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998), Article III jurisdiction ceased. Nonetheless, the Court entered final judgment and later awarded fees (Dkts. 154, 166). See § D (pp. 107–111).

**C. Rule 23(e) and 23(h) Due-Process Violations**

NYLL § 195 claims were dismissed and fees approved without the notice and fairness review required by Rule 23.

- Dismissal Without Rule 23(e) Compliance. Plaintiffs and former defense counsel filed a stipulation dismissing NYLL § 195 claims "without prejudice," which the Court accepted under Rules 41 and 15 instead of Rule 23(e). See Dkt. 153; 198-1 §§ I, K (pp. 100–107). The single "notice" (Dkt. 145-1) issued *after* dismissal, offered no fairness analysis or right to object, and violated *Mullane v. Central Hanover Bank*, 339 U.S. 306 (1950) and *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974).

- No Rule 23(h) Notice of Fee Motion. The fee motion (Dkts. 152, 166) was never served on absent members, contrary to Rule 23(h)(1). Billing entries included time for dismissed claims and coordination with defense counsel. See 198-1 § J. Under *In re Mercury Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010), such awards are void for lack of due process.

Combined, these omissions deprived members of notice and a meaningful opportunity to be heard; judgments entered under those conditions are void. *Espinosa*, 559 U.S. 260 (2010).

### D. Misinterpretation of Opt-Outs and Unauthorized Solicitation

Nine employees—Ramos, Rynkovsky, Fernandez, Tan, Perez, Paputnikova, Garcia, Morales, and Porras—submitted notarized opt-out affidavits declaring they did not wish to participate. See Dkt. 84-2 ¶¶ 9–10; 198-1 §§ B–C (pp. 84–86). At the April 4 2023 hearing, counsel admitted possession of these affidavits (Dkt. 94 at 24). Nevertheless, the R&R (Dkt. 132 pp. 23–24) and adoption order (Dkt. 141 p. 8) speculated that similar wording "raised the specter of coercion" and used that speculation to support certification. No affiant alleged pressure. The Court's ruling nullified valid opt-outs and inflated numerosity, contrary to Rule 23(c)(2)(B) and *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

Further, the Court accepted Plaintiffs' argument that attorney phone calls to opt-in Huk were "authorized." The conditional-certification order (Dkt. 30 p. 13) permitted notice only by mail, email, or text; phone solicitations violated that limit. Dkt. 198-1 § A (pp. 82–84). Treating unauthorized outreach as compliant conflicted with *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981).

### E. Erroneous Numerosity and Adequacy Findings

14

The certified class comprised 32 members—below the presumptive 40-person threshold. Nevertheless, the Court relied on a "fear of retaliation" narrative and speculative financial hardship. All members lived in the New York City area and could easily join; Flores, a lower-earning server, independently sued in state court (Dkt. 115-12    10). Later orders (Dkts. 146–147) authorizing individual state-court § 195 claims confirm joinder was always feasible. See 198-1 § G (pp. 90–97).

The Court also overlooked Plaintiff Martinenko's admission that she failed to report cash tips to the IRS or her employer (Dkt. 119-11 pp. 40–45), an act of tax fraud undermining adequacy under Rule 23(a)(4). See 198-1 § D. Courts uniformly find such misconduct disqualifying. *Baffa v. Donaldson*, 222 F.3d 52 (2d Cir. 2000); *Savino v. Computer Credit*, 164 F.3d 81 (2d Cir. 1998).

### F. Ignored Payroll and POS Evidence Proving False Declarations

The Complaint and declarations (Dkts. 1, 22, 73, 74) alleged uniform overtime and spread-of-hours violations, yet payroll records (Dkts. 116-1, 116-9, 116-10) show 15 of 30 members had zero overtime and 11 had no spread-of-hours damages. Deposition testimony (Dkts. 119-10, 119-11, 119-12 pp. 25, 40–42) confirmed no uniform practice. See 198-1 § E (pp. 86–88). Despite this, the Court relied on pleadings as if evidentiary, contrary to Rule 11(b)(3) and *Business Guides v. Chromatic*, 498 U.S. 533 (1991).

### G. POS System Tampering and Reliability Errors

Audit logs (Dkts. 112-11, 112-12; 198-1 § F pp. 88–91) show Plaintiff Martinenko accessed the POS system six times between January 1–8, 2022—after termination—using Level-3 managerial credentials. The R&R discounted this evidence as "hearsay" and "not produced," contrary to

Rule 56(c)(3) and *Holtz v. Rockefeller & Co.*, 258 F.3d 62 (2d Cir. 2001). By ignoring audit data proving record tampering, the Court let summary judgment stand on false documents—plain error under Rule 60(b)(1) and evidence of fraud under 60(d)(3).

## H. Mischaracterized Financial Hardship and Numerosity

The Court accepted Martinenko's W-2 income ($44,504 in 2021) as proof of limited resources, ignoring ≈ $12,800 in unreported tips and a 54-day vacation abroad. 198-1 § G (pp. 90–97). Her actual earnings ($57,304 for ≈ 1,071 hours) equal ≈ $53.45 per hour—well above average NYC wages—showing ample capacity to litigate individually. This contradicted the Court's finding of economic barriers and rendered its numerosity analysis clearly erroneous.

## I. Newly Discovered Wage Notices and Uninjured Members

Post-judgment, Defendant located signed § 195 notices for employees Haley and Tela, both compliant and showing no overtime or spread-of-hours damages. Exhs. D–E; 198-1 § H (pp. 98–100). These records disprove the Court's finding that Defendants "could not produce a single compliant notice" and reveal uninjured class members, violating *Tyson Foods v. Bouaphakeo*, 577 U.S. 442 (2016) and *Denney v. Deutsche Bank*, 443 F.3d 253 (2d Cir. 2006). They constitute newly discovered evidence under Rule 60(b)(2) and support vacatur under 60(b)(3) and 60(d)(3).

## J. Improper Use of Rule 41 and Rule 15 Instead of Rule 23(e)

In approving dismissal of certified § 195 claims "without prejudice," the Court relied on Rules 41 and 15 and applied *Zagano* factors meant for entire actions. 198-1 § K (pp. 100–107). Because Rule 41 permits dismissal only of an "action," not selective claims, and Rule 15 amendments to drop certified claims trigger Rule 23(e) protections, the Court lacked authority to

bypass notice and fairness review. See *Hester Indus. v. Tyson Foods*, 160 F.3d 911 (2d Cir. 1998); *Katz v. Donna Karan Co.*, 872 F.3d 114 (2d Cir. 2017). Orders entered under this misapplication are procedurally void under Rule 60(b)(4).

### K. Cumulative Effect and Necessity of Vacatur

Collectively, these judicial mistakes:

- Preserved federal jurisdiction after the federal claim collapsed;

- Approved dismissal and fees without Rule 23(e)/(h) notice;

- Ignored or distorted sworn opt-outs, new wage notices, and POS tampering evidence;

- Relied on speculative retaliation and hardship theories instead of record facts; and

- Grounded certification and summary judgment on false pleadings and tainted data.

The Final Judgment (Dkts. 153–154) and Fee Order (Dkt. 166) thus rest on a void and factually corrupted foundation. Under Rule 60(b)(1) they are correctable judicial errors; under 60(b)(2)–(3) they reflect newly discovered evidence and misrepresentation; under 60(b)(4) they are void; under 60(b)(6) they constitute extraordinary circumstances; and under 60(d)(3) they confirm fraud on the Court. Vacatur of the Final Judgment and Fee Order is therefore required.

## V. FRAUD ON THE COURT AND SYSTEMIC ETHICAL VIOLATIONS UNDER RULE 60(d)(3) AND 60(b)(6)

### A. Purpose of the Court's Inherent Power

Rule 60(d)(3) preserves this Court's inherent authority to vacate any judgment "obtained through fraud on the court." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944). This

doctrine reaches intentional deception by counsel that undermines the tribunal's impartial

function. This motion incorporates the Motion to Disqualify Plaintiffs' Counsel (Dkt. 201) and

the Evidentiary Appendix (Dkt. 198-1), which together document coordinated deception. When

the judicial machinery itself is corrupted, finality must yield to institutional integrity.

## B. Coordinated Scheme Corrupting the Proceedings

New evidence shows collusive coordination between Joseph & Kirschenbaum LLP and

Defendant's former attorney Jonathan Greenbaum during September–October 2024. Their

off-record cooperation created the illusion of a "voluntary" class dismissal while suppressing

evidence of perjury and record falsification. (See Dkt. 198-1 pp. 3–25 [class-rep fraud]; pp.

26–62 [audit logs and billing metadata].)

This conduct displayed every hallmark of fraud on the court:

- joint drafting of filings presented as adversarial;

- suppression of the client's sworn affidavit contradicting those filings; and

- misrepresentation to the Court regarding consent and urgency.

Because both lawyers were officers of this Court, their deception injured the institution itself, not

merely a party.

## C. Violations of Federal Rule 11(b)(3)

Rule 11(b)(3) requires that factual contentions have evidentiary support. Plaintiffs' counsel filed

pleadings and declarations known to be false. Plaintiff Martinenko admitted she never reviewed

the Complaint and only reviewed once, ten months after filing the complaint Dkt. 119-11, p. 29,

She also admitted she did not know what "spread-of-hours" meant (id., p. 69) yet counsel relied on it for certification and summary judgment (Dkt. 198-1 pp. 82–107). Counsel also filed an "Urgency Motion" citing fictitious creditor actions later disproven by Attorney-General findings. Submitting fabricated facts for judicial reliance constitutes intentional deceit under Rules 60(b)(3) and 60(d)(3).

**D. Violations of the New York Rules of Professional Conduct**

The same conduct breaches multiple NYRPC provisions:

- Rule 3.3 (Candor): relied on false declarations and failed to correct them once payroll logs disproved their claims.
- Rule 3.4 (Fairness): withheld audit data and suppressed opt-out affidavits.
- Rule 3.7 (Lawyer as Witness): Greenbaum and Kirschenbaum became fact witnesses to their own coordination.
- Rule 4.1 (Truthfulness): falsely represented that dismissal was voluntary and unopposed.
- Rule 8.4 (Misconduct): engaged in deceit prejudicial to justice.
- Rules 1.2 & 1.7 (Greenbaum): ignored client instructions and concealed conflicts.
  (See Dkt. 198-1 pp. 63–81; Dkt. 201 Exs. C–E.)
  These breaches demonstrate that the judgment resulted from coordinated deception, not genuine adversarial litigation.

**E. Operation of the Scheme**

- Fabricated Urgency: Emails described the dismissal as a "quick exit plan"; AG findings disproved any real risk.

- Suppression of Defendant's Affidavit: Greenbaum refused to file Defendant's sworn statement detailing perjury and manipulation and assured opposing counsel "he will not contest."

- False Declarations: Martinenko and Huk submitted nearly identical affidavits repeating the same inaccuracies, confirming fabrication.

## F. Legal Consequences

Fraud on the court vitiates all prior proceedings. *King v. First Am. Investigations, Inc.*, 287 F.3d 91 (2d Cir. 2002) holds that when attorneys manipulate the process so the adversarial system cannot function, "the resulting judgment must be vacated." *Kupferman v. Consol. Research & Mfg. Corp.*, 459 F.2d 1072 (2d Cir. 1972) confirms that concealment of material facts by counsel constitutes fraud on the court regardless of client fault. (See Dkt. 198-1 pp. 82–107). Their misconduct:

- shaped the factual record through perjury and suppression;

- controlled procedure through an unauthorized stipulation; and

- misled the judiciary into ratifying a false consensus.

## G. Structural Nature of the Fraud

This was not an isolated lapse but a systemic corruption of adjudication. Findings on adequacy, credibility, and fairness rested on falsified data. Under *Herring v. United States*, 424 F.3d 384 (3d Cir. 2005), once fraud "directed at the judicial machinery itself" is shown, the court must vacate its orders to preserve institutional legitimacy. (See Dkt. 198-1 pp. 107–111 [Article III standing and jurisdiction].)

**H. Extraordinary Circumstances Under Rule 60(b)(6)**

Even aside from Rule 60(d)(3), the cumulative ethical collapse constitutes the "extraordinary circumstances" contemplated by Rule 60(b)(6). Defendant was silenced by conflicted counsel and subjected to a judgment built on collusion. Enforcing such a judgment would "erode public confidence in the integrity of the judicial process." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988). Equity therefore requires complete vacatur.

**I. Remedy and Disciplinary Measures**

To restore integrity, Defendant respectfully requests that the Court:

1. Vacate the Final Judgment (Dkt. 154) and Fee Order (Dkt. 166) as products of fraud on the court;

2. Authorize limited discovery into counsel communications, billing records, and withheld affidavits;

3. Disqualify conflicted counsel under NYRPC 3.7 and 1.7; and

4. Restore the case to its pre-stipulation posture for adjudication on a clean record (supported by Dkts. 198-1 and 201).

**J. Conclusion Under Rules 60(d)(3) and 60(b)(6)**

The record establishes deliberate, coordinated deceit by officers of this Court in violation of Rule 11(b)(3) and NYRPC 1.2, 1.7, 3.3, 3.4, 3.7, 4.1, and 8.4. Their misconduct corrupted the adjudicative process and denied Defendant a fair hearing. Under *Hazel-Atlas* and *King*, no judgment obtained through such conduct may stand. The Court should vacate the Nov 14 2024 Final Judgment and Dec 23 2024 Fee Order, to preserve the integrity of this tribunal.

## VI. THE JUDGMENT IS VOID FOR LACK OF JURISDICTION AND DUE PROCESS UNDER RULE 60(b)(4)

### A. Governing Principles

Rule 60(b)(4) mandates vacatur when a judgment is "void"—entered either without subject-matter jurisdiction or in violation of due process. *Espinosa*, 559 U.S. 260, 271 (2010); *Grace v. Bank Leumi Tr. Co.*, 443 F.3d 180, 193 (2d Cir. 2006).

 A void decree is a nullity once its defect appears. *Triad Energy Corp. v. McNell*, 110 F.R.D. 382 (S.D.N.Y. 1986). The rule safeguards the constitutional guarantee that no person be bound by a judgment entered without lawful authority or meaningful notice. *Mullane v. Central Hanover Bank & Tr.*, 339 U.S. 306 (1950). This analysis incorporates the Evidentiary Appendix (Dkt. 198-1) and Motion to Disqualify Plaintiffs' Counsel (Dkt. 201).

### B. Loss of Subject-Matter Jurisdiction

Federal jurisdiction arose solely under 28 U.S.C. § 1331 (FLSA). Once those counts were dismissed, only NYLL claims remained; no diversity or CAFA basis existed. When counsel then stipulated to dismiss the remaining § 195 claims "without prejudice," no federal cause survived. Under *Steel Co.* and *Cohill*, the Court lacked Article III power. Nonetheless, it issued the Final Judgment (Nov. 14 2024, Dkt. 154) and Fee Order (Dec. 23 2024, Dkt. 166) after § 1331 jurisdiction had lapsed. Those orders are void ab initio.

### C. Rule 23(e) Violation — Dismissal Without Notice

Rule 23(e) requires notice and judicial approval before certified claims are settled or dismissed. Yet Plaintiffs' counsel and Greenbaum filed a stipulation of dismissal (Dkt. 153) ending NYLL §

195 claims with no fairness hearing, no notice complying with rule 23(e). Absent members— 30 individuals—never learned their rights were extinguished. See *Eisen* and *Matsushita*. This violation alone voids the decree.

### D. Rule 23(h) Defect — No Fee Notice

The attorney-fee motion (Dkt. 164) was a generic "Notice of Motion," never identifying itself as a Rule 23(h) request. Class members received no notice or opportunity to object. Under *Mercury Interactive* and *Redman*, a fee award entered without proper notice violates due process and is void. (See Dkt. 198-1 pp. 107–111.)

### E. Constitutional Due-Process Violations

No Meaningful Notice or Hearing. Greenbaum concealed filings and misrepresented consent, depriving Defendant of any opportunity to be heard. *Espinosa* and *Mullane* deem such judgments void.

 Loss of Adversarial Process. The Court was misled to believe dismissal was mutual; Defendant never consented. A non-adversarial stipulation cannot produce a valid judgment.

 Distorted Adequacy and Numerosity. Suppressed opt-outs and false declarations produced incomplete adequacy findings, invalidating the Rule 23(e) analysis. (See Dkt. 198-1 pp. 82–107.)

### F. Reliance on False Findings and Zagano Factors

The Court's good-faith and adequacy findings rested on declarations since proven false. Once those predicates collapse, related orders cannot stand. *Liljeberg*, 486 U.S. 847, 864 (1988). (See Hr'g Tr., Dkt. 198-1 pp. 82–107; p. 104.)

## G. Defective Fee Order

The Fee Order (Dkt. 166) rests entirely on the void judgment and noncompliant Rule 23(h) process. Its time entries reflect collusive coordination with opposing counsel (Dkt. 201), further tainting the award. Under *Espinosa*, a judgment entered without due process is legally infirm "regardless of perceived fairness."

## H. Legal Effect of Voidness

Relief under Rule 60(b)(4) is mandatory. *Grace*, 443 F.3d at 193. Both orders are void on three independent grounds:

1. Loss of § 1331 jurisdiction (Dkt. 198, pp. 107–111);

2. Absence of Rule 23(e)/(h) notice (Dkt. 198, pp. 3–25, 82–107); and

3. Denial of due-process participation (Dkt. 198, pp. 82–107, p. 104).

## I. Equitable and Institutional Considerations

Vacating a void decree harms no party and restores legality. Maintaining it would reward fraud and erode public confidence. *Liljeberg*, 486 U.S. at 864. Defendant's inability to present full evidence earlier (See Dkt. 198) confirms good cause for Rule 60(b)(4) review.

## J. Requested Relief

Defendant respectfully asks the Court to:

1. Declare the Final Judgment (Dkt. 154) and Fee Order (Dkt. 166)** void;

2. Vacate both orders and restore the case to its pre-dismissal status;

3.  Direct proper Rule 23(e)/(h) notice before any renewed motion; and

4.  Grant such further relief as justice requires.

After dismissal of the FLSA claim, federal jurisdiction expired; the class was dismissed without

proper Rule 23(e) notice; and Defendant was denied participation. Such decrees are void ab

initio. Rule 60(b)(4) therefore mandates vacatur of the Nov. 14, 2024 Final Judgment (Dkt. 154)

and Dec. 23, 2024 Fee Order (Dkt. 166) to restore due process and the Court's constitutional

authority.


## VII. EQUITABLE RELIEF UNDER RULE 60(b)(6): SYSTEMIC BREAKDOWN AND COUNSEL ABANDONMENT

### A. Legal Standard

Rule 60(b)(6) authorizes relief from a judgment for "any other reason that justifies relief." It

serves as a "grand reservoir of equitable power" allowing courts to act where "extraordinary

circumstances" have denied a party a full and fair opportunity to be heard. *Liljeberg v. Health

Services Acquisition Corp.*, 486 U.S. 847, 863-64 (1988); *United States v. Cirami*, 563 F.2d 26,

34 (2d Cir. 1977).

Relief is warranted when attorney misconduct or structural failure renders the adversarial process

itself unreliable. See *Cirami*, 563 F.2d at 34 (reopening judgment where attorney's neglect

"constructively abandoned" client); *Klapprott v. United States*, 335 U.S. 601, 614-15 (1949).

Here, extraordinary circumstances exist because Defendant was deprived of meaningful

representation during the most critical phases of litigation. His counsel refused to raise

meritorious defenses, concealed material evidence, and coordinated off-record with opposing

counsel to dismiss certified claims—actions that destroyed the adversarial structure upon which every judicial ruling depended.

## B. Abandonment and Denial of Adversarial Representation

Defendant consistently instructed his attorney, Jonathan Greenbaum of Coburn & Greenbaum PLLC, to pursue trial, expose misconduct, and reject any settlement. As reflected in contemporaneous emails and text messages (Exs. G–H, Dkt. 198-1 pp. 26-62), Defendant repeatedly stated "no settlement under any circumstances" and demanded that fraud and ethical violations be addressed on the record.

Despite those instructions, Greenbaum secretly coordinated with Plaintiffs' counsel to craft stipulations and procedural dismissals that directly contradicted his client's directives. On September 27–30, 2024, Schulman and Greenbaum exchanged emails proposing dismissal of the certified § 195 claims and entry of final judgment. Billing records show contemporaneous "calls with defense re: next steps" (Dkt. 152-1 p. 25). Greenbaum never disclosed these communications and instead represented to the Court that Defendant "relied on his prior declaration" (Dkt. 181 p. 5), effectively silencing him.

This conduct constituted abandonment. Counsel ignored explicit instructions, refused to file motions addressing perjury and unauthorized system access, declined to reopen discovery despite having audit logs (Dkts. 112-11, 112-12), and coordinated with opposing counsel to end the case. The result was a proceeding in which Defendant had no advocate advancing his interests—precisely the "extraordinary circumstance" that Rule 60(b)(6) was designed to remedy. *Cirami*, 563 F.2d at 35 (reversal required where attorney's conduct "left his client virtually unrepresented").

**C. Suppression of Evidence and Misleading the Court**

By mid-2023, counsel had actual knowledge that Plaintiffs' declarations contained false statements. On May 1, 2023, Greenbaum instructed Defendant to "look at para 10, 11 then exh 1 … exh 2 … exh 3" (Ex. G1), acknowledging that Plaintiffs' sworn declaration falsely claimed two employees were omitted from the class list. He took no action to correct the record.

Between July 2023 and September 2024, Defendant repeatedly provided counsel with audit logs, emails, and deposition transcripts proving unauthorized post-termination system access, fabricated hours, and solicitation violations (Dkt. 198-1 pp. 3-25; Dkt. 201 § III). Greenbaum refused to disclose or present any of it, stating: "I cannot raise the fraud issues… I do not believe they have grounds." This refusal deprived the Court of material evidence essential to fairness and prevented Defendant from exercising his due-process right to an adversarial defense.

**D. Collusive Dismissal and Constructive Default**

After Judge Rochon's September 24, 2024 order directing the parties to litigate individualized § 195 claims (Dkt. 141 p. 27), Plaintiffs' counsel and Greenbaum jointly moved to dismiss those same claims "without prejudice" (Dkts. 145, 153). Defendant was neither consulted nor did he consent. This maneuver eliminated the only remaining certified claim, created the false appearance of agreement, and produced the November 13 2024 Final Judgment (Dkt. 154) used to support the subsequent fee award.

Because Defendant's attorney acted without authority and in direct conflict with explicit client instructions, the resulting judgment was not "adversarially tested" and lacks the reliability

required by due process. Such constructive default is an extraordinary circumstance warranting vacatur under *Klapprott* and *Cirami*.

## E. Systemic Breakdown of Judicial Integrity

The breakdown extended beyond individual neglect. Repeated miscommunications, ignored motions, and withheld evidence created a record that was materially incomplete. Defendant's proffered evidence—emails, audit logs, and deposition contradictions—was never presented, while opposing counsel's false narratives went unchallenged. The adversarial system collapsed, leaving the Court to rely on a façade of agreement engineered through silence.

Equitable relief is required not to reward procedural error but to restore the fairness of judicial process itself. *Liljeberg*, 486 U.S. at 864 ("Relief is appropriate where confidence in the integrity of the process is undermined.").

## F. Extraordinary Circumstances Warranting Relief

The cumulative record demonstrates:

- Counsel's willful refusal to pursue the client's chosen strategy or disclose material evidence;

- Coordination with opposing counsel contrary to client directives;

- Unilateral stipulations that extinguished live claims and enabled final judgment; and

- Defendant's total exclusion from decision-making and inability to present his case.

No reasonable litigant should bear the consequences of such abandonment. Rule 60(b)(6) exists precisely for situations where "the party is faultless but the adversarial system has failed." *Cirami*, 563 F.2d at 34-35.

## G. Requested Relief Under Rule 60(b)(6)

Defendant respectfully requests that the Court:

Vacate the Final Judgment entered November 13 2024 (Dkt. 154) and the associated Fee Order (Dkt. 166);

Reopen proceedings for full evidentiary review of suppressed materials identified in Dkts. 198-1 and 201.

## VIII. FRAUD ON THE COURT UNDER RULE 60(d)(3)

## A. Legal Standard

Rule 60(d)(3) preserves this Court's inherent authority to "set aside a judgment for fraud on the court." Such fraud is reserved for "the most egregious conduct involving a corruption of the judicial process itself," not simply perjury or discovery abuse. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245–46 (1944). It exists when officers of the court—attorneys and their agents—engage in intentional deception that "defiles the court" and constitutes a wrong "against the institutions set up to protect and safeguard the public." *Id.* at 246; *Kupferman v. Consol. Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972).

Because fraud on the court attacks the integrity of the judicial machinery, there is no time limit on relief. *Weldon v. United States*, 845 F. Supp. 72, 82 (N.D.N.Y. 1994). This section

incorporates by reference the evidentiary record in Dkt. 198-1 (pp. 3–62, 82–111) and the Motion to Disqualify Plaintiffs' Counsel and supporting exhibits (Dkts. 201, 201-1, 201-2).

## B. False Pleadings and Declarations Submitted as the Case's Foundation

From the outset, Plaintiffs' counsel built this action on factual allegations and sworn declarations they knew—or, at a minimum, were required to know—were false.

### False control and overtime allegations in the Complaint

The Complaint (Dkt. 1) alleged that Defendant Volper "is in charge of employee discipline, payroll issues and scheduling at 212 Steakhouse" (¶ 7), that Plaintiff "regularly worked more than 40 hours per week" (¶ 23), "regularly worked five dinner shifts and two to three lunch shifts" (¶ 24), and that Plaintiff and all class members "regularly had workdays that lasted more than ten (10) hours" (¶ 48), with "willful, regular and repeated" overtime violations (¶¶ 21, 36, 45).

Those allegations are flatly contradicted by the record cited in Dkt. 201:

Plaintiff admitted under oath that she did payroll herself: "I would also be in charge to write paychecks... I did payroll." (Dkt. 119-11, pp. 18, 37, 57; see also Dkt. 22    7).

Defendant testified he was not engaged in payroll or scheduling and that staff—including Plaintiff—determined their own hours and wrote their own checks (Dkt. 119-12, pp. 25, 40–42).

Opt-in Plaintiff Huk confirmed there was no single "primary" payroll person ("Sometimes me, sometimes Nino, sometimes Sasha." — Dkt. 119-10, pp. 24–25).

Time and payroll records (Dkts. 116-1, 116-9; summarized in Dkt. 201) show that, over four years: In 2016, Plaintiff averaged ≈ 32.25 hours/week; In 2017, ≈ 32.6 hours/week; In 2018, ≈ 38.25 hours/week; In 2021, ≈ 38.8 hours/week; Her total overtime damages were only $829 over four years (≈ $207.25 per year) and spread-of-hours damages $888 (≈ $222 per year).

A class-wide audit (Dkt. 116-1, as described in Dkt. 201) shows that 15 of 30 absent class members had zero overtime and 11 had no spread-of-hours damages; many had less than $100 in any such damages over six years. This disproves the Complaint's repeated assertions of uniform, frequent overtime and spread-of-hours violations.

Despite this, counsel never corrected the Complaint, never withdrew the false allegations, and continued to rely on them for conditional certification, Rule 23 certification, and summary judgment.

**Declarations signed without review and repeated after the truth was known**

Plaintiff's sworn declarations (Dkts. 22, 73, 117, 122) repeatedly state she was "familiar with the facts and circumstances set forth herein" and "familiar with the payroll practices at 212 Steakhouse" (Dkt. 73 ¶¶ 1, 15). Yet:

She admitted in deposition that she did not read the Complaint before it was filed (Dkt. 119-11, p. 29); She did not even know what "spread-of-hours" meant (id. p. 69); and

She repeatedly misstated her employment dates as "2016–2018, and again in 2021" (Dkt. 73 3; repeated in Dkts. 117, 122), even after testifying she started in June/July 2015 (Dkt. 119-11, p. 14).

These errors were not random: they were copy-pasted across multiple declarations after the correct facts were established on the record, proving that counsel drafted and recycled sworn statements that neither Plaintiff nor counsel meaningfully reviewed.

**False statements regarding exclusion of front-of-house employees**

In Dkt. 64   21 and Dkt. 73    11, Plaintiff—through counsel—claimed that front-of-house employees Mariken Tan and Nadia Paputnikava were missing from the class list. This was false:

The POS-generated § 216(b) mailing list, produced May 5, 2022 and marked as Exhibit 19 (Dkt. 119-12, pp. 155–56), shows both Tan and Paputnikava included.

Denise Schulman later acknowledged in a June 1, 2023 email that "based on the dates of employment from the 216(b) mailing list… g. Mariken Tan – 2016–2018" (Ex. I to Dkt. 201). Thus, by the time of the November and December 2022 declarations, counsel knew that Tan and Paputnikava were on the list but still submitted sworn statements claiming the opposite to bolster Rule 23 numerosity.

**False statements regarding post-termination POS access and integrity of class records**

In Dkt. 122 ¶¶ 10–11, Plaintiff swore that she accessed the system only twice in October 2021 for a "back-of-house" employee and "never accessed the system after [her] employment ended." But:

Audit logs (Dkts. 112-11, 112-12; see Dkt. 198-1 pp. 3–25) show she logged in six times between January 1–8, 2022, after her December 28, 2021 termination, using Level-3 managerial credentials;

Those logs show she viewed/edited time records for front-of-house class members including Juan Aguilar, Tristian Collazo, and Lytchez Lazarov (see Ex. 19 / Dkt. 72-2);

Plaintiffs' counsel, including Schulman, relied on these very records in summary-judgment filings (Dkt. 116    10) and never corrected Plaintiff's false declaration.

Submitting declarations that contradict audit-log evidence and then using those tainted records as proof is not mere sloppiness; it is knowing use of false evidence to secure judicial rulings.

## C. Improper Solicitation, Re-Solicitation, and Misrepresentation of Opt-Outs

Plaintiffs' counsel also violated the Court's notice order, improperly solicited opt-ins and opt-outs, and then misled the Court about it, all of which fed directly into class-certification and adequacy findings.

### Unauthorized phone solicitation contrary to the Court's notice order

The conditional certification order (Dkt. 30, p. 13) authorized notice only by first-class mail, email, and text message. It did not authorize attorney-initiated phone calls.

Yet: At her deposition, opt-in Plaintiff Dagmara Huk testified that she "got contacted by [her] lawyer" about the lawsuit (Dkt. 119-10, p. 21). When asked what the lawyer said, Mr. DiGiulio instructed her not to answer, violating Rule 30(c)(2).

In Dkt. 85 and at the April 4, 2023 hearing (Dkt. 94, p. 5), Schulman denied calling Huk and claimed all contact was via court-approved notice methods.

Plaintiffs' own billing records (Dkt. 152-1) contradict these denials, showing entries such as "Call with potential opt-in (Dagmara)", "Call with potential opt-in Damon," and "Call with Dimitry Zarobin." Later entries record a call with Vivian Peng (Dkt. 152-1, p. 23).

None of Damon, Zarobin, or Peng ever submitted opt-in forms or joined the case—but they were contacted by counsel outside approved channels, and Damon and Zarobin nevertheless appear in the judgment allocation (Dkt. 154, p. 3). This is exactly the sort of unauthorized solicitation and manipulation Rule 23 and NYRPC 7.3(a)(1) forbid.

**Re-solicitation and mischaracterization of notarized opt-outs**

Plaintiffs' counsel received at least nine notarized opt-out affidavits (Dkts. 84-2; 100-1) from current and former front-of-house employees (including Bonifacio Ramos, Alexander Rynkovsky, Luis Fernandez, Marikan Tan, Everardo Perez, Nadia Paputnikova, Samuel Garcia, Oscar Morales, and Alexander Porras) expressly stating: "I would not like to take part in this lawsuit."

At the April 4, 2023 hearing, Schulman admitted she had seen these affidavits (Dkt. 94, p. 4). Nonetheless:

In Dkt. 100 and again in Dkt. 120 (p. 10), Plaintiffs' counsel accused Defendants of "improper influence" and claimed that because opt-outs were current employees and used similar forms/envelopes, there was a "specter of retaliation."

Several former employees told Defendant that they were contacted by Plaintiffs' counsel after opting out but declined to participate. Alexander "Sacha" Rynkovsky's affidavit (Ex. J) confirms Defendant had no role in their decisions.

One former employee, Nadia Paputnikava, executed a declaration (Ex. K) confirming that she contacted Plaintiffs' counsel herself, was informed about the case, and declined to join.

Once these individuals opted out, Plaintiffs' counsel had no authority under Rule 23(d) and NYRPC 7.3 to re-solicit them without Court permission. Yet counsel did so, and then misled the Court by framing the opt-outs as evidence of Defendant's coercion rather than their own unauthorized contacts.

Magistrate Judge Lehrburger and Judge Rochon relied on this narrative, concluding that the "possibility" of improper urging by Defendants was "another thumb on the scale in favor of certification" (Dkt. 132, pp. 23–24; Dkt. 141, p. 8). The numerosity and adequacy findings thus rested on a manufactured coercion story, not on the notarized record.

**D. False Billing Representations and Fee Manipulation**

Fraud also infected the fee proceedings.

In support of Plaintiffs' fee request, attorney Michael DiGiulio declared:

"Plaintiffs' counsel exercised billing judgment to exclude over 50 hours of entries that were duplicative, vague, or otherwise excludable or solely related to Plaintiffs' and the Class's NYLL § 195 claims." (Dkt. 152  19).

Yet: Plaintiffs submitted only one billing file (Dkt. 152-1) with no redlines, no log of removed entries, and no metadata showing what, if anything, was actually "excluded."

A detailed review (summarized in Dkt. 201) identifies at least 23 entries totaling ≈ $5,720 devoted solely to work on the voluntary dismissal of § 195 claims (October 2024)—drafting and

revising dismissal papers, class notices regarding dismissal, internal strategy calls, and correspondence with defense counsel about "next steps."

Those entries all appear in Dkt. 152-1 and were included in the Court's final award of $223,458.28 in fees and costs (Dkts. 154, 166).

Thus, the sworn representation that such time was "excluded" was false. The Court's fee award rests on billing fraud: time for voluntarily abandoned claims and for orchestrating the dismissal itself was billed to the class while counsel told the Court it had been carved out.

### E. Collusion with Former Defense Counsel and Suppression of Fraud Evidence

The gravest fraud on the Court arose from coordinated conduct between Plaintiffs' counsel and Defendant's former attorney Jonathan Greenbaum, who jointly steered this case to final judgment while concealing proof of perjury, record tampering, and ethical breaches. See Dkt. 201 § II-F & Exs. G–H (pp. 22–35); Dkt. 198-1 (pp. 82–111).

### Defendant's Unbroken "No-Settlement" Directive

From July 2023 through September 2024, Defendant repeatedly ordered Greenbaum to reject all settlements and proceed to trial. Emails and texts in Exs. G & H show statements such as "ready to face trial," "no reason to negotiate even $1," and "tell him they will get more money after trial." Despite these explicit instructions, counsel advanced the opposite course—pursuing off-record coordination with opposing counsel to end the case.

### Counsel's Knowledge of False Declarations and POS Access

By mid-2023, Greenbaum possessed conclusive evidence that Plaintiffs' declarations were false:

 • May 1 2023 (Ex. G1): he acknowledged ¶¶ 10–11 of Dkt. 73 and Ex. 19 proved "Nadia and Mariken" were on the class list despite Plaintiff's sworn claim they were omitted.

 • Aug 10 2023 (Ex. G3): Defendant reported Plaintiff's post-termination Level-3 POS logins (Jan 1–8 2022) confirmed by audit logs (Dkts. 112-11, 112-12); Greenbaum replied they were "not relevant."

 • Jan 8 2024 (Ex. G23): Defendant catalogued false dates and declarations. Greenbaum filed no motion under Rule 11 or 60(b).

**Alignment with Plaintiffs' Strategy to Abandon § 195 Claims**

In Dkt. 128, Greenbaum narrowed the defense to § 195(3) wage-statement issues and ignored the fraud evidence, mirroring Plaintiffs' later motion to dismiss those same certified claims "without prejudice." See Dkt. 201 § II-F pp. 25-27. This alignment preserved Plaintiffs' fee posture and directly contradicted Defendant's orders to litigate.

**September 2024 Coordination to Secure Final Judgment**

After the Court's Sept 24 2024 Order (Dkt. 141 p. 27) to "meet and confer on next steps," Plaintiffs' billing and emails (Dkt. 152-1 pp. 24–25; Exs. G2, G12–G13) document joint planning:

 • Sept 27 2024: Schulman proposed staying or dismissing § 195 claims; Greenbaum arranged a call "after talking to Denise."

 • Sept 30 2024: Schulman confirmed dismissal "after our conversation Friday"; Greenbaum forwarded it claiming he "called their bluff," though Defendant immediately objected (Ex. C10).

Plaintiffs' same-day time entries ("call with defense re: next steps") corroborate coordination that defied the Court's directive to litigate, not abandon, the claim.

**Suppression of Fraud Evidence (Oct–Dec 2024)**

On Oct 9 2024, Defendant sent Greenbaum a detailed outline citing audit logs, deposition pages, and NYRPC violations, urging: "Fraud on the court … We must file." (Ex. G11; Dkt. 201 pp. 30–32.) Greenbaum refused, asserting "no grounds." Later emails (Exs. G14, G16; H A-2024) show:

 • Defendant pressing him to raise "illegal POS access and false affidavits";

 • Greenbaum promising to "see where we can add it" but taking no action;

 • Defendant accusing him of betrayal; Greenbaum replying, "Attorneys do this all the time."

 At the Jan 29 2025 hearing (Dkt. 181 pp. 4–5), Greenbaum merely stated Defendant "relies on his declaration," concealing the extensive internal record of objections and proof of fraud.

**Counsel's Refusal Despite Acknowledged Prejudice**

Texts (Ex. H, 2024) show Greenbaum conceding that "you were prejudiced" and that appeal might correct the error—demonstrating contemporaneous recognition that misconduct had compromised due process. Yet he continued cooperating in final-judgment filings (Dkts. 145, 153), never revealing Defendant's dissent or the suppressed evidence.

**Effect on the Proceedings**

By aligning with Plaintiffs' counsel, concealing perjury and tampering, and executing stipulations without consent, Greenbaum deprived Defendant of representation and the Court of truthful facts. This collaboration transformed an adversarial process into a managed outcome

serving counsel's mutual interests in finality and fee recovery. See Dkt. 201 § II-F pp. 32–35; Dkt. 198-1 pp. 82–107.

**Legal Consequence**

The coordinated suppression of fraud and unauthorized stipulations by officers of the Court constitute fraud on the court within *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944) and *Kupferman v. Consol. Research & Mfg.*, 459 F.2d 1072 (2d Cir. 1972). It corrupted the judicial process itself. The resulting Final Judgment (Dkts. 153–154) and Fee Order (Dkt. 166) must therefore be vacated under Rules 60(b)(3), (4), (6), and 60(d)(3).

### F. Effect on Judicial Decisions and the Need for Vacatur

The fraud described above was not collateral; it permeated every major ruling:

Conditional certification and Rule 23 certification relied on false allegations of overtime and spread-of-hours, false claims about omitted front-of-house employees, and a fabricated "retaliation/pressure" narrative about opt-outs.

Summary judgment rested on time and POS records whose integrity was compromised by Plaintiff's undisclosed post-termination access, and on declarations re-used despite known inaccuracies.

Dismissal of § 195 claims, Final Judgment, and the Fee Order stemmed from a stipulation and fee application procured through off-record coordination, misrepresentation of Defendant's wishes, and false billing certifications.

Under *Hazel-Atlas*, *King v. First Am. Investigations, Inc.*, 287 F.3d 91 (2d Cir. 2002), and *Beggerly*, when attorneys as officers of the court engage in deliberate deception that causes the tribunal to rely on a false record, the resulting judgment is voidable for fraud on the court and must be set aside regardless of elapsed time or prejudice to the prevailing party.

**G. Requested Relief Under Rule 60(d)(3)**

Given the record in Dkts. 198, 198-1, 201, 201-1, and 201-2, Defendant respectfully requests that the Court:

Find that Plaintiffs' counsel and Defendant's former counsel committed fraud on the court within the meaning of Rule 60(d)(3);

Vacate the November 14, 2024 Final Judgment (Dkt. 154) and the December 23, 2024 Fee Order (Dkt. 166) in their entirety;

Order limited discovery and/or an evidentiary hearing into the communications, billing entries, and suppressed evidence identified above and in Dkts. 198-1 and 201; and

Only by vacating the judgment and addressing this misconduct can the Court restore the integrity of its own proceedings and ensure that this case is decided—if at all—on a truthful, adversarial record rather than on coordinated fraud.

<strong>Conclusion</strong>

For the reasons stated in Sections I through IX, Defendant respectfully submits that the Final Judgment and Fee Order were procured through false declarations, collusion, ethical violations, and jurisdictional misrepresentations.

Each of these independently warrants relief under Rule 60(b)(2), (b)(3), (b)(4), and (b)(6); collectively they constitute fraud on the court under Rule 60(d)(3).

Relief is necessary to prevent manifest injustice, restore due process, and preserve public confidence in the integrity of federal proceedings. The record now before the Court—including Dkts. 198, 198-1, and 201 and the supporting Evidentiary Appendix (pp. 3–25, 26–62, 82–107, 107–111)—demonstrates that the judgment was not the product of adversarial litigation but of coordinated deceit among officers of the Court.

Accordingly, Defendant respectfully requests that the Court:

1. Vacate the Final Judgment and Fee Order as void and procured by fraud;
2. Reopen the case for a full evidentiary hearing on the suppressed and newly discovered evidence;
3. Grant such further equitable relief as the Court deems just and proper to restore integrity to the judicial process.

**Respectfully submitted,**

**/s/ Nikolay Volper**

**Defendant, Pro Se**

**212 Steakhouse Inc.**

**Dated: November 11, 2025**

**Certificate of Word Count**

Pursuant to **Judge Rochon's Individual Rules of Practice (June 23, 2025)**, Defendant certifies that this **Memorandum of Law** contains approximately **8,675 words**, excluding the caption, tables, signature block, and this certificate, and therefore **complies with the 8,700-word limit** authorized by the Court's order denying and renewing the word-limit motion (**Dkt. 197 & 198**).

---

**TABLE OF AUTHORITIES**

**Cases**

Altman v. Liberty Equities Corp., 54 F.R.D. 620 (S.D.N.Y. 1972)

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)

Balverde v. Lunella Ristorante, Inc., No. 15-CV-5518, 2017 WL 1954934 (S.D.N.Y. May 10, 2017)

Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52 (2d Cir. 2000)

Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc., 498 U.S. 533 (1991)

Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343 (1988)

Carter v. HealthPort Techs., LLC, 822 F.3d 47 (2d Cir. 2016)

Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253 (S.D.N.Y. 2011)

Denney v. Deutsche Bank AG, 443 F.3d 253 (2d Cir. 2006)

Eisen v. Carlisle & Jacquelin, 417 U.S. 156 (1974)

Grace v. Bank Leumi Tr. Co., 443 F.3d 180 (2d Cir. 2006)

Gomez v. City of New York, 805 F.3d 419 (2d Cir. 2015)

Gulf Oil Co. v. Bernard, 452 U.S. 89 (1981)

Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)

Hecht v. United Collection Bureau, Inc., 691 F.3d 218 (2d Cir. 2012)

Herring v. United States, 424 F.3d 384 (3d Cir. 2005)

Hester Indus., Inc. v. Tyson Foods, Inc., 160 F.3d 911 (2d Cir. 1998)

Holtz v. Rockefeller & Co., Inc., 258 F.3d 62 (2d Cir. 2001)

In re Mercury Interactive Corp. Sec. Litig., 618 F.3d 988 (9th Cir. 2010)

In re Nissan Motor Corp. Antitrust Litig., 552 F.2d 1088 (5th Cir. 1977)

In re PaineWebber Ltd. P'ships Litig., 147 F.3d 132 (2d Cir. 1998)

Katz v. Donna Karan Co., LLC, 872 F.3d 114 (2d Cir. 2017)

King v. First Am. Investigations, Inc., 287 F.3d 91 (2d Cir. 2002)

Klapprott v. United States, 335 U.S. 601 (1949)

Koehler v. Green, 358 F. App'x 196 (2d Cir. 2009)

Kemp v. United States, 596 U.S. 528 (2022)

Kupferman v. Consol. Research & Mfg. Corp., 459 F.2d 1072 (2d Cir. 1972)

Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847 (1988)

Lowery v. AmGuard Ins. Co., 84 F.4th 1227 (11th Cir. 2023)

Magoffin v. D.C. United, 540 F. Supp. 2d 26 (D.D.C. 2008)

Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367 (1996)

Moore v. PaineWebber, Inc., 306 F.3d 1247 (2d Cir. 2002)

Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306 (1950)

Perry v. Schumacher Grp. of La., Inc., 891 F.3d 954 (11th Cir. 2018)

Redman v. RadioShack Corp., 768 F.3d 622 (7th Cir. 2014)

Robidoux v. Celani, 987 F.2d 931 (2d Cir. 1993)

Rossi v. Procter & Gamble Co., No. 20-cv-00147, 2020 WL 3496319 (S.D.N.Y. June 29, 2020)

Savino v. Computer Credit, Inc., 164 F.3d 81 (2d Cir. 1998)

Seidman v. Chobani, LLC, No. 14-cv-4050, 2016 WL 1271066 (S.D.N.Y. Mar. 29, 2016)

Spokeo, Inc. v. Robins, 578 U.S. 330 (2016)

Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998)

Thorpe v. City of New York, No. 19-cv-1592, 2022 WL 3112125 (S.D.N.Y. Aug. 4, 2022)

TransUnion LLC v. Ramirez, 594 U.S. ___ (2021)

Triad Energy Corp. v. McNell, 110 F.R.D. 382 (S.D.N.Y. 1986)

Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442 (2016)

United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260 (2010)

United States v. Beggerly, 524 U.S. 38 (1998)

United States v. Cirami, 563 F.2d 26 (2d Cir. 1977)

Waetzig v. Halliburton Energy Servs., Inc., 601 U.S. ___ (2024)

Weldon v. United States, 845 F. Supp. 72 (N.D.N.Y. 1994)

**Statutes**

28 U.S.C. § 1331

Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

N.Y. Lab. Law § 195

N.Y. Lab. Law § 195(3)

**Rules**

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 10(c)

Fed. R. Civ. P. 23(c)(2)(B)

Fed. R. Civ. P. 23(d)

Fed. R. Civ. P. 23(e)

Fed. R. Civ. P. 23(e)(1)–(2)

Fed. R. Civ. P. 23(e)(5)

Fed. R. Civ. P. 23(h)

Fed. R. Civ. P. 23(h)(1)

Fed. R. Civ. P. 30(c)(2)

Fed. R. Civ. P. 41(a)(2)

Fed. R. Civ. P. 56(c)(3)

Fed. R. Civ. P. 59

Fed. R. Civ. P. 60(b)(1)

Fed. R. Civ. P. 60(b)(2)

Fed. R. Civ. P. 60(b)(3)

Fed. R. Civ. P. 60(b)(4)

Fed. R. Civ. P. 60(b)(6)

Fed. R. Civ. P. 60(c)(1)

Fed. R. Civ. P. 60(d)(3)

**New York Rules of Professional Conduct**

N.Y. R. Prof'l Conduct 1.2

N.Y. R. Prof'l Conduct 1.7

N.Y. R. Prof'l Conduct 3.3

N.Y. R. Prof'l Conduct 3.4

N.Y. R. Prof'l Conduct 3.7

N.Y. R. Prof'l Conduct 4.1

N.Y. R. Prof'l Conduct 7.3

N.Y. R. Prof'l Conduct 8.4

**Other Authorities**

1 Newberg on Class Actions § 3:12 (5th ed. 2011)

U.S. Bureau of Labor Statistics, Average Hourly Wage, New York–Newark–Jersey City MSA

(2021)

U.S. Census Bureau, 2021 New York City Income Data

ZipRecruiter, Average Hourly Wage in New York City (2021 estimate)