**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

**-------------------------------------------------------x**

**NINO MARTINENKO, on behalf of**

**herself and others similarly situated,**

**Plaintiff,**                                    **CASE NO. 1:22-cv-00518-JLR-RWL**


**v.**

**212 STEAKHOUSE, INC., and**

**NIKOLAY VOLPER,**

**Defendants.**

**-------------------------------------------------------x**


# <u>DEFENDANT'S REPLY IN SUPPORT OF RULE 60 MOTION TO VACATE</u>

# <u>FINAL JUDGMENT</u>


**NIKOLAY VOLPER**

**PRO SE**

**DEFENDANT IN THIS CASE**

# Table of Contents

PRELIMINARY STATEMENT..............................................................................4

I. PLAINTIFFS' TIMELINESS OBJECTIONS FAIL AS A MATTER OF LAW................5

II. PLAINTIFFS MISCHARACTERIZE DEFENDANT'S MOTION AS A "LATE DECERTIFICATION" REQUEST.....................................................................6

III. PLAINTIFFS APPLY THE WRONG LEGAL STANDARD BY COLLAPSING FRAUD ON THE COURT INTO RULE 60(b)(3)..............................................................7

IV. PLAINTIFFS DO NOT DISPUTE THE FOUNDATIONAL FALSITY OF THE COMPLAINT'S CLASS-WIDE "REGULAR OVERTIME" AND >10-HOUR-DAY ALLEGATIONS...........................................................................................8

V. PLAINTIFFS' REPEATED FALSE DECLARATIONS, EXECUTED WITHOUT REVIEW AND NEVER CORRECTED, UNDERMINE THE INTEGRITY OF THE RECORD.........................................................................................11

VI. UNDISCLOSED COUNSEL RETENTION, UNAUTHORIZED POS ACCESS, AND KNOWING RELIANCE ON A TAINTED RECORD………………………………………13

VII. PLAINTIFFS' OPPOSITION FAILS BECAUSE IT MISSTATES THE RECORD AND IS DIRECTLY CONTRADICTED BY SWORN TESTIMONY, NEWLY DISCOVERED EVIDENCE, AND PLAINTIFFS' OWN BILLING RECORDS.....................................15

VIII. PLAINTIFFS' REMAINING LEGAL DEFENSES FAIL AND CANNOT SALVAGE A JUDGMENT ENTERED ON A TAINTED RECORD………………………………………18

IX. Post-Judgment Deposition Conduct Violated Due Process and Further Tainted the Record...................................................................................21

CONCLUSION..........................................................................................22

CERTIFICATE OF WORD COUNT..................................................................23

# TABLE OF AUTHORITIES

**Cases**

Chambers v. NASCO, Inc., 501 U.S. 32 (1991)

Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)

Kupferman v. Consol. Research & Mfg. Corp., 459 F.2d 1072 (2d Cir. 1972)

Microsoft Corp. v. Baker, 582 U.S. 23 (2017)

Savino v. Computer Credit, Inc., 164 F.3d 81 (2d Cir. 1998)

Stevens v. Miller, 676 F.3d 62 (2d Cir. 2012)

United States v. Beggerly, 524 U.S. 38 (1998)

**Federal Rules**

Federal Rule of Civil Procedure 11

Federal Rule of Civil Procedure 23

Federal Rule of Civil Procedure 60(b)(2), (3), (4), (6), 60(c)(1), and 60(d)(3)

**Other Authorities**

New York Rules of Professional Conduct Rules 3.3(a)(1), 4.1, 7.3(a), and 8.4(c)–(d)

**DEFENDANT'S REPLY MEMORANDUM OF LAW**

**PRELIMINARY STATEMENT**

Plaintiffs' opposition does not address the motions defendant filed. It relies on timeliness, "relitigation," and a mischaracterized "late decertification" theory, while leaving unrebutted Defendant's showing that this case was prosecuted on false pleadings, recycled and unreviewed sworn declarations, undisclosed record-integrity defects, improper attorney solicitation, false billing representations, and coordinated attorney conduct that deprived the Court of an accurate record at critical stages.

Plaintiffs do not dispute that the Complaint alleged, as class-wide fact, "regular" overtime and >10-hour workdays, nor do they rebut the class-wide audit from their own records showing many class members had no overtime, no spread-of-hours work, or only de minimis damages. They likewise do not dispute that Plaintiff admitted performing payroll functions herself, contradicting the centralized-control narrative, or that she executed multiple sworn declarations despite admitting she did not read the Complaint or understand basic wage concepts. Nor do they dispute that false assertions—misidentifying class members and denying post-termination system access—were repeated after contrary testimony and documents established the truth, and were never corrected.

Plaintiffs also do not controvert evidence of post-termination payroll-system access using managerial credentials, counsel's reliance on the resulting records while leaving false sworn denials uncorrected, unauthorized attorney contact with potential opt-ins and opt-outs followed by false denials to the Court, or that the fee award rested on a

false sworn claim that time devoted to abandoned claims had been excluded when billing records show it was awarded. Nor do they oppose evidence of undisclosed coordination between Plaintiffs' counsel and Defendant's former counsel that created a false appearance of adversarial consent and steered the case to final judgment while integrity defects remained unresolved.

Defendant seeks post-judgment relief under Rules 60(b)(2), (3), (4), and (6), and principally Rule 60(d)(3), because the judicial process was compromised by material misrepresentations and omissions by officers of the Court. Fraud on the court turns on whether the tribunal was misled, not on outcome speculation. The motion was timely under Rules 60(b)(1)–(3), brought within a reasonable time after counsel's withdrawal, and Rule 60(b)(4) and Rule 60(d)(3) are not time-barred. Because Plaintiffs do not controvert these defects and rely instead on labels to avoid the merits, the Court should vacate the Final Judgment and tainted orders.

## I. PLAINTIFFS' TIMELINESS OBJECTIONS FAIL AS A MATTER OF LAW

Plaintiffs' timeliness argument rests on a legal error. Rule 60(c)(1)'s one-year limitation applies only to Rules 60(b)(1)–(3) and does not govern Rule 60(b)(4) or Rule 60(d)(3). Defendant's motion therefore is not categorically untimely.

Defendant's claims under Rules 60(b)(1), (2), and (3) were filed within one year. Final judgment was entered on November 14, 2024, and the Rule 60 motion was filed on November 11, 2025. Plaintiffs do not dispute this chronology. The motion was also filed within a reasonable time. Defendant was represented by counsel until February 14, 2025, when counsel withdrew and Defendant proceeded pro se, at which point he

undertook reconstruction of a voluminous docket approaching 200 entries, including sealed filings and extensive exhibits. Under these circumstances, the timing reflects diligence, not delay.

Plaintiffs' timeliness objections independently fail as to Rules 60(b)(4) and 60(d)(3). A void judgment under Rule 60(b)(4) is not subject to any time bar, and fraud on the court under Rule 60(d)(3) likewise is not time-barred because it implicates the integrity of the judicial process itself. Plaintiffs' attempt to import Rule 60(c)(1)'s limits into these provisions is legally incorrect.

Finally, Plaintiffs' assertion that the Court relied on "Defendants' own records" is irrelevant. Fraud on the court does not require fabricated records, but concealment of material facts, false sworn denials, and knowing reliance on records whose integrity was compromised—here, undisclosed post-termination system access and reliance on the resulting data without correction or disclosure.

## II. PLAINTIFFS MISCHARACTERIZE DEFENDANT'S MOTION AS A "LATE DECERTIFICATION" REQUEST

Plaintiffs mischaracterize Defendant's Rule 60 motion as a belated attempt to "decertify the class." That framing is wrong as a matter of law and record. Defendant does not seek interlocutory reconsideration of a Rule 23 certification order or to revisit certification as a standalone issue. He seeks vacatur of the Final Judgment and related orders under Rule 60 based on newly discovered evidence, fraud on the court, jurisdictional defects, and classwide due-process violations. Once final judgment was

entered, Rule 23 ceased to govern and Rule 60 became the exclusive mechanism for relief.

Interlocutory certification rulings merge into the final judgment and may be reviewed only through post-judgment procedures. *Microsoft Corp. v. Baker*, 582 U.S. 23, 36–37 (2017). Vacatur of the final judgment necessarily undermines any certification findings that serve as predicates to it. This is not "late decertification," but the ordinary consequence of post-judgment relief.

Plaintiffs' attempt to measure timeliness from an interlocutory order is therefore misplaced. Rule 60 timing runs from entry of final judgment, not from certification rulings. *Stevens v. Miller*, 676 F.3d 62, 67–68 (2d Cir. 2012). Plaintiffs cite no authority barring Rule 60 relief because certification was previously challenged, and their "late decertification" theory rests on a category error.

## III. PLAINTIFFS APPLY THE WRONG LEGAL STANDARD BY COLLAPSING FRAUD ON THE COURT INTO RULE 60(b)(3)

Plaintiffs apply the wrong legal standard by treating Defendant's motion as one under Rule 60(b)(3). Defendant's primary claim arises under Rule 60(d)(3) for fraud on the court, which is governed by a distinct standard, is not subject to Rule 60(b)'s one-year limitation, and does not require a showing that Defendant was unable to present his case.

Rule 60(b)(3) addresses fraud between parties; Rule 60(d)(3) addresses misconduct directed at the judicial process itself, including material misrepresentations, omissions,

or concealment by officers of the court that deprive the Court of a full and accurate basis for decision. Plaintiffs' reliance on Rule 60(b)(3) authorities therefore does not resolve the motion.

Plaintiffs repeatedly insist on outcome determinativeness or an inability to litigate around the misconduct. Under Rule 60(d)(3), the inquiry is whether the Court was misled and the integrity of adjudication corrupted. Fraud on the court is assessed cumulatively, not by isolating individual misstatements.

Plaintiffs' "relitigation" argument likewise misstates the motion. Defendant does not seek to revisit liability or damages, but challenges the integrity of the process by which those rulings were obtained—relief courts routinely permit where fraud on the court is shown.

Finally, Plaintiffs' attack on Dkt. 198-1 is a procedural diversion. That filing supported a denied word-limit request and is not part of the Rule 60 merits record. Plaintiffs identify no inaccurate citation or misrepresentation in the motion itself and leave unrebutted the sworn testimony, billing records, audit logs, and docketed filings showing that false pleadings, false declarations, improper solicitation, and false billing representations were presented to and relied upon by the Court.

## IV. PLAINTIFFS DO NOT DISPUTE THE FOUNDATIONAL FALSITY OF THE COMPLAINT'S CLASS-WIDE "REGULAR OVERTIME" AND >10-HOUR-DAY ALLEGATIONS

Plaintiffs do not confront the core defect in this case: the Complaint alleged, as categorical class-wide facts, that Plaintiff and all class members "regularly" worked

overtime, "regularly" worked more than ten hours per day, and were subjected to "willful, regular, and repeated" overtime violations. Plaintiffs do not dispute that these allegations were pleaded without qualification, presented as statements of fact, and relied upon by the Court at conditional certification, Rule 23 certification, and in assessing willfulness and adequacy. Nor do they dispute that the objective payroll and time records on which they relied contradict those allegations.

The Complaint alleged uniform, ongoing violations applicable to the entire class. Plaintiff reaffirmed that characterization under oath. Plaintiffs do not contend that "regularly" meant "sometimes" or that "all class members" meant "some." Having pleaded categorical class-wide facts, Plaintiffs were obligated to ensure evidentiary support.

Plaintiffs' own records show that Plaintiff worked approximately 166–180 weeks, yet overtime appears in only 27 weeks—meaning 80–85% of her workweeks contained no overtime, and even under the most Plaintiff-favorable view, overtime occurred in only about 15% of weeks. A work pattern where overtime occurs in a small minority of weeks cannot reasonably be described as "regular," "frequent," or "repeated." Plaintiffs alleged regular overtime to justify collective and class treatment and to frame Defendants' conduct as willful. Presenting that characterization while the records showed the opposite deprived the Court of an accurate factual foundation. Plaintiff's inability to identify a single representative "regular overtime" week under oath confirms the defect.

The same contradiction exists class-wide. Plaintiffs do not dispute the audit derived from their own records showing that many class members had no overtime, no spread-of-hours work, or only de minimis damages over multi-year periods. Plaintiffs

submit no competing calculations, do not challenge the audit methodology, and do not identify any class member whose work history reflects the uniform violations alleged.

Plaintiffs' reliance on post-Complaint wage notices fails. The notices were executed months after the Complaint and cannot retroactively supply Rule 11 support. In any event, NYLL § 195 notices reflect formal compliance, not operational control over payroll or scheduling. The Complaint alleged centralized operational control, yet sworn testimony shows payroll and scheduling were performed by employees and rotated in practice.

Plaintiffs' attempt to recast Plaintiff's payroll involvement as "ministerial" is irreconcilable with the record they submitted. Plaintiff admitted in her own declaration that she sometimes completed weekly tip sheets used to aggregate front-of-house employees' tips and determine paycheck amounts. (Dkt. 64 ¶¶ 9–10.) Those weekly sheets were compiled by hand from daily tip sheets. (id. ¶¶ 4–6.) Calculating, aggregating, and allocating employee tips is not a clerical afterthought; it is a core compensation function.

Plaintiffs' own exhibits include handwritten tip-allocation records showing manual calculation and distribution of tips. (Dkt. 63-9.) Plaintiffs' counsel possessed these documents well before advancing the "ministerial only" characterization. At a minimum, counsel therefore had actual notice that Plaintiff's role extended beyond passive execution of instructions. Post hoc relabeling cannot negate contemporaneous records and implicates duties of candor.

A witness cannot negate contemporaneous documentary evidence by post hoc semantic recharacterization. Whether Plaintiff labels her conduct "ministerial," "payroll,"

or "writing checks" does not alter what the documents show: she participated in calculating and allocating employee compensation.

Critically, Plaintiffs' counsel did not merely fail to clarify an ambiguity. They affirmatively advanced the "ministerial only" narrative after submitting documentary evidence and sworn declarations establishing Plaintiff's involvement in tip calculations. That sequence distinguishes this case from one involving confusion or imprecision and implicates counsel's obligations under Rule 11(b)(3), Rule 26(e), and New York Rules of Professional Conduct 3.3(a)(1) and 8.4(c).

## V. PLAINTIFFS' REPEATED FALSE DECLARATIONS, EXECUTED WITHOUT REVIEW AND NEVER CORRECTED, UNDERMINE THE INTEGRITY OF THE RECORD

Plaintiffs mischaracterize the misidentification of Mariken Tan and Nadia Paputnikava as a "simple" error. The sworn record shows otherwise. The same false assertion—that both employees were omitted from the front-of-house list—was repeated verbatim in multiple sworn declarations submitted months apart and was never corrected. Repetition of the same false fact after discovery is incompatible with inadvertence and reflects at least reckless disregard for accuracy.[1]

The misstatements were expressly anchored to a sworn claim of review. Plaintiff swore she reviewed the list and, based on that review, identified specific employees as omitted. Those representations rise and fall together: either the list was reviewed and the omission claim was false, or it was not reviewed and the sworn claim of review was false. Plaintiffs' failure to correct the record—despite possession and review of the list

during discovery and later written acknowledgment that Tan appeared on the § 216(b) mailing list—confirms the absence of innocent mistake.[2]

These false declarations were material. The Magistrate Judge expressly relied on Plaintiffs' sworn declarations in recommending Rule 23 certification, and the Court found overtime and spread-of-hours violations "with respect to all tipped employees." The Court later incorporated the same declarations into subsequent merits rulings, embedding the uncorrected misstatements across multiple stages of adjudication.[34] [1]

Independently, this episode establishes that the declarations were not meaningfully reviewed before execution. The undisputed record shows the list included Tan and Paputnikava, that Plaintiffs and counsel reviewed it during discovery and deposition, and that counsel later acknowledged Tan's inclusion. The only plausible explanations are that Plaintiff did not review the list despite swearing that she had, or did not review the declaration itself and signed a counsel-prepared document—either of which reflects reckless disregard for accuracy and exemplifies a broader pattern of unreviewed, recycled declarations.[5]

The same pattern appears in Plaintiffs' handling of Plaintiff's employment dates. Plaintiff admitted she did not read the Complaint before filing, yet inconsistent employment dates were repeated verbatim across multiple sworn declarations and never corrected even after deposition testimony established a mid-2015 start date. Plaintiffs' post hoc

---

[1] Omission asserted in Nov. 1, 2022 declaration (Dkt. 64   21) and reaffirmed Dec. 9, 2022 (Dkt. 73   11), despite later acknowledgment of Tan's inclusion on the § 216(b) mailing list. [2] Plaintiff swore she reviewed the list (Dkt. 64   20) and identified omissions (¶ 21); Plaintiffs possessed and reviewed the list during discovery and later acknowledged Tan's inclusion. [3] R&R relied on Plaintiffs' sworn declarations, including the Second Martinenko Declaration (Dkt. 87 at 2 n.2), and found violations "with respect to all tipped employees" (id. at 4). [4] Court later stated factual background was drawn from certification rulings and Plaintiffs' declarations (Dkt. 132 at 1 n.1).

harmonization underscores the defect: sworn declarations must reflect the declarant's reviewed understanding at the time of signing, not counsel's later reconstruction.[6] Plaintiffs' claim that these inaccuracies were immaterial misstates the standard. Relief under Rules 60(b)(3) and 60(d)(3) turns on whether the Court exercised its discretion on a complete and accurate record. Continued reliance on uncorrected sworn falsehoods after contrary testimony and documents violates the duty of candor and independently supports relief for fraud on the court. This same record also bears on adequacy under Rules 23(a)(4) and 23(g), as addressed in Defendant's disqualification briefing, incorporated by reference. [2]

## VI. UNDISCLOSED COUNSEL RETENTION, UNAUTHORIZED POS ACCESS, AND KNOWING RELIANCE ON A TAINTED RECORD

Plaintiffs attempt to fragment Defendant's showing into isolated disputes. Viewed chronologically, the record establishes a coherent pattern of undisclosed access, false sworn denials, and counsel's knowing reliance on compromised records. Plaintiff Martinenko was communicating with and represented by Plaintiffs' counsel no later than November 3, 2021, while still employed, yet raised no wage complaints and continued working without protest. Her employment ended December 28, 2021 due to New York's then-mandatory COVID-19 vaccination requirement barring unvaccinated restaurant workers—not because of any wage dispute. All wage allegations arose only after termination, when reinstatement was legally impossible.[1]

---

[2] [5] List included both employees; Plaintiffs and counsel reviewed it during discovery; counsel later acknowledged Tan's inclusion. [6] Plaintiff admitted she did not read the Complaint (Dkt. 119-11 at 29). Declarations inconsistently stated employment dates (Dkt. 64  3; Dkts. 73 ¶¶ 3, 7, 14; 117  3; 122 ¶¶ 3–4) even after deposition testimony established a June–July 2015 start date (Dkt. 119-11 at 14).

After termination, Defendant identified facially implausible time entries in the payroll data Plaintiffs relied upon, including records showing Martinenko clocked in until 1:42 a.m. on November 9, 2021 despite being recorded as an opening-shift lunch employee. Such entries are operationally impossible and raised immediate integrity concerns.[2] Defendant contacted the POS vendor, which confirmed that Martinenko accessed the system six times between January 1–8, 2022—after her termination. Vendor documentation and certifications establish this was Level-3 managerial access permitting review and alteration of payroll and timekeeping data.[3] Defendant promptly provided the audit logs and certifications to his counsel and requested disclosure to the Court. Counsel refused, stating the issues lacked "grounds." Defendant did not waive counsel, proceed pro se, or assume litigation control; he remained represented throughout.[4] [3]

Despite the vendor records, Martinenko later submitted a sworn declaration categorically denying any post-termination access. That denial is flatly contradicted by the audit logs.[5] Plaintiffs' counsel compounded the falsehood by characterizing the access as limited to "back-of-house" staff, while audit metadata shows access to

---

[3] [1] Counsel appeared Jan. 20, 2022 (Dkt. 4); Martinenko communicated with counsel by at least Nov. 3, 2021; employment ended Dec. 28, 2021 due to COVID-19 mandate. [2] On November 9, 2021, Plaintiff Nino Martinenko was recorded as working an opening lunch shift beginning at 11:40 a.m., yet remained clocked in until 1:42 a.m. on November 10—a total of over fourteen hours. (Dkt. 116-10 at 25.) By comparison, Everardo Perez, a closing-shift employee, clocked out at 12:37 a.m. (Dkt. 116-9 at 50), and Samuel Garcia clocked out at 11:00 p.m. (Dkt. 116-9 at 60.) Thus, an opening-shift lunch employee is reflected as remaining clocked in one hour and five minutes later than the last closing-shift employee. This sequence is inconsistent with ordinary restaurant operations and is unexplained in Plaintiffs' submissions, raising facial concerns regarding the reliability and integrity of the time records relied upon. [3] Vendor confirmations and certifications documenting six post-termination accesses with Level-3 permissions (Dkts. 112-11, 112-12). [4] Defendant provided audit logs to counsel Jonathan Greenbaum; counsel declined disclosure. [5] Sworn denial in Dkt. 122 ¶¶ 10–11. [6] Audit metadata showing access to front-of-house class members (e.g., Aguilar, Collazo, Lazarov); reliance at summary judgment (Dkt. 116-10). [7] Evidence provided July 2023–Sept. 2024 (Dkt. 198-1; Dkt. 201 § III); limited disclosure during settlement conference does not constitute waiver. [8] POS-access evidence bears on record integrity for all liability and classwide determinations, not solely NYLL § 195.

front-of-house Rule 23 class members' records. Counsel nonetheless relied on the resulting payroll data at summary judgment, never corrected the false declaration, and never disclosed timely the audit logs. Reliance on records accessed through undisclosed, unauthorized entry while maintaining sworn denials is knowing reliance on a tainted record.[6]

Between July 2023 and September 2024, Defendant repeatedly provided counsel with audit logs, emails, and transcripts establishing unauthorized access and false sworn denials. Counsel acknowledged possession but refused disclosure. Defendant's limited factual disclosure to the Magistrate Judge—made solely to alert the Court to undisclosed integrity defects—did not constitute waiver or pro se representation. Waiver must be clear and unequivocal; none occurred.[7] This record also explains Plaintiffs' abandonment of the NYLL § 195 claims and avoidance of a jury trial despite a jury demand. The dismissal appears calculated to avoid jury scrutiny of record integrity, post-termination access, and Martinenko's credibility as a class representative.

Plaintiffs' attempt to confine the POS-access evidence to the dismissed § 195 claims fails. The undisclosed access and false denials go to the integrity of the payroll and time records relied upon for overtime liability, damages, summary judgment, and classwide findings. Materiality is assessed when the Court relied on the record—not after Plaintiffs strategically abandoned claims.[8]

## VII. PLAINTIFFS' OPPOSITION FAILS BECAUSE IT MISSTATES THE RECORD AND IS DIRECTLY CONTRADICTED BY SWORN TESTIMONY, NEWLY DISCOVERED EVIDENCE, AND PLAINTIFFS' OWN BILLING RECORDS

Plaintiffs' opposition rests on three false premises: (1) that Defendant seeks relitigation; (2) that the record does not establish attorney-initiated solicitation; and (3) that post-certification communications, including contacts with opt-outs, were proper. Each is refuted by the record.

This is not relitigation. Defendant does not challenge prior rulings on the record then before the Court. He challenges later-discovered facts—sworn deposition testimony, sealed billing records, and false sworn denials—that were not before the Court when those rulings issued. Rules 60(b)(3) and 60(d)(3) exist to address judgments procured through later-revealed misconduct and misrepresentations by officers of the court.

The record establishes attorney-initiated solicitation. Opt-in Plaintiff Dagmara Huk testified unequivocally, "I got contacted by my lawyer." When Defendant sought further inquiry, Plaintiffs' counsel instructed the witness not to answer. Counsel then falsely represented to the Court that no such contact occurred and later denied under oath that any call was made. Plaintiffs' own sealed billing records directly contradict those denials, reflecting a May 10, 2022 "Call with potential opt-in (Dagmara)"—after the Court authorized notice only by mail, email, and text message, and before Huk opted in. This is documented solicitation followed by false denials.

Plaintiffs' attempt to reframe this as permissible "client communication" fails. The billing entry identifies Huk as a "potential opt-in," and the call occurred before certification. Attorney-initiated phone contact with potential opt-ins outside Court-approved notice methods violates the conditional certification order and New York Rule of Professional Conduct 7.3(a). Billing records further show attorney-initiated calls in 2023 and 2024

with individuals who never opted in and never became class members, yet later appeared in the judgment allocation—conduct Plaintiffs do not justify under Rule 23 or the Court's notice orders.

Plaintiffs likewise mischaracterize contacts with individuals who submitted affidavits expressly declining participation. Plaintiffs' counsel admitted seeing those affidavits yet continued contacting those individuals without Court authorization or disclosure, while advancing an unsupported coercion narrative that the Court relied upon in certification-related rulings.

This conduct prejudiced Defendant and the class process by distorting opt-in and opt-out decisions, misleading the Court, and undermining the integrity of the Court-ordered notice process. It violates Rules 11(b)(3), 23(c)(2)(B), 23(d), 26(e), and 30(c)(2), as well as New York Rules of Professional Conduct 3.3(a)(1), 4.1, 7.3(a), and 8.4(c)–(d). Plaintiffs' denials are contradicted by sworn testimony and their own billing records.

The same misconduct taints the fee award. Defendant does not seek to relitigate the amount of fees; he challenges the integrity of the factual predicate—Plaintiffs' counsel's sworn representation that over 50 hours of non-recoverable time had been excluded. Plaintiffs produced no redacted billing, exclusion log, comparison, or declaration identifying removed entries. The billing file submitted contradicts the sworn representation, and Defendant identified at least 23 entries devoted solely to Plaintiffs' voluntary dismissal of NYLL § 195 claims that were billed and awarded despite being non-compensable as a matter of law.

Plaintiffs' waiver argument misstates Rule 60(b)(3). A party cannot rebut a false sworn representation concealed within a billing submission and unsupported by documentation. The false billing declaration was incorporated into the final judgment awarding fees and costs, tainting the judgment itself. "Harmless error" does not apply where the Court exercised discretion on a materially incomplete and inaccurate record.

Finally, Plaintiffs' counsel produced no call logs, text messages, phone metadata, or sworn testimony—whether in response to Defendant's disqualification motion (Dkt. 84), the renewed disqualification motion, or the Rule 60 briefing—to show that billing entries labeled "Call with potential opt-in (Dagmara)," "Call with potential opt-in Damon," "Call with Dimitry Zarobin," or the later call with Vivian Peng (Dkt. 152-1 at 23) were inbound calls initiated by those individuals. Absent any corroborating records, Plaintiffs' assertion rests solely on argument and cannot overcome the plain language of their own billing entries describing calls with "potential opt-ins.

## VIII. PLAINTIFFS' REMAINING LEGAL DEFENSES FAIL AND CANNOT SALVAGE A JUDGMENT ENTERED ON A TAINTED RECORD

Having failed to rebut the material factual defects shown above, Plaintiffs retreat to abstract legal defenses that misstate Rule 60 and ignore the record as developed. None withstands scrutiny.

First, Plaintiffs misstate Rule 60(b)(2) by treating "possession" as dispositive. The standard is whether the material facts could have been discovered with reasonable diligence—not abstract custody or control. System-level evidence such as audit logs, access metadata, and vendor activity reports is not ordinary payroll data; it is often

vendor-held, non-obvious, and not reasonably understood as dispositive until later sworn denials, deposition testimony, and reliance on record integrity reveal its significance.[1] Plaintiffs' position is internally inconsistent: they concede non-production while faulting Defendant for not discovering the evidence earlier.[2] Prior docketing of a related log does not bar relief where the integrity implications and contradictions emerged later.[3] Plaintiffs' "no name," authentication, wage-notice, and side-issue arguments are technical distractions that do not rebut materiality to credibility, integrity, and reliance.[4–6]

Second, Plaintiffs force Defendant's attorney-misconduct showing into Rule 60(b)(1), attacking a motion Defendant did not file. This is not a claim of excusable neglect or hindsight regret; it is a showing of extraordinary process breakdown—suppression of integrity evidence, uncorrected false sworn submissions, and officer-of-the-court conduct depriving the Court of a complete and accurate record—properly analyzed under Rules 60(b)(6) and 60(d)(3).[7] Rule 11 does not authorize withholding concrete evidence or leaving known false denials uncorrected.[8] [4]

---

[4] [1] Rule 60(b)(2) turns on discoverability of *material facts* with reasonable diligence, not abstract "possession." System-level evidence (vendor audit logs, access trails, transaction metadata, credential/role records) is often vendor-held, not produced in discovery-ready form, and not reasonably understood as dispositive until later contradictions emerge. [2] Plaintiffs simultaneously assert the audit/access evidence "was not produced in discovery" while faulting Defendant for failing to identify and produce it earlier; they cannot benefit from non-production and then weaponize it as a diligence bar. [3] Prior docketing of a related log (e.g., Dkt. 112-12) does not foreclose Rule 60(b)(2) relief where later-developed facts link access activity to sworn denials, counsel's reliance on integrity assumptions, and the significance of the data in light of later testimony. [4] Audit systems commonly identify activity by user ID, credential label, role level, device/session identifiers, timestamps, and system events rather than a plain-text name; identity mapping is established through vendor certifications and corroborating metadata. [5] Authentication is a procedural issue. System evidence is routinely authenticated via vendor attestations, business-records declarations, deposition foundation, and system provenance; if more foundation is needed, targeted procedures—not summary rejection—are appropriate. [6] Materiality under Rule 60(b)(2) includes impact on credibility, record-integrity reliance, adequacy assessments, and summary-judgment reliance—not only damages arithmetic. [7] Defendant does not seek relief for ordinary attorney error; he alleges suppression of integrity evidence, uncorrected false sworn submissions, and officer-of-the-court conduct depriving the Court of a complete record—grounds analyzed under Rules 60(b)(6) and 60(d)(3), not Rule 60(b)(1). [8] Rule 11 forbids unsupported accusations; it does not authorize

Isolated acts such as opposing dismissal or filing a single document do not cure the failure to present integrity defects or the false appearance of adversarial consent.

Third, Plaintiffs' Rule 60(b)(4) response attacks a strawman. Defendant's due-process challenge is not based on lack of notice to him, but on structural class-process failures and adjudication on an incomplete record. Supplemental-jurisdiction rhetoric and dismissal "without prejudice" do not cure Rule 23 deficiencies, including the absence of required Rule 23(h) notice. Defendant cannot waive absent class members' due-process rights, and harmless-error speculation cannot substitute for mandatory class safeguards.[9–10]

Fourth, Plaintiffs overstate "mutual exclusivity" to bar Rule 60(b)(6). Defendant's showing rests on extraordinary circumstances and a breakdown of the adversarial process, not repackaged mistake or new-evidence claims. Plaintiffs' assertion that Defendant offered no timing explanation is false; counsel withdrew, Defendant proceeded pro se, and he diligently reconstructed a voluminous record.

Fifth, Plaintiffs misstate fraud on the court by reducing it to bribery-only "examples" and collapsing it into Rule 60(b)(3) prejudice. Fraud on the court encompasses officer-of-the-court misconduct that misleads the tribunal and corrupts adjudication through false sworn submissions and concealment of material facts. The inquiry is

---

withholding concrete evidence or leaving known false sworn denials uncorrected once objective proof exists. [9] Defendant's Rule 60(b)(4) showing rests on structural Rule 23 due-process defects affecting absent class members and adjudication on an incomplete record, not on lack of notice to Defendant. [10] Harmless-error analysis is inapplicable where the integrity of the adjudicative process is compromised; the question is whether discretion was exercised on a complete and accurate record at the time. [11] Fraud on the court is not limited to bribery or jury tampering; it includes intentional or reckless false sworn submissions and concealment by officers of the court that corrupt the judicial process. [12] Plaintiffs' deposition rhetoric does not rebut the sworn contradictions, solicitation and billing misrepresentations, audit/access evidence, or repeated false declarations supporting Rule 60 relief.

whether the Court was misled—not whether Defendant could have argued around the misconduct.[11] Finally, Plaintiffs' deposition narrative is a diversion. It does not rebut the sworn contradictions, solicitation and billing misrepresentations, audit/access evidence, or repeated false declarations underlying Defendant's Rule 60 showing. Credibility rhetoric cannot cure a record tainted by misrepresentation and nondisclosure.[12]

## IX. Post-Judgment Deposition Conduct Violated Due Process and Further Tainted the Record

The post-judgment deposition transcript (See Exhibit 1) independently demonstrates denial of due process and further corruption of the record. The examination exceeded judgment enforcement and probed Defendant's private housing history and personal relationships—including his move from Astoria, living arrangements, and marital history—matters only tenuously related to enforcement.

When Defendant objected on relevance grounds, Plaintiffs' counsel rejected the objections and compelled testimony without explanation, stating: "I don't need to tell you how it's relevant," and "that is why you are here, to answer questions." Volper Dep. Tr. 4:4–22. Counsel repeatedly interrupted Defendant, who was proceeding pro se, prevented him from preserving objections or making record statements, and asserted unilateral control, stating that Defendant was "not here to make a proclamation," that counsel had "no time on this deposition," and that "no one wants to hear [his] point." Id. 1:3–10; 12–15; 23:3–23.

The transcript further reflects coercive pressure: counsel threatened to "call the court," recessed the deposition to search for the judge's phone number, and warned Defendant

he would be compelled to return for a second day if he "refuse[d] to answer," while interrupting references to court-issued deposition rules. Id. 2:7–25.

Most troubling, counsel repeatedly directed the examination off the record over Defendant's express objection and request that all statements be preserved, asserting, "This is my deposition," and proceeding off the record notwithstanding objection. Id. 23:13–21; 221:18–23; 231:12–21. Counsel also compelled forward testimony despite accuracy concerns, framed uncertainty as omission, deferred "clarification," and unilaterally overruled relevance objections. Id. 35:1–18; 48:1–10; 76:1–3; 152:5–14.

These practices occurred post-judgment, with a pro se deponent and no defense counsel present, in proceedings where the transcript itself functions as operative enforcement evidence. This conduct independently violates due process and reinforces that the post-judgment process—and the adjudication resting upon it—proceeded on a coerced, incomplete, and unreliable record.

**CONCLUSION**

For the reasons set forth above, the Court should grant Defendant's Rule 60 motion, vacate the Final Judgment and related orders, and grant such further relief as is necessary to restore the integrity of the proceedings and ensure adjudication on a complete and accurate record.

**CERTIFICATE OF WORD COUNT**

I hereby certify that this Reply Memorandum of Law contains approximately 4,298 words including footnotes, and 3,470 words excluding footnotes, as calculated using the word-count function of Microsoft Word. Pursuant to Judge Rochon's Individual Rules, the word count excludes the cover page, table of contents, table of authorities, and this Certificate of Word Count.

Respectfully submitted,                                     Dated: January 3, 2026

/s/ **Nikolay Volper**

**Nikolay Volper**

Defendant, *pro se*

212 Steakhouse Inc.

Email: mail4opt@yahoo.com

Tel.: (347) 286-9291